IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| v. | § § | 3:20-CV-2910-L |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § | |

**RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING
TO HOLD DEFENDANT ASHER IN CIVIL CONTEMPT, AND BRIEF IN SUPPORT**

COMES NOW, Kelly M. Crawford ("Receiver") and respectfully requests the Court to schedule a hearing for Defendant Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher ("Asher") to appear before this Court in person and show cause as to why he should not be held in contempt for his blatant violations of the clear orders of this Court, and in support thereof the Receiver respectfully shows the Court as follows.

## TABLE OF CONTENTS

I.    Factual Background…………………………………………………..Pages 3 – 8

II.   Argument…………………………………………………………..Pages 8 – 18

      A.  The *SRO* was in effect………………………………….Page 9

      B.  Defendant Asher Had Knowledge of the *SRO*………… Page 9

      C.  Defendant Asher Violated the *SRO*……………………Pages 9 - 15

      D.  Defendant Asher's Attempt to Avoid the *SRO*…………Pages 15 - 18

III.  Relief Requested……………………………………………………Pages 18 – 19

IV.   Conclusion…………………………………………………………Page 19 – 20

## TABLE OF AUTHORITIES

*Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989)……..Page 18

*Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297 (11th Cir. 1991)…..Page 8

*Cook v. Ochsner Found. Hosp.*, 559 F.2d 270 (5th Cir. 1977)…………………...Page 8

*Gifford v. Heckler*, 741 F.2d 263 (9th Cir. 1984)…………………………………Page 19

*Harris v. Joslin*, No. 3:02-CV-192-B, 2006 WL 3770506 (N.D. Tex. 2006)…….Page 19

*In re Bradley*, 588 F.3d 254 (5th Cir. 2009)……………………………………….Page 8

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821,
114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)……………………………………………Page 18

*SEC v. First Financial Group of Texas, Inc.*, 659 F2d 660 (5th Cir. 1981)………..Page 8

*Securities and Exchange Commission v. Resource Development Int'l;*
No. 3:02-CV-0605-R, 2004 WL 2599886 (N.D. Tex. 2004)……………………….Page 19

*Warfield v. Byron*, 436 F.3d 551 (5th Cir. 2006)…………………………………..Page 17

I.

**FACTUAL BACKGROUND**

1. On September 22, 2020 this Court entered an *Order Granting Plaintiff's Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (the "SRO")* [Docket No. 16]. Pursuant to the *SRO*, this Court appointed Kelly M. Crawford as Receiver of the assets of the Defendants and Relief Defendant and vested the Receiver with certain authority to recover assets and investigate claims. The SRO was extended by an Order entered by the Court on October 5, 2020 [Docket No. 148]. On October 14, 2020, the Court entered a *Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili (the "Consent Order")* [Docket No. 165]. The SRO, October 5, 2020 Order and the Consent Orders are collectively referred to herein as the "Orders".

2. The Consent Order maintains the SRO in full force and effect. *Consent Order,* ¶ *21*. The *SRO* and the *Consent Order* extend to the "Defendants and Relief Defendant and their affiliates or subsidiaries owned or controlled by Defendants or Relief Defendant (hereinafter referred to as the "Receivership Defendants"). *Consent Order,* ¶ 28.

3. The *SRO* provides that:

> "*Defendants and Relief Defendant are immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located…..*"

*SRO,* ¶ 19.

Furthermore, Paragraph 33 of the *SRO* requires Defendant Asher to "*immediately or within such time as permitted by the Temporary Receiver in writing, deliver over to the Temporary Receiver:*

> a. *Possession and custody of all assets of the Receivership Estate, owned beneficially or otherwise, wherever situated;...*

4. The "Receivership Estate" is defined in paragraph 30 of the *SRO* as *"all funds, properties, premises, accounts, income, now or hereafter due or wing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants..."*

5. On September 26, 2020 the *SRO* was served upon Defendant Asher by serving it upon an adult male who resided with Defendant Asher. A return of service was filed with this Court on September 29, 2020. [Dock. No. 126].

