IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* | § § § § | |
| Plaintiffs, | § § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2910-L |
| TMTE, INC. a/lda METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/lda LUCAS ASHER a/lda LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § | |

## APPENDIX IN SUPPORT OF RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANT ASHER IN CIVIL CONTEMPT OF COURT

The Receiver submits the following Appendix in Support of the Receiver's Emergency Motion for "Show Cause" Hearing to Hold Defendant Asher in Civil Contempt of Court, as follows:

Exhibit 1     Declaration of Receiver Kelly Crawford,                    pages 4 to 9

              Exhibits attached to Declaration:

                      Exhibit A  Email received by Receiver re: Asher      pages 10 to 15

                      Exhibit B  Email from Receiver to Asher              page 16

                      Exhibit C  Transcript of Asher voicemail to Receiver  page 17

---

APPENDIX IN SUPPORT OF RECEIVER'S MOTION                                   **Page 1**

Exhibit D   Letter from Bank of America to Asher                          page 18

Exhibit E   Banks statements for USA Accounts, Inc.                       pages 19 to 26

Exhibit F   Email from Receiver to Asher's counsel                       pages 27 to 29

Exhibit G   Excerpts from transcript of Asher deposition                 pages 30 to 59

Exhibit H   Email from Asher's counsel to Receiver                       pages 60 to 68

Exhibit I    USA Accounts, Inc. certification                            pages 69 to 70

Exhibit J    Stock certificates for USA Accounts, Inc.                    pages 71 to 72

Exhibit K   Transfer ledger for USA Accounts, Inc.                       pages 73 to 75

Exhibit L    Employee census                                            page 76

Exhibit M   Email from investor regarding Athena Hunter                 page 77

Exhibit N    Alaska regulatory action against Athena Hunter             pages 78 to 79

Exhibit O    Corporate information regarding TPH Boss, Inc.             page 80

Exhibit P    Email from Graham Norris to Receiver                      pages 81 to 82

Dated: November 23, 2020

---

**APPENDIX IN SUPPORT OF RECEIVER'S MOTION**                          **Page 2**

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By:     */s/ Peter Lewis*
        Peter Lewis
        Texas State Bar No.12302100
        Peter.lewis@solidcounsel.com

500 N. Akard Street, Suite 2700
Dallas, Texas 75201
(214) 706-4200 – Telephone
(214) 706-4242 – Telecopier

**ATTORNEY FOR RECEIVER
KELLY M. CRAWFORD**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 23, 2020, I electronically filed the foregoing document with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

*/s/ Peter Lewis*
**PETER LEWIS**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* | § § § | |
| Plaintiffs, | § § | |
| v. | § § § | CIVIL ACTION NO. 3:20-CV-2910-L |
| TMTE, INC. a/lda METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/lda LUCAS ASHER a/lda LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § § | |
| Relief Defendant. | § § | |

## DECLARATION OF RECEIVER KELLY M. CRAWFORD

My name is Kelly M. Crawford, I am over 18 years of age, have never been convicted of any crime involving moral turpitude and I am fully competent to make this Declaration.

1.    I am the Receiver appointed by this Court by an *Order Granting Plaintiffs' Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief (the "SRO")* entered on September 22, 2020 in the case styled above and I have personal knowledge of each of the facts stated below.

2.    On September 26, 2020, I served a copy of the *SRO* upon an adult male who resided with Defendant Lucas Asher.  The service of the SRO was made at Mr. Asher's residence.  A return of service was filed with the Court on September 29, 2020 as Docket No. 126.

---

**DECLARATION OF RECEIVER KELLY M. CRAWFORD**

EXHIBIT

1

tabbies

APP000004

3.      On Monday, September 28, 2020 I received a copy of an email from Lucas Asher as asher@towerequity.com to a car dealer seeking to sell Asher's Ferrari.  A true and correct copy of the email I received is attached hereto as **Exhibit A**.

4.      In response to receiving evidence that Defendant Asher was seeking to sell assets that were frozen by the SRO, I immediately sent an email to Mr. Asher at asher@towequity.com attaching a copy of the SRO, informing him of the evidence I obtained of his attempt to sell assets subject to the SRO, and demanding that he "immediately cease and desist from violating and ignoring the terms of Judge Lindsay's Order."  A true and correct copy of the email I sent to Mr. Asher, without the attachments, is attached hereto as **Exhibit B**.

5.      On the evening of September 28, 2020, and in my response to my email to Mr. Asher, Mr. Asher left me a voicemail message.  A true and correct transcript of Mr. Asher's voicemail message is attached hereto as **Exhibit C**.

6.      Based upon my personal service of the SRO at Mr. Asher's residence, my email to Mr. Asher enclosing the SRO, and Mr. Asher's voicemail message to me of  September 28, 2020 admitting his awareness of the SRO, Mr. Asher was aware of and knew of the terms of the SRO.

7.      As Receiver I receive mail directed to the Defendants and Relief Defendant and the entities they own or control.  Accordingly, I received a letter from Bank of America to Lucas Asher dated October 5, 2020 regarding a deposit of $1,200,000 on September 14 and 15 into a bank account controlled by Defendant Asher in the name of USA Accounts, Inc.  A true and correct copy of the letter from Bank of America to Mr. Asher dated October 5, 2020 is attached hereto as **Exhibit D**.

8.      Upon receipt of the letter from Bank of America to Mr. Asher, I contacted Bank of America and pursuant to my request Bank of America sent to me a copy of the bank statement for

the USA Accounts, Inc. account in September, 2020.  A true and correct copy of the Bank of America bank statement for the USA Accounts, Inc. is attached hereto as **Exhibit E**.   As shown by the bank statement, the USA Accounts, Inc. account is owned by Lucas Asher, and Lucas Asher was the sole signatory of all checks drawn on the account.  The bank statement indicates that on September 29, 2020, several days *after* entry of the SRO that Defendant Lucas admitted he was aware of, $550,000 was transferred from the account controlled by Defendant Lucas.  I confirmed with Bank of America that as a result of the transfers from the account on September 29, 2020, the balance remaining in the USA Accounts, Inc. is only $46,095.48.

9.     On November 19, 2020, I, along with attorneys representing the U.S. Commodity Futures Trading Commission, had a telephonic meet and confer with Arnold Spencer, attorney for Defendant Asher.  I relayed the general information contained in this Declaration to Mr. Spencer, and made demand upon Defendant Asher to turn over to the receivership by noon on Monday, November 23, 2020 the $550,000 transferred in violation of the SRO.  I informed Mr. Spencer that if the money was not returned, I would file with the Court a show cause motion seeking a hearing at which Mr. Lucas would be directed to appear before the Court and show cause as to why he should not be held in civil contempt of court for violating the SRO.  Following the telephonic meet and confer with Mr. Spencer, I electronically mailed to Mr. Spencer a copy of the Bank of America bank statement showing the transfer of funds.  A true and correct copy of my email to Mr. Spencer on November 19, 2020 is attached hereto as **Exhibit F**.

10.     On November 5, 2020, I took an asset deposition of Mr. Lucas.  A true and correct copy of excerpts from the transcript of that deposition is attached hereto as **Exhibit G.**

11.     On November 20, 2020, I received an email from Arnold Spencer, attorney for Mr. Asher, reciting Mr. Asher's explanation for transferring the monies out of the Bank of America

---

**APP000006**

account after the *SRO* was entered.   A true and correct copy of Mr. Spencer's email and attachments is attached hereto, as **Exhibit H.**

12.   Attached hereto as **Exhibit I** is a true and correct certification from the Delaware Secretary of State showing Lucas Asher as the incorporator of USA Accounts, Inc.  As Receiver I took possession of the corporate books for USA Accounts, Inc.  Attached hereto as **Exhibit J** is a copy of the Stock Certificate for USA Accounts, Inc., Share 1, which is still in my possession. There is no evidence in the Stock Certificates in my possession of any Stock Certificates ever being issued or delivered to Athena Hunter or her entity TPH Boss, Inc.  Moreover, the transfer ledger in my possession does not reflect the transfer of any ownership of shares in USA Accounts, Inc.  Attached hereto as **Exhibit K** is a copy of the blank transfer ledger for USA Accounts, Inc.

13.   Athena Hunter was at all relevant times an employee of the Defendants or entities owned or controlled by the Defendants.  She was listed in the employee census for First American Estate and Trust, LLC, a corporate entity Defendant Simon Batashvili admits to owning.  Attached hereto as **Exhibit L** is an excerpt from the employee census provided by Tri-Net (the payroll administrator) showing Athena Hunter as an employee of FAET.

14.   According to my investigation Athena Hunter was one of the top paid salespersons for the Defendants.  She received commission from the sale of metals to elderly investors.  Attached hereto as **Exhibit M** is a true and correct email from an investor who lost money with the Defendants and identified Athena Hunter as her contact with metals.com.  Indeed, Ms. Hunter is a named Respondent along with some of the Defendants in a regulatory action pending in Alaska brought by the Alaska Administrator of Securities.  Attached hereto as **Exhibit N** is a true and correct copy of a pleading from such regulatory action against Ms. Hunter.  Ms. Hunter received commissions both in her own name and in the name of her entity TPH Boss Inc. that was formed on February 3, 200.  Attached hereto as **Exhibit O** is a true and correct copy of information from the Delaware Department of State Division of Corporations website

---

**DECLARATION OF RECEIVER KELLY M. CRAWFORD**                                    Page 4

regarding the incorporation of TPH Boss Inc.

15.     The Voice, Inc.  is a Wyoming corporation owned by Randall Kohn, another one of the top paid salespersons for the Defendants, according to my investigation.  Mr. Kohn created The Voice, Inc. for the purpose of receiving commissions from the Defendants.  At all relevant times Mr. Kohn was an employee of the Defendants or the entities they controlled (specifically, FAET), and was designated at the "platinum" level because of his success in selling coins for the Defendants.  *See Exhibit J.*

16.     USA Marketing, Inc., at all relevant times, was an entity owned and controlled by Defendant Lucas Asher.  Attached hereto as **Exhibit P** is a true and correct email from Graham Norris of the Norris Law Group in which he identifies certain entities he set up for Defendant Asher, which includes USA Marketing, Inc.

17.     Each of the exhibits attached hereto are duplicates of the records in my possession and custody as Receiver.  The records were made at or near the time of the occurrence of the matters set forth in the records.  The records were maintained by me in the course of my regularly conducted activity as Receiver, and the records were made by the regularly conducted activity as a regular practice.

18.     I declare under penalty of perjury that the foregoing is true and correct and is within my personal knowledge.

Dated:  November 23, 2020

KELLY M. CRAWFORD
RECEIVER

APP000009

**Kelly Crawford**

| | |
|---|---|
| **From:** | Keith D. Kassan <keith@kassanlaw.com> |
| **Sent:** | Monday, September 28, 2020 2:55 PM |
| **To:** | Peter Lewis; Kelly Crawford |
| **Subject:** | Lucas Asher | Ferrari 488 Spider |

see below:

> **From:** Lucas Asher <asher@towerequity.com>
> **Subject: Re: 488**
> **Date:** September 28, 2020 at 12:37:44 PM PDT
> **To:** donny gath <donny@ilusso.com>
>
> Thanks Donny,
> Would you be comfortable closing at 219k?
>
> Also do you want the ceramic brixton forger rims with it and the factory Ferrari rims?
>
> Thanks
>
>
> *Sent from cell*
>
> **Lucas Asher**
>
>
> *The information contained in this e-mail is confidential, may be privileged and is intended solely for the use of the intended recipient. If the reader of this message is not an intended recipient, then you are hereby notified that any review, use, dissemination, forwarding or copying of this message is strictly prohibited. Please notify and delete the original message and all attachments from your system.*
>
>
>> On Sep 28, 2020, at 11:23 AM, donny gath <donny@ilusso.com> wrote:
>>
>> Its worth 215, let me know if you want to sell it
>> Donny Gath
>> donny@ilusso.com
>> www.hitfigure.com
>> www.ilusso.com
>> www.paganinewportbeach.com
>> www.paganibeverlyhills.com
>>
>>
>> <PastedGraphic-2.tiff>
>>
>>
>>> On Sep 28, 2020, at 8:08 AM, Lucas Asher <asher@towerequity.com> wrote:

1



I bought it from your inventory.

