IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>ALABAMA SECURITIES COMMISSION, STATE OF ALASKA, ARIZONA CORPORATION COMMISSION, CALIFORNIA COMMISSIONER OF BUSINESS OVERSIGHT, COLORADO SECURITIES COMMISSIONER, STATE OF DELAWARE, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, OFFICE OF THE GEORGIA SECRETARY OF STATE, STATE OF HAWAII, SECURITIES ENFORCEMENT BRANCH, IDAHO DEPARTMENT OF FINANCE, INDIANA SECURITIES COMMISSIONER, IOWA INSURANCE COMMISSIONER, DOUGLAS M. OMMEN, OFFICE OF THE KANSAS SECURITIES COMMISSIONER, KENTUCKY DEPARTMENT OF FINANCIAL INSTITUTIONS, MAINE SECURITIES ADMINISTRATOR, STATE OF MARYLAND EX REL MARYLAND SECURITIES COMMISSIONER, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, MISSISSIPPI SECRETARY OF STATE, NEBRASKA DEPARTMENT OF BANKING & FINANCE, OFFICE OF THE NEVADA SECRETARY OF STATE, NEW MEXICO SECURITIES DIVISION, THE PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OKLAHOMA DEPARTMENT OF SECURITIES, SOUTH CAROLINA ATTORNEY GENERAL, SOUTH CAROLINA SECRETARY OF STATE, SOUTH DAKOTA DEPARTMENT OF LABOR & REGULATION, DIVISION OF | **PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY DEFENDANT LUCAS THOMAS ERB A/K/A LUCAS ASHER A/K/A LUKE ASHER SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATIONS OF THE COURT'S STATUTORY RESTRAINING ORDER AND CONSENT ORDER OF PRELIMINARY INJUNCTION**<br><br>Case No.: **3-20-CV-2910-L**<br><br>Judge: Judge Sam A. Lindsay |

INSURANCE, COMMISSIONER OF THE
TENNESSEE DEPARTMENT OF
COMMERCE AND INSURANCE, STATE
OF TEXAS, WASHINGTON STATE
DEPARTMENT OF FINANCIAL
INSTITUTIONS, WEST VIRGINIA
SECURITIES COMMISSION, AND STATE
OF WISCONSIN.

Plaintiffs,

v.

TMTE, INC. a/k/a METALS.COM, CHASE
METALS, INC., CHASE METALS, LLC,
BARRICK CAPITAL, INC., LUCAS
THOMAS ERB a/k/a LUCAS ASHER a/k/a
LUKE ASHER, and SIMON BATASHVILI,

Defendants;

and

TOWER EQUITY, LLC,

Relief Defendant.

## <u>TABLE OF CONTENTS</u>

PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER TO SHOW CAUSE AS TO WHY DEFENDANT LUCAS THOMAS ERB A/K/A LUCAS ASHER A/K/A LUKE ASHER SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR VIOLATIONS OF THE COURT'S STATUTORY RESTRAINING ORDER AND CONSENT ORDER OF PRELIMINARY INJUNCTION ............................ 1

I.      PROCEDURAL HISTORY ......................................................................... 3

II.     FACTS ......................................................................................................... 4

    A.      Timeline of Pertinent Events ............................................................. 5

    B.      Sale of the Ferrari ............................................................................. 6

    C.      Transfer and Dissipation of at least $550,000 of Receivership Assets ............ 7

    D.      Withholding vital information and records from the Receiver in contravention of the SRO and Consent Order and has failed to cooperate with the Receiver ............................................................ 8

    E.      Asher Made Material Misrepresentations at His Deposition to Prevent Discovery of Dissipated Assets and to Conceal Pertinent Information in Contravention of the Court's Orders ................................. 9

III.    ARGUMENT ............................................................................................. 10

    A.      The Plaintiffs and the Receiver Have Established a *Prima Facie* Case of Asher's Civil Contempt ................................................................ 10

        1.      The Court's Authority to Enforce the SRO and Consent PI Are Clear ........................................................................................... 10

        2.      Civil Contempt Is Appropriate Here ................................... 11

    B.      Asher Should Be Held in Civil Contempt and the Court Should Impose Sanctions for his Failure to Comply With The Court's Orders ..................... 13

        1.      The court has broad authority to fashion appropriate relief in civil contempt proceedings ........................................................ 13

        2.      Significant Sanctions Are Necessary and Appropriate Here ............. 14

IV.     CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

Cases                                                                                                      Page(s)

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
  228 F.3d 574 (5th Cir. 2000)..................................................................................... 13

*Berger v. Heckler*,
  771 F.2d 1556 (2d Cir.1985)...................................................................................... 14

*CFTC v. Armstrong*,
  284 F.3d (2d Cir. 2002)............................................................................................. 15

*CFTC v. Emerald Worldwide Holdings, Inc.*,
  2004 WL 3186580 (C.D. Cal. July 29, 2004) ............................................... 11, 12, 15

*CFTC and the State of Florida v. Weiss*,
  950 F.2d 1525 (11th Cir. 1992)................................................................................. 15

*Combs v. Ryan's Coal Company*,
  785 F.2d 970 (11th Cir.)............................................................................................ 12

*FDIC v. LeGrand*,
  43 F.3d 163 (5th Cir. 1995)....................................................................................... 15

*General Signal v. Donallco, Inc.*,
  787 F.2d 1376 (9th Cir. 1986)................................................................................... 11

*Gompers v. Buck's Stove & Range Co.*,
  221 U.S. 418 (1911) .................................................................................................. 15

*Hutto v. Finney*,
  437 U.S. 678 (1978) .................................................................................................. 15

*In re Bradley*,
  588 F.3d 254 (5th Cir. 2009)..................................................................................... 11

*In re Dinnan*,
  625 F.2d 1146 (5th Cir. 1980).............................................................................. 14, 15

*In re Zyprexa Injunction*,
  474 F. Supp. 2d 385 (E.D.N.Y. 2007)...................................................................... 10

ii

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
    512 U.S. 821 (1994) ......................................................................................... 15

*Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*,
    609 F.2d 165 (5th Cir. 1980) ............................................................................ 11

*McComb v. Jacksonville Paper Co.*,
    336 U.S. 187 (1949) ......................................................................................... 13

*Myers v. United States*,
    264 U.S. 95 (1924) ........................................................................................... 10

*Pac. Coast Surgical Center, L.P. v. Scottsdale Ins. Co.*,
    2019 WL 4267764 (C.D. Cal. July 31, 2019) .................................................. 12

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*,
    673 F.2d 53 (2d Cir. 1982) ............................................................................... 14

