IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

Commodities and Futures
Treading Commission, et al.,
    Plaintiffs,
v.                                                                                                        Case No.: 3:20-CV-2910-L

TMTE, Inc., et al.,
    Defendants

## Defendant Lucas Asher's Response to Receiver's
## Motion to Show Cause

Comes now Defendant Lucas Asher ("Mr. Asher") and respectfully files this Response to the Receiver's Motion to Show Cause.

### SUMMARY

The Receiver's Motion is premised on the assumption that Mr. Asher can return the $550,000 that was wired out of the USA Accounts, Inc. bank account on September 29, 2020. The Receiver also implies without stating that this money belongs to Lucas Asher or one of the Corporate Defendants named in the lawsuit. These assumptions are simply incorrect.

Mr. Asher does not control the $550,000. Mr. Asher did not own or control the $550,000 on September 29, 2020, or at any time before or after September 29, 2020. As such, Mr. Asher cannot be held in contempt if the funds are not turned over to the Receiver.

Mr. Asher does not own or control USA Accounts, Inc, and did not own or control the company or the account on September 29, 2020. As the Receiver acknowledges in his Motion and Brief, Mr. Asher disclosed to the Receiver that he incorporated USA Accounts, Inc. and opened a bank account in the company's name in August 2020, but almost immediately transferred the ownership and control of the company and its bank account to Athena Hunter. Ms. Hunter acknowledges that she owns and controls

USA Accounts, Inc., and that she directed the transactions in question on September 29, 2020. Mr. Asher cannot be held in contempt for transactions that he did not conduct.

Mr. Asher has never had an interest in the $550,000. The funds deposited into the USA Accounts, Inc. bank account came from customers of USA Accounts, Inc. The funds were never property of Mr. Asher. The funds were never the property of any party in this lawsuit. Mr. Asher cannot be held in contempt for funds in which he never had an interest.

## FACTUAL BACKGROUND

Athena Hunter, the owner of USA Accounts, Inc., submitted an affidavit, attached as Exhibit 1, which establishes the following:

In the Summer of 2020, Athena Hunter asked Lucas Asher to help her set up a company to sell precious metals. Mr. Asher had been involved in a number of similar companies, and Ms. Hunter has worked as an administrative assistant at one of these related companies. In August 17, 2020, Mr. Asher set up the company, USA Accounts, Inc, as a Delaware corporation, and opened a bank account at Bank of America. Almost immediately, on August 25, 2020, Mr. Asher transferred ownership and control of the company to Ms. Hunter, and Ms. Hunter began depositing customer funds into the bank account. This immediate transfer is strong evidence that Mr. Asher never intended to own or control USA Accounts, Inc. Mr. Asher was kept on by USA Accounts, Inc. as an agent to assist with transition. Tellingly, the formal document appointing Mr. Asher as an agent explicitly provided that Mr. Asher had no control over the bank account and could only transfer funds in order to pay documented business expenses. Also telling, the corporate documents recording the transfer were executed in August 2020, more than a month after USA Accounts, Inc. was transferred to Athena Hunter.

On or about September 28, 2020, Mr. Asher became aware that the Court entered an order restraining his assets. The Order did not include USA Accounts, Inc. The Order did not include Athena Hunter. Then, on September 29, 2020, Ms. Hunter asked Mr. Asher to pay two bills from the USA Accounts, Inc. bank account. Mr Asher paid these bills. Mr. Asher did not consider that the transactions could violate the Court's Order because the funds were not in any way associated with the Court's Order.

These funds did not belong to Mr. Asher. These funds were not in the control of Mr. Asher. These funds did not belong to the Corporate Entities named in the Order. To the contrary, the funds originated with customers of USA Accounts, Inc., the funds were deposited into USA Accounts, Inc.'s bank account, and then funds were being used throughout the month to pay expenses of USA Accounts, Inc., including commissions and inventory. On September 29, 2020, when Ms. Hunter directed Mr. Asher to make payments to USA Accounts, Inc.'s vendors, Mr. Asher paid the bills.

The Receiver rejects Mr. Asher's explanation. The Receiver does not address the forensic accounting, that these funds came from individual customers of a corporate entity, and does not address the business transactions underlying the transactions, that these corporate entities that were not identified in the Order could participate in legitimate, business transactions. Nor does the Receiver address the chronology - that Mr. Asher and Ms. Hunter executed the corporate documents transferring ownership a month before Mr. Asher was aware of the Court's Order.

