# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION**, *et al.,* | § § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | **NO. 3:20-CV-2910-L** |
| **TMTE, INC.,** *et al.,* | § § § § | |
| *Defendants,* | § § § | |
| **TOWER EQUITY, LLC** | § § | |
| Relief Defendant. | § § | |

---

## NON-PARTY GOOGLE LLC'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT

---

# TABLE OF CONTENTS

Page

I.  SUMMARY OF THE ARGUMENT ...................................................................1

II. FACTUAL BACKGROUND ............................................................................2

    A.  Summary of Google's services..................................................................2

    B.  Google's efforts to resolve this matter with Receiver's counsel....................3

III. ARGUMENT ...............................................................................................5

    A.  The Receiver's demands violate ECPA........................................................5

    B.  The Receiver's demands violate Rule 65's requirements for injunctive relief ..........11

    C.  Google should not be held in civil contempt..............................................13

        1.  There is no clear and convincing evidence that Google violated a specific order ....................................................................13

        2.  Multiple mitigating circumstances counsel against a contempt finding........14

IV. CONCLUSION ............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Blockowicz v. Williams,*
630 F.3d 563 (7th Cir. 2010)..............................................................................12

*Cash v. United States,*
961 F.2d 562 (5th Cir. 1992)................................................................................9

*Floyd v. Aalaei,*
2017 WL 3129830 (E.D. Tex. July 24, 2017) ...................................................12

*Fontenot v. Brouillette,*
No. 4:10-CV-01053, 2012 WL 13040278 (S.D. Tex. Feb. 9, 2012) ...................5

*Harris County, Texas v. Carmax Auto Superstores Inc.,*
177 F.3d 306 (5th Cir. 1999)..............................................................................12

*Hill v. Schilling,*
No. 3:07-CV-2020-L, 2015 WL 13484485 (N.D. Tex. 2015)................13, 14, 15

*In Re Ex Parte Application of Tatiana Akhmedova,*
Case No. 20-MC-80156-VKD, 2020 WL 6891828 (N.D. Cal. Nov. 24, 2020)................8

*In re Facebook,*
923 F. Supp. 2d 1204 (N.D. Cal. 2012).................................................................9

*In re Irish Bank Resolution Corporation Limited,*
559 B.R. 627 (Bankr. D. Del. 2016) ................................................................6, 7

*In re Toft,*
453 B.R. 186 (Bankr. S.D.N.Y. 2011) .............................................................6, 7

*Matter of Baum,*
606 F.2d 592 (5th Cir. 1979)..........................................................................13, 14

*Negro v. Superior Court,*
230 Cal. App. 4th 879 (Cal. Ct. App. 2014) .................................................10, 11

*O'Grady v. Sup. Ct.,*
139 Cal. App. 4th 1423 (Cal. Ct. App. 2006) .....................................................10

*Phillips v. Chas. Schreiner Bank,*
894 F.2d 127 (5th Cir. 1990)..............................................................................12

**TABLE OF AUTHORITIES (*continued*)**

**Page(s)**

*PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd.*,
    273 F. Supp. 3d 558 (W.D. Pa. 2017)...........................................................................................9

*Schweickert v. Hunts Point Ventures, Inc.*,
    No. 13–cv–675RSM, 2014 WL 6886630 (W.D. Wash. Dec. 4, 2014) ...............................9

*Sec. & Exch. Comm'n v. Haxton*,
    No. 3:08-CV-1467-L, 2008 WL 11426856 (N.D. Tex. Sept. 18, 2008)............................................12

*Suzlon Energy Ltd. v. Microsoft Corp.*,
    671 F.3d 726 (9th Cir. 2011)...........................................................................................7

*U.S. v. Wenk*,
    319 F. Supp. 3d 828 (E.D. Va. 2017) ...............................................................................9

**STATUTES**

18 U.S.C. § 2511(3)(a)...................................................................................................... 5, 8, 10

18 U.S.C. § 2702...............................................................................................................8, 9

18 U.S.C. § 2707................................................................................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 65 ...........................................................................1, 2, 11, 12, 15

