IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>ALABAMA SECURITIES COMMISSION, STATE OF ALASKA, ARIZONA CORPORATION COMMISSION, CALIFORNIA COMMISSIONER OF BUSINESS OVERSIGHT, COLORADO SECURITIES COMMISSIONER, STATE OF DELAWARE, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, OFFICE OF FINANCIAL REGULATION, OFFICE OF THE GEORGIA SECRETARY OF STATE, STATE OF HAWAII, SECURITES ENFORCEMENT BRANCH, IDAHO DEPARTMENT OF FINANCE, INDIANA SECURITIES COMMISSIONER, IOWA INSURANCE COMMISSIONER DOUGLAS M. OMMEN, OFFICE OF THE KANSAS SECURITIES COMMISSIONER, KENTUCKY DEPARTMENT OF FINANCIAL INSTITUTIONS, MAIN SECURITIES ADMINISTRATOR, STATE OF MARYLAND EX REL MARYLAND SECURITIES COMMISSIONER, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, MISSISSIPPI SECRETARY OF STATE, NEBRAKA DEPARTMENT OF BANKING & FINANCE, OFFICE OF THE NEVADA SECRETARY OF STATE, NEW MEXICO SECURITIES DIVISION, THE PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OKLAHOMA DEPARTMENT OF SECURITIES, SOUTH CAROLINA ATTORNEY GENERAL, SOUTH CAROLINA SECRETARY OF STATE, SOUTH DAKOTA DEPARTMENT OF LABOR & REGULATION, DIVISION OF INSURANCE, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF COMMERCE AND | Case No.: 3-20CV2910-L |

**SECOND REPORT OF THE RECEIVER**                                                                                                    1

| | |
|---|---|
| INSURANCE, STATE OF TEXAS, WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS, WEST VIRGINIA SECURITIES COMMISSION, AND STATE OF WISCONSIN | § § § § § § |
| **Plaintiffs,** | § § |
| v. | § § |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § |
| **Defendants,** | § § |
| and | § § |
| TOWER EQUITY, LLC, | § § |
| **Relief Defendant**. | § § § |

## SECOND REPORT OF THE RECEIVER

Kelly M. Crawford, as the court-appointed Receiver ("Receiver"), submits his second report pursuant to this Court's *Statutory Restraining Order, Order for an Accounting, Order for Appointment of Receiver, Order for Expedited Discovery, and Other Equitable Relief and Order to Show Cause Regarding Preliminary Injunction* [Docket No. 16] (the *"SRO"*)[1], covering the period from November 10, 2020 through December 31, 2020.

---

[1] The *SRO* was continued in force by Consent Orders entered by the Court regarding the Defendant entities and the individual Defendants Asher and Batashvili [Docket Nos. 164, 165]. The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

**SECOND REPORT OF THE RECEIVER** 2

## I.

## **INVESTORS**

Since the Receiver's filing of his *Initial Report,* calls from grief stricken investors continued to pour into the Receiver's office.[2]  As of the date of the filing of the Receiver's Initial Report, the Receiver's database consisted of 941 known investors.  That database has now grown to 1,572 investors.

On December 18 and 21, 2020, the Receiver mailed to each investor in the database a questionnaire for the investors to complete and return to the Receiver by no later than January 15, 2021.  The information from the questionnaire will be entered in the database and used by the Receiver to make a recommendation to the Court of the claim amount that should be allowed for each investor.

In order to advise investors of the receivership, the Receiver established a website, www.metalsandbarrickcapitalreceivership.com, where the Receiver provides his contact information, answers to frequently asked questions, a timeline of events, and copies of the Complaint, and the orders of the Court.  In addition, the Receiver gained control of the domain names for metals.com, chasemetals.com, and barrickcapital.com so that they are now redirected to the Receiver's website.

The Receiver has a paralegal dedicated to recovering and maintaining information from each investor to facilitate communications with the investors during the claims process described herein.

---

[2] Although the Receiver returns some of the calls and emails, the Receiver has two attorneys on his team who are dedicated to returning investor calls.  Each call is lengthy because the investors are distraught and it takes time to insure the investor clearly understands the receivership process and what to expect.  The Receiver's continuing goal is to insure investor calls are returned the same day they are received or the following day.

