IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| v. | § § | 3:20-CV-2910-L |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § | |

## RECEIVER'S UNOPPOSED SECOND FEE APPLICATION

Pursuant to the *Statutory Restraining Order* ("*SRO*") entered by the Court on September 22, 2020, the Receiver is required to submit periodic fee petitions for authorization to pay fees and expenses of the receivership. The Receiver provided the U.S. Commodity Futures Trading Commission (the "CFTC") and counsel for the Defendants Asher and Batashvili with a complete copy of the proposed Application, together with all exhibits and relevant billing information. The CFTC and Defendants are unopposed to the relief requested herein.

The Receiver's Second Fee Application covers the period from October 25, 2020 through December 21, 2020.

# I.
# FEES AND EXPENSES INCURRED

### A. Receiver Fees & Expenses

Fees.  By this Application, the Receiver requests authority to pay **$55,458** in Receiver fees, which is 80% of the total Receiver fees of $69,322.50 incurred from October 25, 2020 through December 21, 2020.  During this period, the Receiver provided 177.75 hours of service at his discounted hourly rate of $390.00[1].  In addition to reducing his standard hourly billing rate, the Receiver also discounted his total fees by 20%.  The valuable services provided by the Receiver during this time period are set forth in the invoices attached hereto as **Exhibit A**.  The services are also summarized in the Receiver's Second Report [Dkt. 217], filed on January 5, 2021.

Expenses.  In addition, to assist the Receivership Estate, the Receiver incurred expenses in the amount of **$1,123.44**.  See Ex. A at 8.  These are travel expenses for a trip from Dallas to Los Angeles for the additional seizure of assets and interview of witnesses on October 28-29, 2020 and consist of airfare, hotel, rental car, and per diem.[2]  The Receiver did not charge for his time travelling between Dallas and Los Angeles.

In sum, pursuant to the *SRO*, the Receiver seeks authority to pay a total of **$56,581.44** in Receiver fees and expenses incurred from October 25, 2020 through December 21, 2020.

### B. Receiver's Counsel Fees and Expenses.

Fees.  The law firm of Scheef & Stone, L.L.P. ("Scheef & Stone") serves as primary counsel for the Receiver.  Scheef & Stone submits monthly invoices to the Receiver for the services rendered.  By this Application, the Receiver requests authority to pay Scheef & Stone **$109,717.57** in fees, which is 85% of the total fees of $129,079.50 billed by Scheef & Stone for

---

[1] Mr. Crawford's regular billing rate for non-receivership matters is $450 per hour.
[2] The per diem of $66 is the federal per diem rate for Los Angeles.

**RECEIVER'S SECOND FEE APPLICATION**  **PAGE 2**

the work performed from October 25, 2020 through December 21, 2020. Attached hereto as **Exhibit B** are Scheef & Stone's invoices for the period from October 25, 2020 through December 21, 2020.

The attorneys and paralegals of Scheef & Stone who provided services to the Receiver during this period, their billable rates, and the hours billed are summarized as follows:

| Attorney/Paralegal | Hours Billed | Billable Rate | Total Billed |
|---|---|---|---|
| Peter Lewis (Partner) | 132.40 | $435 | $57,594 |
| James Stafford (Partner) | 45.00 | $300 | $13,500 |
| Mark Simon (Partner) | 4.55 | $435 | $1,979.25 |
| Leslie Sanderson (Associate) | 42.95 | $305 | $13,099.75 |
| Priya K. Jesani (Associate) | 32.90 | $270 | $8,883 |
| Walker S. Young (Associate) | 43.15 | $240 | $10,356 |
| Margaret Shea (Associate) | 52.00 | $200 | $10,400 |
| Jessica Rolls (Associate) | 23.25 | $200 | $4,650 |
| Katherine Whitlock (Law Clerk) | 3.40 | $200 | $680 |
| Deb Baxter (Paralegal) | 2.75 | $125 | $343.75 |
| Elizabeth Olivarez (Paralegal) | 60.75 | $125 | $7,593.75 |
| TOTALS: | 443.10 | $291.31 (blended rate) | $129,079.50 |
| After 15% Discount | 443.10 | $248 (discounted blended rate) | $109,717.57 |

Scheef & Stone provided valuable services to the Receiver during the period of October 25, 2020 through December 21, 2020. A description of these services is set forth in the invoices attached hereto as Exhibit B. The services are also summarized in the Receiver's Second Report [Dkt. 217], filed on January 5, 2021.

