## Index to Appendix

| **Document** | **Page** |
|---|---|

Index to Appendix................................................................................................................1

Exhibit 1 ..............................................................................................................................2

Exhibit 2 ..............................................................................................................................7

Exhibit 3 ............................................................................................................................22

Exhibit 4 ............................................................................................................................26

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF TEXAS

 3

 4                                    )
     COMMODITY FUTURES TRADING        )
 5   COMMISSION et al.,               )
                                      )
 6          Plaintiff,                ) Case No.:
                                      ) 3:20-CV-2910-L
 7       vs.                          )
                                      )
 8   TMTE, INC. A/k/a METALS.COM,     )
     CHASE METALS, INC., CHASE        )
 9   METALS, LLC, BARRICK             )
     CAPITAL, INC., LUCAS THOMAS      )
10   ERB a/k/a LUCAS ASHER a/k/a      )
     LUKE ASHER, and SIMON            )
11   BATASHVILI                       )
                                      )
12          Defendants.               )
                                      )
13       and                          )
                                      )
14   Tower Equity, LLC,               )
                                      )
15   Relief Defendant                 )
                                      )
16

17

18    REMOTE VIDEO-RECORDED DEPOSITION OF SIMON BATASHVILI

19               Wednesday, November 4, 2020

20                        VOLUME I

21

22   Stenographically Reported by:
     Mechelle S. Gonzalez
23   CSR No. 13250
     Job No. 96641
24

25   PAGES 1 - 201
```

Simon Batashvili                                            11/4/2020
                                                            Page 36

```
 1          Q.   Where are you currently sitting?

 2          A.   I am in a house that my wife is staying in.

 3          Q.   Pardon?

 4          A.   I am in a house where my wife is staying.

 5          Q.   Where is that located?

 6          A.   It is in Mandeville Canyon, Los Angeles.

 7          Q.   Is that where you're living?

 8          A.   That's not where I'm living at the moment.

 9     Right now I'm -- no.

10          Q.   Where are you living, then, currently?

11          A.   I am -- I'm staying at friends and family.

12          Q.   What are the name of friends that you're

13     staying with?

14          A.   I've been hopping around, Andrew being one

15     of them, one of my friends.

16          Q.   Andrew who?  What's his last name?

17          A.   Saul.

18          Q.   How do you spell that?

19          A.   S-a-u-l.

20          Q.   And what family members have you been

21     staying with?

22          A.   Mainly friends right now.  So it's

23     Andrew's.  Where else did I stay?  I've stayed at my

24     friend Arnold's house.

25          Q.   What's his last name?
```

Simon Batashvili                                                11/4/2020
                                                                Page 59

```
 1    remember right now.

 2          Q.  The only e-mail that you can recall as you

 3    sit here today is simon@towerequity.com; is that

 4    correct?

 5          A.  If more comes to me, I'll let you know.

 6          Q.  Have you -- have you used any e-mail or had

 7    any e-mail communications since September 24th of

 8    2020?

 9          A.  Can you repeat that question?  You cut out

10    at the last minute, Mr. Crawford.

11          Q.  Have you had any e-mail communications

12    since September 24th of 2020?

13          A.  Yes.

14          Q.  And what e-mail address have you used for

15    those communications?

16          A.  I -- I set up an e-mail address to

17    communicate with attorney Mr. Arnold Spencer.

18          Q.  And what's that e-mail address?

19          MR. SPENCER:  Kelly, I'm going to object to

20    the question.  I think that goes to attorney-client

21    privilege, and I think it's outside the scope of the

22    asset identification.

23          MR. CRAWFORD:  It goes directly to the

24    scope of his obligation to turn over passwords to

25    me, and e-mail obligations.
```

Simon Batashvili                                                    11/4/2020
                                                                   Page 60

```
 1              MR. SPENCER:  Well, an e-mail obligation --

 2       an e-mail with his attorney, I don't think was

 3       considered by the court, so ...

 4              MR. CRAWFORD:  I didn't ask for the

 5       content, Arnold.  I'm not asking about the content.

