IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and <br><br> ALABAMA SECURITIES COMMISSION, STATE OF ALASKA, ARIZONA CORPORATION COMMISSION, CALIFORNIA COMMISSIONER OF BUSINESS OVERSIGHT, COLORADO SECURITIES COMMISSIONER, STATE OF DELAWARE, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, OFFICE OF FINANCIAL REGULATION, OFFICE OF THE GEORGIA SECRETARY OF STATE, STATE OF HAWAII, SECURITES ENFORCEMENT BRANCH, IDAHO DEPARTMENT OF FINANCE, INDIANA SECURITIES COMMISSIONER, IOWA INSURANCE COMMISSIONER DOUGLAS M. OMMEN, OFFICE OF THE KANSAS SECURITIES COMMISSIONER, KENTUCKY DEPARTMENT OF FINANCIAL INSTITUTIONS, MAIN SECURITIES ADMINISTRATOR, STATE OF MARYLAND EX REL MARYLAND SECURITIES COMMISSIONER, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, MISSISSIPPI SECRETARY OF STATE, NEBRAKA DEPARTMENT OF BANKING & FINANCE, OFFICE OF THE NEVADA SECRETARY OF STATE, NEW MEXICO SECURITIES DIVISION, THE PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OKLAHOMA DEPARTMENT OF SECURITIES, SOUTH CAROLINA ATTORNEY GENERAL, SOUTH CAROLINA SECRETARY OF STATE, SOUTH DAKOTA DEPARTMENT OF LABOR & REGULATION, DIVISION OF INSURANCE, COMMISSIONER OF THE TENNESSEE DEPARTMENT OF COMMERCE AND INSURANCE, STATE OF TEXAS, | Case No.: 3:20-cv-2910-L |

| | |
|---|---|
| WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS, WEST VIRGINIA SECURITIES COMMISSION, AND STATE OF WISCONSIN | § § § § § |
| **Plaintiffs,** | § § |
| v. | § § |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § |
| **Defendants,** | § § |
| and | § § |
| TOWER EQUITY, LLC, | § § |
| **Relief Defendant.** | § § § |

# THIRD REPORT OF THE RECEIVER

Kelly M. Crawford, as the court-appointed Receiver ("Receiver"), submits his third report pursuant to this Court's *Statutory Restraining Order, Order for an Accounting, Order for Appointment of Receiver, Order for Expedited Discovery, and Other Equitable Relief and Order to Show Cause Regarding Preliminary Injunction* [Docket No. 16] (the *"SRO"*)[1], covering the period from January 1, 2021 through March 31, 2021.

---

[1] The *SRO* was continued in force by Consent Orders entered by the Court regarding the Defendant entities and the individual Defendants Asher and Batashvili [Docket Nos. 164, 165]. The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

I.

**INVESTORS**

On March 2, 2021 the Court entered an *Order Establishing Claims Adjudication Process* [Dkt. No. 227] (the "*Order*"). The *Order* sets a bar date of April 30, 2021 for claims to be mailed to the Receiver. Pursuant to the *Order,* on March 12-14, 2021 the Receiver published in *USA Today* a Notice to Claimants in the Receivership of their right to file a claim in the Receivership and the bar date of April 30, 2021. The Receiver continued to obtain information from investors to build a database of contact information for the investors, the amount paid to the Defendants, and the metals purchased. In addition, the Receiver prepared a database of non-metals investors and a database of creditors. The Receiver mailed and/or emailed claim confirmation forms to 1,674 investors in its database of metals purchasers; mailed and/or emailed non-metals claim forms to 28 investors and 400 other possible investors; and mailed and/or emailed creditor proof of claim forms to 109 creditors.

In order to keep investors and creditors updated with developments in the Receivership and answer questions regarding the claims process, the Receiver maintained his website, www.metalsandbarrickcapitalreceivership.com. The Receiver posted on the website a list of frequently asked questions regarding the claims process.

II.

