**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2910-L |
| TMTE, INC. a/Ida METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/Ida LUCAS ASHER a/Ida LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § § | |

**APPENDIX IN SUPPORT OF RECEIVER'S
RESPONSE TO DEFENDANTS' EMERGENCY MOTION TO MODIFY TEMPORARY
INJUNCTION**

The Receiver submits the following Appendix in Support of the Receiver's Response to Defendants Emergency Motion to Modify Preliminary Injunction, as follows:

Exhibit A        Declaration of Receiver Kelly Crawford,        pages 4 to 10

    Exhibits attached to Declaration:

        Exhibit 1  Receiver's List of Items for Asher to Supplement        pages 11 to 13

        Exhibit 2  Receiver's Email to Asher's Counsel re Supplement        pages 14 to 17

        Exhibit 3  Receiver's Correspondence to Batashvili's Counsel re Supplement

                                                        Pages 18 o 19

        Exhibit 4  Transcript of Batashvili Deposition re Jewelry items        pages 20 to 21

Exhibit 5  Batashvili Email Correspondence re Jewelry Insurance   page 22 to 42

Exhibit 6  Transcript of Asher Deposition re offshore investments  page 43 to 44

Exhibit 7  Affidavit of Solvency executed by Asher                page 45 to 46

Exhibit 8  Asher Email Correspondence on behalf of Kotel In. Ltd.,

                                                                  page 47 to 48

Exhibit 9  Transcript of Asher Deposition re Email Addresses      page 49 to 50

Exhibit 10  Transcript of Asher Deposition re Employment          page 51

Exhibit 11  Transcript of Asher Deposition re Investments         page 52 to 53

Exhibit 12  Accounting of Deposits for Batashvili's Daughter      page 54

Exhibit 13  Email Exchange between Counsel for Receiver and

Defendants' proposed new Counsel                                  page 55 to 58

Dated:  April 20, 2021

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By:    _/s/ Peter Lewis_
       Peter Lewis
       Texas State Bar No.12302100
       Peter.lewis@solidcounsel.com

500 N. Akard Street, Suite 2700
Dallas, Texas 75201
(214) 706-4200 – Telephone
(214) 706-4242 – Telecopier

**ATTORNEY FOR RECEIVER
KELLY M. CRAWFORD**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 20, 2021, I electronically filed the foregoing document with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.


_/s/ Peter Lewis_____
**PETER LEWIS**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2910-L |
| TMTE, INC. a/lda METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/lda LUCAS ASHER a/lda LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § § | |

## DECLARATION OF RECEIVER KELLY M. CRAWFORD

My name is Kelly M. Crawford, I am over 18 years of age, have never been convicted of any crime involving moral turpitude and I am fully competent to make this Declaration.

1.     I am the Receiver appointed by this Court by an *Order Granting Plaintiffs' Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief (the "SRO")* entered on September 22, 2020 in the case styled above and I have personal knowledge of each of the facts stated below.

2.     Pursuant to my duties as Receiver, I have been investigating the assets owned or controlled by the Defendants and Relief Defendants to determine the assets subject to and recoverable under the SRO and the Individuals' Consent Order and Entities' Consent Order

---

**Appendix 4**

(collectively, the "Receivership Orders").[1]

3.    In the course of my investigation, I have become aware of numerous violations of the Receivership Orders and the Agreed Order Finding Defendant Lucas Asher in Contempt of This Court's Orders and Continuance of Show Cause Hearing ("Contempt Order") entered on December 15, 2020 [Dkt. 216].

4.    As Receiver I made demand upon the attorney for Defendants Asher and Batashvili to identify entities they owned or controlled.  Due to their failure to respond to my requests, on October 23, 2020 I filed an *Emergency Motion for "Show Cause" Hearing to Hold Defendants Asher and Batashvili in Civil Contempt* [Docket No. 175].  Soon after the Motion was filed, the attorney for Defendants Asher and Batashvili sent me an email purporting to identify all the entities the Defendants admit to owning or controlling.

5.    As detailed in my Declaration in Support of Receiver's Motion to Identify Certain Entities in Receivership [Dkt. 226-2], further investigation revealed the existence of a number of additional entities that were determined to compromise the Receivership estate. [Dkt. 230.] Identification of these entities was only made possible through my investigation and did not result from the voluntary identification of Defendants Asher and Batashvili.

6.    As detailed in the Receiver's Emergency Motion for "Show Cause" Hearing to Hold Defendant Asher in Civil Contempt, and Brief in Support ("Asher Show Cause Motion"), filed on November 23, 2020 [Dkt. 195], the SRO Order [Dkt. 16] was served on Defendant Asher on September 26, 2020. [Dkt. 195 at p. 4.] But on September 28, 2020, I learned that Defendant

---

[1] The *Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili (the "Individuals' Consent Order")* [Docket No. 165], and the *Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants TMTE, Inc. a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., and Relief Defendant Tower Equity, LLC (the "Entities' Consent Order")* [Docket No. 164].

---

**DECLARATION OF RECEIVER KELLY M. CRAWFORD**                                          **Page 2**

**Appendix 5**

Asher attempted to sell his Ferrari in violation of the SRO. [Id.] That evening, Defendant Asher left a voicemail for me denying any violation of the SRO and pledging his full compliance with the Court's Order. [Id. at pp. 4-5.] The next day, Defendant Asher again violated the SRO by transferring $550,000 from an account under his control at Bank of America. [Id. at p. 5.] Defendant Asher admitted and confessed to this violation of the SRO in the Contempt Order. [Dkt. 216 at pp. 3-4.] Having found Defendant Asher in violation of the SRO, the Court Ordered him to complete the purging of his contempt by providing "full, complete, and accurate testimony" concerning the assets under his control. [Dkt. 216 at p. 5.]

7.      Defendant Asher failed to comply with the Contempt Order he agreed to by failing to provide pertinent information concerning the assets under his control. Among, but not inclusive of, the information Defendant Asher promised to provide at the deposition intended to purge him of his contempt of Court, were his income derived from Defendant Chase Metals in 2019, telephone numbers used by him over the past three years, bank accounts for Magic Star Arrow, and information concerning the investments of Relief Defendant Tower Equity, LLC, and dividends for Relief Defendant Tower Equity. Furthermore, Defendant Asher failed to take action he had promised to take in his deposition, such as the production of his consent to release his tax returns, recovery of monies deposited at Balboa Bank & Trust in Panama, and determining the ownership of certain entities. During the entire time Defendant Asher agreed to provide the information to the Receiver, he was represented by counsel of his choosing.  Despite repeated correspondence from me to Defendant Asher's counsel urging him to comply with the Court's Order and the promises made at his deposition, Defendant Asher has not complied.  A full and complete list of the aforementioned items and my correspondence with Defendant Asher's counsel on this matter are attached hereto as **Exhibit 1** (February 16, 2021 correspondence) and **Exhibit 2**

**Appendix 6**

(March 10, 2021 correspondence).

8.     Defendant Batashvili has likewise failed to provide information he promised to provide in his deposition concerning assets comprising the Receivership estate, including but not limited to his total compensation for the year 2018, a list of all financial institutions in which he has been a signatory, and contact information for his accountant. Correspondence to his counsel concerning Defendant Batashvili's failure to provide this information is attached hereto as **Exhibit 3**.

9.     Furthermore, in the course of his deposition, Defendant Batashvili falsely testified he had no interest in any jewelry assets. The relevant excerpt of the transcript of Defendant Batashvili's deposition is attached hereto as **Exhibit 4**.  I discovered documentation showing Defendant Batashvili seeking insurance for approximately $300,000 worth of jewelry assets owned by he and his wife six months prior to his deposition, as shown in **Exhibit 5**.

