# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **U.S. COMMODITY FUTURES TRADING COMMISSION, e*t al.* | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:20-cv-2910-L** |
| | § | |
| **TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI,** | § § § § § | |
| | § | |
| **Defendants,** | § | |
| | § | |
| **TOWER EQUITY, LLC,** | § | |
| | § | |
| **Relief Defendant.** | § | |

## RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD NON-PARTY BANK OF AMERICA, N.A. IN CIVIL CONTEMPT AND BRIEF IN SUPPORT

Cortney C. Thomas
 Texas Bar No. 24075153
 cort@brownfoxlaw.com
BROWN FOX PLLC
8111 Preston Road, Suite 300
Dallas, TX  75225
Tel. 214.327.5000
Fax. 214.327.5001

*Attorney for Receiver Kelly Crawford*

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................ 1

II. FACTUAL BACKGROUND ......................................................................................... 2

      A.      The Statutory Restraining Order ...........................................................................2

      B.      Bank of America's Initial Failure to Freeze All Accounts. ...................................3

      C.      Bank of America's Continued Failure to Produce All Account Documents
              until February 3, 2021, or January 19, 2021 at the Earliest. ...................................6

      D.      The Receiver's Prior Demand for Payment. ...........................................................8

III. ARGUMENT & AUTHORITIES ................................................................................. 8

      A.      Legal Standard .......................................................................................................8

      B.      Bank of America Should Bear the Financial Responsibility of Its Own
              Failure to Comply with the SRO, not the Defrauded Investors. .............................9

      C.      The Fees of the Receiver and His Attorneys are Reasonable and
              Necessary. ............................................................................................................10

IV. CONCLUSION............................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
  228 F.3d 574 (5th Cir. 2000) ............................................................................................... 9

*Chao v. Transocean Offshore, Inc.*,
  276 F.3d 725 (5th Cir. 2002) ............................................................................................... 9

*Cook v. Ochsner Found. Hosp.*,
  559 F.2d 270 (5th Cir. 1977) ............................................................................................... 8

*In re Bradley*,
  588 F.3d 254 (5th Cir. 2009) ............................................................................................... 8

*Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*,
  609 F.2d 165 (5th Cir. 1980) ............................................................................................... 9

*SEC v. First Financial Group of Texas, Inc.*,
  659 F2d 660 (5th Cir. 1981) ............................................................................................... 8

Kelly M. Crawford, as the court-appointed Receiver in the above-described matter, respectfully requests that the Court schedule a hearing for non-party Bank of America, N.A. ("BOA") to appear before this Court and Show Cause why it should not be held in civil contempt for BOA's failure to comply with the clear orders of this Court.  In support thereof, the Receiver would respectfully show the Court as follows:

## I. <u>INTRODUCTION</u>

On September 22, 2020, this Court entered an Order Granting Plaintiff's Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (the "SRO") [Dkt. 16].  The SRO was extended by an Order entered by the Court on October 5, 2020 [Dkt. 148].  Consent Orders of Preliminary Injunction, which incorporate the terms of the SRO, were entered on October 14, 2020 [Dkt. 164 & 165].  Pursuant to the SRO, this Court appointed Kelly M. Crawford as Receiver of the assets of the Defendants and Relief Defendant and vested the Receiver with certain authority to recover assets and investigate claims.

During the course of the Receiver's investigation, he discovered that Defendant Lucas Asher transferred Receivership Assets *after* September 22 and that BOA, the depository institution holding the funds, allowed these transfers in violation of the SRO.  After repeated requests and months of wrangling with BOA and the Defendants, the Receiver and his attorneys were finally able to (1) trace and recover the funds – funds that BOA should have frozen and never should have been transferred in the first place – and (2) obtain bank statements that confirmed the impermissible transfers and provided much-needed information for the Receiver's ongoing forensic investigation.  To obtain this information and recover the funds, the Receiver incurred substantial attorneys' fees and expenses, which currently total $48,270.88; costs that

ultimately will be born by the defrauded investors unless the Court finds BOA responsible for the expenditures.

In short, but–for BOA's failure to comply with the SRO in promptly freezing the Receivership Assets and BOA's subsequent torpidity in responding to the Receiver's requests for records, the Receiver and his attorneys would not have incurred any of the costs sought herein. While the Receiver is appreciative of BOA's eventual (albeit delayed) assistance through outside counsel, the bank nevertheless should bear the burden of its failure to comply with the SRO, not the investors.

