**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* | § § § § | |
| Plaintiffs, | § § § | CIVIL ACTION NO. |
| v. | § § | 3:20-CV-2910-L |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § § | |
| Defendants, | § § § | |
| TOWER EQUITY, LLC, | § § § | |
| Relief Defendant. | § § § | |

**RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING
<u>TO HOLD DEFENDANT SIMON BATASHVILI IN CIVIL CONTEMPT,
AND BRIEF IN SUPPORT</u>**

COMES NOW, Kelly M. Crawford ("Receiver") and respectfully requests the Court to schedule a hearing for Defendant Simon Batashvili ("Simon" or "Defendant Simon") to appear before this Court in person and show cause as to why he should not be held in contempt for his blatant violations of the clear orders of this Court, and in support thereof the Receiver respectfully shows the Court as follows.

## TABLE OF CONTENTS

I.     Introduction……………………………………………………………..Page 3

II.    Factual Background…………………………………………………...Pages 3-13

III.   Argument……………………………………………………………..Pages 13-17

       A.  The *SRO* was in effect……………..…………………………………...Page 14

       B.  Defendant Simon Had Knowledge of the *SRO*…………..…………….Page 14

       C.  Defendant Simon Violated the *SRO*……………………..…………….Pages 14-17

IV.    Relief Requested……………………………………………………...Pages 17-18

V.     Conclusion…………………………………………………………….Page 18-19

## TABLE OF AUTHORITIES

*Cook v. Ochsner Found. Hosp.*, 559 F.2d 270 (5th Cir. 1977)…………………......Page 13

*Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297 (11th Cir. 1991)…….Page 13

*SEC v. First Financial Group of Texas, Inc.,* 659 F2d 660 (5th Cir. 1981)…………Page 13

*In re Bradley*, 588 F.3d 254 (5th Cir. 2009)…………………………………………...Page 13

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821,
114 S.Ct. 2552, 129 L.Ed.2d 642 (1994)…………………………………………Page 18

*Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989)………..Page 18

*Gifford v. Heckler*, 741 F.2d 263 (9th Cir. 1984)…………………………………….Page 18

*Securities and Exchange Commission v. Resource Development Int'l;*
No. 3:02-CV-0605-R, 2004 WL 2599886 (N.D. Tex. 2004)………………….......Page 18

*Harris v. Joslin,* No. 3:02-CV-192-B, 2006 WL 3770506 (N.D. Tex. 2006)………..Page 18

# I.

## INTRODUCTION

In arrogant disrespect for the authority of this Court, Defendant Simon violated this Court's Orders (as defined below) by:

A.     Transferring $492,500 of receivership assets frozen by  the Orders of this Court and hiding the monies from the Receiver;

B.     Lying to the Receiver in Simon's sworn asset deposition testimony about Rolex watches Simon has been hiding from the Receiver; and

C.     Continuing his refusal to cooperate with the Receiver as required by the Court's Orders. Accordingly, Simon should be compelled to personally appear before this Court and show cause as to why this Court should not find him in civil contempt and incarcerate him until such time as he complies with the Court's Orders.

# II.

## FACTUAL BACKGROUND

1.     On September 22, 2020, this Court entered an *Order Granting Plaintiff's Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (the "SRO")* [Docket No. 16].   Pursuant to the *SRO,* this Court appointed Kelly M. Crawford as Receiver of the assets of the Defendants and Relief Defendant and vested the Receiver with certain authority to recover assets and investigate claims.

2.     On October 5, 2020, this Court entered an Order extending the *SRO* ("Extension Order") [Docket No.148].

3.      On October 14, 2020, this Court entered two orders: (a) *Consent Order of Preliminary Injunction and Other Equitable Relief Against TMTE, Inc. a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., and Relief Defendant Tower Equity, LLC (the "Corporate Consent Order")* [Docket No. 164]; and (b) *Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili (the "Individual Consent Order")* [Docket No. 165].

4.      The Extension Order, Corporate Consent Order and Individual Consent Order maintained the SRO in full force and effect. *See Corporate Consent Order, ¶ 20; Individual Consent Order, ¶ 21.*

5.      In pertinent part, the *Corporate Consent Order* provides:

> Defendants Metals and Barrick and Relief Defendant Tower and **all other persons or entities** (emphasis added) served with a copy of this order shall cooperate fully with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority as providing in this Order; providing any password required to access any computer or electronic files in any medium; and discharging the responsibilities of the Receiver under this Order…"

*See Corporate Consent Order*, ¶ 30. Similarly, and in pertinent part, the *Individual Consent Order* provides that:

> "Defendants Asher and [Simon] and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Receiver. This cooperation and assistance shall include, but not

be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority as provided in this Order; providing any password required to access any computer or electronic files in any medium; and discharging the responsibilities of the Receiver under this Order, and advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver."

