IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, <br><br> Defendants, <br><br> TOWER EQUITY, LLC, <br><br> Relief Defendant. | § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. <br> 3:20-CV-2910-L |

### RECEIVER'S MOTION TO COMPEL AND BRIEF IN SUPPORT

COMES NOW, Kelly Crawford, as the court-appointed ("Receiver"), and respectfully moves the Court as follows:

### I.

### RELIEF REQUESTED

Pursuant to the Receivership Orders governing the administration of this Receivership and the authority granted to the Receiver by this Court, the Receiver files this motion to compel the law firms Bradley Arant Boult Cumming, LLP and Quinn Emanuel Urquhart & Sullivan, LLP (the "Bradley/Quinn Attorneys") to reveal to the Receiver the source of any retainer or security interest they received in order to represent Defendants Lucas Asher and Simon Batashvili so that the

---

RECEIVER'S MOTION TO COMPEL AND BRIEF IN SUPPORT                                                                                                   1

Receiver can verify that counsel have complied with their lawful duties to insure that the retainer or security they received did not come from frozen or tainted funds.

## II.

### STATEMENT OF RELEVANT FACTS

1. On September 22, 2020, this Court entered an *Order Granting Plaintiff's Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief* [Dkt. 16] (the "SRO"). Pursuant to the SRO, this Court vested the Receiver with certain authority to recover assets and investigate claims. The SRO further directs any person in custody or control over any asset which the Receivership Defendants own, possess, have a beneficial interest in or control directly or indirectly, be turned over to the Receiver. *See* SRO, ¶ 29. This extends to each of the Defendants, the Relief Defendant, and any affiliate or subsidiary owned or controlled by the Defendants or Relief Defendant (the "Receivership Defendants"). *See* SRO, ¶ 30.

2. On October 14, 2020, this Court entered the *Consent Order of Preliminary Injunction as to Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili* [Dkt. 165] (the "Individuals Consent Order") as well as the *Consent Order of Preliminary Injunction as to Defendant TMTE, Inc. d/b/a Metals.com, Chase Metals, LLC, Metals, Inc., Barrick Capital, Inc., and Relief Defendant Tower Equity, LLC* [Dkt. 164] (the "Entities Consent Order") (collectively with the SRO—the "Receivership Orders"). The Individuals Consent Order directs Receivership Defendants to cooperate and assist the Receiver including, but not limited to, providing information to the Receiver that the Receiver deems necessary to exercising his authority. *See* Individuals Consent Order, ¶ 31.

3.      On March 30, 2021, Gene R. Besen of the law firm Bradley Arant Boult Cummings LLP ("Bradley") and Alex Spiro, Elinor Sutton, and Elizabeth Devaney of the law firm of Quinn Emanuel Urquhart & Sullivan LLP ("Quinn Emanuel") filed their *Notice of Limited Appearance* [Dkt. 231] (the "Limited Appearance") and *Emergency Motion to Modify Preliminary Injunction* [Dkt. 232] (the "Emergency Motion") on behalf of Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili ("Individual Defendants") challenging the freezing of their assets for the purposes of retaining counsel and seeking the modification of the agreed injunction to allow access to existing or future untainted assets in order to pay attorney's fees in this matter. *See* Emergency Motion, p. 4.

4.      On April 16, 2021, the Receiver sent correspondences to the Bradley/Quinn Attorneys requesting an accounting of all assets or security interests received from the Receivership Defendants or for the benefit of the Receivership Defendants to fund their firm's retainer, if any, or for other purposes. The Receiver further requested the Bradley/Quinn Attorneys to identify the source of the monies and collateral, copies of any documents evidencing such payments or security agreements, and the due diligence conducted to ensure the monies or security interests were not subject to the freeze imposed by the Receivership Orders.[1]

5.      On April 26, 2021, Gene R. Besen with Bradley responded to the Receiver's April 16 correspondence and summarily concluded that he had "ensured the limited funds in [his] trust account are from untainted sources with no connection to the Receivership Estate." Mr. Besen further represented that "the assets about which [Receiver] requested information are not subject

---

[1] Appendix ("App."), Exhibit A, pp. 3-6.

to the SRO, and therefore, no accounting is required." He further declared the Receiver's request for information about the source of retainer received by his firm to be "unreasonable".[2]

6. On April 28, 2021, Elizabeth Devaney with Quinn Emanuel responded to the Receiver's April 16 correspondence. Therein, Ms. Devaney stated that "[w]e have confirmed to the best of our ability that we are not in possession of any assets subject to the [Receivership Orders]." Ms. Devaney goes on to state that the Receiver is "not entitled to any information regarding the source or nature of funds in our possession that are not connected to the Receivership Order" and that no additional information would be provided at that time.[3]

7. On May 6, 2021, the Receiver sent follow up correspondence to Mr. Besen and Ms. Devaney again requesting information regarding the source of their retainers and informing Mr. Besen and Ms. Devaney that the Receiver would inform the Court of their refusal to provide the information requested by the Receiver.[4]

8. To date, the Bradley/Quinn Attorneys have refused to provide the information lawfully requested by the Receiver pursuant to the Receivership Orders.

