UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, *et. al*,<br><br>      *Plaintiffs*,<br>vs.<br><br>TMTE, INC. a/k/a metals.com, Chase Metals Inc., Chase Metals, LLC, Barrick Capital, Inc., Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher, and Simon Batashvili,<br><br>      *Defendants*. | Civil Action No. 3:20-CV-2910-L |

### RESPONSE TO RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD SIMON BATASHVILI IN CIVIL CONTEMPT

Defendant Simon Batashvili respectfully submits this Response to Receiver's Motion for "Show Cause" Hearing to Hold Simon Batashvili in Civil Contempt (the "Motion") (Doc. No. 250), and would show the Court as follows:

#### I.    INTRODUCTION AND BACKGROUND

In his Motion, the Receiver seeks to have Simon Batashvili ("Batashvili") held in civil contempt—and incarcerated—on three bases: (1) for not turning over $492,500 to the Receiver; (2) for not turning over two Rolex watches to the Receiver; and (3) for not "cooperating" sufficiently with the Receiver by providing certain information desired by the Receiver. The Receiver also acknowledges, however, that an order holding Batashvili in civil contempt is inappropriate if Batashvili purges the alleged contemptuous acts prior to a show-cause hearing.

1

Despite the fact that the $492,500 has been in the possession of third parties since the beginning of the Receivership, and despite the fact that the applicable Orders[1] have left Batashvili with effectively no personal assets, as of the filing of this Response, **Batashvili has been able to effect the transfer of $457,000 to the Receiver—leaving only $35,500 still in issue[2]—and has provided a Rolex watch to the Receiver**. Only through extensive time and effort has Batashvili been able to effect the transfer of funds from third parties—a clear demonstration of Batashvili's willingness and desire to comply with the Orders and to cooperate with the Receiver.

As for the other Rolex watch the Receiver demands Batashvili turn over, the Receiver has failed to present the Court with any evidence—let alone clear-and-convincing evidence—that Batashvili is in possession of the watch and therefore is capable of turning the watch over to the Receiver. To that end, the Receiver has failed to present any evidence that Batashvili was in possession of the relevant watch at any time during the pendency of the Receivership.

And while the Receiver's demand for Batashvili to "cooperate" with him by providing him certain desired information is not an appropriate basis for a finding of contempt, Batashvili will continue to cooperate with the Receiver and, in response to the Receiver's reasonable requests, provide the Receiver with the information known (or reasonably available) to Batashvili.

---

[1] Consistent with the Motion, "Orders" in this Response refers to: (1) the Order Granting Plaintiff's Emergency *Ex Parte* Motion for Statutory Restraining Order, Appointment of a Temporary Receiver, and Other Equitable Relief (the "SRO") (Doc. No. 16); (2) the Order extending the SRO (Doc. No. 148); (3) the Consent Order of Preliminary Injunction and Other Equitable Relief Against TMTE, Inc. a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc., and Relief Defendant Tower Equity, LLC (Doc. No. 164); (4) the Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili (Doc. No. 165); and (5) the Order Granting Receiver's Motion to Identify Certain Entities in Receivership (Doc. No. 230).

[2] Batashvili is continuing to work to facilitate the transfer of $35,500 and is hopeful to have secured the transfer of that amount prior to the hearing (if any) on this Motion—if not prior to the Receiver's reply in support of the Motion.

Batashvili is confident that the show-cause hearing will be mooted by the time the Motion is fully briefed, as Batashvili will continue to work with the Receiver as it relates to the alleged contemptuous acts; however, Batashvili files this Response out of an abundance of caution—particularly if the Receiver decides not to pull down the Motion despite Batashvili's extensive efforts to both purge the alleged contempt and cooperate with the Receiver.

## II.     ARGUMENT AND AUTHORITIES

For the Court to hold Batashvili in civil contempt, the Receiver must prove "that (1) a court order was in effect, (2) the order required specified conduct by [Batashvili], and (3) [Batashvili] failed to comply with the court's order." *United States v. City of Jackson*, 359 F.3d 727, 731 (5th Cir. 2004). Further, the violated provisions of the order must be "definite and specific." *Ross Neely Sys., Inc. v. Navistar, Inc.*, No. 3:13-cv-1587-M-BN, 2015 WL 12916405, at *6 (N.D. Tex. June 3, 2015) (Horan, M.J.) (quoting *Whitfield v. Pennington*, 832 F.2d 909, 913 (5th Cir. 1987)). It is the Receiver's burden to prove that a finding of contempt is necessary. *City of Jackson*, 359 F.3d at 731. "The standard of proof for civil contempt is clear and convincing evidence, which is 'that weight of proof which "produces in the mind of the trier of fact a firm belief or conviction, without hesitancy, of the truth of the precise facts" of the case.'" *Ross Neely Sys., Inc.*, 2015 WL 12916405, at *6 (quoting *Travelhost, Inc. v. Blandford*, 68 F.3d 958, 961 (5th Cir. 1995)).

