IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>ALABAMA SECURITIES COMMISSION, STATE OF ALASKA, ARIZONA CORPORATION COMMISSION, CALIFORNIA COMMISSIONER OF BUSINESS OVERSIGHT, COLORADO SECURITIES COMMISSIONER, STATE OF DELAWARE, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, OFFICE OF THE GEORGIA SECRETARY OF STATE, STATE OF HAWAII, SECURITIES ENFORCEMENT BRANCH, IDAHO DEPARTMENT OF FINANCE, INDIANA SECURITIES COMMISSIONER, IOWA INSURANCE COMMISSIONER, DOUGLAS M. OMMEN, OFFICE OF THE KANSAS SECURITIES COMMISSIONER, KENTUCKY DEPARTMENT OF FINANCIAL INSTITUTIONS, MAINE SECURITIES ADMINISTRATOR, STATE OF MARYLAND EX REL MARYLAND SECURITIES COMMISSIONER, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, MISSISSIPPI SECRETARY OF STATE, NEBRASKA DEPARTMENT OF BANKING & FINANCE, OFFICE OF THE NEVADA SECRETARY OF STATE, NEW MEXICO SECURITIES DIVISION, THE PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OKLAHOMA DEPARTMENT OF SECURITIES, SOUTH CAROLINA ATTORNEY GENERAL, SOUTH CAROLINA SECRETARY OF STATE, SOUTH DAKOTA DEPARTMENT OF LABOR & REGULATION, DIVISION OF | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANT SIMON BATASHVILI IN CIVIL CONTEMPT**<br><br>Case No.: **3-20-CV-2910-L**<br><br>Judge: Judge Sam A. Lindsay |

INSURANCE, COMMISSIONER OF THE
TENNESSEE DEPARTMENT OF
COMMERCE AND INSURANCE, STATE
OF TEXAS, WASHINGTON STATE
DEPARTMENT OF FINANCIAL
INSTITUTIONS, WEST VIRGINIA
SECURITIES COMMISSION, AND STATE
OF WISCONSIN.

  Plaintiffs,

v.

TMTE, INC. a/k/a METALS.COM, CHASE
METALS, INC., CHASE METALS, LLC,
BARRICK CAPITAL, INC., LUCAS
THOMAS ERB a/k/a LUCAS ASHER a/k/a
LUKE ASHER, and SIMON BATASHVILI,

  Defendants;

and

TOWER EQUITY, LLC,

  Relief Defendant.

## TABLE OF CONTENTS

PLAINTIFFS MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANT SIMON BATASHVILI IN CIVIL CONTEMPT ................................................................................................ 1

I.  PROCEDURAL HISTORY................................................................................ 3

II.  FACTS ............................................................................................................. 4

  A.  Timeline of Pertinent Events .................................................. 5

  B.  Batashvili Transferred at least $492,500 of Receivership Assets to his Family Members to Hide These Funds from the Receiver and the Plaintiffs .................... 6

  C.  Batashvili Has Refused to Surrender One of Two Rolex Watches and Gave False Testimony Under Oath In Order To Conceal the Watches' Existence .................. 8

  D.  Batashvili Is Withholding Vital Information and Records in an Effort to Conceal Pertinent Information and Has Failed to Cooperate With the Receiver ................ 8

  E.  Asher Has Failed to Purge his Contempt and Continues to Fail to Meet His Obligations Under the Asher Contempt Order .................................................. 10

III.  ARGUMENT ................................................................................................. 12

  A.  The Plaintiffs and the Receiver Have Established a *Prima Facie* Case of Batashvili's Civil Contempt.......................................................................... 12

    1.  The Court's Authority to Enforce the SRO and Consent PI Are Clear .... 12

    2.  Civil Contempt Is Appropriate Here.......................................................... 12

  B.  Batashvili and Asher Should Be Held in Civil Contempt and the Court Should Impose Coercive Sanctions for Their Failure to Comply With the Court's Orders ................................................................................................................ 14

    1.  The Court Has Broad Authority to Fashion Appropriate Relief in Civil Contempt Proceedings ............................................................................... 14

    2.  Significant Coercive Sanctions Are Necessary and Appropriate Here for both Asher and Batashvili ....................................................................... 15

IV.  CONCLUSION.............................................................................................. 17

## **TABLE OF AUTHORITIES**

Cases                                                                                                    Page(s)

*Am. Airlines, Inc. v. Allied Pilots Ass'n*,
   228 F.3d 574 (5th Cir. 2000) ........................................................................ 15

*Berger v. Heckler*,
   771 F.2d 1556 (2d Cir.1985) ........................................................................ 15

*CFTC and the State of Florida v. Weiss*,
   950 F.2d 1525 (11th Cir. 1992) .................................................................... 17

*CFTC v. Armstrong*,
   284 F.3d (2d Cir. 2002) ................................................................................ 17

*CFTC v. Emerald Worldwide Holdings, Inc*.,
   2004 WL 3186580 (C.D. Cal. July 29, 2004)........................................... 12, 13, 17

*Combs v. Ryan's Coal Company*,
   785 F.2d 970 (11th Cir.) ............................................................................... 13

*FDIC v. LeGrand*,
   43 F.3d 163 (5th Cir. 1995) .......................................................................... 16

*General Signal v. Donallco, Inc.*,
   787 F.2d 1376 (9th Cir. 1986) ..................................................................... 12

*Gompers v. Bucks Stove & Range Co.*,
   221 U.S. 418 (1911) ..................................................................................... 16

*Hutto v. Finney*,
   437 U.S. 678 (1978) ..................................................................................... 16

*In re Bradley*,
   588 F.3d 254 (5th Cir. 2009) ........................................................................ 13

*In re Dinnan*,
   625 F.2d 1146 (5th Cir. 1980) ...................................................................... 16

*In re Zyprexa Injunction*,
   474 F. Supp. 2d 385 (E.D.N.Y. 2007) .......................................................... 12

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994) ..................................................................................... 16

*Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*,
    609 F.2d 165 (5th Cir. 1980) ......................................................... 13

*McComb v. Jacksonville Paper Co.*,
    336 U.S. 187 (1949) ...................................................................... 14

*Myers v. United States*,
    264 U.S. 95 (1924) ........................................................................ 12

*Pac. Coast Surgical Center, L.P. v. Scottsdale Ins. Co.*,
    2019 WL 4267764 (C.D. Cal. July 31, 2019) .............................. 14

*Perfect Fit Indus., Inc. v. Acme Quilting Co.*,
    673 F.2d 53 (2d Cir. 1982) ........................................................... 15

*Petroleos Mexicanos v. Crawford Enters. Inc*,
    826 F.2d 392 (5th Cir. 1987) ....................................................... 13

Powell v. Ward,
    643 F.2d 924 (2d Cir. 1981) ................................................... 12, 15

*SEC v. Huffman*,
    996 F.2d 800 (5th Cir. 1993) ....................................................... 13

