# **FACT APPENDIX**

# DECLARATION OF PATRICIA GOMERSALL
## PURSUANT TO 28 U.S.C. § 1746

I, Patricia Gomersall, hereby make the following declaration based upon my personal knowledge:

1. I am a Senior Futures Trading Investigator in the Division of Enforcement at the Commodity Futures Trading Commission in Washington, D.C. I have worked in this capacity for the Commission since August 1987.

2. I am submitting this declaration as part of Plaintiffs' Memorandum of Law in Support of Support of the Receiver's Motion to Compel.

3. In September 2020, I submitted a sworn declaration that is included as part of the Fact Appendix in support of Plaintiffs Motion for an Ex Parte Restraining Order ("SRO Application") D.E. # 4-6; 12. It is incorporated by reference as if fully set forth herein.

4. I reviewed documents and information in the preparation of this declaration:

    a. Documents produced by Defendant TMTE, Inc., d/b/a Metals.com, Chase Metals, LLC, Chase Metals, Inc., (collectively "Metals") in twenty-three separate productions, between August 2019 and August 2020, pursuant to a subpoena by the CFTC dated July 25, 2019;

    b. Information regarding the establishment and ownership of firms in the name of, and/or controlled by the defendants, including the databases of:

        i. The California Secretary of State Business website at https://businesssearch.sos.ca.gov for business entity information on TMTE, Inc. d/b/a Metals.com, Barrick Capital, Inc., and Tower Equity, LLC;

Page 2 of 6

      ii. The Wyoming Secretary of State business website at https://wyobiz.wyo.gov/Business/FilingSearch.aspx for business entity information on Metals.com, LLC, Tower Equity, LLC, and Tower Holdings, LLC; and

      iii. The Delaware Division of Corporations website at https://icis.corp.delaware.gov/Ecorp/EntitySearch/NameSearch.aspx for business entity information on Barrick Capital, Inc.

c. Documents for bank and credit card accounts in the name of, and/or under the control of, the defendants, including documents from:

      i. One West Bank;

      ii. Bank of America, NA;

      iii. Wells Fargo Bank, NA;

      iv. Opus Bank;

      v. First Bank;

      vi. JPM Chase Bank; and

      vii. American Express.

d. Documents for investor accounts from Self-Directed IRA custodians ("SDIRA"), including:

      i. New Direction Trust Company;

      ii. Equity Institutional; and

      iii. The Entrust Group.

  e. Information regarding the sale of precious metals and bullion coins from wholesale metals dealers Bayside Metals Exchange ("Bayside") and Dillon Gage;

  f. Documents produced to the Commission, pursuant to formal access grants from the Alabama Securities Commission and the Texas State Securities Board;

  g. Initial Report of the Receiver, D.E. #181;

  h. Second Report of the Receiver, D.E. #217;

  i. Third Report of the Receiver, D.E. #233;

  j. Transcript of the Deposition of Lucas Asher dated November 5, 2020; and

  k. Transcript of the Deposition of Simon Batashvili dated November 4, 2020.

## II. SUMMARY

5. The evidence in the record shows that substantial commingling of funds occurred between accounts funded with investor deposits and numerous entities owned or controlled by Asher and Batashvili, including (but not limited to): Metals, Barrick Capital, Tower Equity LLC, Tower Holdings LLC, Tower Holdings, Inc., Tower Estates LLC, Administrative Account Services LLC, First American Estate and Trust LLC and Best New, Inc. Gomersall Decl. ¶¶ 24-27; 29-35.

6. The evidence in the record shows that these assets were transferred, dissipated, or diverted by the Defendants without regard for corporate formalities or distinctions. *Id.*

7. Based on my analysis of the records, this comingling of assets was an integral part of Defendant's overall scheme. *Id.*

8. Asher and Batashvili controlled a myriad of additional entities ("Affiliated Entities") whose identity and assets were uncovered by the Receiver, and are part of the Receivership Estate. *See* Third Report of the Receiver, Section F, p. 10 and D.E. #226.

