# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

COMMODITY FUTURES TRADING
COMMISSION, and

ALABAMA SECURITIES COMMISSION,
STATE OF ALASKA, ARIZONA
CORPORATION COMMISSION, CALIFORNIA
COMMISSIONER OF BUSINESS OVERSIGHT,
COLORADO SECURITIES COMMISSIONER,
STATE OF DELAWARE, STATE OF FLORIDA,
OFFICE OF THE ATTORNEY GENERAL,
STATE OF FLORIDA, OFFICE OF FINANCIAL
REGULATION, OFFICE OF FINANCIAL
REGULATION, OFFICE OF THE GEORGIA
SECRETARY OF STATE, STATE OF HAWAII,
SECURITES ENFORCEMENT BRANCH,
IDAHO DEPARTMENT OF FINANCE,
INDIANA SECURITIES COMMISSIONER,
IOWA INSURANCE COMMISSIONER
DOUGLAS M. OMMEN, OFFICE OF THE
KANSAS SECURITIES COMMISSIONER,
KENTUCKY DEPARTMENT OF FINANCIAL
INSTITUTIONS, MAIN SECURITIES
ADMINISTRATOR, STATE OF MARYLAND
EX REL MARYLAND SECURITIES
COMMISSIONER, ATTORNEY GENERAL
DANA NESSEL ON BEHALF OF THE PEOPLE
OF MICHIGAN, MISSISSIPPI SECRETARY OF
STATE, NEBRAKA DEPARTMENT OF
BANKING & FINANCE, OFFICE OF THE
NEVADA SECRETARY OF STATE, NEW
MEXICO SECURITIES DIVISION, THE PEOPLE
OF THE STATE OF NEW YORK BY LETITIA
JAMES, ATTORNEY GENERAL OF THE
STATE OF NEW YORK, OKLAHOMA
DEPARTMENT OF SECURITIES, SOUTH
CAROLINA ATTORNEY GENERAL, SOUTH
CAROLINA SECRETARY OF STATE, SOUTH
DAKOTA DEPARTMENT OF LABOR &
REGULATION, DIVISION OF INSURANCE,
COMMISSIONER OF THE TENNESSEE
DEPARTMENT OF COMMERCE AND
INSURANCE, STATE OF TEXAS,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Case No.: 3:20-cv-2910-L

| | |
|---|---|
| WASHINGTON STATE DEPARTMENT OF FINANCIAL INSTITUTIONS, WEST VIRGINIA SECURITIES COMMISSION, AND STATE OF WISCONSIN | § § § § § |
| **Plaintiffs,** | § § |
| v. | § § |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § |
| **Defendants,** | § § |
| and | § § |
| TOWER EQUITY, LLC, | § § |
| **Relief Defendant**. | § § § |

## FIFTH REPORT OF THE RECEIVER

Kelly M. Crawford, as the court-appointed Receiver ("Receiver"), submits his fifth report pursuant to this Court's *Statutory Restraining Order, Order for an Accounting, Order for Appointment of Receiver, Order for Expedited Discovery, and Other Equitable Relief and Order to Show Cause Regarding Preliminary Injunction* [Docket No. 16] (the *"SRO"*)[1], covering the period from June 26, 2021 through September 10, 2021.

---

[1] The *SRO* was continued in force by Consent Orders entered by the Court regarding the Defendant entities and the individual Defendants Asher and Batashvili [Docket Nos. 164, 165]. The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

# I.

## INVESTORS

On March 2, 2021 the Court entered an *Order Establishing Claims Adjudication Process* [Docket No. 227] (the "*Claims Order*"). The *Claims Order* sets a bar date of April 30, 2021, for claims to be mailed to the Receiver. Pursuant to the *Claims Order,* on March 12-14, 2021, the Receiver published in *USA Today* a Notice to Claimants in the Receivership of their right to file a claim in the Receivership and the bar date of April 30, 2021. The Receiver continued to obtain information from investors to build a database of contact information for the investors, the amount paid to the Defendants, and the metals purchased. In addition, the Receiver prepared a database of non-metals investors and a database of creditors. The Receiver mailed and/or emailed claim confirmation forms to 1,674 investors in its database of metals purchasers; mailed and/or emailed non-metals claim forms to 28 investors and 400 other possible investors; and mailed and/or emailed creditor proof of claim forms to 109 creditors.

