IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>ALABAMA SECURITIES COMMISSION, STATE OF ALASKA, ARIZONA CORPORATION COMMISSION, CALIFORNIA COMMISSIONER OF BUSINESS OVERSIGHT, COLORADO SECURITIES COMMISSIONER, STATE OF DELAWARE, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, OFFICE OF THE GEORGIA SECRETARY OF STATE, STATE OF HAWAII, SECURITIES ENFORCEMENT BRANCH, IDAHO DEPARTMENT OF FINANCE, INDIANA SECURITIES COMMISSIONER, IOWA INSURANCE COMMISSIONER, DOUGLAS M. OMMEN, OFFICE OF THE KANSAS SECURITIES COMMISSIONER, KENTUCKY DEPARTMENT OF FINANCIAL INSTITUTIONS, MAINE SECURITIES ADMINISTRATOR, STATE OF MARYLAND EX REL MARYLAND SECURITIES COMMISSIONER, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, MISSISSIPPI SECRETARY OF STATE, NEBRASKA DEPARTMENT OF BANKING & FINANCE, OFFICE OF THE NEVADA SECRETARY OF STATE, NEW MEXICO SECURITIES DIVISION, THE PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OKLAHOMA DEPARTMENT OF SECURITIES, SOUTH CAROLINA ATTORNEY GENERAL, SOUTH CAROLINA SECRETARY OF STATE, SOUTH DAKOTA DEPARTMENT OF LABOR & REGULATION, DIVISION OF | **PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER TO SHOW CAUSE HEARING TO HOLD DEFENDANTS ASHER AND BATASHVILI IN CIVIL CONTEMPT**<br><br>Case No.: **3-20-CV-2910-L**<br><br>Judge: Judge Sam A. Lindsay |

INSURANCE, COMMISSIONER OF THE
TENNESSEE DEPARTMENT OF
COMMERCE AND INSURANCE, STATE
OF TEXAS, WASHINGTON STATE
DEPARTMENT OF FINANCIAL
INSTITUTIONS, WEST VIRGINIA
SECURITIES COMMISSION, AND STATE
OF WISCONSIN.

 Plaintiffs,

v.

TMTE, INC. a/k/a METALS, CHASE
METALS, INC., CHASE METALS, LLC,
BARRICK CAPITAL, INC., LUCAS
THOMAS ERB a/k/a LUCAS ASHER a/k/a
LUKE ASHER, and SIMON BATASHVILI,

 Defendants;

and

TOWER EQUITY, LLC,

 Relief Defendant.

## <u>TABLE OF CONTENTS</u>

**TABLE OF AUTHORITIES**……………………………………………………....…iii

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER TO SHOW CAUSE HEARING TO HOLD DEFENDANTS ASHER AND BATASHVILI IN CIVIL CONTEMPT**........................................................................ 1

**I.        FACTS** ........................................................................................................ 3

    A.     Asher and Batashvili Have Failed to Purge Their Prior Contemptuous Conduct... 3

    B.     Tower Trade, Retirement Insider, and Portfolio Insider are All Receivership Entities and Controlled By Asher and Batashvili .................................................. 3

        1.   Asher and Batashvili Are Officers or Directors and Supervise Employees of Portfolio Insider……………………………………………………………...5

        2.   Asher Controls the Operations of Portfolio Insider……………………….…...6

        3.   Batashvili Supervises Employees and Directly Solicits Victims…………….…6

    C.     Portfolio Insider Falsely Claims to Provide Real-Time Trade Information of Wall Street Titans .............................................................................................. 7

    D.     Portfolio Insider Made Material Misrepresentations and Omissions in Connection With the Sale of Virtual Currencies, namely Bitcoin ........................................... 10

    E.     Portfolio Insider Provides Investment Advice For Compensation Through its Custom-Tailored Platform, Investment Recommendations, and Phone Line....... 12

    F.     Portfolio Insider Falsely Guaranteed Certain Profits and Misrepresented its Expertise, Growth, Success, and Expanding Clientele ........................................ 13

    G.     Portfolio Insider is a Fraudulent Enterprise Using Receivership and Metals' Victims' Assets ..................................................................................... 14

**II.       ARGUMENT** .......................................................................................... 15

    A.     Asher and Batashvili's Misconduct Meets the Standard for Contempt .... 15

    B.     Metals and Portfolio Insider are a Common Enterprise and Used Commingled Funds to Operate Portfolio Insider...................................... 17

    C.     Asher and Batashvili Intentionally Violated the Asset Freeze and New Income Provisions of the Consent Order .................................................. 18

i

D.     Asher and Batashvili Intentionally Violated the Prohibition on Engaging in *Any* Activity Related to Securities, Commodities, or Derivatives........ 19

E.     Portfolio Insider's Fraudulent Scheme Directly Violates their Injunction Against Violating 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 ....................... 19

F.     Asher and Batashvili's Operation of Portfolio Insider Violates the Investment Adviser Statutes of Alabama, California, Georgia, Maryland, South Carolina, and Texas ........................................................................ 21

G.     Asher's and Batashvili's Operation of Portfolio Insider Violates the Securities Fraud Laws of Alabama, Colorado, Georgia, Maryland, South Carolina, and Texas. ............................................................................... 24

III.       **CONCLUSION** ................................................................................................. **25**

# TABLE OF AUTHORITIES

**Cases**

*Buffo v. State*, 415 So.2d 1158, 1162 (Ala. 1982)...................................................24

*CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014) ....22

*CFTC v. McDonnell*, 287 F. Supp. 3d 213 (E.D.N.Y.)....................................................21, 22

*CFTC v. My Big Coin Pay, Inc.*, 334 F.Supp.3d 492 (D. Mass. 2018).........................21, 22

*CFTC v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 29, 38-39 (D.D.C. 2015).................18

*Cushing v. Cohen*, 746 S.E.2d 898 (Ga. Ct. App. 2013) ....................................................24

*FDIC v. LeGrand*, 43 F.3d 163, 168 (5th Cir. 1995) ..........................................................17

*FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 462 (D. Md. 2004) .....................................19

*FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 637 (6th Cir. 2014)...................................18

*FTC v. Kennedy,* 574 F. Supp. 2d 714, 722 (S.D. Tex. 2008) .............................................18

*Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911) ......................................18

*In re BFXNA Inc.*, CFTC No. 16-19, 2016 WL 3137612, at *5 (June 2, 2016) .................21

*In re Coinflip, Inc.*, CFTC No. 15-29, 2015 WL 5535736, at *2 (Sept. 17, 2015).............22

*In re Dinnan*, 625 F.2d 1146,1149 (5th Cir 1980)..............................................................17

*In re TeraExchange LLC,* CFTC No. 15-33, 2015 WL 5658082, at *7 (Sept. 24, 2015) ...22

*In re Westcap Enterprises*, 230 F.3d 717, 726 (5th Cir. 2000).............................................24

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994)...............18

*Kamen v. Lindley*, 94 Cal.App.197, 203 (2001) ..................................................................24

*Majors v. South Carolina Securities Com'n,* 373 S.C. 153, 163, 644 S.E.2d 710, 715
(2007) ..............................................................................................................................24

*Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 80 A.3d 269 (Md. 2013)..........24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85, 126 S.Ct. 1503
(2006) ..............................................................................................................................28

*SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673, 678-79, 84 (D.D.C. 1995) .................17

*SEC v. Continental Commodities Corp.*, 497 F.2d 516, 525 (5th Cir. 1974)......................25

*SEC v. Huffman*, 996 F.2d 800, 803 & n.4 (5th Cir. 1993)...........................................17

*SEC v. Pirate Investor, LLC*, 580 F.3d 233, 244 (4th Cir. 2009)........................................28

*Semerenko v. Cendant Corp.*, 223 F. 3d 165, 176 (3rd. Cir. 2000) ....................................28

*Shillitani v. United States*, 384 U.S. 364, 368, 370 (1966) ............................................16

*Superintendent of Ins. of N.Y. Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13, 92 S.Ct. 165 (1971) ..................................................................................................................28

*U.S. v. Elliott*, 62 F.3d. 1304, 1310 (11th Cir. 1995*)* ...........................................25

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1221 (10th Cir. 2000) ..................................................................................................................28

*United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 532 U.S. 588, 121 S.Ct. 1776 (2001) ..................................................................................................................28

*United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004) .......................16

*United States v. Rylander*, 460 U.S. 752, 757 (1983) ............................................16

*Zale Corp., Inc. v. FTC,* 473 F.2d 1317, 1321 (5th Cir. 1973) ............................................18

**Statutes**

7 U.S.C. § 9(1) ......................................................................................................21, 22

18 U.S.C. § 1001 ......................................................................................................15

18 U.S.C. § 1621 ......................................................................................................15

18 U.S.C. § 1623 ......................................................................................................15

Cf §§ 8-6-3(b) ..........................................................................................................23

§ 11-51-501(1), C.R.S. (2020) ...................................................................................27

§ 8-6-2(18), Code of Alabama (1975).........................................................................24

§8-6-2(19), Code of Alabama (1975).........................................................................26

§8-6-3(b), Code of Alabama (1975)..............................................................................25

§8-6-17(a)(2), Code of Alabama (1975) .......................................................................27

§8-6-17(b)(2), Code of Alabama (1975) ..............................................................23, 27

Ca. Corp. Code, § 2500 ...............................................................................................24

Ca. Corp. Code, § 25009 .............................................................................................24

Ca. Corp. Code, § 25009.5 ....................................................................................24, 26

Ca. Corp Code, § 25230 ........................................................................................24, 25

Ca. Corp Code, § 25230.1 .....................................................................................25, 26

