## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| Commodity Futures Trading Commission, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br><br>TMTE, Inc. a/k/a metals.com, Chase Metals Inc., Chase Metals, LLC, Barrick Capital, Inc., Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher, and Simon Batashvili,<br><br><br>        Defendants. | Civil Action No. 3:20-CV-2910-L |

### DEFENDANTS' OPPOSITION TO RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANTS IN CIVIL CONTEMPT

i

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................. ii

TABLE OF AUTHORITIES ......................................................................................... iii

I.    FACTUAL BACKGROUND ............................................................................... 3

    A.   This Court's Orders ................................................................................... 3

    B.   The Defendants Do Not Own and Never Did Own Portfolio Insider, Beneficially or Otherwise, and That Entity Is Therefore Not Part of The Receivership Estate. ........... 4

    C.   The Defendants Have Not Engaged in Activities Related to Securities, Commodities, or Derivatives Within the Meaning of The Consent Order ........................................... 8

II.   ARGUMENT ..................................................................................................... 10

    A.   Portfolio Insider is Not Part of the Receivership Estate ............................................ 10

    B.   The Receiver's Motion Is, In Reality, a Motion for Punitive Sanctions and Requires All the Due Process Safeguards of a Criminal Case. ......................................................... 13

        i.    The Receiver's Motion Seeks Punitive Sanctions Because the Defendants Do Not Own Portfolio Insider and Therefore Cannot Comply With the Receiver's Demands. ................................................................................. 13

        ii.   The Complex Factfinding Necessary to Adjudicate the Alleged Out-of-Court Conduct Requires Criminal Procedural Protections ......................................... 15

    C.   The Defendants Did Not Violate This Court's Orders. ................................................. 17

CONCLUSION ........................................................................................................... 19

CERTIFICATE OF SERVICE .................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bollore S.A. v. Import Warehouse, Inc.*,
   448 F.3d 317 (5th Cir. 2006) .................................................12

*CCUR Aviation Fin., LLC v. S. Aviation, Inc.*,
   No. 21-CV-60462, 2021 WL 1738764 (S.D. Fla. May 3, 2021) ...........................13

*Crowe v. Smith*,
   151 F.3d 217 (5th Cir. 1998) .................................................14

*FTC v. E.MA. Nationwide, Inc.*,
   767 F.3d 611 (6th Cir.2014) .................................................12

*Green v. United States*,
   356 U.S. 165 (1958).................................................15

*Hornbeck v. Offshore Servs., L.L.C. v. Salazar*,
   713 F.3d 787 (5th Cir. 2013) .................................................17, 19

*Int'l Union, United Mine Workers of Am. v. Bagwell*,
   512 U.S. 821 (1994).................................................15, 16

*Janvey v. Libyan Inv. Auth.*,
   No. 3:11-CV-1177-N, 2012 WL 1059028 (N.D. Tex. Feb. 29, 2012), *aff'd*,
   478 F. App'x 233 (5th Cir. 2012) .................................................12

*Lucas v. Tex. Indus., Inc.*,
   696 S.W.2d 372 (Tex.1984).................................................12

*Maggio v. Zeitz*,
   333 U.S. 56 (1948).................................................14

*Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*,
   832 F. App'x 249 (5th Cir. 2020) .................................................15, 16

*Sec. & Exch. Comm'n v. Howard*,
   No. 3:17-CV-420-L, 2018 WL 949255 (N.D. Tex. Feb. 20, 2018).........................17

*Shillitani v. United States*,
   384 U.S. 364 (1966).................................................2, 14

*SSP Partners v. Gladstrong Investments*,
   275 S.W.3d 444 (Tex. 2008).................................................12

*In re Terrebonne Fuel and Lube, Inc.*,
    108 F.3d 609 (5th Cir.1997) ................................................................14

*Topletz v. Skinner*,
    7 F.4th 284 (5th Cir. 2021) ..........................................................2, 14

*Waffenschmidt v. Mackay*,
    763 F.2d 711 (5th Cir. 1985) ...........................................................17

*Waste Mgmt. of Wash., Inc. v. Kattler*,
    776 F.3d 336 (5th Cir. 2015) ...........................................................17

*Whitcraft v. Brown*,
    570 F.3d 268 (5th Cir. 2009) ...........................................................17

**Statutes**

15 U.S.C. § 80b-2(a)(11) ........................................................................9

iv

The Receiver's motion is a brazen overreach.  As the Court is aware, this case has been pending for more than one year with no adjudication of liability.  But the Receiver and CFTC nonetheless now ask this Court to *imprison* the defendants because of their limited work for an unrelated company that neither of the defendants ever owned or controlled, is not within the Receivership Estate, and which is not engaged in any trading or any business resembling the conduct alleged in the Complaint.

