# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2910-L |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § | |

## RECEIVER'S RESPONSE TO PORTFOLIO INSIDER'S MOTION TO PREVENT RECEIVER FROM TAKING POSSESSION OF PROPERTY OF A NON-RECEIVERSHIP ENTITY

Kelly M. Crawford ("Receiver")  respectfully submits this response to Portfolio Insider, LLC's Motion to Prevent Receiver from Taking Possession of Property of a Non-Receivership Entity (the "PI Motion").

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................Page 3

I.      INTRODUCTION....................................................................................Page 4

II.     FACTUAL BACKGROUND ...........................................................Pages 4 - 10

III.    PORTFOLIO INSIDER IS SUBJECT TO THE COURT'S SRO......................Pages 10 - 18

        A.      Portfolio Insider is bound to the SRO pursuant to Paragraph 37..................Page 10

        B.      Portfolio Insider has been Misappropriating Receivership Assets
                in Violation of the SRO ................................................................Page 11

        C.      Defendants Asher and Batashvili Control Portfolio Insider, Rendering it
                Subject to the SRO/Consent Order and/or Part of the Receivership
                Estate.........................................................................................Pages 11 - 15

                1.      Retirement Insider, a Receivership Defendant, was Rebranded
                        to Become Portfolio Insider ...............................................Pages 11 - 13

                2.      Defendants Asher and Batashvili have been Controlling the
                        Business of Portfolio Insider..............................................Pages 13 - 15

        D.      Cruz' Ownership of Portfolio Insider is a Sham.............................Pages 15 - 17

        E.      Portfolio Insider Falsely Claims the Receiver Made No Request to Have
                the Court Expressly Name Portfolio Insider as Part of the Receivership
                Estate  ......................................................................................Page 18

IV.     THE RECEIVER'S REQUEST FOR DOCUMENTS REGARDING
        PORTFOLIOINSIDER WAS AUTHORIZED BY THE COURT'S
        ORDERS.................................................................................................Pages 19 - 20

V.      THE RECEIVER DID NOT EVER SEEK TO SEIZE ASSETS OR TAKE
        CONTROL OF PORTFOLIO INSIDER ..............................................Pages 20 - 21

VI.     ANY DISRUPTION IN PORTFOLIO INSIDER'S BUSINESS
        WAS NOT AT THE RECEIVER'S REQUEST ...................................Page 21

VII.    PORTFOLIO INSIDER'S BUSINESS SHOULD BE SHUT DOWN
        BECAUSE IT IS PREYING UPON THE INVESTING PUBLIC
        IN VIOLATION OF SECURITIES AND COMMODITIES LAWS .................Pages 22 – 23

VIII.   CONCLUSION .......................................................................................Pages 23 - 24

## TABLE OF AUTHORITIES

**CASES**

*CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, 2021 WL 1738764
(S.D. Fla. May 3, 2021) ................................................................................Page 18

*Ledford v. Keen,* 9 F.4th 335 (5th Cir. 2021)........................................................Page 16

*S.E.C. v. Priv. Equity Mgmt. Grp., Inc.*, 2009 WL 1941400 (C.D. Cal. July 2, 2009)..........Page 17

*SSP Partners v. Gladstrong Invs.* (USA) Corp., 275 S.W.3d 444 (Tex. 2008)....................Page 17

*United States v. RaPower-3, LLC, 2019 WL 2195409, at (D. Utah May 3, 2019),
appeal dismissed sub nom. United States v. Solco I, LLC*, 962 F.3d 1244 (10th Cir. 2020)Page 17

*Virginia, T. & C. Steel & Iron Co. v. Bristol Land Co.*, 88 F. 134 (C.C.W.D. Va. 1898).....Page 24

**STATUTE**

7 U.S.C. § 9(1) ............................................................................................Page 22

**REGULATIONS**

17 C.F.R. §180.1(a)(1)-(3)..........................................................................Page 22

# I.

## INTRODUCTION

The contention that Portfolio Insider, LLC (Portfolio Insider) is a legitimate company that Defendants Lucas Asher and/or Simon Batashvili do not control is absurd. Similarly, the allegation that the Receiver acted outside his authority in requesting documents regarding Portfolio Insider as part of his obligations under the Court's Orders ignores the clear, plain, and unequivocal directives of the Orders. And, the suggestions that the Receiver took possession of Portfolio Insider's assets, requested its' vendors to stop serving Portfolio Insider, or otherwise exercised control over Portfolio Insider are blatantly false.

