IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.*, | § § § § | |
| Plaintiffs, | § § | CASE NO. 3:20-CV-2910-L |
| v. | § § | |
| TMTE, INC. a/k/a METALS.COM, *et al.*, | § § § | |
| Defendants. | § § § § | |

### PORTFOLIO INSIDER, LLC'S REPLY IN SUPPORT OF ITS MOTION TO PREVENT RECEIVER FROM TAKING POSSESSION OF PROPERTY OF A NON-RECEIVERSHIP ENTITY

In Support of its Motion to Prevent the Receiver from Taking Possession of Property of a Non-Receivership Entity (Dkt. 332), nonparty Portfolio Insider, LLC ("Portfolio Insider") would respectfully show the Court the following:

### *Summary of Reply*

Portfolio Insider's motion sought very narrow relief: an order preventing the Receiver and Plaintiffs from taking any action against or related to Portfolio Insider's business on the basis that Portfolio Insider is a Receivership Defendant or Relief Entity. Notwithstanding its twenty-one-page response brief—most of which has nothing to do with the narrow relief sought in the motion—the Receiver appears to now be unopposed to this relief. While the Receiver downplays its previous actions with one of Portfolio Insider's vendors, it now says it will defer taking any further action until such time as the Court determines whether Portfolio Insider is expressly named in the Receivership Estate. As the Receiver now concedes, unless this Court has expressly

1

included Portfolio Insider as a receivership defendant or entity, the Receiver is without authority to act against Portfolio Insider. Therefore, the Court should grant Portfolio Insider's motion.

The Receiver's response does, however, underscore the impropriety of its actions with respect to Portfolio Insider. The Receiver is seeking to have this Court "shut down" the operations of Portfolio Insider—a nonparty that the Receiver acknowledges is a separate legal entity formed by another nonparty. No plaintiff has asserted any claims against Portfolio Insider in this case. This case deals with claims of alleged violations of various commodities and securities laws related to the sale of precious metals. Portfolio Insider does not sell precious metals, commodities, or any other security. Therefore, the Court should not entertain any request by the Receiver to "shut down" Portfolio Insider. Notwithstanding the absence of any claims in this case against Portfolio Insider, should the Court intend to take up any requested relief that would impact Portfolio Insider via a show cause motion against others, Portfolio Insider respectfully requests that the Court permit Portfolio Insider a chance to respond and provide evidence in response to such requested relief both before and during any hearing the Court may hold on such a request. A ten-page reply brief in support of a narrowly tailored motion is not sufficient to address the extreme relief the Receiver raises in its response brief that is unrelated to the relief sought in Portfolio Insider's motion.

### *The Receiver Appears to Concede to the Narrow Relief Sought in the Motion*

As an initial matter, the Receiver does not oppose Portfolio Insider's requested relief. In its motion for miscellaneous relief, Portfolio Insider requested that the Court order the Receiver and Plaintiffs to refrain from taking any action against or related to Portfolio Insider's business. The Receiver now concedes in its response that it will defer "taking any [actions set forth in the SRO for entities that are part of the Receivership Estate] until such time as the Court makes the determination that Portfolio Insider is expressly named in the Receivership Estate." *See* Resp.

(Dkt. 334) at 21. The Court should grant Portfolio Insider's motion based on this concession alone and certainly in consideration of the Receiver's prior improper *ultra vires* actions.

### *The Receiver Understates Its Prior Conduct with Respect to Portfolio Insider*

The Receiver's response grossly understates its actions to interfere with Portfolio Insider's business operations. The Receiver claims it merely requested documents from Portfolio Insider's vendor, Pipedrive. (Dkt. 334 at 19). If the Receiver merely sought documents, it could have simply issued a subpoena. (Dkt. 16 ¶ 31(j)). Instead, the Receiver did much more than that.

Although the Receiver states that it did not "inform Pipedrive that Portfolio Insider was a 'Receivership Defendant,'" the September 20, 2021 correspondence to Pipedrive indicates otherwise. The Receiver's correspondence provided, in relevant part:

> The Receivership Orders [defined as Dkts 16, 164, 165, and 230] direct and authorize me [the Receiver] to take custody, control, and possession of all assets of the Defendants and Relief Defendant [sic] and of all records of the Defendants and Relief Defendants. . . . The Receivership Orders extend to the Defendants and Relief Defendants as well as any affiliates or subsidiaries owned or controlled by Defendants and Relief Defendant [sic] (collectively, the "Receivership Defendants").
>
> . . .
>
> As you will see from the Additional Entities Order, **Retirement Insider is one of the Receivership Defendants**. . . . The Motion and Appendix set forth the evidence showing that **Retirement Insider became Portfolio Insider**. . . . Accordingly, . . . **Portfolio Insider is subject to the Receivership Orders**.
>
> Section III of the SRO is directed to Pipedrive as a business entity and Pipedrive is required to comply with the provisions of this Order.

*See* Ex. D, Receiver's Correspondence to Pipedrive (emphasis added).

