IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, e*t al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI,<br><br>Defendants,<br><br>TOWER EQUITY, LLC,<br><br>Relief Defendant. | CIVIL ACTION NO. **3:20-CV-2910-L** |

## MEMORANDUM OPINION AND ORDER

Before the court is the Emergency Motion to Modify Preliminary Injunction (Doc. 232), filed March 30, 2021, by Defendants Lucas Asher ("Mr. Asher") and Simon Batashvilli ("Mr. Batashvili") (sometimes collectively, the "Individual Defendants"); and the Individual Defendants' Request for a Hearing on their Motion to Modify Preliminary Injunction (Doc. 246), filed May 4, 2021. By their motion, the Individual Defendants request that the court modify the Consent Order of Preliminary Injunction, entered October 14, 2020, to allow them "access to their existing or future untainted assets," frozen by the Preliminary Injunction, to pay for attorney's fees. Mot. 4. Having carefully considered the motion, response, reply, record, and applicable law, the court **denies** the motion **without prejudice** and **denies as moot** the request for hearing.

**Memorandum Opinion and Order – Page 1**

I. **Background Facts and Procedural History**

On September 22, 2020, Plaintiffs United States Commodity Futures Trading Commission ("CFTC"), along with over thirty states—or their agencies or commissions—filed a thirty-count Complaint against Mr. Asher, Mr. Batashvili, and their entities, TMTE. Inc., d/b/a Metals.com, Chase Metals LLC, Chase Metals, Inc. (collectively "Metals.com") and Barrick Capital, Inc. ("Barrick"). The Complaint alleges that Defendants "have engaged and continue to engage in a fraudulent scheme to defraud at least 1,600 persons throughout the United States into purchasing gold and silver bullion ('Precious Metals Bullion')" in violation of the Commodities Exchange Act ("CEA"), 7 U.S.C. § 1 et seq., CFTC regulations, and various state laws. Compl. ¶ 1. The Complaint further alleges that "Defendants' scam . . . preyed on persons between 60 and 90 years of age and swindled them out of their retirement funds by charging them fraudulent prices to purchase Precious Metals Bullion." *Id.* ¶ 4. The Complaint also alleges "Defendants have solicited and received over $140 million in retirement savings, and over $45 million in Cash Accounts" from the defrauded elderly investors. *Id.* ¶ 11. In the Complaint, Plaintiffs also sought an *ex parte* statutory restraining order to freeze Defendants assets, prohibit them from destroying records, and requiring them to allow Plaintiffs to inspect and copy records.

On September 22, 2020, the court entered an *ex parte* statutory restraining order which, *inter alia*, appointed Kelly Crawford as Receiver for the Defendants and Relief Defendant Tower Equity, LLC. *See* Order Granting Plaintiff's Emergency *Ex Parte* Motion for Statutory Restraining Order, Appointment of Receiver, and Other Equitable Relief (the "SRO"), Doc. 16. Pursuant to the SRO, the court vested the Receiver with certain authority to recover assets and investigate claims. *Id.* Thereafter, Mr. Asher and Mr. Batashvili, in consultation with their counsel, chose not to participate in a hearing and instead consented to the entry of a preliminary injunction. *See*

**Memorandum Opinion and Order – Page 2**

Motion to Approve Consent Order of Preliminary Injunction, Doc. 162. The Receiver, as the authorized representative of Metals.com and Barrick, similarly consented to entry of a preliminary injunction on behalf of those entities. *Id.*

This court approved entry of the Consent Orders on October 14, 2020. *See* Consent Order of Preliminary Injunction and Other Equitable Relief Against TMTE. Inc., d/b/a Metals.com, Chase Metals LLC, Chase Metals, Inc., and Barrick Capital, Inc., and Relief Defendant Tower Equity, Inc., Doc. 164; Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili, Doc. 165. The Consent Orders provided that "[t]he SRO [Doc.16] shall remain in full force and effect." *Id.* ¶ 21.

