IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, et al. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2910-L |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § § | |

**RECEIVER'S REPLY TO DEFENDANTS' OPPOSITION TO RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANTS LUCAS ASHER AND SIMON BATASHVILI IN CIVIL CONTEMPT**

Kelly M. Crawford ("Receiver") respectfully submits this reply ("Receiver's Second Reply") to the *Defendants' Opposition to Receiver's Motion for Show Cause Hearing to Hold Defendants in Civil Contempt* [Dkt.375] (the "Second Opposition").

**I.
INTRODUCTION**

The *Receiver's Emergency Motion for Show Cause Hearing* (the "Motion") [Dkt. 311] seeks to hold the individual Defendants Lucas Asher and Simon Batashvili ("Defendants") in contempt for violating this Court's Orders (as defined in the Motion) by, amongst other things,

wrongfully using and/or converting receivership assets as part of Portfolio Insider ("PI"), and engaging through PI in "activity related to securities, commodities, or derivatives…." *See Consent Order,* ¶38. In the original *Defendants' Opposition to Receiver's Motion for "Show Cause" Hearing to Hold Defendants in Civil Contempt* [Dkt. 324] (the "First Opposition"), Defendants contend they did not violate the Court's Orders because PI is a software company not engaged in any activity related to securities; they do not own PI; and the Motion seeks criminal, rather than civil contempt. In the *Receiver's Reply to Defendants' Opposition to Receiver's Motion for "Show Cause" Hearing to Hold Defendants Lucas Asher and Simon Batashvili in Civil Contempt* [Dkt. 333] (the "First Reply"), the Receiver showed that the Defendants mischaracterized the Court's Orders, the evidence submitted by the Receiver and/or the Plaintiffs in support of the Motion, and even the relief sought by the Receiver. Moreover, in their First Opposition, Defendants failed to submit a shred of controverting evidence. Indeed, the Receiver noted that "the absence of any declaration from either of the Defendants is a glaring omission." First Reply at p. 2.

On May 13, 2022, the Court entered an *Amended Order Setting Show Cause Hearing* [Dkt. 386], that set the Motion for hearing, ordered Defendants to file their response by May 10, 2022, and ordered the Receiver to file his reply by May 17, 2022. On May 10, 2022, the Second Opposition was filed.

The Second Opposition is clearly identical to their First Opposition, with the exception that the Second Opposition includes declarations from Carlos Cruz[1] and reputed former employees

---

[1] Although Carlos Cruz submits to this Court a declaration dated May 9, 2022 on behalf of Portfolio Insider, Winston & Strawn LLP, the counsel of record for Portfolio Insider, filed an *Unopposed Motion to Withdraw as Non-Party Portfolio Insider LLC's Counsel of Record* [Dkt. 382] on May 12, 2022, claiming "Portfolio Insider's corporate representative Carlos Cruz has failed to respond to emails and phone calls regarding this matter for several months".

of PI.[2] Nevertheless, the glaring omission of any denial from Defendants Asher or Batashvili to the allegations in the Receiver's Motion remains. Their silence can only be interpreted as an inability to contradict the evidence provided by the Receiver, and a fear their testimony will be incriminating and expose their previous lies to the Court and the Receiver.

As in the First Opposition, Defendants argue in their Second Opposition that Defendants Simon and Batashvili should not be held in contempt of this Court's Orders because:

1. Defendants Simon and Batashvili do not own the entity formed by Carlos Cruz called Portfolio Insider, LLC;

2. The contempt sanction sought by the Receiver is not coercive, but aimed to punish the Defendants and therefore should be converted from a civil contempt proceeding to a criminal contempt proceeding; and

3. Defendants Simon and Batashvili did not violate the prohibition in the Court's orders against engaging in any activity related to securities, commodities, or derivatives because PI was simply a software company unrelated to securities, commodities or derivative.

As has been previously detailed in the Receiver's First Reply and as will be shown at the hearing on the Motion, Defendants Asher and Batashvili started the business of Portfolio Insider before the receivership, used assets subject to the Court orders for the operation of Portfolio Insider after the receivership, and controlled and operated the business of Portfolio Insider with Carlos Cruz as the front man.

