IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, and<br><br>ALABAMA SECURITIES COMMISSION, STATE OF ALASKA, ARIZONA CORPORATION COMMISSION, CALIFORNIA COMMISSIONER OF BUSINESS OVERSIGHT, COLORADO SECURITIES COMMISSIONER, STATE OF DELAWARE, STATE OF FLORIDA, OFFICE OF THE ATTORNEY GENERAL, STATE OF FLORIDA, OFFICE OF FINANCIAL REGULATION, OFFICE OF THE GEORGIA SECRETARY OF STATE, STATE OF HAWAII, SECURITIES ENFORCEMENT BRANCH, IDAHO DEPARTMENT OF FINANCE, INDIANA SECURITIES COMMISSIONER, IOWA INSURANCE COMMISSIONER, DOUGLAS M. OMMEN, OFFICE OF THE KANSAS SECURITIES COMMISSIONER, KENTUCKY DEPARTMENT OF FINANCIAL INSTITUTIONS, MAINE SECURITIES ADMINISTRATOR, STATE OF MARYLAND EX REL MARYLAND SECURITIES COMMISSIONER, ATTORNEY GENERAL DANA NESSEL ON BEHALF OF THE PEOPLE OF MICHIGAN, MISSISSIPPI SECRETARY OF STATE, NEBRASKA DEPARTMENT OF BANKING & FINANCE, OFFICE OF THE NEVADA SECRETARY OF STATE, NEW MEXICO SECURITIES DIVISION, THE PEOPLE OF THE STATE OF NEW YORK BY LETITIA JAMES, ATTORNEY GENERAL OF THE STATE OF NEW YORK, OKLAHOMA DEPARTMENT OF SECURITIES, SOUTH CAROLINA ATTORNEY GENERAL, SOUTH CAROLINA SECRETARY OF STATE, SOUTH DAKOTA DEPARTMENT OF LABOR & REGULATION, DIVISION OF | **PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANTS IN CIVIL CONTEMPT**<br><br>Case No.: **3-20-CV-2910-L**<br><br>Judge: Judge Sam A. Lindsay |

INSURANCE, COMMISSIONER OF THE
TENNESSEE DEPARTMENT OF
COMMERCE AND INSURANCE, STATE
OF TEXAS, WASHINGTON STATE
DEPARTMENT OF FINANCIAL
INSTITUTIONS, WEST VIRGINIA
SECURITIES COMMISSION, AND STATE
OF WISCONSIN.

 Plaintiffs,

v.

TMTE, INC. a/k/a METALS, CHASE
METALS, INC., CHASE METALS, LLC,
BARRICK CAPITAL, INC., LUCAS
THOMAS ERB a/k/a LUCAS ASHER a/k/a
LUKE ASHER, and SIMON BATASHVILI,

 Defendants;

and

TOWER EQUITY, LLC,

 Relief Defendant.

Plaintiffs respectfully submit this reply to Defendants' Opposition to the Receiver's Motion for "Show Cause" Hearing To Hold Defendants in Civil Contempt (Doc. 375) ("Opposition").

## I.  INTRODUCTION

On September 16, 2021, the Receiver filed an Emergency Motion for "Show Cause" Hearing to Hold Defendants Lucas Asher ("Asher") and Simon Batashvili ("Batashvili") (collectively, "Defendants") in Civil Contempt (Doc. 311) ("Show Cause Motion") for certain activities undertaken by Defendants with respect to Portfolio Insider.  The Receiver's Show Cause Motion, along with Plaintiffs' Memorandum of Law in Support of Receiver's Motion for An Order to Show Cause (Doc. 313) ("Memorandum in Support"), set forth the extensive evidence that shows the myriad ways Defendants' conduct with respect to Portfolio Insider brazenly violated the Statutory Restraining Order ("SRO") (Doc. 16) and Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Asher and Batashvili ("Consent Order" or "CO") (Doc. 165), entered by the Court on September 22, 2020 and October 14, 2020, respectively.

Finding that the Receiver's Show Cause Motion "provided evidence to support [the receiver's] contention that Defendants Messrs. Asher and Batashvili engaged in conduct that violates [the SRO]," the Court ordered the Defendants to file a response (Doc. 355) and later granted the Receiver's Show Cause Motion, setting a hearing date for May 26, 2022.  (Doc. 386).

Defendants' Opposition offers only three arguments as to why they should not be held in contempt:  (1) that Portfolio Insider is not part of the Receivership Estate; (2) that Defendants did not engage in securities-related activities; and (3) that the Receiver's contempt motion is punitive and/or so factually complex that it requires the due process safeguards of criminal procedure.  (*See* Doc. 375.)  For the reasons sets forth below, each of these arguments fails.

1

Accordingly, the Court should impose the sanctions requested by the Receiver until Defendants purge their contempt by taking the steps outlined in the Receiver's motion.  (*See* Doc. 311 at 23.)

