## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, e*t al.* | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| v. | § § | 3:20-CV-2910-L |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § § | |

## REPORT REGARDING OBJECTIONS TO
## RECEIVER'S CLAIMS REPORT

Kelly M. Crawford (the "Receiver") respectfully submits this report as required by the *Order Establishing Claims Adjudication Process ("Claims Order")* [Dkt. 227][1], and in support, respectfully shows the Court as follows:

---

[1] The Court ordered that the Receiver file his Report by October 29, 2021, but on October 5, 2021 the Court entered an Order staying all proceedings in the case and the filing of new pleadings without leave of Court [Dkt. 332]. The Court lifted the stay on May 12, 2022. [Dkt. 380].

# I.
## CLAIMS ADJUDICATION PROCEDURE

Pursuant to the *Claims Order*, on July 30, 2021 the Receiver filed his Claims Report containing his recommendation of the claim amount held by each investor and creditor. The Receiver also posted a copy of the Claims Report on the receivership website. A copy of the Claims Report was served by mail upon each investor and creditor with a letter informing the recipient that the investor or creditor had the opportunity to file an objection with the Receiver if the investor or creditor did not agree with the Receiver's recommendation regarding the investor's or creditor's claim. The investors and creditors were further advised that September 30, 2021 was the deadline for filing with the Receiver[2] objections to the Receiver's Claims Report.

Of the more than 1,043 metals investors, 15 non-metals investors, and 29 creditors included in the Receiver's Claims Report, the Receiver received a number of objections to his Claims Report from investors and 1 objection from a creditor. The Receiver resolved all but 8 of the objections. These objections are hereby submitted to the Court for resolution.

The Receiver also amended 49 claims based on additional information provided by investors. In addition, the Receiver received 39 new late-filed claims from investors who either were unaware of the receivership or the deadline to file a claim, or had extenuating circumstances such as health conditions, that prohibited them from timely filing the claim. Because the claims have not been approved by the Court and no distributions have been made to claimants, the Receiver contends there is no prejudice to the receivership estate in allowing these late claims. All but 3 of the late claims are approved by the Receiver in the amounts submitted by the investors. The remaining 3 late claims did not incur a loss so their claims are valued at $0.00.

---

[2] The Court ordered that all objections were to be filed with the Receiver and not the Court. *See Section 3.3 of Order Establishing Claims Adjudication Process,*

The Receiver's revised claims report, which incorporates new claims submitted, as well amended and/or corrected claims based on new information provided by investors, and the revised claims based on objections resolved by the Receiver, is included in the Appendix as **Exhibit 1** (the "Revised Claims Report").  (App. pp. 4 - 40).  By this Report, the Receiver requests the Court to approve the Revised Claims Report.

## II.
## AUTHORITIES

Fairness provides the overriding principle for evaluation of every issue arising in the supervision of an equitable receivership. *See U.S. v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996)(district court supervising equitable receivership and evaluating methods of distribution to victims of Ponzi scheme is "court of conscience")(internal quotation omitted).   A supervising court has extremely broad discretion and is merely required to do "what is right under the circumstances".  *Id.; see also, CFTC v. Topworth Int'l, Ltd.,* 205 F.3d 1107, 1115 (9th Cir. 2000)(upholding *pro rata* distribution plan despite one investor's claim to tracing specific gains and losses attributable to the trading on his investments).  Accordingly, given the dearth of cases addressing the precise issues presented below, the Receiver relies on fairness, common sense, and the "Court's conscience" in submitting the following objections for resolution.

## III.
## RESPONSE TO OBJECTIONS

A.    **Investor Objections**

1.    **Cathy Sue Scoggin (Claim No. 00139)**

Ms. Scoggins purchased metals from the Defendants for $91,490.25.   The Receiver recommended that Ms. Scoggins' claim be approved for $32,368.05, which represents the difference between the total amount she invested and the fair market value of the metals she

received, calculated as of the date of the receivership, September 22, 2020.    A copy of the Receiver's claim calculation is included in the Appendix as **Exhibit 2** (App. p. 44).  Ms. Scoggins objects to her claim being reduced by the fair market value of the metals she received and wants her claim approved in the total amount she paid to purchase the coins.  A copy of her objection is included in the Appendix as **Exhibit 2** (App. pp. 42 - 43).

