## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.* §§§§§ | |
| Plaintiffs, §§ | |
| v. §§ | CIVIL ACTION NO. 3:20-CV-2910-X |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, §§§§§§ | |
| Defendants, §§ | |
| TOWER EQUITY, LLC, §§ | |
| Relief Defendant. §§ | |

### SEVENTH REPORT OF THE RECEIVER AND STATUS OF PENDING MATTERS

Kelly M. Crawford, as the court-appointed Receiver ("Receiver"), submits his seventh report pursuant to this Court's *Statutory Restraining Order, Order for an Accounting, Order for Appointment of Receiver, Order for Expedited Discovery, and Other Equitable Relief and Order to Show Cause Regarding Preliminary Injunction* [Doc. 16] (the *"SRO"*)[1].

---

[1] The *SRO* was continued in force by Consent Orders entered by the Court regarding the Defendant entities and the individual Defendants Asher and Batashvili [Docs. 164, 165]. The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

# I.

## SUMMARY AND STATUS OF THE CASE

On June 23, 2022, this case was reassigned to United States District Judge Brantley Starr.

### A. The Claims of the Parties

On September 22, 2020, the Plaintiffs Commodity Futures Trading Commission ("CFTC") and 30 States filed their Complaint against the Defendants.[2] [Doc. 2]. In the Complaint, the Plaintiffs allege that from September 2017 through September 22, 2020 the Defendants engaged in a scheme to defraud at least 1,600 persons throughout the United States into purchasing gold and silver bullion.[3] The Plaintiffs claim the Defendants preyed on persons between 60 and 90 years of age and swindled them out of their retirement funds by charging them fraudulent prices to purchase precious metals bullion.[4] In particular, Plaintiffs contend the Defendants targeted politically conservative and Christian investors.[5] The Plaintiffs assert claims against the Defendants for violations of the Commodity Exchange Act and various State laws, including financial exploitation of the elderly.[6]

On October 22, 2020, Defendants Lucas Asher and Simon Batashvili each filed an Answer to the Complaint [Docs. 167, 168]. In the Answers, the Defendants Asher and Batashvili, represented by counsel of their choice[7], deny the Plaintiffs' allegations. The Defendants did not assert any affirmative defenses to the Plaintiffs' claims.

---

[2] This is the largest joint regulatory action ever filed by the CFTC. Press Release Number 8254-20 at https://www.cftc.gov/PressRoom/PressReleases/8254-20.
[3] Complaint, ¶ 1.
[4] *Id at* ¶ 4.
[5] *Id. at* ¶ 31.
[6] *Id. at* ¶¶ 40-331, Courts I through XXX.
[7] The individual defendants were represented by Arnold Spencer.

## B. **The Injunction and Receivership Order**

When the Plaintiffs filed their Complaint on September 22, 2020, they also sought and obtained on an *ex parte* basis from the Court, the SRO [Doc. 16]. The *SRO* enjoined certain activities of the Defendants, placed the assets of the Defendants in receivership, appointed the Receiver to serve as an agent of the Court,[8] and vested the Receiver with certain powers and responsibilities in carrying out the Court's mandate.[9]  In the *SRO*, the Receiver was directed to "[a]ssume full control of the Receivership Defendants by removing Asher or Batashvili, and any officer….from control and management of the affairs of the Receivership Defendants as the Temporary Receiver deems appropriate." *SRO, ¶31a.*

On October 14, 2020, the Court entered a *Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili* that was agreed to by Defendants Asher and Batashvili, and their counsel.  [Doc. 165](the "*Individual Defendants' Consent Order*").

---

[8] The receiver is an agent of the appointing court, and answerable to the court. *Clark v. Clark,* 58 U.S. 31, 331 (1855)(a receiver is neither plaintiff nor defendant, but instead, acts as the court's agent with respect to the administration of property).