6. On September 28, 2020, the Receiver obtained information indicating that Defendant Asher was attempting to sell his Ferrari in violation of the SRO.[1] Upon receipt of this information, the Receiver immediately contacted Mr. Asher by email and demanded that he cease and desist from violating the SRO.[2] In such email, the Receiver attached a copy of the Complaint filed against Asher, and a copy of the SRO.[3]

7. On the evening of September 28, 2020, Defendant Asher left a voicemail message for the Receiver in which he indicated he was informed of the Receiver's email, and denied that he was in violation of the SRO.[4] Specifically, Defendant Asher admitted to being aware of the SRO as follows:

> "The consultant further informed me that there was an allegation of not respecting the Honorable Judge Lindsay's Order. I deny that accusation. I'm in

---

[1] *See* Appendix in Support of Receiver's Emergency Motion for Show Cause Hearing ("App.") at p. 5, ¶3; pp. 10-15.
[2] App. at p. 5, ¶4; p. 16. Fortunately the Receiver seized the Ferrari before it was sold by Defendant Asher.
[3] *Id.*
[4] App. at p. 5, ¶5; p. 17.

---

**RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING AND BRIEF IN SUPPORT**          **PAGE 4**

*full compliance with the Honorable Judge Lindsay's order. And I will continue to be in full compliance."*

8. The very next day, on September 29, 2020, Defendant Asher intentionally violated the *SRO* by transferring $550,000 from an account under his control at Bank of America.[5] Specifically, Defendant Asher was the sole signatory of an account at Bank of America in the name of "USA Accounts, Inc.".[6] On September 29, 2020, he directed Bank of America to: 1) transfer $300,000 to another unknown account at Bank of America; and 2) transfer $250,000 by wire to an account at Pacific Premier Bank in the name of The Voice, Inc.[7] Bank of America made the transfers as directed by Defendant Asher[8], leaving a balance of $46,095.48 in the USA Accounts, Inc. account at Bank of America.[9]

9. The Receiver discovered the account at Bank of America in the name of "USA Accounts, Inc." when the Receiver intercepted a letter from Bank of America to Defendant Asher regarding the account.[10] Upon receipt of the letter, the Receiver immediately contacted Bank of America, obtained copies of the bank statement for September, 2020, and discovered the unlawful transfers made by Defendant Asher after he had received and was aware of, by his own admission, the *SRO*.[11]

10. On November 20, 2020, the Receiver and counsel for the U.S. Commodity Futures Trading Commission met and conferred with counsel for Defendant Asher telephonically

---

[5] App. at p. 17.
[6] App. at pp 5-6, ¶8; p. 22.
[7] App. at p. 22.
[8] The SRO was delivered to Bank of America on September 24, 2020 and Bank of America was required by the SRO to freeze the account controlled by Defendant Asher. Bank of America violated the SRO by following the instructions of Defendant Asher and transferring $550,000 out of the account on September 29, 2020.
[9] App. at p. 19.
[10] App. at p. 5, ¶7; p. 18.
[11] App. at pp. 5-6, ¶8.

to inform Defendant's counsel of the Receiver's discovery.[12] The Receiver made demand upon Defendant Asher to return the $550,000 he transferred in violation of the SRO to the receivership estate.[13]

11.  Defendant Asher refuses to return the monies. Instead, Defendant Asher's counsel informed the Receiver of the following claims by Defendant Asher[14]:

   a.  Defendant Asher claims that shortly before entry of the *SRO*, on August 25, 2020 he sold USA Accounts, Inc. to TPH Boss, Inc., a company owned by Athena Hunter.

   b.  Defendant Asher further claims that although he sold the company, he remained the sole signatory on the bank account in the name of USA Accounts, Inc. and was directed by Athena Hunter of TPH Boss, Inc. to make the transfers of $550,000 after entry of the *SRO*.

   c.  Defendant Asher contends that Athena Hunter is not associated with any of the Defendants in this case, and did not receive any monies from any of the Defendants in this case.

   d.  Defendant Asher contends the monies he transferred out of the USA Accounts, Inc. account at Bank of America did not constitute "Receivership Assets".

   e.  Finally, Defendant Asher contends that the transfers on September 29, 2020 were to pay invoices received by USA Accounts, Inc.