It's a 2017 488 spider. Ferrari Beverly Hills serviced three car a week ago and I have full inspection/service from Ferrari.


*Sent from cell*

**Lucas Asher**


*The information contained in this e-mail is confidential, may be privileged and is intended solely for the use of the intended recipient. If the reader of this message is not an intended recipient, then you are hereby notified that any review, use, dissemination, forwarding or copying of this message is strictly prohibited. Please notify and delete the original message and all attachments from your system.*


On Sep 28, 2020, at 7:45 AM, donny gath <donny@ilusso.com> wrote:

What year is it


Sent from my iPhone


On Sep 28, 2020, at 7:23 AM, donny gath <donny@ilusso.com> wrote:

Please send me a picture of the car, vin and miles


Sent from my iPhone


On Sep 28, 2020, at 7:22 AM, Lucas Asher <asher@towerequity.com> wrote:


Attached is a photo of how great the car looks with Brixton Forged and Novitec upgrades 11,990 miles.

<Screen Shot 2020-09-28 at 7.21.02 AM.png>

2

On Mon, Sep 28, 2020 at 7:10 AM Lucas Asher <asher@towerequity.com> wrote:

Good morning Donny,

I am leaving town for business and interested in selling back my 488 I bought from you. Perfect condition. Brixton Forged ceramic wheels and novitec rear spoiler (about 20k in extras) Will be open to a fast offer if you're interested.

Best,

Lucas 310-866-6213

On Wed, Apr 24, 2019 at 1:32 PM donny gath <donny@ilusso.com> wrote:

Hi Lucas,
  Thank you for calling, I agree to your offer of 270 on my 2017 488 spider

Regards,
Donny Gath

Sent from my iPhone

--

--

## Lucas Asher
*FOUNDER*
p:  877-505-7366

3

f:  888-546-7568
    Fax: 747.204.5931
a:  8383 Wilshire Blvd, Beverly Hills, CA 90211
w:  TowerEquity.Com  e: Asher@TowerEquity.Com

*CONFIDENTIAL*

*COMMUNICATION*

*This e-mail and any*

*files transmitted with it*

*are confidential and*

*are intended solely for*

*the use of the*

*individual or entity to*

*whom it is addressed.*

*If you are not the*

*intended recipient or*

*the person responsible*

*for delivering the e-*

*mail to the intended*

*recipient, be advised*

*that you have received*

*this e-mail in error and*

*that any use,*

*dissemination,*

*forwarding, printing, or*

*copying of this e-mail*

*and any file*

*attachments is strictly*

*prohibited. If you have*

*received this e-mail in*

*error, please*

*immediately notify us*

*by reply e-mail to the*

*sender. You must*

*destroy the original*

*transmission and its*

*contents. You will be*

APP000013

*reimbursed for*

*reasonable costs*

*incurred in notifying us.*

*Information contained*

*within this e-mail*

*should not be*

*construed as legal,*

*accounting, tax or*

*investment advice.*

--

--

## Lucas Asher

*FOUNDER*
p:  877-505-7366
f:   888-546-7568
    Fax: 747.204.5931
a:  8383 Wilshire Blvd, Beverly Hills, CA 90211
w:  TowerEquity.Com  e: Asher@TowerEquity.Com

*CONFIDENTIAL*

*COMMUNICATION*

*This e-mail and any files*

*transmitted with it are*

*confidential and are*

*intended solely for the*

*use of the individual or*

*entity to whom it is*

*addressed. If you are*

*not the intended*

*recipient or the person*

*responsible for*

*delivering the e-mail to*

*the intended recipient,*

*be advised that you*

5

APP000014

*have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by reply e-mail to the sender. You must destroy the original transmission and its contents. You will be reimbursed for reasonable costs incurred in notifying us. Information contained within this e-mail should not be construed as legal, accounting, tax or investment advice.*

APP000015

**Kelly Crawford**

| | |
|---|---|
| **From:** | Kelly Crawford |
| **Sent:** | Monday, September 28, 2020 3:39 PM |
| **To:** | asher@towerequity.com |
| **Subject:** | FW: SRO order |
| **Attachments:** | 3-20-cv-2910 Ex Parte Order.pdf; Complaint.pdf |

Mr. Asher,

I am the Receiver appointed by the United States District Court for the Northern District of Texas pursuant to the attached Order. A copy of the Complaint and Order are included in the box of pleadings that were left at your residence yesterday with your friend John Schaer, who is staying at your residence. As set forth in the Order all of your assets are in receivership and you have no authority to use, transfer, sell, hide, or dispose of any assets. It has come to my attention you are trying to sell certain assets. Please be advised that your actions violate the Order and demand is hereby made upon you to immediately cease and desist from violating and ignoring the terms of Judge Lindsay's Order. Your failure to comply with Judge Lindsay's Order is an act of contempt of court. If you continue to violate and ignore the terms of Judge Lindsay's Order I will request the Court to hold you in contempt of court.

Demand is further made upon you to immediately turn over to me the key fob to the Ferrari. If you fail to immediately turn over the key fob you will be violating the Order and I will request the Court to hold you in contempt of court.

**Kelly Crawford** PARTNER
**Scheef & Stone, LLP**
**www.solidcounsel.com** | **214.706.4213**
Office: 214.706.4200 | Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, TX 75201



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.



**APP000016**

Voice Message Arrived on Monday, Sept 28 @ 7:46 PM
Name: BURBANK BUR, CA
Number: 747-400-6825
Duration: 1m 18s

Hi good evening Counsel Crawford
My name is Lucas Asher and I was approached by a consultant a non-employee
consultant of mine who monitors IT and he had told me that you had wrote to an
inbox that I don't check.  I do not check any inboxes that you might have written
because I have not received an email from you.  I have a consultant with IT who
informed me of the matter.  The consultant further informed me that there was an
allegation of not respecting the Honorable Judge Lindsey's Order.  I deny that
accusation.  I'm in full compliance with the Honorable Judge Lindsey's order.
And I will continue to be in full compliance.  So if you could please reach out to
my counsel with any instructions I would appreciate it because I am seeking to
comply fully with the Honorable Judge Lindsey's order and my counsel will take
any instructions you have to that end.

I thank you very much for your time and I hope you have a nice evening.



**APP000017**

**Bank of America**

October 5, 2020

USA ACCOUNTS INC
Lucas Asher
8383 WILSHIRE BLVD STE 742
BEVERLY HILLS CA 90211-2442

Regarding account number ending in: 24444
Regarding claim number: 02OCT2020-854830

Lucas Asher

On September 14, & 15, 2020, $1,200,000.00 was deposited into the above account from 2444. We've received a claim indicating that the transaction is unauthorized.

As a result of this claim, we've placed a $1,200,000.00 freeze on your account until our investigation is complete.

**We're here to help**
We appreciate the opportunity to serve your financial needs. If you have questions, please call us at 800.317.6345, Monday through Friday, 8 a.m. to 8 p.m. Eastern.



 **BANK OF AMERICA**

P.O. Box 15284
Wilmington, DE 19850

**Business Advantage**

**Customer service information**

📞  1.888.BUSINESS (1.888.287.4637)

✉  bankofamerica.com

✉  Bank of America, N.A.
P.O. Box 25118
Tampa, FL 33622-5118

USA ACCOUNTS, INC
8383 WILSHIRE BLVD STE 742
BEVERLY HILLS, CA 90211-2442

🔔 | Please see the **Important Messages - Please Read** section of your statement for important details that could impact you.

# Your Business Advantage Checking

for September 1, 2020 to September 30, 2020

Account number: 2444

**USA ACCOUNTS, INC**

## Account summary

| | | |
|---|---|---|
| Beginning balance on September 1, 2020 | $144,988.00 | # of deposits/credits: 12 |
| Deposits and other credits | 1,910,370.00 | # of withdrawals/debits: 12 |
| Withdrawals and other debits | -870,000.00 | # of items-previous cycle[1]: 4 |
| Checks | -1,139,238.52 | # of days in cycle: 30 |
| Service fees | -24.00 | Average ledger balance: $544,355.58 |
| **Ending balance on September 30, 2020** | **$46,095.48** | [1]Includes checks paid,deposited items&other debits |



BUSINESS ADVANTAGE

When you're looking forward,
you've got Bank of America by your side.

In October, National Women's Small Business Month recognizes the contributions of more than
12 million women entrepreneurs. To read articles by experts and learn about our commitment
to women business owners, visit **bankofamerica.com/SBwomen**.

SSM-04-20-0384 B | 3057469

**EXHIBIT**
**E**

# IMPORTANT INFORMATION:
## BANK DEPOSIT ACCOUNTS

How to Contact Us - You may call us at the telephone number listed on the front of this statement.

Updating your contact information - We encourage you to keep your contact information up-to-date. This includes address, email and phone number. If your information has changed, the easiest way to update it is by visiting the Help & Support tab of Online Banking.

Deposit agreement - When you opened your account, you received a deposit agreement and fee schedule and agreed that your account would be governed by the terms of these documents, as we may amend them from time to time. These documents are part of the contract for your deposit account and govern all transactions relating to your account, including all deposits and withdrawals. Copies of both the deposit agreement and fee schedule which contain the current version of the terms and conditions of your account relationship may be obtained at our financial centers.

Electronic transfers: In case of errors or questions about your electronic transfers - If you think your statement or receipt is wrong or you need more information about an electronic transfer (e.g., ATM transactions, direct deposits or withdrawals, point-of-sale transactions) on the statement or receipt, telephone or write us at the address and number listed on the front of this statement as soon as you can. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or transfer you are unsure about, and explain as clearly as you can why you believe there is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

For consumer accounts used primarily for personal, family or household purposes, we will investigate your complaint and will correct any error promptly. If we take more than 10 business days (10 calendar days if you are a Massachusetts customer) (20 business days if you are a new customer, for electronic transfers occurring during the first 30 days after the first deposit is made to your account) to do this, we will provisionally credit your account for the amount you think is in error, so that you will have use of the money during the time it will take to complete our investigation.

For other accounts, we investigate, and if we find we have made an error, we credit your account at the conclusion of our investigation.

Reporting other problems - You must examine your statement carefully and promptly. You are in the best position to discover errors and unauthorized transactions on your account. If you fail to notify us in writing of suspected problems or an unauthorized transaction within the time period specified in the deposit agreement (which periods are no more than 60 days after we make the statement available to you and in some cases are 30 days or less), we are not liable to you and you agree to not make a claim against us, for the problems or unauthorized transactions.

Direct deposits - If you have arranged to have direct deposits made to your account at least once every 60 days from the same person or company, you may call us to find out if the deposit was made as scheduled. You may also review your activity online or visit a financial center for information.