*Petroleos Mexicanos v. Crawford Enters., Inc.*,
    826 F.2d 392 (5th Cir. 1987) ............................................................................ 11

Powell v. Ward,
    643 F.2d 924 (2d Cir. 1981) ....................................................................... 10, 14

*SEC v. Bankers Alliance Corp.*,
    881 F. Supp. 673 (D.D.C. 1995) ...................................................................... 11

*SEC v. First Financial Group of Texas, Inc.*,
    659 F2d 660 (5th Cir. 1981) ............................................................................. 15

*SEC v. Huffman*,
    996 F.2d 800 (5th Cir. 1993) ............................................................................ 12

*Shillitani v. United States*,
    384 U.S. 364 (1966) ......................................................................................... 11

*Stiller v. Hardman*,
    324 F.2d 626 (2d Cir. 1963) ............................................................................. 10

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
    402 U.S. 1 (1971) ............................................................................................. 14

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ............................................................................ 13

*Thomas v. Capital Sec. Servs., Inc.,*
   836 F.2d 866 (5th Cir. 1988) ............................................................................ 14

*United States v. City of Jackson, Miss.,*
   359 F.3d 727 (5th Cir. 2004) ............................................................................ 11

*United States v. Hayes,*
   722 F.2d 723 (11th Cir. 1984) .......................................................................... 12

*United States v. Rizzo,*
   539 F.2d 458 (5th Cir. 1976) ............................................................................ 12

*United States v. Roberts,*
   858 F.2d 698 (11th Cir. 1988) .......................................................................... 12

*United States v. Rylander,*
   460 U.S. 752 (1983) .......................................................................................... 12

*United States v. United Mine Workers of Am.,*
   330 U.S. 258 (1947) .................................................................................... 13, 14

*Vuitton et Fils S.A. v. Carousel Handbags,*
   592 F.2d 126 (2d Cir. 1979) ............................................................................ 14

*Waffenschmidt v. MacKay,*
   763 F.2d 711 (5th Cir. 1985) ............................................................................ 10

Statutes

18 U.S.C. § 401(3) ............................................................................................... 11

**PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION
FOR AN ORDER TO SHOW CAUSE AS TO WHY DEFENDANT LUCAS THOMAS
ERB A/K/A LUCAS ASHER A/K/A LUKE ASHER SHOULD NOT BE HELD IN CIVIL
CONTEMPT FOR VIOLATIONS OF THE COURT'S STATUTORY RESTRAINING
ORDER AND CONSENT ORDER OF PRELIMINARY INJUNCTION**

Plaintiffs Commodity Futures Trading Commission ("CFTC" or "Commission"),

Alabama Securities Commission ("State of Alabama"), State of Alaska ("State of Alaska"),

Arizona Corporation Commission ("State of Arizona"), California Commissioner of Business

Oversight ("State of California"), Colorado Securities Commissioner ("State of Colorado"),

Delaware Department of Justice ("State of Delaware"), Office of the Attorney General, State of

Florida, Department of Legal Affairs and State of Florida, Office of Financial Regulation

(collectively "State of Florida"), Office of the Georgia Secretary of State ("State of Georgia"),

Hawaii Office of the Securities Commissioner ("State of Hawaii"), Iowa Insurance Division

("State of Iowa"), Idaho Department of Finance ("State of Idaho"), Indiana Securities

Commissioner ("State of Indiana"), Iowa Insurance Commissioner, Douglas M. Ommen ("State

of Iowa"), Office of the Kansas Securities Commissioner ("State of Kansas"), Kentucky

Department of Financial Institutions ("Commonwealth of Kentucky"), Maine Office of

Securities ("State of Maine"), Maryland Securities Commissioner ("State of Maryland"),

Massachusetts Securities Division ("Commonwealth of Massachusetts"), Michigan Department

of Attorney General ("State of Michigan"), Mississippi Secretary of State ("State of

Mississippi"), Nebraska Department of Banking & Finance ("State of Nebraska"), Nevada

Office of Secretary of State ("State of Nevada"), New Mexico Securities Division ("State of

New Mexico"), New York Attorney General ("State of New York"), North Dakota Securities

Department ("State of North Dakota"), Oklahoma Department of Securities ("State of

Oklahoma"), Pennsylvania Department of Banking and Securities ("Commonwealth of

Pennsylvania"), South Carolina Attorney General and South Carolina Secretary of State ("State of South Carolina"), South Dakota Department of Labor & Regulation ("State of South Dakota"), Tennessee Department of Commerce and Insurance ("State of Tennessee"), State of Texas ("State of Texas"), Washington State Department of Financial Institutions ("State of Washington"), West Virginia Securities Commission ("State of West Virginia"), and Wisconsin Department of Financial Institutions ("State of Wisconsin") (collectively "the States") respectfully submit this Memorandum of Law in Support of Support of the Receiver's[1] Motion for an Order to Show Cause Why Defendant Lucas Thomas Erb *a/k/a* Lucas Asher *a/k/a* Luke Asher ("Asher") Should Not Be Held In Civil Contempt For Violations of the Court's Statutory Restraining Order and Consent Order of Preliminary Injunction and be subject to appropriate sanctions for violating the Court's Orders (Docket Entry ("D.E.") 195).[2]

Asher's blatant and repeated violations of the Statutory Restraining Order ("SRO") (D.E. #16) began almost immediately after Asher received notice of its existence. As discussed in detail below, within days after being served with the SRO, Asher systematically began to transfer and dissipate assets restrained by the Court. First, on September 28, 2020, Asher surreptitiously tried to sell a Ferrari—with a value of over $200,000—for his personal gain. Fortunately, this sale was halted by the prompt intervention of the Receiver. Second, on September 29, 2020, Asher transferred and dissipated $550,000 of restrained funds that belong to the Receivership estate. Third, Asher has refused to comply with the SRO and Consent Order of Preliminary

---

[1] The Court appointed Kelly Crawford as Receiver in the SRO. The Consent PI converted the temporary receivership into a permanent receivership.

[2] Plaintiffs incorporate by reference, the Receiver's Memorandum of Law in support of the instant motion ("Receiver's Contempt Application") D.E. #195 and Fact Appendix D.E. #196.

Injunction as to Defendant Asher ("Consent Order") (D.E. #165) (collectively "Court's Orders") by withholding vital information, documents, passwords, and location of records from the Receiver. Finally, during his asset deposition on November 5, 2020, Asher provided testimony that was untrue and calculated to mislead the parties on numerous pertinent areas regarding assets or funds relating or referring to the Defendants' or Relief Defendant's business activities and business and personal finances, business and personal records/documents, and his own conduct.