Rather, the Receiver relies on a scatter shooting of challenges. The Receiver argues that the Delaware corporate filings have not been updated to reflect the change of ownership. But of course, the failure to update corporate records does not invalidate a contract or divest a shareholder of his interests. The Receiver argues that Athena Hunter was previously employed by the Corporate Defendants, and that she "swindled money from the elderly." But of course, Ms. Hunter's prior employment and unproven allegations of bad actions are not relevant to determining if Ms. Hunter owned and controlled USA Accounts, Inc. The Receiver concludes by arguing that the funds must belong to Mr. Asher because the funds were sent to Mr. Asher's former colleagues. This argument is without a basis in fact or logic. Factually, these payments were neither from Mr. Asher nor to his colleagues. Rather, these transactions were from one corporate entity in which Mr. Asher had no interest to another corporate entity which Mr. Asher had no interest. These were lawful, documented payments among lawful, established corporations, all outside of the Court's Order. Logically, one party to a transaction never proves the counterparty, not in business practices and certainly not in the law. Former colleagues regularly receive funds from new clients as well as former employers. It is not surprising that a precious metals dealer, like USA Accounts,

Inc., would pay commissions to precious metal salesmen. And it is equally predictable that a precious metal salesman would receive commissions from more than one employer over time. The Receiver's reliance on the recipient parties to prove Mr. Asher's ownership status is misplaced.

In sum, the Receiver is charged with collecting assets of the Receivership Estate in order to preserve the status quo. The Receiver is not charged with collecting assets that are owned and controlled by third parties, even if an individual defendant is an agent of the third party. While there are bits of anecdotal evidence suggesting that Mr. Asher was involved with USA Accounts, Inc., there is conclusive evidence that USA Accounts, Inc. was owned and controlled by Athena Hunter, and not Lucas Asher. And there is no dispute that the assets of USA Accounts, Inc. and Athena Hunter are outside of the Receivership Estate.

## **LEGAL DISCUSSION**

This Court should find that Mr. Asher is not in contempt for at least two reasons: first, Mr. Asher did not violate the Court's Order; and second, contempt is improper when the accused party is unable to remedy the complaint. Both of these legal arguments are based on the fact that these funds do not, and did not ever, belong to Lucas Asher.

Because the funds in question never belonged to Lucas Asher, the funds were never covered by the Court's Order. Accordingly, Mr. Asher should not be held in contempt. The Order defines "assets" as encompassing "any legal or equitable interest in, right to, or claim on, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located…". Order, Docket 16, para. 15. Applying the clear terms of the definition, this Court should find that the funds were not Mr. Asher's "assets." Prior to being deposited into the USA Accounts, Inc.'s bank account, these funds belonged to USA Accounts, Inc,'s customers. The funds were tendered to USA Accounts, Inc. And at the time of the entry of the Order, USA Accounts, Inc. was owned and controlled by Athena Hunter. The Receiver's argument that Mr. Asher was a signatory on the account, and therefore was in control of the account, lacks any basis in law or in fact.

Secondly, because Mr. Asher is incapable of turning over the funds, this Court should not hold him in contempt. Civil contempt is reserved to coerce parties "to perform() the affirmative act required by the court's order." *Hicks v. Feiock,* 485 U.S. 624 (1988); *see also Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418 (1911). A party is excused from complying with a court order if compliance is impossible; in other words, inability to comply is a complete defense to civil contempt. *Newman v. Graddick*, 740 F.2d 514, 1524 (11th Cir. 1984), *citing United States v. Rylander,* 460 U.S. 752 (1983). Because Mr. Asher does not control these funds, he cannot turn over the funds to the Receiver.

Throughout the Motion and Brief, the Receiver makes overly broad legal conclusions which cannot withstand scrutiny. For example, the Receiver states "Because Asher was a signatory on the USA Accounts, Inc. at the time of the SRO, the account was included within the definition of 'Receivership Estate' under the SRO…" This argument conflates a person with signatory authority with a person with control or ownership. While it is common for an owner to have signatory authority, it is also common for agents, trustees, other third parties to have signatory authority over assets which they do not control or own. In another section, the Receiver states that "There is no lawful basis to pay 'invoices' on September 29, 2020." Receiver's Brief, p. 7. As support for this conclusion, the Receiver argues, "The invoice...indicates it is for 'commissions.' If true, 'commissions' are 'Receivership Assets as defined by the SRO and would constitute a fraudulent transfer if paid." Rather, the Receivership Assets are specifically limited to assets associated with the Defendants. Commission (and all other expenses) paid by third parties unassociated with the Defendants are not within the Receivership Assets..

The Receiver lists other allegations which do not constitute contempt and which cannot be remedied by incarceration. Accordingly, these allegations are undressed herein, notwithstanding various factual and challenges, which will be presented as necessary.

WHEREFORE, Defendant Lucas Asher respectfully requests that the Court dismiss the Motion for Show Cause and deny the relief requested.

Respectfully Submitted,

        /s        .
Arnold A. Spencer
Texas State Bar #00791709
Spencer & Associates
5949 Sherry Lane, Suite 900
Dallas, Texas 77225
214-385-8500
arnoldspencer75225@gmail.com

Counsel for Defendants
Lucas Asher and Simon Batashvili

**Certificate of Service**

    I, Arnold Spencer, counsel of record for Defendants Lucas Asher and Simon Batashvili, do hereby certify that I have filed the foregoing document with the Clerk of Court via the ECF system, which sent notice to all counsel of record, in accordance with the Federal Rules of Civil Procedure.

      /s
      _____