## I.     SUMMARY OF THE ARGUMENT

Google LLC (Google) has attempted to resolve this matter with the Receiver by identifying alternate methods by which the Receiver could access the data at issue, including seeking this information directly from the domain administrators. In fact, just today and immediately prior to this filing, the Receiver notified Google that the Receiver successfully obtained access to the relevant Google accounts such that this dispute is now moot. But, despite gaining access to the accounts through presumably the exact method recommended by Google, and despite Google's good faith efforts to work with the Receiver over the past several weeks, the Receiver has chosen to waste time and harass Google with a contempt motion that, even now, it has not withdrawn. The Receiver claims this Court's orders empower him to compel Google to give him access to all emails and other documents stored by Google for the towerequity.com domain, despite now already having access to these very accounts. That is wrong for several reasons.

First, the federal Electronic Communications Privacy Act (ECPA) precludes the Receiver from using civil legal process to compel Google to grant him access to a user's communications or documents. The proper course is to obtain access directly from the affected users, who unlike Google, are not bound by ECPA's restrictions. The Receiver previously claimed that this is impossible because the users cannot access their accounts. That is incorrect. The Receiver has stated in an email to Google dated December 1 that the Receiver had obtained access to the towerequity.com domain accounts from the users. That option has been available all along; Google has continuously stated that requests for account access should be directed to the domain administrators as Google's records indicate that at least two administrators for the towerequity.com domain have logged in since the Receiver filed his contempt motion.

Second, the Receiver's demands for injunctive relief from Google are invalid because the orders he relies upon do not comply with core requirements of Federal Rule of Civil Procedure 65

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

with respect to Google. Specifically, Google is not in active concert or participation with Defendants in any scheme and therefore is not an entity that can be bound by an injunction under Rule 65(d)(2). Nor was Google given notice of the hearings on any of the orders the Receiver relies upon, which violates Rule 65(a)(1) and basic notions of due process. The Receiver is not entitled to any injunctive relief from Google.

Finally, the orders the Receiver relies upon do not mention any specific Google service or account, thus precluding any finding of clear and convincing evidence that Google violated a specific order. Moreover, multiple mitigating circumstances prevent a contempt finding, including Google's unrequited requests for additional information to resolve this matter without litigation.

Despite the Receiver's dubious demands and harassing conduct, Google has proceeded in good faith, including by suggesting expedited discovery of non-content information to resolve the factual inconsistencies described above. And while the Receiver's motion is now moot because the Receiver obtained access to the accounts through the accounts' users, Google remains willing to provide that discovery if necessary and after notice to those users.  But there is no basis for the Receiver's contempt motion, which should be denied.

## II.    FACTUAL BACKGROUND

### A.    Summary of Google's services.

Google provides a wide variety of Internet-based consumer and business services, including video sharing (YouTube), word processing (Google Docs), document storage (Google Drive), and email (Gmail). *See* Declaration of Molly O'Neil, ¶ 2. ("O'Neil Decl."). The Google service at issue in this case is called Workspace (formerly G Suite), through which Google provides custom email services and other products to businesses. *Id.* Because of this wide variety of services, Google publicly explains that legal requests related to user accounts "must specifically name the product/service and identify the accounts by email address or other appropriate unique identifier."

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

*See* Google Help, "Serving Civil Subpoenas or Other Civil Requests on Google", *available at* https://support.google.com/faqs/answer/6151275.

**B.      Google's efforts to resolve this matter with Receiver's counsel.**

Google knew nothing of this case until Receiver's counsel sent a letter at the end of September demanding that Google give the Receiver "complete access and rights" to unspecified accounts for unspecified services that Defendants allegedly receive from Google. *See* O'Neil Decl., ¶ 3; *see also* Ex. A to Receiver's Declaration (Dkt. No. 180-1). That letter cites ¶ 31.c of the Court's Statutory Restraining Order (Dkt. No. 16), but ¶ 31.c of that order does not identify any Google accounts or services.