## II.

## ASSETS RECOVERED TO DATE

The assets recovered by the Receiver since November 10, 2020 are as follows:

| | |
|---|---|
| Bank of America: | $1,081,189.09 |
| The Voice, Inc. | $250,000.00 |
| PayPal: | $80,839.67 |
| Robinhood Securities: | $30,206.62 |
| Signature Bank[3]: | $1,000,000 |
| Luxury Leasing Partners, LLC: | $11,271.84[4] |
| Refunds: | $16,644.70 |
| Crowdfunding distribution: | $600.00 |
| Interest earned through Dec. 31st. | $1,774.50 |

With the recovery of the foregoing additional assets, plus the assets recovered as of the *Receiver's Initial Report*, and less the monies paid for receivership fees and expenses, the balance in the receivership account as of December 31, 2020 is $8,386,159.45.

## III.

## POTENTIAL SOURCES OF RECOVERY

The Receiver identified the following additional sources for recovery of investor monies.

### A.   PERSONAL PROPERTY

The Receiver solicited offers from four office liquidation companies in Los Angeles for the purchase of the office property at the primary office of the Defendants, 8383 Wilshire Blvd., Beverly Hills, California. The highest bid was $65,000 with the bidder assuming the obligation to

---

[3] Although Signature Bank confirmed the amounts frozen by the *SRO* prior to November 10, 2020 the monies were not delivered to the Receiver until December 1, 2020.
[4] This amount was used to reimburse the receivership estate for expenses incurred in seizing the Ferrari that was leased.

**SECOND REPORT OF THE RECEIVER**                                                                 4

pay the expenses associated with the sale and removal of all of the property from the leased premises so that the leased premises can be returned to the lessor.[5]

In addition, the Receiver took possession of two automobiles he is seeking to sell: a 2020 Shelby Mustang with an estimate fair market value of at least $75,000, and a 2016 Mercedes G-Class that is subject to a $60,000 lien, but that has approximately $10,000 in equity for the receivership.

The Receiver also has possession of three paintings taken from the Defendants' offices that the Receiver is having appraised.

The Receiver took possession of certain jewelry given by Defendant Simon Batashvili to his wife Fainche McCarthy.  Initial appraisals of the jewelry indicate it is worth less than $10,000.

Finally, the Receiver took possession of furniture, artwork, guitars, and musical equipment belonging to the Defendants Lucas Asher and Simon Batashvili that the Receiver is currently storing.  Pursuant to the terms of the Court's Order establishing procedures for the receivership, the personal property of the individual defendants, including the jewelry taken from Simon Batashvili's wife, cannot be sold until a final judgment is obtained by the Plaintiffs against the individual defendants, or the defendants are dismissed from the lawsuit.

B.   **REAL PROPERTY**

During the Receiver's investigation, the Receiver discovered that in 2019 Defendant Tower Equity, LLC, or an affiliated Tower entity, purchased at a Sheriff's sale 17 residential properties in Philadelphia, Pennsylvania.  According to public records, Tower paid a total of $1,254,000 for

---

[5] The lessor is holding a security deposit from the defendants that the Receiver will seek to recover once the space has been vacated.  The Receiver has been unable to vacate the premises earlier because the proposed procedures for the sale of property were objected to by the individual defendants and the order setting forth the procedure for the sale of property was not entered until December 9, 2020 [Docket No. 213].

**SECOND REPORT OF THE RECEIVER**                                                                                                5

these properties. Based on Realtor.com, the current fair market value of the 17 residential properties is $2,729,997.

The Receiver filed in the real property records a Notice of Lis Pendens, including a copy of the Court's *SRO*, with respect to each of the 17 properties.

In addition, Defendant Asher testified in his asset deposition that Defendant Tower Equity, LLC, or an affiliated Tower entity, purchased fractional interests in properties in Florida, Tennessee, Texas, and Pennsylvania – ranging from commercial to industrial to multi-family. To date, the Receiver discovered that Asher used Tower Equity to invest $260,000 with Crowdfunding for the purchase of fractional interests in various real estate projects. Such interest has been assigned by Crowdfunding to the Receiver and to date the Receiver has received one distribution check in the amount of $600 from such investment. The Receiver is continuing his investigation into real properties in which the Defendants or Relief Defendants or entities they own or control may have an interest.