Expenses. In addition, to assist the receivership estate, Scheef & Stone incurred expenses in the amount of **$12,340.25** between October 25, 2020 and December 21, 2020. The expenses are set forth in detail in the invoices attached hereto as Exhibit B, but can be summarized as follows:

| | |
|---|---|
| Filing fees for 17 lis pendens on 17 Pennsylvania properties | $4,364.75 |
| Overnight mail sending Court orders to salesmen and others | $1,861.93 |
| Court reporter fees (depositions of individual defendants) | $1,903 |
| Appraisal of artwork for purposes of selling | $1,000 |
| Follow up fees for Section 754 filings with district courts | $772.92 |
| Travel expenses for Dallas to Los Angeles Oct. 28-29 (travel time of Peter Lewis was not charged) | $835.45 |

In sum, pursuant to the *SRO*, the Receiver seeks authority to pay Scheef & Stone a total of **$122,057.82** in fees and expenses incurred from October 25, 2020 through December 21, 2020.

Fees and Expenses to Ancillary Counsel. The Receiver retained Cort Thomas of the law firm of Brown Fox, PLLC to represent the Receiver in the Receiver's dispute with Bank of America because the Receiver's primary counsel had a conflict of interest in being adverse to Bank of America. Specifically, Mr. Thomas was retained to represent the Receiver with claims against Bank of America arising from the failure of Bank of America to comply with the *SRO*. By this Application, the Receiver requests authority to pay Brown Fox, PLLC **$3,888** in fees, which is based upon 9.60 hours of work performed from November 17, 2020 through December

31, 2020 at Mr. Thomas' rate of $405. Mr. Thomas provided valuable services to the Receiver from the period of November 17, 2020 through December 31, 2020, specifically by assisting the Receiver in recovering $550,000 Bank of America allowed to be transferred out of an account controlled by Defendant Lucas Asher that should have been frozen by Bank of America pursuant to the *SRO*. In addition, Mr. Thomas assisted the Receiver in obtaining bank records from Bank of America that Bank of America failed to produce as required by the *SRO*. A description of the services provided by Mr. Thomas of Brown Fox PLLC is set forth in the invoice attached hereto as **Exhibit C**. The Receiver also seeks authority to pay Brown Fox PLLC the mailing expenses incurred of $39.27.

In sum, pursuant to the *SRO*, the Receiver seeks authority to pay Brown Fox PLLC a total of **$3,927.27** in fees and expenses incurred from November 17, 2020 through December 21, 2020.

### C. Receiver's Accountant Fees and Expenses.

Fees.   The accounting firm of Brandlin and Associates in Los Angeles, California serves as the accountant for the Receiver. By this Application, the Receiver requests authority to pay Brandlin and Associates **$5,210.75** in fees for the work performed from October 25, 2020 through December 21, 2020, and reimbursement of expenses of **$8,034.47**. Brandlin and Associates discounted its fees substantially from their standard hourly rates. Attached hereto as **Exhibit D** is Brandlin and Associates invoice for the period from October 25, 2020 through December 21, 2020. The fees are broken down as follows:

| Accountant | Hours Billed | Billable Rate | Total Billed |
|---|---|---|---|
| Jeff Brandlin (accounting work) | 2.10 | $395 | $829.50 |
| Jeff Brandlin (logistical work) | 5.70 | $125 | $712.50 |

| | | | |
|---|---|---|---|
| John Samore (logistical support) | 5.50 | $125 | $687.50 |
| Gerardo Castellanos (logistical support) | 16.85 | $125 | $2,106.25 |
| Mike Harmon (accounting work) | 2.50 | $350 | $875.00 |
| TOTALS: | 32.65 | $160 (blended rate) | $5,210.75 |

The accounting firm of Brandlin & Associates provided valuable services to the Receiver, which services are described on the invoice attached hereto as **Exhibit C**. In particular, because Brandlin & Associates has its office in Los Angeles, it provided a lot of logistical support to the Receiver including making the Defendants' office space available for inspection by potential purchasers; assisting with moving the home furnishings of Defendant Simon Batashvili out of his home and into storage facilities; assisting with the showing of the vehicles to potential purchasers; and assisting with obtaining information regarding the computers in storage for sale by the Receiver. In addition, as the Receiver obtained bank records he provided such records to Brandlin & Associates to begin the forensic accounting of such records and spent time conferring with the Receiver regarding the scope of the forensic accounting.