 6       I'm simply asking for an e-mail address that he's

 7       used since this was entered.

 8              MR. SPENCER:  I will object to that as

 9       getting into attorney-client communications.

10              BY MR. CRAWFORD:

11          Q.  Simon, are you refusing to answer my

12       question?

13              MR. SPENCER:  I'm going to instruct this

14       witness to not answer the question at this time

15       based on the attorney-client privilege and based on

16       the fact that this is outside of the asset

17       identification process envisioned by the court's

18       orders.

19              BY MR. CRAWFORD:

20          Q.  Are you accepting the advice of your

21       attorney, Simon?

22          A.  Yes.

23          Q.  What records do you have in your possession

24       or control, Simon, that you have not yet turned over

25       to me yet?
```

Simon Batashvili                                          11/4/2020
                                                          Page 200

1

2

3

4              I, the undersigned, a Certified Shorthand

5       Reporter of the State of California, do hereby certify:

6              That the foregoing proceedings were taken

7       before me at the time and place therein set forth; that

8       any witnesses in the foregoing proceedings, prior to

9       testifying, were placed under oath; that a verbatim

10      record of the proceedings was made by me using machine

11      shorthand which was thereafter transcribed under my

12      direction; further, that the foregoing is an accurate

13      transcription thereof.

14             I further certify that I am neither financially

15      interested in the action nor a relative or employee of

16      any attorney of any of the parties.

17             IN WITNESS WHEREOF, I have this date subscribed

18      my name.

19

20      Dated:   November 4, 2020

21

22                    *Mechelle S. Gonzalez*

23                    _____

24                    Mechelle S. Gonzalez
                      CSR No. 13250
25

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF TEXAS

 3

 4                                     )
        COMMODITY FUTURES TRADING      )
 5      COMMISSION et al,              )
                                       )
 6            Plaintiffs,              ) Case No.:
                                       ) 3:20-CV-2910-L
 7         vs.                         )
                                       )
 8      TMTE, INC. A/k/a METALS.COM,   )
        CHASE METALS, INC., CHASE      )
 9      METALS, LLC, BARRICK           )
        CAPITAL, INC., LUCAS THOMAS    )
10      ERB a/k/a LUCAS ASHER a/k/a    )
        LUKE ASHER, and SIMON          )
11      BATASHVILI                     )
                                       )
12            Defendants.              )
                                       )
13         and                         )
                                       )
14      TOWER EQUITY, LLC,             )
                                       )
15      Relief Defendant               )
                                       )
16

17       REMOTE VIDEO-RECORDED DEPOSITION OF LUCAS ASHER

18                 Thursday, November 5, 2020

19                         VOLUME I

20

21      Stenographically Reported by:
        Mechelle S. Gonzalez
22      CSR No. 13250
        Job No. 96642
23

24

25      PAGES 1 - 291
```

```
 1              BY MR. CRAWFORD:

 2        Q.  Are you taking any medications, Mr. Asher,

 3   that would impede or impair your ability to testify

 4   truthfully here today?

 5        A.  I'm not.

 6        Q.  Do you have a United States passport?

 7        A.  I have an American passport.

 8        Q.  And -- and where is that passport?

 9        A.  It's in my backpack.

10        Q.  Where is your backpack?

11        A.  At a place I'm staying at.

12        Q.  Where are you staying?

13        A.  On a couch.

14        Q.  Whose couch?

15        A.  John's.

16        Q.  John who?

17        A.  Wilson.

18        Q.  Where does John Wilson live?

19        A.  In West Hollywood.

20        Q.  How do you know John Wilson?

21        A.  Through my religious community.

22        Q.  What's the name of your religion community?

23        A.  I'm Jewish.

24        Q.  When was the last time you used your

25   American passport?
```