**ASSETS RECOVERED TO DATE**

The assets recovered by the Receiver since January 1, 2021 are as follows:

| | |
|---|---|
| Sale of office inventory: | $65,000 |
| Sale of Spotify stock | $69,399 |
| PayPal: | $135.10 |
| Sale of Cobra | $72,500 |

| | |
|---|---|
| Recovery from East West account: | $7,159.50 |
| Recovery from TriNet: | $3,262.94 |
| Refund from Arnold Spencer: | $800 |
| Frontline distribution: | $929.10 |
| Interest earned through March 31st | $2,468.85 |

With the recovery of the foregoing additional assets, plus the assets recovered as of the *Receiver's Initial Report* and the *Receiver's Second Report*, and less the monies paid for Receivership fees and expenses, the balance in the Receivership account as of March 31, 2021 is $8,338,123.26.

### III.

### POTENTIAL SOURCES OF RECOVERY

The Receiver identified the following additional sources for recovery of investor monies.

### A.  PERSONAL PROPERTY

The Receiver paid the lien on the 2016 Mercedes G-Class and is waiting for clear title to be issued so that the Mercedes can be sold to the previously identified purchaser for $75,000.

The Receiver also has possession of three paintings taken from the Defendants' offices that are of nominal value that the Receiver will offer for sale online.

The Receiver took possession of certain jewelry given by Defendant Simon Batashvili to his wife Fainche McCarthy. Initial appraisals of the jewelry indicate it is worth less than $10,000.

Finally, the Receiver took possession of furniture, artwork, guitars, and musical equipment belonging to the Defendants Lucas Asher and Simon Batashvili that the Receiver is currently storing.  Pursuant to the terms of the Court's *Consent Order Governing the Administration of the Receivership, Procedures Governing the Sale or Abandonment of Personal Property, Notice of Intended Sale and Disposition of Various Items, Fee Application Procedures.* [Docket No. 213] (the "*Administration Order*"), the personal property of the individual defendants, including the jewelry

taken from Simon Batashvili's wife, cannot be sold until a final judgment is obtained by the Plaintiffs against the individual defendants, or the defendants are dismissed from the lawsuit.

### B.  REAL PROPERTY

During the Receiver's investigation, the Receiver discovered that in 2019 Defendant Tower Equity, LLC, or an affiliated Tower entity, purchased at a Sheriff's sale 17 residential properties in Philadelphia, Pennsylvania. According to public records, Tower paid a total of $1,254,000 for these properties.

The Receiver retained three appraisers to appraise the fair market value of each of the 17 properties for sale. In addition, the Receiver retained a real estate broker in Philadelphia who is now actively marketing the properties for sale.

In addition, Defendant Asher testified in his asset deposition that Defendant Tower Equity, LLC, or an affiliated Tower entity, purchased fractional interests in properties in Florida, Tennessee, Texas, and Pennsylvania – ranging from commercial to industrial to multi-family. To date, the Receiver discovered that Asher used Tower Equity to invest $260,000 with Crowdfunding for the purchase of fractional interests in various real estate projects. Such interest has been assigned by Crowdfunding to the Receiver and to date the Receiver has received nominal distribution checks from such investment. The Receiver is continuing his investigation into real properties in which the Defendants or Relief Defendants or entities they own or control may have an interest.

The Receiver made demand upon the lessor of 8383 Wilshire Blvd, the headquarters of the Defendants, to return the security deposit in excess of $1 million held by the lessor. To date the lessor has refused to turn over the security deposit and the Receiver will likely have to request the Court hold a hearing for the lessor to show cause as to why it should not be held in contempt of court for refusing to turn over the security deposit to the Receiver.

Finally, the Receiver, negotiated a tentative settlement (subject to court approval) with the lessor of the house rented to Defendant Simon Batashvili to return $14,000 of the $35,000 security deposit held by the lessor.

### C. COMMISSIONS

The law is well established that a Receiver may recover commissions received from sales persons for their role in soliciting investor monies for an unlawful scheme. *Warfield v. Byron*, 436 F.3d 551, 560 (5th Cir. 2006). In such instance, sales persons are not being paid with profits earned from a legitimate enterprise, but instead are being paid commissions from the principal amount received from investors in the scheme. Regardless of whether the salespersons knew or should have known that Metals.com or Barrick capital or the other Defendant entities were being operated illegally, the commissions the salespersons received are recoverable as fraudulent conveyances. *Id.* As the recipient of a fraudulent transfer, the salesperson must be able to show that he or she received the commissions in good faith *and* in exchange for reasonably equivalent value. While a salesperson may be able to claim he or she received the commissions in good faith, the salesperson cannot show he or she provided reasonably equivalent value in exchange for the money received. Adding more investors to a fraudulent scheme does not provide value, but rather only enlarges the number of victims.