10.     During the deposition of Defendant Asher, I asked him about the Panamanian offshore trust he set up called Prometheus Laboratories.  I then asked Asher "Have you ever owned any interest in any other offshore entity or offshore trust other than Prometheus Laboratories that we discussed here today?".  Defendant Asher testified under oath "No."  Attached hereto as **Exhibit 6** is a relevant excerpt from the transcript of the deposition of Defendant Asher.  After the deposition, I discovered that Defendant Asher's testimony was false.  Asher set up an offshore trust called "Kotel International Trust in the Cook Islands" for Relief Defendant Tower Equity.  Attached hereto as **Exhibit 7** is a true and correct copy of an *Affidavit of Solvency* executed by Defendant Asher on behalf of Relief Defendant Tower Equity, LLC.  I also discovered the document attached hereto as **Exhibit 8** that shows Defendant Asher conducted business under the name of Kotel Int. Ltd., with an office at P.O. Box 11, ANZ House Avanua, Raratonga Cook Islands, and Defendant

---

**DECLARATION OF RECEIVER KELLY M. CRAWFORD**                                    **Page 4**

**Appendix 7**

Asher used an email address for the Kotel trust at Asher@KotelHoldings.com. I specifically asked Defendant Asher during his deposition to identify email addresses he had used and he failed to disclose the KotelHoldings email address. Attached hereto as **Exhibit 9** is a relevant excerpt from the transcript of Defendant Asher's deposition regarding his email addresses.

      11.     Article IX of the Individuals Consent Order was included at the request of Defendants Asher and Batashvili and sets forth a procedure for Defendants Asher and Batashvili to seek gainful employment and earn new income to pay for their reasonable and necessary living expenses. To date I have not been informed of any New Income earned by Defendants Asher and Batashvili. When I asked Defendant Asher if he has sought new employment he indicated he had not because of the pandemic, and further added that he doesn't have clarity on the direction he wants to go. A true and correct copy of this testimony by Defendant Asher is set forth in the relevant excerpt from the transcript of Defendant Asher's deposition attached hereto as **Exhibit 10.**

      12.     I read the Declaration of Lucas Asher dated March 30, 2021 and filed in this case. In the Declaration, Defendant Asher states in paragraph 3 that "I have also invested in multi-family and commercial properties nationwide. I used income from these real-estate ventures to invest further in pre-IPO technology companies like SpaceX, Pinterest, Robinhood, Adaptive Biotechnologies, Palantir and many more." Based upon my investigation, I believe this statement by Mr. Asher is false. Investments in pre-IPO technology companies SpaceX, Pinterest, Robinhood, Adaptive Biotechnologies, Palantir and many more were made in the name of Tower Equity, LLC. Indeed, Tower Equity, LLC made the SpaceX investment through Forge, and Tower Equity, LLC made the investments in other pre-IPO technology companies through EquityZen. Tower Equity, LLC 's monies that were used for investment included monies generated from the sales of metals by Defendants Metals.com, Chase Metals, and Barrick Capital that were deposited

---

**DECLARATION OF RECEIVER KELLY M. CRAWFORD**               **Page 5**

**Appendix 8**

into the Tower Equity, LLC bank account. Indeed, Defendant Asher admitted in his deposition that TMTE, Chase Metals, or Chase Metals, LLC sent funds to Tower Equity. A true and correct copy of this testimony by Defendant Asher is set forth in the relevant excerpt from the transcript of Defendant Asher's deposition attached hereto as **Exhibit 11.**

13.    I read the Declaration of Defendant Simon Batashvili dated March 30, 2021 and filed in this action. In paragraph 12 of his Declaration, Defendant Batashvili declares that "some of the frozen assets include college savings accounts for my children, which include assets that were provided by unconnected third parties." Based upon my investigation, I believe this statement is erroneous in many respects. First, I am only aware of Defendant Batashvili having one child and there being one college savings account that was frozen, not multiple children and multiple accounts. Attached as **Exhibit 12** is an accounting of the deposits totaling $50,809 into the account for Defendant Batashvili's daughter. The accounting was prepared by my accountant Jeff Brandlin based upon bank records obtained as part of the receivership. Other than interest earned on the account, the deposits are all made by either Defendant Batashvili or entities included within the scope of the Consent Order.

14.    Defendants Asher and Batashvili have failed to voluntarily turn over any receivership assets to me other than two cars.

15.    Pursuant to the Order Establishing Claims Adjudication Process, I have distributed claim confirmation forms to more than 1,600 persons who purchased metals from the Defendants. To date, the receivership account has a balance of approximately $8.3 million.

16.    My counsel Peter Lewis specifically requested Gene Besen, one of the Proposed New Counsel, to identify untainted assets in the receivership. Mr. Besen refused, claiming it was impossible without his clients documents and records. A true and correct copy of the email

---

**DECLARATION OF RECEIVER KELLY M. CRAWFORD**                                      **Page 6**

**Appendix 9**

exchange between my counsel Mr. Lewis and the Defendants' Proposed New Counsel Besen is attached hereto as **Exhibit 13.**

17. Each of the exhibits attached hereto are duplicates of the records in my possession and custody as Receiver. It is my belief the records were made at or near the time of the occurrence of the matters set forth in the records. The records were maintained by me in the course of my regularly conducted activity as Receiver, and it is my belief the records were made by the regularly conducted activity as a regular practice.

18. I declare under penalty of perjury that the foregoing is true and correct and is within my personal knowledge.

KELLY M. CRAWFORD
RECEIVER

Dated:      April 19, 2021

**Appendix 10**

# Kelly Crawford
## Receiver
500 N. Akard, Suite 2700
Dallas, Texas 75201
(214) 706-42123
kelly.crawford@solidcounsel.com

February 16, 2021

*Via Electronic Mail to cdavis@grayreed.com*

Chris Davis
Gray Reed
1601 Elm Street, Suite 4600
Dallas, Texas 75201

RE:   *Commodity Futures Trading Commission, et al v. TMTE, Inc. a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher, Simon Batashvili, Defendants and Tower Equity, LLC, Relief Defendant.;* Cause No. 3:20-CV-2910-L; pending in the United States District Court for the Northern District of Texas, Dallas Division

Dear Chris:

As we discussed at Mr. Asher's deposition, the following is a list of items Mr. Asher testified he would assist me with or provide information to me regarding:

1. Please produce a copy of the engagement agreement between Mr. Asher and Mr. Spencer. *See page 319, lines 15-22.*

2. Mr. Asher testified he informed Mr. Spencer of corporations I was not aware of. Please provide the names of such corporations. See *page 329, lines 4-17.*

3. Mr. Asher testified he would provide the address of the "We-Works like" office he spent time at on the Wednesday prior to his deposition. Please provide the address. *See page 344, line 25 and page 345, lines 1-2.*

4. Mr. Asher indicated he would take action to have the monies he deposited at Balboa Bank & Trust in Panama turned over to the Receiver. Please request Mr. Asher to contact the bank, obtain the relevant information about the account, and provide me such information with his consent for the turnover of the monies. *See page 350, lines 22-24.*

EXHIBIT
tabbies
1

Appendix 11

5. Mr. Asher testified he would provide the amount of dividends he received from Tower Equity and Best New. *See page 356, lines 5-6.*

6. Mr. Asher testified he would provide his income from Chase Metals in 2019. *See page 356, line 21-22.*

7. Mr. Asher indicated he asked for information from Brager Tax Law Group, including tax returns, and Brager Tax Group refused because of monies owed. *See page 357, lines 17-22.* I provided Brager Tax Law Group with a copy of the receivership Orders and demanded the production of records. Brager Tax Law Group refused to make such production without Mr. Asher's consent, claiming an attorney client privilege with Mr. Asher. With respect to Mr. Asher's tax returns, in which there is no attorney client privilege, I request that Mr. Asher direct the Brager Tax Law Group to produce his tax returns to me.