## II. FACTUAL BACKGROUND

### A.     The Statutory Restraining Order

As mentioned above, the Court entered the SRO on September 22, 2020, extended the SRO on October 5, 2020, and then entered Preliminary Injunctions incorporating the SRO on October 14, 2020.  The purpose of the SRO is to, among other things, "prevent the dissipation of any assets" of the Receivership Defendants.  SRO at 4.  "Assets" include "any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: . . . accounts (including, but not limited to, bank accounts and accounts at other financial institutions) . . . ." SRO at ¶ 15.

Specifically with regard to financial institutions, the Statutory Restraining Order mandates as follows:

> To ensure the effectiveness of the asset freeze and pending further Order of this Court, *any financial or brokerage institution*, business entity, or person that receives actual notice of this Order and holds, controls, or maintains custody of any assets of [the Receivership Defendants] *shall not*, in active concert or participation with [the Receivership Defendants], *permit [the Receivership Defendants] or other persons to withdraw, transfer,*

> *remove, dissipate, or otherwise dispose* of any of Defendants' or
> Relief Defendant's assets, except as directed by further order of the
> Court . . . .

SRO at ¶ 26 (emphasis added).  Moreover, the Statutory Restraining Order requires that *"[w]ithin ten business days* of a request by the Temporary Receiver," any financial institution must "provide the Temporary Receiver with copies of *all records* pertaining to any account or asset owned, controlled, managed, or held by, on behalf of, or for the benefit of [the Receivership Defendants], either individually or jointly, including, but not limited to, *originals or copies of account applications, account statements, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs* . . . ."  SRO at ¶ 29(a).

Finally, the Statutory Receivership Order directs all "persons or entities served with a copy of this order" to "cooperate fully with and assist the Temporary Receiver.  This cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising the authority as provided in this Order . . . ."  SRO at ¶ 34.

### B.      Bank of America's Initial Failure to Freeze All Accounts.

On September 24, 2020, the Plaintiff U.S. Commodity Futures Trading Commission ("CFTC") faxed a copy of the SRO to Bank of America.[1]  The cover of the fax provided a "partial list" of known accounts at Bank of America and expressly noted that "there may be more accounts than these listed."[2]  It also made clear that the SRO extended to "accounts in the name of, or controlled by" the named individuals and entities.[3]  The CFTC received a fax confirmation

---

[1] *See* Ex. A., Declaration of Kelly Crawford ("Crawford Decl.") ¶ 7 (APP004); Ex. A-1, Sept. 24, 2020 Fax at 2 (APP012).

[2] Ex. A-1, Sept. 24, 2020 Fax at 1 (APP011).

[3] *Id.*

at 11:46 am on September 24.[4]  Accordingly, at all relevant times after September 24, 2020, BOA knew that it was bound by the terms of this Court's orders as contained in the SRO.[5] Neither the Receiver nor the CFTC received a response.

On October 2, 2020, the Receiver provided Bank of America with another copy of the SRO and again demanded that Bank of America freeze any accounts holding receivership assets.[6]  The Receiver again did not receive a response.

On October 6, 2020, the Receiver again provided Bank of America with a copy of the SRO and again demanded that Bank of America freeze any accounts holding receivership assets.[7]  The Receiver again did not receive a response.

On October 14, 2020, the Receiver sent a letter to Bank of America's General Counsel, again sending a copy of the SRO and demanding compliance therewith.[8]  Again, the Receiver did not receive a response.

On October 20, 2020, in light of Bank of America's continued non-responsiveness, the Receiver's counsel sent another letter to Bank of America's general counsel regarding the need to file a Motion to Show Cause because of Bank of America' failure to respond to the SRO.[9]

On October 22, 2020, nearly one month after first receiving the SRO, Bank of America finally called the Receiver, apologized for the delay, and promised to provide information to the Receiver.[10]

---

[4] *Id.* at 2 (APP012).

[5] BOA is a national bank with offices throughout the country, including Dallas, Texas, and pursuant to 28 U.S.C. Section 754, BOA is subject to the jurisdiction of this Court.

[6] *See* Ex. A, Crawford Decl. ¶ 8 (APP004); Ex. A-2, Oct. 2, 2020 Letter at 2 (APP015).

[7] *See* Ex. A, Crawford Decl. ¶ 9 (APP004); Ex. A-3, Oct. 6, 2020 Letter at 2 (APP019).

[8] *See* Ex. A, Crawford Decl. ¶ 10 (APP004); Ex. A-4, Oct. 14, 2020 Letter at 2 (APP023).

[9] *See* Ex. A, Crawford Decl. ¶ 11 (APP004-5); Ex. A-5, Oct. 20, 2020 Letter at 1 (APP027).

[10] *See* Ex. A, Crawford Decl. ¶ 12 (APP005).