6.     On March 22, 2021, the Court entered an *Order Granting Receiver's Motion to Identify Certain Entities in Receivership (the "Additional Entities Order")* [Docket No. 230] (the *SRO*, Extension Order,  Individuals Consent Order, Corporate Consent Order and the Additional Entities Order are, individually and/or collectively, as the case may be, "Orders").

7.     The *SRO* and the *Individuals Consent Order* extend to the "Defendants and Relief Defendant and their affiliates or subsidiaries owned or controlled by Defendants or Relief Defendant (hereinafter referred to as the "Receivership Defendants").   *SRO,  ¶30; Consent Order*, ¶ 28.

8.      The *SRO* provides that:

> "*Defendants and Relief Defendant are immediately restrained and enjoined, except as otherwise ordered by this Court, from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located…..*"

*SRO*, ¶ 19. Furthermore, Paragraph 33 of the *SRO* requires Defendant Simon to "*immediately or within such time as permitted by the Temporary Receiver in writing, deliver over to the Temporary Receiver:*

> a.   *Possession and custody of all assets of the Receivership Estate, owned beneficially or otherwise, wherever situated;….*"

9.     The "Receivership Estate" is defined in paragraph 30 of the *SRO* as *"all funds, properties, premises, accounts, income, now or hereafter due or wing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants..."*

10.     On September 24, 2020, the *SRO* was served upon Simon by service upon his wife, Fainche McCarthy ("McCarthy"), at Simon's home.  A return of service was filed with this Court on September 29, 2020.  [Docket No. 127].

11.     On September 24, 2020, immediately after service of the *SRO*, the Receiver met with McCarthy, Simon's wife, at Simon's residence.[1]  The Receiver explained the receivership to McCarthy and requested entry to the residence to make an inventory of the property inside.[2]  McCarthy called her husband Simon in the presence of the Receiver, told Simon of the receivership, and then conveyed to the Receiver that Simon wanted the Receiver to call his counsel Mark Rasmussen of Jones Day.[3]  The Receiver spoke by telephone with Mr. Rasmussen who was by this time already aware of the receivership.[4]  Mr. Rasmussen informed the Receiver that Jones Day served as counsel for the Defendants prior to the receivership and Jones Day was in the process of determining whether they would continue to represent the Defendants.[5]  At Simon's prompting, Mr. Rasmussen requested the Receiver to return to the Defendant's residence the following morning and indicated Simon would make his house available for inspection by the Receiver.[6]

---

[1] App. at p. 4, ¶4.
[2] Id.
[3] Id.
[4] App. at p. 4, ¶5.
[5] Id.
[6] Id.

12.     On September 25, 2020, the Receiver returned to Simon's residence and was granted access to conduct an inventory of the assets.[7]  Simon was not present.[8]  Instead, he was busy hiding assets from the Receiver and left his wife to deal with the Receiver.[9]

## A. HIDING NEARLY HALF A MILLION DOLLARS FROM THE RECEIVER

13.     On the same day the Receiver was at Simon's house conducting an inventory of assets with McCarthy, Simon was at the bank transferring $492,500 from an account under his control at East West Bank.[10]  Specifically, Simon was the sole signatory of an account at East West Bank in the name of "Tower Estates, Inc.".[11]  On September 25, 2020, Simon directed East West Bank to wire transfer $492,500 from the Tower Estates, Inc. account to an account at City National Bank in the name of "TX Admin. Inc." East West Bank made the transfer as directed by Defendant Simon, leaving a balance of $7,489.50 in the Tower Estates, Inc. account at East West Bank.[12]

14.     The monies in the East West Bank account in the name of Tower Estates, Inc. were "receivership assets" pursuant to the express terms of the *SRO*.  The *SRO* expressly extends to entities under Simon's control, and includes Tower Estates, Inc.[13]  Simon was the sole signatory of the Tower Estates, Inc. account at East West Bank.[14]  Simon blatantly and intentionally violated the *SRO* by transferring nearly half a million dollars out of an account he controlled instead of turning the monies over to the Receiver as required by the *SRO*.