## III.

## ARGUMENT

A. **Counsel must make a good faith inquiry and ensure that funds held in retainer are not tainted and not subject to the Court's Receivership Orders.**

9. The Fifth Circuit holds that lawyers cannot make themselves willfully ignorant of the circumstances surrounding the source of their fees in a situation in which assets have been frozen and must go further to investigate the source of funds with which a client pays their fees to ensure the funds are not tainted. In *Federal Trade Commission v. Assail, Inc.*, 410 F.3d 256 (5th

---

[2] App., Exhibit B, pp. 7-8.
[3] App., Exhibit C, pp. 9-10.
[4] App., Exhibit D, pp. 11-12.

Cir. 2005), the Fifth Circuit held that an attorney representing a defendant in a telemarketing fraud case brought by the Federal Trade Commission had a duty to investigate the source of funds with which a client pays his fees to ensure the funds are not tainted and are not subject to an order of the Court freezing the funds in a receivership. "[A]n attorney must 'audit' a client sufficiently so as to avoid becoming part of a criminal scheme that includes disposing of ill-gotten gains." 410 F.3d at 264. "[W]hen an attorney is objectively on notice that his fees may derive from a pool of frozen assets, he has a duty to make a good faith inquiry into the source of those fees. Failure to make such an inquiry in the face of this duty will result in disgorgement of the funds." 410 F.3d at 265; see also *F.T.C. v. Network Servs. Depot, Inc.*, 617 F.3d 1127, 1145 (9th Cir. 2010) ("In light of the FTC's allegations that the custodial funds were derived from a fraudulent scheme, Benice could not sufficiently discharge his duty of inquiry merely by relying on the contrary representations of his client…Even if Benice notified the district court and the FTC of the terms of his retainer agreement, and did not knowingly act to facilitate Castro's attempted obfuscation, we cannot conclude that Benice's acceptance of such a payment was in good faith.").

10. Here, the Bradley/Quinn Attorneys have not provided any evidence to show that they conducted a good faith investigation into the source(s) of their retainers. Instead, they merely declared to the Receiver that they complied with their obligations under *Assail*, and that the Receiver is not entitled to obtain information from them to verify that they met their obligations under *Assail*.

B. **Counsel cannot hide behind attorney-client privilege.**

11. The Bradley/Quinn Attorneys have not cited any legal authority to the Receiver to justify their position that the Receiver is not allowed to discover the source of their retainer. Indeed, the source of their retainer is not protected by the attorney-client privilege. The Fifth

Circuit recognized that matters involving the payment of fees and the identity of clients are not generally privileged. In *In re Grand Jury Subpoena for Att'y Representing Crim. Defendant Reyes-Requena*, 913 F.2d 1118, 1123 (5th Cir. 1990), the Court held that the attorney-client privilege does not protect an attorney from having to disclose the source or payment terms of attorney's fees. "Information concerning who paid Reyes–Requena's fee to DeGeurin and the amount, method or terms of payment is not exempted from disclosure by the attorney-client privilege." *Id* at 1127.

12. In the absence of any lawful basis to protect the source of their retainer from being disclosed to the Receiver, the Bradley/Quinn Attorneys should be compelled to turn over such information to the Receiver.

### C. The Receiver's Request for the Information is Reasonable and Required to Protect the Receivership Estate

13. The Receiver's authority to recover assets and investigate claims pursuant to the Receivership Orders allows him to make inquiries into the source and nature of funds provided to Bradley and Quinn Emanuel. The definition of "assets" that are frozen pursuant to the Receivership Orders is broadly defined as follows:

*"The term "assets" encompasses any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, directly or indirectly controlled, and wherever located, including but not limited to: chattels, goods, instruments, equipment, fixtures, general intangibles, effects, leaseholds, mail or other deliveries, inventory, checks, notes, accounts (including, but not limited to, bank accounts and accounts at other financial institutions), credits, receivables, lines of credit, contracts (including spot, futures, options, or swaps contracts), insurance policies, and all funds, wherever located, whether in the United States of outside the United States."*

SRO, ¶15.