Even if the Receiver were to establish the elements for civil contempt, the Court has broad discretion in determining whether to exercise its contempt power. *See In re Brown*, 511 B.R. 843, 848–849 (S.D. Tex. 2014). Certain factors that might weigh in favor of the Court not exercising its contempt power include whether Batashvili "has substantially complied with the [Orders] or has made reasonable efforts to comply." *Id.* at 849. "[A] present inability to comply with the"

3

Orders is also a defense to contempt. *Id.* Further, the Court may consider other "mitigating circumstances" that weigh against holding Batashvili in contempt. *Id.*

Civil contempt—and, in turn, incarceration—is an unnecessarily punitive remedy in light of the circumstances underlying this Motion. The Motion suggests that all three alleged contemptuous acts, *taken together*, justify the Court holding Batashvili in contempt; however, as explained below, any outstanding issues at this time do not.[3]

First, the Receiver's grievance related to $492,500 of transferred funds—the Receiver's lead issue in his Motion—has been addressed and almost entirely rectified, as $457,000 has been transferred to the Receivership. Only $35,500 of the at-issue funds is outstanding. The transfer of more than 90% of the demanded funds is "substantial compli[ance]" with the Receiver's demand. *In re Brown*, 511 B.R. at 849. Further, when the purpose of a *civil* contempt "order is (1) to coerce compliance with a court order or (2) to compensate a party for losses sustained as a result of the contemnor's actions," the transfer of $457,000 of the demanded funds to the Receivership—with a demonstrated commitment to transfer the remaining $35,500—militates against the need for a contempt order. *Ross Neely Sys., Inc.*, 2015 WL 12916405, at *6 (quoting *Lyn-Lea Travel Corp. v. Am. Airlines*, Inc., 283 F.3d 282, 290–91 (5th Cir. 2002)).[4] In other words, Batashvili has

---

[3] As alluded to above, Batashvili is still actively working and cooperating with the Receiver on a regular basis to resolve any outstanding issues the Receiver believes still exists under the Motion.

[4] The Receiver seeks only a *civil* contempt order, as reflected in the title of his Motion. Unlike a civil contempt order, the purpose of a *criminal* contempt order "is to punish the contemnor and vindicate the authority of the court." *In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) (quoting *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990)). Because the transfer of $457,000 to the Receivership undercuts the only two justifications for a civil contempt order, and the Receiver is not seeking a criminal contempt order, the Court should exercise its discretion to not find Batashvili in contempt for any reason related to the issue of $492,500.

demonstrated an intent to transfer the full $492,500—the only barrier to having already done so being the time and effort it has taken (and is taking).

Second, as it relates to the Rolex watches, Batashvili has secured the transfer of one Rolex watch to the Receiver on June 4, 2021—a Rolex Cosmograph Daytona, Oyster. The Receiver confirmed receipt of that watch. As for the other watch (a Rolex Daytona 116528-GLDD), the Receiver has cited no evidence for the proposition that Batashvili *currently* possesses the watch. In fact, the Receiver has cited no evidence that Batashvili possessed the watch *at any time during the pendency of the Receivership*. The only evidence the Receiver cites as proof of both the watch's existence and Batashvili's possession of the watch is an April 30, 2020 email referencing the watch. *That email precedes this lawsuit by almost five months.* The Receiver has presented no evidence, let alone clear-and-convincing evidence (as is his burden), that Batashvili was or is in possession of the watch since September 24, 2020 (the date the SRO was served on Batashvili—or, more specifically, Batashvili's wife). *See Ross Neely Sys., Inc.*, 2015 WL 12916405, at *6. The deposition excerpts cited by the Receiver in his Motion are also no evidence that Batashvili possessed a Rolex Daytona 116528-GLDD on September 24, 2020 or possesses such watch today. Batashvili cannot give the Receiver that which he does not have. *See In re Brown*, 511 B.R. at 849 (acknowledging "a present inability to comply with the order" as a defense to contempt). And in light of Batashvili's extensive efforts to both effect the transfer of all of the at-issue $492,500 to the Receivership from third parties and secure the transfer of one watch to the Receiver, any issue related to the other watch is not an adequate basis for a contempt order. *See In re Brown*, 511 B.R. at 849–50 (discussing various discretionary factors a court considers when assessing civil

5

contempt before finding contempt not merited despite a respondent's technical failure to comply with various provisions of certain orders).