*SEC v. Bankers Alliance Corp.*,
    881 F. Supp. 673 (D.D.C. 1995) .................................................. 16

*SEC v. First Financial Group of Texas, Inc.*,
    659 F2d 660 (5th Cir. 1981) ........................................................ 13

*Shillitani v. United States*,
    384 U.S. 364 (1966) ...................................................................... 12

*Stiller v. Hardman*,
    324 F.2d 626 (2d Cir. 1963) ......................................................... 12

*Swann v. Charlotte-Mecklenburg Bd. of Educ.*,
    402 U.S. 1 (1971) .......................................................................... 15

*Test Masters Educ. Servs., Inc. v. Singh*,
    428 F.3d 559 (5th Cir. 2005) ....................................................... 15

*Thomas v. Capital Sec. Servs., Inc.*,
    836 F.2d 866 (5th Cir. 1988) ....................................................... 15

*United States v. City of Jackson, Miss.*,
   359 F.3d 727 (5th Cir. 2004) .......................................................................... 13

*United States v. Hayes*,
   722 F.2d 723 (11th Cir. 1984) .................................................................. 13, 14

*United States v. Rizzo*,
   539 F.2d 458 (5th Cir. 1976) .......................................................................... 14

*United States v. Roberts*,
   858 F.2d 698 (11th Cir. 1988) ...................................................................... 13

*United States v. Rylander*,
   460 U.S. 752 (1983) ........................................................................................ 13

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947) .................................................................................. 15, 16

*Vuitton et Fils S.A. v. Carousel Handbags*,
   592 F.2d 126 (2d Cir. 1979) .......................................................................... 15

*Waffenschmidt v. MacKay*,
   763 F.2d 711 (5th Cir. 1985) .......................................................................... 12

<u>Statutes</u>

18 U.S.C. § 401(3) .................................................................................................. 12

iv

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANT SIMON BATASHVILI AND LUCAS ASHER IN CIVIL CONTEMPT**

Plaintiffs—U.S. Commodity Futures Trading Commission and 30 sovereign states (State Attorneys General and State Securities Administrators)—respectfully submit this Memorandum of Law in Support of the Receiver's[1] Motion for "Show Cause" Hearing To Hold Defendant Simon Batashvili ("Batashvili") and Lucas Thomas Erb *a/k/a* Lucas Asher *a/k/a* Luke Asher ("Asher") in Civil Contempt and be subject to appropriate sanctions for violating the Court's Orders ("Receiver's Contempt Application") (Docket Entry ("D.E.") 250).[2]

Batashvili's deliberate and repeated violations of the Statutory Restraining Order ("SRO") (D.E. #16) began almost immediately after Batashvili received notice of its existence. As discussed in detail below, the day after being served with the SRO, Batashvili systematically transferred and dissipated assets restrained by the Court. First, on September 25, 2020, Batashvili transferred and dissipated $492,500 of restrained funds and ultimately sent them to his brother and mother. Second, Batashvili has hidden two expensive Rolex watches and lied about it at his deposition. Third, Batashvili has refused to comply with the clear commands of the SRO and Consent Order of Preliminary Injunction as to Defendants Asher and Batashvili ("Consent Order") (D.E. #165) (collectively "Court's Orders") by withholding vital information and documents from the Receiver. Finally, during his asset deposition on November 4, 2020, Batashvili provided testimony that was evasive and calculated to mislead the parties on pertinent

---

[1] The Court appointed Kelly Crawford as Receiver in the SRO. The Consent Preliminary Injunction converted the temporary receivership into a permanent receivership.

[2] Plaintiffs incorporate by reference, the Receiver's Memorandum of Law in support of the instant motion ("Receiver's Contempt Application") D.E. #250 and Fact Appendix D.E. #251.

areas regarding assets or funds relating or referring to the Defendants' or Relief Defendant's business activities and business and personal finances, business and personal records/documents, and his own conduct.

Additionally, Plaintiffs join the Receiver in reiterating that Asher remains in contempt of Court. *See* Receiver's Contempt Application at ¶ 24. Though the Court found Asher in contempt, via an agreed-to order, for violating the SRO and Consent Order (D.E. # 216) ("Asher Contempt Order"), Asher has not yet purged his contempt. *Id*. The Receiver states: "[c]onsequently, Defendant Asher has not complied with the Court's condition for purging himself of contempt and remains in contempt of this Court's Orders." *Id*. His indefensible refusal to meet his obligations under the Asher Contempt Order warrants imposing coercive incarceration given that lesser conditions have failed to force compliance with the Court's Orders.

Plaintiffs support the Receiver's Contempt Application and respectfully request that the Court: (1) hold Batashvili in contempt for violating the Court's Orders; (2) order Batashvili to turn over to the Receiver all assets transferred, dissipated, or concealed in violation of the Court's Orders; (3) cooperate with the Receiver in locating all assets or funds relating or referring to the business activities and business and personal finances of Defendants or Relief Defendant; (4) cooperate with the Receiver in locating business and personal information, documents, and records of Defendants or Relief Defendant to allow the Receiver to carry out its duties; (5) impose coercive incarceration against Asher, given that Asher has not fulfilled his obligations to purge his contempt; and (6) require Asher and Batashvili to appear in person at the contempt hearing.

## I. PROCEDURAL HISTORY

On September 22, 2020, Plaintiffs filed a Complaint for Permanent Injunction, Civil Monetary Penalties, and Other Equitable Relief ("Complaint"), alleging that Defendants are perpetrating a nationwide precious metals fraud scheme. (D.E. #2). Contemporaneously with the filing of the Complaint, Plaintiffs moved the Court for an SRO which Judge David C. Godbey granted the same day. (D.E. # 4-6; 11-12; 16). The Complaint alleges that from at least September 1, 2017 through the present ("Relevant Period"), Defendants perpetrated a massive nationwide fraudulent scheme that solicited and received over $185 million in investors' funds from at least 1,600 persons throughout the United States for the purpose of purchasing gold and silver bullion. (D.E. #2).[3]

On September 24, 2020, Plaintiffs properly served Batashvili (D.E. #127) with the Complaint, the SRO, and other filing materials. On October 14, 2020, the Court entered a Consent Order of Preliminary Injunction as to Defendants Asher and Batashvili. (D.E. #165).

After a hearing on December 15, 2020, the Court found Asher in contempt, via an agreed-to order, for violating the SRO and Consent Order. *See* Asher Contempt Order. Asher has **not** yet purged his contempt.

---

[3] As described in detail in the SRO application, Defendants deceived investors into using their retirement savings to purchase fraudulently overpriced precious metals. By making material misrepresentation and omissions, Defendants deceived investors into purchasing precious metals at prices averaging from one hundred (100) percent to over three hundred (300) percent over the base melt value or spot price of the precious metals ("Prevailing Market Price"). Defendants directed investors to purchase specific Precious Metals Bullion at grossly inflated prices that bore no relationship to the Prevailing Market Price. In particular, Metals failed to disclose that what Metals was charging investors vastly exceeded what Metals represented to victims in their customer agreements. Defendants knew or had a reckless disregard for the truth that virtually every investor lost the vast majority of their funds invested in fraudulently overpriced precious metals. Plaintiffs incorporate by reference, Plaintiffs Motion for an *Ex Parte* Restraining Order, Memorandum of Law in Support of an *Ex Parte* Restraining Order and their Fact Appendix with supporting exhibits and declarations. D.E. # 4-6; 12.