9. The Affiliated Entities are: Access Unlimited LLC, Administrative Account Services, LLC, Amerivise, LLC, Aqua Billboards, Best New Inc., Chasing Gold, Chasing Metals, Inc., Delaware Wholesale Inc., Egon Pearson, LLC, Faulkner Management Corp., Faulkner Music LLC, First American Estate & Trust, First American Savings, Inc., Instribution, LLC, now Revo, LLC, Merrill Gold, LLC, Prometheus Laboratories, Int. (IBC), Prometheus Laboratories, Int. (PIF), Reagan Financial, Inc., Resource Financial Services, Inc., Retirement Insider, LLC, Street Invasion, Inc., Stuttgart Industrial, Inc., Tower Estates Holdings, Inc., Tower Estates, Inc., Tower Holdings, Inc., Tower Property One, LLC, Tower Property Two, LLC, TX Admin., Inc., USA Accounts, Inc., and USA Marketing, Inc. See D.E. 226, ¶ 4.

10. On March 22, 2021, the Court held: "[a]ccordingly, the court finds that the following Affiliated Entities were owned or controlled by one or more of the Defendants and/or Relief Defendant on September 22, 2020 . . . ." D.E. #230. The Court ordered "It is, therefore, hereby ordered, that the following Affiliated Entities are included within the definition of "Receivership Defendants" for purposes of identifying the "Receivership Estate" and are subject to the SRO, [Consent Order], and the [Entities Consent Order]. . . ." *Id*.

11. A true and correct copy of the pertinent parts of the Transcript of the Deposition of Lucas Asher dated November 5, 2020 is attached hereto as Exhibit 1.

12. A true and correct copy of the pertinent parts of the Transcript of the Deposition of Simon Batashvili dated November 4, 2020 is attached hereto as Exhibit 2.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2021, in Washington, DC.

_____
Patricia Gomersall

# Exhibit 1

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                    NORTHERN DISTRICT OF TEXAS

 3

 4                                          )
     COMMODITY FUTURES TRADING              )
 5   COMMISSION et al,                      )
                                            )
 6           Plaintiffs,                    ) Case No.:
                                            ) 3:20-CV-2910-L
 7      vs.                                 )
                                            )
 8   TMTE, INC. A/k/a METALS.COM,           )
     CHASE METALS, INC., CHASE              )
 9   METALS, LLC, BARRICK                   )
     CAPITAL, INC., LUCAS THOMAS            )
10   ERB a/k/a LUCAS ASHER a/k/a            )
     LUKE ASHER, and SIMON                  )
11   BATASHVILI                             )
                                            )
12           Defendants.                    )
                                            )
13      and                                 )
                                            )
14   TOWER EQUITY, LLC,                     )
                                            )
15   Relief Defendant                       )
                                            )
16