In order to keep investors and creditors updated with developments in the Receivership and answer questions regarding the claims process, the Receiver maintained his website, www.metalsandbarrickcapitalreceivership.com. The Receiver posted on the website a list of frequently asked questions regarding the claims process.

Because most of the investors are elderly and communication were by mail, which often times was very slow or sent to an incorrect address, the Receiver requested the Court to extend the bar date for filing claims from April 30, 2021 until June 15, 2021[2]. On May 7, 2021, the Court granted the Receiver's motion and extended the bar date.

---

[2] *Motion to Extend Deadlines Under the Order Establishing Claims Adjudication Procedures* filed on April 26, 2021 [Docket No. 241].

As of the bar date, the Receiver received 1,003 claims of metals investors, 14 claims of non-metal investors, and 29 proofs of claim from creditors.  After the bar date, the Receiver received 9 claims of metals investors.

The Receiver analyzed the claims and made his recommendation regarding the claims in a Claims Report filed on July 30, 2021 [Docket No. 290].  The Receiver recommended approval of timely filed claims of metals investors totaling $63,407,530.21.  The Receiver also recommended approval of non-timely filed claims of metals investors totaling $499,089.72.  In addition, the Receiver recommended approval of non-metal claims totaling $4,323,849.  Based on the foregoing, the Receiver's total recommended claims for metal (timely and untimely) investors and non-metal investors is $68,230,468.93.  Finally, the Receiver analyzed and made recommendations regarding 29 creditor claims.

Pursuant to the *Claims Order,* on July 30, 2021, the Receiver mailed to each investor a package that included a copy of the Receiver's Claims Report, a letter regarding the Receiver's recommendation of the investor's claim, and a worksheet showing the calculation of the investor's claim.  The Receiver also advised the investors that pursuant to the Claims Order, objections to the Receiver's claims recommendations must be mailed to the Receiver by no later than September 30, 2021.

## II.

## ASSETS RECOVERED TO DATE

The assets recovered by the Receiver since June 26, 2021 are as follows:

| | |
|---|---|
| Proceeds from sale of Mercedes: | $75,000 |
| Manufacturer's Bank: | $34,985 |
| Frontline VC LP distribution: | $37,292.05 |
| Tower Realty Partners distribution: | $525 |

| Solis Fl. Investors II, LP distribution: | $689 |
| Stonecrest CA Investors II, LP distribution: | $1,237 |
| Copperfield Tx Investors distribution: | $802 |
| Frankford Investors II, LP distribution: | $343 |
| Interest earned through  August 31st | $1,090.90 |

With the recovery of the foregoing additional assets, plus the assets recovered as of the *Receiver's Initial Report,* the *Receiver's Second, Third, and Fourth Reports*, and less the monies paid for Receivership fees and expenses, the balance in the Receivership account as of September 6, 2021 is $8,607,459.47.

## III.

## POTENTIAL SOURCES OF RECOVERY

The Receiver identified the following additional sources for recovery of investor monies.

### A.    PERSONAL PROPERTY

The Receiver also has possession of three paintings taken from the Defendants' offices that are of nominal value that the Receiver is offering for sale online.

The Receiver took possession of certain jewelry given by Defendant Simon Batashvili to his wife Fainche McCarthy.  Initial appraisals of the jewelry indicate it is worth less than $10,000.  The Receiver discovered that Defendant Simon Batashvili and his wife Fainche in April, 2020 sought to insure jewelry that was valued at more than  $380,000[3].  The Receiver made demand upon Batashvili and his wife to turn over the jewelry.  Batashvili initially turned over a Rolex Cosmograph watch valued at $28,500 and a diamond ring valued at approximately $59,000.  After further demands by the Receiver, Batashvili turned over to the Receiver a woman's ring, a Cartier

---

[3] *Appendix in Support of Receiver's Motion for "Show Cause" hearing to Hold Defendant Simon Batashvili in Civil Contempt,* [Docket No. 251], App. 00041-00042.

watch, and a Rolex watch.  The Receiver contends Batashvili and his wife remain in possession of additional jewelry they have not turned over to the receivership.