Ca. Corp. Code, § 25235 .......................................................................................24, 27

Ca. Corp. Code, § 25403 .............................................................................................26

Md. Code, Corps & Assn's § 11-101(i) .......................................................................23

Md. Code, Corps & Assn's § 11-101(j) .................................................................23, 26

Md. Code, Corps & Assn's § 11-301 ...........................................................................27

Md. Code, Corps & Assn's § 11-302(a) & (c) ......................................................23, 27

Md. Code Corps. & Assn's § 11-401(i) ......................................................................24

Md. Code, Corps & Assn's § 11-401(b) ................................................................23, 25

Md. Code, Corps. & Assn's § 11-804 ..........................................................................24

O.C.G.A. § 10-5-2(17) .................................................................................................24

O.C.G.A. § 10-5-2(19) .................................................................................................26

O.C.G.A. § 10-5-33 ......................................................................................................26

O.C.G.A. § 10-5-50 ......................................................................................................27

O.C.G.A. § 10-5-51(a) ...........................................................................................24, 27

S.C. Code § 35-1-102(15) ............................................................................................24

v

S.C. Code §35-1-102(16) ................................................................................26

S.C. Code § 35-1-403 ....................................................................................24

S.C. Code § 35-1-501 ....................................................................................28

S.C. Code § 35-1-502(a) ................................................................................27

S.C. Code § 35-1-502(a) ................................................................................24

Tex. Rev. Civ. Stat. Ann. arts. 581-4(F) .......................................................23

Tex. Rev. Civ. Stat. Ann. arts. 581-4(N) ................................................24, 25

Tex. Rev. Civ. Stat. Ann. arts. 581-4(P) .......................................................26

Tex. Rev. Civ. Stat. Ann. arts. 581-12 ....................................................23, 25

Tex. Rev. Civ. Stat. Ann. arts. 581-32 ..............................................23, 27, 28

**Regulations**

17 C.F.R. § 180.1(a)(1)-(3) .....................................................................21, 22

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER TO SHOW CAUSE HEARING TO HOLD DEFENDANTS ASHER AND BATASHVILI IN CIVIL CONTEMPT**

Plaintiffs—U.S. Commodity Futures Trading Commission and 30 U.S. States respectfully submit this Memorandum of Law in Support of the Receiver's Motion for an Order to Show Cause Hearing to Hold Defendants Lucas Thomas Erb *a/k/a* Lucas Asher *a/k/a* Luke Asher ("Asher") and Simon Batashvili ("Batashvili") in Civil Contempt ("Receiver's Contempt Application") (Docket Entry ("D.E.") 311.

The Receiver's Contempt Application—the third contempt application in this civil enforcement matter—addresses a brazen and premeditated violation of the Statutory Restraining Order ("SRO") (D.E. #16) and Consent Order of Preliminary Injunction as to Defendants Asher and Batashvili ("Consent Order") (D.E. #165) (collectively "Court's Orders"). Even though they are expressly enjoined from doing so, Asher and Batashvili are using a receivership entity—Portfolio Insider—and assets purchased with commingled Metals[1] victims' funds to perpetrate a massive nationwide fraud. This ongoing contemptuous conduct is extremely egregious because Asher and Batashvili blatantly lied and deceived the Court, the Receiver, and Plaintiffs in sworn testimony—both in depositions and in open court—in order to conceal this ongoing fraud.

Portfolio Insider's commodities and securities fraud scheme is an unabashed continuation of the fraudulent scheme that is the subject of this civil enforcement action. Asher and Batashvili simply substituted the bait from false claims about precious metals' sure profits to false claims about Bitcoin and having exclusive information about the portfolios of Wall Street titans. Portfolio Insider deceived victims by misrepresenting that their platform can track famous

---

[1] Defendants TMTE, Inc., *d/b/a* Metals.com, Chase Metals, LLC, Chase Metals, Inc., and Relief Defendant Tower Equity, LLC. ("Tower") are collectively referred to as "Metals."

1

traders' portfolios in real-time and provide customized advice on buying and selling securities, options, and virtual currencies. In fact, Asher and Batashvili are using the same *modus operandi* and many of the same senior salespersons from Metals to perpetuate this fraudulent scheme.

This scam is a substantive violation of the Court's Orders; not just technical or procedural violations. Asher's and Batashvili's fraudulent enterprise began prior to the commencement of the civil enforcement action and remains ongoing after the Court entered the Court's Orders. Even as the Court shut down the precious metals fraud, Asher and Batashvili simply moved their resources, transitioned their personnel, and redoubled their efforts to continue this common fraud enterprise. These deliberate and repeated violations of the clear commands of the Court's Orders are still occurring as of the time of this filing.

Though the Court found Asher in contempt, via an agreed-to order, for violating the Court's Orders (D.E. # 216), Asher has not yet purged his contempt and remains in contempt of Court. Additionally, Batashvili's contempt application is still pending. He has not taken steps to fully rectify his contemptuous acts. (D.E. #250) Those two contempt applications, plus the Receiver's Contempt Application demonstrate Asher's and Batashvili's indefensible refusal to meet their obligations under the Court's Orders and warrants imposing coercive incarceration as lesser conditions have failed to force compliance.

Plaintiffs support the Receiver's Contempt Application and respectfully request that the Court: (1) hold Asher and Batashvili in contempt for violating the Court's Orders; (2) order that Portfolio Insider be expressly identified as part of the Receivership; (3) order Asher and Batashvili to turn over to the Receiver all assets transferred, dissipated, or concealed in violation of the Court's Orders, particularly all assets of Portfolio Insider; (4) cooperate with the Receiver in locating all assets or funds and records relating or referring to the business activities and

finances of Portfolio Insider; (5) impose civil coercive incarceration against Asher and Batashvili until they fully comply with the Court's Orders; and (6) require Asher and Batashvili to appear in person at the contempt hearing.

## I.   FACTS

The Receiver's Contempt Application has an extensive, comprehensive recitation of the relevant facts to the instant motion—it is incorporated by reference in footnote 2 *supra*. To avoid duplication, Plaintiffs focus on key facts evidencing Asher's and Batashvili's fraudulent scheme and their blatant violations of the Court's Orders which warrant holding them in civil contempt.

### A.   Asher and Batashvili Have Failed to Purge Their Prior Contemptuous Conduct

Both Asher and Batashvili are currently in contempt, independent of the Receiver's Contempt Application. As discussed in detail in the prior contempt proceedings, Asher and Batashvili each concealed and dissipated approximately $500,000 of victim funds, as well as other assets restrained by the SRO, within a few days of each other. This was a brazen effort to hide victims' funds from the Receiver and the Plaintiffs and put them into the hands of trusted friends and close relatives. Asher still has not purged his contempt. Batashvili's contempt application is still pending because he has not taken steps to fully rectify his contemptuous acts.

### B.   Tower Trade, Retirement Insider, and Portfolio Insider are All Receivership Entities and Controlled By Asher and Batashvili

Portfolio Insider engages in commodities and securities activities. Portfolio Insider has used two additional trade names or doing business as—Tower Trade and Retirement Insider— but the entity is the same.[2] In January 2020, Asher as CEO of Tower Trade—operating out of the

---

[2] Planer, ¶ 9; Gomersall ¶4.

3

same corporate offices as Metals—inquired with Nasdaq about acquiring market data.[3] Batashvili was the billing contacts for Tower Trade's relationship with Intrinio.[4] Though communications continued through April of 2020, no business relationship was consummated.[5]

Asher and Batashvili transitioned the name of the entity to Retirement Insider.[6] In need of data feeds to make their platform appear realistic, they retained Intrinio, a data services company, to assist them in gaining approval to license Nasdaq financial data via a third party, QUODD Financial Services.[7] Asher and Batashvili used commingled Metals' victims' funds to create Retirement Insider and its platform.[8] In fact, financial tracing shows that commingled Metals funds were used to purchase the Retirement Insider and Portfolio Insider domain names, pay Intrinio's fees, funded at least $176,158 of payroll obligations of Retirement Insider, and cover its expenses.[9] Batashvili and Asher purchased the domain for Retirement Insider in September 2018 and Portfolio Insider in July 2020, approximately two months before this action.[10] Retirement Insider used the same office space as Metals.[11] Based on this and other evidence in the record, the Court found that pursuant to the Court's Orders, Retirement Insider is properly part of the Receivership Estate. (D.E. #230)

---

[3] Gomersall ¶5-8.

[4] Gomersall ¶8 and Exh. Q.

[5] DeSimone ¶11-12; Gomersall ¶7 and Exh. B.

[6] Planer, ¶9; Gomersall ¶11 and Exh. D and L.

[7] Grochmal ¶¶7-11; Gomersall ¶25, 28.

[8] Planer, ¶¶14-16, 24, 27, 30 and 31; Gomersall ¶10-17 and 59-66.

[9] Planer ¶¶8-16, 23-34; Gomersall ¶10-17 and 59-66.

[10] Planer ¶¶11-12, 14-16, and 30; Gomersall ¶10, 31, 65.

[11] Planer ¶¶11 and 14; Gomersall ¶11, 33.

No later than July, 2020, Asher and Batashvili began using the current trade name, Portfolio Insider.[12] A former employee stated that: "Portfolio Insider was also Retirement Insider. Retirement Insider existed in beta when I started, but we were in the process of rebranding to Portfolio Insider."[13] In September 2020, outside vendors such as QUODD and Nasdaq were told that "Retirement Insider was the same entity as Portfolio Insider, but was now using a different trade name."[14] On or about September 29, 2020—just a few days after the filing of the instant civil enforcement action—Intrinio notified Nasdaq and QUODD of the new branding.[15] A former employee explained: "[t]he name Portfolio Insider sounded less restrictive for investors not actively planning for retirement."[16] Thus, Portfolio Insider should be expressly identified as part of the Receivership Estate as it is the same entity as Retirement Insider. Asher and Batashvili were required by the Court's Orders to disclosed this Receivership entity and surrender it to the Receiver back in September 2020, but failed to do so.