As set forth below, the evidence submitted by the Receiver and the CFTC thoroughly undermines this motion.  *First*, the evidence shows that neither of the defendants own Portfolio Insider or ever owned Portfolio Insider.  Rather, that entity was—and is—owned solely by another individual named Carlos Cruz.  This evidence includes corporate formation documents showing that Cruz established the company; undercover interviews with at least two different alleged employees of Portfolio Insider, both of whom unequivocally told law enforcement that Carlos Cruz was *the* principal and the CEO of Portfolio Insider; and the absence of any bank records demonstrating that either of the defendants had access or authority over any finances of Portfolio Insider.  Rather than meeting the "clear and convincing evidence" standard required on a civil contempt motion, the Receiver's and CFTC's own submissions show that the defendants *do not own* Portfolio Insider and have no ability to turn over to the Receiver any tangible or intangible rights to that company.

*Second*, because the defendants do not own Portfolio Insider or any of its assets, beneficially or otherwise, this contempt motion is not, in fact, a motion to hold the defendants in *civil* contempt, but is, in reality, a *criminal* contempt proceeding.  "As the Supreme Court has explained, it is specifically '[t]he conditional nature of the imprisonment' for civil contempt, which is 'based entirely upon the contemnor's continued defiance,' that 'justifies holding civil contempt

1

proceedings absent the safeguards' of criminal due process like 'indictment and jury.'" *Topletz v. Skinner*, 7 F.4th 284 (5th Cir. 2021) (quoting *Shillitani v. United States*, 384 U.S. 364, 370–71 (1966)); *Shillitani*, 384 U.S. at 368 (civil contemnors must "carry the keys of their prison in their own pockets."). Where, as here, it is impossible for the defendants to perform—because they have no interest whatsoever in Portfolio Insider to turn over to the Receiver—the contempt sought is criminal and requires all of the due process safeguards provided criminal defendants. Moreover, under Supreme Court and Fifth Circuit precedent, the complex factfinding necessary to adjudicate this motion necessitates the application of criminal due process protections.

*Third*, the defendants did not violate any provision of any of this Court's orders by performing services for Portfolio Insider. As the Receiver's and CFTC's own evidence shows, Portfolio Insider is simply a software company which makes available to consumers, in aggregated and usable form, financial data from various public and private sources, including the NASDAQ and the SEC. Portfolio Insider does not engage in trading of any securities or commodities and does not provide investment advice. In addition, as the records submitted by the Receiver and CFTC demonstrate, the services performed by the defendants for Portfolio Insider were of a general administrative and operational nature. The defendants did not engage in trading or the solicitation of funds relating to the purchase or sale of securities, commodities, or derivatives.

This motion is unsupported by the facts, an overreach on the law, and a distraction from the real issues in the case—including the very real problems with the Complaint such as those set

forth in the Defendant's Emergency Motion to Modify Preliminary Injunction (Dkt. # 232), which has yet to be decided.  The motion should be denied.[1]

## I.     FACTUAL BACKGROUND

### A.     This Court's Orders

On November 22, 2020, this Court entered an Order Granting Plaintiffs' Emergency *Ex Parte* Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief (the "Statutory Restraining Order").  Pursuant to the Statutory Restraining Order, the "Receivership Estate" includes only "assets *owned*, beneficially or otherwise, by the Receivership Defendants."  (Statutory Restraining Order ¶ 33 (emphasis added)).

The Receivership Defendants, in turn, are the Defendants and Relief Defendants.  Plainly, then, only assets actually *owned* by the Defendants or the Relief Defendant—beneficially or otherwise—are subject to the Statutory Restraining Order.

Pursuant to this Court's Order Granting Receiver's Motion to Identify Certain Entities in Receivership, entered March 22, 2021, the Court found that an entity named Retirement Insider, LLC, among other entities, is a Receivership Defendant for purposes of identifying the Receivership Estate.  The Court made no such determination relating to Portfolio Insider, nor was the Court asked to make such a finding, despite the fact that the Receiver was well aware of both the existence of that entity and the defendants' work for that entity months beforehand.

---

[1] Notably, the FBI, under the supervision of the U.S. Attorney's Office for the Northern District of Texas executed a search warrant in connection with this investigation in September 2020, more than one year ago. That search warrant resulted in the seizure of terabytes of data, including attorney-client privileged materials belonging to the defendants. Despite the criminal investigation that has been ongoing for apparently more than one year, neither of the defendants have been charged criminally.

On October 14, 2020, the Court entered a Consent Order of Preliminary Injunction and Other Equitable Relief (the "Consent Order") as to the individual defendants. Among other things, the Consent Order contains Provisions prohibiting the defendants from engaging in certain securities or commodities transactions. These include: "Trading on or subject to the rules of any registered entity" (Consent Order ¶ 20(a)); "Entering into any transactions involving commodity interests" for their own accounts (Consent Order ¶ 20(b)); "Controlling or directing the trading for on behalf of any other person or entity in any account involving commodity interests" (Consent Order ¶ 20(d)); "Acting as a broker dealer or investment advisor" or associating with the same in violation of state law (Consent Order ¶ 20(h)); and "Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling securities or equities." (Consent Order ¶ 20(i)).