# II.

## FACTUAL BACKGROUND

1.      On September 22, 2020 the Court entered the *Order Granting Plaintiff's Emergency Ex Parte Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief ("SRO")* [Dkt. NO. 16] appointing the Receiver, defining the assets that constitute the "Receivership Estate", and establishing the powers of the Receiver. The *SRO* did not define the "Receivership Defendants" included in the Receivership Estate as only the Defendants or Relief Defendant named in the Complaint as Portfolio Insider suggests. Instead, the Court extended the definition of Receivership Defendants to the Defendants or Relief Defendant's **"affiliates or subsidiaries owned or controlled by Defendants or Relief Defendant"**. *SRO ¶30 (emphasis added)*. In addition, the *SRO* included within the Receivership Estate   "assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants." Moreover, and perhaps most importantly, the *SRO* defined assets as encompassing "any legal or equitable interest in, right to, or claim to, any real or personal property, whether

individually or jointly, **directly or indirectly controlled,** and wherever located…." *SRO ¶15 (emphasis added).*

2.      On October 14, 2020, while represented by counsel, Defendants Asher and Batashvili entered into a *Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Asher Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili* (the "Consent Order")[Dkt. 165].  In paragraph 38 of the Consent Order Defendants Asher and Batashvili expressly agreed that "**they will not engage in any activity related to securities, commodities, or derivatives….**"

3.      As part of his investigation, the Receiver learned that Defendants Asher and Batashvili ("Defendants") owned or controlled a myriad of entities and were using these entities to hide money from the receivership in violation of the *SRO* and the *Consent Order.* Specifically, the Receiver discovered that Defendant Asher controlled $550,000 in an account in the name of USA Accounts, Inc. that he hid from the Receiver[1], and that Defendant Batashvili controlled $492,500 in an account in the name of Tower Estates, Inc. that he transferred to an account in the name of Tx Admin. Inc. and hid from the Receiver.[2]  The Receiver brought these egregious violations of the *SRO* to the attention of the Court through contempt motions[3].

4.      On February 25, 2021, the Receiver filed his *Motion to Identify Certain Entities in Receivership* [Dkt. 226], identifying 30 entities Defendants Asher and Batashvili owned or controlled wherein the Receiver requested the Court to expressly name them as part of the

---

[1] *See Emergency Motion for Order to Show Cause Hearing to Hold Defendant Asher in Civil Contempt* [Dkt. 195] filed on November 23, 2020.
[2] *See Motion for Show Cause Hearing to Hold Defendant Simon Batashvili in Civil Contempt* [Dkt. 250] filed on May 13, 2021.
[3] *See supra* footnotes 1 and 2.

Receivership Estate.   On March 22, 2021 the Court entered an *Order Granting Receiver's Motion to Identify Certain Entities in Receivership* [Dkt. 230].

5.     As the Receiver continued his investigation, including a review of the bank records, he found that more than $20 million of monies received from metals customers was transferred by the Defendants to MagicStar Arrow Entertainment, LLC, a company owned by Carlos Cruz.[4]  Consequently, on May 18, 2021 the Receiver sent the *SRO* and *Consent Order* to Mr. Cruz and requested him to provide information regarding the goods or services provided to the Defendants in exchange for the monies received.[5]   The Receiver made the request for information pursuant to paragraph 34 of the SRO, which provides that ….*"Defendants, Relief Defendant, and all other persons or entities served with a copy of this order shall cooperate fully with and assist the Temporary Receiver.  This cooperation and assistance shall include, but not be limited to, providing any information to the Temporary Receiver that the Temporary Receiver deems necessary to exercising his authority as provided in this Order…" SRO, ¶34.*  Mr. Cruz, through his counsel, claimed he is not subject to the *SRO*. Only after the Receiver's counsel sent Mr. Cruz's counsel the *Emergency Motion for Show Cause Hearing to Hold Defendants Lucas Asher and Simon Batashvili in Civil Contempt* [Dkt. 311]("Show Cause Motion") did Mr. Cruz's counsel finally provide contracts and invoices Mr. Cruz contends were provided to the Defendants by MagicStar Arrow.[6]

6.     The Receiver received calls from several witnesses who observed Defendants Asher and Batashvili operating a business called "Portfolio Insider" that sold financial

---

[4] *See* Appendix in Support of Response filed contemporaneously with this Response (Resp. App.), at p. 4.
[5] Id. at pp. 8-10.
[6] Id. at p. 4.

information to customers and assisted them in purchasing securities and commodities.[7]  This prompted the Receiver to begin searching the database of more than 57,000 documents that had been recovered as part of the receivership for information regarding Portfolio Insider.[8]

7.      On January 29, 2021, during the deposition of Defendant Asher, the Receiver specifically asked Defendant Asher about Portfolio Insider.  Defendant Asher pretended to know very little about Portfolio Insider and testified that he helped out with some computer programming at one point[9].

"Q.      And what is this Portfolio Insider?  Do you know what that – do you known what Portfolio Insider is?