The Receiver would have the Court believe that it merely "said [Portfolio Insider] is subject to the Court's Orders" in the correspondences to Pipedrive. *See* Resp. (Dkt. 334) at 19. But it is clear from its correspondence cited above that it told Pipedrive much more than that. While the Receiver contends that it was "agreeable to Pipedrive producing only those documents that refer

3

to Defendants Asher, Batashvili, or Retirement Insider" (*see* Resp. (Dkt. 334) at 20), the initial correspondence to Pipedrive was clearly not limited in scope. Moreover, the timing of the Receiver making this concession was not disclosed by the Receiver in its declaration and well could have been made after Portfolio Insider provided Pipedrive with the Court's recent stay orders. (Dkt. 335 ¶ 6).

### *The Receiver Improperly Seeks to Have This Court "Shut Down" Portfolio Insider—A Nonparty Against Which No Claims Have Been Filed*

In its response to Portfolio Insider's narrowly tailored motion, the Receiver asserts that Portfolio Insider should be "shut down" because it has allegedly violated commodities and securities laws; however, no plaintiff has asserted a cause of action against Portfolio Insider based on those purported violations. (Dkt. 334 at 22; *see generally* Dkt. 2). The claims in this case deal with Defendants' alleged violations of commodities and securities laws related to Defendants' sale of "Precious Metals Bullion." (*See generally* Dkt. 2). Portfolio Insider does not sell any precious metals, commodities, or securities and is instead a financial technology analytics company. (Dkt. 332-1 ¶ 1).

The Receiver has not provided this Court with any authority that a court may "shut down" the operations of a nonparty in the absence of claims being filed against that entity and that entity being properly served with a complaint containing such claims. The Receiver's motion is not directed at Portfolio Insider; instead, it seeks to hold Defendants in contempt for purported violations of prior Court orders. A show cause motion against Defendants is not a proper mechanism by which to "shut down" the operations of a nonparty, separate legal entity, formed and owned by another nonparty, nor is it the proper mechanism to add that nonparty to the Receivership Estate. (Dkt. 332-1 ¶ 1).

The Receiver incorrectly takes the position that the expansion of the Receivership estate to include Portfolio Insider and to "shut down" that business may be accomplished through "summary procedures" conducted "on short notice, without summons and complaints." *See* Resp. (Dkt. 334) at 18.  However, the nonbinding case the Receiver relies on for that proposition specifically focused on actions undertaken by the U.S. Securities and Exchange Commission ("SEC") via express statutory authority granted to the SEC by the Securities Exchange Act. *See S.E.C. v. Abbondante*, No. CIV. 11-0066 FLW, 2012 WL 2339704, at *2 (D. N.J. June 19, 2012). In that case, the court was enforcing an existing SEC administrative order as to the actual defendant in that case.  *Id.*  Here, the Receiver does not point to any similar statutory authority or existing order against Portfolio Insider that allows it to add Portfolio Insider to the receivership estate and shut down its business through a motion to show cause against other individuals.

A show cause motion against others is not the proper mechanism to add a nonparty to the Receivership Estate.  The Receiver previously filed a motion to identify other entities as included in the receivership, and it is undisputed that Portfolio Insider was not a named entity in the motion and was not included in the Court's resulting Order.  *See* Receiver's Motion to Identify Certain Entities in Receivership (Dkt. 226); Order Granting Receiver's Motion to Identify Certain Entities in Receivership (Dkt. 230).  Yet the Receiver now cites its show cause motion as the mechanism by which it seeks to have the Court include Portfolio Insider as part of the Receivership Estate. (*See* Dkt. 311 at 24 ¶ 1) ("To assist the Receiver in gathering such assets from third parties such as financial institutions, the business of Portfolio Insider should be expressly named as part of the Receivership Estate.").

In *CCUR Aviation Finance, LLC v. S. Aviation, Inc.*, the case the Receiver relies on to attempt to justify adding a nonparty entity to the Receivership Estate, the receiver in that case did

not seek to add an entity to the receivership, but instead was seeking to add physical property to the receivership estate.  No. 21-CV-60462, 2021 WL 1738764, at *3 (S.D. Fla. May 3, 2021) ("[T]he Temporary Receiver does not seek expansion of the Receivership Order to include JF Aircorp [an entity] at this stage.  Rather, she only requests that the Receivership be expanded to include the Aircraft itself.").  While the *CCUR Aviation Finance* case, a nonbinding case on this Court, is distinguishable, it also stresses the Receiver's improper actions.  Notably, the receiver in *CCUR Aviation Finance* filed a formal motion to expand the receivership to include recently discovered assets, rather than shoehorning the request into a show cause motion.  *Id.* at *1.  Consistently, other cases cited by the Receiver also involve formal motions to include additional entities as receivership defendants.  *See S.E.C. v. Priv. Equity Mgmt. Grp., Inc.*, No. 09-CV-2901PSG(EX), 2009 WL 1941400, at *1 (C.D. Cal. July 2, 2009); *United-States v. RaPower-3, LLC*, No. 2:15-CV-00828-DN, 2019 WL 2195409, at *2 (D. Utah May 3, 2019), *appeal dismissed sub nom. United States v. Solco I, LLC*, 962 F.3d 1244 (10th Cir. 2020).  The case law cited by the Receiver clearly illustrates that a show cause motion against others is not the proper mechanism for the Receiver to expand the receivership estate to include a nonparty and certainly not the proper mechanism to "shut down" that nonparty's business.