The Consent Orders for Preliminary Injunction restrain and enjoin Defendants from directly or indirectly violating Section 6(c)(1) of the CEA (codified at 7 U.S.C. § 9(1)) and 17 C.F.R. § 1801.1(a)(1)-(3), as well as state law. The Consent Order for Preliminary Injunction related to the Individual Defendants prevents them from withdrawing, transferring, removing, dissipating, and disposing of their funds, assets, or other property. It freezes the Individual Defendants' assets, and it does not contain a carve-out for use of assets to retain counsel. It does include a provision allowing the Individual Defendants to seek gainful employment, with certain restrictions, to cover their reasonable and necessary living expenses.

The Individual Defendants are requesting a modification of the Consent Order of Preliminary Injunction (Doc. 165) to allow any "new income" from future work outside prohibited areas of employment, as well as a release of any "untainted" assets currently frozen, for the purposes of retaining counsel. *See* Mot., Doc. 232; Reply, Doc. 245. The Receiver opposes any amendments to the Consent Order of Preliminary Injunction. *See* Receiver's Resp. to Notice of

**Memorandum Opinion and Order – Page 3**

Limited Appearance and Emergency Motion to Modify Preliminary Injunction ("Receiver's Resp."), Doc. 236. For the reasons that follow, the court will deny the requested relief without prejudice.

## II. Legal Standard

The court borrows the legal standard governing the pending motion from an opinion authored by the Honorable Amos L. Mazzant, III, United States District Judge in the Eastern District of Texas (Sherman Division), in which he succinctly sets forth the balancing of interests that must be performed by the court in this situation:

> [J]ust as this Court has the authority to freeze assets in [a] civil enforcement action, it also has the discretion to unfreeze those assets when equity requires." *F.T.C. v. Vantage Point Servs., LLC*, 15-65-6S, 2016 WL 1745514, at *1 (W.D.N.Y. May 3, 2016) (quoting *F.T.C. v. 4 Star Resolution, LLC*, No. 15-CV-112, 2015 WL 4276273, at *1 (W.D.N.Y. July 14, 2015)); *see Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir. 1995); *F.T.C. v. IAB Mktg. Assocs.*, No. 12-61830-Civ., 2013 WL 2433214, at *2 (S.D. Fla. June 4, 2013). When determining the release of frozen assets the Court must consider the following: (1) the plaintiff's interest in protecting the assets for consumer restitution; and (2) the defendant's interest in having access to the funds. *See S.E.C. v. Dobbins*, No. 3:04-CV-0605-H, 2004 WL 957715, at *2 (N.D. Tex. Apr. 14, 2004).
>
> "In balancing the defendants' right to fund their defense against the preservation of assets to compensate potential victims, the Court considers 'whether the defendants have other available funds by which to pay their attorneys, which requires full financial disclosure by the defendants' as well as 'the claims of the consumers who were the victims of the defendants' [alleged] wrongdoing.'" *Vantage Point Servs., L.L.C.*, 2016 WL 1745514, at *2 (quoting *4 Star Resolution, L.L.C.*, 2015 WL 4276273, at *1 (quoting *FTC v. OT, Inc.*, 467 F. Supp. 2d 863, 866 (N.D. Ill. 2006))). Therefore, while "some kind of allowance must be made to permit each defendant to pay reasonable attorneys' fees if [the defendant] is able to show that he cannot pay them from new or exempt assets; the burden . . . will be on the defendant to satisfy the court that he can secure the services of an attorney only if assets subject to the freeze order are released." *Fed. Savings & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987).

**Memorandum Opinion and Order – Page 4**

*Federal Trade Comm'n v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4182726, at *2-3 (E.D. Tex. Aug. 8, 2016).