---

[2] The evidence at the hearing on the Motion will further show that shortly after the Receiver's Motion was filed, the employees of Portfolio Insider were given a form declaration to sign (the ones attached to the Defendants' Second Opposition) that was not truthful and that was signed under the duress and fear of losing their job with Portfolio Insider.

The Receiver's Motion provided the Defendants and their counsel a specific list of what Defendants Asher and Batashvili could and can do to purge themselves of contempt. Accordingly, the Motion seeks a coercive civil contempt order and is not a criminal contempt proceeding

Finally, as detailed in the Receiver's Motion, and as will be shown at the hearing on the Motion, the Defendants Asher and Batashvili were clearly engaged, through Portfolio Insider, in activities relating to securities, commodities, or derivatives in flagrant violation of the Court's Orders.

## II.

### AT ALL RELEVANT TIMES ASHER AND BATASHVILI OPERATED AND CONTROLLED PORTFOLIO INSIDER

The Defendants contend the alleged formation by Carlos Cruz of an entity called "Portfolio Insider, LLC" in October, 2020 somehow absolves Defendants from complying with or being subject to the Court's Orders. The Defendants ignore altogether the definition of "Receivership Defendants", which is defined as the *"Defendants and Relief Defendant and their affiliates or subsidiaries owned or **controlled by Defendants** or Relief Defendants".* SRO ¶30 (emphasis added). Defendants also disregard that "Receivership Estate," as defined in the *SRO,* includes *"assets directly or **indirectly** owned, beneficially, or otherwise, by the Receivership Defendants."* *Id.* Moreover, *"assets"* as used in the *SRO* defining the "Receivership Estate" means *"any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly, **directly or indirectly controlled,** and wherever located, including but not limited to…"* SRO ¶15 (emphasis added). **Thus, the relevant inquiry for the Court is not simply whether the Defendants own Portfolio Insider, but instead is much broader – do the Defendants directly or indirectly control the business of Portfolio Insider.**

The evidence already before the Court, which remains uncontradicted by the Defendants, shows that the business of Portfolio Insider began *prior* to the receivership and was funded with investor monies the Receiver is charged with recovering. That business and the assets used to operate that business were part of the Receivership Estate at the time the *SRO* was entered by the Court and should have been turned over by Defendants Asher and Batashvili. Instead, in violation of the *SRO*, they seamlessly continued the business with the assistance of Carlos Cruz as the front man.

Carlos Cruz, as the owner of MagicStar Arrow, received more than $20 million of investor victim funds from the Defendants prior to the receivership.[3] Coincidentally, or so it seems, one month after the Defendants' operations are placed in receivership, Mr. Cruz forms an entity conveniently called "Portfolio Insider". This entity begins using the business of Portfolio Insider f/k/a Retirement Insider the Defendants began prior to the receivership – the technology, the marketing, the website address, the website content, the consultants, and even the same third party vendors. The claim, therefore, that Portfolio Insider is a creation of Carlos Cruz wholly independent of the Defendants is patently false as evidenced by hundreds of pages of uncontroverted evidence now before the Court. Indeed, the Court should disregard the corporate fiction when it is being used, as in this instance, as an unfair device to achieve an inequitable result. *See Ledford v. Keen*, 9 F.4th 335, 339 (5th Cir. 2021)

Although Carlos Cruz conveniently formed the entity called "Portfolio Insider" and, allegedly gave himself the title CEO, the evidence already before this Court and that will be presented at the hearing on the Motion shows that at all relevant times Defendants Asher and

---

[3] Receiver's Appendix in Support of Motion [Dkt. 312] ("App.") at p. 165.

Batashvili controlled the operations of Portfolio Insider[4]. Indeed, Defendants admit in their Second Opposition *"the services performed by the Defendants for Portfolio Insider were of a general administrative and operational nature."* See Second Opposition at p. 2, ¶3.