## II.   ARGUMENT

### A.  DEFENDANTS' CONDUCT VIOLATED THE COURT'S ORDERS

#### 1.  Defendants Violated the Court's Orders By Misappropriating Assets of the Receivership Estate.

Pursuant to the SRO, Defendants were obligated to "immediately . . . deliver to the Temporary Receiver . . . [p]ossession and custody of all assets of the Receivership Estate," (SRO ¶ 19), and were prohibited from "transferring, removing, dissipating, or otherwise disposing of any assets, wherever located."  (SRO ¶ 33.)  The evidence set forth in the Receiver's Show Cause Motion and Plaintiffs' Memorandum in Support, plainly demonstrates that Defendants violated these provisions by misappropriating assets of the Portfolio Insider business.

Defendants contend that there was no violation because "Portfolio Insider was not part of the Receivership Estate."  (Doc. 375 at 11.)  According to Defendants, the Receivership Estate includes only "assets *owned*, beneficially or otherwise, by the Receivership Defendants," (*Id.*), and the Receiver failed to establish that "Defendants **own** Portfolio Insider."  *Id.* (emphasis added by Defendants).  But Defendants' misleadingly narrow interpretation of "Receivership Estate" is belied by the plain language of the SRO.  Defendants ignore that "Receivership Defendants" is defined as "Defendants and Relief Defendants and their affiliates or subsidiaries owned ***or controlled*** by Defendants or Relief Defendants."  (SRO ¶ 30 (emphasis added).)  The SRO further defines the "Receivership Estate" to include "assets directly or indirectly owned, beneficially, or otherwise by the Receivership Defendants."  And "Assets," in turn, are "any legal or equitable interest in, right to, or claim to, any real or personal property, whether individually or jointly,

2

*directly or indirectly controlled,* and wherever located . . ." SRO ¶ 15 (emphasis added).  Thus, the relevant inquiry is not whether Defendants owned Portfolio Insider, but whether they directly or indirectly controlled it at any time.

The evidence set forth in the Receiver's Show Cause Motion clearly establishes that Portfolio Insider is part of the Receivership Estate as an asset that was *controlled* by the Defendants.  Well before the issuance of the SRO or Consent Order, Defendants were operating and in control of the *same business* later incorporated by Carlos Cruz as Portfolio Insider, LLC.  Specifically the facts demonstrate that:

- in 2018, Defendants formed a Wyoming limited liability company called Retirement Insider, LLC and designated Batashvili as the manager (Doc. 311 at 7);

- Retirement Insider shared office space and many of the same employees as Metals (*Id.*; Doc. 313 at 3–4);

- commingled Metals funds were used to fund Retirement Insider operations (Doc. 311 at 7–8; Doc. 313 at 4);

- in July 2020, Defendants decided to rebrand the Retirement Insider business as Portfolio Insider (Doc. 311 at 8; Doc. 313 at 5);

- Defendants purchased the domain name "portfolioinsider.com" and developed content for the website (Doc. 311 at 9–10; Doc. 313 at 4);

- Defendant Asher conducted business using a Portfolio Insider email address (Doc. 311 at 15);

- Defendants hired a consultant to provide marketing expertise for Portfolio Insider and they personally developed sales pitches and a marketing campaign (*Id.* at 8–9); and

- Defendants obtained data from Intrinio for use in the Portfolio Insider product (*Id.* at 8; Doc. 313 at 4.)

Following the issuance of the SRO, rather than turning over the assets of Portfolio Insider to the Receiver as required, Defendants misappropriated them by, *inter alia*, continuing to use Portfolio Insider's intellectual property, sales and marketing materials, Intrinio data feeds, domain name, website content, and employees.  (Doc. 311 at 10–12.)

3

Rather than submitting any evidence to contest these facts showing they controlled Portfolio Insider, Defendants instead argue that Portfolio Insider cannot be part of the Receivership Estate, because it was owned by Carlos Cruz.  In support of this theory, Defendants submitted a declaration by Carlos Cruz attesting to the fact that he founded Portfolio Insider in October 2020 and that he "alone [has] owned, controlled, and managed Portfolio Insider since the date of its founding through the date it ceased operations."  (Doc. 375-1 at ¶3.)  Defendants also submit 28 nearly identical declarations from former Portfolio Insider Employees attesting to the fact that Carlos Cruz was the CEO of Portfolio Insider and was responsible for hiring, firing and supervising its employees.  (Doc. 375-2–29.)  This argument (and the form declarations submitted in support) is a straw man.  Neither the Receiver nor Plaintiffs dispute that, following the issuance of the SRO and Consent Order, on October 27, 2020, a Delaware limited liability Company was formed listing Carlos Cruz as the manager.  But this post-Receivership incorporation—by an associate of Defendants whose entity, MagicStar Arrow, was previously paid $20 million of Metals' investor funds (Doc. 311 at 12–13)—does not alter the fact of Defendants' misappropriation of Receivership Assets.  Siphoning those assets into a newly-incorporated entity controlled by an associate cannot relieve Defendants of their obligations to comply with the Court's orders.  *See Topletz v. Skinner*, 7 F.4th 284, 297 (5th Cir. 2021) ("Depriving courts of the right to use civil contempt to compel production of items subject to this rule would render them impotent to enforce it, thereby allowing a party to evade discovery simply by storing records with a third party.").