The Receiver contends Ms. Scoggins' objection should be overruled because the Receiver's claim recommendation is, consistent with the Receiver's recommendation for other metals investors, based on the difference between the amount paid by the investor for the metals and the fair market value of the metals they received, calculated by an expert as of the date of the receivership.  If Ms. Scoggins is allowed a claim for the total amount she paid for the metals, without regard for the fair market value of the metals she received from the Defendants, Ms. Scoggins would be unjustly enriched.

    2.    **Joan Lower (Claim No. 00567)**

Ms. Lower purchased metals from the Defendants for $425,884.    The Receiver recommended that Ms. Lower's claim be approved for $186,444.90, which represents the difference between the total amount she invested and the fair market value of the metals she received, calculated as of the date of the receivership, September 22, 2020.  A copy of the Receiver's claim calculation is included in the Appendix as **Exhibit 3** (App. p. 48).  Ms. Lower objects to the Receiver offsetting her losses in the purchase of certain metals with gains in the purchase of other metals.  Specifically, she complains that her loss of value ($206,004.90) with respect to her purchase of 14,874 ½ oz. Silver-2019 Royal Canadian Mint Polar Bear Coins should not have been offset by the gain ($7,120) in value of the 800 1 oz. Silver Round she purchased; the gain ($5,720) in value of the 1 oz. Silver-Royal Canadian Mint Maple Leaf Coin; and the gain

($6,720) in value of the 80 10 oz. Silver Bars she purchased.  A copy of her objection is included in the Appendix as **Exhibit 3** (App. pp. 46 - 47).

The Receiver contends Ms. Lower's objection should be overruled because the Receiver's claim recommendation is, consistent with the Receiver's recommendation for other metals investors, based on the difference between the amount paid by the investor for the metals and the fair market value of the metals they received, calculated by an expert as of the date of the receivership.  In order to provide uniformity in the treatment of all metals investors, the Receiver used the date of the receivership for determining the fair market value of the metals.  Moreover, to the extend metals increased in value from the date of purchase, that gain should offset the loss an investor suffered with respect to the purchase of other metals.  The purpose of calculating the claim is to determine the total loss suffered by the investor in purchasing metals from the Defendants, which necessarily requires offsetting any loss by gains that may have been realized by an investor from the purchase.

### 3.      **Leslie Parakowski (Claim No. 00738)**

Ms. Parakowski purchased metals from the Defendants for $40,244.73.  The Receiver recommended that Ms. Parakowski's claim be approved for $17,285.62, which represents the difference between the total amount she invested and the fair market value of the metals she received, calculated as of the date of the receivership, September 22, 2020.   A copy of the Receiver's claim calculation is included in the Appendix as **Exhibit 4** (App. p. 51).     Ms. Parakowski objects to her claim being reduced by the fair market value of the metals she received and wants her claim approved in the total amount she paid to purchase the coins.  A copy of her objection is included in the Appendix as **Exhibit 4** (App. p. 50).

The Receiver contends Ms. Parakowski's objection should be overruled because the Receiver's claim recommendation is, consistent with the Receiver's recommendation for other metals investors, based on the difference between the amount paid by the investor for the metals and the fair market value of the metals they received, calculated by an expert as of the date of the receivership.  If Ms. Parakowski is allowed a claim for the total amount she paid for the metals, without regard for the fair market value of the metals she received from the Defendants, Ms. Parakowski would be unjustly enriched.