[9] The appointment of a receiver is an equitable remedy and thus, the parameters of the order appointing the receiver  and the administration of a receivership are subject to a district court's discretion. *SEC v. Safety Fin. Service, Inc.,* 674 F.2d 368, 372 (5th Cir. 1982)("Any action by a trial court supervising an equity receivership is committed to his sound discretion and will not be disturbed unless there is a clear showing of abuse.").  In this instance, paragraph 30 of the SRO appointed the Receiver:

> *"with the full powers of an equity receiver for Defendants and Relief Defendant and their affiliates or subsidiaries owned or controlled by Defendants or Relief Defendant (hereinafter referred to as "Receivership Defendants"), and of all records, and all funds, properties, premises, accounts, income, now or hereafter due or owing to the Receivership Defendants, and other assets directly or indirectly owned, beneficially or otherwise, by the Receivership Defendants, (hereinafter the "Receivership Estate")."*

On October 14, 2020, the Court also entered a Consent Order of Preliminary Injunction and Other Equitable Relief Against TMTE, Inc. a/k/a Metals.com, Chase Metals, Inc., Chase Metals, LLC, Barrick Capital, Inc. and Relief Defendant Tower Equity, LLC that was agreed to by the Receiver on behalf of the entities. [Doc. 164](the "*Entity Defendants' Consent Order*"). Pursuant to the *Individual Defendants' Consent Order* and the *Entity Defendants' Consent Order* the *SRO* and the injunction and receivership created by the *SRO* remain in full force and effect.[10]

On February 25, 2021, the Court filed the *Receiver's Motion to Identify Certain Entities in Receivership* [Doc. 226]. On March 22, 2021, the Court entered an *Order Granting Receiver's Motion to Identify Certain Entities in Receivership* [Doc. 230] and made 30 additional entities owned and/or controlled by Defendants Asher and Batashvili subject to the receivership estate as "Receivership Defendants" subject to the *SRO* and the *Consent Orders*. A list of those entities is attached hereto as **Exhibit A**.

**C.   Status of the Case**

The Court, *sua sponte,* stayed the entire case for more than 7 months beginning on October 5, 2021 [Doc. 322]. The Court lifted the stay on May 12, 2021 [Doc. 380]. To date a scheduling order has not been entered in the case. On June 17, 2022, the parties filed a Joint Status Report. [Doc. 427]. In addition, the parties submitted to the Court a proposed Confidentiality and Protective Order [Doc. 440] that was entered by the Court on July 14, 2022 [Doc. 445]. A list of the currently pending matters before the Court is provided in Section III below.

---

[10] Paragraph 21 of the Individual Defendants' Consent Order, and paragraph 20 of the Entity Defendants' Consent Order.

## II.

## ACTIVITIES OF THE RECEIVER

The activities of the Receiver beginning with his appointment on September 22, 2020 and continuing through June 5, 2022 are summarized in the following reports filed with the Court:

- The Receiver's Preliminary Report filed on November 10, 2020 [Doc. 181];

- The Receiver's Second Status Report filed on January 5, 2021 [Doc. 217];

- The Receiver's Third Status Report filed on April 13, 2021 [Doc. 233];

- The Receiver's Fourth Status Report filed on June 25, 2021 [Doc. 272];

- The Receiver's Fifth Status Report filed on September 13, 2021 [Doc. 305]; and

- The Receiver's Sixth Status Report filed on June 9, 2022 [Doc. 420].

### A. Seizure and Liquidation of Defendants' Assets

Pursuant to his duties under the *SRO*, the Receiver took possession and control of the Defendants' assets discovered by the Receiver.[11]   On December 9, 2020, the Court entered a *Consent Order Governing the Administration of the Receivership, Procedures Governing the Sale or Abandonment of Personal Property, Notice of Intended Sale, Disposition of Various Items and Fee Application Procedures* (the "*Consent Order for Administration of the Receivership*") [Doc. 213].[12] In the *Consent Order for Administration of the Receivership*, Defendants Asher and Batashvili agreed to the procedures for the Receiver to sell real and personal property of the receivership estate, with

---

[11] The majority of the assets were identified in the first 30 days of the receivership as outlined in the Receiver's Preliminary Report filed on November 10, 2020 [Doc. 181].

[12] "[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy,* 803 F.2d 1034, 1038 (9th Cir. 1986).   Accordingly, "reasonable procedures instituted by the district court that serve [these] purpose[s]" are generally upheld. *Id.*

the exception that their personal property (other than vehicles) would not be sold until entry of a final judgment against Defendant Asher or Batashvili.