12.  The claims of Defendant Asher are contrary to the facts, as follows:

---

[12] App. at p. 6, ¶9; *see also* App. at pp. 27-29.
[13] *Id.*
[14] App. at pp. 6, 7, ¶11; pp. 60-68.

a. According to the Secretary of State of Delaware, Defendant Asher is the owner and incorporator of USA Accounts, Inc.[15]

b. At all relevant times, including as of the date the *SRO* was issued, and the days following the issuance of the *SRO*, Defendant Asher was the sole signatory on the account in the name of USA Accounts, Inc. at Bank of America. Indeed, in the days prior to issuance of the *SRO* Defendant Asher was writing checks from the USA Accounts, Inc. account.[16]

c. Athena Hunter, an employee of one of the entities controlled by Defendant Asher[17], was one of the top paid salesperson for the Receivership Defendants. She actively participated in swindling elderly investors.[18] Indeed, Ms. Hunter's role was so prominent in the wrongdoing committed by the Receivership Defendants that she is a named respondent in a current securities regulatory action in Alaska.[19] Athena Hunter incorporated TPH Boss, Inc. on February 3, 2020 in Delaware for the purpose of receiving commissions from the Receivership Defendants for sales of metals to victims in this case.[20]

d. There was no lawful basis to pay the "invoices" on September 29, 2020. The invoice from The Voice, Inc. on its face indicates it is for "commissions".[21] If true, "commissions" are "Receivership Assets" as defined by the SRO and

---

[15] App. at pp. 69-70.
[16] App. at p. 6, ¶8; pp. 19-26.
[17] App. at p. 7, ¶¶ 13, 14; p. 76.
[18] App. at p. 7, ¶14; p. 77.
[19] App. at p. 7, ¶14; pp. 78-79.
[20] App. at p. 7, ¶14; p. 80.
[21] App. at p. 68.

would constitute a fraudulent transfer if paid.[22] The invoice from Talent Writers, LLC for "SEO Services" and "CPM marketing ads" is addressed to USA Marketing, Inc.[23] USA Marketing, Inc. is a separate and distinct entity from USA Accounts, Inc. USA Marketing, Inc. is owned by Defendant Asher.[24]

## II.

## ARGUMENT

District courts possess inherent power to enforce their orders though contempt proceedings. *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977); *see also, Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1302 (11th Cir. 1991). A party commits contempt when, with knowledge of a court's definite and specific order, he fails to perform or refrain from performing what is required of him in the order. *SEC v. First Financial Group of Texas, Inc.,* 659 F2d 660, 669 (5th Cir. 1981); *In re Bradley,* 588 F.3d 254, 264 (5th Cir. 2009)("We have often stated that the elements of civil contempt are (1) that a court order was *in effect,* and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order")(internal quotation omitted). Further, civil contempt may serve two different purposes: "coercing compliance with an order or compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *In re Bradley*, 588 F.3d at 263.

---

[22] *See infra at footnote 62.*
[23] App. at p. 67.
[24] App. at p. 8, ¶16.

### A. The SRO was in effect at the time of the transfers and required conduct by Defendant Asher.

The SRO was in effect on September 29, 2020, the date Defendant Asher contemptuously transferred $550,000 out of an account he controlled. Indeed, the SRO continues in effect today. The SRO was expressly directed to Defendant Asher as one of the named defendants and specifically restrained him *from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located….."* SRO, ¶ 19

### B. Defendant Asher Had Knowledge of the SRO at the Time of the Transfers.

By his own admission by voicemail to the Receiver on September 28, 2020, Defendant Asher was aware of the SRO.[25] Indeed, by Defendant Asher claiming in the voicemail that he was not in violation of the Court's Order, he necessarily had to be aware of its terms.

### C. Defendant Asher Violated the SRO.

The bank statements from Bank of America demonstrate that Defendant Asher violated the SRO. There is no dispute that Defendant Asher was the sole signatory on the bank account in the name of "USA Accounts, Inc." on September 29, 2020 when Defendant Asher, knowing of the SRO, transferred $550,000 out of the account.[26] There is also no question that Defendant Asher, as the sole signatory on the account, authorized the transfer of monies from the account on September 29, 2020.[27] This act by Asher blatantly violated multiple provisions of the SRO which restrained him from transferring assets subject to the SRO or exercising control over bank accounts in his name. *See SRO at ¶¶ 15, 19, 24, 30, 33, and 34.*

The SRO defines "assets" as encompassing "any legal or equitable interest in, right to, or claim o, any real or personal property, whether individually or jointly, directly or indirectly

---

[25] App. at p. 17.
[26] App. at p. 6, ¶8; pp. 19-26.
[27] *Id.*

controlled, and wherever located, including but not limited to…accounts (including, but not limited to, bank accounts and accounts at other financial institutions)….and all funds, wherever located, whether in the United States or outside the United States." *SRO* at ¶ 15.