© 2020 Bank of America Corporation

**Bank of America, N.A. Member FDIC and**  **Equal Housing Lender**

# BANK OF AMERICA

**Your checking account**

USA ACCOUNTS, INC | Account ████████444 | September 1, 2020 to September 30, 2020

## Deposits and other credits

| Date | Description | Amount |
|---|---|---|
| 09/01/20 | Counter Credit | 60,000.00 |
| 09/02/20 | Counter Credit | 50,000.00 |
| 09/04/20 | WIRE TYPE:WIRE IN DATE: 200904 TIME:1301 ████████████████ SEQ:20200904000084255/375284 ORIG:R WAYNE LOEKLE ██████████1 SND BK:WELL S FARGO BANK NA ██████████████████████TN NICK WATSON PURCHASE FOR ROBERT WAYNE LOEKLE AN | 50,000.00 |
| 09/08/20 | Counter Credit | 40,000.00 |
| 09/08/20 | WIRE TYPE:WIRE IN DATE: 200908 TIME:1729 ET ████████████████████ ███████████ ORIG:MICHAEL & ROBIN MADSEN █████1 SND BK:UNITE D BANKERS BANK████████████ | 20,170.00 |
| 09/09/20 | Counter Credit | 300,000.00 |
| 09/11/20 | Counter Credit | 20,000.00 |
| 09/14/20 | Counter Credit | 950,000.00 |
| 09/15/20 | Counter Credit | 330,000.00 |
| 09/15/20 | WIRE TYPE:WIRE IN DATE: 200915 TIME:1240 ET ████████████████9 ████████████9 ORIG:GERALD FEENSTRA I██████████BK:FIFTH TH IRD BANK, NATIONAL A█████████1 █████████2 | 10,200.00 |
| 09/17/20 | WIRE TYPE:WIRE IN DATE: 200917 TIME:1454 ET ████████████████████ ███████████ ORIG:ROBIN MADSON ID:9300001300 SND BK:UNITED BANK ERS BANK ID:091001322 | 30,000.00 |
| 09/18/20 | Counter Credit | 50,000.00 |
| **Total deposits and other credits** | | **$1,910,370.00** |

## Withdrawals and other debits

| Date | Description | Amount |
|---|---|---|
| 09/08/20 | RETURN ITEM CHARGEBACK | -20,000.00 |
| 09/10/20 | RETURN ITEM CHARGEBACK | -300,000.00 |

*continued on the next page*

BANK OF AMERICA BUSINESS ADVANTAGE

## What's on your mind?

Business owners like you can join the Bank of America® Advisory Panel to help us understand what you like and don't like.
Enter code **SBDD** at **bankofamerica.com/AdvisoryPanel** to learn more and join.

Inclusion on the Advisory Panel subject to qualifications.

SSM-09-19-0761.D1 | ARG5T4RM

USA ACCOUNTS, INC  |  Account # ████████2444  |  September 1, 2020 to September 30, 2020

## Withdrawals and other debits - continued

| Date | Description | Amount |
|------|-------------|--------|
| 09/29/20 | CA TLR transfer to CHK 3464 Banking Ctr BEVERLY SAN VICENTE ████████ CA Confirmation# ████████ | -300,000.00 |
| 09/29/20 | WIRE TYPE:WIRE OUT DATE:200929 TIME:1339 ET TRN:████████ SERVICE ████████ BNF:THE VOICE, INC I████████ BK:PACIFIC PR EMIER BANK████████ PMT DET:ZGPBUZ36Q Services | -250,000.00 |

**Total withdrawals and other debits** **-$870,000.00**

## Checks

| Date | Check # | Amount | | Date | Check # | Amount |
|------|---------|--------|--|------|---------|--------|
| 09/08/20 | 991 | -68,094.22 | | 09/14/20 | 998 | -3,897.25 |
| 09/14/20 | 996* | -70,020.66 | | 09/15/20 | 999 | -3,780.00 |
| 09/15/20 | 997 | -2,499.93 | | 09/18/20 | 1000 | -990,946.46 |
| | | | | **Total checks** | | **-$1,139,238.52** |
| | | | | **Total # of checks** | | **6** |

*  *There is a gap in sequential check numbers*

## Service fees

The Monthly Fee on your Business Advantage Checking account was waived for the statement period ending 08/31/20. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ◯ $2,500+ in new net purchases on a linked Business credit card
- ✓ $15,000+ average monthly balance in primary checking account
- ✓ $35,000+ combined average monthly balance in linked business accounts
- ◯ active use of Bank of America Merchant Services
- ◯ active use of Payroll Services
- ◯ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|------|------------------------|--------|
| 09/08/20 | RETURNED ITEM CHARGEBACK FEE | -12.00 |
| 09/10/20 | RETURNED ITEM CHARGEBACK FEE | -12.00 |

**Total service fees** **-$24.00**

*Note your Ending Balance already reflects the subtraction of Service Fees.*



**BANK OF AMERICA**

**Your checking account**

USA ACCOUNTS, INC   |   Account # ████████ 2444   |   September 1, 2020 to September 30, 2020

## Daily ledger balances

| Date | Balance ($) | Date | Balance($) | Date | Balance ($) |
|------|------------:|------|-----------:|------|------------:|
| 09/01 | 204,988.00 | 09/09 | 577,051.78 | 09/15 | 1,507,041.94 |
| 09/02 | 254,988.00 | 09/10 | 277,039.78 | 09/17 | 1,537,041.94 |
| 09/04 | 304,988.00 | 09/11 | 297,039.78 | 09/18 | 596,095.48 |
| 09/08 | 277,051.78 | 09/14 | 1,173,121.87 | 09/29 | 46,095.48 |

This page intentionally left blank

# BANK OF AMERICA

USA ACCOUNTS, INC   |   Account ██████2444   |   September 1, 2020 to September 30, 2020

## Check images

**Account number: 3251 2494 2444**

Check number: 991   |   Amount: $68,094.22



Check number: 996   |   Amount: $70,020.66



Check number: 997   |   Amount: $2,499.93



Check number: 998   |   Amount: $3,897.25



Check number: 999   |   Amount: $3,780.00



Check number: 1000   |   Amount: $990,946.46



## Important Messages - Please Read

We want to make sure you stay up-to-date on changes, reminders, and other important details that could impact you.

Our Deposit Agreement and Disclosures were updated to include recordkeeping requirements for Federal Deposit Insurance Corporation (FDIC) insurance coverage. These requirements apply to deposit accounts opened on behalf of beneficial owners (for example, as a trustee).

For more details, please review the "Special Provisions for Pass-Through Accounts" section of our Deposit Agreement at bankofamerica.com/depositagreement.

**Kelly Crawford**

| | |
|---|---|
| **From:** | Kelly Crawford |
| **Sent:** | Thursday, November 19, 2020 4:26 PM |
| **To:** | Arnold Spencer |
| **Cc:** | rfoelber@CFTC.gov; JBuffa@CFTC.gov; Peter Lewis |
| **Subject:** | Lucas Asher Contempt of the SRO |
| **Attachments:** | 20201119162700880.pdf |

Arnold,

      As a follow up to our meet and confer this afternoon, attached is a copy of the Bank of America statement for the USA Accounts, Inc. account controlled by Mr. Asher, which shows the two transfers on September 29, 2020 of $550,000.  That sum needs to be turned over to the receivership by noon on Monday or I will proceed with filing an Emergency Motion for Show Cause Order against Mr. Asher.  I will ask the Court to order Mr. Asher to personally appear before the Court and show cause as to why he should not be held in civil contempt and incarcerated until such time as he returns the monies.  Thanks,

**Kelly Crawford** PARTNER
**Scheef & Stone, LLP**
www.solidcounsel.com | **214.706.4213**
Office: 214.706.4200 | Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, TX 75201



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.



**APP000027**


**BANK OF AMERICA**

P.O. Box 15284
Wilmington, DE 19850

USA ACCOUNTS, INC
8383 WILSHIRE BLVD STE 742
BEVERLY HILLS, CA  90211-2442

Business Advantage

**Customer service information**

📞  1.888.BUSINESS (1.888.287.4637)

✉  bankofamerica.com

✉  Bank of America, N.A.
    P.O. Box 25118
    Tampa, FL 33622-5118

> ⌂ | Please see the **Important Messages - Please Read** section of your statement for important details that could impact you.

# Your Business Advantage Checking

for September 1, 2020 to September 30, 2020          Account number: ▬▬▬▬2444
**USA ACCOUNTS, INC**

## Account summary

| | | | |
|---|---|---|---|
| Beginning balance on September 1, 2020 | $144,988.00 | # of deposits/credits: 12 | |
| Deposits and other credits | 1,910,370.00 | # of withdrawals/debits: 12 | |
| Withdrawals and other debits | -870,000.00 | # of items-previous cycle[1]: 4 | |
| Checks | -1,139,238.52 | # of days in cycle: 30 | |
| Service fees | -24.00 | Average ledger balance: $544,355.58 | |
| **Ending balance on September 30, 2020** | **$46,095.48** | [1]Includes checks paid,deposited items&other debits | |

BUSINESS ADVANTAGE

# When you're looking forward,
# you've got Bank of America by your side.

In October, National Women's Small Business Month recognizes the contributions of more than
12 million women entrepreneurs. To read articles by experts and learn about our commitment
to women business owners, visit **bankofamerica.com/SBwomen**.

SSM-04-20-0384.B | 3057469

PULL: E  CYCLE: 67  SPEC: E  DELIVERY: E  TYPE:   IMAGE: |  BC: CA9

APP000028

USA ACCOUNTS, INC   |   Account #▆▆▆▆▆2444   |   September 1, 2020 to September 30, 2020

## Withdrawals and other debits - continued

| Date | Description | Amount |
|---|---|---|
| 09/29/20 | CA TLR transfer to CHK 3464 Banking Ctr BEVERLY SAN VICENTE ▆▆▆43 CA Confirmation# 1539986250 | -300,000.00 |
| 09/29/20 | WIRE TYPE:WIRE OUT DATE:200929 TIME:1339 ▆▆▆▆▆▆▆▆▆▆▆ SERVICE REF:011233 BNF:THE VOICE, INC ID:8000153606 BNF BK:PACIFIC PR EMIER BANK▆▆▆▆▆▆▆ PMT DET:ZGPPHT36Q Services | -250,000.00 |
| **Total withdrawals and other debits** | | **-$870,000.00** |

## Checks

| Date | Check # | Amount | | Date | Check # | Amount |
|---|---|---|---|---|---|---|
| 09/08/20 | 991 | -68,094.22 | | 09/14/20 | 998 | -3,897.25 |
| 09/14/20 | 996* | -70,020.66 | | 09/15/20 | 999 | -3,780.00 |
| 09/15/20 | 997 | -2,499.93 | | 09/18/20 | 1000 | -990,946.46 |
| | | | | **Total checks** | | **-$1,139,238.52** |
| | | | | **Total # of checks** | | **6** |

\* *There is a gap in sequential check numbers*

## Service fees

The Monthly Fee on your Business Advantage Checking account was waived for the statement period ending 08/31/20. A check mark below indicates the requirement(s) you have met to qualify for the Monthly Fee waiver on the account.