Plaintiffs respectfully move the court to: (1) hold Asher in contempt for violating the Court's Orders; (2) turn over to the Receiver all assets transferred, dissipated, or concealed in violation of the Court's Orders; (3) cooperate with the Receiver in locating all assets or funds relating or referring to the business activities and business and personal finances of Defendants or Relief Defendant; and (4) cooperate with the Receiver in locating business and personal information, documents, records and passwords of Defendants or Relief Defendant to allow the Receiver to carry out its duties.

## I.   PROCEDURAL HISTORY

On September 22, 2020, Plaintiffs filed a Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief ("Complaint"), alleging that Defendants are perpetrating a nationwide precious metals fraud scheme. (D.E. #2) Contemporaneously with the filing of the Complaint, Plaintiffs moved the Court for a SRO which Judge David C. Godbey granted the same day.  (D.E. # 4-6; 11-12; 16). The Complaint alleges that from at least September 1, 2017 through the present ("Relevant Period"), Defendants perpetrated a massive nationwide fraudulent scheme that solicited and received over $185 million in investors' funds

from at least 1,600 persons throughout the United States for the purpose of purchasing gold and silver bullion. (D.E. #2).[3]

On September 26, 2020, Plaintiffs properly served Asher (D.E. #126) with the Complaint, the SRO, and other filing materials.  On October 14, 2020, the Court entered a Consent Order of Preliminary Injunction as to Defendant Asher. (D.E. #165).

On November 19, 2019, Plaintiffs' counsel, the Receiver and his counsel, and Asher's counsel, Arnold Spencer, met and conferred regarding the substance of the instant motion. No agreement has been reached, thereby necessitating the instant motion.

## II.  FACTS

Plaintiffs note that the Receiver's Contempt Application has an extensive and comprehensive recitation of the relevant facts to the instant motion—it is incorporated by reference in footnote 2 *supra*. In the interest of avoiding duplication of the Receiver's Contempt Application, Plaintiffs wish to briefly outline certain key facts evidencing Asher's violations of the SRO and Consent Order warranting holding him in contempt.

---

[3] As described in detail in the SRO application, Defendants deceived investors into using their retirement savings to purchase fraudulently overpriced precious metals.  By making material misrepresentation and omissions, Defendants deceived investors into purchasing precious metals at prices averaging from one hundred (100) percent to over three hundred (300) percent over the base melt value or spot price of the precious metals ("Prevailing Market Price").  Defendants directed investors to purchase specific Precious Metals Bullion at grossly inflated prices that bore no relationship to the Prevailing Market Price. In particular, Metals failed to disclose that what Metals was charging investors vastly exceeded what Metals. Defendants knew or had a reckless disregard for the truth that virtually every investor lost the vast majority of their funds invested in fraudulently overpriced precious metals. Plaintiffs incorporate by reference, Plaintiffs Motion for an *Ex Parte* Restraining Order, Memorandum of Law in Support of an *Ex Parte* Restraining Order and their Fact Appendix with supporting exhibits and declarations. D.E. # 4-6; 12.

Asher was clearly aware of and understood the Court's Orders and had email and telephonic conversations with the Receiver about them. In fact, on September 28, 2020, Asher left a voicemail for Receiver where he said, in pertinent part:

> … there was an allegation of not respecting the Honorable Judge Lindsey's Order. I deny that accusation.  I'm in full compliance with the Honorable Judge Lindsey's order.  And I will continue to be in full compliance.[4]

Therefore, Asher not only admits to being aware of the SRO and his obligations to comply therewith, he also promises to "continue to be in full compliance." However, within days after being served with the SRO, Asher systematically undertook to hide and dissipate assets restrained by the Court. To date, Asher has transferred, concealed, or dissipated at least $550,000 in assets, in violation of the SRO and Consent Order.

### A.  Timeline of Pertinent Events

- September 22, 2020—SRO granted by Court;

- September 24, 2020—Bank of America was served with notice as to the restriction on Asher's accounts. Bank of America failed to restrict the account until October 5, 2020;

- September 26, 2020—Asher was properly served with a copy of the SRO;

- September 28, 2020—Asher sent an email to an automobile dealership attempting to sell his Ferrari for over $200,000;

- September 28, 2020—Asher left a voicemail for the Receiver claiming that he was not attempting to sell the Ferrari and confirmed that he was aware of the SRO.  Asher also stated that he would comply with the SRO.

---

[4] *See* Exhibit C of the Receiver's Contempt Application's Fact Appendix.

- September 29, 2020—Asher transferred $550,000.00 from an account under the name USA Accounts, Inc. held at Bank of America. Asher was in control of this account as he is the incorporator and owner of USA Accounts, Inc., and is the sole signatory on the account.[5] Pursuant to the SRO, he was restrained from transferring or disposing of any funds from this account;

- October 14, 2020—Court entered a Consent Order of Preliminary Injunction as to Defendant Asher.

- November 5, 2020—Asher was placed under oath and deposed; and

- November 12, 2020—The Receiver discovered the account in the name of USA Accounts, Inc. held at Bank of America and learned of the amount of funds that were improperly transferred by Asher.

**B. Sale of the Ferrari**

Asher surreptitiously tried to sell a Ferrari—with a value of over $200,000—for his personal gain.  The Ferrari is clearly an asset of Asher's and he is prohibited from selling the car pursuant to Section I of the SRO entitled "Asset Freeze Order Prohibiting the Withdrawal, Transfer, Removal, Dissipation, and Disposal of Assets."[6] As described in the Receiver's Contempt Application,[7] the dealership had email correspondence with Asher where he attempted to negotiate a sale of the Ferrari. Asher told the dealer: "I am leaving town for business and

---

[5] According to the Delaware Secretary of State, Asher is the owner and incorporator of USA Accounts, Inc. *See* Exhibits I-K of the Receiver's Contempt Application's Fact Appendix.

[6] The term "asset" is defined in Paragraph 15 of the SRO.

[7] See Exhibit A of the Receiver's Contempt Application's Fact Appendix.

interested in selling back my 488 I bought from you. Perfect condition. Brixton Forged ceramic wheels and novitec rear spoiler (about 20k in extras) Will be open to a fast offer if you're interested."[8]  Thankfully, the Ferrari dealer alerted the Receiver of this potential sale which was halted by the quick intervention of the Receiver.  The Receiver promptly confronted Asher about this attempted sale. Asher responded with noncredible denials of his misconduct claiming his email account had been hacked or otherwise compromised and so he wasn't the one trying to sell his Ferrari.  But for the Receiver's efforts, Asher would have dissipated an asset belonging to the Receivership estate in contravention of the SRO.