Within days Google responded to the Receiver's letter and explained, among other things, that ECPA prohibits Google from giving the Receiver access to a user's communications and that his failure to identify any Google accounts precluded Google from complying in any event. *See* O'Neil Decl., ¶ 4; *see also* Ex. C to Receiver's Declaration (Dkt. No. 180-3).

Nearly three weeks later, on October 26th, the Receiver's counsel sent Google another letter claiming that certain individual defendants consented to the Receiver's demands for access to their unspecified accounts for unspecified services. *See* O'Neil Decl., ¶ 5; *see also* Ex. D to Receiver's Declaration (Dkt. No. 180-4). That letter cites ¶ 32 of a Consent Order (Dkt. No. 165) that was apparently entered after the Receiver sent his initial demand to Google, but ¶ 32 of that order does not identify any Google accounts or services either. The Receiver's letter concludes by threatening motions practice the next day if Google does not give him access to the unidentified accounts. *See* Ex. D to Receiver's Declaration (Dkt. No. 180-4).

Google attempted to schedule a meet and confer with Receiver's counsel, who responded by email on October 28th to explain for the first time that the accounts at issue are "G-Suite business accounts" associated with the domain towerequity.com. *See* O'Neil Decl., ¶ 6. He also attached a

purported consent form signed by Simon Batashvili, one of the individual defendants. *Id.* Mr. Batashvili's consent form, however, is undated and does not refer to any accounts associated with the domain towerequity.com. *See* Ex. B to Receiver's Declaration (Dkt. No. 180-2). Mr. Batashvili's consent form instead purports to authorize Google to give the Receiver "control and access of any and all accounts of TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC. and SIMON BATASHVILI[.]" *Id.* The Receiver further alleges Mr. Batashvili cannot give the Receiver access to these accounts himself because Mr. Batashvili claims he no longer has access to the accounts. *See* Receiver's Declaration, ¶ 4 (Dkt. No. 180).

Members of Google's inhouse legal department spoke with Receiver's counsel two days after receiving Mr. Batashvili's consent form to further discuss Google's concerns and to explain that counsel's requests were not technically feasible because Google is unable to access encrypted password information. *See* O'Neil Decl., ¶ 7. As a courtesy, Google agreed to escalate the alleged account recovery issues within the company, but Google's Account Recovery Team was unable to identify any access issues for the towerequity.com account, so Google's legal department emailed Receiver's counsel and asked if he could identify the specific email accounts that were purportedly having access issues. *Id.* Receiver's counsel ignored Google's request for five days. *Id.* When counsel finally responded, he declined to provide Google with any information about specific email accounts that were having access issues, but instead attached a copy of the contempt motion he filed four days prior. *Id.*

Google's request for further information stems from records indicating that at least two users who are administrators for the towerequity.com domain have been logging in to their accounts during this case, with some logins coming after the Receiver filed his contempt motion. *Id.* ¶ 8. Google has suggested that the Receiver issue a subpoena to Google for non-content records that

would identify the administrators for the towerequity.com domain and their recent logins so the Receiver could go to those parties directly to obtain access in compliance with the court's orders and ECPA. *Id.* Google has further offered to expedite its user-notice period for such a subpoena in order to facilitate a prompt resolution. *Id.* To date, Google has not received a subpoena in this matter but would promptly respond to one to resolve this dispute.

On December 1, the day that Google was required to respond to the Receiver's contempt motion, the Receiver emailed Google's counsel to state that the Receiver had "obtained access to the Tower Equity Domain" and its content and would therefore continue the hearing on the Receiver's contempt motion. *See* Declaration of Hayden M. Schottlaender, Ex. B-1. But because the Receiver has not indicated any intent to withdraw that baseless motion, Google has been required to file this response.

## III.    ARGUMENT

### A.    The Receiver's demands violate ECPA.

The Receiver's demands that Google provide him with access to Defendants' Google accounts violate two separate but related federal statutes: the Wiretap Act and the Stored Communications Act ("SCA"), both of which were amended or adopted as part of ECPA.