### C.     COMMISSIONS

The law is well established that a Receiver may recover commissions received from sales persons for their role in soliciting investor monies for an unlawful scheme. *Warfield v. Byron,* 436 F.3d 551, 560 (5th Cir. 2006). In such instance, sales persons are not being paid with profits earned from a legitimate enterprise, but instead are being paid commissions from the principal amount received from investors in the scheme. Regardless of whether the salespersons knew or should have known that Metals.com or Barrick capital or the other Defendant entities were being operated illegally, the commissions the salespersons received are recoverable as fraudulent conveyances. *Id.* As the recipient of a fraudulent transfer, the salesperson must be able to show that he or she received the commissions in good faith *and* in exchange for reasonably equivalent value. While a

salesperson may be able to claim he or she received the commissions in good faith, the salesperson cannot show he or she provided reasonably equivalent value in exchange for the money received. Adding more investors to a fraudulent scheme does not provide value, but rather only enlarges the number of victims.

The Receiver is aware of several million dollars of investor funds paid in commissions.[6] The Receiver mailed the salespersons a copy of the *SRO* and made demand upon the salespersons to provide the Receiver with information regarding the monies received and services provided. With the significant amount of investor funds used to compensate salespersons, and which the Receiver contends are recoverable as a matter of law, the Receiver intends to pursue an ancillary action against the salespersons to recover the commissions and/or seek to settle such claims subject to the approval of this Court

### D. INVESTMENTS BY THE DEFENDANTS

The Receiver discovered that Defendant Tower Equity LLC owns 200 shares of stock in Spotify Technology S.A. The Receiver had ownership of the shares transferred to the Receiver and intends to place an order to sell the shares of stock. Depending upon the stock price as of the date of sale, this could generate in excess of $50,000 for the receivership estate.

At his asset deposition Defendant Asher testified that he used Defendant Tower Equity LLC to make a number of venture capital, equity, or stock purchases, including an investment of approximately $300,000 in Space Exploration Technologies Corp. ("SpaceX"). To date SpaceX has failed to respond to several demands from the Receiver for information regarding the investment. The Receiver provided a copy of the *SRO* to other entities Defendant Asher claimed to have invested in and made demand upon such entities to provide information regarding monies

---

[6] The specific amounts paid to each salesperson will be determined once the forensic accounting of the Defendants' records is complete.

received and the investment. To date the Receiver located an investment with Robinhood Securities and liquidated that investment for $30,000. The Receiver will continue his search for any equity investments made by the Receivership Defendants and take control of the investments pursuant to the Court's orders.

### E.  MONIES AND METALS HELD BY BAYSIDE METAL EXCHANGE

Once the Defendants received monies from the investor victims, the Defendants placed orders for the metals themselves with Bayside Metal Exchange ("BME"). BME would in turn usually deliver the metals to the depository for the investor. The Defendants, of course, would take their illegal gains from the monies received from the investors before transferring monies to BME for the purchase of the metals.

When BME learned of the receivership, BME froze all pending transactions with the Defendants[7]. BME, in cooperation with the Receiver, provided the Receiver a list of all pending transactions. While the Receiver contends BME is required to turn over to the Receiver (for distribution to the investors who placed the pending orders) the money BME received for pending transactions, BME argues it did not assume that risk and instead is prepared to complete the pending transactions and deliver the metals in their inventory.

Putting aside the issue of whether BME should bear the risk and return all money it received from the Defendants, the Receiver and BME recently reach an agreement whereby BME will provide the Receiver with a liquidation price for the metals it is holding for a customer and the Receiver will contact the customer and find out if the customer wishes to have the metals delivered or the metals liquidated and the monies delivered. Such agreement is without prejudice to the rights

---

[7] BME identified the following accounts as the Defendants or under the possession and control of the Defendants, and froze pending transactions with Barrick Capital, Glencore Financial, Metals.com, Newmont Financial, Northwestern Finance, and USA Mint.

SECOND REPORT OF THE RECEIVER                                                                                                    8

of any of the parties to the lawsuit, the Receiver, the customers, or BME. The liquidation price of the metals BME has pending for delivery to the investors is $2,640,450 as of January 4, 2021.

### F. THE MYRIAD OF ENTITIES OWNED BY DEFENDANTS

The Receiver intends to continue his investigation into the myriad of entities owned or controlled by the Defendants Asher and Batashvili to determine if any of the entities hold assets that may be recovered for the benefit of the receivership estate.