The expenses incurred by Brandlin & Associates are detailed in Exhibit C and include reimbursement for third party labor in moving the home furnishings of Defendant Simon Batashvili out of his home and into storage; storage expenses for storing computers taken from the Defendants' office; storage expenses for storing the home furnishings of Defendants Lucas Asher and Simon Batashvili; towing the Shelby Cobra; and storage expenses for the two vehicles seized from the Defendants – a Shelby Cobra and a Mercedes.

In sum, pursuant to the *SRO*, the Receiver seeks authority to pay Brandlin & Associates a total of **$13,245.22** in fees and expenses incurred from October 25, 2020 through December 21, 2020.

***

Based on the foregoing, the Receiver believes the services rendered to the receivership by the Receiver, the Receiver's law firm Scheef & Stone, and the Receiver's accountants Brandlin & Associates. were valuable and that the rates charged to the receivership were fair and reasonable. Moreover, the expenses incurred for the receivership were reasonable and necessary. The attorneys for the CFTC previously reviewed the invoices of the Receiver, Scheef & Stone, Brown & Fox, PLLC, and Brandlin & Associates and are unopposed to the invoices being paid with the discounts being applied by the Receiver as set forth herein.

## II.
## LEGAL DISCUSSION OF GUIDELINES FOR PAYMENT OF RECEIVERSHIP FEES AND EXPENSES

In reviewing the total discounted fees of the Receiver, the Receiver's counsel, and the Receiver's accountants incurred, divided by the hours worked, the lodestar average rate per hour is $262. In accordance with the law governing calculation of the lodestar rate, the lodestar rate for which approval is sought in this case is reasonable and does not merit any adjustment.

The "lodestar" method of evaluating the reasonableness of fees, which has been expressly approved by the Supreme Court, requires the court to look into the prevailing market rates in the relevant community and compare the prevalent rates with the average rate charged in the matter in issue. *Perdue v. Kenny*, 130 S.Ct. 1662, 1673 (2010). The lodestar method also includes most of the relevant factors constituting a "reasonable" fee, but does not rely expressly require the "subjective" *Johnson* factor analysis.[3] *Id.*

---

[3] These *Johnson* factors are nevertheless addressed herein. *See infra.*

The Court calculates the lodestar by determining the number of hours reasonably expended by an appropriate hourly rate in the community.[4] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). In evaluating whether requested fees are reasonable, the court may use its own expertise and judgment to independently assess the value of an attorney's services. *Davis v. Bd. Of Sch. Comm'rs of Mobile County*, 526 F.2d 865, 868 (5th Cir. 1976). The Court also looks for evidence of "billing judgment," or the attorney or receiver's decision to discount or write off time that was unproductive or duplicative. *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799 (5th Cir. 2006). The amount of the award, and any reduction of the requested fee award, is within the trial court's discretion. *See, e.g., United States Football league v. National Football League*, 887 F.2d 408, 415 (2d Cir. 1989).

Additional considerations are also relevant in the context of an equity receivership. First, the agreement or opposition of the CFTC to the fee application is entitled to great weight. *See, e.g., SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F.Supp. 1220, 1222 (S.D.N.Y. 1973). Further, given the public service nature of equity receiverships, courts also consider the amounts recovered or other results obtained by the receiver in determining what constitutes a "reasonable fee." *SEC v. Goren*, 272 F.Supp.2d 202, 207 (E.D.N.Y. 003). Additionally, examination of reasonableness and necessity should take into account all circumstances surrounding the receivership. *See, SEC v. W.L. Moody & Co., Bankers (Unincorporated)*, 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd, SEC v. W.L. Moody & Co., 519* F.2d 1087 (5th Cir. 1975). The complexity and difficulty associated with the receivership are highly relevant factors in determining the reasonableness of professional fees. *See, SEC v. Fifth Ave. Coach Lines, Inc.*, 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) (awarding interim fees and expenses to law firm for role in receivership and noting that it involved wide variety of complex legal matters requiring

---

[4] The movant bears the burden of proving that the compensation requested is reasonable, and satisfaction of this burden requires that the movant present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required. *Louisiana Power*, 50 F.3d at 324.