8

```
1          Q.  Is it your testimony under oath that during

2     that conversation with Simon you never discussed

3     your deposition?

4          A.  Could you please repeat the question, sir?

5          Q.  Is it your testimony here today under oath

6     that during that discussion with Simon yesterday you

7     never discussed with him your deposition that you

8     are giving here today?

9          A.  I did not discuss it with anybody but my

10    counsel.

11         Q.  Where are you sitting for this deposition?

12    Whose -- whose house?

13         A.  I'm not at a house.

14         Q.  Okay.  Where are you?

15         A.  It's a side garage from an individual named

16    Kristen.

17         Q.  What is Kristen's last name?

18         A.  I don't know.  She's a friend of my friend

19    Maudie (Phonetic).

20         Q.  And what's Maudie's last name?

21         A.  Perry (Phonetic).

22         Q.  Perry?

23         A.  Yes.

24         Q.  How do you know Maudie Perry?

25         A.  Through other friends.  It was referred to
```

```
 1          A.   To the best of my recollection, I did not

 2     enter a password or login to access records.

 3     Notwithstanding, I did use the e-mail to reach out

 4     to various attorneys, and I did log in to my e-mail,

 5     asher@towerequity.com.

 6          Q.   What was the password used?

 7          A.   I don't recall.

 8          Q.   How were you able to access and log in to

 9     those records since, based on your prior testimony,

10     you said that your password is on sticky notes at

11     the office and you lost that information?

12          A.   When I gave you that testimony, I was

13     referring to metals.com, and I was referring to

14     Barrick.  And my current testimony, too, has been

15     with reference -- I gave you context to Tower

16     Equity, and I just told you that I did access Tower

17     Equity.  However, we're commingling a lot of

18     different domain names in this conversation.  So I

19     did not access Metals or Barrick.  I did access

20     Tower Equity.

21          Q.   So where can I find the login and password

22     for Tower Equity?

23          A.   I can give it to you.

24          Q.   What e-mail addresses do you still use?

25          A.   I use -- to coordinate on attorney-client
```

```
 1     privilege dialog, I use my e-mail at Gmail, and I --

 2          Q.   What is that e-mail address?

 3          A.   Sorry?

 4          Q.   What is that e-mail address?

 5          A.   It's --

 6               MR. SPENCER:  Hold up.  Asher, hold on.

 7               Is -- is this an account that you use

 8     exclusively to communicate with your attorneys,

 9     privileged communications?

10               THE WITNESS:  All communication is

11     privileged, all of it entirely.

12               MR. SPENCER:  Okay.  So I'm going to

13     instruct you not to answer a question with regard to

14     your e-mail that you use exclusively for

15     attorney-client communications.

16               MR. CRAWFORD:  And I'm not asking for

17     anything having to do with the content of

18     communication.  I'm simply asking for the e-mail

19     address.

20               BY MR. CRAWFORD:

21          Q.   So what is your e-mail address?

22               MR. SPENCER:  And I'm going to instruct him

23     not to answer, respectfully.  I don't think it goes

24     to the asset issues, and I think it does get into

25     attorney-client issues.
```

Lucas Asher Vol. I                                    11/5/2020
                                                       Page 74

```
 1              So at this time I'm going to instruct him
 2      not to answer.
 3              BY MR. CRAWFORD:
 4         Q.  Are you going to follow your attorney's
 5      instruction not to answer my question?
 6         A.  I'm going to refer to counsel on answering
 7      your question.
 8              MR. CRAWFORD:  Okay.  We'll certify that
 9      question.
10              BY MR. CRAWFORD:
11         Q.  Do you have any type of storage shed that
12      you maintain any property or records whatsoever?
13         A.  I do not.
14         Q.  Have you ever had a storage shed?
15         A.  It's possible.
16         Q.  Or storage facility --
17         A.  Yeah, it's possible.
18         Q.  In the last three years, have you ever had
19      a storage facility or storage shed?
20         A.  I believe so.
21         Q.  Okay.  And where was that located?
22         A.  I don't remember the specific address.  It
23      was in Santa Monica at an apartment I was renting,
24      and in the garage of the apartment, they had a
25      storage -- a storage facility at the apartment unit.
```