The Receiver is aware of several million dollars of investor funds paid in commissions.[2] The Receiver mailed the salespersons a copy of the *SRO* and made demand upon the salespersons to provide the Receiver with information regarding the monies received and services provided. With the significant amount of investor funds used to compensate salespersons, and which the Receiver contends are recoverable as a matter of law, the Receiver intends to pursue an ancillary action

---

[2] The specific amounts paid to each salesperson will be determined once the forensic accounting of the Defendants' records is complete.

against the salespersons to recover the commissions and/or seek to settle such claims subject to the approval of this Court

### D. INVESTMENTS BY THE DEFENDANTS

At his asset deposition Defendant Asher testified that he used Defendant Tower Equity LLC to make a number of venture capital, equity, or stock purchases, including an investment of approximately $300,000 in Space Exploration Technologies Corp. ("SpaceX"). Through his investigation the Receiver learned that on February 28, 2019, Tower Equity invested $250,000 in a series of Equidate Investments, LLC, now Forge, investment entities which, in turn, purchased shares of Troy Capital Partners SX IX, LLC, which owns shares of SpaceX. The Receiver is obtaining information from Forge regarding the means to liquidate this interest.

In addition, the Receiver obtained information from EquityZen showing that Tower Equity has investments through EquityZen totaling $334,780 in the following entities:

| Entity | Amount |
| --- | --- |
| Dave | $10k |
| Desktop Metal | $10k |
| Flexport | $10k |
| Lookout | $10k |
| Bird | $10k |
| Robinhood | $25k |
| Zocdoc | $10k |
| Wish | $10k |
| 23andMe | $10k |
| Carbon | $10k |
| Instacart | $10k |
| Acquia | $10k |

| | |
|---|---|
| Outbrain | $10k |
| Collective Health | $10k |
| Automattic | $10k |
| The Honest Company | $10k |
| Hotel Tonight | $10k |
| Betterment | $10k |
| Quanergy Systems | $10k |
| Addepar | $10k |
| Circle | $10k |
| Kobalt | $10k |
| Ripple | $25k |
| SoFi | $10k |
| Virgin Hyperloop | $25k |
| Buzzfeed | $25k |
| Planet | $14,472 |

The Receiver intends to liquidate these interests pursuant to the *Administration Order*.

### E.  MONIES AND METALS HELD BY BAYSIDE METAL EXCHANGE

Once the Defendants received monies from the investor victims, the Defendants placed orders for the metals themselves with Bayside Metal Exchange ("BME"). BME would, in turn, usually deliver the metals to the depository for the investor. The Defendants, of course, would take their illegal gains from the monies received from the investors before transferring monies to BME for the purchase of the metals.

When BME learned of the Receivership, BME froze all pending transactions with the Defendants[3]. BME, in cooperation with the Receiver, provided the Receiver a list of all pending transactions. While the Receiver contends BME is required to turn over to the Receiver (for distribution to the investors who placed the pending orders) the money BME received for pending transactions, BME argues it did not assume that risk and instead is prepared to complete the pending transactions and deliver the metals in their inventory.

Putting aside the issue of whether BME should bear the risk and return all money it received from the Defendants, the Receiver and BME reached an agreement whereby BME provides the Receiver with a liquidation price for the metals it is holding for a customer and the Receiver contacts the customer and finds out if the customer wishes to have the metals delivered or the metals liquidated and the monies delivered. Such agreement is without prejudice to the rights of any of the parties to the lawsuit, the Receiver, the customers, or BME. The liquidation price of the metals BME had pending for delivery to the investors as of January 4, 2021 was $2,640,450.

Since that time, the Receiver has worked with the investors and BME to arrange for either the liquidation or delivery of metals to investors totaling $1,559,265. In addition, BME continues to hold metals in the name of the Defendants with an estimated liquidation value of approximately $352,000.