8. Mr. Asher testified he would provide me with the telephone numbers he has used in the past three years. *See page 357, lines 23-24.*

9. Mr. Asher testified that he would find out the location of the bank accounts for MagicStar Arrow. *See page 379, lines 8-9.*

10. Mr. Asher testified he would find and share with me the name of the individual at Equidate who led the syndicate that Tower Equity invested in that in turn invested in Space Exploration, Inc. *See page 397, lines 23-25 and page 398, lines 1-4.*

11. Mr. Asher testified he would find out information about the acquisition of the painting by Jean-Michael Basquiat called "Per Capita" that was in the office at 8383 Wilshire Blvd. *See page 399, line 25 and page 400, lines 1-13.*

12. Mr. Asher testified he would determine what was purchased at VIBE Motorsports for $2,400 as shown on his Capital One card. *Page 403, lines 20-23.*

13. Mr. Asher testified he would determine the ownership of Newmont Administration, Inc. or Newmont Financial. *See page 408, lines 12-18.*

14. Mr. Asher testified he would determine the ownership of Reagan Financial, Inc. *See page 408, lines 23-25 and page 409, lines 1-3.*

**Appendix 12**

February 16, 2021
Page 3

15. Mr. Asher testified he would contact Dennis Belichenko to obtain financial information to turn over to the receivership. *See page 412, lines 16-20.* His email is dennis.sf@gmail.com.

16. Mr. Asher testified he would call EquityZen and obtain information regarding the investments made by Tower and assist in transferring those investments to the Receiver. *See page 416, lines 21-25 and page 418, lines 14-20.*

17. Mr. Asher testified  he would provide the name of the management company for Tower Equity and the name of other companies used to purchase properties. *See page 420, lines 14-18.*

18. Mr. Asher testified he would provide Blake Corbin's address. *See page 450, line 10.*

19. M. Asher testified he would assist in obtaining information from EquityZen and Forge regarding equity investments made by Tower Equity in Ripple and other investments. *See page 456, lines 11-14.*

20. Mr. Asher testified he would provide the addresses of the apartment complexes in Ft. Worth, Texas and Edinburg, Texas in which Tower invested. *See page 457, lines 15-17.*

With respect to each of the foregoing items, I request that Mr. Asher provide me the information he testified he would obtain.  Should have you have any questions regarding any of the foregoing, please let me know.

Sincerely,

*/s/Kelly M. Crawford*

Kelly M. Crawford
Receiver

cc:    Rich Foelber, CFTC (via email)
       JonMarc Buffa, CFTC (via email)
       Chrissi Cella, Office of Attorney General, State of Texas (via email)
       Arnold Spencer, Esq. (via email)
       Peter Lewis, Firm

**Appendix 13**

**Kelly Crawford**

| | |
|---|---|
| **From:** | Kelly Crawford |
| **Sent:** | Wednesday, March 10, 2021 2:45 PM |
| **To:** | Chris Davis |
| **Cc:** | arnoldspencer75225@gmail.com; Peter Lewis; rfoelber@CFTC.gov; JBuffa@CFTC.gov |
| **Subject:** | FW: Lucas Asher |
| **Attachments:** | 2nd Letter to Kelly Crawford.pdf |

Chris,

    To date I have not received any of the information Lucas Asher promised in his deposition to provide to me. Also, attached is a letter from the firm Mr. Asher identified as having his tax returns. They are requesting Mr. Asher's consent to provide the records to me. Pursuant to Mr. Asher's deposition testimony and his obligations under the receivership orders, I request that Mr. Asher provide this consent. Thank you.

**Kelly Crawford** PARTNER
**Scheef & Stone, LLP**
www.solidcounsel.com | **214.706.4213**
Office: 214.706.4200 | Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, TX 75201



**SCHEEF & STONE**
SOLID COUNSEL

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**From:** Lauren Rosas <lrosas@bragertaxlaw.com>
**Sent:** Wednesday, March 10, 2021 1:10 PM
**To:** Kelly Crawford <kelly.crawford@solidcounsel.com>
**Cc:** Guy Glaser <gglaser@bragertaxlaw.com>; Dennis Brager <dbrager@bragertaxlaw.com>
**Subject:** Letter to Kelly Crawford

**CAUTION:** EXTERNAL EMAIL

Ms. Crawford:

    Please see attached letter on behalf of Mr. Guy Glaser. We will also be sending out via Mail as well. Should you have any questions, please contact Mr. Guy Glaser directly.

1



**EXHIBIT**
**2**

**Appendix 14**



Visit Our Website

**Lauren Rosas**
Administrative Assistant

11400 W. Olympic Blvd. Suite 750 ⚬ Los Angeles, CA 90064
Telephone 310 208 6200 ⚬ Fax 310 478 8030



CONFIDENTIAL: This message and all contents thereof contain information from the Brager Tax Law Group, which may be subject to attorney client privilege, work product privilege, or otherwise protected from disclosure under applicable law. This information is intended for the addressee only. If you are not the intended recipient, or if you have received this message in error, any disclosure, copying, distribution or use of the contents of this message is prohibited. If you have received this e-mail in error, please notify us immediately by reply mail or telephone 310-208-6200 and destroy the original message and all attachments without retaining any copies.

**Appendix 15**

 **Brager**
**Tax**
**Law**
**Group**

A Professional Corporation

Tax Controversy Law
**Tax Controversy Law**
**Tax Controversy Law**
**Tax Controversy Law**

**Tel:** 310.208.6200
**Fax:** 310.478.8030

www.bragertaxlaw.com

March 10, 2021

**SENT VIA EMAIL ONLY: kelly.crawford@solidcounsel.com**

Kelly Crawford
Receiver
500 N. Akard, Suite 2700
Dallas, Texas 75201

> Re: *Commodity Futures Trading Commission, et al v. TMTE, Inc. a/k/a Metals.corn, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher, Simon Batashvili, Defendants and Tower Equity, LLC, Relief Defendant.*; Cause No. 3:20-CV-2910-L; pending in the United States District Court for the Northern District of Texas, Dallas Division

Dear Ms. Crawford:

We are in receipt of your letter dated February 25, 2021, in which you are seeking tax records and other information which you believe are in our possession concerning Mr. Lucas Asher.

Notwithstanding what Mr. Asher stated during his deposition, he is mistaken in his belief that we are. or have ever been, his accountants. We also have not received any request from Mr. Asher to provide him with his files. In fact, we have reached out to Mr. Asher to try to obtain his consent to release whatever documents and other information we may have that are responsive to your request, but he has not responded.

Accordingly, we would like to take you up on your offer in the last paragraph of your letter – Namely that you provide us with Mr. Asher's written consent to release whatever documents we may have in our possession that are responsive to your request, including tax returns and other privileged information, if such exists.

**Appendix 16**

 **Brager Tax Law Group**

A Professional Corporation

Kelly Crawford
March 10, 2021
Page 2

If you have any questions about this letter, please do not hesitate to give me a call at (310) 208-6200 or you can email me at gglaser@bragertaxlaw.com

Sincerely,

Guy H. Glaser

GG:lr
cc: Lucas Asher (via email)

C:\Users\lroses\ND Office Echo\VAULT-9M0N7B0R\2nd Letter to Kelly Crawford 4811-8360-1120 v.1.docx

**Appendix 17**

# Kelly Crawford
## Receiver
500 N. Akard, Suite 2700
Dallas, Texas 75201
(214) 706-4213
kelly.crawford@solidcounsel.com

February 25, 2021

*Via Electronic Mail and First Class Mail*

Arnold Spencer
Spencer & Associates
5949 Sherry Lane, Suite 900
Dallas, Texas 75225

RE:    *Commodity Futures Trading Commission, et al v. TMTE, Inc. a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher, Simon Batashvili, Defendants and Tower Equity, LLC, Relief Defendant;* Cause No. 3:20-CV-2910-L; pending in the United States District Court for the Northern District of Texas, Dallas Division

Dear Arnold:

This letter is directed to you as the current attorney of record for Defendant Simon Batashvili. During Mr. Batashvili's deposition taken on November 4, 2020, in which you represented Mr. Batashvili, Mr. Batashvili agreed to provide me with specific information. More than 3 months have elapsed since that deposition and Mr. Batashvili has failed to provide any of the information he promised.

As you are aware, pursuant to the Receivership Orders entered by the Court, Mr. Batashvili has a duty to provide information to me and to cooperate with me. His failure to provide information he agreed to provide to me under oath at his deposition violates the Receivership Orders. Prior to reporting Mr. Batashvili's violations of the Receivership Orders and his failure to provide the information he promised to provide at his deposition, I want to give Mr. Batashvili a final opportunity to provide such information.