On October 23, 2020, Bank of America provided certain information regarding the Receivership Defendants' accounts at Bank of America and stated there were no Receivership Assets to turn over.[11]  The Receiver responded that he was aware of additional accounts.[12]  Bank of America replied that those accounts were closed.[13]

On November 12, 2020, Mr. Crawford—who, as Receiver, has the Receivership Defendants' mail forwarded to his office—received a letter *from Bank of America* addressed *to Receivership Defendant Lucas Asher* referring to $1.2 million in an account in the name of USA Accounts, Inc. that was controlled by Mr. Asher.[14]  The Receiver repeated his demands for the turnover of any receivership assets held by Bank of America, and requested any and all records Bank of America maintained, including bank statements and wire details, among other things.[15]

On November 16, 2020, Bank of America provided bank statements for the USA Accounts, Inc. account, but no wire details.[16]

On November 17, 2020, the Receiver reiterated his request for wire details from the USA Accounts, Inc. account.[17]

On November 18, 2020, Bank of America provided wire detail that clearly demonstrated that (1) on or about September 29, 2020, approximately $300,000.00 was transferred from the USA Accounts, Inc. account (ending in 2444) to another Bank of America account ending in 3464; (2) on or about September 29, 2020, another $250,000.00 was wired from the USA

---

[11] *See* Ex. A, Crawford Decl. ¶ 13 (APP005); Ex. A-6, Oct. 23, 2020 Email at 1 (APP030).

[12] *Id.*

[13] *Id.*

[14] *See* Ex. A, Crawford Decl. ¶ 14 (APP005); Ex. A-7, Nov. 12, 2020 Letter at 2 (APP035).

[15] *Id.*

[16] *See* Ex. A, Crawford Decl. ¶ 15 (APP005); Ex. A-8, Nov. 16, 2020 Email at 3-4 (APP041-42).

[17] *Id.* at 3 (APP041).

Accounts, Inc. account (ending in 2444) to an account at Pacific Premier Bank; and (3) both of these transactions occurred *after* Bank of America had actual notice of the SRO and its obligation to freeze all accounts owned, held, or controlled by the Receivership Defendants.[18]

On November 19, 2020, based upon Bank of America's continued noncompliance with the SRO, the Receiver retained an outside law firm (because of conflicts within his own firm, which represents BOA in other matters.)[19]  Counsel to the Receiver sent a detailed letter to BOA that demanded (1) the immediate freezing of any accounts owned, held, or controlled by the Receivership Defendants, including but not limited to accounts for which any Receivership Defendant is a signatory; (2) the return of the $550,000 in frozen funds that that should not have been transferred out of the USA Accounts, Inc. account (#2444); and (3) bank statements and other documents that were well over a month overdue.[20]

Between November 19 and December 15, 2020, the Receiver and his team pursued contempt proceedings against Defendant Asher related to the transfers discussed above, ultimately recovering the $550,000 that BOA had inexplicably allowed to leave Asher's account at BOA.[21]  On December 15, 2020, this Court entered an Order [Dkt. 216], that among other things found that the funds held in the USA Accounts, Inc. account (#2444) were receivership assets subject to the SRO.

C.    **Bank of America's Continued Failure to Produce All Account Documents until February 3, 2021, or January 19, 2021 at the Earliest.**

As detailed above, prior to November 19, 2020, the Receiver re-urged his request for banking records at least six separate times.  The SRO mandates that these banking records were

---

[18] *See* Ex. A, Crawford Decl. ¶ 16 (APP005-6); Ex. A-9, Nov. 18, 2020 Email at 1 (APP049).

[19] *See* Ex. A, Crawford Decl. ¶ 17 (APP006).

[20] *See* Ex. A, Crawford Decl. ¶ 17 (APP006); Ex. A-10, Nov. 19, 2020 Letter at 4 (APP057).

[21] *See* Ex. A, Crawford Decl. ¶ 18 (APP006).

to be provided to the Receiver within ten business days of notice of the Order (no later than October 5).  SRO ¶ 29(a).

On November 19, 2020, counsel for the Receiver re-urged these prior requests a seventh time.[22]  On December 1, 2020, counsel for the Receiver re-urged these requests an eighth time.[23] On December 11, 2020, BOA made its first production of bank statements, which was limited to the three open accounts.[24]

On December 18, 2020, counsel for the Receiver reiterated (for the ninth time) the prior demands and SRO's obligations to produce records relating to not just active accounts, but also closed accounts that were in existence as of September 2017.[25]  On December 28, 2020, BOA provided records pertaining to one closed TMTE account.[26]

On December 30, 2020, counsel for the Receiver noted (for the tenth time) that the SRO's demands were still unfulfilled, and that there were still three accounts where the Receiver was missing bank records.[27]  On January 12, 2021, counsel for the Receiver again followed up on the missing bank records.[28]  On January 19, 2021, counsel received a disc containing the missing bank records.[29]  This disc was delivered over ***three months after*** BOA was obligated to produce these records under the SRO, and only after the Receiver and counsel's constant prodding.