---

[7] App. at p.4, ¶6.
[8] App. at p. 5, ¶6.
[9] App. at p. 5, ¶7; p.10.
[10] App. at p. 5, ¶7; p.10.
[11] App. at p. 8.
[12] App. at p. 7, 10.  Upon request of the Receiver, East West transferred the balance remaining in the account to the receivership.
[13] *SRO at* ¶30 [Docket No. 16]; see also *Order Granting Receiver's Motion to Identify Certain Entities in Receivership* [Docket No. 230].
[14] App. at p. 8.

15.    TX Admin. Inc., the recipient of the $492,500 wire transfer from East West Bank, is also owned and controlled by Simon and his co-hort Defendant Lucas Asher.   Thus, TX Admin Inc. is also subject to the *SRO*.[15]   Even though TX Admin. Inc. is subject to the *SRO*, Simon had East West Bank transfer the monies into the TX Admin. Inc. account at City National Bank because Simon's brother Perez Batashvili was the only signatory on the account[16].

16.    Once the $492,500 was deposited into the TX. Admin. Inc. account at City National Bank (CNB), the monies were disbursed as follows:

    a.   On 9-29-20, $200,000 was wired to an account in the name of MB Style, Inc. – an entity owned by Simon's mother[17];

    b.   On 10-9-20, $150,000 was transferred to another account at CNB[18];

    c.   On 10-13-21, $100,000 was wired to an account in the name of Simon's brother[19];

    d.   On 11-10-21, a check in the amount of $2,107.12 was paid to CNB for cash[20]; and

    e.   On 12-18-21, a check in the amount of $40,320.38 was paid to Simon's brother Perez, and the account was closed[21].

17.    On November 4, 2020, the Receiver deposed Simon and specifically asked him "What financial institutions have you been a signatory with since September of 2017?"[22]  Simon lied under oath in response: "I believe Bank of America, Wells Fargo, One West, Signature

---

[15] *SRO at* ¶30 [Docket No. 16]; see also *Order Granting Receiver's Motion to Identify Certain Entities in Receivership*[Docket No. 230].
[16] App. at p.5, ¶8; p.13. Indeed, Perez Batashvili has been provided a copy of the *SRO* and is aware of his obligations to turn over "receivership assets" to the Receiver.
[17] App. at pp. 22, 27, 35.
[18] App. at p. 24.
[19] App. at pp. 24, 29.
[20] App. at p. 30.
[21] App. at pp. 26, 30.
[22] App. at p. 5, ¶9; pp. 31, 33.

Bank. Let me think a little. What else? Morgan Stanley." [23] Simon never disclosed to the Receiver that he was a signatory at East West Bank.[24] Indeed, the Receiver gave Simon a second chance to tell the truth in his deposition testimony by specifically asking Simon[25]:

> Q. " And going back to Tower Estates, Inc., did it have any bank accounts?
>
> A. Yes, it did.
>
> Q. What bank account?
>
> A. I think all the similar bank accounts. Bank of America, One West Bank, Wells Fargo."

Once again, Simon lied in failing to reveal the account in the name of Tower Estates, Inc. at East West Bank in which Simon was the sole signatory. Simon's deception could not be more blatant.

### B. HIDING ROLEX WATCHES FROM THE RECEIVER

18. When the Receiver deposed Simon, the Receiver specifically asked Simon whether he owned any watches.[26]

> Q. "Do you own any interest in any jewelry?
>
> A. Not that I'm aware of."

The Receiver had been told by Simon's wife—McCarthy, that Simon purchased a watch when they were on a trip in London. Thus, the Receiver gave Simon another opportunity to testify truthfully[27].

> Q. "Your wife told me that you had a watch that you purchased in London in the left bank.

---

[23] Id.
[24] Id.
[25] App. at p. 34.
[26] App. at p. 32.
[27] Id.

A.     Oh, yeah.  It's a kind of tripped up in our house.  I don't know where, sometimes, things are.  So I didn't – I don't have any possession of any watch.

Q.     So what your wife told me was – was not true?  Is that what you are saying?

A.     No.  I'm not saying that.  I'm saying I don't have any possession of – I don't have possession of the watch.

Q.     Where is that watch?

A.     What watch are you talking about?  Because I don't have a – I just don't have a watch.

Q.     Have you ever purchased a watch outside the United States?

A.     If I remember correctly, I think you are right.  There was a watch that was purchased in London.  I think that's where it was.  I could have been Paris or something like that.