14. In refusing to disclose the source of their retainers, the Bradley/Quinn Attorneys argue the Receiver has all the information he needs regarding the assets of the Defendants and can figure out for himself if any of the assets subject to the Receivership Orders have been transferred to the Bradley/Quinn Attorneys. The Defendants received more than $185 million and to date the Receiver has recovered less than $10 million. *See Receiver's Third Report, p. 4* [Docket No. 233]. Needless to say, there are millions of dollars of "assets" subject to the Court's Orders that have not yet been identified by the Receiver and the Individual Defendants have only exacerbated this problem by hiding assets from the Receiver, transferring assets in violation of the Court's Orders, and refusing to provide information requested by the Receiver. *See Agreed Order Finding Defendant Lucas Asher in Contempt of this Court's Orders* [Docket No. 216] and *Receiver's Motion for "Show Cause" Hearing to Hold Defendant Simon Batashvili in Civil Contempt, and Brief in Support* [Docket No. 250].

15. In addition, the Bradley/Quinn Attorneys represented to this Court that their clients, the Individual Defendants, are unable to identify assets that are tainted or not tainted.

*"Finally, Plaintiffs and the Receiver fault Asher and Batashvili for being unable to specifically identify untainted assets. This ignores the fact that Asher's and Batashvili's offices and homes have been raided and they no longer have the ability to identify such assets with specificity without access to their records."*

*Reply Filed by Individual Defendants*, p. 6 [Docket. 245].

16. If the clients of the Bradley/Quinn Attorneys are unable to identify "untainted assets", how have the Bradley/Quinn Attorneys been able to confirm that the retainers they received were from "untainted assets"? Indeed, this uncertainty alone justifies the Receiver's

request for the Bradley/Quinn Attorneys to disclose the source of their retainer so that the Receiver can confirm from the information he has available to him whether the retainers are subject to the Receivership Orders.

17. By refusing to provide the information requested by the Receiver, the Bradley/Quinn Attorneys are violating the express terms of the SRO. The SRO expressly orders that *"persons or entities served with a copy of this order shall cooperate fully with and assist the Temporary Receiver. This cooperation and assistance shall include, but not be limited to, providing information to the Temporary Receiver deems necessary to exercising the authority as provided in this Order."* SRO, ¶34.

18. The *SRO* does not allow the Bradley/Quinn Attorneys to provide information to the Receiver that only the Bradley/Quinn Attorneys believe is reasonable, as the Bradley/Quinn Attorneys argue. Indeed, in order to maintain the integrity of the receivership estate and insure that tainted "assets" of the receivership estate are not being used to pay the Bradley/Quinn Attorneys, the Receiver is entitled to know the source of the retainers.

19. In *F.T.C. v. Johnson*, No. 2:10-CV-02203-MMD, 2013 WL 4039069, at *7 (D. Nev. Aug. 5, 2013), the United States District Court held that, pursuant to the responsibilities placed upon the Receiver to maintain the integrity of the Receivership estate, inquiries made by the Receiver as to the source of any unsecured debts *must be responded to*. *F.T.C. v. Johnson*, No. 2:10-CV-02203-MMD, 2013 WL 4039069, at *7 (D. Nev. Aug. 5, 2013) [emphasis added].

20. The outright refusal of the Bradley/Quinn Attorneys to reveal the source of their retainer, without any legal basis whatsoever, and in express violation of their obligation under the Receivership Orders to cooperate with the Receiver, should not be condoned, and the Court should compel counsel to comply with the Receiver's legitimate request.

## IV.

## CONCLUSION

For the reasons set forth herein, the Receiver prays that this Court grant this motion and issue an order compelling the law firms Bradley Arant Boult Cumming, LLP and Quinn Emanuel Urquhart & Sullivan, LLP to provide an accounting of all assets and security interests received for their representation of the Individual Defendants, and grant such other relief to which the Receiver may be justly entitled.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By: _/s/ Kelly M. Crawford_
Kelly M. Crawford
State Bar No. 05030700

500 N. Akard Street, Suite 2700
Dallas, Texas 7501
Telephone: (214) 706-4200
Telecopier: (214) 706-4242

**ATTORNEYS FOR RECEIVER**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that prior to filing this Motion the Receiver and/or conferred with Gene R. Besen and Elizabeth Devaney, counsel for Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili regarding this Motion and counsel is opposed to the relief sought herein.

_/s/ Peter Lewis_
Peter Lewis

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 21, 2021, a true and correct copy of the foregoing document was electronically filed with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to attorneys of record.

/s/ Kelly M. Crawford
KELLY M. CRAWFORD