Third, Batashvili's alleged "refusal to cooperate" with the Receiver as it relates to providing the Receiver certain information is, as a matter of law, not an adequate basis for a contempt finding. The relevant provision from the Orders that the Receiver cites as having been violated by Batashvili's alleged failure to provide certain information to the Receiver is as follows:

> Defendants Asher and Batashvili and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Receiver. This cooperation and assistance shall include, but not be limited to, providing any information to the Receiver that the Receiver deems necessary to exercising the authority as provided in this Order . . . .

Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili (Doc. No. 165), ¶ 31. This provision does not justify a contempt order because it is not the requisite "specific and definite language" mandating that Batashvili "do or refrain from doing *an act*." *Matter of Baum*, 606 F.2d 592, 593 (5th Cir. 1979) (emphasis added) (quoting *Baumrin v. Cournoyer*, 448 F. Supp. 225, 227 (D. Mass. 1978)). For Batashvili to be held in contempt, the order violated "must set forth in specific detail *an unequivocal command*." *Id.* (emphasis added) (quoting *H. K. Porter Co., Inc. v. Nat'l Friction Prods. Corp.*, 568 F.2d 24, 27 (7th Cir. 1977)). These high burdens on the nature of the Orders' language exist because "[t]he judicial contempt power is a potent weapon which should not be used if the court's order . . . is vague or ambiguous." *Id.*

The language the Receiver cites is not an unequivocal command for Batashvili to do or refrain from doing *a specific act*; rather, it establishes a working relationship between the Receiver and Batashvili. If any (perceived) failure to provide the Receiver "any information . . . that the

6

Receiver deems necessary to exercising [his] authority" justified a contempt order, then the Receiver, based entirely on his subjective analysis, could drag a person in for a show-cause hearing at will. Of course, this is not to say that the language is toothless; rather, it is broad language that allows the Receiver to obtain an order *compelling* Batashvili to act in a specific way—e.g., to provide a specific piece of information. The failure by Batashvili to in turn comply with a specific order compelling him to act in a certain way would be the potential basis for a show-cause hearing and contempt order.

Beyond the above-discussed legal infirmity underlying the Receiver's request for a contempt order, Batashvili is, and has been, willing to provide the Receiver with information that Batashvili has or can obtain related to the Receiver's reasonable requests. Assuming the Receiver's grievance related to Batashvili's alleged failure to provide certain information is more specifically a complaint about not having information in response to five requests the Receiver made in a letter to Batashvili's counsel, Batashvili can provide certain information as it relates to three of those requests: the Capbap Trust, BakerHostetler attorneys, and contact information for *Stuart* Paul.[5] While Batashvili will continue to work to provide the information the Receiver has requested or will request in the future, as the Receiver now well knows, the relevant sources of information (e.g., email, documents, etc.) are in the hands of the Receiver, not Batashvili. Batashvili's inability to provide the Receiver certain information is not a "refusal to cooperate" with the Receiver; it is simply a consequence of Batashvili's inability to recall specific, historical facts purely from memory without the aid of reviewing any meaningful records. *See In re Brown*, 511 B.R. at 849 (acknowledging "a present inability to comply with the order" as a defense to contempt).

---

[5] The Receiver's February 25, 2021 letter references a "Stewart" Paul. (Doc. No. 251, APP000037).

7

Therefore, even if the "cooperation" provision cited above could serve as a basis for a contempt finding—which it cannot—when considering the discretionary factors for whether civil contempt is justified, those factors weigh against holding Batashvili in civil contempt.

### III. CONCLUSION

For the reasons stated above, the Court should (1) not hold Simon Batashvili in civil contempt and (2) deny the Motion and all the relief requested therein.

Dated: June 10, 2021　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　By: /s/ Arnold A. Spencer
　　　　　　　　　　　　　　　　　　　　Arnold A. Spencer
　　　　　　　　　　　　　　　　　　　　Texas State Bar #00791709
　　　　　　　　　　　　　　　　　　　　Spencer & Associates
　　　　　　　　　　　　　　　　　　　　5949 Sherry Lane, Suite 900
　　　　　　　　　　　　　　　　　　　　214-385-8500
　　　　　　　　　　　　　　　　　　　　arnoldspencer75225@gmail.com

　　　　　　　　　　　　　　　　　　　　COUNSEL FOR DEFENDANT
　　　　　　　　　　　　　　　　　　　　SIMON BATASHVILI

### CERTIFICATE OF SERVICE

I certify that all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document via the Court's CM/ECF system on this 10th day of June 2021.

　　　　　　　　　　　　　　　　　　　　/s/ Arnold A. Spencer
　　　　　　　　　　　　　　　　　　　　Arnold A. Spencer