## II. FACTS

The Receiver's Contempt Application has an extensive and comprehensive recitation of the relevant facts to the instant motion—it is incorporated by reference in footnote 2 *supra*. In the interest of avoiding duplication of the Receiver's Contempt Application, Plaintiffs wish to briefly outline certain key facts evidencing Batashvili's violations of the SRO and Consent Order which warrant holding him in civil contempt and renewing the contempt proceedings against Asher.

Batashvili was clearly aware of and understood that the Court's Orders applied to him and the personal and corporate assets under his control. On September 24, 2020, the Receiver went to his residence to undertake an inventory of his assets. Though Batashvili was not home, his wife called him on the phone. D.E. #251: Crawford Decl. ¶¶ 4-6. After consulting with her husband, Batashvili's wife informed the Receiver that Batashvili wanted the Receiver to speak with his counsel, Mark Rasmussen of Jones Day. *Id*. After conferring with Rasmussen, the Receiver agreed to Batashvili's request that he return the next day—September 25, 2020—to make an inventory of Batashvili's personal assets and the contents of his home. *Id.*

Rasmussen represented to the Receiver that Batashvili agreed to allow the Receiver's inspection pursuant to the terms of the SRO. *Id*. As such, Batashvili knew that his assets as well as corporate assets were subject to the SRO. Even so, the very next day, Batashvili systematically undertook to hide and dissipate assets restrained by the Court. While the Receiver's inspection was being done, Batashvili transferred $492,500 of victims' funds to his family members to hide them from the Receiver and the Plaintiffs.

Importantly, at his asset deposition on November 4, 2020—a little over one month after the contemptuous and improper transfer of $492,500—Batashvili testified that he understood his

obligations under SRO to turnover assets to Receiver. Under questioning by the Receiver, Batashvili testified:

> Q. Simon, do you understand that under the court's order, **it's your obligation to turn your assets over to me**? It's not – **it's not my job to go try to find them** and then ask you to turn them over before you turn them over. Do you understand?
> A. I -- I -- **I understand that, Mr. Crawford, and I'm here to help.**[4]

If Batashvili was really "here to help," he would have, and could have, returned these victims' funds at any point over last eight months. Worse, he didn't "help" even after seeing his longtime business partner and co-Defendant, Asher, held in contempt for a similar act by this Court. His failure to surrender these funds to the Receiver has no explanation other than Batashvili's clear disregard for the Court's Orders. Batashvili has transferred, concealed, or dissipated at least $492,500 in assets in violation of the SRO and Consent Order, plus concealed or dissipated over $65,000 worth of Rolex watches. This evidences his unwillingness to rectify his wrongful conduct and so he should be held in contempt and subject to coercive sanctions.

## A.  Timeline of Pertinent Events

- September 22, 2020—SRO granted by Court.

- September 24, 2020— Batashvili is properly served with a copy of the SRO.

- September 24, 2020—the Receiver communicates with Batashvili, via his counsel, and agrees to allow the Receiver to inventory his home and personal property on the next day—September 25, 2020.

---

[4] *See* Plaintiffs' Fact Appendix, Exh 1: p. 65:7-14 (emphasis added).

- September 25, 2020—While the Receiver is undertaking the agreed-to inventory, Batashvili transfers and dissipates $492,500 of restrained Receivership assets to his **brother, Perez Batashvili**.[5]

- September 29, 2020—Asher contemptuously transfers $550,000 of investor funds for his own benefit.

- October 14, 2020—Court entered a Consent Order of Preliminary Injunction as to Defendants Batashvili and Asher.

- November 4, 2020—Batashvili was placed under oath and deposed.

- December 15, 2020—the Court found Asher in contempt, via an agreed-to order, for violating the SRO and Consent Order. Asher admitted and confessed that he made these improper transfers in violation of the SRO in the Asher Contempt Order. D.E #216 at ¶ 1.

- January 29, 2021—Plaintiffs and the Receiver took a second asset deposition of Asher pursuant to the Asher Contempt Order.

It is noteworthy and highly suspect that both Asher and Batashvili concealed and dissipated approximately $500,000 of victim funds—funds clearly restrained by the SRO—within a few days of each other. This brings to mind the old adage: "there is no such thing as coincidences."

### B. Batashvili Transferred at least $492,500 of Receivership Assets to his Family Members to Hide These Funds from the Receiver and the Plaintiffs

As discussed above, on September 24, 2020, Batashvili was served with the SRO and was aware of its restrictions and his obligations thereunder. On September 25, 2020, Batashvili transferred funds that are clearly assets[6] restrained pursuant to the SRO to his family members,

---

[5] D.E. #251:App. at p.5, ¶8; p.13.
[6] These funds are "assets" as defined in Paragraph 15 of the SRO.

namely his brother and mother. This was a brazen effort to hide victims' funds from the Receiver and the Plaintiffs and ferret them into the hands of those he trusts.

These improper and contemptuous transfers were as follows:[7]

- On September 25, 2020, Batashvili transferred $492,500 from an East West Bank account in the name of Tower Estates, Inc. where he is the sole authorized signatory for the account. This account was clearly subject to the SRO.

- This transfer of $492,500 went into an account at City National Bank ("CNB") in the name of TX Admin. Inc. in which **Batashvili's brother**, Perez Batashvili, is the sole signatory of the account.

- The funds at CNB were then transferred:

  o On September 29, 2020, $200,000 was wired to an account in the name of MB Style, Inc., an entity owned by **Batashvili's mother**.

  o On October 9, 2020, $150,000 was transferred to another account at CNB.

  o On October 13, 2020, $100,000 was wired to an account in the name of **Batashvili's brother, Perez Batashvili.**

  o On November 10, 2020, a check in the amount of $2,107.12 was paid to CNB for cash; and

  o On December 12, 2020, a check in the amount of $40,320.38 was paid to **Batashvili's brother,** Perez Batashvili, and then the account was closed.

The Receiver has made a demand on Batashvili, through his counsel of record, to return these restrained assets to the Receiver. To date, Batashvili has only returned approximately

---

[7] D.E. #251: Crawford Decl. ¶ 7-8; and App. at 22, 24, 26-27, 29-33, 35.

$416,000 of the restrained funds that he improperly transferred and dissipated.[8] The Receivership Estate is still missing $76,500.[9] This lack of a full return of victim funds is egregious given that the funds at issue were sent to his mother and brother. His failure to turn over restrained funds to the Receiver is a violation of the SRO and Consent Order and evidences his unwillingness to take steps to rectify his wrongful conduct.