17      REMOTE VIDEO-RECORDED DEPOSITION OF LUCAS ASHER

18               Thursday, November 5, 2020

19                       VOLUME I

20

21   Stenographically Reported by:
     Mechelle S. Gonzalez
22   CSR No. 13250
     Job No. 96642
23

24

25   PAGES 1 - 291
```

1      A.   It was called Merrill Gold, I believe.

2      Q.   And was Simon a partner with you in that

3  venture?

4      A.   Yes.

5      Q.   Is Simon a member of any of your bands?

6      A.   No.

7      Q.   Who is the attorney representing you in

8  this action?

9      A.   Could you define "this action"?

10     Q.   This lawsuit which you are being deposed

11 here today.

12     A.   Mr. Arnold Spencer.

13     Q.   Did you execute an engagement agreement

14 with Mr. Spencer?

15     A.   I did.

16     Q.   And when did you do that?

17     A.   I don't recall a specific day.

18     Q.   Yesterday?

19     A.   No.

20     Q.   Three months ago?

21     A.   Shortly after I was informed I had a civil

22 action against me.

23     Q.   And how is Mr. Spencer being paid to

24 provide legal services to you?

25     A.   Through friends and family.

 1      Q.   Who are the friends and family who are
 2   paying for your legal services to Mr. Spencer?
 3      A.   I believe they vary.
 4      Q.   Let's start with your family members.  Who
 5   are the family members?
 6      A.   None.
 7      Q.   Pardon?
 8      A.   I don't have any family members helping.
 9      Q.   Well, you just testified earlier that
10   friends and family were the ones providing the
11   compensation for Mr. Spencer.
12           Is that not correct?
13      A.   I did, but I didn't stipulate that it was
14   my family.
15      Q.   What are the names of the friends who are
16   providing moneys to Mr. Spencer for your
17   representation?
18      A.   I believe one of them --
19           I'm sorry.  There was a sound.
20           Can you repeat that?
21      Q.   What are the names of the individual
22   friends or family of the friends who are providing
23   compensation to Mr. Spencer for your representation?
24      A.   I believe they vary.
25      Q.   Name the first one.  Name the first person.

1      A.   The first retainer I believe was paid by an
2   individual named Andrew.
3      Q.   What is Andrew's last name?
4      A.   I don't know.
5      Q.   What was the amount of the retainer?
6      A.   I was told it was 25,000.
7      Q.   Is that Andrew Saulton (Phonetic)?
8      A.   I don't know his last name.
9      Q.   Do you know Andrew?
10     A.   I don't.
11     Q.   Was this somebody who Simon -- was a friend
12  of Simon?
13     A.   Correct.
14     Q.   Who else was providing a retainer to
15  Mr. Spencer on your behalf?
16     A.   My bandmate, Christian.
17     Q.   How much has Christian paid to Mr. Spencer?
18     A.   It's for a separate matter, and it's
19  protected under privilege.
20          MR. SPENCER:  You can tell him the amount,
21  Lucas.
22          THE WITNESS:  5,000.
23          BY MR. CRAWFORD:
24     Q.   Who else has provided moneys to Mr. Spencer
25  for your representation?

```
 1        A.   I'm not aware of any others at this time.
 2        Q.   So as we sit here today under oath, it's
 3   your testimony that Andrew, a friend of Simon's,
 4   provided Mr. Spencer $25,000; and your bandmate,
 5   Christian, provided him $5,000; and you're not aware
 6   of any other person who's provided any moneys to
 7   Mr. Spencer for your representation; is that
 8   correct?
 9        A.   As I sit here before you today, I'm not
10   aware of any others at this time.
11        Q.   Have you made a promise to Christian, your
12   bandmate, to pay him back for moneys he's paid?
13        A.   I have not.
14        Q.   Have you executed any promissory notes to
15   Christian to repay that money?
16        A.   I have not.
17        Q.   Did you give to Christian any property in
18   exchange for the moneys he paid to Mr. Spencer?
19        A.   I did not.
20             MR. CRAWFORD:  I'm going to ask the court
21   reporter to bring up on the screen Exhibit Number 1.
22             (Receiver Exhibit 1 was marked for
23   identification by the court reporter and is attached
24   hereto.)
25             MR. CRAWFORD:  If you could spread that
```

# Exhibit 2

```
 1                    IN THE UNITED STATES DISTRICT COURT

 2                         NORTHERN DISTRICT OF TEXAS

 3

 4                                          )
     COMMODITY FUTURES TRADING              )
 5   COMMISSION et al.,                     )
                                            )
 6            Plaintiff,                    ) Case No.:
                                            ) 3:20-CV-2910-L
 7       vs.                                )
                                            )
 8   TMTE, INC. A/k/a METALS.COM,           )
     CHASE METALS, INC., CHASE              )
 9   METALS, LLC, BARRICK                   )
     CAPITAL, INC., LUCAS THOMAS            )
10   ERB a/k/a LUCAS ASHER a/k/a            )
     LUKE ASHER, and SIMON                  )
11   BATASHVILI                             )
                                            )
12            Defendants.                   )
                                            )
13       and                                )
                                            )
14   Tower Equity, LLC,                     )
                                            )
15   Relief Defendant                       )
                                            )
16