Finally, the Receiver took possession of furniture, artwork, guitars, and musical equipment belonging to the Defendants Lucas Asher and Simon Batashvili that the Receiver is currently storing.   Pursuant to the terms of the Court's *Consent Order Governing the Administration of the Receivership, Procedures Governing the Sale or Abandonment of Personal Property, Notice of Intended Sale and Disposition of Various Items, Fee Application Procedures.* [Docket No. 213] (the "*Administration Order*"), the personal property of the individual defendants, including the jewelry received from Simon Batashvili and his wife, cannot be sold until a final judgment is obtained by the Plaintiffs against the individual defendants, or the defendants are dismissed from the lawsuit.

## B.    REAL PROPERTY

During the Receiver's investigation, the Receiver discovered that in 2019 Defendant Tower Equity, LLC, or an affiliated Tower entity, purchased at a Sheriff's sale 17 residential properties in Philadelphia, Pennsylvania.  According to public records, Tower paid a total of $1,254,000 for these properties.

The Receiver retained three appraisers to appraise the fair market value of each of the 17 properties for sale.  In addition, the Receiver retained a real estate broker in Philadelphia who is actively marketing the properties for sale.

The Receiver entered into contracts for the sale of 6 of the 17 properties as follows:

| | |
|---|---|
| 6885 N. 19th Street, Philadelphia, PA 19126 | $260,000 |
| 6616 Chew Avenue, Philadelphia, PA 19119 | $145,000 |
| 5782 Haddington Street, Philadelphia PA 19141 | $142,000 |
| 434 E. Cheltenham Avenue, Philadelphia PA 19120 | $204,000 |
| 5135 Jackson Street, Philadelphia PA 19124 | $119,000 |

| 827 Rhawn Street, Philadelphia PA 19111 | $235,000 |
|---|---|
| **Total:** | **$1,105,000** |

The Receiver filed motions with the Court seeking approval to sell the foregoing properties. After a hearing on August 19, 2021, the Court entered an Order authorizing the Receiver's sale of the six properties.  [Docket No. 298].  Since the entry of the Court's Order, the contract for the sale of the Chew property was terminated because the buyer's financing fell through.  The Receiver expects to close on the sale of the remaining properties in September, 2021.

In addition, the Receiver entered into a contract for the sale of property located at 404 N. Wanamaker Street, Philadelphia, PA 19131 for an effective price of $126,000, and on August 25, 2021, the Receiver filed a motion with the Court requesting approval of the sale of that property. Also, the Receiver entered into a contract for the sale of property located at 178 Rosemar Street, Philadelphia, PA 19120 for $105,000, and is filing a motion with the Court requesting approval of the sale of that property.

Defendant Asher testified in his asset deposition that Defendant Tower Equity, LLC, or an affiliated Tower entity, purchased fractional interests in properties in Florida, Tennessee, Texas, and Pennsylvania – ranging from commercial to industrial to multi-family.   The Receiver discovered that Asher used Tower Equity to invest $215,000 with Crowdstreet for the purchase of fractional interests in various real estate projects.  Such interest has been assigned by Crowdstreet to the Receiver and to date the Receiver has received distribution checks from such investment totaling $49,489.05.  The property interests are identified as follows:

| Bristol Development – Vista Brooklyn | $25,000 investment |
|---|---|
| Feldman Equities – Morgan Stanley Tower | $30,000 investment |

| | |
|---|---|
| Frontline Holdings – Chateau on the River | $25,000 investment[4] |
| Rhodium Asset Management – Grand Pointe Apts. | $25,000 investment |
| RREAF – Residence at Edinburg | $50,000 investment |
| Trident Capital Group – St. Louis Indust. | $35,000 investment |
| J. Jeffers &Co. – The Huron Building | $25,000 investment |

Tower Equity also invested through Crowdstreet $50,000 in an entity that owned a property known as the Dixon Landing Research Park. That property was sold and $65,708 was distributed to the receivership.