### 1. Asher and Batashvili Are Officers or Directors and Supervise Employees of Portfolio Insider

Both Asher and Batashvili actively directed and participated in this fraudulent scheme in violation of the Court's Orders.[17] Both regularly worked long hours, six days a week at Portfolio Insider and held managerial and operational roles at Portfolio Insider.[18] As described below, their conduct demonstrates ownership, operation, and control of Portfolio Insider.

---

[12] Gomersall ¶¶31, 34.

[13] Hacker ¶2.

[14] QUODD explained: "This is a common phenomenon with younger tech firms who use various trade names as they evolve and grow." Grochmal ¶9; *see also* DeSimone ¶16.

[15] DeSimone ¶16; Gomersall ¶¶37, 39, and Exh. N.

[16] Hacker ¶2.

[17] Planer ¶¶130, 188-191.

[18] McWright ¶13; Planer ¶¶130, 188-191.

### 2.   Asher Controls the Operations of Portfolio Insider

From the outset of this fraudulent scheme, Asher held himself out to Nasdaq, Intrinio, and QUODD as being a founder, being in charge, and controlling the operations of Retirement Insider and Portfolio Insider.[19] In fact, he was the primary point of contact and directed the relationship between Portfolio Insider, Nasdaq, and QUODD.[20] Representatives of Intrinio, QUODD and Nasdaq understood that Asher was the CEO of Retirement Insider and Portfolio Insider, and he used the title of CEO in his signature block for Tower Trade.[21] Asher led the discussions with Nasdaq and QUODD to determine what data products to license, explained Portfolio Insider's operation and needs, and managed the relationship with data providers for all of the trade names used by Portfolio Insider.[22] Asher signed contracts with Intrinio and QUODD for data services on September 2, 2020, November 11, 2020, and January 8, 2021.[23] These contracts use the Retirement Insider name until November and seamlessly transitioned to Portfolio Insider while still using the same contract number.[24] In most of the Nasdaq Data Order forms, Asher is listed as the "Client/Distributor Contact" for Portfolio Insider.[25]

### 3.   Batashvili Supervises Employees and Directly Solicits Victims

Batashvili supervises employees of Portfolio Insider by running the sales floor and supervising "openers," the initial salespeople who solicit investors to buy access to the Portfolio

---

[19] Grochmal ¶5; DeSimone ¶¶3-5.

[20] Grochmal ¶4-5; DeSimone ¶¶3-5.

[21] Gomersall ¶6, 18, 20, 21-22, 45; Grochmal ¶5; DeSimone ¶11, 16. Also, on February 20, 2020, Asher signed a contract with a data company called Zacks as the CEO of Retirement Insider. Gomersall ¶¶21-20 and 22.

[22] DeSimone ¶¶3-5, 9, 11-30; Grochmal ¶¶8, 10, 12-17.

[23] Grochmal ¶¶10-11.

[24] Grochmal ¶¶10-11; Gomersall ¶¶25 and 28.

[25] DeSimone ¶19.

Insider investment advisory platform.[26] If investors are interested, they are transferred to a "closer" to finalize the sale.[27] This is the same *modus operandi* that Asher and Batashvili operated at Metals.[28] Batashvili critiqued openers' sales pitches and language, instructed them on their sales techniques, and provided them with sales scripts to use soliciting investors.[29]

In addition to supervising sales representatives, Batashvili also directly solicited victims and acted as "closer."[30] In order to hide his identity, Batashvili used the alias "Sam Simon" when he solicited investors.[31] As "Sam Simon", Batashvili was also described as a Vice President by a Portfolio Insider representative, and "Sam Simon" also approved negotiated prices for the service.[32] Batashvili using his alias made numerous material misrepresentations and omissions in order to deceive victims and perpetuate this fraudulent scheme.

### C. Portfolio Insider Falsely Claims to Provide Real-Time Trade Information of Wall Street Titans

Asher and Batashvili, through their sales representatives, falsely claimed, and continue to claim to victims, that they created an online customizable financial platform that tracks famous traders' portfolios in real time and allows investors to mimic and model famous traders' trades—hence the name Portfolio Insider.[33] Portfolio Insider falsely claims that they can "track [Titans] in real-time and hang on to their coat tails and we are going to follow [Titans] by the

---

[26] McWright ¶¶4, 6-9, 12.

[27] *Id.*

[28] Gomersall ¶69-70.

[29] McWright ¶¶8-9.

[30] McWright ¶12

[31] McWright ¶12; Block ¶5; Planer ¶190-191; Gomersall ¶66-67.

[32] Planer ¶¶130, 189.

[33] Planer ¶¶43-46, 51-56, 84, 91, 111, 186; Grochmal ¶8; Fulmer ¶33; Oufnac ¶7(e), (f), (n), (o).

nanosecond."[34] They also claim the platform provides tailored advice and recommendations to retail investors on buying and selling securities, options, and virtual currencies, mainly Bitcoin.[35] Contrary to these claims, Portfolio Insider does nothing of the sort.[36]

Asher, Batashvili, and Portfolio Insider led investors to believe a fiction – that their product was based on *exclusive* information from "dark pools" obtained from Nasdaq showing real-time trades of highly successful institutional investors, such as Berkshire Hathaway, and individual investors, including Warren Buffett, Bill Gates, and Kenneth Griffin, updated as these "Titans" buy and sell.[37] They falsely claim to provide retail investors with exclusive and proprietary access to such real-time data as well to the portfolios/holdings of these investors.[38] Portfolio Insider boasts that this data are located under the "Titan's Tab" on their platform,[39] and that by clicking on the image of each of these famous traders, one could see the traders' real-time trading and portfolio/holding information.[40] By providing access to these data, Portfolio Insider claims to "democratize access to the world's most valuable financial data to bring transparency to capital markets" – a total ruse.[41]

---

[34]  Planer ¶44; Grochmal ¶¶12-17; DeSimone ¶¶18-30; Humes ¶6

[35] Grochmal ¶8, Planer ¶¶63, 92-93, 96-99; Gomersall ¶¶47-57; Fulmer ¶41-42, 44;

[36] Grochmal ¶¶12-17; DeSimone ¶¶18-30.

[37] Planer ¶¶45, 50-52, 69, 74-75, 84, 109-110, 153, 163, 186 Exh. W; Grochmal ¶¶12-17; DeSimone ¶¶18-30; Humes ¶¶7, 8, 17, 18; Fulmer ¶33-36, 38; Gainey ¶¶7,10; Oufnac ¶7(d)-(f), (n), (o).

[38] *Id.*

[39] Planer ¶175, 183, 186.

[40] Planer ¶84, 91, 182-183; Gainey ¶10; Oufnac ¶7 (n), (o).

[41] Gomersall ¶71; Borden ¶25 and Exh. A.

Portfolio Insider misrepresented that it obtained exclusive, real-time trading and portfolio data through its unique partnership with Nasdaq.[42] In reality, Nasdaq provides numerous firms and end users with access to Nasdaq Basic.[43] There are over 1,000 corporate entities that have active access to Nasdaq Basic.[44] Additionally, there are substantially more end users than corporate entities, including both natural persons and machine end users (such as algorithms) who use Nasdaq Basic.[45] Portfolio Insider's relationship with Nasdaq does not provide any "exclusive" trading information, not available to other licensees of the same Nasdaq data.[46]

Portfolio Insider also does not provide real-time data identifying Titans. Importantly, all trade data provided to Portfolio Insider by Nasdaq and QUODD is anonymous as to the identity of the customers involved in the trades, including information from dark pools.[47] The data feeds that Portfolio Insider licenses from QUODD and Nasdaq do not disclose the real time holdings, identities, or portfolios of traders, hedge funds, banks, or individuals.[48] In fact, QUODD and Nasdaq cannot unmask trades to identify the counterparties.[49] The statement on a Portfolio Insider website that reads: "Look Inside The Portfolios Of Legendary Hedge Fund Managers & Billionaires & Analyze Their Trades In Realtime" is false.[50] This same false claim was made

---

[42] DeSimone ¶ 27; Planer ¶¶45-46, 51, 67, 69, 102, 105, 147; Gainey ¶¶5-7; Oufnac ¶7.

[43] DeSimone ¶26.

[44] *Id.*

[45] *Id.*

[46] DeSimone ¶¶18-30.

[47] DeSimone ¶20, Grochmal ¶¶13-16.

[48] *Id.*

[49] Grochmal ¶13.

[50] Grochmal ¶17; Planer ¶75, Exh. W.

repeatedly by Portfolio Insider's representatives during numerous sales pitches to deceive victims.[51] These lies acted as a deceit to misappropriate victims' funds.

Portfolio Insider and its sales representatives deceived victims and claimed that with their platform, an investor can make high returns because their real-time trade information is not available to the investing public.[52] Through such misleading information, Portfolio Insider falsely advises investors that they can achieve significant financial gain by following well known, successful investors in real-time through their platform.[53]

### D. Portfolio Insider Made Material Misrepresentations and Omissions in Connection With the Sale of Virtual Currencies, namely Bitcoin

Asher, Batashvili, and Portfolio Insider pitched victims on their expertise with Bitcoin and other virtual currencies and claimed that their platform allows one to track and capitalize on price movements in Bitcoin.[54] They demonstrated and discussed a Bitcoin tab on the platform where Portfolio Insider claims to track active trades of Bitcoin in real-time, including with real-time charts.[55] Sales representatives claimed that the Bitcoin tab of the platform is being improved, and they are adding real time blockchain analytics that will advise when to buy and sell as well as provide customers with exit strategies.[56] They advised victims to buy spot Bitcoin or Ethereum because they are great investments that will continue to go up for the rest of the year.[57]

---

[51] Planer ¶¶45, 50-52, 69, 74-75, 109-110, 153, 163, 186; Fulmer ¶33; Oufnac ¶7(e),(o).