The Consent Order also contains a provision prohibiting the defendants from engaging in any activity "related to" securities, commodities, or derivatives, including "soliciting, receiving, or accepting any funds . . . for the purpose of purchasing, selling, or otherwise investing in precious metals, securities, commodities, derivatives, virtual currency, binary options, or foreign currency or receiv[ing] any income. . . from any person or entity engaged in said activities." (Consent Order ¶ 38).

### B.   The Defendants Do Not Own and Never Did Own Portfolio Insider, Beneficially or Otherwise, and That Entity Is Therefore Not Part of The Receivership Estate.

In its voluminous briefing, the Receiver fails to address the one critical issue: whether the defendants "own[]" Portfolio Insider, beneficially or otherwise, as required to give the Receiver authority over that entity under this Court's Statutory Restraining Order. (Statutory Restraining

Order ¶ 33).  The defendants plainly did *not* own Portfolio Insider, do not currently own the company, and the Receiver's motion must therefore fail.

The Receiver's and CFTC's own evidence undermines their assertions that the defendants own Portfolio Insider.  That evidence includes the following:

- The *sole manager* of Portfolio Insider as reflected in its formation documents is Carlos Cruz, not either of the defendants.  (Receiver App. Pg. 165, Crawford Decl. ¶ 15 ("On or about October 27, 2020, the entity 'Portfolio Insider' was formed as a Delaware limited liability company *with Carlos Cruz as the manager*") (emphasis added)).  Neither of the defendants are listed anywhere on the Portfolio Insider corporate formation documents;[2]

- One of the principal Portfolio Insider employees relied upon by the Receiver and CFTC—an individual who identified himself to an undercover agent as Evan Roberts, a chief technical analyst for portfolio insider (CFTC App. Pgs. 125-134 and 142-152, Planer Decl. ¶¶ 38-69; ¶¶ 100-130)—told the agent that "*[t]he CEO of Portfolio Insider is Carlos Cruz*."  (CFTC App. Pg. 150, Planer Decl. ¶ 129 (emphasis added)).

- Another Portfolio Insider employee, Gus Johnson, principally relied upon by the Receiver and CFTC in their motion papers, told an undercover agent that *Carlos* Cruz was the principal person behind Portfolio Insider.  (CFTC App. Pg. 154, Planer Decl. ¶ 141 "*Johnson stated the principal person behind Portfolio Insider is Carlos Cruz*, who allegedly has a background in artificial intelligence and connections in the Silicon Valley area." (emphasis added)).

- *Neither of the defendants own, control, or have any authority over any bank accounts or other financial accounts belonging to Portfolio Insider.*[3]

- Of the two apparently disgruntled Portfolio Insider employees willing to provide declarations to the Receiver, one says nothing about who hired her while the other states that he was jointly interviewed and hired by Carlos Cruz and the defendants.

---

[2] "Receiver Br." refers to the Receiver's Emergency Motion for Show Cause Hearing To Hold Defendants In Civil Contempt (Dkt. 311); "Receiver App." refers to the Receiver's appendix to its motion (Dkt. 312); "CFTC Br." refers to the CFTC's brief and "CFTC App." refers to the CFTC's appendix (Dkt. 313).

[3] Incredibly, neither the Receiver nor the CFTC—which have apparently obtained and reviewed voluminous financial records in this investigation and have the power to obtain these records—made any apparent effort to obtain or review any Portfolio Insider accounts to determine their ownership or control (See, e.g., Receiver App. Pg 00006-00007, Planer Decl. ¶¶ 4(e)-(h); Receiver App. Pgs. 00159-00160, Crawford Decl. ¶ 5; CFTC App. Pgs. 114-116, Planner Decl. ¶¶ 4(h)-(m)).

(Receiver App., Pg 00110, McWright Decl. ¶2; Receiver App., Pg 108, Hacker Decl.).  No information is provided about who the ultimate decisionmaker was.  In fact, the decisionmaker was Carlos Cruz, Portfolio Insider's CEO and "sole" owner, as the evidence above shows.

In sum, the "evidence" presented by the Receiver and CFTC shows exactly the opposite of what they argue—i.e., that the defendants *do not* own Portfolio Insider.

Lacking any proof that the defendants own Portfolio Insider, the Receiver and CFTC devote nearly their entire briefs on a wholly different entity named Retirement Insider, attempting to argue that Portfolio Insider is somehow "one and the same" as Retirement Insider.  (Receiver Br., at 20).  But to say the Receiver's evidence for this proposition is scant would be an understatement.  By way of example, the Receiver has failed to produce any evidence that the entities have common owners (they do not), common bank accounts (again, none), common office space (yet again, no) or really anything of substance in common.

Notably, the Receiver and CFTC have also provided no evidence that any material amount of funds from the business that is the subject of the Complaint in this case were used on Portfolio Insider.  Lacking such proof, the Receiver and CFTC attempt the same sleight of hand, substituting Retirement Insider—a wholly distinct entity which no one disputes is within the Receivership Estate—with Portfolio Insider.  *See, e.g.*, CFTC Br., at 4 ("Asher and Batashvili used commingled Metals' victims' funds to create *Retirement Insider* and its platform."; "[C]ommingled Metals funds . . . funded at least $176,158 of payroll obligations of *Retirement Insider* [*not Portfolio Insider*], and cover its expenses." (emphases added)).