A.      From what I understand, it's a website, like Business Insider or Market Insider.

Q.      Okay.  And who owns or operates Portfolio Insider?

A.      I don't know.

Q.      How did you come to know that it's a financial website?

A.      From the name.

Q.      Just from the name.  Have you ever been to that website?

A.      Yeah, I've heard of it.

Q.      Okay.  And who did you hear about it from?

A.      Some developers.

Q.      Have you ever provided any consulting services or any work for Portfolio Insider?

---

[7] Resp. App. at p. 5.
[8] Id.
[9] Appendix in Support of Receiver's Emergency Motion for "Show Cause" Hearing to Hold Defendants Lucas Asher and Simon Batashvili in Civil Contempt [Dkt. 312]("App.") at pp. 354-356.

A.      So not – I never received any payment for any services, but I did talk to them about some computer code.  And I guess you could say, I volunteered technical advice on programming languages."

He further testified that Defendant Batashvili was not involved with Portfolio Insider.

"Q.      And you said Simon has worked with Portfolio Insider?

A.       I don't – I don't – I don't recall if he's working for them.  I don't think he is."

8.      As the Receiver continued his investigation, the Receiver determined that Defendant Asher lied in his deposition about Portfolio Insider.  The Receiver learned that:

a.  the Portfolio Insider business concept, marketing plan, website, domain name and intellectual property were owned and developed by the Defendants in the months *prior to the receivership*.[10]

b.  the business concept started as part of Retirement Insider (an entity expressly named as part of the Receivership Estate) and that Defendants rebranded Retirement Insider to Portfolio Insider *prior to the receivership.*[11]

c.  *After commencement of the receivership,* Carlos Cruz set up an entity called "Portfolio Insider, LLC", and with Defendants Asher and Batashvili, continued the business of Portfolio Insider begun prior to the receivership.[12]

9.      On September 16, 2021, the Receiver filed his *Show Cause Motion* and informed the Court of the Receiver's investigation showing that Defendants Asher and Batashvili were engaging in activities related to securities in blatant violation of the *SRO*.  In addition, in the *Show Cause Motion*, the Receiver provided the Court with the evidence showing that Portfolio

---

[10] *Infra.* at p. 11, fn. 24.
[11] *Infra* at pp. 11-13.
[12] *Infra* at pp. 13-15.

Insider was begun prior to the receivership; that its assets were being misappropriated by the Portfolio Insider entity set up by Carlos Cruz, and that Defendants Asher and Batashvili were controlling Portfolio Insider.[13]  With this evidence, the Receiver requested the Court to hold the Defendants in civil contempt.  In addition, the Receiver requested the Court to expressly name Portfolio Insider as part of the Receivership Estate for purposes of third parties.  *Show Cause Motion*, at p. 24, ¶1 ("To assist the Receiver in gathering such assets from third parties such as financial institutions, the business of Portfolio Insider should be expressly named as part of the Receivership Estate.")

10.    On September 22, 2021, the Receiver's counsel provided a copy of the *Show Cause Motion* to the attorney for Mr. Cruz.[14]  Accordingly, to the extent Mr. Cruz claimed an interest in the Receiver's request for the Court to expressly name Portfolio Insider as part of the Receivership Estate, Mr. Cruz had notice of such request as of September 22, 2021.

11.    In preparation for the hearing on the *Show Cause Motion*, on September 20, 2021 the Receiver provided the *SRO*, *Consent Order*, and the *Show Cause Motion* to Pipedrive and requested documents regarding Portfolio Insider.[15]  The Receiver also informed Pipedrive that until the Court rules on the *Show Cause Motion*, the Receiver was agreeable to receiving only those documents that specifically mentioned Defendants Asher, Batashvili, or Retirement Insider.[16]

12.    The Receiver never had any communications with NASDAQ or Polygon.[17]

13.    The Receiver never sought to or acquired control of Portfolio Insider.[18]

---

[13] App. at pp. 1-365.
[14] Resp. App. at p. 5.
[15] Id.
[16] Id.
[17] Id.

14.     The Receiver never requested any vendor of Portfolio Insider to suspend service to Portfolio Insider.[18]

15.     The Receiver never sought or obtained any assets of Portfolio Insider.[20]

16.     The Receiver never contacted any financial institutions of Portfolio Insider.[21]

17.     On September 23, 2021, the Receiver noticed the deposition of Carlos Cruz to be taken on October 19, 2021.[22]  On October 5, 2021, the Court vacated the hearing on the *Show Cause Motion* and stayed the filing of any additional motions.  [Dkt. 322].  As a result, the deposition of Carlos Cruz was cancelled. [23]

18.     On October 19, 2021, Portfolio Insider filed its PI Motion.

### III.

### PORTFOLIO INSIDER IS SUBJECT TO THE COURT'S SRO

#### A.     Portfolio Insider is bound to the SRO pursuant to Paragraph 37

First and foremost, Portfolio Insider is required to comply with the terms of the *SRO* regardless of whether this Court expressly names Portfolio Insider as part of the "Receivership Estate", as requested by the Receiver.  Paragraph 37 of the *SRO* provides that the "*Order is binding on any person who receives actual notice of this Order by personal service or otherwise and .....is in active concert or participation with the Defendants or Relief Defendant.*"  The overwhelming uncontroverted evidence before this Court demonstrates that Defendants Lucas Asher and Simon Batashvili were actively in concert and participation with Portfolio Insider.