      Moreover, the mere assertion that a nonparty entity is the alter ego of another entity does not justify shutting down the operations of that nonparty.  The Receiver acknowledges that Portfolio Insider LLC is a separate legal entity formed by Carlos Cruz, another nonparty. (Dkt. 334 at 15-16).  While the Receiver incorrectly asserts that Portfolio Insider is the alter ego of Retirement Insider, in its 24-page response, the Receiver does not dispute that claims such as alter ego and vicarious liability are fact intensive and require a detailed analysis and factual submissions by all parties.  *U.S. ex rel. Dekort v. Integrated Coast Guard Sys.*, 705 F. Supp. 2d 519, 547 (N.D.

6

Tex. 2010) (citing *United States v. Jon-T Chems., Inc.*, 768 F.2d 686, 694 (5th Cir. 1985) ("Resolution of the alter ego issue is heavily fact-specific and, as such, is peculiarly within the province of the trial court.")).

None of the cases cited by the Receiver justify the use of a mere alter ego allegation against a nonparty as the justification to shut down that nonparty and add it to the receivership estate. For instance, the Receiver cites *Ledford v. Keen*, 9 F.4th 335 (5th Cir. 2021), for the conclusory proposition that the Court should simply construe corporate documents for Portfolio Insider as documents used to hide the receivership defendants' control of Portfolio Insider. *See* Resp. (Dkt. 334) at 16. However, in that case, the Fifth Circuit affirmed the district court's rejection of a veil piercing theory for purposes of tolling limitations of claims against individuals that were the entity's listed directors. *See id.* at 336-37. Similarly, the Receiver's conclusory statement that the receivership defendants "'formed and managed' Retirement Insider, which is Portfolio Insider," with no such determination from the Court does not rise even close to the level of evidence presented in the *RaPower-3* case cited by the Receiver. *See RaPower-3, LLC*, 2019 WL 2195409, at *2 (finding that 13 entities were either "create[ed], control[ed] or own[ed]" by the individual defendant and that the evidence showed the individual defendant comingled funds between the various entities and transferred property between the entities to avoid creditors). Unlike *RaPower-3, LLC*, the Receiver has not pointed to any evidence of commingled funds between Portfolio Insider and any receivership defendant, nor has the Receiver pointed to any evidence of transfers of property between Portfolio Insider and a receivership defendant to avoid creditors. The *Private Equity Management Group* case is likewise distinguishable because, unlike that case, the Receiver has not pointed to any evidence of overlapping managing members or operating documents, or the receivership defendants' authority to transfer money from Portfolio Insider to

any receivership entity. *See Priv. Equity Mgmt. Grp.*, 2009 WL 1941400, at *1 (finding "a review of who controls the Entities in Dispute as well as who has authority to transfer money from these entities raises an inference of intertwined operations between the Entities in Dispute and the entity defendants").

## *Conclusion*

For all these reasons, Portfolio Insider respectfully requests that the Court order the Receiver and Plaintiffs to refrain from taking any action against or related to Portfolio Insider's business, including, but not limited to, refraining from interfering with Portfolio Insider's business by, among other things, advising third parties that Portfolio Insider is a party to this case or otherwise among those entities named as Receivership Defendants or Relief Defendants.

Additionally, Portfolio Insider respectfully requests that the Court not permit the Receiver to utilize the show cause motion against the Defendants to "shut down" nonparty Portfolio Insider's business or to add Portfolio Insider to the Receivership Estate.  No plaintiff has asserted any causes of action against Portfolio Insider nor has any fact finder made any determination related to Portfolio Insider or its business.  Therefore, there is no justification for the extreme remedy of "shutting down" the business of a nonparty like Portfolio Insider.  Should the Court entertain the Receiver's requested and extreme relief as part of the show cause proceedings, which Portfolio Insider respectfully suggests would be improper, Portfolio Insider respectfully requests that the Court permit ample notice to Portfolio Insider of any hearing and an opportunity to file a response to the show cause motion and present evidence at the hearing on such motion.

Dated: November 2, 2021    Respectfully submitted,

*/s/ Scott C. Thomas*
Scott C. Thomas
Texas Bar No. 24046964
SThomas@winston.com
Rebecca M. Loegering
Texas Bar No. 24098008
RLoegering@winston.com
Dion J. Robbins
Texas Bar No. 24114011
DRobbins@winston.com
**WINSTON & STRAWN LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Tel.: (214) 453-6500
Fax: (214) 453-6400

**ATTORNEYS FOR
Nonparty Portfolio Insider, LLC**

## CERTIFICATE OF SERVICE

The undersigned certifies that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's EM/ECF System on November 2, 2021.

*/s/ Scott C. Thomas*
Scott C. Thomas