### III.   Analysis

On March 30, 2021, Gene R. Besen of the law firm of Bradley Arant Boult Cummings LLP, and Elizabeth M. Devaney, Alex Spiro, and Elinor C. Sutton of the New-York based law firm Quinn Emanuel Urquhart & Sullivan filed a Notice of Limited Appearance (Doc. 231). They state that the scope of their appearance is "limited to representing [the Individual Defendants] with regard to challenging the freezing of their assets for purposes of retaining counsel." *Id.* That same day, these attorneys, on behalf of the Individual Defendants, filed the Emergency Motion to Modify Preliminary Injunction in which the Individual Defendants request a release of untainted frozen assets so they are able to retain counsel. They state that while they previously agreed to entry of an injunction order freezing their assets, "they did so without a full understanding of the parallel criminal investigation they were facing, the magnitude of fees they would incur to fight the accusations against them, or that their current counsel of record would stop providing legal advice." Mot. 1. They contend that, since the second week of January 2021, they have been, effectively, without counsel as their prior counsel, Arnold Spencer, informed them he would be leaving private practice and would no longer be participating in their case. *Id.* at 1, 11, and Declarations of Mr. Asher and Mr. Batashvili attached thereto.

The Receiver opposes the limited appearance (Doc. 231) and any modification of the agreed injunction. *See* Receiver's Resp., Doc. 236. The court will first address the Receiver's opposition to the Notice of Limited Appearance.

**Memorandum Opinion and Order – Page 5**

### A. Receiver's Opposition to Notice of Limited Appearance

On April 20, 2021, the Receiver filed his response, objecting to the Notice of Limited Appearance. The Receiver asserts that no local or federal procedural rule allows an attorney to make a limited scope appearance in the United States District Court for the Northern District of Texas and moves to strike the Notice of Limited Appearance.

The Federal Rules of Civil Procedure do not expressly authorize or prohibit an attorney's limited scope appearance in a federal action. While the Local Rules of Civil Procedure in some districts expressly authorize limited scope appearances, the Local Rules of Civil Procedure of the Northern District of Texas are silent as to such appearances. As the Receiver recognizes, under these circumstances, the court has discretion whether to allow counsel to enter a limited appearance. Receiver's Resp. 4.

The court recognizes that on July 30, 2021, counsel who filed the Notice of Limited Appearance filed their "Notice of Substitute Counsel's Proposed Appearance Subject to Emergency Motion to Modify Preliminary Injunction," in which they make clear that they filed a Proposed Appearance "and intend for it to serve as a non-qualified entry of appearance on behalf of the Individual Defendants, *subject to an order by the Court on the Emergency Motion to Modify that allows Individual Defendants to use untainted funds and future earned assets to pay for attorney's fees.*" *See* Notice, Doc. 293 (original emphasis).

In the context of this proceeding, and under the circumstances presented, the court, in the exercise of its discretion, finds good cause to allow the initial limited scope appearance and concludes it is not inconsistent with federal law or the Federal and Local Rules of Civil Procedure. Accordingly, the court will **deny** the Receiver's request that the court strike the Notice of Limited Appearance.

**Memorandum Opinion and Order – Page 6**

### B. Emergency Motion to Modify Preliminary Injunction

In opposition to the Emergency Motion to Modify Preliminary Injunction, the Receiver contends, among other things, that: (1) the Individuals Defendants waived any right to seek modification of the Consent Order of Preliminary Injunction as they were represented by counsel at the time of its entry; (2) the Individual Defendants have unclean hands and there is no equitable basis to modify the Consent Order of Preliminary Injunction; (3) modifying the Consent Order of Preliminary Injunction is not in the best interest of the Receivership because the assets by the Receiver to date fall short of investor losses; and (4) the Individual Defendants have no constitutionally protected right to counsel. *Id.* at 2-3. The Receiver also maintains that the relief requested should be denied because the Individual Defendants cannot identify untainted assets. *Id.* at 18-19.

> In the conclusion of his response, the Receiver summarizes his position as follows:
>
> > The relief the Individual Defendants seek should be denied for reasons that have less to do with the meritless legal arguments in their Emergency Motion, and everything to do with their actions and activities since the filing of the Complaint which bar their relief as a matter of law and equity. Stated simply, trusting these particular defendants, when it comes to any representations made to the Court about anything they have done or will do, constitutes an exercise in futility that will accrue to the detriment of not only those victims identified in the Complaint, but the receivership process, and the receivership estate. Indeed, at this juncture, the documented transgressions likely represent just a fraction of the transgressions yet to be uncovered and/or fully investigated by the Receiver. Accordingly, the Limited Appearance and Emergency Motion should be denied for all the reasons detailed hereinabove.