The Defendants' control of Portfolio Insider is shown by the evidence before the Court that:

1. Defendant Lucas Asher hired employees of Portfolio Insider[5];

2. Defendant Simon Batashvili supervised employees of Portfolio Insider[6];

3. Defendant Simon Batashvili created the scripts used by callers hired by Portfolio Insider to solicit customers[7];

4. Defendant Lucas Asher continuously communicated and negotiated with NASDAQ on behalf of Portfolio Insider and with the authority to bind Portfolio Insider[8];

5. Defendant Lucas Asher executed contracts with Intrinio on behalf of Portfolio Insider and with the authority to bind Portfolio Insider[9];

6. Defendant Lucas Asher held himself out to vendors as the person in control of Portfolio Insider.[10]

It is the misappropriation of the Portfolio Insider assets created *prior to* the receivership, and the Defendants' "control", direct or indirect, of Portfolio Insider's business *after* the receivership that makes it part of the "Receivership Estate" under the *SRO*, and that forms the basis for the

---

[4] Interestingly enough, after obtaining an Order from Magistrate Toliver compelling the Defendants' counsel to reveal the source of their retainers for representing the Defendants [Dkt. 296], the Receiver learned the retainers were funded by entities owned by none other than Carlos Cruz.
[5] App. at p 110.
[6] App. at pp. 110-112.
[7] Id.
[8] App. at pp. 114-157.
[9] App. at pp. 230-253.
[10] App. at pp. 110-112; CFTC App. at Ex. A, ¶44, pp. 13-14.

Receiver's request in his Motion for the Court to expressly name it as part of the Receivership Estate.[11]

## III.

## THIS IS A CIVIL CONTEMPT MOTION, NOT CRIMINAL

The Defendants' argument that the Motion should be treated as a criminal contempt proceeding is yet another example of Defendants' blatant misrepresentations of the Receiver's Motion. Nothing in the Receiver's Motion requests the incarceration of Defendants Asher and Batashvili as punishment for their repeated contemptuous violations of the Court's Orders. Instead, the Receiver specifically identified three actions the Defendants should take to purge themselves of contempt: a) turn over to the Receiver the Portfolio Insider assets as "assets" are defined in the Court's Orders; b) turn over to the Receiver the "records" of Portfolio Insider as "records" are defined in the Court's Orders; and c) provide the Receiver with an accounting of all monies received by Portfolio Insider from the inception of the receivership through the present. While the Court could choose to incarcerate the Defendants until they purge themselves of their contemptuous conduct, such incarceration would be solely to coerce the action that must be taken by the Defendants to purge the contempt, and not as a penalty. Such is the essence of a civil contempt proceeding.

The Defendants argue they do not own Portfolio Insider and therefore it is impossible for them to turn over assets or records of Portfolio Insider or account for the monies received by Portfolio Insider from the inception of the receivership. Thus, the issues for the Court to decide at the hearing on the Motion will be whether the Defendants exercised control over Portfolio Insider

---

[11] *See SRO* definition of Receivership Defendants as *"Defendants and Relief Defendant and their affiliates or subsidiaries owned **or controlled by Defendants** or Relief Defendants"*. *¶30 (emphasis added).*

and/or had a beneficial interest in, Portfolio Insider. If the answer is yes, the Defendants have the ability to purge themselves of contempt and the business of Portfolio Insider, originally Retirement Insider, should be declared a Receivership Entity subject to the *SRO*[12].