**2.  Defendants Violated the Consent Order By Engaging In Activities Related to Securities, Commodities, or Derivatives.**

The Consent Order restrains and enjoins Defendants from engaging "in any activity related to securities, commodities, or derivatives . . . ."  (CO at ¶ 38).  As described in Plaintiffs' Memorandum in Support and below, Defendants, through Portfolio Insider, violated this provision

of the Consent Order by (1) acting as an unregistered investment adviser and unregistered representatives of an investment adviser, (2) providing fraudulent information to investors to induce securities transactions by investors, and (3) making material representations to customers about Bitcoin and virtual currencies—which are commodities under the Commodity Exchange Act—to induce customers to buy those commodities.  (*See* Doc. 313 at 10-11, 19, 21, 24–25.)

Defendants contend that the language of Paragraph 38 in the Consent Order—language that they, with the advice of counsel, voluntarily agreed to—is overbroad.  They contend that this language could be read to prohibit a broad swath of activities that only tangentially relate to transactions in securities, commodities, or derivatives—such as working in a bookstore that sold a book about the U.S. financial market, or purchasing any item manufactured by a public company. (Doc. 375 at 19.)  But Defendants' violations go to the heart of the Consent Order, and have nothing to do with these far-fetched hypotheticals.  Indeed, Defendants concede that the clear intent of the Consent Order prohibits them from "soliciting . . . funds . . . for the purpose of purchasing, selling, or otherwise investing in . . . securities, commodities, . . . or virtual currency."  (Doc. 375 at 19 (quoting CO at ¶ 38).)  That is precisely the conduct at issue.  In addition to the conduct described below in Parts I.A.3 and I.A.4, Defendants also violated this provision when they: pitched to victims their expertise with Bitcoin and other virtual currencies and claimed that their platform allows one to track and capitalize on real-time price movements in Bitcoin (Doc. 313 at 10); advised victims to buy Bitcoin and other virtual currencies because they are great investments (*id.*); and published articles related to Bitcoin and other virtual currencies that they used to carry out Portfolio Insider's Bitcoin sales pitches (*id.* at 11).

**3.  Defendants Violated Certain State Securities Statutes.**

The Consent Order restrains and enjoins Defendants from violating ten States' securities

laws.  (CO at ¶ 19).  As described in Plaintiffs' Memorandum in Support, Defendants violated this provision of the Consent Order by (1) operating an unregistered investment adviser firm, Portfolio Insider; (2) acting as unregistered investment adviser representatives of Portfolio Insider; (3) committing fraud in connection with the rendering of investment advice; and (4) committing securities fraud.  (*See* Doc. 313 at 21–25.)

Defendants contend that they could not have violated the state securities fraud statutes through their activities with Portfolio Insider, because "Portfolio Insider is not engaged in trading securities . . . or in soliciting money from customers to engage in such trading."  (Doc. 375 at 19.)  But the state laws at issue prohibit "any person" from committing fraud "**in connection with**" the offer, purchase or sale of securities.  *See* §8-6-17(a)(2), *Code of Alabama* (1975); Md. Code, Corps & Assn's § 11-301; § 11-51-501(1), C.R.S. (2020); O.C.G.A. § 10-5-50; Tex. Rev. Civ. Stat. Ann. art. 581-32; S.C. Code § 35-1-501.  Fraudulent activity satisfies this "in connection with" requirement whenever it "touches" or "coincides" with a securities transaction.  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85, 126 S.Ct. 1503 (2006);  *Superintendent of Ins. of N.Y. Bankers Life & Cas. Co.*, 404 U.S. 6, 12-13, 92 S.Ct. 165 (1971); (*see also* Doc. 313 at 24–25.)  Here, the uncontroverted evidence shows that Defendants provided fraudulent information to investors (1) for the purpose of inducing securities transactions by investors, and (2) with the expectation that investors would rely on their misrepresentations to purchase or sell securities.  (*See* Doc. 313 at 24–25.)

Defendants also contend that they could not have violated state investment adviser laws because Portfolio Insider "is also not providing any investment advice."  (Doc. 375. at 19.)  Rather, they contend that the Portfolio Insider product is akin to a "Bloomberg terminal" which provides "financial data that is available on the NASDAQ or from the SEC."  (*Id.*)  Contrary to Defendants' assertions, however, the record demonstrates that the Portfolio Insider business was not limited to the dissemination of impersonal, "bona fide" commentary via general or regular circulation such that it