4.      **Michelle Kimura (Claim No. 00899)**

Ms. Kimura purchased metals from the Defendants for $31,794.10.   The Receiver recommended that Ms. Kimura's claim be approved for $12,169.04, which represents the difference between the total amount she invested and the fair market value of the metals she received, calculated as of the date of the receivership, September 22, 2020.   A copy of the Receiver's claim calculation is included in the Appendix as **Exhibit 5** (App. p. 55).  Ms. Kimura objects to her claim being reduced by the fair market value of the metals she received and wants her claim approved in the total amount she paid to purchase the coins.  In addition, she wants her claim to include the lost opportunity cost for the difference between the amount she paid for the metals and the fair market value of the metals on the date of purchase.  She argues that she lost the opportunity to invest the difference in the value of what she paid and the value of the metals.  A copy of her objection is included in the Appendix as **Exhibit 5** (App. pp. 53 - 54).

The Receiver contends Ms. Kimura's objection should be overruled because the Receiver's claim recommendation is, consistent with the Receiver's recommendation for other metals investors, based on the difference between the amount paid by the investor for the metals and fair market value of the metals they received, calculated by an expert as of the date of the

receivership. If Ms. Kimura is allowed a claim for the total amount she paid for the metals, without regard for the fair market value of the metals she received from the Defendants, Ms. Kimura would be unjustly enriched. In addition, every investor who lost money in the purchase of metals from the Defendants could argue they had lost opportunity costs. There is no means of putting a value on such lost opportunity costs. The Receiver's claims recommendations are based on actual dollars paid for the metals and the estimated fair market value of the metals themselves, without regard to any consequential damages that may have been incurred by investors. Indeed, based on the amount of receivership assets recovered to date, it is highly unlikely there will be sufficient assets to fully pay the actual damages claims of the investors as set forth in the Receiver's claim recommendation and thus there is no reason to consider consequential damages.

### 5. Sheila Altman (Claim No. 01189)

Ms. Altman purchased metals from the Defendants for $399,991.32. The Receiver recommended that Ms. Altman's claim be approved for $161,244.79, which represents the difference between the total amount she invested and the fair market value of the metals she received, calculated as of the date of the receivership, September 22, 2020. A copy of the Receiver's claim calculation is included in the Appendix as **Exhibit 6** (App. p. 60). Ms. Altman objects to her claim being reduced by the fair market value of the metals she received and wants her claim approved in the total amount she paid to purchase the coins. A copy of her objection is included in the Appendix as **Exhibit 6** (App. pp. 57 - 59).

The Receiver contends Ms. Altman's objection should be overruled because the Receiver's claim recommendation is, consistent with the Receiver's recommendation for other metals investors, based on the difference between the amount paid by the investor for the metals and the fair market value of the metals they received, calculated by an expert as of the date of the receivership. If Ms. Altman is allowed a claim for the total amount she paid for the metals, without

regard for the fair market value of the metals she received from the Defendants, Ms. Altman would be unjustly enriched.

### 6.   Wayne Baker (Claim No. 01603)

Mr. Baker purchased metals from the Defendants for $397,845.36.   The Receiver recommended that Mr. Baker's claim be approved for $197,181.89, which represents the difference between the total amount he invested and the fair market value of the metals he received, calculated as of the date of the receivership, September 22, 2020.   A copy of the Receiver's claim calculation is included in the Appendix as **Exhibit 7** (App. p. 74).   Mr. Baker objects to his claim on the basis that Mr. Baker did not receive from the Defendants all of the metals he ordered, and Mr. Baker lost the appreciation value of the metals never received.   Specifically, Mr. Baker argues that he ordered 22,823 of silver coins that were never delivered and that such coins, if they had been delivered as promised, would have had a value on September 22, 2020 of $277,299.   In addition, Mr. Baker argues that he ordered 641 gold coins that were never delivered and that such coins, if they had been delivered as promised, would have had a value on September 22, 2020 of $127,429.54.   Thus, Mr. Baker contends his Claim amount should be based on the fair market value of the metals he did not receive, and increased to $351,669.97.   A copy of his objection is included in the Appendix as **Exhibit 7** (App. pp. 62 - 73).