The Receiver's Status Reports detail the assets recovered by the Receiver.  These assets include 17 houses in Philadelphia, Relief Defendant Tower Equity, LLC purchased for investment purposes.  After notice and hearing, and in the absence of any objection from the Defendants, the Court authorized the Receiver to sell 6 of the properties to date.

The liquidation of assets, as approved by the Court and that occurred without objection of the Defendants, is for the purpose of having such monies ready for disbursement as the Court may further order.  The balance in the receivership account as of July 21, 2022, is $9,822,440.  No disbursement of monies to investors will occur unless and until the Court enters an order authorizing such disbursement.

**B.  Determining the Claims of the Investors and Creditors**

On March 2, 2021, the Court entered an *Order Establishing Claims Adjudication Process* [Doc. 227] (the "*Claims Order*").  The *Claims Order* set forth the procedures for the Receiver to follow in obtaining claims from investors and creditors of the Defendants, and adjudicating such claim.  The *Claims Order* set a bar date of April 30, 2021, for claims to be mailed to the Receiver. Pursuant to the *Claims Order,* on March 12-14, 2021, the Receiver published in *USA Today* a Notice to Claimants in the Receivership of their right to file a claim in the Receivership and the bar date of April 30, 2021.  The Receiver continued to obtain information from investors to build a database of contact information for the investors, the amount paid to the Defendants, and the metals purchased. In addition, the Receiver prepared a database of non-metals investors and a database of creditors. The Receiver mailed and/or emailed claim confirmation forms to 1,674 investors in its database of metals purchasers; mailed and/or emailed non-metals claim forms to 28 investors and 400 other possible investors; and mailed and/or emailed creditor proof of claim forms to 109 creditors.

To keep investors and creditors updated with developments in the Receivership and answer questions regarding the claims process, the Receiver maintains a website, www.metalsandbarrickcapitalreceivership.com. The Receiver posted on the website answers to a list of frequently asked questions regarding the claims process.

Because most of the investors are elderly and communication was by mail, which often times was very slow or sent to an incorrect address, the Receiver requested the Court to extend the bar date for filing claims from April 30, 2021 until June 15, 2021[13]. On May 7, 2021, the Court granted the Receiver's motion and extended the bar date as well as the other deadlines that are part of the claims process. [Doc. 248].

As of the bar date, the Receiver received 1,003 claims of metals investors, 14 claims of non-metal investors, and 29 proofs of claim from creditors. After the bar date, the Receiver received a number of claims the Receiver classified as "untimely".

The Receiver analyzed the claims and made his recommendation regarding the claims in a *Claims Report* filed on July 30, 2021 [Doc. 290]. The Receiver recommended approval of timely filed claims of metals investors totaling $63,407,530.21. The Receiver also recommended approval of non-timely filed claims of metals investors totaling $499,089.72. In addition, the Receiver recommended approval of non-metal claims totaling $4,323,849. Based on the foregoing, the Receiver's total recommended claims for metal (timely and untimely) investors and non-metal investors was $68,230,468.93. Finally, the Receiver analyzed and made recommendations regarding 29 creditor claims.

Pursuant to the *Claims Order,* on July 30, 2021, the Receiver mailed to each investor a package that included a copy of the *Claims Report*, a letter regarding the Receiver's recommendation

---

[13] *Motion to Extend Deadlines Under the Order Establishing Claims Adjudication Procedures* filed on April 26, 2021 [Doc. 241].

of the investor's claim, and a worksheet showing the calculation of the investor's claim. The Receiver also advised the investors that pursuant to the *Claims Order*, objections to the Receiver's claims recommendations must be mailed to the Receiver by no later than September 30, 2021.

The Receiver received a number of objections to his claims report from investors and a single objection from a creditor. The Receiver resolved all but seven of the investor objections and the single creditor objection. Pursuant to the *Claims Order*, as amended, the deadline for the Receiver to file his report regarding the objections was October 29, 2021. However, on October 5, 2021, the Court *sua sponte* stayed the case and the activities of the Receiver. [Doc. 321]. The Court lifted the stay on May 12, 2022 [Doc. 380], and the Receiver filed his *Report Regarding Objections to the Receiver's Claims Report* on May 26, 2022 [Doc. 405].