Using this broad definition of "assets" the *SRO* expressly restrained Defendant Asher from "withdrawing, transferring, removing, dissipating, or otherwise disposing of assets". *SRO*, ¶ 19. And yet, that is precisely what Defendant Asher did on September 29, 2020 – he transferred, removed, and disposed of $550,000 over an account in which he was the sole signatory.[28]

Moreover, the SRO required Defendant Asher to inform the CFTC of the USA Accounts, Inc. at Bank of America: *"To further facilitate meaningful inspection and review, Defendants and Relief Defendant shall….promptly provide CFTC and States staff with…all identification numbers and other identifying information for…all accounts at any bank….owned, controlled or operated by Defendants or Relief Defendant".* SRO at ¶ 24. Defendant Asher, as the sole signatory of the USA Accounts, Inc. account at Bank of America controlled that account and in blatant violation of the SRO failed to identify the account for the CFTC or the States staff or the Receiver.[29]

In appointing the Receiver and establishing the "Receivership Estate", the SRO expressly includes all accounts of the Receivership Defendants. *SRO* at ¶ 30. The USA Accounts, Inc. was an account in the name of Defendant Asher at the time the *SRO* was issued and therefore such account falls within the definition of the "Receivership Estate." Defendant Asher violated this provision of the *SRO* by exercising control over the USA Accounts, Inc. account at Bank of America when it was part of the Receivership Estate.

---

[28] App. at p. 22.
[29] App. at p. 49 (Asher Depo. P. 119, lines 6-11).

Defendant Asher also violated his obligations under Paragraph 33 of the *SRO*. That paragraph required Defendant Asher to turn over to the Receiver the assets in the USA Accounts, Inc. over which Defendant Asher exercised control as the sole signatory. *SRO* at ¶ 33(a). He failed to do so. In addition, pursuant to paragraph 33(b) of the *SRO*, Defendant Asher was obligated to turn over to the Receiver records of the USA Accounts, Inc. account (including monthly statements, canceled checks, records of wire transfers, and check registers). Defendant Asher failed to turn over any records regarding the USA Accounts, Inc., or for that matter, any bank account in which Defendant Asher is a signatory.

Finally, pursuant to Paragraph 34 of the *SRO*, Defendant Asher is specifically ordered to cooperate fully with the Receiver, including providing information to the Receiver that is necessary to exercise his authority under the *SRO*. Defendant Asher is purposely withholding information from the Receiver, and withheld information about the USA Accounts, Inc. account at Bank of America and his transfer of $550,000 from that account in violation of the SRO. Indeed, on November 5, 2020, the Receiver took Defendant Asher's deposition and specifically asked him to identify bank accounts in which he was a signatory as of September 21, 2020[30]:

> Q. [Receiver]  "As of September 21st of 2020, what bank accounts are you aware of that were active that you were using in which you were a signatory?"
>
> A. [Asher]     "JPMorgan."
>
> Q. [Receiver]  "Okay."
>
> A.[Asher]      "That's all I recall at this time."

Asher knew he was a signatory on the USA Accounts, Inc. account at Bank of America as of September 21, 2020, and indeed transferred $550,000 out of the account on September 29, 2020.

---

[30] App. at p. 49.

In arrogant violation of the *SRO* Defendant Asher intentionally refuses to cooperate with the Receiver in providing information. Such obstructions by Asher in violation of the *SRO* are reflected by Defendant Asher's evasive testimony at his asset deposition taken by the Receiver. In such deposition:

1. Asher refused to identify the place where he was staying. (p. 24, lines 12-19; P. 141, lines 3-12)[31];

2. Asher claimed he was unable to recall the date he returned to the United States after issuance of the *SRO*. (p. 26, line 10-25, p. 27, lines 1-6)[32];

3. Asher refused to identify the place from where he was giving his remote deposition. (p. 31, lines 11-22)[33];

4. Asher claimed he could not recall whether he has made any purchases other than for food and water since receiving the *SRO*. (p. 34, line 25; P. 35, lines 1-3)[34];

5. Asher claimed he did not know his cell phone number. (p. 37, lines 4-5)[35];

6. Asher claimed he did not know the last name of his friend who paid a retainer to Asher's defense counsel. ( p. 42, lines 21-25; p. 43, lines 1-4)[36];

7. In response to the Receiver's question as to why Asher set up an offshore account in Panama, Asher claimed it was because he is interested in ecology and wanted to spend time in Panama but then admitted he made one trip to Panama and during that one trip opened his offshore account. (p. 52, lines 7-25)[37];

---

[31] App. at p. 33.
[32] App. at pp. 34-35.
[33] App. at p. 36.
[34] App. at pp. 37-38.
[35] App. at p. 39.
[36] App. at pp. 40-41.
[37] App. at p. 42.