- ◯ $2,500+ in new net purchases on a linked Business credit card
- ✓ $15,000+ average monthly balance in primary checking account
- ✓ $35,000+ combined average monthly balance in linked business accounts
- ◯ active use of Bank of America Merchant Services
- ◯ active use of Payroll Services
- ◯ enrolled in Business Advantage Relationship Rewards

For information on how to open a new product, link an existing service to your account, or about Business Advantage Relationship Rewards please call 1.888.BUSINESS or visit bankofamerica.com/smallbusiness.

| Date | Transaction description | Amount |
|---|---|---|
| 09/08/20 | RETURNED ITEM CHARGEBACK FEE | -12.00 |
| 09/10/20 | RETURNED ITEM CHARGEBACK FEE | -12.00 |
| **Total service fees** | | **-$24.00** |

*Note your Ending Balance already reflects the subtraction of Service Fees.*

APP000029

1              IN THE UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF TEXAS

3

4                                          )
   COMMODITY FUTURES TRADING               )
5  COMMISSION et al,                       )
                                           )
6        Plaintiffs,                       ) Case No.:
                                           ) 3:20-CV-2910-L
7      vs.                                 )
                                           )
8  TMTE, INC. A/k/a METALS.COM,            )
   CHASE METALS, INC., CHASE               )
9  METALS, LLC, BARRICK                    )
   CAPITAL, INC., LUCAS THOMAS             )
10 ERB a/k/a LUCAS ASHER a/k/a             )
   LUKE ASHER, and SIMON                   )
11 BATASHVILI                              )
                                           )
12       Defendants.                       )
                                           )
13     and                                 )
                                           )
14 TOWER EQUITY, LLC,                      )
                                           )
15 Relief Defendant                        )
                                           )
16

17     REMOTE VIDEO-RECORDED DEPOSITION OF LUCAS ASHER

18              Thursday, November 5, 2020

19                      VOLUME I

20

21 Stenographically Reported by:
   Mechelle S. Gonzalez
22 CSR No. 13250
   Job No. 96642
23

24

25 PAGES 1 - 291

EXHIBIT
6

```
 1              With that, I will turn it over to

 2    Mr. Crawford, who is the receiver in this matter.

 3              Mr. Crawford?

 4              MR. CRAWFORD:  Thank you, Mr. Buffa.

 5

 6                         EXAMINATION

 7         BY MR. CRAWFORD:

 8         Q.  Good morning, Mr. Asher.  My name is

 9    Kelly Crawford.  I am the receiver in this now

10    appointed by the United States Federal District

11    Court, Northern District of Texas.

12              Do you understand that?

13         A.  Yes, I do.

14         Q.  And you understand that I do not work for

15    any of the plaintiffs in this case.  I report to

16    Judge Lindsay as his agent.

17         A.  I understand.

18         Q.  Have you ever had your deposition taken

19    before?

20         A.  I have.

21         Q.  How many times?

22         A.  Approximately three and perhaps as high as

23    five.

24         Q.  When was the last time you had your

25    deposition taken?
```

1         A.   To the best of my knowledge as I'm here

2    before you today, it was within 24 months.

3         Q.   And what was the occasion of that

4    deposition?

5         A.   I believe it was a civil dispute with a

6    former employee.

7         Q.   What was the name of the former employee?

8         A.   I believe his name is Daniel Alway

9    (Phonetic).

10        Q.   Do you understand, Mr. Asher, that your

11   testimony here today is under oath?  It is as if you

12   were in a physical courtroom sitting in a courtroom

13   before Judge Lindsay.

14             Do you understand that?

15        A.   I understand.

16        Q.   Okay.  And just to go over a few

17   housekeeping rules, you will be sure to give a

18   verbal response to my questions as opposed to a

19   nodding or shaking of the head so the court reporter

20   can get that transcribed.

21             Is that agreeable to you?

22        A.   Mr. Crawford, could you please repeat the

23   question?  There was an audio delay.

24        Q.   Okay.  I want to just make as a

25   housekeeping matter that you give a verbal response

Trustpoint.One | Alderson.
www.trustpoint.one
www.aldersonreporting.com
800 FOR DEPO
(800.367.3376)
APP000032

Lucas Asher Vol. I

```
 1                 BY MR. CRAWFORD:

 2        Q.  Are you taking any medications, Mr. Asher,

 3   that would impede or impair your ability to testify

 4   truthfully here today?

 5        A.  I'm not.

 6        Q.  Do you have a United States passport?

 7        A.  I have an American passport.

 8        Q.  And -- and where is that passport?

 9        A.  It's in my backpack.

10        Q.  Where is your backpack?

11        A.  At a place I'm staying at.

12        Q.  Where are you staying?

13        A.  On a couch.

14        Q.  Whose couch?

15        A.  John's.

16        Q.  John who?

17        A.  Wilson.

18        Q.  Where does John Wilson live?

19        A.  In West Hollywood.

20        Q.  How do you know John Wilson?

21        A.  Through my religious community.

22        Q.  What's the name of your religion community?

23        A.  I'm Jewish.

24        Q.  When was the last time you used your

25   American passport?
```

```
 1        Q.  A day?

 2        A.  It was not on the day.

 3        Q.  Then when was it?

 4        A.  At some point within a day and a week.

 5        Q.  Okay.  So when I get your passport, I will

 6   be able to see when you entered the United States,

 7   correct?

 8        A.  I would be more than happy to give you my

 9   passport.

10        Q.  Okay.  And is it your best recollection as

11   you testify under oath that you don't remember how

12   many days it was after September 24th that you

13   returned to the United States?

14        A.  It was under a week.

15        Q.  And that's your very best recollection.

16   You don't know if it was one day or seven days?

17        A.  I don't remember the specific day.  It was

18   within a week.

19        Q.  Again, was it one day, two days,

20   three days, four days, five days, six days, or

21   seven days?  Your best recollection.

22        A.  I was emotionally distraught at the time,

23   and I don't remember the specific day.  It was

24   within a few days of hearing of the event.

25        Q.  Okay.  What's a "few days"?  Three days?
```

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800 FOR DEPO
(800.367.3376)
APP000034

```
 1           A.   I don't remember the specific time frame,
 2      sir.  It was within a few days to a week.
 3           Q.   I believe September 24th was a Thursday.
 4                So did you return by Sunday?
 5           A.   It's quite possible.  I don't remember the
 6      specific day, though.
 7           Q.   Prior to your trip to Mexico, when was the
 8      last time you used your passport?
 9           A.   I believe it had been a while.  I'm trying
10      to recall because it had been a while.  I believe,
11      to the best of my recollection as I'm here before
12      you today, I had gone to Mexico again.
13           Q.   And what was the purpose of your trip to
14      Mexico most recently?
15           A.   I'm a professional skydiver, and it was for
16      skydiving.
17           Q.   And was that the purpose of your trip to
18      Mexico the previous time as well?
19           A.   Correct.
20           Q.   Do you own a parachute?
21           A.   I lease a parachute.
22           Q.   Do you own any interest in any aircraft?
23           A.   I do not.
24           Q.   Do you have any interest in any type of a
25      jet-share arrangement?
```

Trustpoint.One   Alderson.          www.trustpoint.one          800 FOR DEPO
                                     www.aldersonreporting.com          APP000035
                                                                        (800.367.3376)

```
 1          Q.   Is it your testimony under oath that during

 2     that conversation with Simon you never discussed

 3     your deposition?

 4          A.   Could you please repeat the question, sir?

 5          Q.   Is it your testimony here today under oath

 6     that during that discussion with Simon yesterday you

 7     never discussed with him your deposition that you

 8     are giving here today?

 9          A.   I did not discuss it with anybody but my

10     counsel.

11          Q.   Where are you sitting for this deposition?

12     Whose -- whose house?

13          A.   I'm not at a house.

14          Q.   Okay.  Where are you?

15          A.   It's a side garage from an individual named

16     Kristen.

17          Q.   What is Kristen's last name?

18          A.   I don't know.  She's a friend of my friend

19     Maudie (Phonetic).

20          Q.   And what's Maudie's last name?

21          A.   Perry (Phonetic).

22          Q.   Perry?

23          A.   Yes.

24          Q.   How do you know Maudie Perry?

25          A.   Through other friends.  It was referred to
```

Trustpoint.One   Alderson.          www.trustpoint.one          800 FOR DEPO
                              www.aldersonreporting.com        APP000036
                                                              (800.367.3376)

```
 1          Q.   What's the name of the attorney who
 2     assisted you with that?
 3          A.   I don't recall the name, but I spoke to
 4     Greenberg Traurig, a law firm.
 5          Q.   When was the last time you had any
 6     communication with an attorney from
 7     Greenberg Traurig?
 8          A.   I believe within eight to four years ago.
 9          Q.   Four to eight years ago?
10          A.   Yes.
11          Q.   Mr. Asher, where are your personal
12     belongings?
13          A.   Could you define "personal belongings,"
14     please?
15          Q.   Your clothes, your wallet, your watches,
16     anything that you would need to live on a day-to-day
17     basis.
18          A.   I don't have watches.  My clothes are in a
19     backpack, and I carry them with me.
20          Q.   Do you have use of an automobile?
21          A.   I do not.
22          Q.   What is your current source of income?
23          A.   I don't have a current source of income as
24     I am standing before you today.
25          Q.   Have you made any purchases other than for
```

Trustpoint.One   Alderson   www.trustpoint.one
www.aldersonreporting.com   APP000037   800 FOR DEPO
(800.367.3376)

```
 1     food and water since receiving the court's order of

 2     September 22nd of 2020?

 3          A.   I don't recall.

 4          Q.   You don't recall?

 5               We'll start with this morning.  Did you

 6     make any purchases this morning?

 7          A.   I did.  I purchased coffee.

 8          Q.   Okay.  And how did you pay for the coffee

 9     that you purchased?

10          A.   One of my bandmates lent me the money for

11     coffee.

12          Q.   Did you make any purchases yesterday?

13          A.   I believe food and coffee.

14          Q.   And how did you pay for food and coffee?

15          A.   Friends paid for it.

16          Q.   Have you made any purchases of anything

17     besides food and drink in the last 30 days?

18          A.   I believe I have.

19          Q.   And where did you get the money to make

20     those purchases?

21          A.   Through friends.

22          Q.   Have you used an ATM machine since

23     September 24th of 2020?

24          A.   I have not.

25          Q.   Have you used any credit card to make
```

Trustpoint.One  Alderson.
www.trustpoint.one
www.AldersonReporting.com
800.FOR.DEPO
(800.367.3376)
APP000038

1         Q.   As you sit here today, you don't recall; is

2    that your testimony?

3         A.   I don't recall.

4         Q.   All right.   What's your cell phone number?

5         A.   I don't recall.

6         Q.   Where is your cell phone?

7         A.   At the couch I'm staying on.

8         Q.   How long have you had that cell phone?

9         A.   I believe a few weeks.

10        Q.   Did you obtain the cell phone after

11   September 24th of 2020?

12        A.   I did.

13        Q.   And where did you obtain that?

14        A.   It's through, I believe, T-Mobile.

15        Q.   How did you pay for that cell phone?

16        A.   I believe I used a card.

17        Q.   Apple card?

18        A.   I believe so.

19        Q.   What did you do with your cell phone that

20   you owned prior to September 24th of 2020?

21        A.   I accidentally lost it skydiving.

22        Q.   So is it your testimony under oath,

23   Mr. Asher, that when you reentered the country from

24   your trip to Mexico after September 24th of 2020,

25   you did not have in your possession your cell phone?