### C.  Transfer and Dissipation of at least $550,000 of Receivership Assets

As discussed above, on September 26, 2020, Asher was served. On September 28, 2020, he left the Receiver a voicemail about his commitment to complying with the SRO. Even with his clear knowledge of the SRO, on September 29, 2020, Asher transferred and dissipated $550,000[9] from an account under the name USA Accounts, Inc. held at Bank of America of restrained funds. Asher was in control of the USA Accounts, Inc. bank account as the sole signatory[10] and was restrained from exercising any control over the account. In fact, Asher signed checks from this account throughout September 2020.[11] These funds belong to the Receivership estate. Bank of America's bank records for the account in the name of USA Accounts, Inc.—an account that Asher owns, controls, and has signatory authority—shows two

---

[8] See Exhibit A of the Receiver's Contempt Application's Fact Appendix.

[9] After these improper transfers, the USA Accounts, Inc. account at Bank of America had approximately $46,000 left in it.

[10] See Exhibit I of Receiver's Contempt Application's Fact Appendix.

[11] See Exhibit E of Receiver's Contempt Application's Fact Application's Fact Appendix that includes images of checks signed by Asher in September.

transfers. The first transfer on September 29, 2020, is for $300,000 to another Bank of America account ending in 3464 controlled by Athena Hunter by a close confident and employee/agent of Asher and the Defendants and Relief Defendant. The second transfer occurred on September 29, 2020 in the amount of $250,000 to an entity called "The Voice, Inc." which is owned by a close confident and employee/agent of Asher and the Defendants and Relief Defendant. These funds are clearly assets[12] restrained pursuant to the SRO. Asher ignored the SRO, retained control over the majority of the funds, and removed the funds from the Bank of America account.

The Receiver has made demand on Asher, through his counsel of record, to return the $550,000 of restrained assets formerly in the Bank of America account and turn them over to the Receiver. Asher has refused to comply with the Receiver's demand. His failure to turn over restrained funds to the Receiver is a violation of the SRO and Consent Order and evidences his unwillingness to take steps to rectify his wrongful conduct.

### D. Withholding vital information and records from the Receiver in contravention of the SRO and Consent Order and has failed to cooperate with the Receiver

Asher has refused to comply with the SRO and Consent Order by withholding vital information and records from the Receiver. The Receiver's Contempt Application has a detailed recitation of the myriad of ways that Asher has failed to cooperate and, in many cases, affirmatively obstructed the Receiver's execution of his duties. Without restating these facts, Plaintiffs note that Section VII of the SRO entitled "Directive to Cooperate with Temporary Receiver" and Section VI of the Consent Order, entitled "Cooperation with the Receiver" require that Defendants and Relief Defendant cooperate fully with and assist the Receiver. Asher has failed to comply with these directives and therefore has violated the SRO and Consent Order.

---

[12] These funds are clearly "assets" as defined in Paragraph 15 of the SRO.

8

One example of Asher's noncompliance with the SRO and Consent Order is his refusal to hand over passwords. Both Section VII of the SRO and Section VI of the Consent Order expressly require Asher to turnover passwords. At his deposition—Receiver has previously made similar demands—Asher refused to provide passwords to access computers, email accounts, cloud computing service providers, electronic records, etc. claiming that he could not remember the passwords or could not locate them. These claims are not credible since he was still accessing the Tower Equity email account that requires a username and password.

**E. Asher Made Material Misrepresentations at His Deposition to Prevent Discovery of Dissipated Assets and to Conceal Pertinent Information in Contravention of the Court's Orders**

During Asher's asset deposition on November 5, 2020, Asher provided testimony that was untrue and deliberately calculated to mislead the parties on numerous areas related to the assets of the Defendants and Relief Defendant. For example, Asher misrepresented that he had turned over all of his assets to the Receiver.[13] As discussed above, Asher knowingly did not turnover funds from bank accounts and a luxury vehicle to the Receiver. Second, when asked about his finances, Asher stated that he had only $20.00[14] and that he did not own/control any assets anywhere in the world.[15] Contrary to his assertions, Asher had substantial undisclosed assets under his control. Finally, Asher testified that he was only aware of one bank account where he was a signatory. Specifically, Asher testified:

---

[13] Exhibit G of the Receiver's Contempt Application's Fact Appendix at p. 46, lines 15-19.

[14] Exhibit G of the Receiver's Contempt Application's Fact Appendix at p. 115, lines 18-21.

[15] Exhibit G of the Receiver's Contempt Application's Fact Appendix at p. 191, line 5 through p. 193, line 9 and p. 194 line 10 through p. 195 line 3.

Q. "As of September 21st of 2020, what bank accounts are you aware of that were active that you were using in which you were a signatory?"

A. "JPMorgan."

Q. "Okay."

A. "That's all I recall at this time." [16]

These statements are demonstrably false because Asher knew that as of September 21, 2020, and continuing into the days following the issuance of the SRO, that he was the sole signatory on the USA Accounts bank account at Bank of America. In fact, on September 29, 2020, Asher used his signatory power to dissipate $550,000 out of this account.

It is clear that in Asher's sworn deposition that he made material misrepresentations to prevent discovery of improperly transferred, concealed, or dissipated assets and to conceal relevant pertinent information in contravention of the Court's Orders.

### III. ARGUMENT

**A. The Plaintiffs and the Receiver Have Established a *Prima Facie* Case of Asher's Civil Contempt**

1. The Court's Authority to Enforce the SRO and Consent PI Are Clear

A federal court's power to enforce its own injunctive decrees is inherent and necessary to perform the courts' functions properly. *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981); *Myers v. United States*, 264 U.S. 95, 103 (1924). "The jurisdiction of a court to enforce its orders extends nationwide." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 418 (E.D.N.Y. 2007); *see also Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963) ("Violation of an injunctive order is cognizable in the court which issued

---

[16] Exhibit G of the Receiver's Contempt Application's Fact Appendix at p. 116, lines 6-11.

the injunction, regardless of where the violation occurred."). Moreover, the United States Code

also provides that "[a] court of the United States shall have power to punish by fine or

imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . .

[d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18

U.S.C. § 401(3).