The Wiretap Act prohibits a provider from facilitating the real-time interception of electronic communications, 18 U.S.C. § 2511(3)(a), and the SCA similarly prohibits a service provider from providing access to a user's stored communications. *Id.* § 2702(a)(1)-(2). There are no statutory exceptions that permit a civil litigant to compel access to an account or its contents with legal process obtained in a civil proceeding. *Id.* §§ 2511(3)(b), 2702(b); *Fontenot v. Brouillette*, No. 4:10-CV-01053, 2012 WL 13040278, at *1 (S.D. Tex. Feb. 9, 2012).

The Receiver's demands compel Google to violate these provisions of ECPA by giving him "complete access and rights to" the Defendants' accounts. Receiver's Emergency Motion, at ¶ 2.

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

This will provide the Receiver with access to all stored communications within the accounts and real-time access to any prospective communications associated with the accounts. Similar demands have been consistently rejected as unlawful under ECPA.

In the case of *In re Toft*, a foreign representative of a debtor in a German insolvency proceeding sought *ex parte* access to the debtor's online accounts held by two U.S.-based companies. 453 B.R. 186, 188 (Bankr. S.D.N.Y. 2011). The German insolvency administrator alleged that the debtor owed creditors several million dollars but refused to cooperate with the administrator and was hiding his assets. *Id.* A German court therefore entered a "Mail Interception Order," which authorized the foreign representative, as administrator of the debtor's estate, to obtain the debtor's electronic communications under German law. *Id.* Accordingly, the German insolvency administrator asked the U.S. Bankruptcy Court for the Southern District of New York to enter an order enforcing the Mail Interception Order by compelling the U.S.-based service providers to disclose to the administrator "all of the Debtor's emails currently stored on their servers and to deliver to [the administrator] copies of all emails received by the Debtor in the future." *Id.* at 189. The U.S. Bankruptcy Court denied the motion, holding that,

> [a] bankruptcy trustee would not be entitled to such relief under United States law, and a chapter 15 proceeding cannot ordinarily be pursued without notice to the debtor. The relief requested would also contravene the protection against disclosure of e-mails by internet service providers contained in the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, *et seq.*, ("Privacy Act" or "Stored Communications Act"), and would appear to constitute an unlawful interception of electronic communications in transit under the Wiretap Act, 18 U.S.C. § 2511, *et seq.* Effectuation of the relief sought might subject the Foreign Representative, or his U.S. agents and possibly an ISP disclosing the debtor's e-mails, to U.S. criminal liability.

*Id.*

Similarly, in the case of *In re Irish Bank Resolution Corporation Limited*, the Bankruptcy Court for

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

the District of Delaware held "that the SCA and the case law interpreting it do not support the notion of compelling an email service provider to disclose electronically stored information based on a theory of imputed consent or by designating a third-party as the 'subscriber.'" 559 B.R. 627, 632 (Bankr. D. Del. 2016). In that case the foreign representatives of a debtor in litigation pending in Ireland applied to the Delaware court for an order directing the email service provider "Yahoo to hand over to the Foreign Representatives all electronically stored information contained in [a] Yahoo Account." *Id.* at 637. The foreign representatives' motion was based on the theory that the Yahoo account was the debtor's property, or at minimum contained information related to the debtor's property or financial affairs, and the foreign representatives could therefore be deemed the subscribers of the account for purposes of the SCA. *Id.* at 636-37, 642. After engaging in a thorough analysis of the SCA, the court determined that "courts interpreting the SCA have declined to create an 'implicit exception to the [SCA] for civil litigation,' and have repeatedly found that persons other than the actual subscriber may not give consent to disclose information found in a private email account." *Id.* at 649-50 (quoting *Suzlon Energy Ltd. v. Microsoft Corp.,* 671 F.3d 726, 730 (9th Cir. 2011)). The court therefore denied the foreign representatives' motion based on the court's conclusion that it lacked "the authority to compel a service provider to divulge the contents of a private email [account] solely at the request of a third-party after the account user has failed to give his or her consent." *Id.* at 652.