### IV.

### PENDING REGULATORY AND CIVIL ACTIONS AGAINST THE DEFENDANTS

At the time the Receiver was appointed, there were regulatory actions pending against the Defendants by 21 States. Since November 10, 2020, the Receiver participated in the regulatory action pending in Alaska, reviewed and revised proposed consent decrees in Massachusetts, Colorado and Alabama, and provided information to California for purposes of a regulatory action.

### V.

### RECORDS OF THE DEFENDANTS AND RELIEF DEFENDANT

The vast majority of the records of the Defendants and Relief Defendant are digitally stored on various cloud platforms such as Microsoft, Google, Drop Box, Salesforce, Intuit, and Amazon. Defendants Asher and Batashvili, as well as the IT managers for the Defendant entities, claimed that because their personal computers were seized by the FBI they were unable to retrieve their login and passwords required to access the cloud platforms. They claim that such logins and passwords change often and are stored on the seized computers.

The Receiver provided the *SRO* to each of the cloud platforms and demanded that they grant the Receiver access. After much delay and the threat of contempt actions by the Receiver, Microsoft, Intuit, and Sales Force finally complied with the *SRO* and granted access to the

Receiver. Meanwhile, Google continued its refusal to grant access to the Receiver. To further compel Google to grant access to the Receiver, the Receiver obtained from Defendants Asher and Batashvili their declarations consenting to Google granting access to the Receiver. Despite this consent by the Defendants, Google continued its refusal to grant access to the Receiver. As a result, the Receiver filed an *Emergency Motion for "Show Cause" Hearing to Hold Google, Inc. in Civil Contempt"*. On the eve of the hearing on the contempt motion, Defendant Asher cooperated with the Receiver in obtaining a new password for access to the google platform and shared that new password and login credentials with the Receiver, giving the Receiver access to and control of the platform. The Court continued the contempt hearing and the Receiver is reviewing the information on the google platform to determine if any content was lost or destroyed while Google refused to grant access to the Receiver. In addition, the Receiver contends that Google should be compelled to reimburse the receivership estate for the attorneys fees incurred by the Receiver in seeking access to the Google platform.

In addition, after numerous requests the Receiver finally received relevant bank records from Wells Fargo. After numerous demands by the Receiver, Bank of America provided some bank records for some accounts of the Defendants, but Bank of America failed to produced bank records for some of the closed accounts of the Defendants. Bank of America expressed its intention to provide the missing records for the closed accounts. As the Receiver obtains bank records from the banks, he provides them to his accounting firm so that they can prepare a forensic accounting.

## VI.

## RECOMMENDATIONS OF THE RECEIVER

Based on the foregoing, the Receiver make the following recommendations to assist in the continuation of the receivership.

A.  PROCEDURES FOR RECEIVERSHIP

On December 9, 2020 the Court entered a *Consent Order Governing the Administration of the Receivership, Procedures Governing the Sale or Abandonment of Personal Property, Notice of Intended Sale and Disposition of Various Items, Fee Application Procedures.* [Docket No. 213]. This Order establishes procedures for the Receiver to efficiently administer the receivership estate and sets for the procedures for the Receiver to follow in selling personal and real property.

B.  CLAIMS PROCESS FOR INVESTORS AND CREDITORS

Due to the amount of assets recovered to date, there are sufficient assets to justify the Court implementing a claims process for the distribution of assets. Prior to January 15, 2021[8], the Receiver will seek authority from this Court to establish procedures for a claims process that: 1) authorizes the Receiver to make recommendations regarding the claims of the investors based on information gathered by the Receiver; 2) approves a proof of claim form to be sent by the Receiver to all known creditors; 3) establishes a bar date or deadline by which all proof of claim forms with supporting documentation must be submitted by creditors to the Receiver; 4) establishes a process for the Receiver to inform the Court regarding the claims received, make recommendations regarding the claims, and provide an opportunity for investors or creditors to object to the Receiver's recommendation regarding claims; and 5) sets a hearing date for the Court to rule upon the claims submitted by the Receiver and consider any objections to the Receiver's recommendations regarding the claims.