**RECEIVER'S SECOND FEE APPLICATION**     **PAGE 8**

the time, competence, and diverse resources of a law firm of high caliber). Further, Courts examine the credentials, experience, reputation, and other professional qualities required to carry out a court's orders when assessing the reasonableness of the rates charged for services to a receivership. *See, W.L. Moody & Co.,* 374 F. Supp. at 481 (holding that a court should give "considerable weight" to "a receiver's abilities, as required by the tasks of the receivership"); *see also, Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. at 1222 (fees awarded in full because they were based on law firm's usual hourly rate and supported by meticulous records).

The Receiver submitted detailed descriptions of the matters on which services were expended, the number of hours billed by each professional, the rates charged by each, and the lodestar calculation for the fees submitted in this petition. Further, the Receiver's invoices and this petition demonstrate that billing judgment was exercised in the reduction of the standard rates charged by the Receiver and his firm[5], and in discounting the total invoices of not only the Receiver, but also the invoices of the Receiver's law firm and the Receiver's accountants. Finally, the Receiver requests that the Court judicially notice the much higher hourly rates approved in other receiverships in Texas.[6]

The request for approval of the disbursements is also consistent with the *"Johnson factors"* set forth by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). Based on the lodestar calculation and the Johnson factors

---

[5] The Receiver's standard hourly rate is $450, but it is discounted for receivership work to $390.

[6] *See, for example, Securities and Exchange Commission v. Correll;* Case No. 4:05-CV-472, in the United States District Court for the Eastern District of Texas, Sherman Division (approving Receiver fees of $400 per hour and lead counsel fees of $585 per hour); *SEC v. Amerifirst Funding, Inc., et al.,* Cause No. 3:07-CV-01188, Docket No. 117, in the United States District Court for the Northern District of Texas; Receiver's counsel's rates, discounted by 10–20% is $420 per hour; *SEC v. W Financial Group, LLC, et al.,* Cause No. 3:08-CV-0499-N, Docket No. 65, in the United States District Court for the Northern District of Texas; Receiver's counsel's rate is $510 per hour, and $165 per hour for a law clerk; *CFTC v. Pousa;* Case No. 1:12-cv-00862 in the United States District Court for the Western District of Texas, Austin Division (approving Receiver fees in excess of $600 per hour); and *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.;* Case No. 3:09-CV-0298-N, in the United States District Court for the Northern District of Texas, Dallas Division (approving Receiver fees of $440 per hour and lead counsel fees of $420 to $500 per hour).

---

discussed above, the Receiver believes that the fees submitted are appropriate, just, and reasonable.

    A.    **The Time and Labor Required.** The Receiver respectfully directs the Court's attention to the foregoing summary schedule of unpaid fees and expenses, which identifies the total number of hours billed by the Receiver, the Receiver's attorneys and accountants (663.10 hours) from October 25, 2020 through December 21, 2020.

    B.    **The Novelty and Difficulty of the Questions.** Federal equity receiverships require extensive experience in order to act swiftly and efficiently in securing assets, obtaining documents and data to find additional assets, and to communicate with investors and law enforcement agencies. As set forth in Receiver's Second Report filed with the Court and the detailed invoices attached hereto the Receiver and his personnel, devoted a great deal of time responding to worried calls from investors, building the database of investors to use for the claims process, communicating with various State regulatory bodies regarding consent orders or pending regulatory actions, deposing each of the individual Defendants, investigating other entities owned or controlled by the Defendants, seeking to recover $550,000 transferred by Lucas Asher out of an account that should have been frozen by Bank of America, seeking to gain access to the digital platforms used by the Defendants, including google, making demand upon salespersons for the Defendants to turn over records regarding the commissions they received, investigating the real properties owned in Philadelphia; and communicating with third parties to identify interests subject to the receivership and liquidation of such interests.

    C.    **The Skill Requisite to Perform the Service.** The Receiver believes the services performed in this case to date required individuals possessing considerable experience in the administration of receiverships, claims processes, distribution plans, asset seizure, collection and

litigation. The Receiver, Scheef & Stone, L.L.P., and Brandlin & Associates, for which disbursement approval is sought, have considerable experience in such areas.