Lucas Asher Vol. I                                          11/5/2020
                                                            Page 141

```
1          Q.  What is your date of birth?

2          A.  06/06/85.

3          Q.  What is the last name of the person that

4     you're staying with currently?  I believe you said

5     her first name is Kristen.  What's her last name?

6          A.  I don't know.  I'm changing my homes

7     frequently almost by the day.

8          Q.  And what is the address where you are

9     staying today?

10         A.  I don't know.

11         Q.  Where you are presently?

12         A.  I don't know the address.

13         Q.  Okay.  What part of United States are you

14    in?

15         A.  I'm in Los Angeles.

16         Q.  What part of Los Angeles are you in?

17         A.  I believe it's in the northern Hollywood

18    area.

19         Q.  What's the nearest major crossroads to

20    where you live, the house?

21         A.  Today it would be around Sunset.

22         Q.  Sunset and what?

23         A.  I don't know.

24         Q.  You have no idea?

25         A.  No.
```

```
 1

 2

 3

 4            I, the undersigned, a Certified Shorthand

 5   Reporter of the State of California, do hereby certify:

 6            That the foregoing proceedings were taken

 7   before me at the time and place therein set forth; that

 8   any witnesses in the foregoing proceedings, prior to

 9   testifying, were placed under oath; that a verbatim

10   record of the proceedings was made by me using machine

11   shorthand which was thereafter transcribed under my

12   direction; further, that the foregoing is an accurate

13   transcription thereof.

14            I further certify that I am neither financially

15   interested in the action nor a relative or employee of

16   any attorney of any of the parties.

17            IN WITNESS WHEREOF, I have this date subscribed

18   my name.

19

20   Dated:  November 5, 2020

21

22            Mechelle S. Gonzalez

23            _____

24            Mechelle S. Gonzalez
              CSR No. 13250
25
```

Lucas Erb                                January 29, 2021

Page 293

1               IN THE UNITED STATES DISTRICT COURT

2                  NORTHERN DISTRICT OF TEXAS

3                       DALLAS DIVISION

4       COMMODITY FUTURES TRADING          )

5       COMMISSION, et al.,                 ) Case No.

6            Plaintiffs,                    ) 3-20CV2910-L

7                    vs.                    )

8       TMTE, INC., et al,                  )

9            Defendants.                    )

10      TOWER EQUITY, LLC,                  )

11           Relief Defendant.             )

12      _____ )

13

14

15      CONTINUED VIDEO DEPOSITION OF LUCAS THOMAS ERB a/k/a

16            LUCAS ASHER, a/k/a LUKE ASHER

17                  January 29, 2021

18              VOLUME II, (Pages 293-473)

19

20

21      REPORTED REMOTELY BY:

22

23      COLLEEN P. DOHERTY, CSR 345

24

25      Notary Public

Page 338

1    have been paid for through the generosity of friends,

2    and through my Jewish religious community.

3         Q.  And it's your testimony that there is no other

4    source of payment of your reasonable and necessary

5    living expenses since entry of this consent order?

6         A.  There is no other source that I'm aware of.

7         Q.  And when you say, "the generosity of your

8    friends."  Who are the friends who have been paying your

9    reasonable and necessary living expenses?

10        A.  It depends on which day you ask.  Today, I'm

11   in the room of one of my friends, Blake Corbin, and I

12   need a room for this deposition, and he'll be feeding

13   me.

14        Q.  Any other friends, besides Blake Corbin?

15        A.  Yes, I disclosed last time I stayed in Kristin

16   Zygrag (Phonetic) for my first deposition.  I've

17   received quite a few meals from Chaim.

18        Q.  From who?

19        A.  Chaim.

20        Q.  What's Chaim's last name?

21        A.  Shanowitz.

22        Q.  Okay.  Any others, any other friends?

23        A.  Yeah.  John Wilson, a lot of Simon's friends

24   have helped us out.