### F. THE MYRIAD OF ENTITIES OWNED BY DEFENDANTS

The Receiver obtained evidence showing that as of the date of the Receivership, the Defendants owned or controlled a myriad of entities. The Receiver submitted such evidence of control to the Court and on March 22, 2021, the Court entered an *Order Granting Receiver's*

---

[3] BME identified the following accounts as the Defendants or under the possession and control of the Defendants, and froze pending transactions with Barrick Capital, Glencore Financial, Metals.com, Newmont Financial, Northwestern Finance, and USA Mint.

*Motion to Identify Certain Entities in Receivership* [Dkt. 230] identifying the following entities as subject to the Receivership Orders of the Court:

    Access Unlimited LLC
    Administrative Account Services, LLC
    Amerivise, LLC
    Aqua Billboards
    Best New Inc.
    Chasing Gold
    Chasing Metals, Inc.
    Delaware Wholesale Inc.
    Egon Pearson, LLC
    Faulkner Management Corp.
    Faulkner Music LLC
    First American Estate & Trust
    First American Savings, Inc.
    Instribution, LLC, now Revo, LLC
    Merrill Gold, LLC
    Prometheus Laboratories, Int. (IBC)
    Prometheus Laboratories, Int. (PIF)
    Reagan Financial, Inc.
    Resource Financial Services, Inc.
    Retirement Insider, LLC
    Street Invasion, Inc.
    Stuttgart Industrial, Inc.
    Tower Estates Holdings, Inc.
    Tower Estates, Inc.
    Tower Holdings, Inc.
    Tower Property One, LLC
    Tower Property Two, LLC
    TX Admin., Inc.
    USA Accounts, Inc.
    USA Marketing, Inc.

  The Receiver is continuing to gather evidence of additional entities owned and controlled by the Defendants that should be made subject to the Receivership Orders of the Court.

IV.

**PENDING REGULATORY AND CIVIL ACTIONS AGAINST THE DEFENDANTS**

At the time the Receiver was appointed, there were regulatory actions pending against the Defendants in twenty-one (21) States. Since January 1, 2021, the Receiver participated in the regulatory action pending in Alaska, reviewed and revised proposed consent decrees in Ohio, Colorado, and Montana, and provided information to Arkansas for purposes of a regulatory action.

V.

**RECORDS OF THE DEFENDANTS AND RELIEF DEFENDANT**

The vast majority of the records of the Defendants and Relief Defendant Tower Equity were digitally stored on various cloud platforms such as Microsoft, Google, Drop Box, Salesforce, Intuit, and Amazon. Defendants Asher and Batashvili, as well as the IT managers for the Defendant entities, claimed that because their personal computers were seized by the FBI, they were unable to retrieve their login and passwords required to access the cloud platforms. They claim that such logins and passwords change often and are stored on the seized computers.

The Receiver provided the *SRO* to each of the cloud platforms and demanded that they grant the Receiver access. After much delay and the threat of contempt actions by the Receiver, Microsoft, Intuit, and Sales Force finally complied with the *SRO* and granted access to the Receiver. Meanwhile, Google continued its refusal to grant access to the Receiver. As a result, the Receiver filed an *Emergency Motion for "Show Cause" Hearing to Hold Google, Inc. in Civil Contempt"*. On the eve of the hearing on the contempt motion, the Receiver gained access to and control of the Google platform.

In addition, after numerous requests, the Receiver finally received relevant bank records from Bank of America. The Receiver provided the bank records obtained to his accounting firm and the accounting firm is working on a forensic accounting.

## VI.

## RECOMMENDATIONS OF THE RECEIVER

Based on the foregoing, the Receiver make the following recommendations to assist in the continuation of the Receivership.

### A. PROCEDURES FOR RECEIVERSHIP

The *Administration Order* establishes procedures for the Receiver to efficiently administer the Receivership estate and sets forth the procedures for the Receiver to follow in selling personal and real property. The Receiver will continue to follow these procedures in the administration of the Receivership.