Specifically, Mr. Batashvili testified he would provide me the following information:

1. The name of the attorney who is the trustee of the Capbap Trust and the trust documents that are with the attorney. *Page 86, lines 9-25; page 87, lines 1-2.*



Appendix 18

February 25, 2021
Page 2

2.  A list of all financial institutions in which he has been a signatory.  *Page 100, lines 11-22.*

3.  The names of the attorneys at BakerHostetler who represented him personally in the last three years.  *Page 128, lines 3-13.*

4.  Contact information for Stewart Paul, his accountant.  *Page 180, lines 4-12.*

5.  His total compensation for 2018.  *Page 180, lines 13-17.*


With respect to each of the foregoing items, I request that within one week Mr. Batashivili provide me the information he testified he would obtain.  Should have you have any questions regarding any of the foregoing, please let me know.

Sincerely,

*/s/Kelly M. Crawford*

Kelly M. Crawford
Receiver


cc:     Rich Foelber, CFTC (via email)
        JonMarc Buffa, CFTC (via email)
        Chrissi Cella, Office of Attorney General, State of Texas (via email)
        Peter Lewis, Firm

**Appendix 19**

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                  NORTHERN DISTRICT OF TEXAS

 3

 4                                    )
        COMMODITY FUTURES TRADING     )
 5      COMMISSION et al.,            )
                                      )
 6              Plaintiff,            )  Case No.:
                                      )  3:20-CV-2910-L
 7          vs.                       )
                                      )
 8      TMTE, INC. A/k/a METALS.COM,  )
        CHASE METALS, INC., CHASE     )
 9      METALS, LLC, BARRICK          )
        CAPITAL, INC., LUCAS THOMAS   )
10      ERB a/k/a LUCAS ASHER a/k/a   )
        LUKE ASHER, and SIMON         )
11      BATASHVILI                    )
                                      )
12              Defendants.           )
                                      )
13          and                       )
                                      )
14      Tower Equity, LLC,            )
                                      )
15      Relief Defendant              )
                                      )
16