---

[22] *See* Ex. A, Crawford Decl. ¶ 20 (APP007); Ex. A-10, Nov. 19, 2020 Letter at 3-4 (APP056-57).

[23] *See* Ex. A, Crawford Decl. ¶ 20 (APP007); Ex. A-11, Dec. 1, 2020 Letter at 1 (APP086).

[24] *See* Ex. A, Crawford Decl. ¶ 21 (APP007); Ex. A-12, Dec. 11, 2020 Email at 1 (APP090).

[25] *See* Ex. A, Crawford Decl. ¶ 22 (APP007); Ex. A-13, Dec. 18, 2020 Email at 1 (APP107).

[26] *See* Ex. A, Crawford Decl. ¶ 23 (APP007); Ex. A-14, Dec. 28, 2020 Email at 1 (APP109).

[27] *See* Ex. A, Crawford Decl. ¶ 24 (APP007); Ex. A-15, Dec. 30, 2020 Email at 1 (APP112).

[28] *See* Ex. A, Crawford Decl. ¶ 25 (APP007); Ex. A-16, Jan. 12, 2021 Email at 1 (APP116).

[29] *See* Ex. A, Crawford Decl. ¶ 26 (APP008); Ex. A-17, Jan. 19, 2021 Email at 1 (APP120).

**D.      The Receiver's Prior Demand for Payment.**

On February 12, 2021, counsel for the Receiver sent a detailed letter to outside counsel for BOA, explaining the above-described facts and requesting payment of the Receiver and his attorneys' fees incurred in pursuing the funds and information discussed above.[30]

While the Receiver was hopeful he would be able to reach an amicable resolution of this matter without the Court's intervention, BOA refuses to reimburse the Receiver for any portion of the fees and expenses caused by BOA's failure to comply with the SRO.  Because the Receiver has been able (at substantial effort) to recover the impermissible transfers from the transferees, the sole issue for the Court is whether BOA should be forced to bear some or all of the Receiver's expenses in forcing BOA to comply with the SRO.

## III. ARGUMENT & AUTHORITIES

**A.      Legal Standard**

District courts possess inherent power to enforce their orders though contempt proceedings. *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977); *see also Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1302 (11th Cir. 1991).  A party commits contempt when, with knowledge of a court's definite and specific order, he fails to perform or refrain from performing what is required of him in the order.  *SEC v. First Financial Group of Texas, Inc.,* 659 F2d 660, 669 (5th Cir. 1981).  More specifically, in the Fifth Circuit, the elements of civil contempt are: "(1) that a court order was in effect, and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009) (internal quotation omitted). "Good faith is not a defense to a civil contempt; the question is whether the alleged contemnor complied with the court's order." *Chao v. Transocean Offshore, Inc.*, 276 F.3d 725, 728 (5th Cir.

---

[30] *See* Ex. A, Crawford Decl. ¶ 27 (APP008); Ex. A-18, Feb. 12, 2021 Letter at 1 (APP125).

2002).  For this reason, the court need not look to whether its actions were "willful," nor more generally to the intent or the respondent.  *See Am. Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000); *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980).  Finally, civil contempt may serve two different purposes: "coercing compliance with an order or compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *In re Bradley*, 588 F.3d at 263.

> **B.     Bank of America Should Bear the Financial Responsibility of Its Own Failure to Comply with the SRO, not the Defrauded Investors.**

Each of the elements of civil contempt have been met.  First, there can be no dispute that the SRO was entered and in effect on September 22, 2020, nor that BOA received the SRO on September 24, 2020.  *See* Crawford Decl. ¶¶ 3-7 (APP002-4).

Second, there similarly can be no dispute that the SRO required certain conduct from BOA.  The SRO required, among other things, that BOA immediately freeze all receivership assets and provide bank statements and other records within ten business days of receipt of the order.  SRO ¶¶ 26, 29(a).