Q.     Where is that watch?

A.     I don't have the watch.  It should be somewhere in the house if it was, or it's lost.

Q.     How much did you purchase the watch for?

A.     I think it was under 3,000, but I'm not sure.  I can't remember.  Something like that."

19.     Subsequent to Simon's perjurious deposition testimony, the Receiver discovered that on April 30, 2020, Simon and his wife McCarthy sought to obtain insurance on two watches owned by Simon – a Men's Rolex Daytona 116528-GLDD Champagne Diamond 18K Yellow Gold watch valued at $36,600, and a Men's Rolex Cosmograph Daytona, Oyster, 40mm, Yellow Gold watch valued at $28,500[28].

---

[28] App. at p. 6, ¶11;pp. 38-42, 45, 51, 52, 55.

20.    Simon unabashedly lied at his deposition when specifically asked about watches he owned.  Indeed, Simon stands in contempt of this Court's orders for failing to turn over the two watches valued at more than $65,000 to the receivership.

### C.    CONTINUED REFUSAL TO COOPERATE WITH THE RECEIVER

21.    The *SRO* specifically requires Simon to "cooperate fully with and assist the Receiver."  This cooperation and assistance "shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority as provided in this Order…"

22.    When the Receiver deposed Simon on November 4, 2020, Simon testified he would provide the Receiver with specific information requested by the Receiver.[29]  Indeed, the Receiver's requests include, among other subjects, critical information regarding a trust Simon created for his family a "couple of years ago" – in which Simon could not remember the name of the trustee or assets conveyed to the trust.[30]  More than six months have elapsed since his deposition and Simon has failed to produce *any* of the information he promised under oath he would provide the Receiver.[31]  On February 25, 2021, the Receiver notified Simon's attorney of Simon's failure to provide the requested information and the Receiver's position that Simon's refusal to provide the information was a violation of the *SRO*. [32]

23.    Simon's refusal to provide information to the Receiver is an intentional violation of the *SRO*, and is consistent with his pattern of disrespect for this Court's Order.

24.    In addition to Simon refusing to cooperate with the Receiver as required by the *SRO*, his co-defendant Lucas Asher is also refusing to provide information to the Receiver.

---

[29] App. at p. 5, ¶10.
[30] App. at pp. 5, 32A, 32B, 36, 37.
[31] App. at p. 6, ¶10.
[32] App. at pp. 36, 37.

Pursuant to an *Agreed Order Finding Defendant Lucas Asher in Contempt of this Court's Orders* [Docket No. 216] entered on December 15, 2020, the Court found Defendant Asher in contempt of Court and ordered that in order to complete the purging of his contempt, Defendant Asher give his deposition and "provide full, complete, and accurate testimony" in the asset deposition. On January 29, 2021, the Receiver deposed Defendant Asher and in response to numerous questions Defendant Asher agreed to provide information to the Receiver to answer the Receiver's questions.  By letter dated February 16, 2021 the Receiver identified 20 instances in which Defendant Asher agreed to provide information to the Receiver to respond to the Receiver's questions asked at the deposition, and made demand upon Defendant Asher to provide such information.[33]   To date, Defendant Asher has failed and refused to provide the Receiver any of the information he promised.[34]   Consequently, Defendant Asher has not complied with the Court's condition for purging himself of contempt and remains in contempt of this Court's Orders.

### D.    DEMAND TO PURGE THE CONTEMPT

25.    On May 11, 2021, the Receiver conferred with Simon's counsel Arnold Spencer telephonically to inform Mr. Spencer of the Receiver's discovery regarding Simon's contemptuous acts.[35]   The Receiver informed Mr. Spencer that to purge himself of the contempt Simon needed to immediately return the $492,500 he transferred in violation of the *SRO* to the receivership estate; turn over the two Rolex watches he's been hiding from the Receiver; and provide the information promised six months ago.[36] On May 12, 2021 the Receiver again spoke with Mr. Spencer and he requested the Receiver wait until May 13, 2021 to file the motion so

---

[33] App. at pp. 59-61.
[34] App. at p. 6.
[35] App. at p. 6, ¶9; *see also* App. at pp. 27-29.
[36] *Id.*

that he could determine whether Simon would return the $492,500 to the receivership, turn over the Rolex watches, and provide the information promised in Simon's deposition.  On May 12, 2021 and on May 13, 2021, Mr. Spencer and the Receiver exchanged emails as set forth on **Exhibit A** attached hereto.   Because Simon has not committed to turning over to the receivership the entire $492,500 in receivership assets he misappropriated, and ignored the Receiver's demand to turn over the watches and jewelry he is hiding from the Receiver, the Receiver is requesting the Court to set a hearing for Simon to personally appear before the Court and show cause as to why he should not be held in civil contempt.  If, prior to the hearing, Simon turns over the $492,500 to the receivership, turns over the watches/jewelry to the Receiver, and provides the information he promised the Receiver six months ago, the Receiver will withdraw this Motion.