### C. Batashvili Has Refused to Surrender One of the Two Rolex Watches and Gave False Testimony Under Oath in Order to Conceal the Watches' Existence

Batashvili owned two Rolex watches—valued at $36,660 and $28,500 respectively—at the time of the SRO. He has returned the $28,500 Cosmograph Rolex watch but not the more expensive $36,600 Daytona Rolex.[10] These are clearly assets under the SRO and Consent Order, yet he has refused to surrender one of them to Receiver. To compound this contemptuous violation of the Court's Orders, Batashvili gave false testimony under oath at his deposition in a clear effort to conceal the existence of over $65,000 worth of Rolex watches.[11] Even after the Receiver gave Batashvili multiple opportunities to testify truthfully about these watches, Batashvili persisted in providing testimony that was untrue and deliberately calculated to mislead the Receiver and Plaintiffs. *Id*. His failure to surrender all of these watches to the Receiver—plus his false testimony—is a violation of the Court's Orders and evidences his unwillingness to take steps to rectify his wrongful conduct.

### D. Batashvili Is Withholding Vital Information and Records in an Effort to Conceal Pertinent Information and Has Failed to Cooperate with the Receiver

Batashvili has refused to comply with the SRO and Consent Order by withholding vital information and records. The Receiver's Contempt Application has a detailed recitation of the

---

[8] *See* Plaintiffs' Fact Appendix, Exh 3.
[9] *Id.*
[10] *Id.*
[11] D.E. #251: Crawford Decl. ¶ 6; App 32.

myriad of ways that Batashvili has failed to cooperate and, in many cases, affirmatively obstructed the Receiver's execution of his duties. Without restating these facts, Plaintiffs note that Section VII of the SRO entitled "Directive to Cooperate with Temporary Receiver" and Section VI of the Consent Order entitled "Cooperation with the Receiver" require that Defendants and Relief Defendant cooperate fully with and affirmatively assist the Receiver. Batashvili has failed to comply with these directives and therefore has violated the SRO and Consent Order. These provisions are a clear command for Batashvili to act to assist the Receiver; instead Batashvili has only acted to obstruct.

During Batashvili's asset deposition on November 4, 2020, Batashvili promised under oath that he would provide crucial information including, among other things, a list of all financial institutions in which he has been a signatory on a bank account. This is crucial information given that any account where he is a signatory is a Receivership asset that is restrained for the benefit of his elderly and retirement-aged victims. Though more than 6 months have passed since his deposition, Batashvili has not provided the Receiver **any** of the promised information.[12] The Receiver even sent a letter to Batashvili's counsel asking for the missing items to no avail. D.E. #251: Crawford Decl. at ¶ 10. Batashvili's refusal to provide this information is in direct violation of the Court's Orders and evidences a pattern and practice of improperly disregarding and violating his obligations thereunder.

Two examples of Batashvili's noncompliance with the SRO and Consent Order bring his contemptuous conduct into stark relief. First, Batashvili still refuses to identify all of the bank accounts where he and the corporate defendants have or held accounts or where Batashvili had signatory authority. *Id*. at ¶ 10; App. at p. 5, ¶ 9; pp. 31, 33. In fact, Batashvili failed to disclose

---

[12] *See* Plaintiffs' Fact Appendix, Exh 3.

at his deposition the existence of the East West Bank account that he used to transfer the $492,500 to his family. *Id*. This was deliberately calculated to mislead the Receiver and Plaintiffs and conceal this transfer and its source of funds.

Second, during Batashvili's asset deposition on November 4, 2020, Batashvili provided sworn testimony that was evasive and deliberately calculated to mislead the parties on numerous areas related to the assets of the Defendants and Relief Defendant. For example, Batashvili misrepresented that he had turned over all of his assets to the Receiver, when he knowingly failed to turn over the $492,500 and luxury Rolex watches at issue here. Batashvili testified:

> Q.  My question is: Why have you not turned over any assets to me
> other than the Shelby Mustang?
> A.  I had -- I thought I had turned over the assets. [13]

In Batashvili's deposition, he actively sought to prevent discovery of improperly transferred, concealed, or dissipated assets and to conceal relevant pertinent information in contravention of the Court's Orders.

The Receiver succinctly sums up the current state of affairs when he writes: "[i]n arrogant violation of the SRO Defendant Simon intentionally refuses to cooperate with the Receiver in providing information or turning over assets." Receiver's Contempt Application at p. 16.

### E.  Asher Has Failed to Purge his Contempt and Continues to Fail to Meet His Obligations Under the Asher Contempt Order

Given Asher's indisputable violations of this Court's Orders, Asher was held in contempt by this Court. *See* Asher Contempt Order. Asher provided false and misleading testimony at his

---

[13] Plaintiffs' Fact Appendix, Exh. 1: pp. 64:25- 65:1-3

depositions and at his contempt hearing.[14] In fact, Asher was evasive and misleading during the Contempt hearing itself. In a colloquy with Asher about his knowledge and understanding of the SRO, the Court found Asher's testimony: "a bit troubling. . . [n]o, no, no, no. Let me drive up and blow the horn again." *Id.* After numerous attempts to elicit the facts, the Court was able to get Asher to admit his knowledge and understanding of the terms of the SRO.

Asher still has not purged his contempt by meeting his obligations under the Asher Contempt Order. At Asher's second deposition on January 29, 2021—required by the Asher Contempt Order—Asher's testimony was untrue and deliberately calculated to mislead the Receiver and Plaintiffs. To compound this, Asher promised under oath that he would provide crucial information to the Receiver and Plaintiffs. Having not gotten any information, on February 16, 2021, the Receiver sent a letter to Asher's counsel that identified 20 instances in which Asher agreed to provide information and requested that this information be provided. *See* Receiver's Contempt Application at ¶ 24. Asher has flagrantly failed to provide any of the information that he promised and that is required pursuant to the Asher Contempt Order's cooperation requirements. It is clear that Asher has no intention to comply with his obligations or to take any meaningful actions to purge his contempt. Thus, Asher remains in active contempt of the Court's Orders and in violation of the Asher Contempt Order.

Asher has a demonstrable and disturbing unwillingness to comply with lawful orders. Accordingly, the Court must impose significant coercive sanctions on Asher. All of the obligations that the Court has imposed on Asher have not been honored and complied with. As such, Asher's coercive incarceration is warranted given that lesser conditions have failed to force compliance with the Court's orders.

---

[14] Plaintiffs' Fact Appendix, Exh. 2: p. 154.

## III. ARGUMENT

**A. The Plaintiffs and the Receiver Have Established a *Prima Facie* Case of Batashvili's Civil Contempt**

1. The Court's Authority to Enforce the SRO and Consent PI Are Clear

A federal court's power to enforce its own injunctive decrees is inherent and necessary to perform the courts' functions properly. *Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985); Powell v. Ward, 643 F.2d 924, 931 (2d Cir. 1981); *Myers v. United States*, 264 U.S. 95, 103 (1924). "The jurisdiction of a court to enforce its orders extends nationwide." *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 418 (E.D.N.Y. 2007); *see also Stiller v. Hardman*, 324 F.2d 626, 628 (2d Cir. 1963) ("Violation of an injunctive order is cognizable in the court which issued the injunction, regardless of where the violation occurred."). Moreover, the United States Code also provides that "[a] court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as . . . [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401(3).