17

18    REMOTE VIDEO-RECORDED DEPOSITION OF SIMON BATASHVILI

19                    Wednesday, November 4, 2020

20                            VOLUME I

21

22   Stenographically Reported by:
     Mechelle S. Gonzalez
23   CSR No. 13250
     Job No. 96641
24

25   PAGES 1 - 201
```

1    Q.  Okay.  When did you do that?

2    A.  A few weeks ago, I believe.

3    Q.  And how is Mr. Spender being paid to

4  represent you in this matter?

5    A.  That was funds that were borrowed -- well,

6  my good friend paid for it, so ...

7    Q.  Your friend paid for it?

8    A.  That is correct.

9    Q.  And who is your friend who paid for it?

10   A.  Andrew Saul.

11   Q.  What does Andrew Saul do for a living?

12   A.  He's a production finance for -- I believe

13  it's Sony.

14   Q.  Have you ever conducted any business with

15  Andrew Saul individually or in the names of any of

16  the defendants, the relief defendant, or any of the

17  entities they own or control?

18   A.  Any business conducted over the last

19  25 years with him?

20   Q.  Yes, sir.  At any time.

21   A.  I'm sure there was, yes.

22   Q.  Okay.  And what was that?

23   A.  One I can remember recently is I sold him a

24  car about a few months back, about four or five

25  months ago.

```
 1        Q.   What kind of car was that?
 2        A.   It was a 1968 Camaro.
 3        Q.   Any other business that you have conducted
 4   with Andrew Saul either individually or on behalf of
 5   any of the defendants, relief defendants, or any
 6   entities that they own or control?
 7        A.   Not that I can recall right now.  That was
 8   the most recent thing I can remember.  Not that I
 9   can -- yeah.
10        Q.   So your answer is no?
11        A.   The answer is that's what I can remember.
12        Q.   Have you made a promise to Mr. Saul to pay
13   him back for the money that he has paid on your
14   behalf to have an attorney represent you?
15        A.   At some point I'm -- I'm sure I would have
16   to pay him back.
17        Q.   Did you execute any type of a loan or give
18   him any type of collateral for any of the moneys
19   that you paid to Mr. Spender?
20        A.   No, I did not.
21        Q.   How much money did you pay to Mr. Spencer?
22        A.   I believe it was 25,000.
23        Q.   Are you aware of any other moneys that have
24   been paid to Mr. Spencer for your representation to
25   date other than the $25,000 paid by Mr. Saul?
```

```
 1         A.   Not to my knowledge, sir.
 2              MR. CRAWFORD:  Okay.  I'm going to ask the
 3    court reporter to put onto the screen what we've
 4    marked as Exhibit Number 1 so we can take a look at
 5    that.
 6              (Exhibit 1 was marked for identification by
 7    the court reporter and is attached hereto.)
 8              THE VIDEOGRAPHER:  What exhibit, please?
 9              MR. CRAWFORD:  Exhibit Number 1.
10              THE VIDEOGRAPHER:  Right.  They're not --
11    they're not labeled as 1, so I need to know the file
12    number.
13              MR. CRAWFORD:  They are labeled as 1.
14    There's 1 through 4, and then there's A through B.
15              THE VIDEOGRAPHER:  I see.
16              MR. CRAWFORD:  Can you make that a bigger
17    screen?  I can see parts of it.  If you can --
18              THE VIDEOGRAPHER:  (Complies.)
19              MR. CRAWFORD:  There at the top.  I'm
20    sorry.  Raise it to the top so we can see the full
21    screen.  I don't think you have that top page.
22    There we go.  There we go.  Okay.  There you go.
23              BY MR. CRAWFORD:
24         Q.   So, Simon, I'm showing you what we've
25    marked as Exhibit Number 1, which is a copy of the
```