The Receiver further discovered that Defendant Tower Equity, LLC invested $201,000 in Cadre Investments. Such interest has been assigned by Cadre Investments to the Receiver and to date the Receiver has received distribution checks from such investment totaling $15,919. The property interests are identified as follows:

| | |
|---|---|
| 7421 at Frankford in Dallas, Texas | $50,000 investment |
| Lodge at Copperfield in Houston, Texas | $50,000 investment |
| Stonecrest in San Diego, California | $51,000 investment |
| Solis at Winter Park, Orlando, Florida | $50,000 investment |

The Receiver is continuing his investigation into real properties in which the Defendants or Relief Defendants or entities they own or control may have an interest.

The Receiver made demand upon the lessor of 8383 Wilshire Blvd, the headquarters of the Defendants, to return the security deposit in excess of $1 million held by the lessor. To date the lessor has refused to turn over the security deposit and the Receiver will request the Court to compel the lessor to turn over the security deposit to the Receiver.

---

[4] This property was sold and the receivership received a distribution of $37,292.05 from such sale.

Finally, the Receiver, attempted to negotiate a settlement with the lessor of the house rented to Defendant Simon Batashvili to return a portion of the $35,000 security deposit held by the lessor. The lessor refuses to return any portion of the security deposit to the Receiver and the Receiver will have to request the Court to compel the lessor to turn over the security deposit.

## C.    COMMISSIONS

The law is well established that a Receiver may recover commissions received from sales persons for their role in soliciting investor monies for an unlawful scheme. *Warfield v. Byron,* 436 F.3d 551, 560 (5th Cir. 2006). In such instance, sales persons are not being paid with profits earned from a legitimate enterprise, but instead are being paid commissions from the principal amount received from investors in the scheme. Regardless of whether the salespersons knew or should have known that Metals.com or Barrick capital or the other Defendant entities were being operated illegally, the commissions the salespersons received are recoverable as fraudulent conveyances. *Id.* As the recipient of a fraudulent transfer, the salesperson must be able to show that he or she received the commissions in good faith *and* in exchange for reasonably equivalent value. While a salesperson may be able to claim he or she received the commissions in good faith, the salesperson cannot show he or she provided reasonably equivalent value in exchange for the money received. Adding more investors to a fraudulent scheme does not provide value, but rather only enlarges the number of victims.

The Receiver traced several million dollars of investor funds paid in commissions. The Receiver mailed the salespersons a copy of the *SRO* and made demand upon the salespersons to provide the Receiver with information regarding the monies received and services provided. In addition, the Receiver sent the salespersons a second letter informing them of the Receiver's intent to file a lawsuit against them to recover the commissions and inviting settlement discussions. The

Receiver is filing a lawsuit against the following salespersons and their entities seeking the recovery of $14,395,106 in commissions[5], as follows:

| | |
|---|---|
| David Bleeden and his entities<br>Bear Hunter, LLC and Xan, LLC | $658,938 |
| Athena Hunter and her entity<br>TP Boss, LLC | $132,902 |
| Daniel Halimi and his entity<br>Halimi Group: | $271,773 |
| Benjamin Lee and his entity<br>Mettabel, Inc. | $219,725 |
| Kyle Sanna and his entities<br>LTK Marketing and Hurrica) | $1,274,143 |
| Walter Vera and his entities<br>Midwood Capital and Verastan Group | $4,533,520 |
| Randall Kohl/Alan Kohl and his entity<br>The Voice, Inc. | $486,807 |
| Deric Ned and his entities<br>Poortrap Entertainment, Inc. and Deep State Marketing | $2,975,506 |
| Christopher Stephen and his entity<br>Eco Blue | $255,689 |
| Michael Peralta and his entity<br>MPERA Corp. | $130,341 |
| Richard Joe Dougherty and his entity<br>Rich Dough, Inc. | $247,024 |
| Sean Reza/Thomas Reza and his entity<br>Amerigold | $737,094 |
| Matthew Levitt and his entity<br>Gooner Enterprises | $625,414 |

---

[5] These damages claims are subject to change as discovery is conducted in the lawsuit.