[52] Planer ¶¶50, 53, 56, 60, 137; Fulmer ¶38; Gainey ¶10; Oufnac ¶7(g)-(m), (cc).

[53] Planer ¶¶60, 186; Humes ¶¶7, 11, 17, 18; Fulmer ¶33; Oufnac ¶7(g)-(m), (cc)

[54] Gomersall¶48; Planer ¶¶83, 122-127; Humes ¶¶7, 12, 17, 18; Fulmer ¶44; Oufnac ¶7(q)

[55] Oufnac ¶7(q); Gomersall ¶49; Planer 83, 122-124, 184; Humes ¶10

[56] Gomersall ¶¶49; Planer 83, 96-99, 125.

[57] Gomersall ¶50; Planer 98; Fulmer ¶44

Since April 30, 2021, Nasdaq allowed Portfolio Insider, among others, to contribute articles to be posted on Nasdaq.com. [58] Asher personally proposed topics and submitted articles on a number of topics; the vast majority of the articles related to Bitcoin and other virtual currencies.[59] These articles were a crucial part of Portfolio Insider's Bitcoin sales pitches to victims.[60] Portfolio Insider representatives invited potential customers to access the Nasdaq website and view these articles as proof of Portfolio Insider's *bona fides* in virtual currency and to induce victims to purchase the Portfolio Insider platform.[61]

In addition to touting these articles, Portfolio Insider falsely claims that it is providing virtual currency and blockchain technical advice and support to Nasdaq, rather than simply submit articles.[62] In fact, Nasdaq doesn't get technical information or advice on blockchain technology or virtual currencies from Portfolio Insider.[63] Portfolio Insider does not contribute any information from a data perspective to Nasdaq.[64] These lies about Portfolio Insider's relationship with and contributions to Nasdaq were an integral aspect of Portfolio Insider's sales pitch to recruit victims to their commodities and securities fraud by falsely claiming to be experts in virtual currencies, a burgeoning financial product.[65]

---

[58] Gomersall ¶51; DeSimone ¶34-35. Also, the Nasdaq relationship was so important to their fraudulent scheme that without Nasdaq's permission, Portfolio Insider displayed Nasdaq's logo on its website. After Nasdaq made a demand to remove the logo, Asher personally agreed to remove the logo. DeSimone ¶36.

[59] DeSimone ¶35.

[60] Gomersall ¶54; Humes ¶10.

[61] Gomersall ¶54; Humes ¶18.

[62] DeSimone ¶30; Gomersall ¶56; Planer ¶46, 83; Humes ¶9

[63] Gomersall ¶56; DeSimone ¶30.

[64] *Id.*

[65] Gomersall ¶57; Humes ¶10.

### E.  Portfolio Insider Provides Investment Advice For Compensation Through its Custom-Tailored Platform, Investment Recommendations, and Phone Line

Portfolio Insider also provided individualized advice to investors through a tailored platform and regular investment recommendations. Portfolio Insider customizes its platform for investors rather than provide a general set of information that all investors see upon login.[66] Investors' platforms can be customized to focus on specific stocks, ETF's, or specific "titans".[67] In this sense, Portfolio Insider does not provide an "off the rack" advisory platform, but a platform customized to desires of the investor.[68] Portfolio Insider is compensated for this advice via fees charged to access its recommendations; with annual advisory fee of $10,000 for its services.[69]

Moreover, Portfolio Insider claims to provide daily recommendations and alerts directly to their customers.[70] On a daily basis, Portfolio Insider recommends specific securities for investors to purchase.[71] These include alerts and recommendations based on individual investors' trading goals.[72] Portfolio Insider also touts its "Top 16 Picks," which is a list of 16 large, mid, and small cap stocks that investors can purchase for guaranteed returns.[73]

---

[66] Planer ¶63, 92-93, 186; Gainey ¶9.

[67] Planer ¶186; Gainey ¶9.

[68] Planer ¶63; Humes ¶13.

[69]  In addition, Portfolio Insider has offered limited-time specials for half price and would also negotiate for payments even less than price. Planer ¶117, 165; Humes ¶15; Fulmer ¶25; Borden ¶22; Oufnac ¶7(r), (aa).

[70] Planer ¶51, 70, 71, 131, 137, Exh. T, U, Z; Humes ¶8; Fulmer ¶27; Gainey ¶13.

[71] Planer ¶51, 70, 71, 131, 137, Exh. T, U, Z; Humes ¶8; Fulmer ¶28, 30; Borden ¶11.

[72] Planer ¶92; Humes ¶13.

[73] Borden ¶¶ 18-21.

Additionally, investors can call Portfolio Insider to ask for advice about what action they should take.[74] Specifically, if an investor called asking what Portfolio Insider thought about a recommended stock or what Portfolio Insider thought an investor should do as to a recommended stock, Portfolio Insider would advise that investor.[75] During a call, a Portfolio Insider representative advised a person that "short-term investments are vehicle for making greater profits."[76] During an online demonstration, a different Portfolio Insider representative told the attendees, "You will not make any money if you are buying and holding. Buying and holding is dead. What you need to do is if you are buying and holding, continue to do that with some but take another piece of your portfolio and do some real trading with it."[77] Finally, Portfolio Insider lauded in an email that "[w]e have officially opened up enrollment for our VIP member, you'd be able to utilize these trading sessions in real-time ran by our Lead Senior Analyst….a 1 on 1 session with our expert."[78]

### F. Portfolio Insider Falsely Guaranteed Certain Profits and Misrepresented its Expertise, Growth, Success, and Expanding Clientele

Portfolio Insider routinely touted tall tales of wild success to victims to encourage them to purchase their advisory service.[79] Portfolio Insider advised that if victims followed its recommendations, they were virtually guaranteed to see returns, with exorbitant success rates, and claims that its stock recommendations never missed, and that 80% of the success simply

---

[74] Fulmer ¶41; Oufnac ¶7(cc).

[75] Planer ¶95; Fulmer ¶42.

[76] Humes ¶13.

[77] Planer ¶85.

[78]  Oufnac ¶7(c) and Exh. 3.

[79]  Planer ¶47, 52, 54, 56, 103, 137, 173; Oufnac ¶7(g)-(m), (cc).

comes from logging into their platform.[80] On telephone calls and in customer demonstrations, Portfolio Insider representatives cherry-picked examples of allegedly successful recommendations and buys and outlandish returns.[81] Moreover, Portfolio Insider's website publicly boasts two successful historical stock recommendations that would have earned a 567.38% and 134.40% gain, respectively.[82]

Further, Portfolio Insider representatives made a number of material misrepresentations about its longevity and size. First, they claimed that Portfolio Insider had been in business for 5-10 years when in fact it has been in business under 2 years.[83] Second, representatives stated that Portfolio Insider had been providing real time information for 3 to 5 years, when Portfolio Insider only got access to the Nasdaq's real time data feed in January 2021.[84] Third, they claimed Portfolio Insider had 70,000 or 90,000 subscribers, while reporting to Nasdaq a subscriber count of approximately 1,700.[85] In an effort to make the data feeds they licensed seem exclusive and expensive, Portfolio Insider vastly overstated the fees Portfolio Insider paid to Nasdaq and QUODD, claiming it spent $6-10 million per year for this "exclusive" trade data, when the total amount Portfolio Insider paid is about $186,000.[86]

### G. Portfolio Insider is a Fraudulent Enterprise Using Receivership and Metals' Victims' Assets

This fraudulent enterprise began prior to the commencement of the civil enforcement

---

[80] Planer ¶151, 174; Oufnac ¶7(g)-(m), (cc).

[81] Planer ¶52-53, 55-56; Humes ¶16-17; Fulmer ¶28, 30; Oufnac ¶7(g)-(m), (cc).

[82] Borden ¶28 and Exh. C

[83] DeSimone ¶23; Planer ¶136; 166

[84] DeSimone ¶23; Planer ¶136; 166; Gainey ¶5; Oufnac ¶7(m)

[85] DeSimone ¶28; Planer 62, 117, 143;

[86] Nasdaq was paid $154,904 and QUODD was paid $32,000. DeSimone ¶¶ 31-33; Grochmal ¶¶18-19); Planer ¶¶43, 61

action and remains ongoing even in the face of the Court's Orders.[87] While actively defrauding elderly victims out of their lifesavings through Metals, Asher and Batashvili expanded their fraudulent enterprise into what became Portfolio Insider.[88]  Even as the Court shut down the precious metals fraud, Asher and Simon moved their resources, transitioned their personnel, and redoubled their efforts to continue their common scheme.[89] These deliberate and repeated violations of the Court's Orders are still occurring as of the time of this filing.[90]

The Portfolio Insider scam is a blatant continuation of the Metals fraud. Asher and Batashvili have transitioned from fraudulently pitching precious metals to the elderly to fraudulently pitching insider access to the purported portfolios of Wall Street Titans and Bitcoin.[91] In fact, Asher and Batashvili are using the same *modus operandi* of a boiler-room with many of the same senior salesmen—so-called closers—from Metals to solicit these victims.[92]

## II.  ARGUMENT

### A.  Asher and Batashvili's Misconduct Meets the Standard for Contempt

The Receiver's and Plaintiffs' investigation of Portfolio Insider, and its fraud upon the public, was stymied and actively obstructed by Asher's and Batashvili's deception, perjury in their depositions and in open court, and by their failure to cooperate at every turn.[93] Their

---

[87] Gomersall ¶72; Planer ¶8-22;

[88] Gomersall ¶73

[89] Gomersall ¶58-66; 74.