The Receiver and CFTC are therefore reduced to arguing that the defendants "worked long hours, six days a week at Portfolio Insider" and that somehow such toil "demonstrates ownership, operation, and control of Portfolio Insider."  (CFTC Br., at 5).  The Receiver also attempts to make much of defendant Batashvili's alleged purchase of domain names for a few hundred dollars,

including portfolioinsider.com, as though this ministerial act indicates ownership of the company. (Receiver Br. at 8).  None of this approaches proof of ownership, let alone proof under the heightened clear and convincing evidence standard applicable to civil contempt motions or proof beyond a reasonable doubt, as required here.  *See infra*.

The Receiver's main basis for arguing that Portfolio Insider is the same as Retirement Insider is a single unsupported statement by a former Portfolio Insider employee—an individual whose one page declaration candidly admits that she is cooperating with the Receiver while also "seeking payment" from the Receiver of her "unpaid wages" from Portfolio Insider[4]—that "Portfolio Insider was also Retirement Insider."  No explanation or context is provided about what the employee means by this statement.  It plainly cannot mean that the companies share common ownership as reflected in the corporate formation documents as even the Receiver concedes that is not the case.

The Receiver's papers are also highly misleading.  For example, the Receiver asserts that the defendants *caused* Carlos Cruz to form Portfolio Insider, LLC as a means to circumvent the Statutory Restraining Order and provides cites to the Appendix purportedly supporting that assertion.  (Receiver Br. at 12 (defendants "had" Cruz form Portfolio Insider)).  The Receiver likewise asserts that it was the defendants who "agreed to call the financial product being developed . . . 'Portfolio Insider.'"  (Receiver Br. at 8).  But the Appendix contains not a stitch of evidence that the defendants asked or caused Carlos Cruz to form Portfolio Insider, LLC or that the defendants named Portfolio Insider.  They did neither.  The Court should be wary of such

---

[4] *See* Receiver App., pg 00108, Hacker Decl. ¶1. The Receiver has not provided the defendant or the Court with information regarding what, if any, incentives this employee (or other declarants) was provided or promised as an inducement for providing her declaration.

misleading statements, which are particularly disturbing in this context where the defendants' physical liberty is at stake.

The Receiver and CFTC present some evidence that the defendants performed services for Portfolio Insider, including dealing with contracts and consultants and operational tasks such as purchasing. The defendants do not dispute that they did some unpaid work for Portfolio Insider. But none of those activities demonstrate that either of the defendants *own* Portfolio Insider or any assets of Portfolio Insider.

**C.      The Defendants Have Not Engaged in Activities Related to Securities, Commodities, or Derivatives Within the Meaning of The Consent Order.**

Portfolio Insider is a financial data software company. The company's business is to provide software that aggregates financial data, culled from a range of data sources, and provides that data in usable form to consumers. The data sources include exchanges such as the NASDAQ as well as public filings including from the Securities and Exchange Commission. The company is not in the business of providing investment advice. The company does not engage in the trading of securities or commodities. It simply provides financial data software to be used by consumers to make to make their own trading decisions.

Nothing in the Receiver's or the CFTC's papers suggests otherwise. To the contrary, several of the employees interviewed by the Receiver make clear that Portfolio Insider is *not* engaged in providing investment advice or in the trading of any securities or commodities. The following are just a few examples from the Receiver's and CFTC's own papers demonstrating that Portfolio Insider is nothing more than a publisher of financial data:

- "The Portfolio Insider product provided customers *information regarding trades, holdings, portfolios, and other information for customers to use* to invest in the purchase of securities, including mutual funds." (Receiver App., Pg 00111, McWright Decl. ¶ 6 (emphasis added)).

8

- "The *software reported on stocks and . . . portfolio holdings* and was a subscription service for stock research." (Receiver App., Pg 00108, Hacker Decl. ¶ 3 (emphasis added))

- "*Defendant Asher's vision for the Portfolio Insider product was to compete with the Bloomberg Terminal in providing financial information to investors* to assist them in investing in securities or commodities. In the months prior to the receivership, Defendant Asher continually promoted Po1ifolio Insider as a competitor to the Bloomberg terminal." (Receiver App., Pgs. 00162-163, Crawford Decl. ¶ 11 (emphasis added)).

- Portfolio Insider is "a financial analytics company focused on utilizing artificial intelligence/algorithms to provide fundamental financial data." (CFTC App. Pgs. 19 and 107, Gomersall Decl. ¶ 71, Att. R ) (quoting article titled "Nasdaq Congratulates Portfolio Insider: Among Fastest Growing Fintechs in the U.S.").

- "My job at Portfolio Insider was to call persons and sell them *the Portfolio Insider terminal*." (Receiver App. Pg. 00111, McWright Decl. ¶ 3 (emphasis added)).