---

[18] Resp. App. at p. 5.
[19] Id. at pp. 5-6.
[20] Id. at p. 6.
[21] Id.
[22] Id.
[23] Id.

**B.**   **Portfolio Insider Has Been Misappropriating Receivership Assets in Violation of the SRO**

The *Show Cause Motion* includes detailed evidence regarding the creation of the business model of Portfolio Insider, its' marketing plan, website content, domain name, and intellectual property owned and controlled by the Defendants *prior to the receivership.*[24]  Indeed, Defendant Asher bragged that Portfolio Insider *prior to the receivership,* had "$2,160,000 in annual revenue generated in the last 60 days."[25]  As such, these assets are, by the plain meaning of the words of the *SRO*, part of the Receivership Estate and should have been frozen and turned over to the Receiver.  *SRO, ¶15, 20, 21, 33.*  Instead, the Defendants Asher and Batashvili, with the help of Mr. Cruz, misappropriated such receivership assets through Portfolio Insider, LLC.  Mr. Cruz was provided a copy of the *SRO* and *Consent Order* and knowingly violated the Orders by allowing the entity he owns to misappropriate receivership assets. In addition, Mr. Cruz knowingly violated the *Consent Order* by aiding and abetting Defendants in their wrongful engagement in activities related to securities and commodities in violation of the *Consent Order*.

**C.**   **Defendants Asher and Batashvili Control Portfolio Insider, Rendering it Subject to the SRO/Consent Order and/or Part of the Receivership Estate**

    **1.**   **Retirement Insider, a Receivership Defendant, was Rebranded to Become Portfolio Insider**

Contrary to Portfolio Insider's argument, the *SRO's* definition of Receivership Defendants is not limited to only the expressly named parties, but extends "to the affiliates or subsidiaries owned or controlled by Defendants or Relief Defendant."  For instance, Retirement

---

[24] App. at pp. 5-106, 108, 159-163, 168, 170, 175-176, 178-187, 188, 209-253, 260-269, 278-294, 296.
[25] Id. at p. 266.

Insider was owned or controlled by Defendants and was expressly named as part of the Receivership Estate.    The uncontroverted evidence before the Court shows that Retirement Insider was rebranded to become Portfolio Insider and that they were one and the same.

- Jennifer Hacker, the Marketing Director for Retirement Insider, declared under penalty of perjury that: *"Portfolio Insider was also Retirement Insider. Retirement Insider existed in beta when I started, but we were in the process of rebranding to Portfolio Insider.  The name Portfolio Insider sounded less restrictive for investors not actively planning for retirement."*[26]

- Brandis Desimone, a Lead Sales Executive in the Investment Intelligence Unit of NASDAQ, declared under penalty of perjury that:  *"On September 29, 2020, I was informed by Intrinio that the name of Asher's company was changed from Retirement Insider to Portfolio Insider.  From my perspective, there was no difference between Retirement Insider and Portfolio Insider."*[27]

- Gary Grochmal, the Vice President of Customer Success at QUODD Financial Information Services declared under penalty of perjury that: *"Shortly after my discussions with Retirement Insider began, in September 2020, Asher and Intrinio advised me that the name of the firm had changed to Portfolio Insider.  I was told that Retirement Insider was the same entity as Portfolio Insider, but was now using a different trade name.  This is a*

---

[26]  App. at p. 108.  Indeed, after the receivership, Ms. Hacker continued to work for Portfolio Insider.  Resp. App. at p. 17.
[27] Plaintiffs' Memorandum of Law in Support of Receiver's Motion for an Order to Show Cause Hearing to Hold Defendants Asher and Batashvili in Civil Contempt, Fact Appendix [Dkt. 313]("Plaintiffs' App.") at pp. 338-346.

*common phenomenon with younger tech firms who use various trade names as they evolve and grow."[28]*

- By email on October 20, 2020, Lucas Asher informed a vendor *"I am not sure if Andrew/Intrinio told you, but, we pivoted to our new brand "Portfolio Insider". Subsequently, this is the correct (and only) email for all billing* corporate@portfolioinsider.com *"*[29]

- On November 24, 2020, Lucas Asher emailed Andrew Carpenter of Intrinio and said: *"As you know, all agreements are honored. Two requests, 1. Remove Retirement Insider and replace it with portfolio Insider, LLC…"*[30]

As a result, the Receiver's request that the Court expressly name Portfolio Insider as part of the Receivership Estate should be granted.