*Id.*

As compelling as the Receiver's arguments are, the court remains mindful that this lawsuit was brought to establish the Individual Defendants' wrongdoing. "[T]he court cannot assume the wrongdoing before judgment in order to remove the defendants' ability to defend themselves. The

**Memorandum Opinion and Order – Page 7**

basis of our adversary system is threatened when one party gains control of the other party's defense as appears to have happened here." *Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 565 (5th Cir. 1987) (citations omitted); *see also FTC v. Consumer Def., LLC*, No. 2:18-CV-30JCM(PAL), 2018 WL 2972927, at *4 (D. Nev. May 4, 2018) ("The lack of availability of other funds and the fact that the [defendants] have not yet been found liable . . . are considerations courts have evaluated when determining whether to release funds for attorneys' fees."). Consistent with fundamental notions of fair play, the court, therefore, concludes that some kind of an allowance must be made to permit the Individual Defendants to retain counsel and pay reasonable attorney's fees.[1] Allowing the use of income from future employment outside areas of prohibited employment to pay for counsel appears uncontroversial. *See, e.g., Dixon*, 835 F.2d at 565 (finding that the district court's preliminary injunction should be modified to unfreeze assets that are not "ill-gotten").

Problematically, from the Individual Defendants' motion, the court is unable to tell which assets in the possession of the Receiver are "untainted" assets. *See SEC v. Dobbins*, No. 3:04-CV-0605-H, 2004 WL 957715, at *2 (N.D. Tex. Apr. 14, 2004) (denying without prejudice defendants' request to unfreeze assets for payment of attorney's fees, in part because those assets may have been the fruit of the fraud at the heart of the case). The court notes that the Receiver in his response has a similar concern. *See* Receiver's Resp. 18. It appears to the court, however, that the Individual

---

[1] The court rejects the Receiver's argument that the Individual Defendants waived their right to request a carve-out from the frozen assets for attorney's fees because they consented to entry of the Consent Order for Preliminary Injunction. *See Fed. Trade Comm'n v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4182726, at *2 (E.D. Tex. Aug. 8, 2016) ("[J]ust as this Court has the authority to freeze assets in [a] civil enforcement action, it also has the discretion to unfreeze those assets when equity requires.") (citations omitted). The court agrees with the Individual Defendants that the Receiver's reliance on *SEC v. Lauer*, 445 F. Supp. 2d 1362 (S.D. Fla. 2006), is misplaced, as the facts in *Lauer* are inapposite. *See* Reply 3-4, Doc. 245.

Defendants would be unable to identify such assets without access to records which the Receiver has in his possession pursuant to the SRO. As such, the court **directs** the Receiver to allow the Individual Defendants access to the records to determine what assets, if any, are "untainted." Because the CFTC is not permitted to freeze assets unrelated to its investigation, *see SEC v. Dobbins*, 2004 WL 957715, at *2 (citation omitted), the Individual Defendants may file another motion requesting access to assets for attorney's fees once they have completed their review and are able to show that any assets not related to the CFTC's investigation are available. In the event this avenue proves fruitless, the Individual Defendants may file another motion requesting access to assets for attorney's fees from income from future employment outside areas of prohibited employment.[2]

## IV. Conclusion

Based on the foregoing, the court **denies without prejudice** the Emergency Motion to Modify Preliminary Injunction (Doc. 232) and **denies as moot** the Request for a Hearing (Doc. 246).

**It is so ordered** this 3rd day of May, 2022.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

---

[2] The court, in deciding this issue, will consider the diligence of the Individual Defendants in seeking and obtaining gainful and lawful employment within the parameters of the SRO (Doc. 16) and Consent Order of Preliminary Injunction (Doc. 165).