Indeed, the disposition of the assets of Portfolio Insider is of particular importance since: (a) more than 7 months elapsed since the Motion was filed; (b) Portfolio Insider shut down its business immediately after the Motion was filed; and (c) on information and belief, Defendants Asher and Batashvili, using pseudonyms, shifted the business from Portfolio Insider to "Elite Flows", and are now operating a new business called TradeAlgo that is similar to the business model for Portfolio Insider.[13]

## IV.

## DEFENDANTS CLEARLY ENGAGED IN ACTIVITY RELATED TO SECURITIES AND COMMODITIES IN VIOLATION OF THE COURT'S ORDER

In their Second Opposition, the Defendants simply repeat the same arguments made in their First Opposition presumably because they still lack a credible defense for their intentional violation of the prohibition they agreed to in the Consent Order: **"Defendants Asher and Batashvili agree that they will not engage in any activity related to securities, commodities, or derivatives…."** ¶38 (emphasis added). See *Consent Order* [Dkt. 165]

The overwhelming evidence before the Court shows that Defendants Asher and Batashvili not only intentionally engaged in activities directly related to securities and commodities, but did

---

[12] Certainly, if the Defendants had the ability for the Portfolio Insider entity to use the pre-receivership business of Portfolio Insider f/k/a Retirement Insider, and all of the assets associated with such business – technology, marketing, domain name, vendor contracts, etc. – the Defendants have the ability to turn over such assets to the Receiver and account for the use of such assets.

[13] On information and belief, Carlos Cruz is being used again as the front man for this new company.

so brazenly and devoid of any concern about the Courts' Orders. For example, Defendant Asher continually negotiated on behalf of Portfolio Insider with NASDAQ for purposes of obtaining information regarding securities sales to sell to investors. Defendant Batashvili wrote the scripts used by callers, and supervised the callers who solicited monies from customers to purchase information from Portfolio Insider regarding securities to assist them in buying and selling securities. These activities are, on their face, engaging in an "activity related to securities." Any suggestion to the contrary is baseless.

The Second Opposition also ignores altogether the evidence submitted by the Receiver and tries to characterize Portfolio Insider as simply a computer software company. This argument is contradicted by the evidence that Portfolio Insider is marketed to assist investors in the purchase and/or sale securities, with a tag line that Portfolio Insider has "the power of an investment bank in your pocket" with a mission "to democratize access to the world's most valuable financial data."[14] Stated simply, Portfolio Insider is singularly devoted to securities and commodities.

Moreover, contrary to the Defendants' suggestion that they are in violation of the Consent Order only if they provided "investment advice", the plain words of the Consent Order are not limited only to providing investment advice, but encompass "any activity related to securities, commodities, and derivatives..."[15] The Defendants blatantly and arrogantly violated the Consent Orders[16].

---

[14] App. at pp. 321-323.

[15] This leaves Defendants with only the argument that the Consent Order's prohibition is too broad. If the Defendants believed the language was too broad, they never should have agreed to the language. Moreover, if they were unclear as to the boundaries of the Consent Order, they certainly could have requested the Court for clarification before engaging in the business of Portfolio Insider. Instead, they hid their activities from the Receiver and lied about such activities in their deposition testimony.

[16] This violation of the *Consent Order* by the Defendants exists regardless of whether the Court finds that Portfolio Insider is part of the Receivership Estate.

## V.

## CONCLUSION

It is readily apparent by this third contempt action against the Defendants, that Asher and Batashvili are convinced they can violate this Court's Orders without fear of reprisal and without consequence. They have no respect for this Court or it's orders. This attitude was displayed at the outset of the Receivership by, amongst other things, each of them blatantly taking a half a million dollars for themselves of frozen monies and returning the monies only after being caught by the Receiver and facing a contempt hearing. Even more egregious, however, is Defendants Asher and Batashvili knowingly violating the Court's Orders by continuing to operate a business they began prior to the receivership, using assets that should have been turned over to the receiver, and engaging on a daily basis in activity related to securities and commodities that was expressly prohibited by this Court. Enough is enough.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By: */s/ Peter Lewis*
Peter Lewis
Texas State Bar No.12302100
Peter.lewis@solidcounsel.com

500 N. Akard Street, Suite 2700
Dallas, Texas 75201
(214) 706-4200 – Telephone
(214) 706-4242 – Telecopier

**ATTORNEY FOR RECEIVER
KELLY M. CRAWFORD**

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on May 17, 2022, I electronically filed the foregoing document with the clerk of the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

               /s/ Peter Lewis
               **PETER LEWIS**