would qualify for protection under the bona-fide publication exclusion.[1]   Rather, the evidence demonstrates that, in exchange for a $10,000 annual advisory fee, Portfolio Insider acted as an investment adviser by, among other things:  (1) providing investors with buy recommendations for specific stocks; (2) helping investors who call with questions about the securities recommendations provided; (3) tailoring its online dashboard to investors' individual needs; and (4) providing advice about short-term investments or long term investments including the "Top 16 Picks" to buy for guaranteed returns.  (Doc. 313 at 12–13.)  Defendants' efforts to cherry pick high-level descriptions of the Portfolio Insider product, (*see* Doc 375 at 9), does not contravene the overwhelming evidence demonstrating that Portfolio Insider acted as an investment adviser.  Nor do the statements by lower-level Portfolio Insider employees suggesting they did not *personally* provide investment advice.  (*See* Doc 375 at 9 (quoting Stotts declaration, "At no time did I offer any form of personalized financial or professional advice.").)  Stotts merely gauged investors' interest before transferring the call to a closer. (Doc. 313-1 at 157; 313-3 at 404.)  Defendants notably failed to submit declarations from any of the closers (Warren, Roberts, Johnson, Douglas, or Isaac), who provided and demonstrated how Portfolio Insider routinely provided investment advice. (313-1 at 125-167, 130-134; 313-2 at 353-393; and 313-3.)

Defendants further assert that the Receiver failed to demonstrate violations of the Consent Order's injunction against violations of the state securities statutes, because it failed to "provide[] this Court with any competent evidence to suggest that" Asher or Batashvili personally provided investment advice.  This is not the sole test.  Here, Asher and Batashvili violated state securities statutes by acting as unregistered investment adviser representatives of Portfolio Insider, because they qualify as control persons of Portfolio Insider, and/or substantially assisted Portfolio Insider's violations.

---

[1] *See* "Regulation of Investment Advisers by the U.S. Securities and Exchange Commission" dated March 2013, Securities and Exchange Commission, Staff of the Investment Adviser Regulation Office, Division of Investment Management ("Release") p. 6, *available at https://www.sec.gov/about/offices/oia/oia_investman /rplaze-042012.pdf*; *see also S.E.C. v. Suter*, 732 F.2d 1294, 1298 (7th Cir. 1984).

(Doc. 313 at 23.)

### 4. Defendants Violated 7 USC § 9(1) and 17 CFR § 180.1.

The Consent Order also expressly restrains and enjoins Defendants from violating the antifraud provision of the Commodity Exchange Act, 7 U.S.C. § 9(1), and Commission Regulation 17 C.F.R. § 180.1.  (CO at ¶ 18.)  A person violates 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1(a)(1)-(3) if he: (1) engages in prohibited conduct (i.e., employs a fraudulent scheme, makes material misrepresentations or omissions, or engages in fraudulent business practices); (2) in connection with the sale of a commodity in interstate commerce; (3) with scienter.  *See e.g. CFTC v. Hunter Wise Commodities, LLC*, 21 F. Supp. 3d 1317, 1347 (S.D. Fla. 2014).  As described fully in Plaintiffs' Memorandum in Support, the Portfolio Insider business was itself a fraudulent scheme whereby Defendants induced customers to purchases its financial product through material misrepresentations.  (Doc. 313 at 1–2, 7–10, 13–15.)  Among the multitude of misrepresentations made about the Portfolio Insider product are a series of falsehoods related to virtual currencies, bringing the conduct under the enforcement authority of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1.  (*See* Doc. 313 at 19–21);  *see also CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y.) (affirming that "Title 7 U.S.C. § 9(1) gives the CFTC standing to exercise its enforcement power over the fraudulent schemes" involving bitcoin.)

Defendants admit that their Opposition does "not address the CFTC's allegations of fraud or other misconduct in connection with Portfolio Insider," because Portfolio Insider, not Defendants, is the "true party in interest" with "all the documents and other evidence that could be used to refute" such allegations.  (Doc. 375 at 13–14.)  This is a dodge, and a poor one at that.  Defendants' argument ignores the extensive evidence documenting the development and management of Retirement Insider/Portfolio Insider by Defendants prior to commencement of this litigation and relies on the incredible assertions that Defendants' involvement in Portfolio Insider post-incorporation was limited to ministerial, uncompensated labor.  (Doc. 375 at 8, 11.)  Defendants' boilerplate denial—that the

they "did not engage in any fraudulent or wrongful conduct in connection with their work for Portfolio Insider" (Doc. 375 at n. 6)—is woefully insufficient to overcome the evidence demonstrating that Defendants, through Portfolio Insider, violated the anti-fraud provisions.

## B.  THE COERCIVE RELIEF SOUGHT BY THE RECEIVER IS CIVIL AND IS APPROPRIATELY RESOLVED THROUGH A SHOW CAUSE HEARING.

Defendants argue that this should be treated as a criminal rather than a civil contempt action because "they cannot do what the receiver is asking" and complex factfinding is necessary to evaluate Defendants' out-of-court conduct.  (Doc. 375 at 14, 16.)  Neither justifies converting this civil contempt into a criminal proceeding.