The Receiver contends Mr. Baker's objection should be overruled because the Receiver's claim recommendation is, consistent with the Receiver's recommendation for other metals investors, based on the difference between the amount paid by the investor for the metals and the fair market value of the metals they received, calculated by an expert as of the date of the receivership.   Mr. Baker was given full credit for the amount of money he paid to the Defendants, regardless of the number of coins he received from the Defendants.   In addition, Mr. Baker's cash investment was reduced by the fair market value of the coins he actually received.   His claim was

not reduced by coins he ordered and did not receive.  In order to maintain the integrity of the claims process, the Receiver's claims recommendations are limited to actual damages only and without regard to any consequential damages that may have been incurred by investors, such as lost appreciation on coins that were promised and never delivered. Indeed, based on the amount of receivership assets recovered to date, it is highly unlikely there will be sufficient assets to fully pay the actual damages claims of the investors as set forth in the Receiver's claim recommendation. Therefore, including consequential damages in the claims recommendation is not justified.

The objecting investors are being treated the same as the other investors with respect to the Receiver's claim recommendation – the claim is based solely on real dollars invested, less the fair market value of the metals received as of the date of the receivership.

### 7.    John Snider (Claim No. 01706)

Mr. Snider purchased metals from the Defendants for $36,555.   The Receiver recommended that Mr. Snider's claim be approved for $9,240, which represents the difference between the total amount he invested and the fair market value of the metals he received, calculated as of the date of the receivership, September 22, 2020.   A copy of the Receiver's claim calculation is included in the Appendix as **Exhibit 8** (App. p. 84).  Mr. Snider objects to the Receiver using the date of the receivership, September 22, 2020, for determining the fair market value of the metals he purchased, and contends the fair market value of the metals should be determined based on the date he purchased the metals.  Specifically, he complains that his loss of value ($10,230) with respect to 600 1.5 oz Canadian Polar Bear and Cub Silver coins was offset by the gain ($990) in value of the 150 1 oz. Silver Canadian Maple Leaf Silver Coins he purchased.  He purchased those coins for $17.70 a unit price and as of the date of the receivership, September 22, 2020, the

fair market value of that coin increased to $24.30 per unit.  A copy of his objection is included in the Appendix as **Exhibit 8** (App. pp. 76 - 83).

The Receiver contends Mr. Snider's objection should be overruled because the Receiver's claim recommendation is, consistent with the Receiver's recommendation for other metals investors, based on the difference between the amount paid by the investor for the metals and the fair market value of the metals they received, calculated by an expert as of the date of the receivership.  In order to provide uniformity in the treatment of all metals investors, the Receiver used the date of the receivership for determining the fair market value of the metals.  Moreover, to the extent metals increased in value from the date of purchase, that gain should offset the loss an investor suffered with respect to the purchase of other metals.  The purpose of calculating the claim is to determine the total loss suffered by the investor in purchasing metals from the Defendants, which necessarily requires offsetting any loss by gains that may have been realized by an investor from the purchase.

**B.      Creditor Objection**

Only one creditor objected to the Receiver's claim recommendation.  Daniel B. Spitzer, of the Law Offices of Daniel B. Spitzer, a former attorney for the Defendants, C-09, filed an objection to the Receiver's Claims Report with the Court [Docket No. 318].  Mr. Spitzer's filing of his objection with the Court violated the *Order Establishing Claims Adjudication Process.*  Section 3.3 of that Order required all objections to be filed with the Receiver and prohibited the filing of objections with the Court.