In his Report the Receiver included a *Revised Claims Report* that recommends to the Court approval of $67,906,550 in claims by 1,043 metals investors and $4,354,449 in claims by 15 non-metals investors. The Receiver provided each of the claimants with a copy of the *Revised Claims Report* and posted the *Revised Claims Report* on the receivership website.

A hearing on the *Report Regarding Objections to the Receiver's Claims Report*, and for the Court to rule on the *Receiver's Revised Claims Report* has not been set.

### C. Enforcing the Defendants' Compliance with the SRO and Consent Orders

#### 1. Contempt by Defendant Asher

The Receiver discovered that Defendants Asher and Batashvili transferred nearly a million dollars in violation of the *SRO*. The Receiver obtained information that after Defendant Asher had knowledge of the *SRO* and the freeze of his assets, Defendant Asher wrongfully transferred $550,000 out of an account at Bank of America he controlled that had not been disclosed to the Receiver. Consequently, on November 23, 2020, the Receiver filed the *Receiver's Emergency Motion for "Show Cause" Hearing to Hold Defendant Lucas Asher in Civil Contempt* [Doc. 195]. The Court

granted the Receiver's Motion and ordered that Defendant Asher appear before the Court on December 4, 2020 and show just cause as to why he should not be held in civil contempt. [Doc. 199]. On December 4, 2020, the Court began an evidentiary hearing, recessed the hearing, and continued the hearing until December 15. On December 15, 2020 the Court entered an *Agreed Order Finding Defendant Lucas Asher in Contempt of This Court's Orders and Continuance of the Show Cause Hearing* [Doc. 216] (the "Agreed Contempt Order"). In the Agreed Contempt Order, Defendant Asher confessed to violating the *SRO* and the Court found him in civil contempt for such violation. The contempt was purged by the return to the receivership of the $550,000 unlawfully transferred by Defendant Asher.

### 2. Contempt by Defendant Batashvili

The Receiver also learned that Defendant Batashvili, with knowledge of the SRO and the freeze of his assets, wrongfully transferred $492,500 out of an account at East West bank he controlled that had not been disclosed to the Receiver. As a result, on May 13, 2021, the Receiver filed the *Receiver's Emergency Motion for "Show Cause" Hearing to Hold Defendant Simon Batashvili in Civil Contempt* [Doc. 250]. On May 12, 2022, the Court granted the Receiver's Motion and ordered that Defendant Batashvili appear for a show cause hearing. [Doc.384]. The $492,500 was returned to the receivership estate and on June 10, 2022, the Receiver informed the Court there was no need to proceed with a contempt hearing. [Doc. 423].

### 3. Contempt by Defendants Asher and Batashvili

The *SRO* requires the Defendants to turn over all assets to the Receiver and not to exercise possession or control over any of the assets. In addition, Section IX, ¶38 of the *Individual Defendants' Consent Order* prohibits Defendants Asher and Batashvili from engaging in any activity related to securities, commodities, or derivatives. The Receiver learned as part of his investigation that prior to the receivership, Retirement Insider, LLC, an entity owned and controlled by the

---

Defendants and placed in receivership, began doing business as "Portfolio Insider" and that the Defendants devoted resources to developing Portfolio Insider, including obtaining the domain name, hiring consultants, developing marketing, and entering into contracts to obtain data. The Receiver discovered that after the receivership and in violation of the *SRO* and the *Individual Defendants' Consent Order*, Defendants Asher and Batashvili continued doing business as "Portfolio Insider" with their friend and business associate Carlos Cruz[14]. Portfolio Insider sold data regarding the trading activity of stock portfolios, which was directly related to securities, commodities, or derivatives – activities Defendants Asher and Batashvili were expressly restricted from engaging in by the Court orders.