8. Asher admitted he has still been using his email address at "towerequity.com", but claimed he could not recall his password. Indeed, he indicated he could give it to the Receiver, but to date has failed to do so. ( p. 71, lines 8-25; p. 72, lines 1-7, 21-23)[38];

9. Asher said he handled the purchase or a fractional interest in a building called the Morgan Stanley building, but claimed he did not know what city the building was located – only that the building was somewhere in Florida. ( p. 89, lines 10-25; p. 90, lines 1-8)[39];

10. Asher said he had could not recall how much money was invested in the Morgan Stanley Building, other than it was substantially less than $5 million, but more than $50. Indeed, Asher refused to follow his counsel's instruction to provide the Receiver with even a rough approximation of the amount of the investment. (p. 90, lines 16-25; p. 91, lines 1-19)[40];

11. When asked whether anybody owed Asher any money, Asher said its possible but could not recall any particulars. (p. 98, lines 23-25; p. 99, line 1)[41];

12. When asked about investments made by Asher through Relief Defendant Tower Equity, Asher claimed he couldn't recall the attorneys who helped with the investments (p. 120, lines 14-17); couldn't recall whether Charles Schwab did any business with Tower Equity or any of the Defendants (p 121, lines 4-12); and

---

[38] App. at pp. 43-4.
[39] App. at pp. 45-46.
[40] App. at pp. 46-46a.
[41] App. at pp. 47-48.

couldn't recall the IPO Morgan Stanley handled in which Tower Equity invested (p. 121, lines 16-22)[42];

13. Asher said he did not know how much compensation or income he received from Defendant TMTE a year ago, in 2019, and refused to provide an estimate. (p. 136, lines 1-16). In fact, he claimed not to know how much compensation or income he received from any of the named Defendants or Relief Defendant in 2019. (p. 136, lines 17-25; p. 137, lines 1-18);[43]

14. Asher said he did not know where his federal tax return for 2018 was or how much gross income he showed on his tax return. (p. 138, lines 23-25; p. 139, lines 1-21);[44]

15. Asher testified he could not recall whether he executed a financial statement in the past three years. (p. 139; lines 22-25; p. 140, lines 1-3);[45]

16. Asher said he did not know any phone numbers he has used in the past three years. (p. 142, lines 1-9);[46]

17. Asher claimed not to know the salespersons who worked for Relief Defendant Tower Equity or whether any of the salespersons also worked for Defendant TMTE. (p. 150, lines 8-18);[47]

18. Asher indicated an investment was made in Desktop Metal in 2020, but said he did not know how much was invested or even if a million dollars was invested. (p. 154, lines 1-9);[48]

---

[42] App. at p. 51.
[43] App. at pp. 52-53.
[44] App. at pp. 54-55.
[45] App. at pp. 55-56.
[46] App. at p. 57.
[47] App. at p. 58.
[48] App. at p. 59.

Defendant Asher's numerous violations of the SRO simply demonstrate that Defendant Asher has no respect for this Court or its authority and does not understand the serious consequence of choosing to disregard a federal court order.

### D. Defendant Asher's Attempt to Avoid the *SRO* is a Ruse.

The lack of respect Defendant Asher has for this Court and its orders is demonstrated by the ruse he created to try and make an end run around the *SRO* and unlawfully transfer $550,000 out of the Receivership Estate. In essence, Defendant Asher argues that before the *SRO* was issued he sold USA Accounts, Inc. to a person with no relationship to the Defendants or this lawsuit and that after the *SRO* was issued, that person directed him, as still the sole signatory on the USA Accounts, Inc. account, to transfer $550,000 to pay legitimate invoices.