Trustpoint.One | Alderson.    www.trustpoint.one
www.aldersonreporting.com
800-FOR-DEPO
APP000039
(800.367.3376)

```
 1        Q.  Who are the friends and family who are

 2   paying for your legal services to Mr. Spencer?

 3        A.  I believe they vary.

 4        Q.  Let's start with your family members.  Who

 5   are the family members?

 6        A.  None.

 7        Q.  Pardon?

 8        A.  I don't have any family members helping.

 9        Q.  Well, you just testified earlier that

10   friends and family were the ones providing the

11   compensation for Mr. Spencer.

12             Is that not correct?

13        A.  I did, but I didn't stipulate that it was

14   my family.

15        Q.  What are the names of the friends who are

16   providing moneys to Mr. Spencer for your

17   representation?

18        A.  I believe one of them --

19             I'm sorry.  There was a sound.

20             Can you repeat that?

21        Q.  What are the names of the individual

22   friends or family of the friends who are providing

23   compensation to Mr. Spencer for your representation?

24        A.  I believe they vary.

25        Q.  Name the first one.  Name the first person.
```

Trustpoint.One   Alderson.
www.trustpoint.one
www.aldersonreporting.com
800 FOR DEPO
(800.367.3376)
APP000040

```
1          A.  The first retainer I believe was paid by an

2     individual named Andrew.

3          Q.  What is Andrew's last name?

4          A.  I don't know.

5          Q.  What was the amount of the retainer?

6          A.  I was told it was 25,000.

7          Q.  Is that Andrew Saulton (Phonetic)?

8          A.  I don't know his last name.

9          Q.  Do you know Andrew?

10         A.  I don't.

11         Q.  Was this somebody who Simon -- was a friend

12    of Simon?

13         A.  Correct.

14         Q.  Who else was providing a retainer to

15    Mr. Spencer on your behalf?

16         A.  My bandmate, Christian.

17         Q.  How much has Christian paid to Mr. Spencer?

18         A.  It's for a separate matter, and it's

19    protected under privilege.

20              MR. SPENCER:  You can tell him the amount,

21    Lucas.

22              THE WITNESS:  5,000.

23              BY MR. CRAWFORD:

24         Q.  Who else has provided moneys to Mr. Spencer

25    for your representation?
```

Trustpoint.One  Alderson
www.trustpoint.one
www.aldersonreporting.com

800.FOR.DEPO
(800.367.3376)

APP000041

```
 1    what was available for me as my investment share,

 2    not the entire corporation.

 3           And then the -- to the best of my

 4    understanding, the private interest foundation was

 5    the beneficial owner of the corporation.

 6           BY MR. CRAWFORD:

 7       Q.  So, Mr. Asher, why did you decide to use an

 8    offshore entity to own TMTE, Inc. and your interest

 9    in TMTE?

10       A.  I'm interested in ecology and the

11    environment, and specifically the Gamboa rainforest

12    in Panama and the surrounding jungle and natural

13    landscapes were interesting to me.

14       Q.  And how does setting up an offshore entity

15    to own that stock help the rainforest?

16       A.  Well, because I was planning on spending

17    more time there and pursuing ecological pursuits.

18       Q.  How many times have you been to Panama?

19       A.  I believe once.

20       Q.  And was that for the purpose of setting up

21    these offshore entities?

22       A.  Correct.

23       Q.  Other than going to set up these offshore

24    entities, have you made any other visits to Panama?

25       A.  No.
```

Trustpoint.One  Alderson.    www.trustpoint.one
www.aldersonreporting.com    800.FOR.DEPO
(800.367.3376)
APP000042

Case 3:20-cv-02910-L   Document 196   Filed 11/23/20   Page 43 of 83   PageID 2811

8          Q.   And what was your e-mail address?

9          A.   Asher@towerequity.com.

10         Q.   And did you access any records of Tower

11    Equity that were in the cloud after September 24th

12    of 2020?

13         A.   I -- I used the e-mail.  I don't recall

14    accessing records.  I used the e-mail.

15         Q.   Do you recall ever entering a login

16    password to access records after September 24th of

17    2020?

18         A.   I don't recall.

19         Q.   You don't know one way or the other?

20         A.   I don't recall accessing any records.

21         Q.   I want to make sure I understand your

22    testimony.

23              So to the best of your recollection, you do

24    not recall ever entering any login and entering your

25    password to gain access to the Tower Equity records?

1          A.   To the best of my recollection, I did not

2     enter a password or login to access records.

3     Notwithstanding, I did use the e-mail to reach out

4     to various attorneys, and I did log in to my e-mail,

5     asher@towerequity.com.

6          Q.   What was the password used?

7          A.   I don't recall.

·ss.

21          Q.   So where can I find the login and password

22     for Tower Equity?

23          A.   I can give it to you.

Trustpoint.One  Alderson.
www.trustpoint.one
www.aldersonreporting.com
800 FOR DEPO
(800.367.3376)
APP000044

10          Q.  And so let's go back to -- you said there

11     was a fractional interest in the Morgan Stanley

12     building.  At what location?

13          A.  It's in the state of Florida.  I don't

14     recall the location.

15          Q.  And who handled the purchase of that

16     fractional interest?

17          A.  I did.

18          Q.  And so when was that purchase made?

19          A.  It would have been within the past three

20     years.

21          Q.  So is it your testimony under oath that of

22     your best recollection, you have no idea where in

23     the state of Florida this fractional interest in

24     this building was purchased?

25          A.  As I'm standing before you today, I don't

```
 1    recall the specific address in the state of Florida.

 2         Q.  Okay.  Do you know the city?

 3         A.  I -- I can't recall at the time I'm before

 4    you today.

 5         Q.  You don't know the city of the building

 6    which you purchased the fractional interest of?

 7         A.  At the time before you today, I don't

 8    recall the city.
```

```
16         Q.  Do you recall how much money was paid for

17    the fractional interest of the Morgan Stanley

18    building somewhere in the state of Florida?

19         A.  I can't recall.

20         Q.  Was it more than $5 million?

21         A.  Less.

22         Q.  Okay.  How much less?

23         A.  Substantially less.

24         Q.  And I'm looking for a rough approximation.

25    So we can spend another hour going over it.
```

```
1              Was it more than a dollar?

2      A.  Yes.

3      Q.  Okay.  Was it more than $10?

4      A.  Yes.

5      Q.  Was it more than $50?

6      A.  Yes.

7      Q.  Okay.

8              MR. SPENCER:  Lucas, I'm sorry to

9      interrupt.  Lucas, could you just give him a rough

10     estimate?  You don't have to be precise.  Give him a

11     rough estimate to the best of your knowledge.

12             THE WITNESS:  To the best of my knowledge,

13     it was below a quarter of a million dollars.

14             BY MR. CRAWFORD:

15     Q.  How far below, a rough estimate?  Specific

16     range?

17     A.  Out of respect for the legal process, I

18     have to defer that I don't recall because I don't

19     want to give the wrong number.
```

```
23        Q.  Okay.  Does any person or entity owe you

24     money, personal?

25        A.  Again, it's possible.  I don't recall
```

```
1      particulars.
```

Trustpoint.One   Alderson    www.trustpoint.one    800 FOR DEPO
www.aldersonreporting.com    (800.367.3376)
APP000048

```
 6          Q.  As of September 21st of 2020, what bank

 7     accounts are you aware of that were active that you

 8     were using in which you were a signatory?

 9          A.  JPMorgan.

10          Q.  Okay.

11          A.  That's all I recall at this time.
```

14        Q.  Okay.  What attorneys did you use to help

15    you with your venture capital investments on behalf

16    of Tower Equity?

17        A.  I don't recall.

 4          Q.   Has Tower Equity done any business with

 5     Charles Schwab with your venture capital

 6     transactions that you mentioned previously?

 7          A.   I don't recall.

 8          Q.   Have any of the other defendants, to your

 9     knowledge, ever done any business with

10     Charles Schwab or had any accounts with

11     Charles Schwab in the last three years?

12          A.   I don't recall.

16          A.   I believe they handled an IPO for something

17     we had an interest with, and I do recall them

18     e-mailing us and saying that they had securities

19     that were ours via an IPO that occurred.  That's the

20     full extent of what I know.

21          Q.   What was the IPO?

22          A.   I don't recall.

Trustpoint.One   Alderson.          www.trustpoint.one          800-FOR-DEPO
                                     www.aldersonreporting.com         (800.367.3376)
APP000051

```
1              BY MR. CRAWFORD:

2         Q.  Mr. Asher, in the year 2019, did you

3    receive any compensation, income, or other moneys

4    from TMTE?

5         A.  I believe I did.

6         Q.  Do you know how much?

7         A.  I don't.

8         Q.  A million dollars?

9         A.  I don't know how much.

10        Q.  You have no idea, as you sit here today,

11   how much you received last year from TMTE?  Is that

12   your testimony?

13        A.  I don't recall how much.

14        Q.  Do you have a rough approximation?

15        A.  I don't recall how much at this time before

16   you today.

17        Q.  Okay.  And in 2019, did you receive any

18   compensation, income, or moneys from Chase Metals?

19        A.  I don't recall.

20        Q.  Same question for Barrick Capital?

21        A.  I don't recall, and if I can in good faith

22   tell you why is because I didn't manage the bank

23   accounts, so I don't even believe I was on those

24   accounts as a signer.

25        Q.  Which bank accounts are you talking about?
```

Trustpoint.One  Alderson.    www.trustpoint.one
www.aldersonreporting.com    APP000052    800 FOR DEPO
(800.367.3376)

```
 1            A.   The aforementioned corporations you

 2      referenced.

 3            Q.   You've never been a signatory on any bank

 4      account for TMTE?  Is that your testimony?

 5            A.   I don't recall that I ever have.

 6            Q.   Have you ever been a signatory on any bank

 7      account anywhere in the world for Chase Metals?

 8            A.   I don't recall that I have either.

 9            Q.   Have you ever been a signatory on any bank

10      account anywhere in the world for Barrick Capital?

11            A.   I don't believe I have.

12            Q.   Same question for Tower Equity.

13            A.   I don't believe that I have.

14            Q.   Did you receive any income, compensation,

15      or moneys in 2019 from Tower Equity?

16            A.   I believe that I did.

17            Q.   How much did you receive?

18            A.   I don't recall.
```

Trustpoint.One   Alderson.          www.trustpoint.one
www.aldersonreporting.com          800-FOR-DEPO
(800.367.3376)
APP000053

```
23          Q.   Did you file a tax return for 2018?

24          A.   I believe that I did.

25          Q.   And do you remember the amount of your
```

800 FOR DEPO
APP000054 (800.367.3376)

```
 1    gross income in 2018?

 2         A.  I do not file my own returns, and I hired

 3    and relied on people to do that for me.

 4         Q.  Did you sign your federal tax return?

 5         A.  I believe that I did.

 6         Q.  And so you didn't look at your tax return

 7    before you signed it?  Is that your testimony under

 8    oath?

 9         A.  I don't recall what the amount was.

10         Q.  That wasn't my question.

11         Did you read your tax return in 2018 before

12    you signed it?

13         A.  I presume that I read it.

14         Q.  Where is that tax return?

15         A.  I don't know.

16         Q.  You have no idea?

17         A.  I don't know.  It could have been at my

18    office, or it could have been at my accountant's

19    office.  As I'm before you today, I don't know.

20         Q.  And your accountant for 2018 was who?

21         A.  I don't recall.

22         Q.  Have you ever executed a financial

23    statement in the past three years?

24         A.  Could you please define "financial

25    statement"?
```

Trustpoint.One   Alderson.          www.trustpoint.one          800 FOR DEPO
                                    www.aldersonreporting.com   APP000055
                                                                (800.367.3376)

```
1          Q.   A statement under oath that attests to your

2     financial condition.

3          A.   I don't recall.
```

Trustpoint.One  Alderson.          www.trustpoint.one           800 FOR DEPO
                               www.aldersonreporting.com                  (800.367.3376)
APP000056

```
1          Q.   Okay.   What phone numbers have you used

2     since 2017?

3          A.   I don't know.

4          Q.   What was the cell phone number on the cell

5     phone that you lost recently?

6          A.   I don't recall.

7          Q.   What's -- what's your current cell phone

8     number?

9          A.   I don't know.
```

Trustpoint.One   Alderson
www.trustpoint.one
www.aldersonreporting.com
800 FOR DEPO
APP000057
(800.367.3376)

 8          Q.  Okay.  And you mentioned salespeople who

 9     worked for Tower Equity.