    2. <u>Civil Contempt Is Appropriate Here</u>

"[C]ourts have inherent power to enforce compliance with their lawful orders through

civil contempt." *Shillitani v. United States*, 384 U.S. 364, 368, 370 (1966) (civil contemnors are

imprisoned only until they comply with the orders of the court and "carry 'the keys of their

prison in their own pockets'") (internal citation omitted). Civil contempt sanctions serve "to

coerce obedience to a court order, or to compensate the party pursing the contempt action for

injuries resulting from the contemptuous behavior." *CFTC v. Emerald Worldwide Holdings,*

*Inc.*, 2004 WL 3186580, at *2 (C.D. Cal. July 29, 2004) (quoting *General Signal v. Donallco,*

*Inc.*, 787 F.2d 1376, 1380 (9th Cir. 1986)).

"In a civil contempt proceeding, the movant must establish by clear and convincing

evidence that (1) a court order was in effect, (2) the order required specified conduct by the

respondent, and (3) the respondent failed to comply with the court's order." *United States v. City*

*of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004); *see also Petroleos Mexicanos v. Crawford*

*Enters. Inc*, 826 F.2d 392, 401 (5th Cir. 1987); *SEC v. First Financial Group of Texas, Inc.,* 659

F2d 660, 669 (5th Cir. 1981); *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009). The movant does

not need to establish willfulness. *Petroleos Mexicanos*, 826 F.2d at 401; *Jim Walter Res., Inc. v.*

*Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980) ("In civil contempt

proceedings the question is not one of intent but whether the alleged contemnors have complied with the court's order.") (internal quotation and citation omitted).

Once the moving party establishes the violation, the burden shifts to the alleged contemnor to produce evidence justifying his non-compliance.  The contemnor "may assert a *present* inability to comply with the order in question" as a defense, *United States v. Rylander*, 460 U.S. 752, 757 (1983) (emphasis in original), but bears the burden of showing entitlement to the defense by a preponderance of the evidence. *S.E.C. v. Huffman*, 996 F.2d 800, 803 & n.4 (5th Cir. 1993). *See also Emerald Worldwide Holdings*, 2004 WL 3186580, at *2.  In order to be successful on an inability to pay defense, the contemnor "must go beyond a mere assertion of inability," *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984), and establish that he has made "in good faith all reasonable efforts" to meet the terms of the court order.  *United States v. Roberts*, 858 F.2d 698,701 (11th Cir. 1988); *Combs v. Ryan's Coal Company*, 785 F.2d 970, 984 (11th Cir.), cert. denied, 479 U.S. 853 (1986) ("We construe this requirement strictly.  Even if the efforts he did make were "substantial," "diligent" or in "good faith," … the fact that he did not make "all reasonable efforts" establishes that [he] did not sufficiently rebut the … prima facie showing of contempt." (quoting *Hayes*, 722 F.2d at 725)); *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976).  Moreover, the contemnor's good faith or intent in attempting to comply with the court order is immaterial.  *Pac. Coast Surgical Center, L.P. v. Scottsdale Ins. Co*., 2019 WL 4267764, at *5 (C.D. Cal. July 31, 2019).

Plaintiffs have established by clear and convincing evidence a *prima facie* case of civil contempt.  Asher is aware of the SRO and Consent Order and their asset restraints, cooperation obligations, and other mandates.  However, as described above, Asher has repeatedly and

blatantly violated the Court's Orders. Because the Plaintiffs have met their burden here, the burden now lies with Asher to show he is unable to comply.

Importantly, Court is not faced with a situation where Asher failed to comply with the Court's Orders despite taking all reasonable steps to comply or because of some present inability to comply. Instead, he has taken considerable steps to circumvent and trample the Court's SRO and Consent Order. Simply put, Asher refuses to abide by the terms of the SRO and the Consent Order and failed to take any steps to comply with the Court's Order and rectify his wrongful conduct. Absent a showing of substantial evidence that he has made every reasonable effort to comply, Asher should be found in contempt of the SRO and Consent Order.

### B. Asher Should Be Held in Civil Contempt and the Court Should Impose Sanctions for his Failure to Comply With The Court's Orders

1. The court has broad authority to fashion appropriate relief in civil contempt proceedings

A district court has broad authority to fashion appropriate relief in civil contempt proceedings, so long as that relief is reasonably calculated to compel obedience with a prior court order.  *See McComb v. Jacksonville Paper Co*., 336 U.S. 187, 193 (1949) ("The measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief"). "Upon a finding of contempt, the district court has broad discretion in assessing sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ. Servs*., *Inc*. *v*. *Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 585 (5th Cir. 2000)). "'Judicial sanctions in civil contempt proceedings, may in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.'" *Am. Airlines*, 228 F.3d at 585 (quoting *United States v*. *United Mine Workers of Am*., 330 U.S. 258, 303-04 (1947)). "The imposition or denial of sanctions of necessity involves

a fact-intensive inquiry into the circumstances surrounding the activity that is the subject of

sanctions.'" *Test Masters*, 428 F.3d at 582 (quoting *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d

866, 873 (5th Cir. 1988) (en banc)). When a contempt sanction is coercive, "the district court has

broad discretion to design a remedy that will bring about compliance." *Perfect Fit*

*Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982) (citing *Vuitton et Fils*

*S.A. v. Carousel Handbags*, 592 F.2d 126, 130 (2d Cir. 1979); *Powell*, 643 F.2d at 933 (per

curiam)); *Berger v. Heckler*, 771 F.2d 1556, 1568 (2d Cir.1985) (stating that the scope of a

district court's power to secure compliance with its orders "is broad, for breadth and flexibility

are inherent in equitable remedies[]") (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*,

402 U.S. 1, 15 (1971)).

      2.  <u>Significant Sanctions Are Necessary and Appropriate Here</u>

      In light of Asher's repeated violations of the Court's Orders and his continuing failure to

abide by the Orders, there is ample reason to conclude that Asher needs to be coerced into

complying with this Court's Orders. Asher has not made any sort of good-faith attempt at

compliance. Therefore, there is good cause for imposing significant fines and/or incarceration.

      The court is permitted to impose a conditional fine for the purpose of compelling the

contemnor to comply with the court's order, provided the amount is reasonably designed to force

compliance, without being punitive. *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980) (per

curiam) (citing *United Mine Workers*, 330 U.S. at 303-04). "A coercive, nonpunitive fine

payable to the clerk of the court is an appropriate tool in civil contempt cases." *Id.* (citing cases

and treatises).