If the Receiver wants access to Defendants' accounts, he must obtain that access directly from Defendants. *See, e.g., Suzlon,* 671 F.3d at 731 ("[the user] himself is the person who should be responsible for disclosing his own emails."); *In re Toft,* 453 B.R. at 199 ("any subpoena issued to obtain production of e-mail correspondence would properly be directed at [the user], rather than the ISPs alone."). And, given the Receiver's recent access to the Defendants' accounts, it would appear

that the Receiver did just that. The Receiver's ability to obtain access through the Defendants is not new. Google has suggested this option from the very start, and the administrators to the towerequity.com domain have been logging in even after the Receiver filed his contempt motion. *See* O'Neil Decl., ¶ 8.

The Receiver suggests ECPA is not a concern because Defendant Batashvili has consented to Google's provision of access to Defendants' accounts, *see* Receiver's Declaration, ¶ 4 (Dkt. No. 180), but Mr. Batashvili's purported consent is ineffectual for numerous reasons. Principally, Mr. Batashvili's undated declaration does not identify the accounts at issue, including any associated with the towerequity.com domain, making it impossible for Google to identify the accounts for which he claims to have provided consent.[1] *See* Ex. B to Receiver's Declaration (Dkt. No. 180-4). More troubling, Google's records indicate that administrators for the towerequity.com domain have recently accessed their accounts, which belies the representation made by Receiver throughout this process  that those who are truly in control of the towerequity.com domain are unable to access their accounts and comply with this Court's orders. *See* O'Neil Decl., ¶ 8.

It is because of situations like this that ECPA gives providers the discretion to determine when a user has provided the requisite consent. ECPA's consent exceptions state that "[a] provider . . . *may* divulge the contents of a communication . . . with the lawful consent of the originator or an addressee or intended recipient of such communications, or the subscriber in the case of remote computer service." 18 U.S.C. § 2702(b)(3) (emphasis added); *see also id.* § 2511(3)(b)(ii). "Use of the

---

[1] In an email dated December 1, the Receiver for the first time cited to a Magistrate Judge order issued out of *In Re Ex Parte Application of Tatiana Akhmedova*, Case No. 20-MC-80156-VKD, 2020 WL 6891828 (N.D. Cal. Nov. 24, 2020) (Demarchi, M.J.) to argue that Google does not have the right to dictate the form of consent that it will accept under the SCA. For several reasons, that order should not be afforded any weight by this Court. First, as a factual distinction, the "consent" at issue here is nothing like the consent in Akhmedova. The consent here fails to identify any account for which consent is being provided. Second, the Court in *Akhmedova* did not review the voluntary nature of so-called "consent" disclosures under 18 U.S.C. § 2702. *See infra*, at 9-10. Third, that order in *Akhmedova* was issued *after* the Receiver filed this contempt motion, and that order is being appealed by Google. *See id.*, Docs. 31, 32.

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

word 'may' in a statute is generally read to confer discretion." *Cash v. United States*, 961 F.2d 562, 567 (5th Cir. 1992). In addition, § 2702 is titled "***Voluntary*** disclosure of customer communications or records," indicating that this section identifies when providers may make certain disclosures, if they deem disclosure appropriate. 18 U.S.C. § 2702 (emphasis added).

Consistent with this reading, multiple federal district courts have found that "according to the language of the SCA, it is within the providers' discretion whether to disclose e-mails even in cases where there is lawful consent." *PPG Industries, Inc. v. Jiangsu Tie Mao Glass Co., Ltd.,* 273 F. Supp. 3d 558, 561 (W.D. Pa. 2017); *see also Schweickert v. Hunts Point Ventures, Inc.*, No. 13–cv– 675RSM, 2014 WL 6886630, at *13 (W.D. Wash. Dec. 4, 2014) ("Even if the Court could compel Plaintiff to consent to the disclosure of some [of] her emails under Rule 34, the providers would still only be permitted, but not required, to turn over the contents under 18 U.S.C. § 2702(b)(3)[.]"); *In re Facebook*, 923 F. Supp. 2d 1204, 1206 (N.D. Cal. 2012) ("[u]nder the plain language of Section 2702, while consent may ***permit*** production by a provider, it may not ***require*** such a production.") (emphasis in original).