Once the Court enters an Order with a list of approved investor and creditor claims the Receiver will make a proposal to the Court regarding the classification of the claims and the means of distributing assets to approved claimants. Upon entry of an Order from the Court approving the

---

[8] The Receiver initially estimated that the Motion to Establish Claims Procedures would be filed by November 30, 2020, however the Receiver decided to use a questionnaire to gather information from the investors instead of a proof of claim form and mailed out the questionnaire to the investors in December.

**SECOND REPORT OF THE RECEIVER**                                                                                                   11

means of distribution of assets to approved claimants, the Receiver can begin distributing monies. The Receiver anticipates the claims process can be completed within the first or second quarter of 2021 and that an initial distribution of assets can be made soon thereafter.

### C.   COMPELLING DISCLOSURE OF SOURCE OF ATTORNEYS' RETAINER

The Receiver made numerous requests of counsel for Defendants Batashvili and Asher to disclose the source of payment of the fees he is charging for representing Defendants, and specifically requested copies of "all documents relating to all funds received by you or your firm, from, on behalf of, or for the benefit of any of the Defendants…"  The attorney for the individual Defendants continues his refusal to provide the information requested by the Receiver and required by the law to be disclosed.  Accordingly, the Receiver will have to request the Court to compel the attorney for the individual Defendants to turn over such information.

### D.   ENFORCE DEFENDANTS' COMPLIANCE WITH THE *SRO*

During the course of his investigation the Receiver discovered a bank account in the name of USA Accounts, Inc. at Bank of America in which Defendant Lucas Asher was the sole signatory. Defendant Asher did not disclose this bank account to the Receiver when the Receiver asked Asher during his deposition to identify all bank accounts in which he is a signatory.

Upon discovering this new bank account controlled by Defendant Asher, the Receiver obtained from Bank of America the recent bank statements for the account which showed that on September 29, 2020, well after the *SRO* was issued and served upon Defendant Asher, Defendant Asher, in violation of the *SRO*, transferred $550,000 out of the USA Accounts, Inc. account at Bank of America[9].

---

[9] Bank of America had been served with the *SRO* prior to the transfer and should have frozen all accounts in which Defendant Asher was a signatory so that Defendant Asher's transfer of funds could not occur.  As a result, the Receiver intends to compel Bank of America to reimburse the receivership for the attorneys' fees and expenses incurred by the receivership in getting the monies turned over to the receivership.

**SECOND REPORT OF THE RECEIVER**                                                                                         12

The Receiver notified counsel for Defendant Asher of this discovery and on November 23, 2020 the Receiver filed an Emergency Motion to Hold Defendant Asher in Contempt. [Docket No. 195].  On December 4, 2020, the Court conducted a show cause hearing at which the Receiver and Defendant Asher testified.  The Court recessed the hearing and scheduled a resumption of the hearing on December 16, 2020.  Prior to the hearing, the monies transferred by Defendant Asher in violation of the Court's Order were turned over to the receivership and Defendant Asher agreed to an Order entered by the Court finding Defendant Asher in contempt of court and ordering that Defendant Asher appear for a deposition to be taken by the Receiver and the Plaintiffs to further explore Defendant Asher's assets.  Once the deposition is completed the Receiver will report to the Court as to whether Defendant Asher cooperated in his deposition so that the Court can decide how to proceed with the contempt motion.

The Receiver also gathered information indicating that Defendant Batashvili did not testify fully in response to the questions asked by the Receiver of Defendant Batashvili at his deposition, and the Receiver intends to follow up with Defendant Batashvili regarding such issues.

E.     TIMELINE FOR THE RECEIVERSHIP

The Receiver recommends continuation of the receivership to complete the discovery, seizure, and liquidation of additional assets; pursuit of claims against recipients of fraudulent transfers; completion of the claims process described above; and distribution of the assets recovered to the approved claimants. With the significant scope of the receivership, number of investor victims, and amount of loss, the Receiver estimates it will be necessary to continue the receivership in place through 2021 and into 2022.

Respectfully submitted, January 5, 2021.

                              **RECEIVER KELLY M. CRAWFORD**

                              */s/  Kelly M. Crawford*
                              Kelly M. Crawford, Receiver
                              State Bar No. 05030700
                              SCHEEF & STONE, L.L.P.
                              500 North Akard, Suite 2700
                              Dallas, Texas 75201
                              Tele:  214/706-4200
                              Fax:   214/706-4242

                              **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on January 5, 2021 I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

                              /s/  Kelly M. Crawford
                              KELLY M. CRAWFORD