D.  **The Preclusion of Other Employment Due to Acceptance of the Case.** Neither the Receiver, Scheef & Stone, LLP, nor Brandlin & Associates declined any representation solely because of their services in this case, although the scope of the receivership is so broad that it requires substantially most of the Receiver's time.

E.  **The Customary Fee.** The hourly rates sought herein for the Receiver and the Receiver's attorneys and accountants are *substantially* lower than the rates charged by other practitioners of similar experience levels in Texas. Indeed the per hour rates charged by the Receiver's counsel whose fees are included herein (ranging between $200 – $435 charged for attorneys) are $100 to $200 per hour lower than the rates charged on other receiverships pending in Texas.[7] The lodestar rate of $262 per hour also demonstrates that when appropriate the Receiver is having work performed by less expensive attorneys or legal assistants.

F.  **Whether the Fee is Fixed or Contingent.** The Receiver's fees and his counsel's fees are fixed insofar as monies exist by way of Receivership Assets from which to pay such fees, but payment of the fees and expenses is subject to approval by the Court.

G.  **Time Limitations Imposed by the Client or Other Circumstances.** There were no time limitations imposed for this period other than the Receiver continuing to move promptly to identify and seize assets and expedite building the investor database so that a claims process can be conducted and funds recovered by the Receiver can be distributed to the investor victims.

H.  **The Amount Involved and the Results Obtained.** The fees for which payment is sought were for work summarized previously. The Receiver's attorneys and accountants contributed significantly to the Receiver's recovery of monies. The receivership account

---

[7] *See footnote 6, supra.*

**RECEIVER'S SECOND FEE APPLICATION**                                            PAGE 11

currently has a balance in excess of $8 million – an increase of more than $2 million since the Receiver's First Fee Application. The Receiver has also seized numerous assets consisting of real and personal property that remain to be liquidated.

I. **The Experience, Reputation and Ability of the Attorneys.** Scheef & Stone, the Receiver's primary counsel, include numerous attorneys who have experience in representing equity receivers in federal securities or commodities enforcement cases, and have done so for numerous years. The reputation of Scheef & Stone is recognized and respected in these fields. Mr. Crawford has served as a receiver in more than 12 federal court cases brought by either the CFTC or the Securities and Exchange Commission, with Scheef & Stone as Mr. Crawford's counsel.

J. **The Undesirability of the Case.** The representation of the Receiver incident to this case has not been undesirable.

K. **The Nature and Length of the Professional Relationship with the Client.** Scheef & Stone has represented the Receiver in numerous prior receiverships, including a receivership before this Court.[8]

L. **Awards in Similar Cases.** The Receiver believes the fees requested in this case for his counsel are less than or equal to those which have been awarded in similar cases in federal courts in Texas.

### III.
### CONCLUSION

In conclusion, in accordance with the *SRO*, the Receiver represents that the fees and expenses included in this Application were incurred in the best interests of the Receivership Estate, and the Receiver requests authority for payment of such fees and expense.

---

[8] *See Securities and Exchange Commission v. Alan Todd May and Prosper Oil & Gas, Inc,* Case No. 3:10-CV-0425-L in the United States District Court for the Northern District of Texas, Dallas Division.

Respectfully submitted February 3, 2021.

**RECEIVER KELLY M. CRAWFORD**

*/s/ Kelly M. Crawford*
Kelly M. Crawford, Receiver
State Bar No. 05030700

Scheef & Stone, LLP
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: 214.706.4200
Telecopier: 214.706.4242

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that this Motion and true and correct copies of the invoices that are exhibits to this Motion were provided to Richard Foelber and JohnMarc Buffa of the Plaintiff U.S. Commodity Futures Trading Commission, as representatives of the Plaintiffs, for review on January 20, 2021. In addition, on February 1, 2021 this Motion and true and correct copies of the redacted invoices that are exhibits to this Motion were provided to Arnold Spencer, Esq., counsel for Defendants Lucas Asher and Simon Batashvili. Mr. Buffa indicated the U.S. Commodity Futures Trading Commission is unopposed to the relief sought. Mr. Spencer indicated Defendants Asher and Batashvili are unopposed to the relief sought.

*/s/ Kelly M. Crawford*
KELLY M. CRAWFORD

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on February 3, 2021 I electronically filed the foregoing document with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

*/s/ Kelly M. Crawford*
KELLY M. CRAWFORD