25        Q.  Any others?

Lucas Erb                                    January 29, 2021

Page 339

1          A.   Like Sidney, Andrew.  Yeah, like Sidney,

2     Andrew.

3          Q.   Any others?

4          A.   Yeah, Monte.

5          Q.   What's Monte's last name?

6          A.   Shenowa (Phonetic).

7          Q.   Any others?

8          A.   Lexi.

9          Q.   What's Lexi's last name?

10         A.   Stevenson.

11         Q.   Any others?

12         A.   There is -- I got a meal from Darin.

13         Q.   What's Darin's last name?

14         A.   Actually, Daryl Seville.

15         Q.   Okay.

16         MR. DAVIS:  I'm going to object if we're going

17    to go further on this line of question.  I presume the

18    receiver is not going to try to recoup real meal money.

19    Paragraph 37 relates to income and other such things

20    from employment or activity not to charity.  I just

21    don't see how this is relevant.  I want to let you do

22    adequate discovery, but I don't see how this is

23    relevant.

24         MR. CRAWFORD:  Well, if I find that these

25    people have received money or worked for Mr. Asher in

Lucas Erb                              January 29, 2021

Page 340

```
 1    the past, then I don't consider it a gift or charity if

 2    they are simply giving him money that he's gotten from

 3    them.

 4          Q.  (BY MR. CRAWFORD)  Any others?

 5          A.  Yeah, Demetri.

 6          Q.  What's Demetri's last name?

 7          A.  Farougias.

 8          Q.  Any others?

 9          A.  It's possible that -- I don't recall all the

10    names of the people who fed me.  I mean, people have

11    been feeding me every day, so...

12          Q.  Daryl Seville was the person who you leased

13    your house from; is that correct?

14          A.  Yes, I did.  Well, it was with roommates, but,

15    yeah.

16          Q.  Have any of the people who have provided you

17    with your reasonable and necessary living expenses, have

18    any of those persons worked for any of the defendants

19    named in this lawsuit at any time?

20          A.  So at any time?  What do you mean by "any

21    time"; past, present, and future?

22          Q.  Any time that the --

23          A.  Or af- --

24          Q.  Any time that the defendant entities existed,

25    did they work for any of those entities at any time?
```

Lucas Erb                          January 29, 2021

                                              Page 449

1            So, Chrissi, I'll turn it over to you.

2      Chrissi, can you hear us okay?

3            MR. DAVIS:  It looks like she's not on camera

4      or video.  Would it make sense to make a --

5            MR. BUFFA:  Oh, so, court reporter, can you

6      unmute Ms. Cella's.  She can hear us, but she can't

7      speak.  Her mute is locked.  Could you unmute her,

8      please?

9            MS. CELLA:  Thank you.  I think it's working

10     now.  Can you guys all hear me?

11           MR. DAVIS:  I can hear you, but I can't see

12     you.

13           MS. CELLA:  Yeah, I'm going to make my camera

14     off -- or on I should say.  I had to leave it off,

15     because my bandwidth is not great.

16                         EXAMINATION

17     QUESTIONS BY MS. CELLA:

18        Q.  But can you hear me okay, Mr. Asher?

19        A.  Yes, Ms. Cella.  Thank you.

20        Q.  Great.  Thank you.  And as you may recall, my

21     name is Christina Cella, from the Texas Attorney

22     General's Office.  And I just have a couple questions

23     for you.  It shouldn't take all that long.

24           I want to start with, I know you said that you

25     are living with Mr. Corbin.  Is that your current

Lucas Erb                              January 29, 2021

Page 450

1    address where you receive mail right now?

2         A.  No, I don't receive mail.  No one's mailed me

3    anything.  And I might not be staying here for much

4    longer.  I asked some friends for a place next week.  So

5    I just move around.

6         Q.  And you indicated that you don't have the

7    exact address of Mr. Corbin's location.  Will you be

8    able to get that for us, and provide that to the

9    receiver?

10        A.  Yes, I'm happy to provide whatever is needed.

11        Q.  Thank you.  And do you know where you will be

12   moving next week?

13        A.  Some kind of nomad right now.  So I was going

14   to ask some friends if I can stay at their spare

15   bedrooms.  And I'll be sharing a report on my locations

16   in the future once I know.