### B. CLAIMS PROCESS FOR INVESTORS AND CREDITORS

On March 2, 2021 the Court entered the *Claims Order* that: 1) authorizes the Receiver to make recommendations regarding the claims of the investors based on information gathered by the Receiver; 2) approves claim forms to be sent by the Receiver to all known investors and creditors; 3) establishes April 30, 2021 as a bar date or deadline by which all claim forms must be submitted by investors and creditors to the Receiver; 4) establishes a process for the Receiver to inform the Court regarding the claims received, make recommendations regarding the claims, and provide an opportunity for investors or creditors to object to the Receiver's recommendation regarding claims; and 5) provides for the Court to rule upon the claims submitted by the Receiver and consider any objections to the Receiver's recommendations regarding the claims.

Once the Court enters an Order with a list of approved investor and creditor claims the Receiver will make a proposal to the Court regarding the classification of the claims and the means of distributing assets to approved claimants. Upon entry of an Order from the Court approving the means of distribution of assets to approved claimants, the Receiver can begin distributing monies. The Receiver anticipates the claims process can be completed within the third or fourth quarter of

2021 and that an initial distribution of assets can be made soon thereafter.

### C. COMPELLING DISCLOSURE OF SOURCE OF ATTORNEYS' RETAINER

The Receiver made numerous requests of counsel for Defendants Batashvili and Asher to disclose the source of payment of the fees he is charging for representing Defendants, and specifically requested copies of "all documents relating to all funds received by you or your firm, from, on behalf of, or for the benefit of any of the Defendants…" The attorney for the individual Defendants continues his refusal to provide the information requested by the Receiver and required by the law to be disclosed. Accordingly, the Receiver will have to request the Court to compel the attorney for the individual Defendants to turn over such information.

### D. ENFORCE DEFENDANTS' COMPLIANCE WITH THE *SRO*

As the Court is aware, the Receiver discovered that in blatant disregard of this Court's Receivership Orders, Defendant Lucas Asher transferred $550,000 of monies that belonged to the Receivership estate out of an account in which he was the sole signatory. After an evidentiary hearing on the Receiver's Motion to Hold Defendant Lucas Asher in Civil Contempt of Court, Defendant Asher submitted to the Court an *Agreed Order Finding Defendant Lucas Asher in Contempt of this Court's Orders* [Dkt. No. 216] (the *"Contempt Order"*). In the *Contempt Order* entered by the Court, the Court found Defendant Asher in civil contempt of court and ordered that in order to purge himself of the contempt he was required to appear at a continued asset deposition taken by the Plaintiffs and Defendant and provide "full, complete, and accurate testimony".

Pursuant to the *Contempt Order*, on January 29, 2021 the Plaintiffs and Receiver took the asset deposition of Defendant Asher. During the deposition Defendant Asher, represented by counsel, testified under oath that he would provide the Receiver with certain information requested during the deposition. By letter from the Receiver to Defendant Asher's counsel dated February 16, 2021, the Receiver listed the information Defendant Asher promised during the deposition to

provide. To date, Defendant Asher has failed to provide the Receiver with *any* of the information. In addition, the Receiver requested the attorney for Defendant Asher to obtain Defendant Asher's consent for the release of his tax returns and to date Defendant Asher has failed to provide such consent. Defendant Asher has not complied with the *Contempt Order* and has not purged himself of his civil contempt.

The Receiver also followed up with the attorney for Defendant Batashvili and requested that Defendant Batashvili provide information to the Receiver that Defendant Batashvili promised during his deposition to provide to the Receiver. To date, in direct violation of the Receivership Orders of the Court, Defendant Batashvili has not provided any of the information he promised to provide to the Receiver.

### E. TIMELINE FOR THE RECEIVERSHIP

The Receiver recommends continuation of the Receivership to complete the discovery, seizure, and liquidation of additional assets; pursuit of claims against recipients of fraudulent transfers; completion of the claims process described above; and distribution of the assets recovered to the approved claimants. With the significant scope of the Receivership, number of investor victims, and amount of loss, the Receiver estimates it will be necessary to continue the Receivership in place through 2021 and into 2022.

Respectfully submitted, April 13, 2021.

RECEIVER KELLY M. CRAWFORD

*/s/ Kelly M. Crawford*
Kelly M. Crawford, Receiver
State Bar No. 05030700
SCHEEF & STONE, L.L.P.
500 North Akard, Suite 2700
Dallas, Texas 75201
Tele: 214/706-4200
Fax:  214/706-4242

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 13, 2021 I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ Kelly M. Crawford
KELLY M. CRAWFORD