17

18      REMOTE VIDEO-RECORDED DEPOSITION OF SIMON BATASHVILI

19                 Wednesday, November 4, 2020

20                      VOLUME I

21

22      Stenographically Reported by:
        Mechelle S. Gonzalez
23      CSR No. 13250
        Job No. 96641

24

25      PAGES 1 - 201
```

Trustpoint.One | Alderson.   www.trustpoint.one
www.aldersonreporting.com



EXHIBIT
tabbies
4

**Appendix 20**

**Page 78**

**Page 79**

8    Q. Do you own any interest in any jewelry?
9    A. Not that I'm aware of.
10   Q. My understanding, you purchased a watch in
11   London.
12       Do you still have that watch?
13   A. I ... yeah, I don't have it. I can't
14   remember. Can you refresh my memory what the watch
15   was?
16   Q. Your wife told me that you had a watch that
17   you purchased in London in the left bank.
18   A. Oh, yeah. It's a kind of tripped up in our
19   house. I don't know where, sometimes, things are.
20   So I didn't -- I don't have any possession of any
21   watch.
22   Q. So what your wife told me was -- was not
23   true? Is that what you're saying?
24   A. No, I'm not saying that. I'm saying I
25   don't have any possession of -- I don't have

**Page 80**

1    possession of the watch.
2    Q. Where is that watch?
3    A. What watch are you talking about? Because
4    I don't have a -- I just don't have a watch.
5    Q. Have you ever owned a watch in your
6    lifetime?
7    A. I've had a watch, sure.
8    Q. Yes?
9    A. Yes.
10   Q. Have you ever purchased a watch outside the
11   United States?
12   A. If I remember correctly, I think you are
13   right. There was a watch that was purchased in
14   London. I think that's where it was. It could have
15   been Paris or something like that.
16   Q. Where is that watch?
17   A. I don't have the watch. It should be
18   somewhere in the house if it was, or it's lost.
19   Q. How much did you purchase the watch for?
20   A. I think it was under 3,000, but I'm not
21   sure. I can't remember. Something like that.

**Page 81**

**Appendix 21**

| | |
|---|---|
| From: | Simon Batashvili |
| Sent: | Wednesday, April 29, 2020 5:01 PM CDT |
| To: | Gretchen Clark |
| CC: | Fainche MacCarthy |
| Subject: | Re: [EXTERNAL] Batashvili Insurance Policy |

Let's move forward w it.  Thank you for your help.

On Apr 29, 2020, at 2:36 PM, Gretchen Clark <gretchen_clark@icloud.com> wrote:

Savings is $3,868.90 annually w/ the multi-car discount on your policy and the cost difference between State Farm and AllState on the other two cars. (This assumes driving records don't change those numbers.)

On Apr 29, 2020, at 2:28 PM, Simon Batashvili <simon@towerequity.com> wrote:

DO you have a total savings amount by chance?

*Sent with Shift*

On Wed, Apr 29, 2020 at 2:26 PM Gretchen Clark <gretchen_clark@icloud.com> wrote:

Simon, it definitely is a savings. Im assuming. You want to switch? You guys are currently paying quite a bit more for AllState. My assumption is this can still go up based on driving records, but prob still better than AllState at $6061.99 annually. Your mom is $4k.

I'll ask Natalie what next steps are,
Sent from my iPhone

Begin forwarded message:

From: Natalie Ferrari <natalie.ferrari.tyta@statefarm.com>
Date: April 29, 2020 at 2:06:59 PM PDT
To: Gretchen Clark <gretchen_clark@icloud.com>
Cc: Fainche MacCarthy <fainche@fainche.com>, Simon Batashvili <simon@towerequity.com>
Subject: RE:  [EXTERNAL]  Batashvili Insurance Policy

HI Gretchen,

Thank you for the email and all the information. I have attached the auto quotes.



EXHIBIT
5

**Appendix 22**

If the Mercedes and Land Rover is added the 2019 Mercedes policy will qualify for the multicar discount. The current premium is $2,958.44. With the multicar discount the premium will decrease to $2,373.95.

For the Jewelry policy, the premiums provided per deductible are annual. The policy can be put on a monthly payment plan. For items over $5,000 I will need an appraisal no more than 5 years old to put the policy enforce. Coverage can be started today.

Please contact me if you have any questions.

Thank you,

Natalie Ferrari

Lic. # 0I25941

Fred Stahl, Agent

State Farm Insurance

18740 Oxnard St. #314

Tarzana, CA 91356

Office: 818-705-5846

Fax: 818-342-7614

Open Monday to Friday 9am to 5pm & Saturday by request
Review us on Yelp! www.FredStahl.net

Earn $10 for every Referral you send our way!

**It is my job to ask you about Life Insurance.**

**Please don't make it my job to tell your family you didn't have any.**

How much Life Insurance do you need? Click HERE to find out!

*Please do not email me any personal sensitive information Social Security Numbers, Drivers License, Debit/Credit Card or Bank Account Numbers.

# Appendix 23

*This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.*

**From:** Gretchen Clark [mailto:gretchen_clark@icloud.com]
**Sent:** Wednesday, April 29, 2020 1:19 PM
**To:** Natalie Ferrari <natalie.ferrari.tyta@statefarm.com>
**Cc:** Fainche MacCarthy <fainche@fainche.com>; Simon Batashvili <simon@towerequity.com>
**Subject:** Re: [EXTERNAL] Batashvili Insurance Policy


Hi Natalie,


Can you also give us a quote to move two cars over to State Farm. Details are below for coverage.


Simon's mom, Manana Batashvili, drives Mercedes


And, Fainche and Simon drive Range Rover.


Let me know if you need anything else.




Thank you.

Gretchen

Sent from my iPhone



On Apr 29, 2020, at 11:18 AM, Gretchen Clark <gretchen_clark@icloud.com> wrote:


Hi Natalie,

**Appendix 24**

We're interested in the below deductible preferences. Will you confirm the below costs are an annual charge, and can you bill us monthly and let us know what the monthly rate is? And, finally, how soon can this go into effect?

Thank you.

Gretchen

310.739.2268


Ring:

- Ladies 3-carat, F-color, VS-1 clarity Asscher Cut Solitaire - $59,575

$2000 deductible- $940


- Ladies 2-stone 18K white gold ring setting for Asscher cut diamond; .59 carats, F-color, Clarity VS - $2,300

No deductible- $60


Earrings:

- Round Brilliant Diamond, 3.02-carat, Clarity SI-2, Color H - $59,115

$2000 deductible- $933


- Round Brilliant Diamond, 3.01-carat, Clarity SI2, Color G - $59,575

$2000 deductible- $940


Round Brilliant diamond earrings, 3.05CTTW, Color H-I, Clarity I1-I2 - $13,000

$1000 deductible- $105


Ladies Cartier Love Bracelet, yellow gold, 4 diamonds, 16 cm - $10,100

$500 deductible- $104


Ladies Cartier Love Bracelet, yellow gold, 16 cm - $6,300

$500 deductible- $60

**Appendix 25**

Ladies Cartier Watch, New Panthers MM, Yellow Gold Pave Bezel Quart - $27,100

$1000 deductible- $233


Mens Rolex Daytona 116528-GLDD Champagne Diamond 18k Yellow Gold - $36,600

$1000 deductible- $374


Men's Rolex Cosmograph Daytona, Oyster, 40mm, Yellow Gold - $28,500

$1000 deductible- $249


Ladies Rolex Day-Date 40, Oyster, 40mm, Yellow Gold - $36,500

$1000 deductible- $373


Ladies 18K White Gold Emerald Step Cut Eternity Ring, 18 Emerald step cut diamonds, 8.56 carat total, Color G, VS1 - $42,930

$2000 deductible- $415


Sent from my iPhone



On Apr 28, 2020, at 11:44 AM, Natalie Ferrari <natalie.ferrari.tyta@statefarm.com> wrote:


Thank you for providing the information. I have listed the quotes per item below. Each quote includes 4 deductible options. If you would like to see higher deductible options please let me know. Also note that you can choose the deductible per item and the minimum premium for this policy is $60 annually.


Please contact me if you have any questions.


Thank you,


Natalie Ferrari

Lic. # 0125941

Fred Stahl, Agent


**Appendix 26**

State Farm Insurance

18740 Oxnard St. #314

Tarzana, CA 91356

Office: 818-705-5846

Fax: 818-342-7614

Open Monday to Friday 9am to 5pm & Saturday by request
**Review us on Yelp!  www.FredStahl.net**

**Earn $10 for every Referral you send our way!**


**It is my job to ask you about Life Insurance.**

**Please don't make it my job to tell your family you didn't have any.**


How much Life Insurance do you need? Click **HERE** to find out!



'Please do not email me any personal sensitive information Social Security Numbers, Drivers License, Debit/Credit Card or Bank Account Numbers.


*This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.*


**From:** Gretchen Clark [mailto:gretchen_clark@icloud.com]
**Sent:** Monday, April 27, 2020 3:38 PM
**To:** Natalie Ferrari <natalie.ferrari.tyta@statefarm.com>
**Cc:** Fainche MacCarthy <fainche@fainche.com>; Simon Batashvili <simon@towerequity.com>
**Subject:** Re: [EXTERNAL] Batashvili Insurance Policy


Ring:

- Ladies 3-carat, F-color, VS-1 clarity Asscher Cut Solitaire - $59,575

No deductible- $1,487

$500 deductible- $1,237


**Appendix 27**

$1000 deductible- $1,047

$2000 deductible- $940

- Ladies 2-stone 18K white gold ring setting for Asscher cut diamond; .59 carats, F-color, Clarity VS - $2,300

No deductible- $60

$500 deductible- $60

$1000 deductible- $60

$2000 deductible- $60

Earrings:

- Round Brilliant Diamond, 3.02-carat, Clarity SI-2, Color H - $59,115

No deductible- $1,476

$500 deductible- $1,229

$1000 deductible- $1,040

$2000 deductible- $933

- Round Brilliant Diamond, 3.01-carat, Clarity SI2, Color G - $59,575

No deductible- $1,487

$500 deductible- $1,237

$1000 deductible- $1,047

$2000 deductible- $940

Round Brilliant diamond earrings, 3.05CTTW, Color H-I, Clarity I1-I2 - $13,000

No deductible- $167

$500 deductible- $132

$1000 deductible- $105

$2000 deductible- $90

Ladies Cartier Love Bracelet, yellow gold, 4 diamonds, 16 cm - $10,100

No deductible- $131

**Appendix 28**

$500 deductible- $104

$1000 deductible- $83

$2000 deductible- $71

Ladies Cartier Love Bracelet, yellow gold, 16 cm - $6,300

No deductible- $86

$500 deductible- $60

$1000 deductible- $60

$2000 deductible- $60

Ladies Cartier Watch, New Panthers MM, Yellow Gold Pave Bezel Quart - $27,100

No deductible- $370

$500 deductible- $293

$1000 deductible- $233

$2000 deductible- $199

Mens Rolex Daytona 116528-GLDD Champagne Diamond 18k Yellow Gold - $36,600

No deductible- $593

$500 deductible- $469

$1000 deductible- $374

$2000 deductible- $320

Men's Rolex Cosmograph Daytona, Oyster, 40mm, Yellow Gold - $28,500

No deductible- $396

$500 deductible- $313

$1000 deductible- $249

$2000 deductible- $214

Ladies Rolex Day-Date 40, Oyster, 40mm, Yellow Gold - $36,500

No deductible- $592

# Appendix 29

$500 deductible- $467

$1000 deductible- $373

$2000 deductible- $320

Ladies 18K White Gold Emerald Step Cut Eternity Ring, 18 Emerald step cut diamonds, 8.56 carat total, Color G, VS1 - $42,930

No deductible- $768

$500 deductible- $607

$1000 deductible- $485

$2000 deductible- $415

Thank you,

Gretchen

Sent from my iPad

On Apr 27, 2020, at 2:49 PM, Natalie Ferrari <natalie.ferrari.tyta@statefarm.com> wrote:

Hi Gretchen,

Thank you for the email. I spoke with Simon last month and started a renters policy on Conway Ave. The personal property coverage limit is $700,000 and personal liability coverage limit is $500,000. The Jewelry coverage maximum for the renters policy is $1,500. To provide a quote for the jewelry policy I'll need a breakdown of the cost per item and will need to know if any items are a pair or set.

Please contact me if you have any questions.

Thank you,

Natalie Ferrari

Lic. # 0125941

Fred Stahl, Agent

**Appendix 30**

State Farm Insurance

18740 Oxnard St. #314

Tarzana, CA 91356

Office: 818-705-5846

Fax: 818-342-7614

Open Monday to Friday 9am to 5pm & Saturday by request
**Review us on Yelp!  www.FredStahl.net**

**Earn $10 for every Referral you send our way!**


**It is my job to ask you about Life Insurance.**

**Please don't make it my job to tell your family you didn't have any.**


How much Life Insurance do you need? Click **HERE** to find out!


*Please do not email me any personal sensitive information Social Security Numbers, Drivers License, Debit/Credit Card or Bank Account Numbers.*


*This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.*


**From:** Gretchen Clark [mailto:gretchen_clark@icloud.com]
**Sent:** Monday, April 27, 2020 1:58 PM
**To:** Natalie Ferrari <natalie.ferrari.tyta@statefarm.com>
**Cc:** Fainche MacCarthy <fainche@fainche.com>; Simon Batashvili <simon@towerequity.com>
**Subject:** [EXTERNAL] Batashvili Insurance Policy


Hi Natalie,

I am reaching out on behalf of Fainche and Simon Batashvili. I'd like to get an estimate to add some personal items to their insurance. I realize they don't have renters insurance with you so maybe you want to quote that as well? Below please find the details of what to estimate.

**Appendix 31**

224 Conway Ave
Los Angeles, CA 90024

<image001.jpg>

Jewelry value is approx $300k

Thanks.
Gretchen
310.739.2268

Sent from my iPhone

--
Simon Batashvili
*Venture Capitalist*
Regd506c, **EQUITY**
p:   877-505-7366
f:   888-546-7568
a:   8383 Wilshire Blvd,
     Beverly Hills, CA 90211
w:   TowerEquity.Com
     Simon@TowerEquity.Com

**Appendix 32**

| From: | Gretchen Clark |
|---|---|
| Sent: | Thursday, May 14, 2020 6:25 PM CDT |
| To: | Natalie Ferrari; Simon Batashvili; Fainche MacCarthy |
| Subject: | Re: State Farm- policy follow up |

Hi Natalie —

Please see below:

Nothing is kept in a Bank Vault.
Yes, when these items aren't being worn they are kept in a safe at home.
Yes, the round brilliant diamonds are for a pair of earrings.
Simon is a venture capitalist and Fainche is an set designer

See below for all details and proof of purchase, or authenticity for everything.

When you have a chance to review, would you please confirm they're all insured (Auto, Renters, Jewelry) and send relevant proof?

Thank you!
Gretchen

**Ring w/ Proof of Payment Below**
 - Ladies 3-carat, F-color, VS-1 clarity Asscher Cut Solitaire - $59,575
$2000 deductible- $940

 - Ladies 2-stone 18K white gold ring setting for Asscher cut diamond; .59 carats,
F-color, Clarity VS - $2,300
No deductible- $60



**Appendix 33**

**Earrings:**
- Round Brilliant Diamond, 3.02-carat, Clarity SI-2, Color H - $59,115
$2000 deductible- $933
- Round Brilliant Diamond, 3.01-carat, Clarity SI2, Color G - $59,575
$2000 deductible- $940



Round Brilliant diamond earrings, 3.05CTTW, Color H-I, Clarity I1-I2 - $13,000
$1000 deductible- $105



Ladies Cartier Love Bracelet, yellow gold, 4 diamonds, 16 cm - $10,100
$500 deductible- $104

**Appendix 34**



Ladies Cartier Love Bracelet, yellow gold, 16 cm - $6,300

DO NOT INSURE

Ladies Cartier Watch, New Panthier MM, Yellow Gold Pave Bezel Quart -
$27,100
$1000 deductible- $233



Mens Rolex Daytona 116528-GLDD Champagne Diamond 18k Yellow Gold -
$36,600
$1000 deductible- $374

**Appendix 35**



Men's Rolex Cosmograph Daytona, Oyster, 40mm, Yellow Gold – $28,500
$1000 deductible- $249

**Appendix 36**



Ladies Rolex Day-Date 40, Oyster, 40mm, Yellow Gold - $36,500
$1000 deductible- $373



**Appendix 37**

Ladies 18K White Gold Emerald Step Cut Eternity Ring. 18 Emerald step cut diamonds. 8.56 carat total, Color G, VS1 - $42,930
$2000 deductible- $415



Can we add this as well?
Ladies 18k yellow gold Cartier Panthere De Cartier Cocktail Ring w/ 1.15 carats of round brilliant diamonds, pear-shaped emeralds and triangular onyx - $20,700
Let's do $1k deductible



**Appendix 38**



Sent from my iPad

HI Gretchen,

I hope this email finds you well. I'm writing today to follow up on the jewelry and umbrella policies. I have listed a few questions and a list of appraisals (or bill of sale) needed. Please contact me if you have any questions.

- Are any of the jewelry items kept in a bank vault? If so, which items.
- Is the jewelry kept in a safe when they are not worn?
- Reviewing the appraisals I'd like to confirm, are the round brilliant diamonds a pair for earrings? One is a 3.02 carat (coverage amount $59,575) and the other is 3.01 carat (coverage amount $59,115).
- What is the profession or occupation of each household member?

Appraisal or bill of sale for the following items:
- Ladies Cartier Love Bracelet, yellow gold, 4 diamonds, 16 cm - $10,100
- Ladies Cartier Love Bracelet, yellow gold, 16 cm - $6,300
- Ladies Cartier Watch, New Panthers MM, Yellow Gold Pave Bezel Quart - $27,100
- Men's Rolex Daytona 116528-GLDD Champagne Diamond 18k Yellow Gold - $36,600
- Men's Rolex Cosmography Daytona, Oyster, 40mm, Yellow Gold - $28,500
- Ladies Rolex Day-Date 40, Oyster, 40mm, Yellow Gold - $36,500

Thank you,

**Natalie Ferrari**
Lic. # 0125941
Fred Stahl, Agent
State Farm Insurance
18740 Oxnard St. #314
Tarzana, CA 91356
Office: 818-705-5846
Fax: 818-342-7614

## Appendix 39

Open Monday to Friday 9am to 5pm & Saturday by request
<u>Review us on Yelp!</u>  <u>www.FredStahl.net</u>
Earn $10 for every Referral you send our way!

**It is my job to ask you about Life Insurance.**
**Please don't make it my job to tell your family you didn't have any.**

How much Life Insurance do you need? Click <u>HERE</u> to find out!

*Please do not email me any personal sensitive information Social Security Numbers, Drivers License, Debit/Credit Card or Bank Account Numbers.
*This message may contain confidential and/or privileged information. If you are not the addressee or authorized to receive this for the addressee, you must not use, copy, disclose, or take any action based on this message or any information herein. If you have received this message in error, please advise the sender immediately by reply e-mail and delete this message. Thank you for your cooperation.*

**Appendix 40**

| From: | Gretchen Clark |
|---|---|
| Sent: | Friday, May 8, 2020 1:49 PM CDT |
| To: | fainche@fainche.com |
| CC: | Simon Batashvili |
| Subject: | Re: Jewelry Insurance |

Hi Simon,

Any progress with the receipts for the below items?

> - Ladies Cartier Watch, New Panthers MM, Yellow Gold Pave Bezel Quart - $27,100
> - Mens Rolex Daytona 116528-GLDD Champagne Diamond 18k Yellow Gold - $36,600
> - Men's Rolex Cosmograph Daytona, Oyster, 40mm, Yellow Gold - $28,500
> - Ladies Rolex Day-Date 40, Oyster, 40mm, Yellow Gold - $36,500

Thanks,
Gretchen

Sent from my iPad

On May 5, 2020, at 12:12 PM, "fainche@fainche.com" <fainche@fainche.com> wrote:

> Can you send receipts for the below - maybe you missed this before.
>
>
> Begin forwarded message:
>
> **From:** Gretchen Clark <gretchen_clark@icloud.com>
> **Subject: Jewelry Insurance**
> **Date:** 29 April 2020 at 4:25:42 pm GMT-7
> **To:** Fainche MacCarthy <fainche@fainche.com>, Simon Batashvili <simon@towerequity.com>
>
> Hi there,
>
> Do you guys have the appraisal paperwork for these items?
>
> > - Ladies Cartier Love Bracelet, yellow gold, 4 diamonds, 16 cm - $10,100
> > - Ladies Cartier Love Bracelet, yellow gold, 16 cm - $6,300
> > - Ladies Cartier Watch, New Panthers MM, Yellow Gold Pave Bezel Quart - $27,100
> > - Mens Rolex Daytona 116528-GLDD Champagne Diamond 18k Yellow Gold - $36,600
> > - Men's Rolex Cosmograph Daytona, Oyster, 40mm, Yellow Gold - $28,500
> > - Ladies Rolex Day-Date 40, Oyster, 40mm, Yellow Gold - $36,500

**Appendix 41**

Thank you,
Gretchen

**Appendix 42**