Third, BOA clearly failed to comply with the SRO and eventual Preliminary Injunction. On or about September 29, 2020, $550,000 in receivership assets held at BOA—funds that should have been frozen—were improperly transferred.  Crawford Decl. ¶ 16 (APP005). Because of BOA's delay in responding to the requests for bank records, the Receiver did not learn of these transfers until he received a letter from BOA to the Receivership Defendants regarding the transfers on November 12, 2020.  *Id*. ¶ 14 (APP005).  Moreover, between October 2020 and January 2021 the Receiver and his counsel sent over ten requests for bank records to BOA.  *Id*. ¶ 8-25 (APP004-7).  The SRO required that BOA turn these records over within ten business days (early October).

As a result of BOA's violations of this Court's orders, the Receiver and his attorneys had to expend considerable sums (detailed below) to recover the transferred funds and obtain necessary bank records.  But–for BOA's non-compliance with the SRO—its failure to freeze the $550,000 and its undue delay in producing requested records—the Receiver and his team would not have incurred any of the substantial legal fees expended pursuing these funds and records.

**C.     The Fees of the Receiver and His Attorneys are Reasonable and Necessary.**

As a direct result of BOA's violations of the SRO, the Receiver and his attorneys to-date have spent $48,270.88 pursuing the transferred funds and bank records.  This work was necessary to the tasks of the Receivership and resulted in seizure of sizable assets.  Stated differently, if BOA had complied with the SRO, the Receiver and his team would not have had to expend the considerable efforts detailed herein to recover the impermissible transfers and obtain bank records.

As reflected by the invoice summary hereto as Exhibit A-19, the Receiver provided 64.65 hours of service to the Receivership related to the transferred funds between October 2020 and April 2021, totaling $20,170.80.  *See* Ex. A-19, Invoice Summary (APP131).  The Receiver's primary law firm, Scheef & Stone, provided 65 hours of service to the Receivership related to the transferred funds between October 2020 and April 2021, totaling $22,816.25.  *Id.*    The Receiver's other law firm, Brown Fox PLLC, provided 14.1 hours of service to the Receivership related to the transferred funds and requests for bank records between October 2020 and April 1, 2021, totaling $5,710.50. *Id.*  Additionally, as of the date of this filing, Brown Fox has spent an additional 7.3 hours preparing this motion, totaling $2,956.50. *Id.*

As detailed in the Receiver's prior fee applications, the Receiver and his attorneys have discounted their rates substantially for this Receivership and have applied an additional reduction (of 15-20%) over-and-above their already reduced rates.  The time spent by the Receiver, Scheef

& Stone, and Brown Fox PLLC were valuable and the rates charged to the Receivership have already been determined to be fair and reasonable. *See generally* Nov. 25, 2020 Order granting First Fee Application [Dkt. 200]; Feb. 22, 2020 Order Granting Second Fee Application [Dkt. 225].

## IV.  CONCLUSION

This receivership was established so that the Receiver could gather assets for distribution to the elderly investors who are victims of the Defendants.  BOA's failure to comply with the SRO in a timely matter caused significant risk to the Receivership Estate (a risk that fortunately was not realized because of the Receiver's efforts) and substantial damage in the form of fees and expenses.   In order to compensate the Receivership Estate for fees and expenses incurred, to maintain the integrity of the Court's own Orders, and to ensure that this Court's Orders are not casually disregarded in the future, this Court should order BOA, though its CEO Brian Moynihan or another officer with authority to represent the company, to appear in person before the Court and show cause as to why BOA should not be held in civil contempt for violating the Court's Orders.  The Receiver requests the Court to direct BOA to reimburse the Receivership Estate for the attorneys' fees and time of the Receiver incurred in having to file and prosecute this Motion, as well as such other and further relief, to which the Receiver may be justly entitled.

Dated: April 22, 2021

Respectfully submitted,


By: */s/ Cortney C. Thomas*
     Cortney C. Thomas
      Texas Bar No. 24075153
      cort@brownfoxlaw.com
     BROWN FOX PLLC
     8111 Preston Road, Suite 300
     Dallas, TX  75225
     Tel. 214.327.5000
     Fax. 214.327.5001

*Attorney for Receiver Kelly Crawford*


### CERTIFICATE OF CONFERENCE

I hereby certify that on February 25 and April 22, 2021, I conferred via email with Evan Moeller, attorney for Bank of America, N.A., regarding the foregoing Motion.  Mr. Moeller indicated that Bank of America is opposed to the relief requested herein.

*/s/ Cortney C. Thomas*
Cortney C. Thomas

## CERTIFICATE OF SERVICE

Pursuant to Fed. R. Civ. P. 5(d)(1)(B), as amended, no certificate of service is necessary, because this document is being filed with the Court's electronic-filing system.  Counsel for Non-Party Bank of America, N.A. has agreed to accept service of this Motion via email.

*/s/ Cortney C. Thomas*
Cortney C. Thomas