## III.

## ARGUMENT

District courts possess inherent power to enforce their orders though contempt proceedings. *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977); *see also, Citronelle-Mobile Gathering, Inc. v. Watkins,* 943 F.2d 1297, 1302 (11th Cir. 1991).  A party commits contempt when, with knowledge of a court's definite and specific order, he fails to perform or refrain from performing what is required of him in the order.  *SEC v. First Financial Group of Texas, Inc.,* 659 F2d 660, 669 (5th Cir. 1981); *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009)("We have often stated that the elements of civil contempt are (1) that a court order was *in effect,* and (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order")(internal quotation omitted).   Further, civil contempt may serve two different purposes: "coercing compliance with an order or

compensating a party who has suffered unnecessary injuries or costs because of contemptuous conduct." *In re Bradley*, 588 F.3d at 263.

### A.     The *SRO* was in effect at the time of the transfers and required conduct by Defendant Simon.

The *SRO* was in effect on September 25, 2020, the date Defendant Simon contemptuously transferred $492,500 out of an account he controlled.  Indeed, the *SRO* continues in effect today. The *SRO* was expressly directed to Defendant Simon as one of the named defendants and specifically restrained him *from directly or indirectly withdrawing, transferring, removing, dissipating, or otherwise disposing of any assets, wherever located…..*" *SRO*, ¶ 19

### B.     Defendant Simon Had Knowledge of the *SRO* at the Time of the Transfers.

Defendant Simon had been served with and was aware of the *SRO* on September 24, 2020, the day before Defendant Simon transferred the funds that should have been turned over to the Receiver.[37]   Indeed, the Receiver was present when McCarthy, Defendant Simon's wife, called Defendant Simon about the receivership.  Moreover, at Defendant Simon's direction, the Receiver spoke with Defendant Simon's attorney at Jones Day about the receivership and made arrangements through the attorney to inventory the assets at Defendant Simon's home. Defendant Simon was aware of the Court's Orders and even had counsel communicating on his behalf about the receivership.

### C.     Defendant Simon Violated the *SRO*.

The bank statements from East West Bank demonstrate that Defendant Simon violated the *SRO*.  There can be no dispute that Defendant Simon was the sole signatory on the bank account in the name of "Tower Estates, Inc."  There can also be no question that Defendant Simon, as the sole signatory on the account, authorized the transfer of $492,500 from the account

---

[37] See Return Defendant Service, [Docket No. 127]; App. at  p. 9, ¶4-5.

on September 25, 2020.[38]  This act by Defendant Simon blatantly violated multiple provisions of the *SRO* which restrained him from transferring assets subject to the *SRO* or exercising control over bank accounts in his name.  *See SRO at ¶¶ 15, 19, 24, 30, 33, and 34.*

The *SRO* defines "assets" as encompassing "any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to…accounts (including, but not limited to, bank accounts and accounts at other financial institutions)….and all funds, wherever located, whether in the United States or outside the United States." *SRO* at ¶ 15.

Using this broad definition of "assets" the *SRO* expressly restrained Defendant Simon from "withdrawing, transferring, removing, dissipating, or otherwise disposing of assets".  *SRO*, at ¶ 19.  And yet, that is precisely what Defendant Simon did on September 25, 2020 – he transferred, removed, and disposed of $492,500 over an account in which he was the sole signatory.[39]

Moreover, the *SRO* required Defendant Simon to inform the CFTC of the Tower Estates, Inc., account at East West Bank: *"To further facilitate meaningful inspection and review, Defendants and Relief Defendant shall….promptly provide CFTC and States staff with…all identification numbers and other identifying information for…all accounts at any bank….owned, controlled or operated by Defendants or Relief Defendant".* *SRO* at ¶ 24. Defendant Simon, as the sole signatory of the Tower Estates, Inc. account at East West Bank controlled that account and in blatant violation of the *SRO* failed to identify the account for the CFTC or the States or the Receiver.[40]

---

[38] App. at pp. 8, 10.
[39] App. at pp. 8, 10.
[40] App. at pp. 8, 33, and 34.