2. Civil Contempt Is Appropriate Here

 "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 368, 370 (1966) (civil contemnors are imprisoned only until they comply with the orders of the court and "carry 'the keys of their prison in their own pockets'") (internal citation omitted). Civil contempt sanctions serve "to coerce obedience to a court order, or to compensate the party pursing the contempt action for injuries resulting from the contemptuous behavior." *CFTC v. Emerald Worldwide Holdings, Inc*., 2004 WL 3186580, at *2 (C.D. Cal. July 29, 2004) (quoting *General Signal v. Donallco, Inc*., 787 F.2d 1376, 1380 (9th Cir. 1986)).

"In a civil contempt proceeding, the movant must establish by clear and convincing evidence that (1) a court order was in effect, (2) the order required specified conduct by the respondent, and (3) the respondent failed to comply with the court's order." *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004); *see also Petroleos Mexicanos v. Crawford Enters. Inc*, 826 F.2d 392, 401 (5th Cir. 1987); *SEC v. First Fin. Grp. of Tex., Inc.,* 659 F.2d 660, 669 (5th Cir. 1981); *In re Bradley*, 588 F.3d 254, 264 (5th Cir. 2009). The movant does not need to establish willfulness. *Petroleos Mexicanos*, 826 F.2d at 401; *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am.*, 609 F.2d 165, 168 (5th Cir. 1980) ("In civil contempt proceedings the question is not one of intent but whether the alleged contemnors have complied with the court's order.") (internal quotation and citation omitted).

Once the moving party establishes the violation, the burden shifts to the alleged contemnor to produce evidence justifying his non-compliance. The contemnor "may assert a *present* inability to comply with the order in question" as a defense, *United States v. Rylander*, 460 U.S. 752, 757 (1983) (emphasis in original), but bears the burden of showing entitlement to the defense by a preponderance of the evidence. *SEC v. Huffman*, 996 F.2d 800, 803 & n.4 (5th Cir. 1993). *See also Emerald Worldwide Holdings*, 2004 WL 3186580, at *2. In order to be successful on an inability to pay defense, the contemnor "must go beyond a mere assertion of inability," *United States v. Hayes*, 722 F.2d 723, 725 (11th Cir. 1984), and establish that he has made "in good faith all reasonable efforts" to meet the terms of the court order. *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988); *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 984 (11th Cir. 1986), cert. denied, 479 U.S. 853 (1986) ("We construe this requirement strictly.  Even if the efforts he did make were "substantial," "diligent" or in "good faith," … the fact that he did not make "all reasonable efforts" establishes that [he] did not sufficiently rebut the … prima facie

13

showing of contempt." (quoting *Hayes*, 722 F.2d at 725)); *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976). Moreover, the contemnor's good faith or intent in attempting to comply with the court order is immaterial. *Pac. Coast Surgical Center, L.P. v. Scottsdale Ins. Co.*, No. 2:19-mc-00049-PSG, 2019 WL 4267764, at *5 (C.D. Cal. July 31, 2019).

Plaintiffs have established by clear and convincing evidence a *prima facie* case of civil contempt. Batashvili was, and is aware, of the SRO and Consent Order and their asset restraints, cooperation obligations, and other mandates. However, as described above, Batashvili has repeatedly and blatantly violated the Court's Orders. Because Plaintiffs have met their burden here, the burden now lies with Batashvili to show he is unable to comply.

Importantly, the Court is not faced with a situation where Batashvili failed to comply with the Court's Orders despite taking all reasonable steps to comply or because of some present inability to comply. Instead, he has taken considerable steps to circumvent and trample the Court's SRO and Consent Order. He transferred the victim funds at issue here to trusted family members, his mother and brother. Simply put, Batashvili refuses to abide by the terms of the SRO and the Consent Order and failed to take any steps to comply with the Court's Order and rectify his wrongful conduct. Absent a showing of substantial evidence that he has made every reasonable effort to comply, Batashvili should be found in contempt of the SRO and Consent Order and subject to coercive sanctions.

**B.  Batashvili and Asher Should Be Held in Civil Contempt and the Court Should Impose Coercive Sanctions for Their Failure to Comply with the Court's Orders**

1.  The Court Has Broad Authority to Fashion Appropriate Relief In Civil Contempt Proceedings

A district court has broad authority to fashion appropriate relief in civil contempt proceedings, so long as that relief is reasonably calculated to compel obedience with a prior court order. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193 (1949) ("The measure of the

court's power in civil contempt proceedings is determined by the requirements of full remedial

relief"). "Upon a finding of contempt, the district court has broad discretion in assessing

sanctions to protect the sanctity of its decrees and the legal process." *Test Masters Educ*. *Servs*.,

*Inc*. *v*. *Singh*, 428 F.3d 559, 582 (5th Cir. 2005) (citing *Am. Airlines, Inc. v. Allied Pilots Ass'n*,

228 F.3d 574, 585 (5th Cir. 2000)). "'Judicial sanctions in civil contempt proceedings, may in a

proper case, be employed for either or both of two purposes: to coerce the defendant into

compliance with the court's order, and to compensate the complainant for losses sustained.'" *Am*.

*Airlines*, 228 F.3d at 585 (quoting *United States v*. *United Mine Workers of Am*., 330 U.S. 258,

303-04 (1947)). "'The imposition or denial of sanctions of necessity involves a fact-intensive

inquiry into the circumstances surrounding the activity that is the subject of sanctions.'" *Test*

*Masters*, 428 F.3d at 582 (quoting *Thomas v*. *Capital Sec*. *Servs*., *Inc*., 836 F.2d 866, 873 (5th

Cir. 1988) (en banc)). When a contempt sanction is coercive, "the district court has broad

discretion to design a remedy that will bring about compliance." *Perfect Fit Indus*., *Inc*. *v*. *Acme*

*Quilting Co*., 673 F.2d 53, 57 (2d Cir. 1982) (citing *Vuitton et Fils S.A*. *v*. *Carousel Handbags*,

592 F.2d 126, 130 (2d Cir. 1979); *Powell*, 643 F.2d at 933 (per curiam)); *Berger v. Heckler*, 771

F.2d 1556, 1568 (2d Cir. 1985) (stating that the scope of a district court's power to secure

compliance with its orders "is broad, for breadth and flexibility are inherent in equitable

remedies[]") (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

2.   <u>Significant Coercive Sanctions Are Necessary and Appropriate Here for both Asher and Batashvili</u>

In light of Batashvili's repeated violations of the Court's Orders and his continuing

failure to abide by the Orders, there is ample reason to conclude that Batashvili needs to be

coerced into complying with this Court's Orders. Batashvili has not made any sort of good-faith

attempt at compliance. The same is true as to Asher based on his repeated violations that have

been left uncured. Therefore, there is good cause for imposing significant coercive fines and/or incarceration for both Asher and Batashvili.