| | |
|---|---|
| James Flick and his entity<br>Ellipsis Marketing | $107,210 |
| Joshua Ferdman and his entity<br>Ferdman Group Inc.<br>\ | $126,115 |
| Andrew J. Eilers and his entity<br>Andrew J. Eilers Consulting Inc. | $61,332 |
| Alexander Flamer and is entity<br>9inth Level Marketing | $27,101 |
| David Wolan and his entity<br>Harper Metals | $129,093 |
| Gabriel Marquez and his entity<br>Architect Business Marketing | $387,301 |
| Brock Bowers and his entity<br>TOTM Production Group, LLC | $58,616 |
| Phillip Levy and his entity<br>IQ Capital Advisors | $163,683 |
| Gary Schneider and his entity<br>BLK Ops | $521,749 |
| Bruce Always and his entity<br>Always Talent Transformation Inc. | $264,030 |
| **TOTAL:** | **$14,395,106** |

## D.   INVESTMENTS BY THE DEFENDANTS

At his asset deposition, Defendant Asher testified that he used Defendant Tower Equity LLC to make a number of venture capital, equity, or stock purchases, including an investment of approximately $300,000 in Space Exploration Technologies Corp. ("SpaceX").   Through his investigation the Receiver learned that on February 28, 2019, Tower Equity LLC invested $250,000 in a series of Equidate Investments, LLC, now Forge, which in turn, purchased shares of Troy Capital Partners SX IX, LLC, which owns shares of SpaceX.   The Receiver is in discussions with Forge regarding liquidation of this interest.

In addition, the Receiver obtained information from EquityZen showing that Tower Equity LLC has investments through EquityZen totaling $334,780 in the following entities:

| | |
|---|---|
| Dave | $10k |
| Desktop Metal | $10k |
| Flexport | $10k |
| Lookout | $10k |
| Bird | $10k |
| Robinhood | $25k |
| Zocdoc | $10k |
| Wish | $10k |
| 23andMe | $10k |
| Carbon | $10k |
| Instacart | $10k |
| Acquia | $10k |
| Outbrain | $10k |
| Collective Health | $10k |

| | |
|---|---|
| Automattic | $10k |
| The Honest Company | $10k |
| Hotel Tonight | $10k |
| Betterment | $10k |
| Quanergy Systems | $10k |
| Addepar | $10k |
| Circle | $10k |
| Kobalt | $10k |
| Ripple | $25k |
| SoFi | $10k |
| Virgin Hyperloop | $25k |
| Buzzfeed | $25k |
| Planet | $14,472 |

Desktop Metal went public and the shares attributable to the receivership were distributed to a brokerage account in the name of the receivership.  In addition, Tower had an equity investment in Palantir, which went public.  Shares attributable to the receivership were distributed to a brokerage account in the name of the receivership.

The Receiver also discovered that Defendant Batashvili used Relief Defendant Tower Equity LLC to invest $100,000 in National Training Services, LLC ("NTS").  The Receiver made demand upon Chris Daigle, a member of NTS, to account for the disposition of the investment.  Mr. Daigle contends NTS went out of business and in response to the Receiver's demands provided the Receiver with certain information regarding the distribution of the monies.  The Receiver has follow-up questions outstanding to Mr. Daigle that have yet to be answered.

### E.     MONIES AND METALS HELD BY BAYSIDE METAL EXCHANGE

Once the Defendants received monies from the investor victims, the Defendants placed orders for the metals themselves with Bayside Metal Exchange ("BME").   BME would, in turn, usually deliver the metals to the depository for the investor.   The Defendants, of course, would take their illegal gains from the monies received from the investors before transferring monies to BME for the purchase of the metals.

When BME learned of the Receivership, BME froze all pending transactions with the Defendants[6].  BME, in cooperation with the Receiver, provided the Receiver a list of all pending transactions.   While the Receiver contends BME is required to turn over to the Receiver (for distribution to the investors who placed the pending orders) the money BME received for pending transactions, BME argues it did not assume that risk and instead is prepared to complete the pending transactions and deliver the metals in their inventory.

Putting aside the issue of whether BME should bear the risk and return all money it received from the Defendants, the Receiver and BME reached an agreement whereby BME provides the Receiver with a liquidation price for the metals it is holding for a customer and the Receiver contacts the customer and finds out if the customer wishes to have the metals delivered or the metals liquidated and the monies delivered.   Such agreement is without prejudice to the rights of any of the parties to the lawsuit, the Receiver, the customers, or BME.   The liquidation price of the metals BME had pending for delivery to the investors as of January 4, 2021 was $2,640,450.