[90] Gomersall ¶75; Planer ¶201; Fulmer ¶9

[91] Planer ¶75, Exh. W.; Humes ¶6, 10;

[92] Gomersall ¶70

[93] In an effort to conceal income and the existence of and misconduct at Portfolio Insider in violation of the Consent Order, Asher and Batashvili committed violations of 18 U.S.C. § 1001, 1621 and/or 1623, and by doing so, violated the Court's Orders. They both gave material and false sworn testimony at their depositions. Asher and Batashvili continue to show disdain for, and disregard of, the Court's Orders by attempting to stifle the Receiver's efforts, hide income

misconduct was designed to hide the existence of Portfolio Insider, their role therein, their New Income (*see* below), and their aggressive violations of the Court's Orders.

In the two prior contempt filings, Plaintiffs addressed in detail the legal basis for a finding of contempt, the elements to find contempt, and the Court's power to impose coercive sanctions.[94] To avoid restating that here, Plaintiffs rely on those filings, and so only reiterate a few points. "[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 368, 370 (1966) (civil contemnors are imprisoned only until they comply with the orders of the court and "carry 'the keys of their prison in their own pockets'") (internal citation omitted); *United States v. City of Jackson, Miss.*, 359 F.3d 727, 731 (5th Cir. 2004) (explaining the three elements establishing contempt). The contemnor "may assert a *present* inability to comply with the order in question" as a defense, *United States v. Rylander*, 460 U.S. 752, 757 (1983) (emphasis in original), but bears the burden of showing entitlement to the defense by a preponderance of the evidence. *SEC v. Huffman*, 996 F.2d 800, 803 & n.4 (5th Cir. 1993). Here, the Court is not faced with a situation where Asher and Batashvili failed to comply with the Court's Orders despite taking all reasonable steps to comply or because of a present inability to comply. Instead, they have circumvented and trampled the Court's Orders.

In light of Asher's and Batashvili's repeated violations of the Court's Orders—including continuing to operate a massive commodities and securities while enjoined by this Court—they

---

and assets, and continue to defraud the public. This misconduct directly disregards the Court's authority and further highlights that they have no plans to constrain their egregious efforts at self-enrichment by any means necessary.

[94] Plaintiffs incorporate by reference, its Memorandum of Law in Support of Asher Contempt D.E. #197. Further, Plaintiffs incorporate by reference, its Memorandum of Law in Support of Batashvili Contempt and its Fact Appendix. D.E. #263.

need to be coerced into complying with this Court's Orders. Asher and Batashvili are now subject to their third contempt application. The Court is justified in ordering these civil contemnors be coercively imprisoned until they comply with the order or condition imposed by the court. *FDIC v. LeGrand*, 43 F.3d 163, 168 (5th Cir. 1995); s*ee e.g.*, *SEC v. Bankers Alliance Corp.*, 881 F. Supp. 673, 678-79, 84 (D.D.C. 1995) (imposing civil contempt sanctions that included fines and incarceration against defendants for failing to provide an accounting of assets pursuant to a preliminary injunction order). "A fixed term of imprisonment, with the proviso that the contemnor will be released if he complies with the court order, is a proper penalty for civil contempt and the imposition of such penalty does not make the proceeding criminal." *In re Dinnan*, 625 F.2d 1146,1149 (5th Cir 1980). Incarceration in this context is not punitive but rather coercive in nature because the party "carries the keys of his prison in his own pocket." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828 (1994) (*quoting Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911)).

### B.  Metals and Portfolio Insider are a Common Enterprise and Used Commingled Funds to Operate Portfolio Insider

Metals and Portfolio Insider operated and functioned as a common enterprise. In determining whether a "common enterprise" exists, courts look to a variety of factors, including but not limited to: (1) common control, (2) the sharing of office space, (3) common employees, (4) commingling of funds, (5) whether business is conducted through a maze of interrelated companies, and (6) sharing advertising and marketing. *See, e.g., Zale Corp., Inc. v. FTC,* 473 F.2d 1317, 1321 (5th Cir. 1973) (finding common enterprise where there is sharing of office space, common or overlapping officers, and unified advertising); *CFTC v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 29, 38-39 (D.D.C. 2015) (quoting *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 637 (6th Cir. 2014*)* (finding common enterprise where two entities were under

common control, shared offices on multiple occasions, and intermingled funds); *FTC v. Kennedy,* 574 F. Supp. 2d 714, 722 (S.D. Tex. 2008) (citing *FTC v. AmeriDebt, Inc.*, 343 F. Supp. 2d 451, 462 (D. Md. 2004)) (FTC adequately pled common enterprise theory where it alleged that there was a common control group, that business was transacted through a member of interrelated companies, and that there was commingling of corporate funds, unified advertising, and/or other facts that revealed no real distinction between the entities in question.). As discussed above, Asher and Batashvili actively owned, managed, and operated these entities. They commingled funds, employed the same *modus operandi* and the same senior salesmen, and operated, at times, out of the same offices.  The evidence clearly demonstrates that these entities constitute a common enterprise.

### C. Asher and Batashvili Intentionally Violated the Asset Freeze and New Income Provisions of the Consent Order

At the time that they agreed to the Consent Order, Asher and Batashvili were already actively violating its terms and the terms of the previously entered SRO. As more fully detailed in the Receiver's Contempt Application, they violated the asset freeze and New Income provisions of the Consent Order. Paragraph 25 (page 11) of the Consent Order that states: "The funds, assets, or other property affected by this Order *shall include both* existing funds, assets, or other property, *and funds, assets, or other property acquired after the effective date of this Order*, except as described in Sections VIII and IX of this Order." (Emphasis Added); *see also* Sections VIII and IX of the Consent Order. They claim to be a "billion-dollar fintech company."[95] The solicitations of new victims by Portfolio Insider allegedly generated millions of dollars for them. These funds should have been immediately restrained and turned over to the

---

[95] Planer ¶138.

Receiver. Instead, they dissipated those funds for their own pecuniary gain to the detriment of the victims of their massive fraud.

All of the income generated by Portfolio Insider after the filing date are "New Income" and should have been disclosed but were not. Paragraph 37 (page 16) of the Consent Order defines the term "New Income" broadly as "earnings, bonuses, and/or other after-acquired income, salary, wages, commissions, dividends, draws, or other forms of compensation or passive income from any newfound employment or activity." Paragraph 39 requires Asher and Batashvili to disclose within two days any New Income. Asher and Batashvili have never disclosed any New Income.

### D. Asher and Batashvili Intentionally Violated the Prohibition on Engaging in *Any* Activity Related to Securities, Commodities, or Derivatives

Given the evidence that Defendants' massive fraud violated both commodities and securities laws, the Court-imposed Paragraph 38 (page 16) of the Consent Order prohibits Defendants from engaging in any activity in the financial services space: "Defendants Asher and Batashvili agree that they will not engage in *any* activity related to securities, commodities, or derivatives. . . ." *Id. (emphasis added).* Fully aware that they voluntarily agreed to this ban, Asher and Batashvili still operated, owned, and profited from Portfolio Insider which they describe as "an investment bank in your pocket."[96] Portfolio Insider clearly is a financial services company that provides a securities and commodities platform with related investment advice.

### E. Portfolio Insider's Fraudulent Scheme Directly Violates their Injunction Against Violating 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1

In addition to the prohibition on engaging in any activity in financial services, the Consent Order expressly restrains and enjoins Asher's and Batashvili's ongoing violations of the

---

[96] Gomersall ¶40; Borden ¶25 and Exh. A

antifraud provisions of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1. The Consent Order in Paragraph 18 states: "Defendants Asher and Batashvili and their agents, servants, employees, assigns, attorneys, and persons in active concert or participation with them, including any successors thereof, who receive actual notice of this Order by personal service or otherwise, are preliminarily restrained and enjoined from directly or indirectly violating 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) [sic]."

Portfolio Insider's material misrepresentations and omissions in connection with a contract of sale of a commodity—virtual currency—in interstate commerce violate 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3). Virtual currencies, such as Bitcoin, are encompassed in the definition of "commodity" under Section 1a(9) of the Commodity Exchange Act ("CEA"). *See CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y.) ("[V]irtual currencies can be regulated by CFTC as a commodity."); *CFTC v. My Big Coin Pay, Inc.*, 334 F.Supp.3d 492 (D. Mass. 2018) (denying motion to dismiss and finding that even non-bitcoin virtual currencies are a "commodity" under the CEA); *In re BFXNA Inc.*, CFTC No. 16-19, 2016 WL 3137612, at *5 (June 2, 2016); *In re Coinflip, Inc.*, CFTC No. 15-29, 2015 WL 5535736, at *2 (Sept. 17, 2015); *In re TeraExchange LLC,* CFTC No. 15-33, 2015 WL 5658082, at *7 (Sept. 24, 2015).