All of this evidence demonstrates that Portfolio Insider was not engaged in providing investment advice or the trading of securities, but rather simply a provider of software designed to aggregate and make more user friendly commercially or publicly available financial data.

The CFTC suggests that there is something nefarious about Portfolio Insider allowing users to narrow searches or otherwise focus on particular securities or the holdings of particular large investors. (CFTC Br., at 12). But allowing customers to sort data sets to focus on a particular time frame, security, or investor does not transform the company into an investment advisor. *See* 15 U.S.C. § 80b-2(a)(11) ("'Investment adviser' means any person who, for compensation, engages in the business of advising others, . . . as to *the value of securities* or as to *the advisability of investing* in, purchasing, or selling securities, or who, for compensation and as part of a regular business, issues or promulgates *analyses* or reports concerning securities . . .") (emphases added).

The CFTC also claims that if a customer called in for advice on a particular stock, Portfolio Insider would advise them on a trading decision. (CFTC Br., at 10). But the only evidence the CFTC relies on for this proposition— two undercover calls—do not include any Portfolio Insider

9

employee actually providing any such trading advice, only vague promises to provide "help" should the caller later call back.  (CFTC App. Pgs. 140-141, Planer Decl. ¶ 95; CFTC App. Pg. 365, Fulmer Decl. ¶ 42).[5]

In any event, neither the Receiver nor the CFTC have provided this Court with any competent evidence to suggest that either of *these* two defendants provided any investment advice whatsoever to any customer of Portfolio Insider or that either of the defendants engaged in any trading of securities or commodities. The evidence only shows that the defendants worked and consulted for a software company, as they were entitled to do under this Court's Orders.

## II.   ARGUMENT

### A.   Portfolio Insider is Not Part of the Receivership Estate

The Receivership Estate by definition includes only "assets *owned*, beneficially or otherwise, by the Receivership Defendants.  (Statutory Restraining Order ¶ 33 (emphasis added)). But the Receiver and CFTC have not established by clear and convincing evidence, let alone proof beyond a reasonable doubt—or by any lesser standard for that matter—that the defendants own Portfolio Insider.  Indeed, the Receiver's and CFTC's own evidence shows exactly the opposite, that Portfolio Insider is owned by Carlos Cruz, an individual who was not involved in any of the businesses charged in the underlying Complaint.

*First*, both the Receiver and the CFTC concede that it was Carlos Cruz who formed Portfolio Insider, LLC.  (Receiver App. Pg. 00165, Crawford Decl. ¶ 15 ("On or about October 27, 2020, the entity 'Portfolio Insider' was formed as a Delaware limited liability company *with Carlos Cruz as the manager*" (emphasis added)).  Neither of the defendants are members of

---

[5] The defendants had no involvement in any alleged e-mails recommending the purchase or sale of any securities, commodities, or derivatives.

Portfolio Insider, LLC, are listed anywhere on the Portfolio Insider corporate formation documents, or have any ownership interest whatsoever in the entity. Indeed, as of on or about the date the Receiver's motion was filed, the defendants were prohibited by Portfolio Insider personnel from visiting the Portfolio Insider corporate premises.

*Second*, interviews with both Evan Roberts and Gus Johnson—employees of Portfolio Insider as described in the Receiver's and CFTC's declarations—both categorically and without pretense stated that it was Carlos Cruz, not the defendants, who was the principal of Portfolio Insider. (CFTC App. Pg. 150, Planer Decl. ¶ 129 (quoting an undercover call with Evan Roberts, a chief technical analyst for Portfolio Insider, as stating that "*[t]he CEO of Portfolio Insider is Carlos Cruz*.") (emphasis added)); (CFTC App. Pg. 154, Planer Decl. ¶ 141 quoting an undercover call with Gus Johnson: "*Johnson stated the principal person behind Portfolio Insider is Carlos Cruz*, who allegedly has a background in artificial intelligence and connections in the Silicon Valley area." (emphasis added)).

*Third*, the Receiver and CFTC have failed to show that any Portfolio Insider bank or other financial accounts were owned or controlled by neither of the defendants. The fact is that neither of the defendants have any ownership, control, or signatory authority over any bank accounts or other assets of Portfolio Insider.

On these bases alone the motion should be denied.