### 2.    Defendants Asher and Batashvili have been Controlling the Business of Portfolio Insider

The Court should also grant the Receiver's request to expressly name Portfolio Insider as part of the Receivership Estate because the uncontroverted evidence before the Court demonstrates that Defendants Asher and Batashvili have been controlling the Portfolio Insider business *after the receivership.* This evidence, includes, but is not limited to:

- Defendant Asher hired callers for Portfolio Insider;[31]

- Defendant Asher negotiated on behalf of Portfolio Insider and as the representative of Portfolio Insider with third parties such as NASDAQ and Intrinio to provide data feeds for Portfolio Insider to sell to customers;[32]

---

[28] Plaintiffs' App. at pp. 311-313.
[29] Resp. App. at p. 12.
[30] Resp. App. at p. 13.
[31] App. at pp. 110-112.

- Defendant Asher was referred to by third parties as the Chief Executive Officer of Portfolio Insider;[33]

- Defendant Batashvili prepared the scripts to be used by callers soliciting customers for Portfolio Insider;[34]

- Defendant Batashvili supervised the callers soliciting customers for Portfolio Insider;[35] and

- Defendant Batashvili closed sales to customers for Portfolio Insider.[36]

- Brandis Desimone, a Lead Sales Executive in the Investment Intelligence Unit of NASDAQ, declared under penalty of perjury that: *"Asher represented to me that he was in charge and controlled the operations of Portfolio Insider…I came to understand that Asher considers himself the CEO and founder of Portfolio Insider."[37]*

- Gary Grochmal, the Vice President of Customer Success at QUODD Financial Information Services declared under penalty of perjury that: *"Asher represented to me that he was in charge and controlled the operations of portfolio Insider. During my interactions with Asher and Andrew Carpenter and Yates Sayers of Intrinio, another data services company, it was represented to me that Asher was the Chief Executive Officer of Retirement Insider and Portfolio Insider."[38]*

---

[32] App. at pp. 114-156, 251; Plaintiffs' App. at pp. 338-346.
[33] Plaintiffs' App. at pp. 311-315, 338-346.; Resp. App. at p.14.
[34] App. at pp. 110-172.
[35] Id.
[36] Plaintiffs' App. at pp. 335.
[37] Id. at pp. 338, 341.
[38] Id. at p 311.

---

- On October 21, 2020, Andrew Carpenter, the CEO of Intrinio, copied Defendant Asher on an email in which Asher was introduced as the CEO of Portfolio Insider.[39]

- On October 26, 2020, Defendant Asher, using his corporate@portfolioinsider.com email address, sent the CEO of Intrinio an email about obtaining services from NASDAQ and referred to "my top tier subscribers".[40]

- On October 28, 2020, Defendant Asher, using his corporate@portfolioinsider.com email address, sends the CEO of Intrinio an email, copying Defendant Simon Batashvili and Jennifer Hacker, and questions the analyst recommendation accuracy on Portfolio Insider.[41]

### D.    Cruz's "Ownership" of Portfolio Insider is a Sham

Based on the Receiver's investigation, Carlos Cruz functioned as the front man for the Defendants. Defendants were aware that pursuant to the *SRO* they could not engage in any activity relating to securities and that they could not own any assets without providing such information to the Receiver[42].  Defendants had no intention though of complying with the *SRO* or *Consent Order* because they always intended to continue and grow the business they started as Retirement Insider and were beginning to market as Portfolio Insider prior to the receivership. So, rather than comply with the *SRO* and turn over the Retirement Insider/Portfolio Insider business to the Receiver, the evidence shows Defendants decided to move full steam ahead. Consequently, on October 27, 2020, Mr. Cruz filed the documents in Delaware to form a single

---

[39] Resp. App. at p. 14.
[40] Resp. App. at p. 16.
[41] Resp. App. at pp. 18-19.
[42] The *Consent Order, Section IX,* provides a means for Defendants to seek gainful employment to cover their reasonable and necessary living expenses.  Rather than comply with the *Consent Order*, Defendants decided to wrongfully use Portfolio Insider and sought to hide their involvement from the Receiver.

member limited liability company that is conveniently called "Portfolio Insider".[43]  Mr. Cruz named himself as Chief Executive Officer.[44]  To the public, Mr. Cruz is the owner and CEO of Portfolio Insider with no reference to Defendants Asher and Batashvili.

However, in the background, Defendants Asher and Batashvili remained in control. After all, they had developed the business, the marketing plan, obtained the domain name, etc.[45] Defendant Asher hired the people to make calls to customers to sell the Portfolio Insider product; continued the contract with a company called Intrinio that had been entered into prior to the receivership in the name of Retirement Insider; changed the name to Portfolio Insider (as a change in brand); and negotiated with NASDAQ to obtain data feeds of securities sales for Portfolio Insider to sell to its customers.[46]  In the meantime, Defendant Batashvili developed the scripts to be used by callers, supervised the callers, and closed sales to customers.[47]  Not surprisingly, Defendants brought in the same closers that were so successful in making sales of metals to elderly investors, and they set up a call room just like they had at Metals.com and Barrick Capital.[48]  This time, however, instead of selling metals, they are selling financial information and advice to assist investors in investing in securities and commodities.