First, Defendants have the "ability . . . to comply with the court's order."  *Shillitani v. United States*, 384 U.S. 364, 371 (1966); *id* at 368 ("When the petitioners carry 'the keys of their prison in their own pockets,' the action 'is essentially a civil remedy designed for the benefit of other parties and has quite properly been exercised for centuries to secure compliance with judicial decrees.'" (citation omitted)).  The Receiver and CFTC have provided overwhelming evidence that Defendants have control of Portfolio Insider's "assets" and "records," as defined in the SRO.  They therefore have the ability to purge their contempt by completing the actions identified in the Receiver's motions.  (*See* Doc. 311 at 23.)

Defendants' claim that they are unable to comply is, at most, an affirmative defense to civil contempt that they must prove; it does not justify converting this to a criminal contempt proceeding.  *See United States v. Rylander*, 460 U.S. 752, 757 (1983) ("In a civil contempt proceeding such as this, of course, a defendant may assert a present inability to comply with the order in question. . . . It is settled, however, that in raising this defense, the defendant has a burden of production.").  But, Defendants cannot avoid compliance by claiming that some of the Portfolio insider assets are now in the possession of a third party.  *See Topletz*, 7 F.4th at 297.

9

Second, Defendants rely on two cases as purported support for their argument that criminal procedural protections are required here.  (Doc. 375 at 16-17.)  Both are easily distinguished from the instant case.  The first, *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821 (1994), involved a protracted labor dispute between a union and a coal company and the trial court entered a complex injunction prohibiting certain conduct by the union.  *Id.* at 823-24.  Thereafter, the trial court held eight separate contempt hearings in which the parties conducted discovery, introduced evidence, cross-examined witnesses, and had to prove violations of the injunction beyond a reasonable doubt.  *Id.*  The court found more than 400 separate violations of the injunction and imposed $64 million in fines.  *Id.*  The Supreme Court held "that the serious contempt fines imposed . . . were criminal" because the union had no opportunity to purge the fines once imposed.  *Id.* at 837-39.  The Court also noted, in dicta, that there may be a "discrete category of indirect contempts . . . involving out-of-court disobedience to complex injunctions [that] require elaborate and reliable factfinding" where civil procedural protections may be insufficient.  *Id.* at 833–34.  Unlike *Bagwell*, this case involves straightforward violations of the SRO/CO that can easily be resolved through a single show cause hearing.  Similarly, in *Ravago Americas L.L.C. v. Vinmar Int'l Ltd.*, 832 F. App'x 249 (5th Cir. 2020), the court's determination that a $50,000 fine was a criminal contempt sanction was based on its determination that the fine was "unrelated to any evidenced pecuniary injury and imposed without opportunity to purge."  *Id.* at 256.  That is not the case here.

In sum, Defendants provide no basis for converting this to a criminal contempt proceeding.

### III.  CONCLUSION

For the foregoing reasons, the Court should grant the Receiver's Contempt Application.

10

Dated: May 17, 2022              Respectfully submitted,

By: /s/ Christine Ryall

CHRISTINE RYALL, *pro hac vice*
Chief Trial Attorney
cryall@cftc.gov
Florida Bar # 0983550

JONMARC P. BUFFA, *pro hac vice*
Asst. Chief, Ofc. of Coop. Enf.
jbuffa@cftc.gov
California Bar # 217324

SEAN HENNESSY, *pro hac vice*
Trial Attorney
shennessy@cftc.gov
D.C. Bar # 1011564

SARAH WASTLER
Trial Attorney
swastler@cftc.gov
D.C. Bar # 944534

PAUL HAYECK
Deputy Director
phayeck@cftc.gov
Mass. Bar # 554815

Attorneys for Plaintiff
COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, NW
Washington, D.C.  20581-0001
Phone:  (202) 418-5000
Fax:  (202) 418-5521

FOR THE STATE OF ALABAMA

By: /s/ Anne Gunter

ANNE GUNTER, *pro hac vice*
anne.gunter@asc.alabama.gov
Alabama Bar No. 4666N91P

Attorneys for Plaintiff

11

STATE OF ALABAMA
SECURITIES COMMISSION
445 Dexter Avenue, Suite 12000
Montgomery, AL 36104
Telephone: (334) 322-8586
Fax: (334) 242-0240


FOR THE STATE OF ALASKA

By: /s/ Robert Schmidt

ROBERT SCHMIDT, *pro hac vice*
rob.schmidt@alaska.gov
Alaska Bar No. 9909048
JOHN HALEY
john.haley@alaska.gov
Alaska Bar No. 1402010

Attorneys for Plaintiff
STATE OF ALASKA
OFFICE OF ATTORNEY GENERAL
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-6645
Fax: (907) 276-3697


FOR THE STATE OF ARIZONA

By: /s/ Christopher Nichols

CHRISTOPHER NICHOLS, *pro hac vice*
cnichols@azcc.gov
Arizona Bar No. 029958

Attorney for Plaintiff
ARIZONA CORPORATION COMMISSION
1300 W. Washington St.
Phoenix, AZ 85007
Telephone: (602) 542-0639
Fax: (602) 714-8120