Mr. Spitzer submitted an unsecured creditor claim in the amount of $213,413 for legal services rendered to the Defendants.  The Receiver recommended that his claim be disallowed because the claim submitted by Mr. Spitzer included only past due balances without any description of the services provided by Mr. Spitzer to the Defendants.  Indeed, the Proof of Creditor

Claim form[3] provided to Mr. Spitzer specifically requested creditors to submit all documents that support the claim. Instead of contacting the Receiver and providing copies of the unpaid invoices for the Receiver to consider, Mr. Spitzer filed his objection with the Court and for the first time included copies of the unpaid invoices in support of his claim. Because Mr. Spitzer's Objection, Declaration, and attached Exhibits, consisting of 454 pages, are already on the docket before the Court [Docket No. 318], only the Objection and Declaration of Daniel B. Spitzer is included in **Exhibit 9** (App. pp. 85 - 101). Having seen the invoices from Mr. Spitzer for the first time, the Receiver recommends approval of the claim filed by Mr. Spitzer on behalf of The Law Offices of Daniel B. Spitzer in the amount of $182,970.40, broken down as follows:

| | |
|---|---|
| Chase/Benavidez Matter: | $113,908.15 |
| General Business Matter: | $5,830.00 |
| Always Matter: | $6,300.00 |
| TMTE/Benavidez Matter: | $8,060.22 |
| Kirkpatrick Matter: | $29,851.18 |
| Spellane Matter: | $12,114.83 |
| Batchelor Matter: | $2,700.00 |
| Henderson Matter: | $2,025.00 |
| Herr Matter: | $2,181.02 |

The Receiver objects to the claim to the extent it seeks payment of finance charges shown on the invoices, and for legal services rendered after September 27, 2020. Mr. Spitzer's invoices reflect that he reviewed this Court's *SRO* on September 27, 2020, and indeed Mr. Spitzer billed the

---

[3] Instruction 9 in the Proof of Creditor Claim form specifically instructed claimants as follows: "You must attach to this Proof of Creditor Claim copies of all documents that show the claim is owed, or if documents are not available, you must attach an explanation as to why documents are not available."

Defendants for his review of the *SRO*. From such review, it would be apparent to Mr. Spitzer that all actions against the Defendants were stayed and that the Receiver was in control of the Defendant entities. Mr. Spitzer never sought authority from the Receiver to perform any legal services on behalf of any of the Defendants, and nor did Mr. Spitzer provide the Receiver with any work product he performed after September 27, 2020 for the Defendants or advise the Receiver of any of his actions purportedly taken on behalf of the Defendants. Accordingly, there is no basis to compensate Mr. Spitzer for any legal services rendered after September 27, 2020, when Mr. Spitzer admits he knew of and reviewed the *SRO*.

The Receiver continues to recommend that the claim of Mr. Spitzer on behalf of The Law Offices of Daniel Spitzer be subordinated to the claims of the metals and non-metal investors. In his objection, Mr. Spitzer argues there is no basis for the Receiver to recommend subordination of his claim; that he was unaware of any wrongdoing by the Defendants; that he rendered legal services in good faith to the Defendants; that the Receiver is acting as the prosecutor, judge, and executioner by recommending subordination of the claim; and that Mr. Spitzer is being denied due process.

It is up to this Court, not the Receiver, as to whether Mr. Spitzer's claim is subordinated to the claims of the investors. The Receiver is simply making his recommendation to the Court as ordered by the Court. Moreover, Mr. Spitzer is not being deprived of due process because he has been given the opportunity to make his objection to the recommendation regarding his claim, and he will have an opportunity to present his arguments to the Court at a hearing on the claims recommendations.

The Receiver's recommendation that the claim of an unsecured creditor should be subordinated to the claims of the investors is based on the treatment of claims by a number of