As a result of the foregoing, on September 16, 2021, the Receiver filed an *Emergency Motion for Show Cause Hearing to Hold Defendants Lucas Asher and Simon Batashvili in Civil Contempt* [Doc. 311]. On September 16, 2021, the Plaintiffs filed a *Brief and Memorandum in Support of the Receiver's Contempt Motion.* [Doc. 313]. On September 29, 2021, the Court entered an order directing Defendants Lucas Asher and Simon Batashvili to appear before the Court and show cause as to why they should not be held in contempt for their alleged violations of the orders of the Court. [Doc. 319]. Prior to the show cause hearing, the Court *sua sponte* stayed the case. Once the Court lifted the stay, the Court required briefing from the parties regarding the contempt motion, granted the Receiver's Show Cause Motion [Doc. 386] and set the show cause hearing for May 26, 2022. [Doc. 381]. Upon the request of the Defendants, the Court continued the show cause hearing and indicated it would be rest by separate order [Doc. 399]. Thereafter, Judge Lindsay recused himself. Accordingly, the show cause hearing remains unscheduled.

---

[14] Mr. Cruz's company MagicStar Arrow, LLC received more than $20 million from the Defendants prior to the receivership for purportedly providing media buying and lead generation for the Defendants. Mr. Cruz's entities are also funding the legal defense of the Individual Defendants in this action.

### D. Seeking Recovery from Third Parties

Pursuant to his duties, the Receiver is investigating potential fraudulent transfer claims the Receiver may have against third parties. On September 13, 2021, the Receiver filed a lawsuit against 46 former salespersons for the Defendants to recover more than $14.3 million in commissions they received. *See Crawford v. Bleeden, et al;* Case No. 3:21-cv-2181 in the United States District Court for the Northern District of Texas (the "Broker Lawsuit"). Because the fraudulent conveyance claims in the Broker Lawsuit relate to the claims in the instant case between the Plaintiffs and Defendants, the Broker Lawsuit was assigned to Judge Lindsay. On February 10, 2022, Judge Lindsay, *sua sponte*, entered an order dismissing the Broker Lawsuit for lack of subject matter jurisdiction [Doc. 15]. The Receiver filed a *Motion for New Trial* on March 8, 2022 [Doc. 17]. On May 12, 2022, Judge Lindsay vacated the order dismissing the case, found that the Court had subject matter jurisdiction, reinstated the Broker Lawsuit, and dismissed the Motion for New Trial as moot [Doc. 23]. The Court issued a memorandum, finding that the Court has ancillary subject matter jurisdiction; the Receiver has standing to assert the claims against the defendants; and the Broker Lawsuit falls within the parameters of the Receiver's powers. [Doc. 23].

Once Judge Lindsay recused himself from the instant case, he also recused himself from the Broker Lawsuit. Although the Broker Lawsuit is related to this case, it was assigned to Judge Brown and is currently pending before Judge Brown.

### III.

### PENDING MATTERS BEFORE THE COURT

The pending matters before the Court that have not yet been addressed are as follows:

1. A scheduling order in the case has not been entered.

2. A hearing on the *Receiver's Report Regarding Objections to Receiver's Claims Report* [Doc. 405], filed on May 26, 2022, and for consideration of the *Receiver's Revised Claims Report* [Doc. 406], filed on May 26, 2022 has not been scheduled.

3. The continued hearing on the Receiver's *Emergency Motion for Show Cause Hearing to Hold Defendants Lucas Asher and Simon Batashvili in Civil Contempt*, filed on September 16, 2021, has not been scheduled.  [Docs. 311 and 399].

4. The *Receiver's Sixth Fee Application*, [Doc. 428], filed June 20, 2022, and which is unopposed, is pending.

5. The *Receiver's Motion to Pay Flat Fee Amount to Special Counsel to Eject Squatters in Philadelphia Properties*, [Doc. 425], filed on June 13, 2022, and which is unopposed, is pending.

Respectfully submitted, July 25, 2022.

**RECEIVER KELLY M. CRAWFORD**


*/s/  Kelly M. Crawford*
Kelly M. Crawford, Receiver
State Bar No. 05030700
SCHEEF & STONE, L.L.P.
500 North Akard, Suite 2700
Dallas, Texas 75201
Tele:  214/706-4200
Fax:  214/706-4242


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 25, 2022, I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/  Kelly M. Crawford
KELLY M. CRAWFORD