The ruse is exposed for what it is simply by identifying Athena Hunter as the person to whom Defendant Asher supposedly sold USA Accounts, Inc. Defendant Asher lied to his attorney when he told him that USA Accounts, Inc. was sold to a person with no relationship to the Defendants or this lawsuit.[49] Specifically, Defendant Asher claims he sold USA Accounts, Inc. to TPH Boss, Inc., a company owned by Athena Hunter.[50] Athena Hunter was one of the highest paid salespersons for the Defendants, swindling money from the elderly to purchase gold and silver coins from the Defendants.[51] She formed TPH Boss, Inc. in February, 2020 to receive commissions from the Defendants.[52] Athena Hunter worked for Defendant Asher in selling metals, received huge commissions from the Defendants, and now is participating with Defendant Asher in trying to perpetrate a fraud upon this Court and the Receiver in taking $550,000 from the Receivership Estate.

---

[49] App. at p. 60.
[50] App. at p. 60.
[51] App. at p. 7. ¶14; p. 77.
[52] App. at p. 7, ¶14.

The notion that Defendant Asher sold USA Accounts, Inc. to Athena Hunter's company contradicts the evidence. The Receiver took possession of the books for USA Accounts, Inc. when he took possession of the Defendants' premises on September 24, 2020. The books for USA Accounts, Inc. do not show the issuance of any shares of stock to Athena Hunter or her company and the transfer ledger for the company is blank.[53] Supposedly, according to the documents Defendant Asher gave to his attorney in support of his story, the stock in USA Accounts, Inc. was to be delivered to Hunter on or before August 25, 2020.[54] By September 24, 2020, the stock had never been issued or delivered to Hunter or her company. Moreover, although Defendant Asher contends he sold USA Accounts, Inc. in August, 2020, he continued to be the owner and sole signatory of the USA Accounts, Inc. account at Bank of America. As shown in the bank statements, Defendant Asher was signing checks withdrawn on the USA Accounts, Inc. bank account prior to issuance of the *SRO*.[55]

Despite whatever backstory Defendant Asher creates as to how he was instructed by others to transfer $550,000 out of the USA Accounts, Inc. account *after* he was aware of the *SRO*, Defendant Asher cannot escape two critical facts: 1) at all relevant times he was the signatory on the account; and 2) he authorized Bank of America to transfer $550,000 out of the account.

Because Asher was a signatory on the USA Accounts, Inc. at the time of the SRO, the account was included within the definition of "Receivership Estate" under the SRO and Asher was restrained from exercising any control over that account. Indeed, he was required to inform the Receiver of the account and turn over the monies in the account to the Receiver. He ignored

---

[53] App. at p. 7, ¶12; pp. 71-75.
[54] App. at p. 64.
[55] App. at p. 25.

these obligations under the SRO and instead transferred $550,000 from the account that was part of the Receivership Estate.

Defendant Asher's ruse also falls apart when the Court considers the recipients of the $550,000 unlawfully transferred by Asher. A wire of $250,000 was sent by Asher to an account at Pacific Premier Bank in the name of "The Voice, Inc." in payment of an invoice for "commissions".[56] The Voice, Inc., like TPH Boss, Inc., is another entity formed by one of the most successful salespersons for the Defendants. The Voice, Inc. was formed by Randall Kohn[57] for the same purpose of receiving commissions from the unlawful sales of gold and silver coins to the elderly.[58] It is well settled that commissions paid by an unlawful business such as the Defendants were operating are recoverable as fraudulent transfers. *See Warfield v. Byron,* 436 F.3d 551 (5th Cir. 2006).[59] There was no lawful basis for a "commission" to be paid to The Voice, Inc.

Likewise, there was no lawful basis for Defendant Asher to transfer $300,000 to supposedly pay an invoice from Talent Writes, LLC. On its face, the invoice is not even payable by USA Accounts, Inc.[60] Instead, it is directed to USA Marketing, LLC, another entity owned and controlled by Defendant Asher.[61]

Defendant Asher has no justification or excuse for blatantly violating the SRO. The story he created in response to the Receiver's discovery of his contemptuous act is just that - a ruse in

---

[56] App. at p. 68.
[57] Like Athena Hunter, Randall Kohn was employed by one of Asher's entities. He was listed at platinum level, presumably due to his longevity with the company and level of sales for the Defendants. App. at p. 76.
[58] App. at p. 8, ¶15.
[59] In *Warfield,* the Fifth Circuit Court of Appeals held that transfers made from a Ponzi scheme are made with fraudulent intent and a broker who receives commissions for bringing in new investors provides no value in exchange for the commissions because the broker only enlarges the number of victims of the fraud. *Warfield,* 436 F.3d at 560.
[60] App. at p. 67.
[61] App. at p. 8, ¶16; p. 81.

which he is using two of his most successful salespersons to take and hide money from the Receivership Estate.