10              Who were the salespeople that worked for

11     Tower Equity?

12          A.  I don't recall.

13          Q.  Were any of the salespeople who worked for

14     Tower Equity also salespeople for TMTE?

15          A.  I don't recall at this time.

16          Q.  You don't know one way or the other?

17          A.  I don't recall at the time I'm before you

18     today.

Trustpoint.One  Alderson.          www.trustpoint.one          800 FOR DEPO
                              www.aldersonreporting.com     APP000058
                                                            (800.367.3376)

```
1          A.  I believe it was made this year.

2          Q.  How much was invested?

3          A.  I don't recall.

4          Q.  A million dollars?

5          A.  I don't recall at the time I'm before you

6     today.

7          Q.  And you're saying it was invested in this

8     year.  Was it invested in the last three months?

9          A.  I don't recall the specific time frame.
```

**Kelly Crawford**

| | |
|---|---|
| **From:** | Arnold Spencer <arnoldspencer75225@gmail.com> |
| **Sent:** | Friday, November 20, 2020 6:26 PM |
| **To:** | Kelly Crawford |
| **Subject:** | Explanation regarding 9/29/2020 Wire Transactions out of Bank of America Account in name of USA Accounts, Inc. |
| **Attachments:** | USA ACCOUNTS INC..pdf; Aug Stock purchase agreement page 1 .pdf; Aug Stock purchase agreement page 2.pdf; Written consent of the sole shareholder.pdf; Talent Writers Invoice.pdf; The voice inc invoice.pdf; PastedGraphic-2.tiff |

Kelly-

You asked me to investigate certain wire transactions initiated by Lucas Asher on September 29, 2020 out of a Bank of America account in name of USA Accounts, Inc. You were concerned that Mr. Asher may have violated the terms of the Statutory Restraining Orders by wiring these funds after he had received notice of the restraining order.

With the benefit of some research, it does not appear that these transactions violated the Court order because these funds did not belong to Lucas Asher or any of the other named defendants and these funds were not under the control of Lucas Asher or any of the named defendants.

I believe that Mr. Asher testified in his asset deposition earlier this month that he had from time to time set up corporate entities for other entrepreneurs. USA Accounts, Inc. was one such company. Mr. Asher set up USA Accounts, Inc. as a Delaware corporation on August 17 2020. Shortly thereafter, on August 25, 2020, Mr. Asher transferred the corporation to TPH Boss, Inc., a company owned and controlled by Athena Hunter. Ms. Hunter is not associated with any of the corporate Defendants in this case, and did not receive any funds from any of the Defendants in this case. TPH, Inc. appointed Mr. Asher as an agent authorized to make transfers out of the USA Accounts, Inc bank account during the transition period. I have not seen the USA Accounts, Inc. bank account statements other than the pages you forwarded to me, but filling in the blanks, I assume in excess of $550,000 was deposited into the TPB account after August 25th, such funds belonging to TPH Boss and Athena Hunter. Unrelated to, but at approximately the same time as, the entry of the Order in this case, USA Accounts, Inc. received several invoices. Mr Asher was instructed as an agent of USA Accounts, Inc. to transfer funds out of the USA Accounts, Inc. to pay these invoices.

I am attaching relevant documents in support of the transactions described above. Please contact me if you have any questions. Please let me know if this addresses your concerns or if you intend to go forward with a Motion to Show Cause. Mr. Asher continues to offer to cooperate with the Receiver consistent with the Court's Order.

Arnold

Managing Partner

Arnold A. Spencer
Managing Partner

1



APP000060

# Apostille

*(Convention de La Haye du 5 Octobre 1961)*

1.  Country: *United States of America*

    *This public document:*
2.  *has been signed by Jeffrey W. Bullock*

3.  *acting in the capacity of Secretary Of State Of Delaware*

4.  *bears the seal/stamp of Office Of Secretary Of State*

## Certified

5.  *at Dover, Delaware*

6.  *seventeenth day of August, A.D. 2020*

7.  *by Secretary of State, Delaware Department of State*

8.  *No.203478624*

9.  *Seal/Stamp:*



10.  Signature:

Jeffrey W. Bullock, Secretary of State

APP000061

# Delaware

Page 1

## The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "USA ACCOUNTS,
INC", FILED IN THIS OFFICE ON THE SEVENTEENTH DAY OF AUGUST,
A.D. 2020, AT 7:59 O`CLOCK A.M.



Jeffrey W. Bullock, Secretary of State

3455097  8100
SR# 20206769404

Authentication: 203478689
Date: 08-17-20

You may verify this certificate online at corp.delaware.gov/authver.shtml

**APP000062**

# STATE *of* DELAWARE
# CERTIFICATE *of* INCORPORATION
# USA Accounts, Inc.

First:          The name of the corporation is USA Accounts, Inc.

Second:         Its registered office in the state of Delaware is located at 112
                Capitol Trail Suite A, Newark, New Castle, DE, 19711. The registered
                agent thereof is SOCIAL ENTERPRISES LLC.

Third:          The purpose of the corporation is to engage in any lawful act or
                activity for which corporations may be organized under the
                General Corporation Law of Delaware,

Fourth:         The total authorized capital stock of this corporation shall consist of one thousand
                (1000) shares of common stock, all of which shares will be with no par value.

Fifth:          This corporation reserves the right to amend, alter, change or
                repeal any provision contained in this certificate of Incorporation,
                in the manner now or hereafter prescribed by statute, and all rights
                or powers conferred upon stockholders and directors herein are
                granted subject to this reservation.

Sixth:          Lucas Asher is the Incorporator at 8383 Wilshire Blvd, 742 Beverly Hills,
                CA 90211 United States.

I, THE UNDERSIGNED incorporator named herein, for the purpose of forming a corporation to do business within and without the State of Delaware, and in pursuance of and under the laws of the State of Delaware, do make and file this Certificate of Incorporation, hereby declaring and certifying that the facts herein stated are true, and accordingly, I have herein to set my hand and seal this 17th Day of August, 2020.

_____
Lucas Asher
(Incorporator of USA Accounts, Inc.)

State of Delaware
Secretary of State
Division of Corporations
Delivered 07:59 AM 08/17/2020
FILED 07:59 AM 08/17/2020
SR 20206769404 · File Number 3455097

State of Delaware

# STOCK PURCHASE AGREEMENT

This Stock Purchase Agreement (this "Agreement") is made this 25 day of August, 2020, between USA ACCOUNTS, INC, located at 112 Capitol Trail suite a , Newark, DE 19711 (the "Seller") and TPH BOSS INC, located at 1201 ORANGE ST STE 600 ONE COMMERCE CENTER, WILMINGTON, DE 19801 (the "Purchaser"). The parties agree to the following:

**I. Shares.** The Seller is the owner of one thousand (1000) shares of Class Common Stock Stock (the "Stock") of USA ACCOUNTS, INC. (the "Company"), a Delaware Corporation.

**II. Purchase and Sale.** Seller agrees to sell one thousand (1000) shares to Purchaser for $1.00 per share, for a total price of $1,000.00 dollars. Seller shall deliver to Purchaser stock certificates representing this stock.

**III. Delivery.** Seller agrees to deliver the stock certificates on August 25th, 2020.

**IV. Seller's Representations.** Seller represents that:

1. The Company is in good standing under the laws of the State of Delaware.

2. The Seller is the record owner of the stock.

3. The stock is free and clear of all security interests, liens, encumbrances, equities, or other charges.

4. There are no other claims or restrictions on the Stock.

5. There is no act or omission that would give rise to any claim for commission, fees, or other payment in relation to the transaction.

6. Seller does not need approval from any officer of the corporation to sell the shares.

**V. Expenses.** The parties are responsible for their own fees, including legal counsel, accountants, and other agents incurred pursuant to this Agreement regardless of whether this Agreement is executed.

**VI. Indemnification.** The Purchaser and Seller agree to indemnify and hold harmless the other from any claim, damage, liability, loss, expense, arising out their failure to perform the obligations set forth in this agreement.

**VII. Miscellaneous**

1. **Dispute Resolution.** Any dispute arising out of or related to this Agreement that the Purchaser and Seller are unable to resolve by themselves shall be settled by arbitration in the

1 / 2

APP000064

State of Delaware in accordance with the rules of the American Arbitration Association. The written decision of the arbitrator(s), as applicable, shall be final and binding. Judgment on a monetary award or enforcement of injunctive or specific performance relief granted by the arbitrator(s) may be entered in any court having jurisdiction over the matter.

2. **Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Purchaser and Seller and their respective legal representatives, heirs, administrators, executors, successors and permitted assigns.

3. **Severability.** If any provision of this Agreement is held to be invalid, illegal or unenforceable in whole or in part, the remaining provisions shall not be affected and shall continue to be valid, legal and enforceable as though the invalid, illegal or unenforceable parts had not been included in this Agreement.

4. **Governing Law.** The terms of this Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, not including its conflicts of law provisions.

5. **Headings.** The section headings herein are for reference purposes only and shall not otherwise affect the meaning, construction or interpretation of any provision in this Agreement.

6. **Entire Agreement.** This Agreement contains the entire understanding between the parties and supersedes and cancels all prior agreements, whether oral or written, with respect to such subject matter.

7. **Amendment.** This Agreement may be amended or modified only by a written agreement signed by both parties.

8. **Notices.** Any notice or other communication given or made to any party under this Agreement shall be in writing and delivered by hand, sent by overnight courier service or sent by certified or registered mail, return receipt requested, to the address in Exhibit 1 or to another address as that party may subsequently designate by notice and shall be deemed given on the date of delivery.

9. **Waiver.** No party shall be deemed to have waived any provision of this Agreement or the exercise of any rights held under this Agreement unless such waiver is made expressly and in writing. Waiver of a breach or violation of any provision of this Agreement shall not constitute a waiver of any other subsequent breach or violation.