      Given the asset freeze, the imposition of daily fines may not effectively coerce Asher into

compliance. Asher's intentional and continuing refusal to comply with this Court's Orders

14

warrants coercive incarceration.  A district court may order the civil contemnors imprisoned until they comply with the order or condition imposed by the court. *FDIC v. LeGrand*, 43 F.3d 163, 168 (5th Cir. 1995); s*ee e.g.*, *SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673, 678-79, 684 (D.D.C. 1995) (imposing civil contempt sanctions that included fines and incarceration against defendants for failing to provide an accounting of assets pursuant to a preliminary injunction order); *see also Hutto v. Finney*, 437 U.S. 678, 690 (1978) ("Civil contempt proceedings may yield a conditional jail term[.]"). "A fixed term of imprisonment, with the proviso that the contemnor will be released if he complies with the court order, is a proper penalty for civil contempt and the imposition of such penalty does not make the proceeding criminal." *In re Dinnan*, 625 F.2d at 1149. Incarceration in this context is not punitive but rather coercive in nature because the party "carries the keys of his prison in his own pocket." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (*quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)). In fact, courts have incarcerated contemnors for failing to comply with SRO such as the one at issue here.  *See, e.g.*, *CFTC v. Emerald Worldwide Holdings, Inc.*, 2004 WL 3186580, at *2 (C.D. Cal. July 29, 2004) (incarcerating contemnor for violating Court's restraining orders*);CFTC v. Armstrong,* 284 F.3d 202 (2d Cir. 2002) (contempt order is interlocutory order left to sound discretion of district court and not appealable; contemnor remained incarcerated for seven years for failure to turn over receivership assets); *CFTC and the State of Florida v. Weiss*, 950 F.2d 1525 (11th Cir. 1992) (civil contemnor incarcerated for over four years for failure to disgorge funds).

## IV.    CONCLUSION

Plaintiffs have established by clear and convincing evidence a *prima facie* case of civil contempt by Asher. Upon finding in civil contempt, this Court should require Asher to

immediately comply with the SRO and Consent Order and specifically to: (1) hold Asher in contempt for violating the Court's Orders; (2) impose significant sanctions on Asher as the Court deems necessary and appropriate; (3) order Asher to turn over to the Receiver all assets transferred, dissipated, or concealed in violation of the Court's Orders; (4) order Asher to cooperate with the Receiver in locating all assets or funds relating or referring to the business activities and business and personal finances of Defendants or Relief Defendant; and (5) order Asher to cooperate with the Receiver in locating business and personal information, documents, records and passwords of Defendants or Relief Defendant to allow him to carry out its duties.

Dated: November 23, 2020                    Respectfully submitted,


By: /s/ JonMarc P. Buffa

JONMARC P. BUFFA
jbuffa@cftc.gov
California Bar # 217324

RICHARD P. FOELBER
rfoelber@cftc.gov
Illinois Bar # 0840904

Attorneys for Plaintiff
COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street. NW
Washington, DC 20580
(202) 418-5000


FOR THE STATE OF ALABAMA

By: /s/ Jeffery A. "Beau" Brown, Jr

JEFFERY A. "BEAU" BROWN, JR., *pro hac vice*
Beau.Brown@asc.alabama.gov
Alabama Bar No. 7258R80B

ANNE GUNTER, *pro hac vice*
anne.gunter@asc.alabama.gov
Alabama Bar No. 4666N91P

Attorneys for Plaintiff
STATE OF ALABAMA
SECURITIES COMMISSION
445 Dexter Avenue, Suite 12000
 Montgomery, AL 36104
Telephone: (334) 322-8586
Fax: (334) 242-0240


FOR THE STATE OF ALASKA

By: /s/ Robert Schmidt

ROBERT SCHMIDT, *pro hac vice*
rob.schmidt@alaska.gov
Alaska Bar No. 9909048
JOHN HALEY
john.haley@alaska.gov
Alaska Bar No. 1402010

Attorneys for Plaintiff
STATE OF ALASKA
OFFICE OF ATTORNEY GENERAL
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-6645
Fax: (907) 276-3697


FOR THE STATE OF ARIZONA

By: /s/ Christopher Nichols

CHRISTOPHER NICHOLS, *pro hac vice*
cnichols@azcc.gov
Arizona Bar No. 029958

Attorney for Plaintiff
ARIZONA CORPORATION COMMISSION
1300 W. Washington St.
Phoenix, AZ 85007

17

Telephone: (602) 542-0639
Fax: (602) 714-8120


FOR THE STATE OF CALIFORNIA

By: /s/ Danielle Stoumbos _____

MARY ANN SMITH
MaryAnn.Smith@dbo.ca.gov
SEAN ROONEY
Sean.Rooney@dbo.ca.gov
DANIELLE A. STOUMBOS, *pro hac vice*
California Bar No. 264784
Danielle.Stoumbos@dbo.ca.gov

Attorneys for Plaintiff
STATE OF CALIFORNIA
DEPARTMENT OF BUSINESS OVERSIGHT
320 West Fourth Street, Suite 750
Los Angeles, California 90013
Telephone: (213) 503-2046
Fax: (213) 576-7181


FOR THE STATE OF COLORADO
PHILIP J. WEISER
Attorney General of the State of Colorado

By: /s/ Janna Fischer _____

JANNA FISCHER*, *pro hac vice*
janna.fischer@coag.gov
Colorado Bar No. 44952
ROBERT FINKE*, *pro hac vice*
robert.finke@coag.gov
Colorado Bar No. 40756
*Counsel of Record

Attorneys for Plaintiff
SECURITIES COMMISSIONER
FOR THE STATE OF COLORADO
1300 Broadway, 8th Floor
Denver, Colorado 80203
Telephone: (720) 508-6374
Fax: (720) 508-6037

18

FOR THE STATE OF DELAWARE
KATHLEEN JENNINGS
Attorney General of the State of Delaware


By: /s/ Katherine M. Devanney

KATHERINE M. DEVANNEY, *pro hac vice*
Deputy Attorney General
Delaware Bar No. 6356
Texas Bar No. 24116281
katherine.devanney@delaware.gov
JILLIAN LAZAR
Director of Investor Protection
Delaware Bar No. 6049
jillian.lazar@delaware.gov

Delaware Department of Justice
820 N. French St.
Wilmington, DE 19801
Telephone: (302) 577-8356
Fax: (302) 577-6987

Attorneys for Plaintiff the State of Delaware


FOR THE STATE OF FLORIDA
ASHLEY MOODY
Attorney General for the State of Florida


By: /s/ Victoria Butler

VICTORIA BUTLER, *pro hac vice*
Assistant Attorney General
Director of Consumer Protection
victoria.butler@myfloridalegal.com
Florida Bar No. 861250

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL
Department of Legal Affairs
3507 E Frontage Rd, Suite 325
Tampa, FL 33607-1795