A federal district court in Virginia addressed this precise issue in a case where a criminal defendant claimed to have been locked out of his email account and obtained an *ex parte* order compelling Google to provide him the contents of the account. *See U.S. v. Wenk*, 319 F. Supp. 3d 828, 828-29 (E.D. Va. 2017). The defendant, however, was unable to comply with Google's simple processes for confirming account ownership, *id.* at 829 n.2, so Google moved to vacate the order that had been issued without any prior notice. In granting Google's motion, the Court found that,

> [b]ased upon the plain language of the SCA, service providers such as
> Google are not required to disclose communications covered by the
> Act, even when the relevant consent is properly given. Instead, the
> SCA vests service providers with discretionary authority to disclose
> once consent is properly given.

*Id.* at 829.

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

In those relatively rare cases where litigants cannot cooperate to resolve these issues on their own, Google will produce content after confirming its user's ability to provide "lawful consent" by requiring the user to (i) enter a consent order under the supervision of the Court; (ii) access their account; and (iii) send a communication from the account itself to Google expressly consenting to disclosure. This process ensures that Google has valid consent from the actual user of the account and has been deemed compliant with the SCA. *See, e.g., Negro v. Superior Court,* 230 Cal. App. 4th 879, 889 (Cal. Ct. App. 2014) (affirming these steps for obtaining consent and noting under the SCA that "the context in which the consent issue is likely to arise in cases like this one militates in favor of a narrower conception of consent, not a broader one.").

It makes sense to give Google and other providers the discretion to devise their own procedures for confirming "lawful consent" under ECPA. 18 U.S.C. §§ 2511(3)(b)(ii), 2702(b)(3). No two online products are the same, so providers should be able to determine how to best confirm valid consent for their services. Moreover, the SCA's consent exception would be ripe for abuse if litigants could compel service providers to produce the contents of communications simply by making a bare assertion in a vague letter, declaration or consent form that an account belongs to them even when they are unable to perform any of the simple steps required to properly identify or access the account. Mistakes, misunderstandings, or outright deception could result in disclosure of content belonging to the wrong person, which in turn could lead to litigation with those who feel wronged. *See* 18 U.S.C. § 2707; *see also O'Grady v. Sup. Ct.*, 139 Cal. App. 4th 1423, 1442 (Cal. Ct. App. 2006) (the mere possibility that a service provider might be able to invoke a defense to improper disclosure under the SCA is not a sufficient reason to compel disclosure).

These uncertainties exemplify the practical difficulties that would result if Google were forced to comply with vague and inconsistent demands like those it has received in this case. Asking Google to somehow investigate and confirm the validity of purported consent under such

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

circumstances would necessarily "embroil service providers in disputes . . . over the legal sufficiency of a user's conduct to constitute consent." *Negro,* 230 Cal. App. 4th at 896. This would contravene ECPA's interest in "limiting the burdens placed on service providers by the Act," *id.,* and, more importantly, would create a risk of breaching the privacy of users who have not in fact consented to disclosure. Those dangers are all present in this case, where Google has received an undated consent form that does not identify any account. To make matters worse, Google has evidence that administrators of the towerequity.com domain have recently accessed their accounts despite being told that Defendants cannot access their accounts. The Court should not create the reckless precedent the Receiver seeks here by holding Google in contempt and forcing it to provide the Receiver with access to the contents of any accounts under these circumstances.

Nevertheless, Google has communicated extensively with the Receiver's counsel in an effort to resolve these issues. Google remains ready to respond to a subpoena (after giving its users notice and an opportunity to object) to help facilitate a resolution despite the fact that nothing should prevent Defendants and the Receiver from resolving these issues among themselves without involving Google.

## B.     The Receiver's demands violate Rule 65's requirements for injunctive relief.

The Receiver claims this Court's orders impose injunctive relief on Google by compelling Google to give him access to certain Google accounts. But that cannot be true because the orders do not comply with core elements of Federal Rule of Civil Procedure 65 with respect to Google.