17        Q.  Earlier you testified about having a new

18   skateboard.  I think you were showing it to a friend.

19   How did you get that skateboard?

20        A.  My friend gave it to me.

21        Q.  So you didn't pay any money for it?  It was a

22   gift?

23        A.  Correct.

24        Q.  And who's paying for your cell phone service?

25        A.  So my Apple Card was attached to my T-Mobile,

```
 1                    REPORTER'S CERTIFICATE
 2          I, COLLEEN P. DOHERTY, CSR No. 345, Certified
 3     Shorthand Reporter, certify:
 4          That the foregoing proceedings were taken
 5     before me at the time and place therein set forth, at
 6     which time the witness was put under oath by me;
 7          That the testimony and all objections made were
 8     recorded stenographically by me and transcribed by me or
 9     under my direction;
10          That the foregoing is a true and correct record
11     of all testimony given, to the best of my ability;
12          I further certify that I am not a relative or
13     employee of any attorney or party, nor am I financially
14     interested in the action.
15          IN WITNESS WHEREOF, I set my hand and seal this
16     _____ day of _____, _____.
17
18
19
20     _____
21          COLLEEN P. DOHERTY, CSR 345
22          Notary Public
23          P.O. Box 2636
24          Boise, Idaho  83701-2636
25     My commission expires September 7, 2023.
```

| | |
|---|---|
| **From:** | Arnold Spencer |
| **To:** | Buffa, JonMarc |
| **Cc:** | Foelber, Richard P.; Kelly Crawford; Lucas Asher |
| **Subject:** | [EXTERNAL] Re: Metals.com: Asher deposition |
| **Date:** | Thursday, January 28, 2021 11:23:06 AM |

Gentlemen-

I have accepted an in-house position at a start up company and am winding down my firm. Accordingly, I am withdrawing from this matter and will not be attending tomorrow's deposition. Mr. Asher and Mr. Batashvili have been informed of my new position and are seeking to retain counsel to represent them going forward.

I realize this is short notice and I realize the Court Order set a deadline. If Mr Asher is unable to retain counsel by tomorrow morning, would you agree to briefly open the deposition tomorrow as scheduled and then resume the bulk of the deposition early next week? We could commit to this schedule.

Mr. Asher is copied directly on this email. Please reply to all, as I will be unavailable at times throughout the day. Please use Mr. Asher's email for the court reporter.

Thank you all for your professionalism.

Arnold A. Spencer
Spencer & Associates


> On Jan 27, 2021, at 11:20 AM, Buffa, JonMarc <JBuffa@cftc.gov> wrote:
>
> Following up again. Please let us know what email addresses we should give the court reporter for you and Mr. Asher.

---

**From:** Buffa, JonMarc
**Sent:** Monday, January 25, 2021 9:14 AM
**To:** Arnold Spencer <arnoldspencer75225@gmail.com> (arnoldspencer75225@gmail.com) <arnoldspencer75225@gmail.com>
**Cc:** Foelber, Richard P. <rfoelber@CFTC.gov>; 'Kelly Crawford' <kelly.crawford@solidcounsel.com>
**Subject:** RE: [EXTERNAL] RE: Metals.com: Asher deposition

Arnold

We wanted to follow-up. Please let us know what email addresses we should give the court reporter.

Thanks,

JonMarc

---

**From:** Kelly Crawford <kelly.crawford@solidcounsel.com>
**Sent:** Friday, January 15, 2021 2:40 PM
**To:** Buffa, JonMarc <JBuffa@CFTC.gov>; Arnold Spencer <arnoldspencer75225@gmail.com> (arnoldspencer75225@gmail.com) <arnoldspencer75225@gmail.com>
**Cc:** Foelber, Richard P. <rfoelber@CFTC.gov>
**Subject:** [EXTERNAL] RE: Metals.com: Asher deposition

JonMarc,
        My email address that should be used is my regular office email:
kelly.crawford@solidcounsel.com  Thank you.