```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 NORTHERN DISTRICT OF TEXAS

 3

 4                                    )
     COMMODITY FUTURES TRADING        )
 5   COMMISSION et al,                )
                                      )
 6          Plaintiffs,               )  Case No.:
                                      )  3:20-CV-2910-L
 7       vs.                          )
                                      )
 8   TMTE, INC. A/k/a METALS.COM,     )
     CHASE METALS, INC., CHASE        )
 9   METALS, LLC, BARRICK             )
     CAPITAL, INC., LUCAS THOMAS      )
10   ERB a/k/a LUCAS ASHER a/k/a      )
     LUKE ASHER, and SIMON            )
11   BATASHVILI,                      )
                                      )
12          Defendants.               )
                                      )
13       and                          )
                                      )
14   TOWER EQUITY, LLC,               )
                                      )
15   Relief Defendant                 )
                                      )
16

17

18

19          Remote video-recorded deposition of LUCAS

20   ASHER, VOLUME I taken on behalf of Plaintiffs, beginning

21   at 11:04 a.m. and ending at 7:42 p.m. on Thursday,

22   November 5, 2020, before Mechelle S. Gonzalez, Certified

23   Shorthand Reporter No. 13250.

24

25
```



EXHIBIT
6

**Appendix 43**

```
1          Q.  Have you ever owned any interest in any

2     other offshore entity or offshore trust other than

3     Prometheus Laboratories that we discussed here

4     today?