In appointing the Receiver and establishing the "Receivership Estate", the *SRO* expressly includes all accounts of the Receivership Defendants.  *SRO* at ¶ 30.  The Tower Estates, Inc. account was an account in the name of Defendant Simon at the time the *SRO* was issued and therefore such account falls within the definition of the "Receivership Estate."  Defendant Simon violated this provision of the *SRO* by exercising control over the  Tower Estates, Inc. account at East West Bank when it was part of the Receivership Estate.[41]

Defendant Simon also violated his obligations under Paragraph 33 of the *SRO*.  That paragraph required Defendant Simon to turn over to the Receiver the assets in the Tower Estates, Inc. over which Defendant Simon exercised control as the sole signatory.  *SRO* at ¶ 33(a).  He failed to do so. In addition, pursuant to paragraph 33(b) of the *SRO*, Defendant Simon was obligated to turn over to the Receiver records of the Tower Estates, Inc. account (including monthly statements, canceled checks, records of wire transfers, and check registers).  Defendant Simon failed to turn over any records regarding the Tower Estates, Inc. account, or for that matter, any bank account in which Defendant Simon is a signatory.

In arrogant violation of the *SRO* Defendant Simon intentionally refuses to cooperate with the Receiver in providing information or turning over assets.

Pursuant to Paragraph 34 of the *SRO*, Defendant Simon is specifically ordered to cooperate fully with the Receiver, including providing information to the Receiver that is necessary to exercise his authority under the *SRO*.  Defendant Simon is purposely withholding information from the Receiver, and withheld information about the Tower Estates, Inc. account at East West Bank and his transfer of $492,500 from that account in violation of the *SRO*.

---

[41] Indeed, even after the transfer of the monies from East West Bank to an account in the name of TX Admin. Inc., because that entity is owned and controlled by Defendant Simon and Defendant Asher and subject to the *SRO*, Defendant Simon had an obligation under the *SRO* to inform the Plaintiffs and the Receiver of the account and turn over the monies to the Receiver.  See *SRO*, ¶30 and *Order Granting Receiver's Motion to Identify Certain Entities in Receivership*[Docket No. 230].

Indeed, at his deposition Defendant Simon lied under oath to the Receiver in response to specific questions from the Receiver regarding bank accounts in which Defendant Simon was a signatory and bank accounts of Tower Estates, Inc. [42]

In further violation of the *SRO*, Defendant Simon failed to turn over to the Receiver two Rolex watches worth more than $64,000 and lied to the Receiver at Defendant Simon's asset deposition.  In addition, Defendant Simon refuses to provide critical information requested by the Receiver that Defendant Simon promised to provide during his deposition more than six months ago.

Defendant Simon's numerous violations of the *SRO* simply demonstrate that Defendant Simon has no respect for this Court or its authority.

## IV.

## RELIEF REQUESTED

Defendant Simon is thumbing his nose at Receiver as well as this Court, and its orders by engaging in a consistent pattern of brazenly refusing to comply with the Court's *SRO* as evidenced by, amongst other things, the following:

A.     Hiding from the Receiver his account in the name of Tower Estates, Inc. at East West Bank.

B.     Transferring $492,500 from the account in the name of Tower Estates, Inc. after being served with and knowing of the *SRO*.

C.     Hiding from the Receiver his two Rolex watches worth more than $64,000 and lied to the Receiver in response to specific questions at his deposition regarding Simon's ownership of watches.

---

[42] App. at pp. 33, 34.

D.      Refusing to cooperate with the Receiver and provide the Receiver with information as required by the *SRO*.      Indeed, despite promising to provide the Receiver with critical information, Simon has failed and refused to provide such information for more than six months.

In instances where a party fails and refuses to comply with a valid, lawful, clear order, and yet possesses the ability to comply, the Court may impose a coercive sanction such as incarceration to obtain the parties' compliance. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); *Balla v. Idaho State Bd. of Corrections*, 869 F.2d 461, 466 (9th Cir. 1989)("As we have previously stated, civil contempt is appropriate when a party fails to comply with a specific and definite court order," citing *Gifford v. Heckler*, 741 F.2d 263, 265 (9th Cir. 1984)).