The court is permitted to impose a conditional fine for the purpose of compelling the contemnor to comply with the court's order, provided the amount is reasonably designed to force compliance, without being punitive. *In re Dinnan*, 625 F.2d 1146, 1149 (5th Cir. 1980) (per curiam) (citing *United Mine Workers*, 330 U.S. at 303-04). "A coercive, nonpunitive fine payable to the clerk of the court is an appropriate tool in civil contempt cases." *Id.* (citing cases and treatises).

The imposition of daily fines may not effectively coerce Batashvili and Asher into compliance. Batashvili's and Asher's intentional and continuing refusal to comply with this Court's Orders warrants coercive incarceration. Asher has already been held in contempt to no avail. A district court may order the civil contemnors imprisoned until they comply with the order or condition imposed by the court. *FDIC v. LeGrand*, 43 F.3d 163, 168 (5th Cir. 1995); s*ee e.g.*, *SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673, 678-79, 84 (D.D.C. 1995) (imposing civil contempt sanctions that included fines and incarceration against defendants for failing to provide an accounting of assets pursuant to a preliminary injunction order); *see also Hutto v. Finney*, 437 U.S. 678, 690 (1978) ("Civil contempt proceedings may yield a conditional jail term[.]"). "A fixed term of imprisonment, with the proviso that the contemnor will be released if he complies with the court order, is a proper penalty for civil contempt and the imposition of such penalty does not make the proceeding criminal." *In re Dinnan*, 625 F.2d at 1149. Incarceration in this context is not punitive but rather coercive in nature because the party "carries the keys of his prison in his own pocket." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (*quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)). In fact,

courts have incarcerated contemnors for failing to comply with SRO such as the one at issue here. *See, e.g.*, *Emerald Worldwide Holdings, Inc*., 2004 WL 3186580, at *2 (incarcerating contemnor for violating Court's restraining orders*); CFTC v. Armstrong,* 284 F.3d 202 (2d Cir. 2002) (contempt order is interlocutory order left to sound discretion of district court and not appealable; contemnor remained incarcerated for seven years for failure to turn over receivership assets); *CFTC and the State of Fla. v. Weiss*, 950 F.2d 1525 (11th Cir. 1992) (civil contemnor incarcerated for over four years for failure to disgorge funds).

## IV.    CONCLUSION

The Receiver and Plaintiffs have established by clear and convincing evidence a *prima facie* case of Batashvili's civil contempt and Asher's continued violations of the Asher Contempt Order. Upon finding them in civil contempt, this Court should require Batashvili and Asher to immediately comply with the SRO and Consent Order. Specifically, the Court should: (1) hold Batashvili in contempt for violating the Court's Orders; (2) order Batashvili to turn over to the Receiver all assets transferred, dissipated, or concealed in violation of the Court's Orders; (3) order Batashvili and Asher to cooperate with the Receiver in locating all assets or funds relating or referring to the business activities and business and personal finances of Defendants or Relief Defendant; (4) order Batashvili and Asher to cooperate with the Receiver in locating business and personal information, documents, and records of Defendants or Relief Defendant to allow the Receiver to carry out its duties; (5) impose coercive incarceration against Asher given that Asher has not fulfilled his obligations to purge his contempt; and (6) order Asher and Batashvili to appear in person at the contempt hearing.

Dated: June 10, 2021                    Respectfully submitted,


By: /s/ JonMarc P. Buffa

JONMARC P. BUFFA
jbuffa@cftc.gov
California Bar # 217324

RICHARD P. FOELBER
rfoelber@cftc.gov
Illinois Bar # 0840904

Attorneys for Plaintiff
COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street. NW
Washington, DC 20580
(202) 418-5000


FOR THE STATE OF ALABAMA

By: /s/ Jeffery A. "Beau" Brown, Jr

JEFFERY A. "BEAU" BROWN, JR., *pro hac vice*
Beau.Brown@asc.alabama.gov
Alabama Bar No. 7258R80B

ANNE GUNTER, *pro hac vice*
anne.gunter@asc.alabama.gov
Alabama Bar No. 4666N91P

Attorneys for Plaintiff
STATE OF ALABAMA
SECURITIES COMMISSION
445 Dexter Avenue, Suite 12000
 Montgomery, AL 36104
Telephone: (334) 322-8586
Fax: (334) 242-0240


FOR THE STATE OF ALASKA

By: /s/ Robert Schmidt

18

ROBERT SCHMIDT, *pro hac vice*
rob.schmidt@alaska.gov
Alaska Bar No. 9909048
JOHN HALEY
john.haley@alaska.gov
Alaska Bar No. 1402010

Attorneys for Plaintiff
STATE OF ALASKA
OFFICE OF ATTORNEY GENERAL
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-6645
Fax: (907) 276-3697

FOR THE STATE OF ARIZONA

By: /s/ Christopher Nichols

CHRISTOPHER NICHOLS, *pro hac vice*
cnichols@azcc.gov
Arizona Bar No. 029958

Attorney for Plaintiff
ARIZONA CORPORATION COMMISSION
1300 W. Washington St.
Phoenix, AZ 85007
Telephone: (602) 542-0639
Fax: (602) 714-8120

FOR THE STATE OF CALIFORNIA

By: /s/ Danielle Stoumbos

MARY ANN SMITH
MaryAnn.Smith@dbo.ca.gov
SEAN ROONEY
Sean.Rooney@dbo.ca.gov
DANIELLE A. STOUMBOS, *pro hac vice*
California Bar No. 264784
Danielle.Stoumbos@dbo.ca.gov

Attorneys for Plaintiff
STATE OF CALIFORNIA

19

DEPARTMENT OF BUSINESS OVERSIGHT
320 West Fourth Street, Suite 750
Los Angeles, California 90013
Telephone: (213) 503-2046
Fax: (213) 576-7181


FOR THE STATE OF COLORADO
PHILIP J. WEISER
Attorney General of the State of Colorado


By: /s/ Janna Fischer

JANNA FISCHER*, *pro hac vice*
janna.fischer@coag.gov
Colorado Bar No. 44952
ROBERT FINKE*, *pro hac vice*
robert.finke@coag.gov
Colorado Bar No. 40756
*Counsel of Record

Attorneys for Plaintiff
SECURITIES COMMISSIONER
FOR THE STATE OF COLORADO
1300 Broadway, 8th Floor
Denver, Colorado 80203
Telephone: (720) 508-6374
Fax: (720) 508-6037


FOR THE STATE OF DELAWARE
KATHLEEN JENNINGS
Attorney General of the State of Delaware


By: /s/ Katherine M. Devanney

KATHERINE M. DEVANNEY, *pro hac vice*
Deputy Attorney General
Delaware Bar No. 6356
Texas Bar No. 24116281
katherine.devanney@delaware.gov
JILLIAN LAZAR
Director of Investor Protection
Delaware Bar No. 6049
jillian.lazar@delaware.gov