Since that time, the Receiver has worked with the investors and BME to arrange for either the liquidation or delivery of metals to investors totaling $1,790,499.29.   In addition, BME

---

[6] BME identified the following accounts as the Defendants or under the possession and control of the Defendants, and froze pending transactions with Barrick Capital, Glencore Financial, Metals.com, Newmont Financial, Northwestern Finance, and USA Mint.

continues to hold metals in the name of the Defendants with an estimated liquidation value of approximately $352,000.

F.     **POTENTIAL FRAUDULENT TRANSFER ACTIONS**

The Receiver is investigating the transfer of monies by the Defendants to third parties to determine whether reasonably equivalent value was exchanged in good faith by the third party. For instance, the Receiver identified more than $20 million that was transferred by the Defendants to MagicStar Arrow Entertainment, LLC, an entity owned by Carlos Cruz ("MagicStar"). The Receiver requested MagicStar to provide evidence of any goods or services provided to the Defendants in exchange for the transfers, and to date MagicStar has failed to comply with the Receiver's request. The Receiver identified numerous other significant transfers of funds for which he is seeking evidence from the recipients of the goods or services provided in exchange.

G.     **THE MYRIAD OF ENTITIES OWNED BY DEFENDANTS**

The Receiver obtained evidence showing that as of the date of the Receivership, the Defendants owned or controlled a myriad of entities. The Receiver submitted such evidence of control to the Court and on March 22, 2021, the Court entered an *Order Granting Receiver's Motion to Identify Certain Entities in Receivership* [Docket No. 230] identifying the following entities as subject to the Receivership Orders of the Court:

> Access Unlimited LLC
> Administrative Account Services, LLC
> Amerivise, LLC
> Aqua Billboards
> Best New Inc.
> Chasing Gold
> Chasing Metals, Inc.
> Delaware Wholesale Inc.
> Egon Pearson, LLC
> Faulkner Management Corp.
> Faulkner Music LLC
> First American Estate & Trust
> First American Savings, Inc.

Instribution, LLC, now Revo, LLC
Merrill Gold, LLC
Prometheus Laboratories, Int. (IBC)
Prometheus Laboratories, Int. (PIF)
Reagan Financial, Inc.
Resource Financial Services, Inc.
Retirement Insider, LLC
Street Invasion, Inc.
Stuttgart Industrial, Inc.
Tower Estates Holdings, Inc.
Tower Estates, Inc.
Tower Holdings, Inc.
Tower Property One, LLC
Tower Property Two, LLC
TX Admin., Inc.
USA Accounts, Inc.
USA Marketing, Inc.

The Receiver is continuing to gather evidence of additional entities owned and controlled by the Defendants that should be made subject to the Receivership Orders of the Court.

## IV.

## PENDING REGULATORY AND CIVIL ACTIONS AGAINST THE DEFENDANTS

At the time the Receiver was appointed, there were regulatory actions pending against the Defendants in twenty-one (21) States. Since June 26, 2021, the Receiver participated in the regulatory actions pending in Kentucky and Montana, including the review and revision of a consent decree proposed by the State of Montana.

## V.

## RECORDS OF THE DEFENDANTS AND RELIEF DEFENDANT

The vast majority of the records of the Defendants and Relief Defendant Tower Equity were digitally stored on various cloud platforms such as Microsoft, Google, Drop Box, Salesforce, Intuit, and Amazon. Defendants Asher and Batashvili, as well as the IT managers for the Defendant entities, claimed that because their personal computers were seized by the FBI, they were unable to

retrieve their login and passwords required to access the cloud platforms. They claim that such logins and passwords change often and are stored on the seized computers.

The Receiver provided the *SRO* to each of the cloud platforms and demanded that they grant the Receiver access. After much delay and the threat of contempt actions by the Receiver, Microsoft, Intuit, and Sales Force finally complied with the *SRO* and granted access to the Receiver. Meanwhile, Google continued its refusal to grant access to the Receiver. As a result, the Receiver filed an *Emergency Motion for "Show Cause" Hearing to Hold Google, Inc. in Civil Contempt"*. On the eve of the hearing on the contempt motion, the Receiver gained access to and control of the Google platform.