The CFTC and the States have authority pursuant to 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1 to exercise their enforcement powers against persons who engage in fraud and fraudulent schemes in connection with virtual currencies. *McDonnell*, 321 F. Supp. 3d at 367 (affirming on reconsideration that "Title 7 U.S.C. § 9(1) gives the CFTC standing to exercise its enforcement power over the fraudulent schemes" involving bitcoin.); *My Big Coin Pay*, 334 F.Supp.3d 492 (rejecting defense that 7 U.S.C. § 9(1) and Regulation 180.1 were meant only to combat fraudulent market manipulation and not the alleged solicitation fraud). A person violates 7

20

U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) if he or she: (1) engages in prohibited conduct (i.e., employs a fraudulent scheme, makes material misrepresentations or omissions, or engages in fraudulent business practices); (2) in connection with the sale of a commodity in interstate commerce; (3) with scienter. *See e.g. CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014). The evidence discussed *supra* shows these elements are met here.

Portfolio Insider engaged in a scam in connection with virtual currency, namely bitcoin. They made material misrepresentations to customers regarding Portfolio Insider's growth and success as a company, its expanding clientele, and the functionality of its platform. They also made material misrepresentations about Bitcoin and other virtual currencies and claimed that their platform allows one to track and capitalize on price movements in Bitcoin. They advised victims to buy Bitcoin or Ethereum because they are great investments opportunities that will continue to go up for the rest of the year. Portfolio Insider falsely claimed that they were providing virtual currency and blockchain technical advice and support to Nasdaq. These misrepresentations and omissions were an important part of the sales pitch to recruit victims to their commodities and securities scam by falsely claiming to be experts in virtual currencies.

**F.   Asher and Batashvili's Operation of Portfolio Insider Violates the Investment Adviser Statutes of Alabama, California, Georgia, Maryland, South Carolina, and Texas**

The Consent Order, at Paragraph 19, restrains and enjoins Asher's and Batashvili's ongoing violations of ten States' securities laws. They are violating State investment adviser statutes and the Consent Order by: (1) operating an unregistered investment adviser firm, Portfolio Insider; (2) acting as unregistered investment adviser representatives of Portfolio Insider; and (3) committing fraud in connection with the rendering of investment advice. [97]

---

[97] While there is some variation in the language used by states' statutes, there are no substantive differences in what constitutes investment advice, the requirement to register, and the prohibition

An investment adviser is one who for compensation engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in or purchasing securities. Ca. Corp. Code, §§ 25009; Md. Code Corps. & Assn's § 11-401(i); § 8-6-2(18), Code of Alabama (1975); O.C.G.A. § 10-5(2)(17); Tex. Rev. Civ. Stat. Ann. arts. 581-4(N); S.C. Code § 35-1-102(15). Advice about specific securities, market trends, or providing a selective list of securities constitutes investment advice.[98] As shown *supra*, Portfolio Insider is an investment adviser because it (1) provides investors with buy recommendations for specific stocks; (2) helps investors who call with questions about the securities recommendations provided; (3) tailors an online dashboard for investors' individual needs; (4) falsely tells potential investors that they offer real-time access to large institutional and individual "investing titans" portfolios; (5) advises about short-term investments or long term

---

of fraud in connection with providing investment advice. Cf §§8-6-3(b), §8-6-17(b)(2), *Code of Alabama* (1975); Tex. Rev. Civ. Stat. Ann. arts. 581-12, 581-32, 581-4(F), (N) & (P); Md. Code, Corps & Assn's §§ 11-101(i) & (j), 11-401(b), 11-302(a) & (c); Ca. Corp. Code, §§ 25009, 25009.5, 25230, and 25235; O.C.G.A. §§ 10-5-2(17) and 10-5-51(a); S.C. Code §§ 35-1-102(15) and 35-1-502(a); S.C. Code § 35-1-403. Because of the similarity in the state and federal statutes and lack of state case law, courts look to federal case law applying federal securities laws for guidance. *See, e.g., In re Westcap Enterprises*, 230 F.3d 717, 726 (5th Cir. 2000) (internal quotations and citations omitted). *Buffo v. State*, 415 So.2d 1158, 1162 (Ala. 1982); *Kamen v. Lindley*, 94 Cal.App.197, 203 (2001); Md. Code, Corps. & Assn's § 11-804; *Mathews v. Cassidy Turley Maryland, Inc.*, 435 Md. 584, 80 A.3d 269 (Md. 2013); *Majors v. South Carolina Securities Com'n*, 373 S.C. 153, 163, 644 S.E.2d 710, 715 (2007); *Cushing v. Cohen*, 746 S.E.2d 898 (Ga. Ct. App. 2013);

[98] *See* "Regulation of Investment Advisers by the U.S. Securities and Exchange Commission" dated March 2013, Securities and Exchange Commission, Staff of the Investment Adviser Regulation Office, Division of Investment Management ("Release") p. 3, available at https://www.sec.gov/about/offices/oia/oia_investman/rplaze-042012.pdf *See also* Investment Advisers Act Release No. IA-1092, Applicability of the Investment Advisers Act to Financial Planners, Pension Consultants, and Other Persons Who Provide Investment Advisory Services as a Component of Other Financial Services, October 8, 1987, pgs. 6-7 ("Release 1092"), https://www.sec.gov/rules/interp/1987/ia-1092.pdf. (Though not dispositive, "an SEC release is entitled to great weight." *U.S. v. Elliott*, 62 F.3d. 1304, 1310 (11th Cir. 1995*) citing SEC v. Continental Commodities Corp.*, 497 F.2d 516, 525 (5th Cir. 1974).)

investments, and (6) charges a $10,000 annual advisory fee. Despite Portfolio Insider qualifying as an investment adviser under the state statutes, it has failed to register as an investment adviser in any State or with the SEC as required by law.[99]

As discussed above, both Asher and Batashvilli, qualify as control persons as well as investment adviser representatives of Portfolio Insider because they control or substantially assist with operations and are a partner, director, or officer who supervises sales employees.[100] Neither are registered as investment adviser representatives in any State or with the SEC.[101] Therefore, they are violating the Plaintiff States' statutes and Consent Order by acting as unregistered investment adviser representatives and control persons of Portfolio Insider.[102]

Further, as discussed *supra*, the scam perpetrated by Asher and Batashvili through Portfolio Insider violates the Consent Order because the fraudulent acts violate the States' prohibition on investment advisory fraud. §8-6-17(b)(2), *Code of Alabama* (1975); Tex. Rev. Civ. Stat. Ann. art. 581-32; Ca. Corp. Code, § 25235; Md. Code, Corps & Assn's § 11-302(a) &

---

[99] See §8-6-3(b), Code of Alabama (1975); Tex. Rev. Civ. Stat. Ann. arts. 581-4(N), 581-12; Ca. Corp Code, §§ 25230 and 25230.1; Md. Code, Corps & Assn's § 11-401(b); O.C.G.A. § 10-5-33.

[100] An investment adviser representative is any partner, officer, director (or a person performing similar functions) or other individual employed by an investment adviser who: makes recommendations or renders advice regarding securities; manages client accounts; determines which recommendations or advice regarding securities should be given; solicits, offers, or negotiates for the sale or sells investment advisory services; or supervises employees who perform any of these duties. Ca. Corp. Code, § 25009.5; Md. Code, Corps & Assn's § 11-101(j); §8-6-2(19) *Code of Alabama* (1975); O.C.G.A. § 10-5-2(19); Tex. Rev. Civ. Stat. Ann. arts. 581-4(P); S.C. Code § 35-1-102(16).

[101] See §8-6-2(19), Code of Alabama (1975); Tex. Rev. Civ. Stat. Ann. arts. 581-4(P), 581-12; Ca. Corp. Code, §§ 25009.5 and 25230.1; O.C.G.A. § 10-5-2(19); S.C. Code §35-1-102(16).

[102] Under California law, the conduct discussed in this section and parts I(B)(1)-(3) above establish that Asher and Batashvili are liable for Portfolio Insider's violations providing fraudulent unregistered investment advice in violation of the Consent Order because they knowingly controlled and induced and/or knowingly substantially assisted Portfolio Insider's conduct.  Ca. Corp. Code, §§ 25403.

(c); O.C.G.A. § 10-5-51(a); S.C. Code § 35-1-502(a). The material misrepresentations made by Asher and Batashvili, directly or indirectly through Portfolio Insider representatives, to purchase investment advisory services from Portfolio Insider were deceptive, fraudulent, and/or constitute an act, practice, or course of business that operates as a fraud. Thus, Asher and Batashvili violated the state investment adviser fraud statutes and the Consent Order.

### G. Asher's and Batashvili's Operation of Portfolio Insider Violates the Securities Fraud Laws of Alabama, Colorado, Georgia, Maryland, South Carolina, and Texas.

Asher and Batashvili also violated Paragraph 19 of the Consent Order by committing securities fraud in violation of State statutes. State laws prohibit "any person" from committing fraud "in connection with" the offer, purchase, or sale of securities. *See* §8-6-17(a)(2), *Code of Alabama* (1975); Md. Code, Corps & Assn's § 11-301; § 11-51-501(1), C.R.S. (2020); O.C.G.A. § 10-5-50; Tex. Rev. Civ. Stat. Ann. art. 581-32; S.C. Code § 35-1-501.