Although the defendants performed some work for Portfolio Insider, such services, even if they involved "long hours," do not constitute ownership of the entity. Nor does the purchase of domain names for a few hundred dollars—a ministerial task—make the defendants owners of Portfolio Insider. And the bare statement by an apparently disgruntled employee who is "seeking payment" from Portfolio Insider that the entity is the "same" as another entity already in the

11

Receivership Estate is hardly sufficient to overcome the evidence that the entities are distinct. Portfolio Insider therefore does not fall within the Receivership Estate as defined in this Court's Orders, and for that reason alone motion should be denied.[6]

In its motion, the Receiver requests of this Court that "the business of Portfolio Insider should be expressly named as part of the Receivership Estate." (Receiver Br., at 24). But, as the Receiver must surely recognize, this contempt motion is not the appropriate vehicle for that request. If the Receiver believes Portfolio Insider or its assets should be part of the Receivership Estate, he should file a claim in this Court against *Portfolio Insider*. That is the true party in interest here, not to mention the party with all the documents and other evidence that could be used

---

[6] To the extent the Receiver is arguing that a veil piercing analysis somehow establishes the defendants' ownership of Portfolio Insider, the premise is flawed. Veil piercing only occurs *after* ownership is established and the issue is whether the entity fiction should be disregarded in the interest of justice. *Bollore S.A. v. Import Warehouse, Inc.*, 448 F.3d 317, 325 (5th Cir. 2006) ("The great weight of Texas precedent indicates that, for the alter ego doctrine to apply against an individual under this test, the individual must own stock in the corporation. . . . In the instant case, . . . the record reflects that Appellees offered no evidence of such ownership. Rather, the record shows that, while Ali Mackie performed managerial duties and held a position on Freetown's board of directors, Najat Mackie was the sole shareholder of Freetown. . . . Appellees thus rely exclusively on Ali Mackie's managerial control of Freetown to support their case that Freetown is Ali Mackie's alter ego, which, standing alone, is insufficient under Texas law to support an alter ego finding.").

Nor has the Receiver even approached showing that Portfolio Insider is an alter ego of Retirement Insider or the defendants. *See, e.g.*, *Janvey v. Libyan Inv. Auth.*, No. 3:11-CV-1177-N, 2012 WL 1059028, at *4 (N.D. Tex. Feb. 29, 2012), *aff'd*, 478 F. App'x 233 (5th Cir. 2012) (quoting *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex.1984) ("There must be something more than mere unity of financial interest, ownership and control for a court to treat the subsidiary as the alter ego of the parent and make the parent liable for the subsidiary's tort.")).

Moreover, the Receiver's citation to *FTC v. E.MA. Nationwide, Inc.*, 767 F.3d 611, 637 (6th Cir.2014) is inapposite as that case involves the "single business enterprise" theory, which was rejected more than a decade ago. *See SSP Partners v. Gladstrong Investments*, 275 S.W.3d 444, 456 (Tex. 2008) ("Accordingly, we hold that the single business enterprise liability theory set out in Paramount Petroleum will not support the imposition of one corporation's obligations on another.").

12

to refute the Receiver's claim.  *See, e.g.*, *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, No. 21-CV-60462, 2021 WL 1738764, at *3 (S.D. Fla. May 3, 2021) (holding that "where a receivership may be expanded to include a non-party or its property, that non-party is entitled to notice and an opportunity to be heard").[7]

The Receiver's attempt to litigate Portfolio Insider's status as part of this contempt motion is simply an end run around litigating that issue with the true party in interest, Portfolio Insider, the party with the evidence as to the ownership and control of the entity itself and therefore the ability to defend itself.

> **B.**      **The Receiver's Motion Is, In Reality, a Motion for Punitive Sanctions and Requires All the Due Process Safeguards of a Criminal Case.**

> > **i.**      **The Receiver's Motion Seeks Punitive Sanctions Because the Defendants Do Not Own Portfolio Insider and Therefore Cannot Comply With the Receiver's Demands.**

As demonstrated above, the defendants do not own Portfolio Insider or any of its assets, and they are therefore not in violation of this Court's orders.  Moreover—and, indeed, as a corollary—the defendants simply cannot do what the Receiver is asking.  (Receiver Br., at 24).

The defendants have no Portfolio Insider assets to turn over to the Receiver.  Nor are the defendants in possession of the demanded "records" regarding the operations of Portfolio Insider. Nor are the defendants in possession of information or records enabling them to provide an "accounting of all monies" received by Portfolio Insider.

---

[7] For the same reason, defendants do not address the CFTC's allegations of fraud or other misconduct in connection with Portfolio Insider.  The defendants did not engage in any fraudulent or wrongful conduct in connection with their work for Portfolio Insider and deny the CFTC's allegations.  To the defendants' knowledge, neither the CFTC, nor any other law enforcement or regulatory authority, has taken action against Portfolio Insider.  Should that occur, it will be for Portfolio Insider, not the defendants, to respond to any such allegations.

The Receiver's request to incarcerate the defendants until they meet these conditions is therefore plainly punitive, converting this motion into one for criminal contempt.

"As the Supreme Court has explained, it is specifically '[t]he conditional nature of the imprisonment' for civil contempt, which is 'based entirely upon the contemnor's continued defiance,' that 'justifies holding civil contempt proceedings absent the safeguards' of criminal due process like 'indictment and jury.'" *Topletz v. Skinner*, 7 F.4th 284, 295–96 (5th Cir. 2021) (quoting *Shillitani v. United States*, 384 U.S. 364, 370–71 (1966)).