The Court, especially in a receivership proceeding governed by equity, should construe the corporate documents for Portfolio Insider for what they are – documents used to hide the Defendants' control of Portfolio Insider in violation of the *SRO* and *Consent Order*.  *See Ledford v. Keen,* 9 F.4th 335 (5th Cir. 2021) stating that Texas law permits courts to "disregard the corporate fiction…when the corporate form has been used as part of a basically unfair device to

---

[43] App. at p.344.
[44] *See Declaration of Carlos Cruz* attached as Exhibit A to the PI Motion.
[45] See *supra* footnote 24.
[46] See *supra* at pp.11-15.
[47] See *supra* at p. 14.
[48] App. at p. 163.

achieve an inequitable result", citing *citing SSP Partners v. Gladstrong Invs.* (USA) Corp., 275 S.W.3d 444, 454 (Tex. 2008). Portfolio Insider shares common managers/employees with Receivership Defendants[49]; the corporate purposes of Portfolio Insider and Receivership Defendant Retirement Insider are similar[50]; and there have been numerous and substantial financial transactions between them[51]. These characteristics make Carlos Cruz and Portfolio Insider affiliated entities of the Receivership Defendants under the *SRO*. *See United States v. RaPower-3, LLC*, 2019 WL 2195409, at *3 (D. Utah May 3, 2019), *appeal dismissed sub nom. United States v. Solco I, LLC*, 962 F.3d 1244 (10th Cir. 2020). *See also, S.E.C. v. Priv. Equity Mgmt. Grp., Inc.*, 2009 WL 1941400, at *2 (C.D. Cal. July 2, 2009) (Appling a "more flexible approach" to prevent fraud; considering "overlapping control persons" and "transference of monies" as basis to include additional party as an affiliate.) Because Defendants Asher and Batashvili "formed and managed" Retirement Insider, which is Portfolio Insider, and also directed day-to-day financial transactions, they have control over Portfolio Insider. *Priv. Equity Mgmt. Grp., Inc.*, 2009 WL 1941400, at *5.

Based on the foregoing, the Receiver's informed this Court that Portfolio Insider should be expressly named as part of the Receivership Estate.

---

[49] This includes not only Defendant Asher and Batashvili exercising control over Portfolio Insider, but also Portfolio Insider having the same employees of Retirement Insider – i.e. Jennifer Hacker, and employing as closers many of the closers for Receivership Defendants Metals.com and Barrick Capital, including Walter Vera and Kyle Senna.  App. at p. 163.

[50] The corporate purposes are not just similar, they are identical because they are one and the same, with the business purpose and model developed prior to the Receivership.  App. at pp. 163-364.

[51] The financial transactions include the transfer by Receivership Defendants of more than $20 million to MagicStar Arrow Entertainment, LLC owned by Carlos Cruz prior to the Receivership and Portfolio Insider continuing the same contracts for data feed that were started and put in place by Retirement Insider before the receivership.  Resp. App. at p. 4; App. at p.161.

---

E.    **Portfolio Insider Falsely Claims the Receiver Made No Request to Have the Court Name Portfolio Insider as Part of the Receivership Estate**

Portfolio Insider claims no request has been made by the Receiver to the Court to name Portfolio Insider as part of the Receivership Estate.   The Receiver, however, specifically requested in the *Show Cause Motion* that Portfolio Insider should be expressly named as part of the Receivership Estate.  *Show Cause Motion*, at p. 24, ¶1 ("To assist the Receiver in gathering such assets from third parties such as financial institutions, the business of Portfolio Insider should be expressly named as part of the Receivership Estate.").

Portfolio Insider further argues that it in the interest of due process it should be served with the request to be made part of the Receivership Estate and heard by the Court.   The Receiver served Portfolio Insider's attorney with a copy of the *Show Cause Motion* on September 22, 2021, so Portfolio Insider has notice of the Receiver's request.[52]   Moreover, by filing its Motion, Portfolio Insider has submitted to the jurisdiction of this Court, and will be given a hearing that addresses whether Portfolio Insider falls within the Receivership Estate as defined by the *SRO* and should be expressly named as part of the Receivership Estate.   Any due process concerns of Portfolio Insider have been satisfied.   "[W]here a receivership may be expanded to include a non-party or its property, that non-party is entitled to notice and an opportunity to be heard." *CCUR Aviation Fin., LLC v. S. Aviation, Inc.*, 2021 WL 1738764, at *3 (S.D. Fla. May 3, 2021). This expansion may be accomplished through "summary procedures" conducted "on short notice, without summons and complaints." *Id.* (granting preliminary equitable relief by ordering that an aircraft which the Receiver claimed belonged to the receivership estate remain grounded pending further orders from the court).