FOR THE STATE OF CALIFORNIA

12

By: /s/ Danielle Stoumbos

MARY ANN SMITH
MaryAnn.Smith@dfpi.ca.gov
SEAN ROONEY
Sean.Rooney@dfpi.ca.gov
DANIELLE A. STOUMBOS, pro hac vice
California Bar No. 264784
Danielle.Stoumbos@dfpi.ca.gov

Attorneys for Plaintiff
STATE OF CALIFORNIA
DEPARTMENT OF BUSINESS OVERSIGHT
(now known as the DEPARTMENT OF
FINANCIAL PROTECTION AND
INNOVATION)
320 West Fourth Street, Suite 750
Los Angeles, California 90013
Telephone: (213) 503-2046
Fax: (213) 576-7181


FOR THE STATE OF COLORADO
PHILIP J. WEISER
Attorney General of the State of Colorado

By: /s/ Janna Fischer

JANNA FISCHER*
janna.fischer@coag.gov
Colorado Bar No. 44952
*Counsel of Record

Attorneys for Plaintiff
SECURITIES COMMISSIONER
FOR THE STATE OF COLORADO
1300 Broadway, 8th Floor
Denver, Colorado 80203
Telephone: (720) 508-6374
Fax: (720) 508-6037


FOR THE STATE OF DELAWARE
KATHLEEN JENNINGS
Attorney General of the State of Delaware

13

By: /s/ Katherine M. Devanney

KATHERINE M. DEVANNEY, *pro hac vice*
Deputy Attorney General
Delaware Bar No. 6356
Texas Bar No. 24116281
katherine.devanney@delaware.gov
JILLIAN LAZAR
Director of Investor Protection
Delaware Bar No. 6049
jillian.lazar@delaware.gov

Delaware Department of Justice
820 N. French St.
Wilmington, DE 19801
Telephone: (302) 577-8356
Fax: (302) 577-6987

Attorneys for Plaintiff the State of Delaware


FOR THE STATE OF FLORIDA
ASHLEY MOODY
Attorney General for the State of Florida


By: /s/ Victoria Butler

VICTORIA BUTLER, *pro hac vice*
Assistant Attorney General
Director of Consumer Protection
victoria.butler@myfloridalegal.com
Florida Bar No. 861250

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF THE ATTORNEY GENERAL
Department of Legal Affairs
3507 E Frontage Rd, Suite 325
Tampa, FL 33607-1795
Telephone: (813) 287-7950
Fax: (813) 281-5515


By: /s/ A. Gregory Melchior

14

A. GREGORY MELCHIOR, *pro hac vice*
Assistant General Counsel
greg.melchior@flofr.com
Florida Bar No. 407290

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF FINANCIAL REGULATION
1313 Tampa Street, Suite 615
Tampa, Florida 33602-3394
Telephone: (813) 218-5327
Fax: (813) 272-2498


FOR THE STATE OF GEORGIA

By: /s/ Logan B. Winkles

LOGAN B. WINKLES, *pro hac vice*
Georgia Bar No. 136906
lwinkles@law.ga.gov
RONALD J. STAY, *pro hac vice*
Georgia Bar No. 621732
rstay@law.ga.gov

Attorneys for Plaintiff
OFFICE OF THE GEORGIA
SECRETARY OF STATE
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334
Telephone: (404) 458-3434
Fax: (404) 657-3239


FOR THE STATE OF HAWAII

By: /s/ Rayni M. Nakamura-Watanabe

RAYNI M. NAKAMURA-WATANABE, *pro hac vice*
Hawaii Bar No. 9032-0
RNakamur@dcca.hawaii.gov
PATRICIA J. MOY
Hawaii Bar No. 5845-0
PMoy@dcca.hawaii.gov

15

Attorneys for Plaintiff
STATE OF HAWAII
SECURITIES ENFORCEMENT BRANCH
335 Merchant Street, Suite 205
Honolulu, Hawaii 96813
Telephone: (808) 586-2740
Fax: (808) 586-3977


FOR THE STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL
STATE OF IDAHO
LAWRENCE G. WASDEN

By: /s/ Loren Messerly

LOREN MESSERLY, *pro hac vice*
Deputy Attorney General
loren.messerly@finance.idaho.gov
Idaho Bar No. 7434

Attorney for Plaintiff
STATE OF IDAHO
IDAHO DEPARTMENT OF FINANCE
P.O. Box 83720
Boise, ID 83720-0031
Telephone: (208) 332-8093
Fax: (208) 332-8099


FOR THE STATE OF INDIANA
OFFICE OF THE INDIANA ATTORNEY
GENERAL
Patricia Orloff Erdmann
Chief Counsel of Litigation

By: /s/ Jefferson S. Garn

JEFFERSON S. GARN, *pro hac vice*
Deputy Attorney General
Jefferson.Garn@atg.in.gov
Indiana Bar No. 29921-49

Attorney for Plaintiff
STATE OF INDIANA

16

INDIANA SECURITIES COMMISSIONER
302 W. Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
Fax: (317) 232-7979


FOR THE STATE OF KANSAS

By: /s/ Thomas E. Knutzen

THOMAS E. KNUTZEN, *pro hac vice*
*Special Assistant Attorney General*
tom.knutzen@ks.gov
Kansas Bar No. 24471