courts in federal equity receiverships. *See United States Sec. & Exch. Comm'n v. Harris*, 2016 WL 1555773, at *4 (N.D. Tex. Apr. 18, 2016); *U.S. Commodity Futures Trading Comm'n v. PrivateFX Glob. One*, 778 F. Supp. 2d 775, 786 (S.D. Tex. 2011) (agreeing with the receiver that "courts regularly grant defrauded investors a higher priority than defrauded creditors"); *Quilling v. Trade Partners, Inc.*, 2006 WL 3694629, at *1 (W.D. Mich. Dec. 14, 2006)("As an equitable matter in receivership proceedings arising out of a securities fraud, the class of fraud victims takes priority over the class of general creditors with respect to proceeds traceable to the fraud."); *S.E.C. v. HKW Trading LLC*, 2009 WL 2499146, at *3 (M.D. Fla. Aug. 14, 2009) ("Payment to claimants whose property was unlawfully taken from them is given a higher priority than payment to the general creditors." Citing Ralph Ewing Clark, *Treatise on the Law and Practice of Receivers* (3d ed. 1959)); *see also Commodity Futures Trading Comm'n v. Topworth Int'l, Ltd.*, 205 F.3d 1107, 1110 (9th Cir. 1999), *as amended* (Mar. 23, 2000) (holding that it was within the district court's broad discretion to adopt the Receiver's plan proposing three classes of creditors, "first, the Receiver and fees associated with the receivership; second, the allowed claims of public investors in the companies; and third, the claims of all other creditors.")  Consistent with the foregoing case law, for an equitable matter in receivership arising out of a fraud, the class of fraud victims should take priority over the class of general creditors.

Finally, Mr. Spitzer objects to the Receiver's methodology for calculating the claims of metal investors and contests the jurisdiction of the Court under the Commodities Exchange Act. Since Mr. Spitzer's claim is not based on his investment in metals, he lacks standing to object to the Receiver's methodology for calculating claims.  Indeed, none of the metals investors objected to the Receiver's methodology based on Mr. Spitzer's arguments.  Mr. Spitzer contends the Receiver should have determined from every investor who received metals whether they still

owned the metals and if not the price received by the investor from the sale of metals. This suggested methodology is not tenable in a commodities market that changes hourly. By using the same date to value the metals (the date of the receivership), there is uniformity in the treatment of the claims of metals investors.

With respect to jurisdiction, there are a number of grounds for subject matter jurisdiction of this case to belong in this Court, including, but not limited to the Commodities Exchange Act, 7 U.S.C., §1 et seq. ("CEA"). Indeed, the grounds for jurisdiction are set forth in the *Consent Preliminary Injunction* agreed to by the Defendants and their counsel. [Docket No. 164]. The Plaintiff U.S. Commodity Futures Trading Commission explains in great detail the basis of jurisdiction under the CEA in the *Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Modify Preliminary Injunction*. [Docket No. 238, pp. 18-26].

The Receiver requests the Court to overrule the objection of Mr. Spitzer on behalf of The Law Offices of Daniel Spitzer, and approve the Receiver's recommendation that the claim be allowed in the amount of $182,970.40, but subordinated to the claims of the investors.

## IV.
### PRAYER

WHEREFORE, PREMISES CONSIDERED, the Receiver respectfully requests that, after hearing, the Court overrule the objections to his Claims Report, enter an order approving the *Receiver's Revised Claims Report*, and grant the Receiver such other and further relief to which he may show himself justly entitled.

Respectfully submitted, May 26, 2022.

Respectfully submitted,

**SCHEEF & STONE, L.L.P.**

By:     */s/ Kelly M. Crawford*
Kelly M. Crawford
State Bar No. 05030700
500 N. Akard Street, Suite 2700
Dallas, Texas 75201
Telephone: (214) 706-4200
Telecopier: (214) 706-4242

**RECEIVER**
**KELLY M. CRAWFORD**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on May 26, 2022, I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.   The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.  In addition, on May 26, 2022 I served a copy of this Report upon each of the 7 investors and 1 creditor who filed objections with the Receiver that could not be resolved and that are the subject of the Receiver' report to the Court, by first class mail addressed to their last known address, and posted this Report on the website maintained by the Receiver at www.metalsandbarrickcapitalreceivership.com.   The Receiver's Revised Claims Report will be sent to all investors, non-metal investors, and creditors by first class mail or electronic mail within the next five (5) business days.

                                            /s/  Kelly M. Crawford
                                            KELLY M. CRAWFORD