### III.

### RELIEF REQUESTED

Defendant Asher is thumbing his nose at this Court and its orders. He is engaging in a consistent pattern of brazenly refusing to comply with the Court's SRO.

1. Asher tried to sell his Ferrari in blatant violation of the SRO.
2. Asher hid from the Receiver his account in the name of USA Accounts, Inc.
3. Asher transferred $550,000 from the account in the name of USA Accounts, Inc.
4. Asher refused to provide a list of entities that he owned or controlled until the Receiver was forced to file a Show Cause Motion.
5. Asher refuses to cooperate with the Receiver and provide the Receiver with information as required by the *SRO*. Instead, Asher gave one evasive answer after another to the Receiver's deposition questions, including refusing to disclose his address, his phone numbers, his passwords, his income, the whereabouts of his investments, or even whether he has purchased anything other than food and water since the SRO was entered.

In instances where a party fails and refuses to comply with a valid, lawful, clear order, and yet possesses the ability to comply, the Court may impose a coercive sanction such as incarceration to obtain the parties' compliance. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989)("As we have previously stated, civil contempt is

appropriate when a party fails to comply with a specific and definite court order," citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)).

Because Defendant Asher's assets are in receivership, a financial sanction will have no coercive effect and Defendant Asher will likely continue his disregard of the Court's Orders with nothing to lose. Accordingly, Defendant Asher should be incarcerated[62] at the nearest federal detention center until such time as he complies with the *SRO*, including turning over the $550,000 he withdrew from the Receivership Estate and providing information to the Receiver.

## IV.

## CONCLUSION

This receivership was established so that the Receiver could gather assets for distribution to the elderly investors who are victims of the Defendants. The contemptuous actions of Defendant Asher are causing significant damages to the Receivership Estate and ultimately the elderly investor victims. Defendant Asher's blatant disregard of this Court's *SRO* must stop. In order to maintain the integrity of its own Orders, and to insure that this Court's Orders are not casually disregarded, this Court should order Defendant Asher to appear in person before the Court and show cause as to why he each should not be held in civil contempt for violating the Orders. Moreover, the Receiver requests the Court at such hearing to find Defendants Asher in civil contempt and order that he be incarcerated at the nearest federal detention facility until such time as he complies with the Court's Orders.

WHEREFORE, PREMISES CONSIDERED, the Receiver respectfully requests that the Court enter an emergency order scheduling a hearing at which Defendant Asher is ordered to

---

[62] Indeed, judges in the Northern District of Texas have often incarcerated persons who refuse to comply with a receivership order. *See Securities and Exchange Commission v. Resource Development Int'l;* No. 3:02-CV-0605-R, 2004 WL 2599886, at *2 (N.D. Tex. 2004); and *Harris v. Joslin*, No. 3:02-CV-192-B, 2006 WL 3770506, at *1 (N.D. Tex. 2006).

appear and show just cause why he should not be held in contempt of court for his violation of the Orders of this Court; that upon such hearing the Court order that Defendant Asher be incarcerated until such time as he complies with the Court's Orders, and grant such other and further relief, to which the Receiver may be justly entitled.

>Respectfully submitted,
>
>**SCHEEF & STONE, L.L.P.**
>
>By:   */s/ Peter Lewis*
>      Peter Lewis
>      Texas State Bar No.12302100
>      Peter.lewis@solidcounsel.com
>
>500 N. Akard Street, Suite 2700
>Dallas, Texas 75201
>(214) 706-4200 – Telephone
>(214) 706-4242 – Telecopier
>
>**ATTORNEY FOR RECEIVER
>KELLY M. CRAWFORD**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on November 19, 2020, the Receiver and attorneys for the U.S. Commodity Futures Trading Commission conferred by telephone with Arnold Spencer, attorney for Defendants Lucas Asher and Simon Batashvili regarding this Motion and Mr. Spencer opposes the relief requested.

>*/s/ Peter Lewis*
>**PETER LEWIS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 23, 2020, I electronically filed the foregoing document with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

>*/s/ Peter Lewis*
>**PETER LEWIS**