**IN WITNESS WHEREOF**, this Agreement has been executed and delivered as of the date first written above.

| | |
|---|---|
| _8-25-2020_ | |
| Purchaser Signature | TPH BOSS INC |
| | Purchaser Full Name |
| _8-25-2020_ | |
| Seller Signature | USA ACCOUNTS, INC |
| | Seller Full Name |

2 / 2

**WRITTEN CONSENT OF
THE SOLE SHAREHOLDER OF
USA ACCOUNTS, INC.**

Dated:  August 25th, 2020

The undersigned, being the sole shareholder ("Shareholder") of USA Accounts, Inc. a Delaware corporation ("Company"), does hereby take the following actions and consent to and approve the adoption of the following resolutions (these "Resolutions") with the same force and effect as though adopted at duly convened and held meetings of the sole shareholder:

WHEREAS, the Shareholder desires to appoint Lucas Asher ("Agent") as a duly authorized agent of the Company for the following limited purposes:

- In order to increase operational efficiency of the Company, the Company authorizes agent to access funds in Company's operating account ("Account") for the *sole* **purpose** of paying third party invoices, *provided that,* such invoices are (i) in writing, (ii) first received, reviewed, and approved by the Shareholder or its designee or a duly appointed executive, officer, or manager of Company, and (iii) are for business expenses of the Company (collectively, the foregoing is the "Scope of Authority");

WHEREAS, the Scope of Authority is expressly limited as set forth above, and the Agent shall not have any additional authority or control unless otherwise vested by written consent of the Shareholder;

WHEREAS, the Agent shall not: (i) control the Account; or (ii) access funds in the Account for any purpose other than expressly authorized herein by the Scope of Authority or by subsequent written consent of the Shareholder expanding the Scope of Authority;

WHEREAS, the Agent's term of agency shall begin at 12:00 a.m. on August 25, 2020 and expire at 11:59 p.m. on December 31, 2020 unless earlier terminated by written consent of the Shareholder, which termination shall be in the Shareholder's sole discretion;

NOW, THEREFORE, BE IT RESOLVED, that, as of the date hereof, Agent is hereby appointed as a duly authorized agent of the Company, effective only from 12:00 a.m. on August 25, 2020 until 11:59 p.m. on December 31, 2020, unless earlier terminated by written consent of the Shareholder in the Shareholder's sole discretion, and only for the limited purposes set forth above in the Scope of Authority, and subject to the limitations as set forth above;

RESOLVED FURTHER, that all documents, agreements and instruments previously executed and delivered, and any and all actions previously taken by any officer, employee or agent of the Company in connection with or related to the matters set forth in, or reasonably contemplated or implied by, the foregoing resolutions be, and each of them hereby is, adopted, ratified, confirmed and approved in all respects and for all purposes as the acts and deeds of the Companies.

IN WITNESS WHEREOF, the undersigned has executed this Written Consent as of the date first set forth above.

SHAREHOLDER SIGNATURE:

**TPH BOSS, INC.**

**APP000066**

# ADS

Talent Writers, LLC

| | |
|---|---|
| **INVOICE NO.** | 20888915 |
| **DATE ISSUED** | August 29 2020 |

**SOLD TO ADDRESS**
USA Marketing, Inc.
Century Plaza Towers 2029 Century Park EastSuite #400NLos Angeles California 90067

**TERMS**
Payable on receipt

| ITEM / SERVICES | QTY | PRICE | TOTAL |
|---|---|---|---|
| SEO SERVICES | 1 | $ 90,000 | $ 90,000 |
| CPM  marketing ads | 1 | $210,000 | $210,000 |

TOTAL SERVICES & MEDIA CHARGES     $ 300,000

**TOTAL PAYABLE AMOUNT     $300,000**

# The Voice inc

*INVOICE*

INV0048

**DATE**
09/20/2020

**DUE**
On Receipt

**BALANCE DUE**
USD $250,000.00

**BILL TO**

**USA Accounts Inc**

(888) 725-7967

| DESCRIPTION | RATE | QTY | AMOUNT |
|-------------|------|-----|--------|
| Commission | $250,000.00 | 1 | $250,000.00 |
| | **TOTAL** | | $250,000.00 |
| | **BALANCE DUE** | | **USD $250,000.00** |

APP000068

# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF INCORPORATION OF "USA ACCOUNTS,
INC", FILED IN THIS OFFICE ON THE SEVENTEENTH DAY OF AUGUST,
A.D. 2020, AT 7:59 O`CLOCK A.M.

*Jeffrey W. Bullock, Secretary of State*

3455097  8100
SR# 20206769404

Authentication: 203478689
Date: 08-17-20

You may verify this certificate online at corp.delaware.gov/authver.s

**EXHIBIT 1**

**APP000069**

# STATE *of* DELAWARE
# CERTIFICATE *of* INCORPORATION
## USA Accounts, Inc.

First:  The name of the corporation is USA Accounts, Inc.

Second:  Its registered office in the state of Delaware is located at 112 Capitol Trail Suite A, Newark, New Castle, DE, 19711. The registered agent thereof is SOCIAL ENTERPRISES LLC.

Third:  The purpose of the corporation is to engage in any lawful act or activity for which corporations may be organized under the General Corporation Law of Delaware,

Fourth:  The total authorized capital stock of this corporation shall consist of one thousand (1000) shares of common stock, all of which shares will be with no par value.

Fifth:  This corporation reserves the right to amend, alter, change or repeal any provision contained in this certificate of Incorporation, in the manner now or hereafter prescribed by statute, and all rights or powers conferred upon stockholders and directors herein are granted subject to this reservation.

Sixth:  Lucas Asher is the Incorporator at 8383 Wilshire Blvd, 742 Beverly Hills, CA 90211 United States.

I, THE UNDERSIGNED incorporator named herein, for the purpose of forming a corporation to do business within and without the State of Delaware, and in pursuance of and under the laws of the State of Delaware, do make and file this Certificate of Incorporation, hereby declaring and certifying that the facts herein stated are true, and accordingly, I have herein to set my hand and seal this 17th Day of August, 2020.

_____
Lucas Asher
(Incorporator of USA Accounts, Inc.)

State of Delaware
Secretary of State
Division of Corporations
Delivered 07:59 AM 08/17/2020
FILED 07:59 AM 08/17/2020
SR 20206769404 - File Number 3455097

APP000070



INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

# USA ACCOUNTS, INC.

The Corporation is authorized to issue 1,000 Common Shares -- No Par Value

EXHIBIT
tabbles

# CERTIFICATES

SECRETARY-TREASURER          PRESIDENT

APP000071



USA ACCOUNTS, INC.

INCORPORATED UNDER THE LAWS OF THE STATE OF DELAWARE

The Corporation is authorized to issue 1,000 Common Shares – No Par Value

SHARES

NUMBER

This Certifies that

is the owner of

fully paid and non-assessable Shares of the above Corporation transferable only on the books of the Corporation by the holder hereof in person or by duly authorized Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and to be sealed with the Seal of the Corporation.

Dated

PRESIDENT

SECRETARY-TREASURER

APP000072

TRANSFER LEDGER



APP000073

| NAME OF CERTIFICATE HOLDER | PLACE OF RESIDENCE | TIME BECAME OWNER | CERTIFICATES ISSUED | | FROM WHOM TRANSFERRED (If Original Issue Enter As Such) |
|---|---|---|---|---|---|
| | | | CERTIF. NOS. | NO. SHARES* | |
| **A** | | | | | |
| **B** | | | | | |
| **C** | | | | | |
| **D** | | | | | |
| **E** | | | | | |
| **F** | | | | | |
| **G** | | | | | |

*If the certificates are issued by a Limited Liability Company, read as *units, membership interests* or *member interests*, as the case may be.

APP000074

| AMOUNT PAID THERON | DATE OF TRANSFER OF SHARES' | TO WHOM TRANSFERRED | CERTIFICATES SURRENDERED | | NUMBER OF SHARES' HELD (Balance) | VALUE OF TRANSFER TAX STAMPED AFFIXED |
|---|---|---|---|---|---|---|
| | | | CERTIF. NOS. | NO. SHARES' | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

APP000075

Census

Company Code : 132R
Company Name : First American Estate & Trust
As Of Date = 10/06/2020