19

Telephone: (813) 287-7950
Fax: (813) 281-5515


By: /s/ A. Gregory Melchior

A. GREGORY MELCHIOR, *pro hac vice*
Assistant General Counsel
greg.melchior@flofr.com
Florida Bar No. 407290

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF FINANCIAL REGULATION
1313 Tampa Street, Suite 615
Tampa, Florida 33602-3394
Telephone: (813) 218-5327
Fax: (813) 272-2498


FOR THE STATE OF GEORGIA

By: /s/ Logan B. Winkles

LOGAN B. WINKLES, *pro hac vice*
Georgia Bar No. 136906
lwinkles@law.ga.gov
RONALD J. STAY, *pro hac vice*
Georgia Bar No. 621732
rstay@law.ga.gov

Attorneys for Plaintiff
OFFICE OF THE GEORGIA
SECRETARY OF STATE
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334
Telephone: (404) 458-3434
Fax: (404) 657-3239


FOR THE STATE OF HAWAII

By: /s/ Rayni M. Nakamura-Watanabe

RAYNI M. NAKAMURA-WATANABE, *pro hac*

20

*vice*
Hawaii Bar No. 9032-0
RNakamur@dcca.hawaii.gov
PATRICIA J. MOY
Hawaii Bar No. 5845-0
PMoy@dcca.hawaii.gov

Attorneys for Plaintiff
STATE OF HAWAII
SECURITIES ENFORCEMENT BRANCH
335 Merchant Street, Suite 205
Honolulu, Hawaii 96813
Telephone: (808) 586-2740
Fax: (808) 586-3977


FOR THE STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL
STATE OF IDAHO
LAWRENCE G. WASDEN

By: /s/ Loren Messerly

LOREN MESSERLY, *pro hac vice*
Deputy Attorney General
loren.messerly@finance.idaho.gov
Idaho Bar No. 7434

Attorney for Plaintiff
STATE OF IDAHO
IDAHO DEPARTMENT OF FINANCE
P.O. Box 83720
Boise, ID 83720-0031
Telephone: (208) 332-8093
Fax: (208) 332-8099


FOR THE STATE OF INDIANA
OFFICE OF THE INDIANA ATTORNEY
GENERAL
Patricia Orloff Erdmann
Chief Counsel of Litigation

By: /s/ Jefferson S. Garn

JEFFERSON S. GARN, *pro hac vice*

21

Deputy Attorney General
Jefferson.Garn@atg.in.gov
Indiana Bar No. 29921-49

Attorney for Plaintiff
STATE OF INDIANA
INDIANA SECURITIES COMMISSIONER
302 W. Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
Fax: (317) 232-7979


FOR THE STATE OF KANSAS


By: /s/ Thomas E. Knutzen

THOMAS E. KNUTZEN, *pro hac vice*
*Special Assistant Attorney General*
tom.knutzen@ks.gov
Kansas Bar No. 24471

Attorney for Plaintiff
OFFICE OF THE KANSAS SECURITIES
COMMISSIONER
1300 SW Arrowhead Road
Topeka, KS 66604
Telephone: (785) 296-7890
Fax: (785) 296-6872


FOR THE STATE OF KENTUCKY


By: /s/ Gary Stephens

GARY STEPHENS, *pro hac vice*
Gary.stephens@ky.gov
Kentucky Bar No. 87740
CATHERINE FALCONER
Catherine.falconer@ky.gov

Attorneys for Plaintiff
STATE OF KENTUCKY
DEPARTMENT OF FINANCIAL INSTITUITONS
500 Mero St. 2SW19
Frankfort, KY 40601

22

Telephone: (502) 782-9052
Fax: (502) 573-8787


FOR THE STATE OF MAINE

By: /s/ Gregg D. Bernstein

GREGG D. BERNSTEIN, *pro hac vice*
gregg.bernstein@maine.gov
Maine Bar No. 8424

Attorney for Plaintiff
STATE OF MAINE SECURITIES
ADMINISTRATOR
6 State House Station
Augusta, Maine 04333
Telephone: (207) 626-8800
Fax: (207) 626-8828


FOR THE STATE OF MARYLAND

BRIAN E. FROSH
ATTORNEY GENERAL OF THE STATE OF
MARYLAND

By: /s/ Max F. Brauer

MAX F. BRAUER, *pro hac vice*
Assistant Attorney General
mbrauer@oag.state.md.us
Maryland State Does Not Use Bar Numbers

Attorney for Plaintiff
STATE OF MARYLAND EX REL
MARYLAND SECURITIES COMMISSIONER
200 Saint Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6950
Fax: (410) 576-6532


FOR THE PEOPLE OF MICHIGAN

By: /s/ Aaron W. Levin

23

PEOPLE OF THE STATE OF
MICHIGAN, by DANA NESSEL
ATTORNEY GENERAL

Aaron W. Levin, *pro hac vice*
Assistant Attorney General
levina@michigan.gov
Michigan Bar No. P81310

Attorney for Plaintiff
Michigan Department of Attorney General
525 W. Ottawa Street,
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Fax: (517) 335-7632


FOR THE STATE OF MISSISSIPPI


By: /s/ Seth Shannon

SETH SHANNON, *pro hac vice*
seth.shannon@ago.ms.gov
Mississippi Bar No. 103466
CRYSTAL UTLEY SECOY
crystal.utley@ago.ms.gov

Attorneys for Plaintiff
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (769) 237-6406
Fax: (601) 359-4231


FOR THE STATE OF NEBRASKA
L. JAY BARTEL
Bureau Chief
Legal Services Bureau


By: /s/ Joshua R. Shasserre

24

JOSHUA R. SHASSERRE, *pro hac vice*
Assistant Attorney General
Nebraska Bar No. 23885
joshua.shasserre@nebraska.gov

Attorney for Plaintiff
STATE OF NEBRASKA
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3888
Fax: (402) 471-3297


FOR THE STATE OF NEVADA

By: /s/ Erin M. Houston

ERIN M. HOUSTON, *pro hac vice*
Deputy Secretary of State, Securities Administrator
Nevada Bar No. 11814
ehouston@sos.nv.gov

Attorney for Plaintiff
STATE OF NEVADA
Office of the Nevada Secretary of State
Securities Division
2250 North Las Vegas Blvd., Suite 400
North Las Vegas, NV 89030
Telephone: (702) 486-2440
Fax: (702) 486-2452


FOR THE STATE OF NEW MEXICO

By: /s/ Alissa N. Berger

ALISSA N. BERGER, *pro hac vice*
Securities Enforcement Prosecutor
New Mexico Securities Division
New Mexico Bar No. 21769
Alissa.Berger@state.nm.us