Principally, Google cannot be bound by an order for injunctive relief in this matter. Rule 65(d)(2) provides that an order for injunctive relief "binds only . . . the parties[,] the parties' officers, agents, servants, employees, and attorneys[,] and . . . other persons who are in active concert or participation with anyone described" above. But Google does not qualify as such an entity. Google is not a party or one of their officers, agents, servants, employees, or attorneys. Google is also not

"in active concert or participation with" Defendants. To the extent the Receiver claims non-party Google is "in active concert or participation with" Defendants simply by providing communications services to them (the same as it does for millions of other users), that argument should be rejected as it has been in other cases. *See Blockowicz v. Williams*, 630 F.3d 563, 568 (7th Cir. 2010) (a nonparty service provider's technological ability to enforce an injunction does not mean it is "in active concert or participation" with a user who is violating an injunction); *Floyd v. Aalaei*, 2017 WL 3129830, at *5 (E.D. Tex. July 24, 2017) (citing *Blockowicz* to support parties' concession that the court had no authority to order third-party service provider to take any action).

Furthermore, Rule 65(a)(1) provides that an injunction may issue "only on notice to the adverse party." The notice requirement "necessarily requires that the party opposing the preliminary injunction has the opportunity to be heard and to present evidence." *Harris County, Texas v. Carmax Auto Superstores Inc.*, 177 F.3d 306, 325 (5th Cir. 1999) (citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 434 n.7 (1974)). The requirement is mandatory: "The courts consistently have treated [R]ule 65(a)(1) as mandatory and have not hesitated to dissolve preliminary injunctions issued without notice or the opportunity for a hearing on disputed questions of fact and law." *Phillips v. Chas. Schreiner Bank*, 894 F.2d 127, 130 (5th Cir. 1990) (citations omitted).

Rule 65(a)(1)'s notice requirement "is a core element of due process." *Sec. & Exch. Comm'n v. Haxton*, No. 3:08-CV-1467-L, 2008 WL 11426856, at *2 (N.D. Tex. Sept. 18, 2008) (Lindsay, J.). Google was not given any notice or opportunity to be heard before the orders the Receiver relies upon were entered. Accordingly, to the extent those orders purport to impose injunctive relief on Google, they are void. *Id.* (denying motion for injunctive relief where adverse party did not have notice of the hearing). If the Receiver had bothered to afford Google any due process with respect to the orders, Google could have explained things like ECPA, the Receiver's failure to identify any

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

specific Google services or accounts in his requests, and (once Google was told the specific domain at issue) factual discrepancies associated with the Receiver's alleged inability to obtain access from the Defendants.

## C.      Google should not be held in civil contempt.

Google should not be held in civil contempt because the orders the Receiver relies upon do not mention any specific Google service or account, thus precluding any finding of clear and convincing evidence that Google violated a specific order. Moreover, multiple mitigating circumstances preclude a contempt finding, including Google's unrequited requests for additional information to resolve this matter without litigation.

### 1.      There is no clear and convincing evidence that Google violated a specific order.

"The judicial contempt power is a potent weapon which should not be used if the court's order upon which the contempt was founded is vague or ambiguous." *Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979) (vacating contempt finding based on vague order). "Thus, the court's order must set forth in specific detail an unequivocal command." *Id.* (internal quotation marks omitted). The Receiver bears the burden of demonstrating by clear and convincing evidence that Google has violated a specific and unequivocal command. *See Hill v. Schilling*, No. 3:07-CV-2020-L, 2015 WL 13484485, at *2 (N.D. Tex. 2015) (Lindsay, J.) (citing *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004)). In the contempt context, clear and convincing evidence is "'evidence so clear, direct and weighty and convincing as to enable a fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.'" *Hill*, 2015 WL at *2 (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)).