## Kelly Crawford PARTNER

### Scheef & Stone, LLP
www.solidcounsel.com  |  **214.706.4213**
Office: 214.706.4200  |  Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, TX 75201

<!--[if !vml]-->
<image003.png>
<!--[endif]-->

**Important:**  This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law.  If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:**  Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys.  If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

---

**From:** Buffa, JonMarc <JBuffa@CFTC.gov>

**Sent:** Friday, January 15, 2021 12:20 PM
**To:** Arnold Spencer <arnoldspencer75225@gmail.com>
(arnoldspencer75225@gmail.com) <arnoldspencer75225@gmail.com>; Kelly Crawford
<kelly.crawford@solidcounsel.com>
**Cc:** Foelber, Richard P. <rfoelber@CFTC.gov>
**Subject:** Metals.com: Asher deposition

Arnold and Kelly,

For Mr. Asher's second asset deposition, we will be using a new vendor called
Veritext. They provide enhanced virtual deposition technology and easy to use
exhibit sharing. We hope this will facilitate the deposition.

Below is an email from Veritext. We are also attaching two direction sheets.

Please send us your preferred email address for accessing the Veritext platform by
**3 pm ET on Friday, 1/22/2021**. Veritext will then send you access information.
We also need the preferred email address of Mr. Asher so they can send him
access information.

Thanks,

JonMarc

---

**From:** Drew Pagano <dpagano@veritext.com>
**Sent:** Friday, January 15, 2021 12:18 PM
**To:** Buffa, JonMarc <JBuffa@CFTC.gov>
**Cc:** Van Tassel, Hillary <HVanTassel@CFTC.gov>
**Subject:** [EXTERNAL] Exhibit Share - CFTC v. TMTE Inc. et al. Deposition of Lucas Asher
(Assignment #4419080)

Hi JonMarc,

Thanks for your time this morning. In follow-up, I wanted to request a list of all
participants from Plaintiffs and Defendants who will join the January 29th
deposition of Lucas Asher  (Assignment #4419080) *and* need access to view
exhibits.

To securely facilitate the electronic marking and distribution of exhibits during the
deposition we will use our Exhibit Share platform.

Below and attached please find helpful videos tutorials and Getting Started
Guides:

Exhibit Share Tutorial – Attorney Participant View
Exhibit Share Tutorial – Witness View

Participants will just need to look out for an Exhibit Share invitation email from notify@egnyte.com in order to set a password (by accepting the invitation). On the day of the deposition they can log into this website (preferably using a Google Chrome browser) for easy access: https://vxt.egnyte.com/#login

Please don't hesitate to let me know if you or the parties have any questions. Thank you!

Best,

Drew

**Drew Pagano**
Government Services Manager
-------------------------------------------------
**CAPITAL REPORTING COMPANY**
**A Division of Veritext**
1250 Eye Street, NW | Suite 350 | Washington, DC  20005
**O** 202-857-3376 | **D** 202-803-8852
apagano@capitalreportingcompany.com
www.capitalreportingcompany.com

# Kelly Crawford
## Receiver
500 N. Akard, Suite 2700
Dallas, Texas 75201
(214) 706-42123
kelly.crawford@solidcounsel.com

February 16, 2021

**_Via Electronic Mail to cdavis@grayreed.com_**

Chris Davis
Gray Reed
1601 Elm Street, Suite 4600
Dallas, Texas 75201

> RE:   *Commodity Futures Trading Commission, et al v. TMTE, Inc. a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher, Simon Batashvili, Defendants and Tower Equity, LLC, Relief Defendant.;* Cause No. 3:20-CV-2910-L; pending in the United States District Court for the Northern District of Texas, Dallas Division

Dear Chris:

As we discussed at Mr. Asher's deposition, the following is a list of items Mr. Asher testified he would assist me with or provide information to me regarding:

1. Please produce a copy of the engagement agreement between Mr. Asher and Mr. Spencer. *See page 319, lines 15-22.*

2. Mr. Asher testified he informed Mr. Spencer of corporations I was not aware of. Please provide the names of such corporations. See *page 329, lines 4-17.*