5          A.  No.

6          Q.  Have you ever transferred any assets

7     offshore other than the 6,000-or-so dollars that you

8     transferred to Prometheus?

9          A.  The answer to your question is no, and just

10    in good faith, I -- I want to make the record clear

11    that I don't recall it being exactly 6,000.  It was

12    somewhere around that amount, and it was certainly

13    under -- under 10,000 or under 9,000 or under 8,000.

14    So it's somewhere in that range, but not

15    specifically the 6,000 number.

16         Q.  I understand.

17              So other -- is it safe to say that you have

18    never transferred any moneys offshore other than the

19    sum of $2,000 or less to the Prometheus entities we

20    talked about here today?

21         A.  What was the sum you said?

22         Q.  Under $10,000.

23         A.  That's correct.

24         Q.  Have you ever -- ever owned any assets as

25    defined under this order located outside the
```

**Appendix 44**

## AFFIDAVIT OF SOLVENCY

The undersigned, LUCAS ASHER, authorised signatory on behalf of TOWER EQUITY, LLC., who, being first duly sworn upon oath, deposes and states as follows:

1. That, to the best of my knowledge and belief, the information provided, and any attachments hereto, are true and correct.

2. That TOWER EQUITY, LLC. is a settlor of the KOTEL INTERNATIONAL TRUST, and contemplates making transfers of property thereto in addition to its initial nominal contribution thereto.

3. That there are no pending or threatened claims or proceedings that I reasonably anticipate may result in a judgment against TOWER EQUITY, LLC., and it is not a named defendant in any lawsuit or involved in any administrative proceedings as of this date, or a judgment debtor (other than as disclosed in any attached schedule).

4. That TOWER EQUITY, LLC. does not anticipate filing for relief under the provisions of the applicable bankruptcy or insolvency laws, nor is it involved in any situation that I reasonably anticipate would cause it to file for relief under the applicable bankruptcy or insolvency laws in the future.

5. That following any transfer of its property to the trust structure, TOWER EQUITY, LLC. will be solvent and able to pay its reasonably anticipated debts (including any claims or lawsuits against it) as they come due from the balance of its property after such transfer.

6. That TOWER EQUITY, LLC. has full right, title, and authority to transfer the assets to the trust.

7. That I have read and understood the annexed description of unlawful activities, and confirm and represent that none of the assets which TOWER EQUITY, LLC. may transfer to the trust was derived from any of the activities described therein.

8. That TOWER EQUITY, LLC. is not to my knowledge, nor do I reasonably expect it to be, under investigation by any federal or state agency, or in violation of any statutes administered by, or empowering, the Internal Revenue Service, the Federal Trade Commission, the Securities and Exchange Commission, the United States Postal Service, the Drug Enforcement Agency, or the Federal Bureau of Investigation.

1



EXHIBIT
7

**Appendix 45**

9.    That TOWER EQUITY, LLC. is not engaged in or about to become engaged in a business or transaction for which remaining assets will be unreasonable in relation to the business or transaction.

10.   That TOWER EQUITY, LLC. does not intend to incur or reasonably believe that it will incur debts beyond its ability to pay as they become due, and TOWER EQUITY, LLC. does not have the actual intent to hinder, delay, or defraud any creditor.

FURTHER AFFIANT SAY NOT.

TOWER EQUITY, LLC.

BY: _____
    LUCAS ASHER, Authorised Signatory

## NOTARY ACKNOWLEDGEMENT:

### ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Los Angeles_ )

On _03/02/2020_ before me, _Dorit Moradzadeh, Notary Public_
                                              (insert name and title of the officer)

personally appeared _Lucas Asher_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _Dorit Moradzadeh_    (Seal)

DORIT MORADZADEH
COMM. # 2262420
NOTARY PUBLIC ·CALIFORNIA
LOS ANGELES COUNTY
Comm. Exp. NOV. 9, 2022

2

**Appendix 46**

| From: | Kotel Holdings |
|---|---|
| Sent: | Monday, July 27, 2020 10:56 AM CDT |
| To: | Dennis Belichenko |
| CC: | Kotel Holdings |
| Subject: | Fwd: Payment failure: G Suite Business for kotelholdings.com |

---------- Forwarded message ---------
From: **The G Suite Team** <gsuite-noreply@google.com>
Date: Mon, Jul 27, 2020 at 12:23 AM
Subject: Payment failure: G Suite Business for kotelholdings.com
To: <Asher@kotelholdings.com>

# G Suite

**Don't lose access to G Suite Business**

The last payment for your G Suite Business subscription for kotelholdings.com failed. This indicates that there's something wrong with your payment method.

To prevent the suspension of all services for all users on August 3, 2020:

- Contact your bank or credit card company to resolve the issue with your payment method.
- Sign in to your Google Admin console and click **Billing** to retry or update your payment method and pay your outstanding balance. If you can't resolve the issue, you'll need to add a new payment method instead.

See complete instructions for fixing payment and billing issues or contact our support team for additional help.

Sign in

Sincerely,

The G Suite Team



EXHIBIT

*8*

Appendix 47

# Google Cloud

© 2020 Google LLC 1600 Amphitheatre Parkway, Mountain View, CA 94043

*You're receiving this mandatory email service announcement to update you about important changes to your Google Cloud product or account.*

Lucas Asher
**KOTEL Int, Ltd.**

e: P O Box 11, ANZ House Avarua, Rarotonga Cook Islands
w KotelHoldings.com   e: Asher@KotelHoldings.com

*CONFIDENTIAL COMMUNICATION This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom it is addressed. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail and any file attachments is strictly prohibited. If you have received this e-mail in error, please immediately notify us by reply e-mail to the sender. You must destroy the original transmission and its contents. You will be reimbursed for reasonable costs incurred in notifying us. Information contained within this e-mail should not be construed as legal, accounting, tax or investment advice.*

**Appendix 48**

1        Q.   Okay.   What phone numbers have you used

2    since 2017?

3        A.   I don't know.

4        Q.   What was the cell phone number on the cell

5    phone that you lost recently?

6        A.   I don't recall.

7        Q.   What's -- what's your current cell phone

8    number?

9        A.   I don't know.

10       Q.   What e-mail addresses have you used since

11   September 27th -- I mean, since September of 2017

12   besides the Tower Equity one and then the one that

13   your attorneys objected to?   Other than those, what

14   is your -- what e-mail addresses have you used since

15   September of 2017?

16       A.   I believe I've used corporate@metals.com.

17   I believe I've used legal@metals.com.   I believe

18   I've used legal@barrickcapital.com.   I believe I've

19   used relations@towerequity.com.   I believe I've used

20   lucas@lucasasher.com.   I believe I've used

21   lucas@revo.fm.   I believe I've used

22   asher@bestnew.com, and I believe I've used

23   corporate@texasmetals.com.

24       Q.   Any others?

25       A.   Possibly, but I don't recall at the time

EXHIBIT

9

**Appendix 49**

Lucas Asher Vol. I

11/5/2020
Page 155

```
 1          A.   I don't remember right now.

 2

 3

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

**Appendix 50**

Page 335

1

2          Q.  And what have you done since entry of the

3     consent order on October 14th of 2020 to seek gainful

4     employment to cover your reasonable and necessary living

5     expenses?

6          A.  Could you please define "what have you done"?

7          Q.  What action have you taken to try to seek

8     gainful employment?

9          A.  We're in a pandemic right now.  And I haven't

10    moved forward with that due to the pandemic situation.

11         Q.  Have you made any attempts to gain employment

12    where you can work remotely?