Because Defendant Simon's assets are in receivership, a financial sanction will have no coercive effect and Defendant Simon will likely continue his disregard of the Court's Orders with nothing to lose.      Accordingly, Defendant Simon should be incarcerated[43] at the nearest federal detention center until such time as he complies with the *SRO*, including turning over the $492,500 he withdrew from the Receivership Estate, turning over the two Rolex watches he owns valued at more than $64,000, and providing information to the Receiver that he promised to provide more than six months ago.

## V.

## <u>CONCLUSION</u>

This receivership was established so that the Receiver could gather assets for distribution to the elderly investors who are victims of the Defendants.      The contemptuous actions of

---

[43] Indeed, judges in the Northern District of Texas have often incarcerated persons who refuse to comply with a receivership order.  *See Securities and Exchange Commission v. Resource Development Int'l;* No. 3:02-CV-0605-R, 2004 WL 2599886, at *2 (N.D. Tex. 2004); and *Harris v. Joslin,* No. 3:02-CV-192-B, 2006 WL 3770506, at *1 (N.D. Tex. 2006).

Defendant Simon are causing significant damages to the Receivership Estate and ultimately the elderly investor victims. Defendant Simon's blatant disregard of this Court's Orders must stop. In order to maintain the integrity of its own Orders, and to insure that this Court's Orders are not casually disregarded, this Court should order Defendant Simon to appear in person before the Court and show cause as to why he should not be held in civil contempt for violating the Orders. Moreover, the Receiver requests the Court at such hearing to find Defendant Simon in civil contempt and order that he be incarcerated at the nearest federal detention facility until such time as he complies with the Court's Orders.

WHEREFORE, PREMISES CONSIDERED, the Receiver respectfully requests that the Court enter an order scheduling a hearing at which Defendant Simon Batashvili is ordered to appear and show just cause why he should not be held in contempt of court for his violation of the Orders of this Court; that upon such hearing the Court order that Defendant Simon be incarcerated until such time as he complies with the Court's Orders, and grant such other and further relief, to which the Receiver may be justly entitled.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By:     */s/ Peter Lewis*
        Peter Lewis
        Texas State Bar No.12302100
        Peter.lewis@solidcounsel.com

500 N. Akard Street, Suite 2700
Dallas, Texas 75201
(214) 706-4200 – Telephone
(214) 706-4242 – Telecopier

**ATTORNEY FOR RECEIVER
KELLY M. CRAWFORD**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that on May 11, 2021 and on May 12, 2021, the Receiver conferred by telephone with Arnold Spencer, attorney for Defendants Lucas Asher and Simon Batashvili regarding this Motion and Mr. Spencer indicated Mr. Batashvili is opposed to the relief sought in the Motion <u>See</u> Exhibit A.   The U.S. Commodity Futures Trading Commission is unopposed to the relief sought in the Motion.

*/s/ Peter Lewis*
**PETER LEWIS**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 13, 2021, I electronically filed the foregoing document with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

*/s/ Peter Lewis*
**PETER LEWIS**

**From:** Arnold Spencer <arnoldspencer75225@gmail.com>
**Sent:** Wednesday, May 12, 2021 6:50 PM
**To:** Kelly Crawford <kelly.crawford@solidcounsel.com>; Peter Lewis <Peter.Lewis@solidcounsel.com>
**Subject:** Simon Batashvili

CAUTION: EXTERNAL EMAIL

Kelly,

In response to your May 11th email, we have located approximately $300,000–$320,000 and are working to have that amount transferred to the receivership account as quickly as possible. Our goal is to have that money wired to you as soon as tomorrow, but the funds are in third party accounts and those third parties are dealing with financial institutions, so tomorrow is a goal.  This amount reflects the money that, upon request, we can get back based on the short notice given in your email yesterday.  It is the money Simon's family members have in their possession currently.  While Simon's family believes they have claims to the funds and have provided value to the various defendant entities from which they received funds, Simon has prevailed upon them to turnover any available funds to the Receiver.  Simon's family members are therefore cooperating with him to wire this money to the receivership account.  While we are continuing to investigate the remainder of the $492,500 in transfers, payments to third parties beyond Simon's family members are not transfers that Simon can simply request be returned to him in the same manner that he can do with his family members.

Please note that the return of these funds to the receivership account is not an acknowledgment that Simon has the power or obligation to recover funds from third parties. The return of this approximately $300,000–$320,000 is only occurring because of Simon's family members' willingness to work with Simon (and, in turn, you) in a way that removed, unconnected third parties may be unwilling to do so upon request by Simon or his family members.