20

Delaware Department of Justice
820 N. French St.
Wilmington, DE 19801
Telephone: (302) 577-8356
Fax: (302) 577-6987

Attorneys for Plaintiff the State of Delaware


FOR THE STATE OF FLORIDA
ASHLEY MOODY
Attorney General for the State of Florida


By: /s/ Victoria Butler_____

VICTORIA BUTLER, *pro hac vice*
Assistant Attorney General
Director of Consumer Protection
victoria.butler@myfloridalegal.com
Florida Bar No. 861250

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL
Department of Legal Affairs
3507 E Frontage Rd, Suite 325
Tampa, FL 33607-1795
Telephone: (813) 287-7950
Fax: (813) 281-5515


By: /s/ A. Gregory Melchior_____

A. GREGORY MELCHIOR, *pro hac vice*
Assistant General Counsel
greg.melchior@flofr.com
Florida Bar No. 407290

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF FINANCIAL REGULATION
1313 Tampa Street, Suite 615
Tampa, Florida 33602-3394
Telephone: (813) 218-5327
Fax: (813) 272-2498

21

FOR THE STATE OF GEORGIA

By: /s/ Logan B. Winkles

LOGAN B. WINKLES, *pro hac vice*
Georgia Bar No. 136906
lwinkles@law.ga.gov
RONALD J. STAY, *pro hac vice*
Georgia Bar No. 621732
rstay@law.ga.gov

Attorneys for Plaintiff
OFFICE OF THE GEORGIA
SECRETARY OF STATE
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334
Telephone: (404) 458-3434
Fax: (404) 657-3239


FOR THE STATE OF HAWAII

By: /s/ Rayni M. Nakamura-Watanabe

RAYNI M. NAKAMURA-WATANABE, *pro hac vice*
Hawaii Bar No. 9032-0
RNakamur@dcca.hawaii.gov
PATRICIA J. MOY
Hawaii Bar No. 5845-0
PMoy@dcca.hawaii.gov

Attorneys for Plaintiff
STATE OF HAWAII
SECURITIES ENFORCEMENT BRANCH
335 Merchant Street, Suite 205
Honolulu, Hawaii 96813
Telephone: (808) 586-2740
Fax: (808) 586-3977


FOR THE STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

22

STATE OF IDAHO
LAWRENCE G. WASDEN

By: /s/ Loren Messerly

LOREN MESSERLY, *pro hac vice*
Deputy Attorney General
loren.messerly@finance.idaho.gov
Idaho Bar No. 7434

Attorney for Plaintiff
STATE OF IDAHO
IDAHO DEPARTMENT OF FINANCE
P.O. Box 83720
Boise, ID 83720-0031
Telephone: (208) 332-8093
Fax: (208) 332-8099


FOR THE STATE OF INDIANA
OFFICE OF THE INDIANA ATTORNEY
GENERAL
Patricia Orloff Erdmann
Chief Counsel of Litigation

By: /s/ Jefferson S. Garn

JEFFERSON S. GARN, *pro hac vice*
Deputy Attorney General
Jefferson.Garn@atg.in.gov
Indiana Bar No. 29921-49

Attorney for Plaintiff
STATE OF INDIANA
INDIANA SECURITIES COMMISSIONER
302 W. Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
Fax: (317) 232-7979


FOR THE STATE OF KANSAS

By: /s/ Thomas E. Knutzen

THOMAS E. KNUTZEN, *pro hac vice*

23

*Special Assistant Attorney General*
tom.knutzen@ks.gov
Kansas Bar No. 24471

Attorney for Plaintiff
OFFICE OF THE KANSAS SECURITIES
COMMISSIONER
1300 SW Arrowhead Road
Topeka, KS 66604
Telephone: (785) 296-7890
Fax: (785) 296-6872


FOR THE STATE OF KENTUCKY

By: /s/ Gary Stephens

GARY STEPHENS, *pro hac vice*
Gary.stephens@ky.gov
Kentucky Bar No. 87740
CATHERINE FALCONER
Catherine.falconer@ky.gov

Attorneys for Plaintiff
STATE OF KENTUCKY
DEPARTMENT OF FINANCIAL INSTITUITONS
500 Mero St. 2SW19
Frankfort, KY 40601
Telephone: (502) 782-9052
Fax: (502) 573-8787


FOR THE STATE OF MAINE

By: /s/ Gregg D. Bernstein

GREGG D. BERNSTEIN, *pro hac vice*
gregg.bernstein@maine.gov
Maine Bar No. 8424

Attorney for Plaintiff
STATE OF MAINE SECURITIES
ADMINISTRATOR
6 State House Station
Augusta, Maine 04333
Telephone: (207) 626-8800

24

Fax: (207) 626-8828


FOR THE STATE OF MARYLAND

BRIAN E. FROSH
ATTORNEY GENERAL OF THE STATE OF
MARYLAND

By: /s/ Max F. Brauer

MAX F. BRAUER, *pro hac vice*
Assistant Attorney General
mbrauer@oag.state.md.us
Maryland State Does Not Use Bar Numbers

Attorney for Plaintiff
STATE OF MARYLAND EX REL
MARYLAND SECURITIES COMMISSIONER
200 Saint Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6950
Fax: (410) 576-6532


FOR THE PEOPLE OF MICHIGAN

By: /s/ Aaron W. Levin

PEOPLE OF THE STATE OF
MICHIGAN, by DANA NESSEL
ATTORNEY GENERAL

Aaron W. Levin, *pro hac vice*
Assistant Attorney General
levina@michigan.gov
Michigan Bar No. P81310

Attorney for Plaintiff
Michigan Department of Attorney General
525 W. Ottawa Street,
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Fax: (517) 335-7632

FOR THE STATE OF MISSISSIPPI

By: /s/ Seth Shannon_____

SETH SHANNON, *pro hac vice*
seth.shannon@ago.ms.gov
Mississippi Bar No. 103466
CRYSTAL UTLEY SECOY
crystal.utley@ago.ms.gov

Attorneys for Plaintiff
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (769) 237-6406
Fax: (601) 359-4231


FOR THE STATE OF NEBRASKA
L. JAY BARTEL
Bureau Chief
Legal Services Bureau


By: /s/ Joshua R. Shasserre_____

JOSHUA R. SHASSERRE, *pro hac vice*
Assistant Attorney General
Nebraska Bar No. 23885
joshua.shasserre@nebraska.gov

Attorney for Plaintiff
STATE OF NEBRASKA
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3888
Fax: (402) 471-3297


FOR THE STATE OF NEVADA

By: /s/ Erin M. Houston_____

ERIN M. HOUSTON, *pro hac vice*

26

Deputy Secretary of State, Securities Administrator
Nevada Bar No. 11814
ehouston@sos.nv.gov