The information obtained by the Receiver from the digital platforms, as well as information obtained from the primary office of the Defendants and others, has been loaded by the Receiver's attorneys onto a DISCO platform. On June 25, 2021, the Receiver made access to this information available to the Plaintiffs and the Defendants. In addition, the Receiver made available for inspection at the Receiver's office, documents from the Defendants' office that were not loaded onto the DISCO platform, and copies of the bank records and credit card statements received from the banks.

On August 24, 2021, the Receiver received from the FBI a copy of images taken from the computers and electronic equipment at the office of the Defendants at 8383 Wilshire Blvd., Beverly Hills, California. The Receiver is in the process of loading the images onto the DISCO platform and will make such images available to the parties in the lawsuit.

Also, after numerous requests, the Receiver finally received relevant bank records from Bank of America. The Receiver also obtained records from Wells Fargo and other banks. The Receiver provided the bank records obtained to his accounting firm and the accounting firm is working on a forensic accounting.

# VI.

## RECOMMENDATIONS OF THE RECEIVER

Based on the foregoing, the Receiver makes the following recommendations for the continuation of the Receivership.

### A. PROCEDURES FOR RECEIVERSHIP

The *Administration Order* establishes procedures for the Receiver to efficiently administer the Receivership estate and sets forth the procedures for the Receiver to follow in selling personal and real property. The Receiver will continue to follow these procedures in the administration of the Receivership.

### B. CLAIMS PROCESS FOR INVESTORS AND CREDITORS

A substantial amount of time was dedicated to the claims process established by the Court in the Claims Order. Now that the claims have been received, analyzed, and recommended by the Receiver to the Court, the Receiver is focused upon addressing any objections to his claim recommendations.

Once the Court enters an Order with a list of approved investor and creditor claims the Receiver will make a proposal to the Court regarding the classification of the claims and the means of distributing assets to approved claimants. Upon entry of an Order from the Court approving the means of distribution of assets to approved claimants, the Receiver can begin distributing monies. The Receiver anticipates the claims process can be completed within the fourth quarter of 2021 and is hopeful an initial distribution of assets can be made in the first quarter of 2022.

### C.    COMPELLING DISCLOSURE OF SOURCE OF ATTORNEYS' RETAINER

The Receiver requested counsel for Defendants Batashvili and Asher to disclose the source of the retainers they received to make a purported "limited appearance" for the Defendants.[7] Without any legal basis whatsoever, these counsel refused the Receiver's request, claiming the Receiver has no basis to request such information.   Consequently, on May 21, 2021 the Receiver filed a Motion to Compel[8] requesting the Court to specifically order counsel to disclose the source of their retainers.   On May 24, 2021, the Court referred the Motion to United States Magistrate Toliver.   After hearing, on July 22, 2021, Magistrate Toliver granted the Receiver's Motion to Compel and ordered counsel for Defendants Batashvili and Asher to disclose the source of the retainers they received.   [Docket No. 296].   In turn, they disclosed that at least a portion of their retainers were received from an entity or entities in the name of Carlos Cruz – the same Carlos Cruz who owned MagicStar Arrow and received more than $20 million from the Defendants.

### D.    ENFORCE DEFENDANTS' COMPLIANCE WITH THE *SRO*

As the Court is aware, the Receiver discovered that in blatant disregard of  this Court's Receivership Orders, Defendant Lucas Asher transferred $550,000 of monies that belonged to the Receivership estate out of an account in which he was the sole signatory.   After an evidentiary hearing on the Receiver's Motion to Hold Defendant Lucas Asher in Civil Contempt of Court, Defendant Asher submitted to the Court an *Agreed Order Finding Defendant Lucas Asher in Contempt of this Court's Orders* [Docket No. 216]  *(*the *"Contempt Order")*.   In the *Contempt Order* entered by the Court, the Court found Defendant Asher in civil contempt of court and ordered that in order to purge himself of the contempt he was required to appear at a continued asset

---

[7] Attorneys from the law firms Bradley Arant Boult Cummings LLP and Quinn Emanuel Urquhart & Sullivan LLP made a purported limited appearance as counsel for Defendants Asher and Batashvili for the purpose of seeking an amendment to the *SRO* to allow for monies to be paid to the law firms.  The Receiver opposed this motion.