Fraudulent activity meets the "in connection with" requirement whenever it "touches" or "coincides" with a securities transaction. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85, 126 S.Ct. 1503 (2006) ("Under our precedents, it is enough that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by somebody else."); *Superintendent of Ins. of N.Y. Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13, 92 S.Ct. 165 (1971) (holding "in connection with" requirement satisfied where injury occurred "as a result of deceptive practices touching [a] sale of securities").[103]

---

[103] Relevant factors when determining whether the "in connection with" requirement has been satisfied include (1) whether the defendant intended to induce a securities transaction, *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 210 F.3d 1207, 1221 (10th Cir. 2000), aff'd, 532 U.S. 588, 121 S.Ct. 1776 (2001); *SEC v. Pirate Investor, LLC*, 580 F.3d 233, 244 (4th Cir. 2009), and (2) whether the publisher directed the misrepresentations to investors that they knew were likely to rely on them. *Id.; Semerenko v. Cendant Corp.*, 223 F. 3d 165, 176 (3rd. Cir. 2000). These factors are nonexhaustive and "exist merely to guide the inquiry" and "do not presume to exclude other factors." *SEC v. Pirate Investor*, 580 F.3d at 244. "Moreover, a fraud

As discussed *supra*, Asher and Batashvili are providing fraudulent information to investors via Portfolio Insider: (1) for the purpose of inducing securities transactions by investors, and (2) expecting that investors rely on their misrepresentations to purchase or sell securities. Portfolio Insider falsely touts real-time trades of Wall Street Titans like Warren Buffet and Kenneth Griffin on the sales calls, in the online demonstrations, or on emails and links sent by Portfolio Insider. Asher and Batashvili, through Portfolio Insider representatives, made these material misrepresentations to retail investors to induce victims to purchase the Portfolio Insider platform and their advisory services. Portfolio Insider misrepresents that they send stock picks to investors based on knowledge of the real-time trades of Wall Street Titans. Portfolio Insider advises its investors to make trades based on its fraudulent misrepresentations and misleads investors to believe their trading strategy virtually guarantees success because they will be the first to be able to follow the trades of Wall Street Titans. In fact, Portfolio Insider misrepresented to unsuspecting investors that its information was basically 100% correct and would never miss. This fraudulent scheme violates States' securities fraud statutes and violates the Consent Order.

### III. CONCLUSION

For the foregoing reasons, the Court should grant the Receiver's Contempt Application.

Dated: September 16, 2021          Respectfully submitted,

By: /s/ JonMarc P. Buffa

JONMARC P. BUFFA
jbuffa@cftc.gov
California Bar # 217324

RICHARD P. FOELBER
rfoelber@cftc.gov
Illinois Bar # 0840904

need not satisfy all factors to be 'in connection with' a securities transaction; a close fit with one factor may well be enough for a fraud to result in § 10(b) liability." *Id.* at 254.

25

Attorneys for Plaintiff
COMMODITY FUTURES TRADING
COMMISSION
1155 21st Street. NW
Washington, DC 20580
(202) 418-5000


FOR THE STATE OF ALABAMA

By: /s/ Jeffery A. "Beau" Brown, Jr

JEFFERY A. "BEAU" BROWN, JR., *pro hac vice*
Beau.Brown@asc.alabama.gov
Alabama Bar No. 7258R80B

ANNE GUNTER, *pro hac vice*
anne.gunter@asc.alabama.gov
Alabama Bar No. 4666N91P

Attorneys for Plaintiff
STATE OF ALABAMA
SECURITIES COMMISSION
445 Dexter Avenue, Suite 12000
 Montgomery, AL 36104
Telephone: (334) 322-8586
Fax: (334) 242-0240


FOR THE STATE OF ALASKA

By: /s/ Robert Schmidt

ROBERT SCHMIDT, *pro hac vice*
rob.schmidt@alaska.gov
Alaska Bar No. 9909048
JOHN HALEY
john.haley@alaska.gov
Alaska Bar No. 1402010

Attorneys for Plaintiff
STATE OF ALASKA
OFFICE OF ATTORNEY GENERAL
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501

26

Telephone: (907) 269-6645
Fax: (907) 276-3697


FOR THE STATE OF ARIZONA

By: /s/ Christopher Nichols

CHRISTOPHER NICHOLS, *pro hac vice*
cnichols@azcc.gov
Arizona Bar No. 029958

Attorney for Plaintiff
ARIZONA CORPORATION COMMISSION
1300 W. Washington St.
Phoenix, AZ 85007
Telephone: (602) 542-0639
Fax: (602) 714-8120


FOR THE STATE OF CALIFORNIA

By: /s/ Danielle Stoumbos

MARY ANN SMITH
MaryAnn.Smith@dfpi.ca.gov
SEAN ROONEY
Sean.Rooney@dfpi.ca.gov
DANIELLE A. STOUMBOS, pro hac vice
California Bar No. 264784
Danielle.Stoumbos@dfpi.ca.gov

Attorneys for Plaintiff
STATE OF CALIFORNIA
DEPARTMENT OF BUSINESS OVERSIGHT
(now known as the DEPARTMENT OF
FINANCIAL PROTECTION AND
INNOVATION)
320 West Fourth Street, Suite 750
Los Angeles, California 90013
Telephone: (213) 503-2046
Fax: (213) 576-7181


FOR THE STATE OF COLORADO
PHILIP J. WEISER

27

Attorney General of the State of Colorado

By: /s/ Janna Fischer

JANNA FISCHER*, *pro hac vice*
janna.fischer@coag.gov
Colorado Bar No. 44952
ROBERT FINKE*, *pro hac vice*
robert.finke@coag.gov
Colorado Bar No. 40756
*Counsel of Record

Attorneys for Plaintiff
SECURITIES COMMISSIONER
FOR THE STATE OF COLORADO
1300 Broadway, 8th Floor
Denver, Colorado 80203
Telephone: (720) 508-6374
Fax: (720) 508-6037

FOR THE STATE OF DELAWARE
KATHLEEN JENNINGS
Attorney General of the State of Delaware

By: /s/ Katherine M. Devanney

KATHERINE M. DEVANNEY, *pro hac vice*
Deputy Attorney General
Delaware Bar No. 6356
Texas Bar No. 24116281
katherine.devanney@delaware.gov
JILLIAN LAZAR
Director of Investor Protection
Delaware Bar No. 6049
jillian.lazar@delaware.gov

Delaware Department of Justice
820 N. French St.
Wilmington, DE 19801
Telephone: (302) 577-8356
Fax: (302) 577-6987

Attorneys for Plaintiff the State of Delaware

FOR THE STATE OF FLORIDA
ASHLEY MOODY
Attorney General for the State of Florida


By: /s/ Victoria Butler

VICTORIA BUTLER, *pro hac vice*
Assistant Attorney General
Director of Consumer Protection
victoria.butler@myfloridalegal.com
Florida Bar No. 861250

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL
Department of Legal Affairs
3507 E Frontage Rd, Suite 325
Tampa, FL 33607-1795
Telephone: (813) 287-7950
Fax: (813) 281-5515


By: /s/ A. Gregory Melchior

A. GREGORY MELCHIOR, *pro hac vice*
Assistant General Counsel
greg.melchior@flofr.com
Florida Bar No. 407290

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF FINANCIAL REGULATION
1313 Tampa Street, Suite 615
Tampa, Florida 33602-3394
Telephone: (813) 218-5327
Fax: (813) 272-2498


FOR THE STATE OF GEORGIA

By: /s/ Logan B. Winkles

LOGAN B. WINKLES, *pro hac vice*
Georgia Bar No. 136906
lwinkles@law.ga.gov

29

RONALD J. STAY, *pro hac vice*
Georgia Bar No. 621732
rstay@law.ga.gov

Attorneys for Plaintiff
OFFICE OF THE GEORGIA
SECRETARY OF STATE
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334
Telephone: (404) 458-3434
Fax: (404) 657-3239


FOR THE STATE OF HAWAII

By: /s/ Rayni M. Nakamura-Watanabe

RAYNI M. NAKAMURA-WATANABE, *pro hac vice*
Hawaii Bar No. 9032-0
RNakamur@dcca.hawaii.gov
PATRICIA J. MOY
Hawaii Bar No. 5845-0
PMoy@dcca.hawaii.gov

Attorneys for Plaintiff
STATE OF HAWAII
SECURITIES ENFORCEMENT BRANCH
335 Merchant Street, Suite 205
Honolulu, Hawaii 96813
Telephone: (808) 586-2740
Fax: (808) 586-3977


FOR THE STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL
STATE OF IDAHO
LAWRENCE G. WASDEN

By: /s/ Loren Messerly

LOREN MESSERLY, *pro hac vice*
Deputy Attorney General
loren.messerly@finance.idaho.gov
Idaho Bar No. 7434

30

Attorney for Plaintiff
STATE OF IDAHO
IDAHO DEPARTMENT OF FINANCE
P.O. Box 83720
Boise, ID 83720-0031
Telephone: (208) 332-8093
Fax: (208) 332-8099


FOR THE STATE OF INDIANA
OFFICE OF THE INDIANA ATTORNEY
GENERAL
Patricia Orloff Erdmann
Chief Counsel of Litigation

By: /s/ Jefferson S. Garn
_____

JEFFERSON S. GARN, *pro hac vice*
Deputy Attorney General
Jefferson.Garn@atg.in.gov
Indiana Bar No. 29921-49

Attorney for Plaintiff
STATE OF INDIANA
INDIANA SECURITIES COMMISSIONER
302 W. Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
Fax: (317) 232-7979


FOR THE STATE OF KANSAS

By: /s/ Thomas E. Knutzen
_____

THOMAS E. KNUTZEN, *pro hac vice*
*Special Assistant Attorney General*
tom.knutzen@ks.gov
Kansas Bar No. 24471

Attorney for Plaintiff
OFFICE OF THE KANSAS SECURITIES
COMMISSIONER
1300 SW Arrowhead Road
Topeka, KS 66604

31

Telephone: (785) 296-7890
Fax: (785) 296-6872


FOR THE STATE OF KENTUCKY

By: /s/ Gary Stephens

GARY STEPHENS, *pro hac vice*
Gary.stephens@ky.gov
Kentucky Bar No. 87740
CATHERINE FALCONER
Catherine.falconer@ky.gov