Therefore, "the justification for coercive imprisonment as applied to civil contempt depends upon the ability of the contemnor to comply with the court's order." *Shillitani*, 384 U.S. at 371 (citing *Maggio v. Zeitz*, 333 U.S. 56, 76, (1948)). "And when that rationale does not exist because the contemnor 'has no . . . opportunity to purge himself of contempt,' confinement of a civil contemnor violates due process." *Topletz*, 7 F.4th at 296 (quoting *Shillitani*, 384 U.S. at 371). "Under the oft-repeated aphorism, civil contemnors must 'carry the keys of their prison in their own pockets.'" *Topletz*, 7 F.4th at 296 (quoting *Shillitani*, 384 U.S. at 368); s*ee also Crowe v. Smith*, 151 F.3d 217, 227 (5th Cir. 1998) ("If the purpose of the order is to punish the party whose conduct is in question or to vindicate the authority of the court, the order is viewed as criminal. If, on the other hand, the purpose of the contempt order is to coerce compliance with a court order or to compensate another party for the contemnor's violation, the order is considered to be civil.") (citing *In re Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609, 612 (5th Cir.1997)).

Here, aside from the basic fact that the defendants do not own Portfolio Insider and are therefore not in violation of this Court's orders, the defendants simply *cannot* comply with the Receiver's demands. As a result, the Receiver's demand that the defendants be incarcerated is nothing but an effort to impose *punitive* sanctions on the defendants, making this a criminal

14

contempt and requiring a trial by jury and proof beyond a reasonable doubt, among all the other due process protections afforded criminal defendants.

**ii.    The Complex Factfinding Necessary to Adjudicate the Alleged Out-of-Court Conduct Requires Criminal Procedural Protections**

This motion merits the higher due process protections of a criminal proceeding for another independent reason.  The Supreme Court recognized in *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994), albeit in dicta, that "[f]or a discrete category of indirect contempts. . . . civil procedural protections may be insufficient."  *Bagwell*, 512 U.S. at , 833–34.

In particular, "[c]ontempts involving out-of-court disobedience to complex injunctions often require elaborate and reliable factfinding. *Id.* (citing *Green v. United States*, 356 U.S. 165, 217, n. 33 (1958) (Black, J., dissenting); *see also Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*, 832 F. App'x 249, 255 (5th Cir. 2020) ("As an injunction's commands become more complex, contempts involving out-of-court disobedience may require elaborate and reliable factfinding." (citing *Bagwell*, 512 U.S. at 833–34)).  "Such contempts do not obstruct the court's ability to adjudicate the proceedings before it, and the risk of erroneous deprivation from the lack of a neutral factfinder may be substantial" and "[u]nder these circumstances, criminal procedural protections such as the rights to counsel and proof beyond a reasonable doubt are both necessary and appropriate to protect the due process rights of parties and prevent the arbitrary exercise of judicial power."  *Bagwell*, 512 U.S. at 833–34.

"[C]ontempts involving out-of-court disobedience may require elaborate and reliable factfinding." A "hearing must be held, witnesses must be called, and evidence taken in any event," and "often . . . crucial facts are in close dispute."  *Ravago Americas L.L.C.*, 832 F. App'x at *255 (quoting and citing *Bagwell*, 512 U.S. at 833—34).  "Under these circumstances, in light of the

15

extraordinary means of enforcement at play, criminal procedural protections may be both necessary and appropriate." *Id.*

The Fifth Circuit in *Ravago Americas* went on to hold that the elaborate factfinding required in that case further demonstrated the need for criminal due process protections:

> If any doubt remains about the proper characterization of the $50,000 sanction, we need only look to the means of enforcement employed. *See Bagwell*, 512 U.S. at 840, 114 S.Ct. 2552 (Scalia J., concurring). *To decide if the injunction had been violated, the judge presided over a lengthy hearing. Several witnesses testified to conflicting accounts of the relevant events. Critical facts were in close dispute. These circumstances indicate that criminal procedural protections were likely necessary and appropriate.*

*Ravago Americas*, 832 F. App'x at *256 (citing *Bagwell*, 512 U.S. at 833-34).

The complex factfinding here regarding the alleged "out-of-court" conduct—involving hundreds of pages of appendices and multiple law enforcement and lay declarants—clearly merits the higher due process described in *Bagwell* and *Ravago Americas*.

The Receiver and CFTC do not allege any clear violation of this Court's orders. To the contrary, the allegation here is that although *it is undisputed that another individual owns Portfolio Insider*, somehow this is a sham and the defendants are the true beneficial owners.  As demonstrated by the facts set forth above, this is false, And the analysis ought to end there. But it is also something that the Receiver and CFTC are attempting to prove up via a lengthy, tortured, and complex set of subsidiary facts, each of which is a matter of intense dispute and conflicting accounts.  These facts are exactly what was contemplated by the Supreme Court in *Bagwell* and by the Fifth Circuit in *Ravago Americas*.  This Court should apply all of the criminal due process protections to this motion, including trial by jury, proof beyond a reasonable doubt, and an independent prosecutor.