---

[52] Resp. App. at p. 5.

IV.

## THE RECEIVER'S REQUEST FOR DOCUMENTS REGARDING PORTFOLIO INSIDER WAS AUTHORIZED BY THE COURT'S ORDERS

Portfolio Insider argues the Receiver did not have authority to ask one of its vendors, Pipedrive, to produce documents.  Moreover, Portfolio Insider argues that the Receiver was prohibited from informing Pipedrive that based on the evidence the Receiver gathered that the Receiver is contending Portfolio Insider falls within the definition of a "Receivership Defendant" under the *SRO*.

Significantly, the Receiver did not provide only the *SRO* to Pipedrive and demand production of documents.  Instead, the Receiver provided Pipedrive with the relevant Orders of the Court, *and* the Receiver's Motion making the argument and request of the Court that Portfolio Insider be expressly named as part of the Receivership Estate.[53]   Moreover, the Receiver did not inform Pipedrive that Portfolio Insider was a "Receivership Defendant," but instead said it is subject to the Court's Orders.[54]   As previously noted, regardless of whether Portfolio Insider is expressly named as a Receivership Defendant, it is subject to the Receivership Orders because Portfolio Insider was "in concert or participation" with Defendants Asher and Batashvili and receivership assets had been traced to Portfolio Insider.[55]

Finally, the Receiver's request for production of documents was made pursuant to Section III of the *SRO*, which empowers the Receiver to conduct investigations of third parties such as financial institutions, and includes the obligation of an entity that receives the *SRO* to

---

[53] Resp. App. at p. 5.

[54] *See* letter from Receiver attached as Exhibit D to the PI Motion.

[55] *SRO at paragraph 37* provides that the Order is binding on those "in active concert or participation with the Defendants or Relief Defendant."  As set forth in the evidence presented to the Court, the Receiver traced assets that existed prior to the receivership to the business of Portfolio Insider after the receivership.  *See supra* at p. 11.

cooperate  with reasonable requests of the Receiver to produce Records "related to business activities" of Defendants.  *SRO*, ¶29(b).  In addition, in a call with the General Counsel of Pipedrive the Receiver informed Pipedrive that until the Court rules on the *Show Cause Motion*, the Receiver was agreeable to Pipedrive producing only those documents that refer to Defendants Asher, Batashvili, or Retirement Insider.[56]

The Receiver was entirely within his investigatory authority to seek documents from Pipedrive pursuant to the *SRO*, and indeed limited his request to documents that specifically mentioned or referred to the expressly named Receivership Defendants.

## V.

## <u>THE RECEIVER DID NOT EVER SEEK TO SEIZE ASSETS OR TAKE CONTROL OF PORTFOLIO INSIDER</u>

Portfolio Insider has disingenuously advanced the false narrative that the Receiver has been trying to take control of its business before the Court has expressly named Portfolio Insider as part of the Receivership Estate.  This argument is based upon Portfolio Insider's false speculation, and without regard for the fact the Receiver requested the Court in the *Show Cause Motion* to expressly declare Portfolio Insider as  part of the Receivership Estate.  Indeed, the Receiver did not take any of the actions set forth in paragraph 31 of the *SRO* for entities that are part of the Receivership Estate[57].

- He did not assume control of Portfolio Insider, or attempt to assume control;

- He did not take exclusive custody, control, and possession of Portfolio Insider, or attempt to take custody, control and possession of Portfolio Insider;

---

[56] Resp. App. at p. 5.
[57] Section 31 of the *SRO* lists the actions the Receiver is empowered to take for those persons or entities in receivership; Resp. App. at pp. 5-6.

- He did not take exclusive custody, control, and possession of all websites, cloud storage services, email, and accounts at any bank of Portfolio Insider, or attempt to take custody, control, and possession of same;

- He did secure the business premises of Portfolio Insider or attempt to secure the premises;

Again, the Receiver has deferred taking any of the foregoing steps until such time as the Court makes the determination that Portfolio Insider is expressly named in the Receivership Estate.

## VI.

### ANY DISRUPTION IN PORTFOLIO INSIDER'S BUSINESS WAS NOT AT THE RECEIVER'S REQUEST

Portfolio Insider complains about the suspension of services from NASDAQ, Polygon, and Pipedrive and suggest it was the result of the Receiver's request.  The Receiver has never had any communications with NASDAQ or Polygon regarding Portfolio Insider, the Defendants, the Relief Defendant, or Carlos Cruz.[58]  The Receiver's communications with Pipedrive were limited to obtaining a narrow set of documents.[59]  The Receiver never requested NASDAQ, Polygon, Pipedrive, or any other vendor of Portfolio Insider to suspend services to Portfolio Insider.[60]

---

[58] Resp. App. at p. 5.
[59] Id.
[60] Id. at p. 5-6.