Attorney for Plaintiff
OFFICE OF THE KANSAS SECURITIES
COMMISSIONER
1300 SW Arrowhead Road
Topeka, KS 66604
Telephone: (785) 296-7890
Fax: (785) 296-6872


FOR THE STATE OF KENTUCKY

By: /s/ Gary Stephens

GARY STEPHENS, *pro hac vice*
Gary.stephens@ky.gov
Kentucky Bar No. 87740
CATHERINE FALCONER
Catherine.falconer@ky.gov

Attorneys for Plaintiff
STATE OF KENTUCKY
DEPARTMENT OF FINANCIAL INSTITUITONS
500 Mero St. 2SW19
Frankfort, KY 40601
Telephone: (502) 782-9052
Fax: (502) 573-8787


FOR THE STATE OF MAINE

17

By: /s/ Gregg D. Bernstein

GREGG D. BERNSTEIN, *pro hac vice*
gregg.bernstein@maine.gov
Maine Bar No. 8424

Attorney for Plaintiff
STATE OF MAINE SECURITIES
ADMINISTRATOR
6 State House Station
Augusta, Maine 04333
Telephone: (207) 626-8800
Fax: (207) 626-8828


FOR THE STATE OF MARYLAND

BRIAN E. FROSH
ATTORNEY GENERAL OF THE STATE OF
MARYLAND

By: /s/ Max F. Brauer

MAX F. BRAUER, *pro hac vice*
Assistant Attorney General
mbrauer@oag.state.md.us
Maryland State Does Not Use Bar Numbers

Attorney for Plaintiff
STATE OF MARYLAND EX REL
MARYLAND SECURITIES COMMISSIONER
200 Saint Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6950
Fax: (410) 576-6532


FOR THE PEOPLE OF MICHIGAN

By: /s/ Aaron W. Levin

PEOPLE OF THE STATE OF
MICHIGAN, by DANA NESSEL
ATTORNEY GENERAL

Aaron W. Levin, *pro hac vice*
Assistant Attorney General
levina@michigan.gov
Michigan Bar No. P81310

Attorney for Plaintiff
Michigan Department of Attorney General
525 W. Ottawa Street,
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Fax: (517) 335-7632


FOR THE STATE OF MISSISSIPPI

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By: /s/ James M. Rankin

JAMES M. RANKIN
James.Rankin@ago.ms.gov
Mississippi Bar No. 102332

CRYSTAL UTLEY SECOY
crystal.utley@ago.ms.gov

Attorneys for Plaintiff
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (769) 237-6406
Fax: (601) 359-4231


FOR THE STATE OF NEBRASKA

19

L. JAY BARTEL
Bureau Chief
Legal Services Bureau


By: /s/ Joshua R. Shasserre

JOSHUA R. SHASSERRE, *pro hac vice*
Assistant Attorney General
Nebraska Bar No. 23885
joshua.shasserre@nebraska.gov

Attorney for Plaintiff
STATE OF NEBRASKA
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-3888
Fax: (402) 471-3297


FOR THE STATE OF NEVADA

By: /s/ Erin M. Houston

ERIN M. HOUSTON, *pro hac vice*
Deputy Secretary of State, Securities Administrator
Nevada Bar No. 11814
ehouston@sos.nv.gov

Attorney for Plaintiff
STATE OF NEVADA
Office of the Nevada Secretary of State
Securities Division
2250 North Las Vegas Blvd., Suite 400
North Las Vegas, NV 89030
Telephone: (702) 486-2440
Fax: (702) 486-2452


FOR THE STATE OF NEW MEXICO

By: /s/ Alissa N. Berger

ALISSA N. BERGER, *pro hac vice*
Securities Enforcement Prosecutor
New Mexico Securities Division

20

New Mexico Bar No. 21769
Alissa.Berger@state.nm.us

Attorney for Plaintiff
STATE OF NEW MEXICO
New Mexico Securities Division
New Mexico Regulation and Licensing Department
5500 San Antonio Rd NE
Albuquerque, New Mexico 87109
Telephone: (505) 503-5987
Fax: (505) 222-9848


FOR THE STATE OF NEW YORK
LETITIA JAMES
ATTORNEY GENERAL OF THE STATE OF
NEW YORK

By: /s/ Tatyana Trakht

TATYANA "TANYA" TRAKHT, *pro hac vice*
Assistant Attorney General
tanya.trakht@ag.ny.gov
New York State Does Not Use Bar Numbers
PETER POPE
Chief, Investor Protection Bureau
peter.pope@ag.ny.gov

Attorneys for Plaintiff
ATTORNEY GENERAL FOR THE STATE OF
NEW YORK
28 Liberty Street, 21st Floor
New York, New York 10005
Telephone: (212) 416-8457
Fax: (212) 416-8816