Page No : 1

TriNet
Run Date : 10/06/2020 05:12:54 PM

| | PF Client | Company Code | Company Name | Employee ID | Employe SSN/ NID | Employee Name | First Name | Middle Name | Last Name | Business Title |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 9WK0 | 132R | First American Estate & Trust | 00002579067 | 0 | | | | | Sales Associate |
| 2 | 9WK0 | 132R | First American Estate & Trust | 00002424334 | 1 | | | | | Silver |
| 3 | 9WK0 | 132R | First American Estate & Trust | 00002579078 | 0 | | | | | Sales Associate |
| 4 | 9WK0 | 132R | First American Estate & Trust | 00002590438 | 1 | | | | | Sales Associate |
| 5 | 9WK0 | 132R | First American Estate & Trust | 00002620352 | 0 | | | | | Administrative Assistant |
| 6 | 9WK0 | 132R | First American Estate & Trust | 00002259559 | 1 | | | | | Silver |
| 7 | 9WK0 | 132R | First American Estate & Trust | 00002496898 | 1 | | | | | Junior Recruiter |
| 8 | 9WK0 | 132R | First American Estate & Trust | 00002579087 | 0 | | | | | Sales Associate |
| 9 | 9WK0 | 132R | First American Estate & Trust | 00002579095 | 0 | | | | | Sales Associate |
| 10 | 9WK0 | 132R | First American Estate & Trust | 00002485324 | 1 | | | | | Bronze |
| 11 | 9WK0 | 132R | First American Estate & Trust | 00002081005 | 1 | Hunter,Athena Maria | Athena | Maria | Hunter | Administrative Assistant |
| 12 | 9WK0 | 132R | First American Estate & Trust | 00002579099 | 0 | | | | | Sales Associate |
| 13 | 9WK0 | 132R | First American Estate & Trust | 00002294034 | 1 | | | | | Gold |
| 14 | 9WK0 | 132R | First American Estate & Trust | 00002081014 | 1 | | | | | Silver |
| 15 | 9WK0 | 132R | First American Estate & Trust | 00002492937 | 1 | | | | | Bronze |
| 16 | 9WK0 | 132R | First American Estate & Trust | 00002590485 | 0 | | | | | Sales Associate |
| 17 | 9WK0 | 132R | First American Estate & Trust | 00002579106 | 0 | | | | | Sales Associate |
| 18 | 9WK0 | 132R | First American Estate & Trust | 00002503132 | 1 | | | | | Bronze |
| 19 | 9WK0 | 132R | First American Estate & Trust | 00002560740 | 1 | | | | | Bronze |
| 20 | 9WK0 | 132R | First American Estate & Trust | 00002325925 | 1 | | | | | Bronze |
| 21 | 9WK0 | 132R | First American Estate & Trust | 00002261820 | 1 | | | | | Recruiting Assistant |
| 22 | 9WK0 | 132R | First American Estate & Trust | 00002458998 | 1 | | | | | Bronze |
| 23 | 9WK0 | 132R | First American Estate & Trust | 00002458917 | 1 | | | | | Bronze |
| 24 | 9WK0 | 132R | First American Estate & Trust | 00002080827 | 1 | | | | | Gold |
| 25 | 9WK0 | 132R | First American Estate & Trust | 00002443094 | 1 | | | | | Security |
| 26 | 9WK0 | 132R | First American Estate & Trust | 00002262779 | 1 | | | | | Platinum |
| 27 | 9WK0 | 132R | First American Estate & Trust | 00002262787 | 1 | | | | | Platinum |
| 28 | 9WK0 | 132R | First American Estate & Trust | 00002361496 | 2 | | | | | Trusted Advisor |
| 29 | 9WK0 | 132R | First American Estate & Trust | 00002579152 | 0 | | | | | Sales Associate |
| 30 | 9WK0 | 132R | First American Estate & Trust | 00002262252 | 1 | | | | | VP of Sales |
| 31 | 9WK0 | 132R | First American Estate & Trust | 00002493072 | 1 | | | | | Bronze |
| 32 | 9WK0 | 132R | First American Estate & Trust | 00002579157 | 0 | | | | | Sales Associate |
| 33 | 9WK0 | 132R | First American Estate & Trust | 00002579161 | 0 | | | | | Sales Associate |
| 34 | 9WK0 | 132R | First American Estate & Trust | 00002308788 | 1 | | | | | Bronze |
| 35 | 9WK0 | 132R | First American Estate & Trust | 00002503027 | 1 | | | | | Bronze |
| 36 | 9WK0 | 132R | First American Estate & Trust | 00002365540 | 1 | | | | | Bronze |
| 37 | 9WK0 | 132R | First American Estate & Trust | 00002361485 | 1 | | | | | Silver |
| 38 | 9WK0 | 132R | First American Estate & Trust | 00002476844 | 1 | | | | | Bronze |
| 39 | 9WK0 | 132R | First American Estate & Trust | 00010006373 | 0 | | | | | Consumer Services Manager |
| 40 | 9WK0 | 132R | First American Estate & Trust | 00002579168 | 0 | | | | | Sales Associate |
| 41 | 9WK0 | 132R | First American Estate & Trust | 00002263978 | 1 | | | | | Marketing Director |
| 42 | 9WK0 | 132R | First American Estate & Trust | 00010039574 | 0 | | | | | Customer Service |
| 43 | 9WK0 | 132R | First American Estate & Trust | 00002579172 | 0 | | | | | Sales Associate |
| 44 | 9WK0 | 132R | First American Estate & Trust | 00010008497 | 0 | | | | | Director of Marketing |
| 45 | 9WK0 | 132R | First American Estate & Trust | 00002458895 | 1 | | | | | Bronze |
| 46 | 9WK0 | 132R | First American Estate & Trust | 00002590412 | 0 | | | | | Sales Associate |
| 47 | 9WK0 | 132R | First American Estate & Trust | 00002262214 | 1 | | | | | Bronze |
| 48 | 9WK0 | 132R | First American Estate & Trust | 00002579181 | 0 | | | | | Sales Associate |
| 49 | 9WK0 | 132R | First American Estate & Trust | 00002521501 | 1 | | | | | Executive Assistant |
| 50 | 9WK0 | 132R | First American Estate & Trust | 00002194506 | 1 | | | | | Administrative Assistant |
| 51 | 9WK0 | 132R | First American Estate & Trust | 00002261626 | 1 | | | | | Platinum |
| 52 | 9WK0 | 132R | First American Estate & Trust | 00002380077 | 1 | | | | | Bronze |
| 53 | 9WK0 | 132R | First American Estate & Trust | 00002254817 | 1 | | | | | Administrative Assistant |
| 54 | 9WK0 | 132R | First American Estate & Trust | 00010006913 | 0 | | | | | Recruiting Assistant |
| 55 | 9WK0 | 132R | First American Estate & Trust | 00002325922 | 1 | | | | | Silver |
| 56 | 9WK0 | 132R | First American Estate & Trust | 00002230325 | 1 | | | | | Bronze |
| 57 | 9WK0 | 132R | First American Estate & Trust | 00002262784 | 1 | | | | | Bronze |
| 58 | 9WK0 | 132R | First American Estate & Trust | 00002365499 | 1 | | | | | Silver |
| 59 | 9WK0 | 132R | First American Estate & Trust | 00002525761 | 1 | | | | | Bronze |
| 60 | 9WK0 | 132R | First American Estate & Trust | 00002036686 | 1 | | | | | Bronze |
| 61 | 9WK0 | 132R | First American Estate & Trust | 00002628449 | 1 | | | | | Bronze |
| 62 | 9WK0 | 132R | First American Estate & Trust | 00002261216 | 1 | | | | | Gold |
| 63 | 9WK0 | 132R | First American Estate & Trust | 00001930526 | 2 | | | | | Media Buyer |
| 64 | 9WK0 | 132R | First American Estate & Trust | 00002451457 | 1 | | | | | Bronze |
| 65 | 9WK0 | 132R | First American Estate & Trust | 00002579184 | 0 | | | | | Sales Associate |
| 66 | 9WK0 | 132R | First American Estate & Trust | 00002614667 | 0 | | | | | Bronze |
| 67 | 9WK0 | 132R | First American Estate & Trust | 00002476818 | 1 | | | | | Bronze |
| 68 | 9WK0 | 132R | First American Estate & Trust | 00002503106 | 1 | | | | | Bronze |
| 69 | 9WK0 | 132R | First American Estate & Trust | 00002458993 | 1 | | | | | Bronze |
| 70 | 9WK0 | 132R | First American Estate & Trust | 00002579249 | 0 | | | | | Sales Associate |
| 71 | 9WK0 | 132R | First American Estate & Trust | 00002493163 | 1 | | | | | Bronze |
| 72 | 9WK0 | 132R | First American Estate & Trust | 00002257951 | 1 | Kohl,Randall Alan | Randall | Alan | Kohl | Platinum |

APP000076



**Kelly Crawford**

| | |
|---|---|
| **From:** | Diana Castellon ████████████ |
| **Sent:** | Wednesday, October 28, 2020 12:55 PM |
| **To:** | Metals Barrick |
| **Subject:** | Private Citizen |

From: Diana Castellon ████████████

**Name:** Diana Castellon ████████
**Email:** ████████████
**Subject:** Private Citizen

I was one of the recipients of this \"swindel\" with metals.com Athena Hunter, Walter Vera and Anthony Bowers were my contacts with Metals.com. They ensured me that my 0,000 were invested, only to find out I only have a little over $300,000 invested. Over $200,000 lost.

Sent from: http://metalsandbarrickcapitalreceivership.com/contact/



1

**APP000077**

**BEFORE THE ALASKA OFFICE OF ADMINISTRATIVE HEARINGS ON REFERRAL
BY THE ADMINISTRATOR OF SECURITIES**

| | |
|---|---|
| In the Matter of )<br><br>TTME, INC., AKA METALS.COM; )<br>CHASE METALS, INC.; WALTER VERA; )<br>ATHENA HUNTER; SEAN REZA; )<br>JONATHAN SACHS; DAVID BLEEDEN; )<br>and RANDALL KOHL[1] )<br><br>Respondents. )<br>_____ ) | OAH No. 20-0684-SEC<br>Agency No. 2019-00133 |

**ORDER RESCHEDULING CASE PLANNING CONFERENCE**

A telephonic case planning conference was held in this matter today. Mark Rasmussen participated on behalf of TTME, Inc., aka Metals.com, and the individual Respondents. Assistant Attorneys General Rob Schmidt and John Haley represented the Division of Banking and Securities.  As discussed and agreed at the conference:

(1) The parties will be working on a protective order.  Once they have stipulated as to the confidentiality of the record and any related proceedings, the Division will promptly file and serve the record.

(2) If the parties determine that mediation may be facilitative, Alternative Dispute Resolution may be requested by contacting the Office of Administrative Hearings (OAH) staff.

(3) Otherwise, a continued case planning conference will be held at the mutually agreed upon date of **October 13, 2020, at 11:00 a.m. Alaska time.**  The parties may be contacted from a blocked number at the time of the conference and will be called at their numbers of record unless updated information is provided to OAH.  Parties should be prepared to discuss the posture of the case including, if implicated, possible mutually convenient hearing dates.

---

[1]      When the original notices in these cases were distributed, a computer error led to an incomplete caption on those notices; the correct caption is set forth in this order.



**APP000078**

As always, either party may request a status conference sooner by contacting OAH staff.

DATED:  September 1, 2020.

By: *Danika Swanson*
Danika Swanson
Administrative Law Judge

**Certificate of Service**:  I certify that on September 2, 2020, a true and correct copy of this notice was distributed as follows:  Robert Schmidt (by email); Mark Rasmussen (by email); John Haley (by email), Dep't of Law central email (by email).

By: *Stephanie Peterson*
Office of Administrative Hearings

APP000079

**Department of State: Division of Corporations**

Allowable Characters

HOME

|  | Entity Details |
| --- | --- |

**THIS IS NOT A STATEMENT OF GOOD STANDING**

| File Number: | 7832381 | Incorporation Date / Formation Date: | **2/3/2020** (mm/dd/yyyy) |
| --- | --- | --- | --- |
| Entity Name: | **TPH BOSS INC** | | |
| Entity Kind: | **Corporation** | Entity Type: | **General** |
| Residency: | **Domestic** | State: | **DELAWARE** |

**REGISTERED AGENT INFORMATION**

| Name: | **AGENTS AND CORPORATIONS, INC.** | | |
| --- | --- | --- | --- |
| Address: | **1201 ORANGE ST STE 600 ONE COMMERCE CENTER** | | |
| City: | **WILMINGTON** | County: | **New Castle** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **302-575-0877** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ◯ Status   ◯ Status,Tax & History Information

[ Submit ]

[ View Search Results ]      [ New Entity Search ]

For help on a particular field click on the Field Tag to take you to the help area.

site map  |  privacy  |  about this site  |  contact us  |  translate  |  delaware.gov



EXHIBIT

APP000080

**Kelly Crawford**

| | |
|---|---|
| **From:** | graham@norrislawyer.com |
| **Sent:** | Monday, October 05, 2020 4:58 PM |
| **To:** | Peter Lewis |
| **Cc:** | Kelly Crawford |
| **Subject:** | CFTC, et al. v. TMTE, Inc., et al.; Case No. 3:20-cv-02910-L; Entity List |

Peter:

It was a pleasure speaking with you today. As we discussed, pursuant to the terms of the Order, I am providing a list of entities that I know about and can provide information on. I'm happy to explain the services I've provided if need be. In most cases, I resign and appoint my client as the new director/manager, with instructions to hold the initial meetings and to document ownership, As a result, what I have is entities with a client contact, but that doesn't necessarily equate to ownership. (TMTE, Inc. is a special case, as I have been requested to assist in documenting ownership for that entity). With that said, here is what I can provide information on:

**Lucas Asher Entities**

TMTE, Inc. / Chase Metals, Inc. / Chase Metals, LLC / Access Unlimited, LLC
Tower Holdings, Inc.
Retirement Insider, LLC
Best New, Inc.
USA Marketing, Inc.
Stuttgart Industrial, Inc. / Aqua Billboards, Inc.

**Simon Batashvili Entities**

Tower Estates Holdings, Inc.
Tower Property One, LLC
Tower Property Two, LLC
Tower Estates, Inc.
Newmont, Inc.

**Asher + Batashvili Entities**

Tower Equity, LLC
Select Financial, Inc.
Reagan Financial, Inc.
Egon Pearson, LLC
TX Admin, Inc.

I will start sending you what I have as quickly as possible, starting tomorrow.

Graham H. Norris, Jr.



**Norris Law Group, P.C.**

1156 South State Street, Suite 204    1712 Pioneer Avenue
Orem, UT  84097                        Cheyenne, WY  82001

1



APP000081

Phone: 801-932-1238
Fax: 801-951-4915
graham@norrislawyer.com
www.norrislawyer.com

Phone: 307-633-3545
Fax: 801-951-4915

*The information contained in this e-mail or fax is information protected by attorney-client and/or the attorney / work product privilege.  It is intended to for the use of the individual named above and the privileges are not waived by virtue of this having been sent by e-mail or fax.  If the person actually receiving this e-mail or fax or any other reader of the e-mail or fax is not the named recipient or the employee or agent responsible to deliver it to the named recipient, any use, dissemination, distribution or copying of the communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone and delete the original message from all computers by which it was received.*

**APP000082**