Attorney for Plaintiff
STATE OF NEW MEXICO
New Mexico Securities Division
New Mexico Regulation and Licensing Department

5500 San Antonio Rd NE
Albuquerque, New Mexico 87109
Telephone: (505) 503-5987
Fax: (505) 222-9848


FOR THE STATE OF NEW YORK
LETITIA JAMES
ATTORNEY GENERAL OF THE STATE OF
NEW YORK

By: /s/ Tatyana Trakht

TATYANA "TANYA" TRAKHT, *pro hac vice*
Assistant Attorney General
tanya.trakht@ag.ny.gov
New York State Does Not Use Bar Numbers
PETER POPE
Chief, Investor Protection Bureau
peter.pope@ag.ny.gov

Attorneys for Plaintiff
ATTORNEY GENERAL FOR THE STATE OF
NEW YORK
28 Liberty Street, 21st Floor
New York, New York 10005
Telephone: (212) 416-8457
Fax: (212) 416-8816


FOR THE STATE OF OKLAHOMA

By: /s/ Robert Fagnant

ROBERT FAGNANT, *pro hac vice*
rfagnant@securities.ok.gov
Oklahoma Bar No. 30548

Attorney for Plaintiff
OKLAHOMA DEPARTMENT OF SECURITIES
204 N. Robinson Avenue, Suite 400
Oklahoma City, OK 73102
Telephone: (405) 280-7718
Fax: (405) 280-7742

26

FOR THE STATE OF SOUTH CAROLINA

By: /s/ Jonathan Williams

JONATHAN WILLIAMS, *pro hac vice*
jwilliams@scag.gov
South Carolina Bar No. 72509

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF ATTORNEY GENERAL
P.O. Box 11549
Columbia, SC 29211
Telephone: (803) 734-7208
Fax: (803) 734-7208

By: /s/ Shannon A. Wiley

SHANNON A. WILEY, *pro hac vice*
swiley@sos.sc.gov
South Carolina Bar No. 69806

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF THE SECRETARY OF STATE
1205 Pendleton Street, Suite 525
Columbia, SC 29201
Telephone: (803) 734-0246
Fax: (803) 734-1661

FOR THE STATE OF SOUTH DAKOTA

By: /s/ Clayton Grueb

CLAYTON GRUEB, *pro hac vice*
South Dakota Bar No. 4642
Clayton.grueb@state.sd.us

Attorney for Plaintiff
South Dakota Department of Labor & Regulation,
Division of Insurance
2330 N. Maple Ave, Suite 1
Rapid City, SD 57701

27

Telephone: (605) 773-3563
Fax: (605) 773-5369


FOR THE STATE OF TENNESSEE
HERBERT H. SLATERY III
Attorney General and Reporter
for the State of Tennessee


By: /s/ James P. Urban_____

JAMES P. URBAN, *pro hac vice*
Deputy Attorney General
TN B.P.R. No. 033599
james.urban@ag.tn.gov

Office of Tennessee Attorney General
Financial Division
P.O. Box 20207
Nashville, TN 37202-0207
Telephone: (615) 741-3739
Fax: (615) 532-8223

Attorney for Plaintiff
Commissioner of the Tennessee Department of
Commerce and Insurance


FOR THE STATE OF TEXAS
KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

RYAN L. BANGERT
Deputy First Assistant Attorney General

DARREN L. MCCARTY
Deputy Attorney General for Civil Litigation

JOSHUA R. GODBEY
Division Chief
Financial Litigation and Charitable Trusts Division


By: */s/ Christina Cella*

CHRISTINA CELLA
Assistant Attorney General
State Bar No. 24106199
christina.cella@oag.texas.gov
LEA N. BRIGTSEN
Assistant Attorney General
State Bar No. 24054504
lea.brigtsen@oag.texas.gov

Financial Litigation and Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-2952
Fax: (512) 477-2348
*Attorneys for Plaintiff the State of Texas*


FOR THE STATE OF WASHINGTON


By: /s/ Ian S. McDonald

IAN S. MCDONALD, *pro hac vice*
Washington Bar No. 41403
Ian.McDonald@atg.wa.gov
Telephone: (360) 586-3264
Fax: (360) 664-0229

Attorney for Plaintiff
Washington State Department of Financial
Institutions, Securities Division
150 Israel Rd. SW
Tumwater, WA 98501
Telephone: (360) 902-8700
Fax: (360) 902-0524


FOR THE STATE OF WEST VIRGINIA


By: /s/ Michael Nusbaum

29

MICHAEL NUSBAUM, *pro hac vice*
michael.nusbaum@wvsao.gov
West Virginia Bar No. 12708

Attorney for Plaintiff
STATE OF WEST VIRGINIA
WEST VIRGINIA SECURITIES COMMISSION
1900 Kanawha Boulevard, East
Building 1, Room W-100
Charleston, WV 25305
Telephone: (304) 558-2251
Fax: (304) 558-4211


FOR THE STATE OF WISCONSIN
JOSHUA L. KAUL
Attorney General
State of Wisconsin
Wisconsin Department of Justice

By: /s/ Shannon A. Conlin

SHANNON A. CONLIN, *pro hac vice*
Assistant Attorney General
Wisconsin Bar No. 1089101
Conlinsa@doj.state.wi.us

WISCONSIN DEPARTMENT OF JUSTICE
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-1677
Fax: (608) 267-2779

*Attorney for Plaintiff State of Wisconsin*


FOR THE IOWA INSURANCE
COMMISSIONER
DOUGLAS M. OMMEN

By: /s/ Adam J. Kenworthy
ADAM KENWORTHY* *pro hac vice*
Iowa Bar No. AT0012137
Enforcement Attorney
adam.kenworthy@iid.iowa.gov


30

Attorney for Plaintiff
IOWA INSURANCE DIVISION
1963 Bell Ave, Ste 100
Des Moines, IA 50315
Telephone: (515) 654-6562
Fax: (515)-654-6500

**<u>CERTIFICATE OF SERVICE</u>**

On November 23, 2020, I electronically filed the foregoing Memorandum of Law in Support of Support of the Receiver's Motion for an Order to Show Cause Why Defendant Lucas Thomas Erb *a/k/a* Lucas Asher *a/k/a* Luke Asher Should Not Be Held In Civil Contempt For Violations of the Court's Statutory Restraining Order and Consent Order of Preliminary Injunction and be subject to appropriate sanctions for violating the Court's Orders with the Clerk of this Court in the above captioned matter using the CM/ECF system and I am relying upon the transmission of the Clerk's Notice of Electronic Filing for service upon all parties in this.


<u>/s/ JonMarc P. Buffa</u>