There is no clear and convincing evidence that Google violated any specific court order. None of the orders the Receiver relies upon in his motion mention any specific Google account or

even any specific Google service. But the Receiver apparently believes those orders grant him unfettered discretion to send letters to service providers around the country demanding that they give him access to users' communications (in violation of ECPA) based on his bare assertion that one or more Defendants used a provider's services. That position is unreasonable on its face and is particularly indefensible given the myriad services that Google offers to millions of customers worldwide. There is no way for Google to review the orders the Receiver relies upon in his motion and determine which of the millions of accounts associated with Google's many services are purportedly covered by those orders. Google made no secret of this as it explained as much to the Receiver in Google's initial response to his demands. *See* Ex. C to Receiver's Declaration (Dkt. No. 180-3).

Accordingly, to the extent the orders are intended to compel Google to do anything, they are too "vague or ambiguous" to support a contempt finding against Google. *Matter of Baum*, 606 F.2d at 593. At minimum, there is no clear and convincing evidence that those orders compelled Google to do anything with respect to Workspace accounts within the towerequity.com domain.

### 2. Multiple mitigating circumstances counsel against a contempt finding.

Even if the Court finds the orders cited in the Receiver's motion are not vague or ambiguous, Google is entitled to offer "mitigating circumstances that might cause the district court to withhold the exercise of its contempt power[.]" *Hill*, 2015 WL at *2 (quoting *Whitfield v. Pennington*, 832 F.2d 909, 914 (5th Cir. 1987)). Several mitigating factors counsel against a contempt finding.

Most importantly, Google has a strong argument that ECPA makes it unlawful for a civil litigant to compel a service provider to produce the contents of a user's communications with a court order. *Supra* § III.A. The Receiver claims ECPA is not a barrier to his demands because he has a purported consent form from a user who claims to be unable to access his account. But ECPA

**GOOGLE'S RESPONSE TO RECEIVER'S EMERGENCY MOTION FOR "SHOW CAUSE" HEARING TO HOLD GOOGLE IN CIVIL CONTEMPT**

does not require service providers to honor consent forms, and the consent form the Receiver relies upon does not even mention the towerequity.com domain, making it impossible for Google to identify the accounts for which Mr. Batashvili claims to have provided consent. *See* Ex. B to Receiver's Declaration (Dkt. No. 180-4). Additionally, the Receiver's claim that he cannot obtain access directly from the Defendants, *see* Receiver's Declaration, ¶ 4 (Dkt. No. 180), is false as the Receiver has done just that. More, Google's records indicate that administrators for the towerequity.com domain have recently accessed their accounts. *See* O'Neil Decl., ¶ 8. Google cannot be expected to accept any claims of "lawful consent" under ECPA from the Receiver or Defendants when none of the parties appear to have a specific and reliable grasp of the facts.

Furthermore, Google has a strong argument that the Receiver's demands for injunctive relief from Google cannot be authorized by the orders he relies upon because those orders do not comply with the basic due process and "active concert or participation" elements of Rule 65(a)(1) and (d)(2). *Supra* § III.B.

Finally, despite the Receiver's dubious demands and harassing conduct, Google has proceeded in good faith by requesting additional information that would allow it to examine the account access issues Defendants were allegedly having in an effort to help resolve these issues. *See* O'Neil Decl., ¶ 7. But the Receiver refused to provide that information before he filed his motion. *Id.* Google has also suggested expedited discovery (with user notice) to allow the parties to resolve the factual inconsistencies regarding account access. *Id.*, ¶ 8. A contempt finding is not justified in these circumstances. *See Hill*, 2015 WL at *3 (denying contempt motion where alleged contemnor "request[ed] additional information" in an attempt to resolve the matter).

## IV.     CONCLUSION

For the reasons stated, the Court should not hold Google in civil contempt.

Respectfully submitted on this
1st day of December 2020

**PERKINS COIE LLP**

*/s/ Hayden M. Schottlaender*
Hayden M. Schottlaender
Texas Bar No. 24098391
500 N. Akard Street, Suite 3300
Dallas, TX  75201-3347
Phone: 214-965-7700
Fax: 214-965-7799
hschottlaender@perkinscoie.com

**ATTORNEYS FOR GOOGLE LLC**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon all counsel of record via e-service on this the 1st day of December 2020.

*/s/ Hayden M. Schottlaender*
Hayden M. Schottlaender