3. Mr. Asher testified he would provide the address of the "We-Works like" office he spent time at on the Wednesday prior to his deposition. Please provide the address. *See page 344, line 25 and page 345, lines 1-2.*

4. Mr. Asher indicated he would take action to have the monies he deposited at Balboa Bank & Trust in Panama turned over to the Receiver. Please request Mr. Asher to contact the bank, obtain the relevant information about the account, and provide me such information with his consent for the turnover of the monies. *See page 350, lines 22-24.*

**26**

5. Mr. Asher testified he would provide the amount of dividends he received from Tower Equity and Best New. *See page 356, lines 5-6.*

6. Mr. Asher testified he would provide his income from Chase Metals in 2019. *See page 356, line 21-22.*

7. Mr. Asher indicated he asked for information from  Brager Tax Law Group, including tax returns, and Brager Tax Group refused because of monies owed. *See page 357, lines 17-22.*  I provided Brager Tax Law Group with a copy of the receivership Orders and demanded the production of records.  Brager Tax Law Group refused to make such production without Mr. Asher's consent, claiming an attorney client privilege with Mr. Asher.  With respect to Mr. Asher's tax returns, in which there is no attorney client privilege, I request that Mr. Asher direct the Brager Tax Law Group to produce his tax returns to me.

8. Mr. Asher testified he would provide me with the telephone numbers he has used in the past three years. *See page 357, lines 23-24.*

9. Mr. Asher testified that he would find out the location of the bank accounts for MagicStar Arrow. *See page 379, lines 8-9.*

10. Mr. Asher testified he would find and share with me the name of the individual at Equidate who led the syndicate that Tower Equity invested in that in turn invested in Space Exploration, Inc. *See page 397, lines 23-25 and page 398, lines 1-4.*

11. Mr. Asher testified he would find out information about the acquisition of the painting by Jean-Michael Basquiat called "Per Capita" that was in the office at 8383 Wilshire Blvd. *See page 399, line 25 and page 400, lines 1-13.*

12. Mr. Asher testified he would determine what was purchased at VIBE Motorsports for $2,400 as shown on his Capital One card. *Page 403, lines 20-23.*

13. Mr. Asher testified he would determine the ownership of Newmont Administration, Inc. or Newmont Financial. *See page 408, lines 12-18.*

14. Mr. Asher testified he would determine the ownership of Reagan Financial, Inc. *See page 408, lines 23-25 and page 409, lines 1-3.*

15. Mr. Asher testified he would contact Dennis Belichenko to obtain financial information to turn over to the receivership.  *See page 412, lines 16-20.*  His email is dennis.sf@gmail.com.

16. Mr. Asher testified he would call EquityZen and obtain information regarding the investments made by Tower and assist in transferring those investments to the Receiver.  *See page 416, lines 21-25 and page 418, lines 14-20.*

17. Mr. Asher testified  he would provide the name of the management company for Tower Equity and the name of other companies used to purchase properties.  *See page 420, lines 14-18.*

18. Mr. Asher testified he would provide Blake Corbin's address.  *See page 450, line 10.*

19. M. Asher testified he would assist in obtaining information from EquityZen and Forge regarding equity investments made by Tower Equity in Ripple and other investments.  *See page 456, lines 11-14.*

20. Mr. Asher testified he would provide the addresses of the apartment complexes in Ft. Worth, Texas and Edinburg, Texas in which Tower invested.  *See page 457, lines 15-17.*

With respect to each of the foregoing items, I request that Mr. Asher provide me the information he testified he would obtain.  Should have you have any questions regarding any of the foregoing, please let me know.

> Sincerely,
>
> */s/Kelly M. Crawford*
>
> Kelly M. Crawford
> Receiver

cc:    Rich Foelber, CFTC (via email)
        JonMarc Buffa, CFTC (via email)
        Chrissi Cella, Office of Attorney General, State of Texas (via email)
        Arnold Spencer, Esq. (via email)
        Peter Lewis, Firm