13         A.  I have not yet.

14         Q.  And why is that?

15         A.  In all frankness, my life was disrupted.  I

16    spent well over a decade investing as a venture

17    capitalist.  And I've been thinking a lot about what I

18    wanted to do next with my life, and I don't have clarity

19    yet on the direction I want to go.

20

21

22

23

24

25

EXHIBIT
10

**Appendix 51**

```
1

2

3

4

5

6

7

8

9

10

11

12

13

14

15       Q.  Do you know if Metals.com, known as TMTE,

16   Chase Metals, or Chase Metals LLC ever sent funds to

17   Tower Equity?

18       A.  Could you repeat that again a little

19   slower?  It was a little fast for me.

20       Q.  Sure.  Are you aware if Metals.com, known

21   as TMTE, Chase Metals, or Chase Metals LLC ever sent

22   funds to Tower Equity?

23       A.  I believe it did.

24       Q.  And what were those transfers?

25       A.  I believe they were corporate either
```

EXHIBIT

11

Appendix 52

```
 1      dividends or however our attorney structured it,

 2      where when a company makes a profit, I believe it

 3      was lawfully earned profits, is my understanding.

 4           Q.  And you said they were -- you would

 5      characterize them as dividends; is that correct?

 6           A.  I -- I'm not a securities attorney, and

 7      I -- I don't characterize them as anything.  I

 8      believe they were, to the best of my knowledge,

 9      lawfully earned profits.

10           Q.  And what amount of funds do you know were

11      transferred as profits from Metals.com to Tower

12      Equity?

13           A.  I don't know.

14           Q.  What would you need to determine that?

15           A.  I would need to be on the bank account,

16      because I don't believe I've ever been on the bank

17      account.

18           Q.  Who would know that number?

19           A.  Probably the accountants who did the books.

20           Q.  For Barrick, were funds ever transferred

21      from Barrick to Tower Equity?

22           A.  I don't know.  I wasn't on either of those

23      bank accounts.

24

25
```

██████ Batashvili
**Wells Fargo Account x 3782**

| Row Labels | 2017 | | 2018 | | 2019 | | 2020 | | Grand Total | |
|---|---|---|---|---|---|---|---|---|---|---|
| Barrick Capital x 9973 | | | | | | | $ | 5,000 | $ | 5,000 |
| First American Estate x 9138 | | | | | $ | 10,000 | | | $ | 10,000 |
| Instribution x 4082 | $ | 20,000 | $ | 2,500 | | | | | $ | 22,500 |
| Interest Payment | $ | 1 | $ | 3 | $ | 803 | $ | 4 | $ | 812 |
| Simon Batashvili x 2591 | | | $ | (17,500) | $ | 9,000 | $ | 20,000 | $ | 11,500 |
| Tax Withholding | $ | (0) | $ | (1) | $ | (1) | $ | (1) | $ | (3) |
| Tower Estates x 4509 | | | | | | | $ | 1,000 | $ | 1,000 |
| **Grand Total** | $ | **20,001** | $ | **(14,998)** | $ | **19,803** | $ | **26,003** | $ | **50,809** |



EXHIBIT
12

**Appendix 54**

**Kelly Crawford**

| Subject: | FW: CFTC, et al., v. TMTE, Inc, et al.,/ Case No. 3:20-cv-02910-L pending in the United States District Court for the Northern District of Texas ( Dallas Division) |
|---|---|

**Kelly Crawford** PARTNER
**Scheef & Stone, LLP**
www.solidcounsel.com | 214.706.4213
Office: 214.706.4200 | Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, TX 75201



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**From:** Besen, Gene <gbesen@bradley.com>
**Sent:** Friday, April 16, 2021 4:33 PM
**To:** Peter Lewis <Peter.Lewis@solidcounsel.com>
**Subject:** RE: CFTC, et al., v. TMTE, Inc, et al.,/ Case No. 3:20-cv-02910-L pending in the United States District Court for the Northern District of Texas ( Dallas Division)

CAUTION: EXTERNAL EMAIL

Peter,

I'm not in a position to opine on what our fees may or may not be. I'm simply not in a position to indicate any number whatsoever at this time. I thought I was clear during our call that I'm not committing to any number for our legal fees, and I don't think any lawyer could accurately do so.

As for untainted assets, at a minimum, we would argue that future earnings from unrelated businesses activities not connected to commodities or securities would constitute untainted assets that should be available for our clients to pay fees. I believe that is plainly argued in our papers. We may take the position other assets in the receivership estate are not tainted in the future. It would be impossible to do so at this time without our clients documents and records.

1



**Appendix 55**

-grb

**Gene Besen**
Partner | Bradley
gbesen@bradley.com
d: 214.257.9758

From: Peter Lewis <Peter.Lewis@solidcounsel.com>
Sent: Friday, April 16, 2021 4:24 PM
To: Besen, Gene <gbesen@bradley.com>
Subject: RE: CFTC, et al., v. TMTE, Inc, et al.,/ Case No. 3:20-cv-02910-L pending in the United States District Court for the Northern District of Texas ( Dallas Division)

[External Email]

---

Greetings Gene:

I hope you are well. I write to follow up my email to you below as well as our phone conversation earlier this week. More specifically, I write to remind you of the email you indicated you were going to send me to respond to the email below and/or to memorialize your comments and thoughts expressed to me during our call. In this regard, you may recall asking me what the Receiver's position would be regarding an agreement to allow Defendants Asher and Batashvili to use income from "untainted assets that, ostensibly, had no relationship to the receivership claims or assets, to help fund legal fees for your firm and proposed co- counsel. Needless to say, the Receiver needs to know what assets you/your team view/views as "untainted," as well as what your legal team's anticipated monthly burn rate is anticipated to be, in order to assess the viability of your settlement proposal. As I recall, you estimated that the legal fees burn rate alone could be higher, lower or equal to $200,000 to $250,000 per month. In any event, I await your responsive email. Many thanks!

Best regards,

Peter

**Peter Lewis** PARTNER
**Scheef & Stone, LLP**
www.solidcounsel.com | **214.706.4241**
Office: 214.706.4200 | Fax: 214.706.4242 | Cell: 214.215.0639
500 North Akard Street, Suite 2700, Dallas, Texas 75201

   

2

**Appendix 56**

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

**From:** Peter Lewis
**Sent:** Tuesday, April 06, 2021 11:49 AM
**To:** gbesen@bradley.com
**Subject:** CFTC, et al., v. TMTE, Inc, et al.,/ Case No. 3:20-cv-02910-L pending in the United States District Court for the Northern District of Texas ( Dallas Division)

Mr. Besen:

As you may know, I represent Kelly Crawford as the Receiver in the above referenced matter and am in receipt of the Emergency Motion to Modify Preliminary Injunction ("*Motion*") and Notice of Limited Appearance you and your colleagues recently filed in the above referenced matter. In the Motion, you state that "Asher and Batashvili ...seek modification of the agreed injunction to allow them access to their existing or future untainted assets for the purpose of paying attorneys' fees in this matter." See *Motion*. p.3. Would you please identify for me the "existing ...untainted assets" you are referring to? Also, does your motion  propose or contemplate having Asher and Batashvili work to  provide income to pay the attorney's fees your motion appears to anticipate. If so, can you provide details regarding where they would propose to work, how much they would propose to get paid and how much of what they would get paid would be directed to attorney's fees? Thanks!

Best, Peter

**Peter Lewis** PARTNER
**Scheef & Stone, LLP**
www.solidcounsel.com | **214.706.4241**
Office: 214.706.4200 | Fax: 214.706.4242 | Cell: 214.215.0639
500 North Akard Street, Suite 2700, Dallas, Texas 75201



3

**Appendix 57**

**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.

**Note:** Please be advised that Scheef & Stone, LLP reserves the right to record telephone conversations involving its employees or attorneys. If you do not wish to be recorded, please limit your communications with Scheef & Stone, LLP to regular mail, faxes, and/or electronic mail.

Confidentiality Notice: This e-mail is from a law firm and may be protected by the attorney-client or work product privileges. If you have received this message in error, please notify the sender by replying to this e-mail and then delete it from your computer.

**Appendix 58**