We are continuing to explore whether we can locate the balance of the $492,500 in transfers and will work to follow up with you about whether Simon can reasonably recover that remaining amount. As I am sure you can appreciate, it has taken extensive efforts and communications to recover the $300,000–$320,000 we will be wiring to the receivership account in such short order. Additional time is necessary for us to determine whether the remainder can be located and turned over.

Simon's willingness to track down this money, and his family members' willingness to transfer it to the receivership account, in no way reflects a "contemptuous act." As you know, a contemptuous act requires other underlying showings rather than the mere transfer of money after the Court's issuance of the SRO. The diligence in having these funds transferred to the receivership account demonstrates Simon's willingness to comply with the your requests and the terms of the SRO, not an admission or a concession that he knowingly violated the SRO.

We are also diligently working to provide you with information on the other issues you have raised. Simon is working on responses to the issues raised in your February 2021 letter, but as he mentioned in his deposition, many of the specific answers are contained in documents in the Receiver's possession.

I would respectfully ask that you delay filing a show cause motion tomorrow.  Simon has responded promptly to your request, and is returning the bulk of the funds requested by you (and in the possession of third parties) within two days.  We will continue to communicate with you as we have more information.  A motion will be expensive and time consuming, and Simon is doing everything he can to respond to your requests.  Additional court hearings are not in anyone's interest and will not help the individuals who are eventually entitled to this money.

Thank you.

2

EXHIBIT

A

Arnold A. Spencer
Managing Partner
www.aspencerlaw.com
214-385-8500



*New Address as of 1/1/2021:*
5956 Sherry Lane, Suite 2000
Dallas, Texas 75225

**Kelly Crawford**

| | |
|---|---|
| **From:** | Kelly Crawford |
| **Sent:** | Thursday, May 13, 2021 10:38 AM |
| **To:** | Arnold Spencer; Peter Lewis |
| **Cc:** | rfoelber@CFTC.gov; JBuffa@CFTC.gov |
| **Subject:** | RE: Simon Batashvili |

Arnold,

The idea that Simon did not commit a "contemptuous act" belies reality. He unmistakably knew of the receivership; knew all of his assets and the assets of his companies were frozen by Court order; and in contempt of the Court order transferred nearly half a million dollars from an account in which he was the sole signatory to an account in which his brother was the sole signatory. It's a blatant attempt to hide the monies. Moreover, his intent to deceive the Court and me, as the Receiver, regarding his contemptuous act is reflected by his perjurious deposition testimony when asked specific questions regarding bank accounts he controlled. His purported willingness to now return a portion of the money after being caught in the contemptuous act is certainly no evidence of any intent by Simon other than his hope to avoid being sanctioned or incarcerated for his violations of the Court's order. Because Simon transferred $492,500 of receivership assets in violation of the Court order he is responsible for returning the entire $492,500 to the receivership, not just a portion.

Your email makes no mention of any intent by Simon to return the watches/jewelry he has been hiding from me. And, Simon does not need access to any of the seized documents to answer the questions he promised to provide more than 6 months ago. He has the information. He's just failed to provide it to me in clear violation of his duties to cooperate with me.

At your request I have now waited two days to file the motion to provide an opportunity for Simon to turn over the $492,500, turn over the watches/jewelry, and turn over the information. Simon has not committed to turning over the entire $492,500; has disregarded the obligation to turn over the watches/jewelry; and is making excuses for not turning over information he promised to provide. Consequently, I am filing the motion this morning. I will not file the motion as an "emergency motion" to provide time for Simon to purge himself of the contempt by 1) turning over the $492,500; 2) turning over the watches; and 3) providing the information he promised. If he purges himself of the contempt before a hearing on the motion, I will withdraw the motion. Indeed, a hearing and the expense associated with a hearing can be avoided if Simon does what he should have done more than six months ago as required by the clear orders of the court.

## Kelly Crawford PARTNER
**Scheef & Stone, LLP**
**www.solidcounsel.com | 214.706.4213**
Office: 214.706.4200 | Fax: 214.706.4242
500 North Akard Street, Suite 2700, Dallas, TX 75201



**Important:** This electronic mail message and any attached files contain information intended for the exclusive use of the individual or entity to whom it is addressed and may contain information that is proprietary, privileged, confidential and/or exempt from disclosure under applicable law. If you are neither the intended recipient nor an employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. Please notify the sender, by electronic mail or telephone, of any unintended recipients and delete the original message without making any copies.