Attorney for Plaintiff
STATE OF NEVADA
Office of the Nevada Secretary of State
Securities Division
2250 North Las Vegas Blvd., Suite 400
North Las Vegas, NV 89030
Telephone: (702) 486-2440
Fax: (702) 486-2452


FOR THE STATE OF NEW MEXICO

By: /s/ Alissa N. Berger

ALISSA N. BERGER, *pro hac vice*
Securities Enforcement Prosecutor
New Mexico Securities Division
New Mexico Bar No. 21769
Alissa.Berger@state.nm.us

Attorney for Plaintiff
STATE OF NEW MEXICO
New Mexico Securities Division
New Mexico Regulation and Licensing Department
5500 San Antonio Rd NE
Albuquerque, New Mexico 87109
Telephone: (505) 503-5987
Fax: (505) 222-9848


FOR THE STATE OF NEW YORK
LETITIA JAMES
ATTORNEY GENERAL OF THE STATE OF
NEW YORK

By: /s/ Tatyana Trakht

TATYANA "TANYA" TRAKHT, *pro hac vice*
Assistant Attorney General
tanya.trakht@ag.ny.gov
New York State Does Not Use Bar Numbers
PETER POPE

27

Chief, Investor Protection Bureau
peter.pope@ag.ny.gov

Attorneys for Plaintiff
ATTORNEY GENERAL FOR THE STATE OF
NEW YORK
28 Liberty Street, 21st Floor
New York, New York 10005
Telephone: (212) 416-8457
Fax: (212) 416-8816


FOR THE STATE OF OKLAHOMA

By: /s/ Robert Fagnant

ROBERT FAGNANT, *pro hac vice*
rfagnant@securities.ok.gov
Oklahoma Bar No. 30548

Attorney for Plaintiff
OKLAHOMA DEPARTMENT OF SECURITIES
204 N. Robinson Avenue, Suite 400
Oklahoma City, OK 73102
Telephone: (405) 280-7718
Fax: (405) 280-7742


FOR THE STATE OF SOUTH CAROLINA

By: /s/ Jonathan Williams

JONATHAN WILLIAMS, *pro hac vice*
jwilliams@scag.gov
South Carolina Bar No. 72509

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF ATTORNEY GENERAL
P.O. Box 11549
Columbia, SC 29211
Telephone: (803) 734-7208
Fax: (803) 734-7208

By: /s/ Shannon A. Wiley

SHANNON A. WILEY, *pro hac vice*
swiley@sos.sc.gov
South Carolina Bar No. 69806

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF THE SECRETARY OF STATE
1205 Pendleton Street, Suite 525
Columbia, SC 29201
Telephone: (803) 734-0246
Fax: (803) 734-1661


FOR THE STATE OF SOUTH DAKOTA

By: /s/ Clayton Grueb

CLAYTON GRUEB, *pro hac vice*
South Dakota Bar No. 4642
Clayton.grueb@state.sd.us

Attorney for Plaintiff
South Dakota Department of Labor & Regulation,
Division of Insurance
2330 N. Maple Ave, Suite 1
Rapid City, SD 57701
Telephone: (605) 773-3563
Fax: (605) 773-5369


FOR THE STATE OF TENNESSEE
HERBERT H. SLATERY III
Attorney General and Reporter
for the State of Tennessee

By: /s/ James P. Urban

JAMES P. URBAN, *pro hac vice*
Deputy Attorney General
TN B.P.R. No. 033599
james.urban@ag.tn.gov

Office of Tennessee Attorney General
Financial Division

29

P.O. Box 20207
Nashville, TN 37202-0207
Telephone: (615) 741-3739
Fax: (615) 532-8223

Attorney for Plaintiff
Commissioner of the Tennessee Department of
Commerce and Insurance


FOR THE STATE OF TEXAS
KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

JOSHUA R. GODBEY
Division Chief
Financial Litigation and Charitable Trusts Division

By: */s/ Christina Cella*  

CHRISTINA CELLA
Assistant Attorney General
State Bar No. 24106199
christina.cella@oag.texas.gov
LEA N. BRIGTSEN
Assistant Attorney General
State Bar No. 24054504
lea.brigtsen@oag.texas.gov

Financial Litigation and Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-2952
Fax: (512) 477-2348

30

*Attorneys for Plaintiff the State of Texas*


FOR THE STATE OF WASHINGTON

By: /s/ Ian S. McDonald

IAN S. MCDONALD, *pro hac vice*
Washington Bar No. 41403
Ian.McDonald@atg.wa.gov
Telephone: (360) 586-3264
Fax: (360) 664-0229

Attorney for Plaintiff
Washington State Department of Financial
Institutions, Securities Division
150 Israel Rd. SW
Tumwater, WA 98501
Telephone: (360) 902-8700
Fax: (360) 902-0524


FOR THE STATE OF WEST VIRGINIA

By: /s/ Michael Nusbaum

MICHAEL NUSBAUM, *pro hac vice*
michael.nusbaum@wvsao.gov
West Virginia Bar No. 12708

Attorney for Plaintiff
STATE OF WEST VIRGINIA
WEST VIRGINIA SECURITIES COMMISSION
1900 Kanawha Boulevard, East
Building 1, Room W-100
Charleston, WV 25305
Telephone: (304) 558-2251
Fax: (304) 558-4211


FOR THE STATE OF WISCONSIN
JOSHUA L. KAUL
Attorney General
State of Wisconsin
Wisconsin Department of Justice

By: /s/ Shannon A. Conlin

SHANNON A. CONLIN, *pro hac vice*
Assistant Attorney General
Wisconsin Bar No. 1089101
Conlinsa@doj.state.wi.us

WISCONSIN DEPARTMENT OF JUSTICE
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-1677
Fax: (608) 267-2779

*Attorney for Plaintiff State of Wisconsin*


FOR THE IOWA INSURANCE
COMMISSIONER
DOUGLAS M. OMMEN

By: /s/ Adam J. Kenworthy
ADAM KENWORTHY* *pro hac vice*
Iowa Bar No. AT0012137
Enforcement Attorney
adam.kenworthy@iid.iowa.gov

Attorney for Plaintiff
IOWA INSURANCE DIVISION
1963 Bell Ave, Ste 100
Des Moines, IA 50315
Telephone: (515) 654-6562
Fax: (515)-654-6500

## <u>CERTIFICATE OF SERVICE</u>

On June 10, 2021, I electronically filed the foregoing Memorandum of Law in Support of Support of the Receiver's Motion for an Order to Show Cause Why Defendant Lucas Thomas Erb *a/k/a* Lucas Asher *a/k/a* Luke Asher Should Not Be Held In Civil Contempt For Violations of the Court's Statutory Restraining Order and Consent Order of Preliminary Injunction and be subject to appropriate sanctions for violating the Court's Orders with the Clerk of this Court in the above captioned matter using the CM/ECF system and I am relying upon the transmission of the Clerk's Notice of Electronic Filing for service upon all parties in this.


<u>/s/ JonMarc P. Buffa</u>

33