[8] *Motion to Compel* [Docket No. 254] filed on May 21, 2021 (the "Motion").

deposition taken by the Plaintiffs and Defendant and provide "full, complete, and accurate testimony".

Pursuant to the *Contempt Order*, on January 29, 2021 the Plaintiffs and Receiver took the asset deposition of Defendant Asher.  During the deposition Defendant Asher, represented by counsel, testified under oath that he would provide the Receiver with certain information requested during the deposition.  By letter from the Receiver to Defendant Asher's counsel dated February 16, 2021, the Receiver listed the information Defendant Asher promised during the deposition to provide.

Despite numerous demands by the Receiver, Defendant Asher failed to produce any of the information he promised in his deposition.  On July 1, 2021, the Court entered an Order requiring Defendant Asher to provide the information to the Receiver by July 29, 2021.  [Docket No. 280]. On July 29, 2021, the attorney for Defendant Asher provided the Receiver with a letter that provided some, but not all, of the information Defendant Asher promised in his deposition.  On August 4, 2021, the Receiver filed the Receiver's Response to Defendant Lucas Asher's Notice Regarding Court's July 1, 2021 Order and Receiver's Requested Discovery Materials [Docket No. 294], identifying Defendant Asher's failure to produce all of the information promised at his deposition.  On August 30, 2021, Gene Besen of the law firm of Bradley Arant Boult Cummings LLP sent the Receiver a letter providing additional information Defendant Asher promised to produce at his deposition.  On August 31, 2021, the Receiver responded with a letter identifying four requests for information that Defendant Asher still had not answered.  To date, Defendant Asher has not fully complied with the *Contempt Order* and has not purged himself of his civil contempt.

The Receiver discovered that like Defendant Asher, Defendant Batashvili transferred nearly a half million dollars of receivership assets out of an account in which Defendant Batashvili was the

sole signatory.  Consequently, on May 13, 2021 the Receiver filed the *Receiver's Motion for "Show Cause" Hearing to Hold Defendant Simon Batashvili in Civil Contempt and Brief in Support* [Docket No. 250] (the "Contempt Motion") and provided the Court with evidence that after entry of the *SRO*, Defendant Batashvili transferred $492,500 out of an account at East West Bank in the name of Tower Estates, Inc. in which Defendant Batashvili was the sole signatory.  The Receiver also provided the Court with evidence that in April of 2020 Defendant Batashvili sought insurance for two Rolex watches he owned and that had not been turned over to the Receiver.  In addition, the Receiver informed the Court as part of the Contempt Motion that Defendant Batashvili still had not provided information to the Receiver that Defendant Batashvili promised during his deposition to provide to the Receiver.

To date, $457,000 of the $492,500 in receivership assets Defendant Batashvili hid from the Receiver have been turned over to the receivership.  In addition, Defendant Batashvili turned over to the Receiver one of the two Rolex watches he owned and sought to insure in April, 2020. Defendant Batashvili refuses to turn over or explain his inability to turn over the remaining Rolex watch.  Defendant Batashvili provided the Receiver responses to some, but not all of the information Defendant Batashvili promised during this deposition to provide to the Receiver.  The Motion is pending before the Court.

### E.  TIMELINE FOR THE RECEIVERSHIP

The Receiver recommends continuation of the Receivership to complete the discovery, seizure, and liquidation of additional assets; pursuit of claims against recipients of fraudulent transfers; completion of the claims process described above; and distribution of the assets recovered to the approved claimants. With the significant scope of the Receivership, number of investor victims, and amount of loss, the Receiver estimates it will be necessary to continue the Receivership in place through 2021 and into 2022.

Respectfully submitted, September 10, 2021.

**RECEIVER KELLY M. CRAWFORD**

*/s/ Kelly M. Crawford*
Kelly M. Crawford, Receiver
State Bar No. 05030700
SCHEEF & STONE, L.L.P.
500 North Akard, Suite 2700
Dallas, Texas 75201
Tele: 214/706-4200
Fax:  214/706-4242

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 10, 2021 I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ Kelly M. Crawford
KELLY M. CRAWFORD