Attorneys for Plaintiff
STATE OF KENTUCKY
DEPARTMENT OF FINANCIAL INSTITUITONS
500 Mero St. 2SW19
Frankfort, KY 40601
Telephone: (502) 782-9052
Fax: (502) 573-8787


FOR THE STATE OF MAINE

By: /s/ Gregg D. Bernstein

GREGG D. BERNSTEIN, *pro hac vice*
gregg.bernstein@maine.gov
Maine Bar No. 8424

Attorney for Plaintiff
STATE OF MAINE SECURITIES
ADMINISTRATOR
6 State House Station
Augusta, Maine 04333
Telephone: (207) 626-8800
Fax: (207) 626-8828


FOR THE STATE OF MARYLAND

BRIAN E. FROSH
ATTORNEY GENERAL OF THE STATE OF
MARYLAND

32

By: /s/ Max F. Brauer

MAX F. BRAUER, *pro hac vice*
Assistant Attorney General
mbrauer@oag.state.md.us
Maryland State Does Not Use Bar Numbers

Attorney for Plaintiff
STATE OF MARYLAND EX REL
MARYLAND SECURITIES COMMISSIONER
200 Saint Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6950
Fax: (410) 576-6532


FOR THE PEOPLE OF MICHIGAN

By: /s/ Aaron W. Levin

PEOPLE OF THE STATE OF
MICHIGAN, by DANA NESSEL
ATTORNEY GENERAL

Aaron W. Levin, *pro hac vice*
Assistant Attorney General
levina@michigan.gov
Michigan Bar No. P81310

Attorney for Plaintiff
Michigan Department of Attorney General
525 W. Ottawa Street,
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Fax: (517) 335-7632


FOR THE STATE OF MISSISSIPPI

By: /s/ Seth Shannon

SETH SHANNON, *pro hac vice*
seth.shannon@ago.ms.gov
Mississippi Bar No. 103466
CRYSTAL UTLEY SECOY

crystal.utley@ago.ms.gov

Attorneys for Plaintiff
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (769) 237-6406
Fax: (601) 359-4231


FOR THE STATE OF NEBRASKA
L. JAY BARTEL
Bureau Chief
Legal Services Bureau


By: /s/ Joshua R. Shasserre

JOSHUA R. SHASSERRE, *pro hac vice*
Assistant Attorney General
Nebraska Bar No. 23885
joshua.shasserre@nebraska.gov

Attorney for Plaintiff
STATE OF NEBRASKA
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3888
Fax: (402) 471-3297


FOR THE STATE OF NEVADA

By: /s/ Erin M. Houston

ERIN M. HOUSTON, *pro hac vice*
Deputy Secretary of State, Securities Administrator
Nevada Bar No. 11814
ehouston@sos.nv.gov

Attorney for Plaintiff
STATE OF NEVADA
Office of the Nevada Secretary of State
Securities Division
2250 North Las Vegas Blvd., Suite 400

34

North Las Vegas, NV 89030
Telephone: (702) 486-2440
Fax: (702) 486-2452


FOR THE STATE OF NEW MEXICO

By: /s/ Alissa N. Berger

ALISSA N. BERGER, *pro hac vice*
Securities Enforcement Prosecutor
New Mexico Securities Division
New Mexico Bar No. 21769
Alissa.Berger@state.nm.us

Attorney for Plaintiff
STATE OF NEW MEXICO
New Mexico Securities Division
New Mexico Regulation and Licensing Department
5500 San Antonio Rd NE
Albuquerque, New Mexico 87109
Telephone: (505) 503-5987
Fax: (505) 222-9848


FOR THE STATE OF NEW YORK
LETITIA JAMES
ATTORNEY GENERAL OF THE STATE OF
NEW YORK

By: /s/ Tatyana Trakht

TATYANA "TANYA" TRAKHT, *pro hac vice*
Assistant Attorney General
tanya.trakht@ag.ny.gov
New York State Does Not Use Bar Numbers
PETER POPE
Chief, Investor Protection Bureau
peter.pope@ag.ny.gov

Attorneys for Plaintiff
ATTORNEY GENERAL FOR THE STATE OF
NEW YORK
28 Liberty Street, 21st Floor
New York, New York 10005
Telephone: (212) 416-8457

35

Fax: (212) 416-8816


FOR THE STATE OF OKLAHOMA

By: /s/ Robert Fagnant

ROBERT FAGNANT, *pro hac vice*
rfagnant@securities.ok.gov
Oklahoma Bar No. 30548

Attorney for Plaintiff
OKLAHOMA DEPARTMENT OF SECURITIES
204 N. Robinson Avenue, Suite 400
Oklahoma City, OK 73102
Telephone: (405) 280-7718
Fax: (405) 280-7742



FOR THE STATE OF SOUTH CAROLINA

By: /s/ Jonathan Williams

JONATHAN WILLIAMS, *pro hac vice*
jwilliams@scag.gov
South Carolina Bar No. 72509

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF ATTORNEY GENERAL
P.O. Box 11549
Columbia, SC 29211
Telephone: (803) 734-7208
Fax: (803) 734-7208


By: /s/ Shannon A. Wiley

SHANNON A. WILEY, *pro hac vice*
swiley@sos.sc.gov
South Carolina Bar No. 69806

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF THE SECRETARY OF STATE

36

1205 Pendleton Street, Suite 525
Columbia, SC 29201
Telephone: (803) 734-0246
Fax: (803) 734-1661


FOR THE STATE OF SOUTH DAKOTA

By: /s/ Clayton Grueb _____

CLAYTON GRUEB, *pro hac vice*
South Dakota Bar No. 4642
Clayton.grueb@state.sd.us

Attorney for Plaintiff
South Dakota Department of Labor & Regulation,
Division of Insurance
2330 N. Maple Ave, Suite 1
Rapid City, SD 57701
Telephone: (605) 773-3563
Fax: (605) 773-5369


FOR THE STATE OF TENNESSEE
HERBERT H. SLATERY III
Attorney General and Reporter
for the State of Tennessee

By: /s/ James P. Urban _____

JAMES P. URBAN, *pro hac vice*
Deputy Attorney General
TN B.P.R. No. 033599
james.urban@ag.tn.gov

Office of Tennessee Attorney General
Financial Division
P.O. Box 20207
Nashville, TN 37202-0207
Telephone: (615) 741-3739
Fax: (615) 532-8223

Attorney for Plaintiff
Commissioner of the Tennessee Department of
Commerce and Insurance

37

FOR THE STATE OF TEXAS
KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

SHAWN COWLES
Deputy Attorney General for Civil Litigation

JOSHUA R. GODBEY
Division Chief
Financial Litigation and Charitable Trusts Division

By: */s/ Christina Cella*

CHRISTINA CELLA
Assistant Attorney General
State Bar No. 24106199
christina.cella@oag.texas.gov
LEA N. BRIGTSEN
Assistant Attorney General
State Bar No. 24054504
lea.brigtsen@oag.texas.gov

Financial Litigation and Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 475-2952
Fax: (512) 477-2348
*Attorneys for Plaintiff the State of Texas*


FOR THE STATE OF WASHINGTON

By: /s/ Stephen Manning

Stephen Manning, *pro hac vice*
stephen.manning@atg.wa.gov
Telephone: (360) 586-3264
Fax: (360) 664-0229

Attorney for Plaintiff
Washington State Department of Financial
Institutions, Securities Division
150 Israel Rd. SW
Tumwater, WA 98501
Telephone: (360) 902-8700
Fax: (360) 902-0524


FOR THE STATE OF WEST VIRGINIA

By: /s/ Michael Nusbaum

MICHAEL NUSBAUM, *pro hac vice*
michael.nusbaum@wvsao.gov
West Virginia Bar No. 12708

Attorney for Plaintiff
STATE OF WEST VIRGINIA
WEST VIRGINIA SECURITIES COMMISSION
1900 Kanawha Boulevard, East
Building 1, Room W-100
Charleston, WV 25305
Telephone: (304) 558-2251
Fax: (304) 558-4211

FOR THE STATE OF WISCONSIN
JOSHUA L. KAUL
Attorney General
State of Wisconsin
Wisconsin Department of Justice

By: /s/ Lewis W. Beilin

LEWIS W. BEILIN, *pro hac vice*
Assistant Attorney General
Wisconsin Bar No. 1038835
beilinlw@doj.state.wi.us

WISCONSIN DEPARTMENT OF JUSTICE
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-3076
Fax: (608) 266-2250

*Attorneys for Plaintiff State of Wisconsin*

39

FOR THE IOWA INSURANCE
COMMISSIONER
DOUGLAS M. OMMEN

By: /s/ Adam J. Kenworthy
ADAM KENWORTHY* *pro hac vice*
Iowa Bar No. AT0012137
Enforcement Attorney
adam.kenworthy@iid.iowa.gov

Attorney for Plaintiff
IOWA INSURANCE DIVISION
1963 Bell Ave, Ste 100
Des Moines, IA 50315
Telephone: (515) 654-6562
Fax: (515)-654-6500

## CERTIFICATE OF SERVICE

On September 16, 2021, I electronically filed the foregoing PLAINTIFFS'

MEMORANDUM OF LAW IN SUPPORT OF RECEIVER'S MOTION FOR AN ORDER TO

SHOW CAUSE HEARING TO HOLD DEFENDANTS ASHER AND BATASHVILI IN

CIVIL CONTEMPT in the above captioned matter using the CM/ECF system and I am relying

upon the transmission of the Clerk's Notice of Electronic Filing for service upon all parties in

this.


/s/ JonMarc P. Buffa