16

### C.   The Defendants Did Not Violate This Court's Orders.

The Receiver has not remotely met its burden to hold the defendants in contempt.  "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Sec. & Exch. Comm'n v. Howard*, No. 3:17-CV-420-L, 2018 WL 949255, at *6 (N.D. Tex. Feb. 20, 2018) (citing *Waste Mgmt. of Wash., Inc. v. Kattler*, 776 F.3d 336, 341 (5th Cir. 2015)).

"To hold a party in civil contempt, the court must find such a violation by clear and convincing evidence."  *Hornbeck v. Offshore Servs., L.L.C. v. Salazar*, 713 F.3d 787, 792 (5th Cir. 2013). Evidence is clear and convincing if it "produces in the mind of the trier of fact a firm belief . . . so clear, direct and weighty and convincing as to enable a fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case." *Hornbeck*, 713 F.3d at 792 (citation omitted).

"Although good faith is not a defense to a civil contempt order, good faith is relevant to whether a non-party knowingly aided or abetted another in violating a court order." *Whitcraft v. Brown*, 570 F.3d 268, 272 (5th Cir. 2009) (citing *Waffenschmidt v. Mackay*, 763 F.2d 711, 726 (5th Cir. 1985)).

As set forth above, because the Receiver seeks to impose punitive sanctions here, the defendants are entitled to all the due process rights afforded criminal defendants, including proof beyond a reasonable doubt.  And, as an independent matter, under *Bagwell* and *Ravago Americas*, the complex factfinding here requires proof beyond a reasonable doubt. But even if this motion is deemed as one for civil contempt and no heightened standard applies, the Receiver and the CFTC have utterly failed to show by clear and convincing evidence that either of the defendants violated this Court's orders.

17

*First*, as noted above, the Receiver's and CFTC's own evidence shows that neither of the defendants own Portfolio Insider, beneficially or otherwise, as specified in the Consent Order.  The defendants are not and never were in possession of any assets or records of Portfolio Insider such that they could turn over such assets or records to the Receiver.  Nor do they have the information needed to provide an "accounting."  And as set forth above, to the extent the Receiver is seeking incarceration of the defendants until they comply with these requirements, such a measure is clearly punitive and would convert this proceeding into a criminal case.

*Second*, the defendants have not violated the Consent Order by working for Portfolio Insider. As is plain from the Receiver's and CFTC's papers, Portfolio Insider is not engaged in trading securities or commodities or in soliciting money from customers to engage in such trading. It is also not providing any investment advice. It is rather like a "Bloomberg terminal," (Receiver App. Pgs. 00162-00163, Crawford Decl. ¶ 11), in the sense that it provides financial data that is available on the NASDAQ or from the SEC.

While the Receiver points to broad language in the Consent Order prohibiting the defendants from engaging in activities "related to" securities, commodities, or derivatives, the Order plainly cannot be read to prohibit the provision of financial data such as what is provided by Portfolio Insider.  For one thing, reading the order literally—as prohibiting any activity "related to" securities—would lead to absurd results. It would mean for example that the defendant could not publish a book about securities or purchase an item manufactured by a company that has issued securities. That plainly cannot be the case.

Moreover, the Order itself immediately qualifies the broad language with the prime example of what is clearly intended by the Order:  "soliciting, receiving, or accepting any funds . . . for the purpose of purchasing, selling, or otherwise investing in precious metals, securities,

18

commodities, derivatives, virtual currency, binary options, or foreign currency or receiv[ing] any income. . . from any person or entity engaged in said activities."  (Consent Order ¶ 38).  Clearly, this conduct—in the nature of the conduct alleged in the Complaint—is the sort of conduct the Order is intended to prohibit.

The Receiver thus cannot sustain his burden to show, by clear and convincing evidence, let alone proof beyond a reasonable doubt, that the defendants violated the order and his motion must therefore be denied. *Hornbeck*, 713 F.3d at 792 (holding that evidence is clear and convincing if it "produces in the mind of the trier of fact a firm belief . . . so clear, direct and weighty and convincing as to enable a fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.") (citation omitted).

## CONCLUSION

The motion should be denied.

Dated: October 7, 2021                              Respectfully submitted,

                                        */s/ Gene R. Besen*
                                        Gene R. Besen
                                        Texas Bar No. 24045491
                                        gbesen@bradley.com
                                        Elisha Kobre (*pro hac vice pending*)
                                        New York State Bar. No. 4418182
                                        ekobre@bradley.com
                                        David C. Miller
                                        Texas Bar No. 24110114
                                        dmiller@bradley.com

                                        Bradley Arant Boult Cummings LLP
                                        1445 Ross Avenue, Suite 3600
                                        Dallas, Texas 75202
                                        Telephone (214) 257-8700
                                        Facsimile (214) 939-8787

                                        **ATTORNEYS FOR DEFENDANTS**
                                        **LUCAS ASHER AND SIMON BATASHVILI**

19

## CERTIFICATE OF SERVICE

I certify that all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document via the Court's CM/ECF system on this 7th day of October, 2021.

/s/ *Gene R. Besen*

Gene R. Besen