---

## VII.

## PORTFOLIO INSIDER'S BUSINESS SHOULD BE SHUT DOWN BECAUSE IT IS PREYING UPON THE INVESTING PUBLIC IN VIOLATION OF SECURITIES AND COMMODITIES LAWS

Portfolio Insider is not only using the business model, marketing campaign, domain name, and other intellectual property created, owned, and developed by the Defendants prior to the receivership, but it also has a fraudulent scheme in common with Defendants Metals.com and Barrick Capital.  It is controlled by Defendants Asher and Batashvili, and uses callers (following scripts prepared by Batashvili) and closers to spin lies upon innocent investors and steal their money in violation of securities and commodities laws.  To the extent Carlos Cruz is the owner of Portfolio Insider and claims to be the Chief Executive Officer, he should be held responsible, along with Defendants Asher and Batashvili, for the violations of the securities and commodities laws committed by Portfolio Insider.

As set forth in detail in the *Plaintiffs' Memorandum of Law in Support of Receiver's Motion for an Order to Show Cause Hearing to Hold Defendants Asher and Batashvili in Civil Contempt* [Dkt. 313] filed on September 16, 2021("Plaintiffs' Memor."), Portfolio Insider made false representations and claims in connection with the sales of securities and commodities in violation of 7 U.S.C. § 9(1) and 17 C.F.R. §180.1(a)(1)-(3) and in violation of the investment adviser statute and securities laws of Alabama, California, Georgia, Maryland, South Carolina, and Texas.   The Plaintiffs provided detailed evidence to this Court of Portfolio Insider salespersons providing investment advice and making false representations regarding Portfolio Insider's growth and success as a company, its expanding clientele, the functionality of its platform, and that if victims followed its recommendations they were virtually guaranteed to see

returns with exorbitant success rates.[61]   As indicated by Plaintiffs, the "solicitations of new victims by Portfolio Insider allegedly generates millions of dollars for them."[62]   Indeed, the longer Portfolio Insider is able to continue operating through the smoke and mirrors of Carlos Cruz as the front man, the number of investor victims will only grow.

## VIII.

## CONCLUSION

Portfolio Insider's Motion creates the false impression to the Court that Portfolio Insider is an innocent company that has been wrongly brought into the mix of the receivership of Defendants Asher and Batashvili by the wrongful actions of the Receiver.  And, in doing so, Portfolio Insider provides no evidence to controvert the mountains of evidence of Portfolio Insider's origins before the receivership, misappropriation of assets after the receivership, and the control of Defendants Asher and Batashvili.  Instead, PI's Motion rests solely on the declaration of Carlos Cruz that he is the sole owner and CEO of the entity Portfolio Insider, LLC.  Ownership of an entity is not the only issue before the Court and indeed is a red herring. The ownership of Portfolio Insider, LLC is being used to deceive the Court of the activities of Defendants Asher and Batashvili for the past year controlling the company and engaging in activities related to securities in blatant violation of the *SRO* and *Consent Order*.

The Receiver did what he is supposed to do – he gathered and submitted to the Court the evidence of the Defendants violating the Court's Orders, as well as the evidence showing that Portfolio Insider falls within the scope of the Orders creating the Receivership Estate, and he requested the Court to expressly name Portfolio Insider as part of the Receivership Estate.  *See*

---

[61] Plaintiff's Memorandum of Law in Support of Receiver's Motion for an Order to Show Cause Hearing to Hold Defendants Asher and Batashvili in Civil Contempt [Dkt. 313] at pp. 13 -15, 21 and the Plaintiffs' App. referred to in such pages.
[62] Plaintiffs' Memr. at p. 18.

*Virginia, T. & C. Steel & Iron Co. v. Bristol Land Co.*, 88 F. 134, 137 (C.C.W.D. Va. 1898) (holding petition by receiver was the proper method to pursue contempt for disobeying a court order).

Accordingly, the Receiver requests the Court to deny the relief requested in the PI Motion, and expressly name Portfolio Insider as part of the Receivership Estate as requested by the Receiver in his *Show Cause Motion*.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By:    */s/ Peter Lewis*
Peter Lewis
Texas State Bar No.12302100
Peter.lewis@solidcounsel.com

500 N. Akard Street, Suite 2700
Dallas, Texas 75201
(214) 706-4200 – Telephone
(214) 706-4242 – Telecopier

**ATTORNEY FOR RECEIVER
KELLY M. CRAWFORD**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 26, 2021, I electronically filed the foregoing document with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

*/s/ Peter Lewis*
**PETER LEWIS**