FOR THE STATE OF OKLAHOMA

By: /s/ Robert Fagnant

ROBERT FAGNANT, *pro hac vice*
rfagnant@securities.ok.gov
Oklahoma Bar No. 30548

Attorney for Plaintiff

21

OKLAHOMA DEPARTMENT OF SECURITIES
204 N. Robinson Avenue, Suite 400
Oklahoma City, OK 73102
Telephone: (405) 280-7718
Fax: (405) 280-7742


FOR THE STATE OF SOUTH CAROLINA

By: /s/ Jonathan Williams

JONATHAN WILLIAMS, *pro hac vice*
jwilliams@scag.gov
South Carolina Bar No. 72509

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF ATTORNEY GENERAL
P.O. Box 11549
Columbia, SC 29211
Telephone: (803) 734-7208
Fax: (803) 734-7208


By: /s/ Shannon A. Wiley

SHANNON A. WILEY, *pro hac vice*
swiley@sos.sc.gov
South Carolina Bar No. 69806

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF THE SECRETARY OF STATE
1205 Pendleton Street, Suite 525
Columbia, SC 29201
Telephone: (803) 734-0246
Fax: (803) 734-1661


FOR THE STATE OF SOUTH DAKOTA

By: /s/ Clayton Grueb

CLAYTON GRUEB, *pro hac vice*
South Dakota Bar No. 4642
Clayton.grueb@state.sd.us

22

Attorney for Plaintiff
South Dakota Department of Labor & Regulation,
Division of Insurance
2330 N. Maple Ave, Suite 1
Rapid City, SD 57701
Telephone: (605) 773-3563
Fax: (605) 773-5369


FOR THE STATE OF TENNESSEE
HERBERT H. SLATERY III
Attorney General and Reporter
for the State of Tennessee

By: /s/ James P. Urban

JAMES P. URBAN, *pro hac vice*
Deputy Attorney General
TN B.P.R. No. 033599
james.urban@ag.tn.gov

Office of Tennessee Attorney General
Financial Division
P.O. Box 20207
Nashville, TN 37202-0207
Telephone: (615) 741-3739
Fax: (615) 532-8223

Attorney for Plaintiff
Commissioner of the Tennessee Department of
Commerce and Insurance


FOR THE STATE OF TEXAS
KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

MURTAZA F. SUTARWALLA
Deputy Attorney General for Legal Counsel

23

CYNTHIA A. MORALES
Deputy Division Chief
Financial Litigation and Charitable Trusts Division

By: */s/ Robin Burt*

B. ROBIN BURT
Assistant Attorney General
State Bar No. 24120459

Financial Litigation and Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
Telephone: (512) 936-0562
robin.burt@oag.texas.gov
*Attorneys for Plaintiff the State of Texas*


FOR THE STATE OF WASHINGTON

By: /s/ Stephen Manning

Stephen Manning, *pro hac vice*
stephen.manning@atg.wa.gov
Telephone: (360) 586-3264
Fax: (360) 664-0229

Attorney for Plaintiff
Washington State Department of Financial
Institutions, Securities Division
150 Israel Rd. SW
Tumwater, WA 98501
Telephone: (360) 902-8700
Fax: (360) 902-0524


FOR THE STATE OF WEST VIRGINIA

By: /s/ Michael Nusbaum

MICHAEL NUSBAUM, *pro hac vice*
michael.nusbaum@wvsao.gov
West Virginia Bar No. 12708

Attorney for Plaintiff

24

STATE OF WEST VIRGINIA
WEST VIRGINIA SECURITIES COMMISSION
1900 Kanawha Boulevard, East
Building 1, Room W-100
Charleston, WV 25305
Telephone: (304) 558-2251
Fax: (304) 558-4211

FOR THE STATE OF WISCONSIN
JOSHUA L. KAUL
Attorney General
State of Wisconsin
Wisconsin Department of Justice

By: /s/ Lewis W. Beilin                        

LEWIS W. BEILIN, *pro hac vice*
Assistant Attorney General
Wisconsin Bar No. 1038835
beilinlw@doj.state.wi.us

WISCONSIN DEPARTMENT OF JUSTICE
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-3076
Fax: (608) 266-2250

*Attorneys for Plaintiff State of Wisconsin*

FOR THE IOWA INSURANCE
COMMISSIONER
DOUGLAS M. OMMEN

By: /s/ Adam J. Kenworthy
ADAM KENWORTHY* *pro hac vice*
Iowa Bar No. AT0012137
Enforcement Attorney
adam.kenworthy@iid.iowa.gov

Attorney for Plaintiff
IOWA INSURANCE DIVISION
1963 Bell Ave, Ste 100
Des Moines, IA 50315
Telephone: (515) 654-6562
Fax: (515)-654-6500

25

## <u>CERTIFICATE OF SERVICE</u>

On May 17, 2022, I electronically filed the foregoing PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO RECEIVER'S MOTION FOR "SHOW CAUSE" HEARING TO HOLD DEFENDANTS IN CIVIL CONTEMPT in the above captioned matter using the CM/ECF system and I am relying upon the transmission of the Clerk's Notice of Electronic Filing for service upon all parties in this.

<u>/s/ Christine Ryall</u>