## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, et al. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | 3:20-CV-2910-X |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § § | |

## EIGHTH REPORT OF THE RECEIVER

Kelly M. Crawford, as the court-appointed Receiver ("Receiver"), submits his eighth report pursuant to this Court's *Statutory Restraining Order, Order for an Accounting, Order for Appointment of Receiver, Order for Expedited Discovery, and Other Equitable Relief and Order to Show Cause Regarding Preliminary Injunction* [Dkt. 16] (the *"SRO"*)[1], covering the period from June 6, 2022 through February 4, 2023.

---

[1] The *SRO* was continued in force by Consent Orders entered by the Court regarding the Defendant entities and the individual Defendants Asher and Batashvili [Dkt. 164, 165]. The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

# I.

## INVESTOR AND CREDITOR CLAIMS

On March 2, 2021 the Court entered an *Order Establishing Claims Adjudication Process* [Dkt. 227] (the "*Claims Order*").  Pursuant to the *Claims Order,* on March 12-14, 2021, the Receiver published in *USA Today* a Notice to Claimants in the Receivership of their right to file a claim in the Receivership and the bar date for filing claims.  In addition, the Receiver posted notices regarding claims process on the website established by the Receiver at www.metalsandbarrickcapitalreceivership.com.

The Receiver analyzed the claims and made his recommendation regarding the claims in a *Claims Report* filed on July 30, 2021 [Dkt. 290].  Pursuant to the *Claims Order,* on July 30, 2021, the Receiver mailed to each investor a package that included a copy of the *Claims Report*, a letter regarding the Receiver's recommendation of the investor's claim, and a worksheet showing the calculation of the investor's claim.  The Receiver also advised the investors that pursuant to the *Claims Order*, objections to the Receiver's claims recommendations must be mailed to the Receiver by no later than September 30, 2021.

The Receiver received a number of objections to his claims report from investors and a single objection from a creditor.  The Receiver resolved all but seven of the investor objections and the single creditor objection.  The Receiver filed his *Report Regarding Objections to the Receiver's Claims Report* on May 26, 2022 [Dkt. 405].

In his Report the Receiver included a *Revised Claims Report* that recommended to the Court approval of $67,906,550 in claims by 1,043 metals investors and $4,354,449 in claims by 15 non-metals investors.  The Receiver provided each of the claimants with a copy of the *Revised Claims Report* and posted the *Revised Claims Report* on the receivership website.

On November 2, 2022, following a hearing, the Court entered an Order overruling the objections to the Receiver's Revised Claims Report, with the exception of a single creditor, and approving the Receiver's Revised Claims Report. [Dkt. 465].  Creditor Daniel Spitzer, a former attorney of the Defendants, objected to the Receiver's recommended subordination of his claim to the claims of the metals and non-metals investors.  On January 19, 2023, after hearing, the Court overruled Mr. Spitzer's objection and upheld the Receiver's recommended subordination of Mr. Spitzer's claim.

The Receiver is aware of another creditor who objected to the Receiver's recommendation regarding his creditor claim after the deadline for making objections, but the Receiver had agreed to accept the late filed objection.  The objection is by Perez Batashvili, the brother of Defendant Simon Batashvili.  The Receiver recommended denial of this creditor claim because the services he provided to the Defendants were not provided in good faith; and he did not receive monies from the Defendants in exchange for reasonably equivalent value and in good faith.  The Receiver, after conducting discovery regarding the role of Perez Batashvili with the Defendants, will present the objection by Perez Batashvili to the Court for determination.

The Receiver also recently became aware of the desire of Quinn Emmanuel, the former law firm representing the individual Defendants, to assert a post-receivership claim arising out of their representation of the Defendants.  The Receiver is in the process of gathering additional information regarding this claim.

## II.

## ASSETS RECOVERED TO DATE

Since last reported to the Court in the Receiver's *Sixth Report* (reporting monies received up to June 4, 2022), an additional **$222,992.95** in assets have been recovered, as follows:

Sale of Philadelphia property:                    $88,485.93

| | |
|---|---|
| Distributions from real estate partnerships: | $19,383.95 |
| Recovery from Bank of America accounts subject to SRO | $103,179.88 |
| Refund from Fox News: | $10,000 |
| Interest earned through January 31, 2023: | $1,943.19 |

With the recovery of the foregoing additional assets, plus the assets recovered as reported in the *Receiver's Initial Report,* the *Receiver's Second, Third, Fourth, Fifth, Sixth, and Seventh Reports*, and less the monies paid for Receivership fees and expenses, the balance in the Receivership account as of February 4, 2023 is **$9,636,611.72**.

In addition, the Receiver is holding in brokerage accounts publicly traded securities issued by start-up technology companies the Defendants invested in prior to the receivership. The values of these securities vary depending upon the market, but as of December, 2022 were valued at $68,769.63, as follows:

| | | |
|---|---|---|
| Sofi Technologies | 1,341 shares | $6,182.01 |
| Planet Labs PBC | 2,052 shares | $8,926.20 |
| 23andMe Holding Co. | 1,204 shares | $2,600.64 |
| Buzzfeed Inc. | 1,700 shares | $1,172.32 |
| Desktop Metal, Inc. | 1,745 shares | $2,373.20 |
| Dave Inc. | 4,252 shares | $1,233.08 |
| Honest Co. | 2,106 shares | $6,339.06 |
| Airbnb | 135 shares | $11,542.50 |
| Contextlogic Inc. | 960 shares | $468.19 |
| Palantir Technologies | 1,539 shares | $9,880.38 |
| Bird Global, Inc. | 749 shares | $134.97 |

| Outbrain | 784 shares | $2,838.08 |
| Quanergy Systems | 19 shares | $0.98 |
| Robinhood Mkts. | 1,859 shares | $15,132.26 |

**III.**

**POTENTIAL SOURCES OF RECOVERY**

The Receiver identified the following additional sources for recovery of investor monies.

**A.  PERSONAL PROPERTY**

The Receiver has three paintings taken from the Defendants' offices that are of nominal value that the Receiver will sell online when authorized.

The Receiver took possession of certain jewelry given by Defendant Simon Batashvili to his wife Fainche McCarthy.  Initial appraisals of the jewelry indicate it is worth less than $10,000.  The Receiver discovered that Defendant Simon Batashvili and his wife Fainche in April, 2020 sought to insure jewelry that was valued at more than $380,000[2].  The Receiver made demand upon Batashvili and his wife to turn over the jewelry.  Batashvili initially turned over a Rolex Cosmograph watch valued at $28,500 and a diamond ring valued at approximately $59,000.  After further demands by the Receiver, Batashvili turned over to the Receiver a woman's ring, a Cartier watch, and a Rolex watch.

Finally, the Receiver took possession of furniture, artwork, guitars, and musical equipment belonging to the Defendants Lucas Asher and Simon Batashvili that the Receiver is storing.  Pursuant to the terms of the Court's *Consent Order Governing the Administration of the Receivership, Procedures Governing the Sale or Abandonment of Personal Property, Notice of Intended Sale and Disposition of Various Items, Fee Application Procedures.* [Dkt. 213] (the "*Administration Order*"),

---

[2] *Appendix in Support of Receiver's Motion for "Show Cause" hearing to Hold Defendant Simon Batashvili in Civil Contempt,* [Dkt. 251], App. 00041-00042.

the personal property of the individual defendants, including the jewelry received from Simon Batashvili and his wife, cannot be sold until a final judgment is obtained by the Plaintiffs against the individual defendants, or the defendants are dismissed from the lawsuit.  Because of the delay in this case, the expenses of storing the personal property are close to exceeding the value of the property stored.

### B.      REAL PROPERTY

#### 1.   Philadelphia Properties

During the Receiver's investigation, the Receiver discovered that in 2019 Relief Defendant Tower Equity, LLC, or an affiliated entity (collectively, "Tower Equity"), purchased at a Sheriff's sale, 17 residential properties in Philadelphia, Pennsylvania.  According to public records, Tower Equity paid a total of $1,254,000 for these properties.

The Receiver retained three appraisers to appraise the fair market value of each of the 17 properties for sale.  In addition, the Receiver retained a real estate broker in Philadelphia to market and list the properties for sale.

With court approval, the Receiver sold 5 of the 17 properties as follows:

| | |
|---|---|
| 6885 N. 19th Street, Philadelphia, PA 19126 | $260,000 |
| 5782 Haddington Street, Philadelphia PA 19141 | $142,000 |
| 434 E. Cheltenham Avenue, Philadelphia PA 19120 | $204,000 |
| 5135 Jackson Street, Philadelphia PA 19124 | $119,000 |
| 827 Rhawn Street, Philadelphia PA 19111 | $235,000 |
| **Total:** | **$960,000** |

The Receiver entered into a contract for the sale of property located at 178 Rosemar Street, Philadelphia, PA 19120 for $105,000, and after notice and hearing, on May 12, 2022, the Court authorized the Receiver to sell the property at that price (Dkt. 379).  Subsequently, the purchaser

terminated the contract.  The Receiver found another purchaser of the property at the same price ($105,000) and closed on that sale in July, 2022, receiving a net of $88,486.

The Receiver entered into contracts for the sale of three more of the Philadelphia properties as follows:

| | |
|---|---|
| 1921 S. Croskey Street, Philadelphia PA | $107,000 |
| 106 E. Roosevelt, Philadelphia PA | $160,000 |
| 532 E. Penn Street, Philadelphia PA | $150,000 |

Motions to approve the sales of these properties have been filed with the Court.  If these sales are approved by the Court and close, the Receiver will have 8 remaining properties in Philadelphia to liquidate.

The Receiver was informed by the broker he retained to sell the Philadelphia properties that at least three of the remaining properties are occupied by squatters.  Accordingly, on June 13, 2022, the Receiver filed a motion with the Court requesting permission to retain counsel in Philadelphia to pursue legal remedies to remove the squatters. [Dkt. 425].  On October 7, 2022, the Court approved the Receiver's motion and the Receiver paid a flat fee to counsel in Philadelphia to remove the squatters.

2.  Fractional Real Estate Interests

Defendant Asher testified in his asset deposition that Tower Equity purchased fractional interests in properties in Florida, Tennessee, Texas, and Pennsylvania – ranging from commercial to industrial to multi-family.  The Receiver discovered that Asher used Tower Equity to invest $215,000 with Crowdstreet for the purchase of fractional interests in various real estate projects.  Pursuant to the *SRO*, Crowdstreet assigned these interests to the Receiver.  The fractional property interests are as follows:

| | |
|---|---|
| Bristol Development – Vista Brooklyn | $25,000 investment |

---

**EIGHTH REPORT OF THE RECEIVER**                                                                   7

| | |
|---|---|
| Feldman Equities – Morgan Stanley Tower | $30,000 investment |
| Frontline Holdings – Chateau on the River | $25,000 investment (sold)[3] |
| Rhodium Asset Management – Grand Pointe Apts. | $25,000 investment |
| RREAF – Residence at Edinburg | $50,000 investment (sold)[4] |
| Trident Capital Group – St. Louis Indust. | $35,000 investment |
| J. Jeffers &Co. – The Huron Building | $25,000 investment |

Tower Equity also invested $50,000 through Crowdstreet in an entity that owned a property known as the Dixon Landing Research Park. That property was sold and $65,708 was distributed to the receivership.

The Receiver further discovered that Tower Equity invested $201,000 in fractional real estate interests managed by Cadre Investments. Pursuant to the *SRO*, Cadre Investments assigned these interests to the Receiver. The fractional property interests are as follows:

| | |
|---|---|
| 7421 at Frankford in Dallas, Texas | $50,000 investment |
| Lodge at Copperfield in Houston, Texas | $50,000 investment (sold)[5] |
| Stonecrest in San Diego, California | $51,000 investment |
| Solis at Winter Park, Orlando, Florida | $50,000 investment (sold)[6] |

The Receiver continues to receive distributions from these investments.

3. Security deposits with lessors.

The Receiver made demand upon the lessor of 8383 Wilshire Blvd, the headquarters of the Defendants, to return a security deposit in excess of $1 million held by the lessor. The lessor refuses

---

[3] Distribution to the receivership was $37,292.05.
[4] Distribution to the receivership was $50,338.52.
[5] Distribution to the receivership was $83,551.
[6] Distribution to the receivership was $76,509.

to turn over the security deposit and the Receiver will request the Court to compel the lessor to turn over the security deposit to the Receiver as a "receivership asset".

Finally, the Receiver, attempted to negotiate a settlement with the lessor of the house rented to Defendant Simon Batashvili to return a portion of the $35,000 security deposit held by the lessor. The lessor refuses to return any portion of the security deposit to the Receiver and the Receiver will have to request the Court to compel the lessor to turn over the security deposit as a "receivership asset".

### C.      COMMISSIONS

The law is well established that a Receiver may recover commissions received from sales persons for their role in soliciting investor monies for an unlawful scheme. *See Warfield v. Byron,* 436 F.3d 551, 560 (5th Cir. 2006).  In such instance, salespersons are not being paid with profits earned from a legitimate enterprise, but instead are being paid commissions from the amount received from investors in the scheme.  Regardless of whether the salespersons knew or should have known that Metals.com or Barrick capital or the other Defendant entities were being operated illegally, the commissions the salespersons received are recoverable as fraudulent conveyances.  *Id.*  As the recipient of a fraudulent transfer, the salesperson must be able to show that he or she received the commissions in good faith *and* in exchange for reasonably equivalent value.  While a salesperson may be able to claim he or she received the commissions in good faith, the salesperson cannot show he or she provided reasonably equivalent value in exchange for the money received.  Adding more investors to a fraudulent scheme does not provide value, but rather only enlarges the number of victims. *See Warfield,* 436 at 560.

The Receiver traced more than $14 million of investor funds paid in commissions to salespersons. The Receiver mailed the salespersons a copy of the *SRO* and made demand upon the salespersons to provide the Receiver with information regarding the monies received and services

provided. In addition, the Receiver sent the salespersons a second letter informing them of the Receiver's intent to file a lawsuit against them to recover the commissions and inviting settlement discussions.

On September 13, 2021, the Receiver file his lawsuit against 46 defendants, *Crawford v. Bleeden, et al;* Case No. 3:21-cv-2181 in the United States District Court for the Northern District of Texas, seeking the recovery of approximately $14,395,106 in commissions[7] (the "Broker Lawsuit"),

As the Receiver began serving summons on the defendants in the Broker Lawsuit, the Court *sua sponte* stayed the underlying lawsuit and the activities of the Receiver. Moreover, on February 10, 2022, the Court, *sua sponte*, dismissed the Broker Lawsuit for lack of subject matter jurisdiction (Dkt. 15). The Receiver filed a *Motion for New Trial* on March 8, 2022 (Dkt. 17). On May 12, 2022, the Court found that it had subject matter jurisdiction, vacated its dismissal order, reinstated the Broker Lawsuit, and dismissed the Motion for New Trial as moot (Dkt. 23).

The Receiver served all of the defendants in the Broker Lawsuit with the Complaint. The Receiver obtained authority from the Court to serve some defendants who could not be found by publication.

To date, approximately 10 defendants in the Broker Lawsuit have collectively filed three Motions to Dismiss the Complaint. The Receiver filed his responses to two of the  Motions to Dismiss, and the defendants filed their replies. The Receiver will be filing his response to the third Motion to Dismiss later this month.

The Receiver engaged in settlement discussions with a number of the defendants in the Broker Lawsuit. Recently, the Receiver entered into a settlement agreement with James Flicek and his company Ellipsis Marketing. They collectively received commissions of $107,210.46. Mr. Flicek

---

[7] These damages claims are subject to change as discovery is conducted in the lawsuit.

provided the Receiver with a sworn statement of financial condition indicating his inability to satisfy a judgment against him for the amount of his liability. Accordingly, on February 9, 2023, the Receiver entered into a Settlement Agreement with Mr. Flicek and his entity Ellipsis Marketing in which Mr. Flicek agrees to pay to the Receiver the sum of $62,500 in settlement of the claim.  The Settlement Agreement is subject to the approval of the Court and will be submitted to the Court for approval.

### D.    INVESTMENTS BY THE DEFENDANTS

At his asset deposition, Defendant Asher testified that he used Tower Equity to make a number of venture capital, equity, or stock purchases, including an investment in Space Exploration Technologies Corp. ("SpaceX").  Through his investigation the Receiver learned that on February 28, 2019, Tower Equity LLC invested $250,000 in a series of Equidate Investments, LLC, now Forge, which in turn, purchased shares of Troy Capital Partners SX IX, LLC, which owns shares of SpaceX. Once the Receiver obtains permission to liquidate this asset, the Receiver will discuss with Forge the steps required for liquidation of the SpaceX interest.

In addition, the Receiver obtained information from EquityZen showing that Tower Equity  has investments through EquityZen totaling $334,780 in the following technology start-up entities:

| | |
|---|---|
| Dave | $10k |
| Desktop Metal | $10k (distributed public securities) |
| Flexport | $10k |
| Lookout | $10k |
| Bird | $10k (distributed public securities) |
| Robinhood | $25k (distributed public securities) |
| Zocdoc | $10k |
| Wish | $10k |

| | |
|---|---|
| 23andMe | $10k (distributed public securities) |
| Carbon | $10k |
| Instacart | $10k |
| Acquia | $10k |
| Outbrain | $10k (distributed public securities) |
| Collective Health | $10k |
| Automattic | $10k |
| The Honest Company | $10k (distributed public securities) |
| Hotel Tonight | $10k |
| Betterment | $10k |
| Quanergy Systems | $10k (distributed public securities) |
| Addepar | $10k |
| Circle | $10k |
| Kobalt | $10k |
| Ripple | $25k |
| SoFi | $10k (distributed public securities) |
| Virgin Hyperloop | $25k |
| Buzzfeed | $25k (distributed public securities) |
| Planet | $14,472 (distributed public securities) |

In addition, Tower had equity investments in technology start-ups Palantir, Airbnb, and Contextlogic Inc. that went public. For those companies that went public, the shares attributable to the investment by Tower Equity were distributed to the Receiver's brokerage account and are valued at approximately $68,769.63 as of December 31, 2022. The values, of course, fluctuate daily.

The Receiver also discovered that Defendant Batashvili used Tower Equity to invest $100,000 in National Training Services, LLC ("NTS").  The Receiver made demand upon Chris Daigle, a member of NTS, to account for the disposition of the investment.  Mr. Daigle contends NTS went out of business and in response to the Receiver's demands provided the Receiver with certain information regarding the distribution of the monies.  Mr. Daigle has yet to answer the Receiver's follow-up questions regarding the liquidation of NTS.

### E.      METALS HELD BY BAYSIDE METAL EXCHANGE

Once the Defendants received monies from the investor victims, the Defendants placed orders for the metals themselves with Bayside Metal Exchange ("BME").  BME would, in turn, usually deliver the metals to the depository for the investor.   The Defendants, of course, would take their illegal gains from the monies received from the investors before transferring monies to BME for the purchase of the metals.

When BME learned of the Receivership, BME froze all pending transactions with the Defendants[8].  BME, in cooperation with the Receiver, provided the Receiver a list of all pending transactions.  While the Receiver contends BME is required to turn over to the Receiver (for distribution to the investors who placed the pending orders) the money BME received for pending transactions, BME argues it did not assume that risk and instead is prepared to complete the pending transactions and deliver the metals in their inventory.

Putting aside the issue of whether BME should bear the risk and return all money it received from the Defendants, the Receiver and BME reached an agreement whereby BME provides the Receiver with a liquidation price for the metals it is holding for a customer and the Receiver contacts

---

[8] BME identified the following accounts as the Defendants or under the possession and control of the Defendants, and  froze pending transactions with Barrick Capital, Glencore Financial, Metals.com, Newmont Financial, Northwestern Finance, and USA Mint.

the customer and finds out if the customer wishes to have the metals delivered or the metals liquidated and the monies delivered.  Such agreement is without prejudice to the rights of any of the parties to the lawsuit, the Receiver, the customers, or BME.  The liquidation price of the metals BME had pending for delivery to the investors as of January 4, 2021 was $2,640,450.

As of June 4, 2022, and as set forth in the Sixth Status Report,  the Receiver  indicated that he had worked with the investors and BME to arrange for either the liquidation or delivery of metals to investors totaling $1,790,499.29.  Since that time, the Receiver continued his efforts in working with BME and the investors to arrange for either the liquidation or delivery of an additional $222,614 in metals held by BME for the investors.  In addition, BME continues to hold metals in the name of the Defendants with an estimated liquidation value of approximately $350,000.

F.     FRAUDULENT TRANSFER ACTION

The Receiver is investigating the transfer of monies by the Defendants to third parties to determine whether reasonably equivalent value was exchanged in good faith by the third party.  For instance, the Receiver identified more than $20 million that was transferred by the Defendants to MagicStar Arrow Entertainment, LLC and/or MagicStar Arrow, Inc., entities owned by Carlos Cruz (collectively "MagicStar").  MagicStar contends it provided services to the Defendants in exchange for the monies.  The Receiver requested MagicStar to provide evidence of any goods or services provided to the Defendants in exchange for the transfers, and MagicStar provided contracts and invoices to the Defendants, but nothing else.  On June 3, 2022, the Receiver served Carlos Cruz of MagicStar with a subpoena to testify at a deposition.  On July 13, 2022, the Receiver took the deposition of Mr. Cruz and again requested MagicStar to provide documentation showing any goods or services provided to the Defendant in exchange for the more than $20 million received from the Defendants.   MagicStar continued its failure and refusal to produce such documentation. Accordingly, on August 31, 2022, the Receiver filed a lawsuit against Carlos Cruz, MagicStar Arrow

Entertainment, LLC, and MagicStar Arrow, Inc., Civil Action No. 3:22-cv-1935-x in the United States District Court for the Northern District of Texas.  The Defendants filed a Motion to Dismiss, which the Receiver responded to and that is now before the Court.  The Court also entered a Scheduling Order setting the case for a jury trial on February 12, 2024.

The Receiver will continue to investigate the potential fraudulent conveyance claims against other third parties as information becomes available.

### G.     THE MYRIAD OF ENTITIES OWNED BY DEFENDANTS

The Receiver obtained evidence showing that as of the date of the Receivership, the Defendants owned or controlled a myriad of entities.  The Receiver submitted such evidence of control to the Court and on March 22, 2021, the Court entered an *Order Granting Receiver's Motion to Identify Certain Entities in Receivership* [Docket No. 230] identifying the following entities as subject to the Receivership Orders of the Court:

Access Unlimited LLC
Administrative Account Services, LLC
Amerivise, LLC
Aqua Billboards
Best New Inc.
Chasing Gold
Chasing Metals, Inc.
Delaware Wholesale Inc.
Egon Pearson, LLC
Faulkner Management Corp.
Faulkner Music LLC
First American Estate & Trust
First American Savings, Inc.
Instribution, LLC, now Revo, LLC
Merrill Gold, LLC
Prometheus Laboratories, Int. (IBC)
Prometheus Laboratories, Int. (PIF)
Reagan Financial, Inc.
Resource Financial Services, Inc.
Retirement Insider, LLC
Street Invasion, Inc.
Stuttgart Industrial, Inc.
Tower Estates Holdings, Inc.

Tower Estates, Inc.
Tower Holdings, Inc.
Tower Property One, LLC
Tower Property Two, LLC
TX Admin., Inc.
USA Accounts, Inc.
USA Marketing, Inc.

The Receiver is continuing to gather evidence of additional entities owned and controlled by the Defendants that should be made subject to the Receivership Orders of the Court.

## IV.

## PENDING REGULATORY AND CIVIL ACTIONS AGAINST THE DEFENDANTS

At the time the Receiver was appointed, there were regulatory actions pending against the Defendants in twenty-one (21) States.  The Receiver and his counsel assumed representation of the Defendants  in several regulatory actions filed against the Defendants prior to the Receivership.  The Receiver and his counsel immediately initiated mitigation of the regulatory actions, including the review and revision of consent decrees to resolve the same.  On January 12, 2022, the Receiver resolved an action filed against the Defendants by the Office of the Montana Commissioner of Securities and Insurance by executing a *Consent Agreement and Final Order*.

The Receiver also participated in a civil action filed against the Defendants in the State of Kentucky. Investors Bill and Mary Cravens filed a lawsuit against the Defendants and New Direction in the Kentucky State Court system on October 1, 2020. On December 15, 2020, Defendant New Direction filed a Motion to Dismiss and to compel arbitration. The Receiver became aware of the litigation and  filed a Notice of Receivership on December 28, 2020. The motion to compel arbitration was initially stayed, but Defendant New Direction filed a notice of appeal on June 29, 2021 to move forward on its motion to compel arbitration. The Receiver hired local counsel to respond to the same. On February 7, 2022, the Appeal was dismissed.

In addition, the Receiver filed a notice of stay of a lawsuit pending against Chase Metals, LLC, and other Receivership Defendants in the United States District Court for the Central District of California, Case No. 2:20-cv-07324-AB-KS, *Cynthia Punke v. Chase Metals, LLC, et al.* The court requires the Receiver to file a status report every 60 days regarding the progress of the receivership.

The Internal Revenue Service informed the Receiver that it is auditing Chase Metals, Inc. for 2018 and possibly other years. As a result, the Receiver retained tax attorneys with the law firm of Meadows, Collier, Reed, Cousins, Crouch & Ungerman, LLP in Dallas, Texas to represent the receivership estate in dealing with the IRS.

## V.

## RECORDS OF THE DEFENDANTS AND RELIEF DEFENDANT

The vast majority of the records of the Defendants and Relief Defendant Tower Equity were digitally stored on various cloud platforms such as Microsoft, Google, Drop Box, Salesforce, Intuit, and Amazon. Defendants Asher and Batashvili, as well as the IT managers for the Defendant entities, claimed that because their personal computers were seized by the FBI, they were unable to retrieve their login and passwords required to access the cloud platforms. They claim that such logins and passwords change often and are stored on the seized computers.

The Receiver provided the *SRO* to each of the cloud platforms and demanded that they grant the Receiver access. After much delay and the threat of contempt actions by the Receiver, Microsoft, Intuit, Google, and Sales Force finally complied with the *SRO* and granted access to the Receiver.

The information obtained by the Receiver from the digital platforms, as well as information obtained from the primary office of the Defendants and others, was loaded by the Receiver's team onto a DISCO platform. On June 25, 2021, the Receiver made access to this information available to the Plaintiffs and the Defendants. In addition, the Receiver made available for inspection at the

Receiver's office, documents from the Defendants' office that were not loaded onto the DISCO platform, and copies of the bank records and credit card statements received from the banks.

On August 24, 2021, the Receiver received from the FBI a copy of images taken from the computers and electronic equipment at the office of the Defendants at 8383 Wilshire Blvd., Beverly Hills, California.  The Receiver loaded the images onto the DISCO platform.  On May 6, 2022, the Receiver's counsel again made access to the images loaded onto the DISCO platform available to the parties in the lawsuit, and repeated his offer to make available for inspection at the Receiver's office, documents from the Defendants' office that were not loaded onto the DISCO platform, and copies of the bank records and credit card statements received from the banks.

## VI.

## RECOMMENDATIONS OF THE RECEIVER

Based on the foregoing, the Receiver makes the following recommendations for the continuation of the Receivership.

### A.  PROCEDURES FOR RECEIVERSHIP

The *Administration Order* establishes procedures for the Receiver to efficiently administer the Receivership estate and sets forth the procedures for the Receiver to follow in selling personal and real property.  The Receiver will continue to follow these procedures in the administration of the Receivership.

### B.  CLAIMS PROCESS FOR INVESTORS AND CREDITORS

With the exception of two potential creditors, the Claims Process for Investors and Creditors has been finalized and the claims recommendations of the Receiver have been approved by the Court. The Receiver requested the Defendants to consent to an interim distribution of $9 million to the approved claimants, without prejudice to the Defendants' defenses to the claims of the Plaintiffs, but the Defendants indicated they would oppose an interim distribution.  If liability of the Receivership

Entities is determined by the Court, the Receiver will seek permission to make an interim distribution to the approved claimants.

## C.       ENFORCE DEFENDANTS' COMPLIANCE WITH THE *SRO*

Prior to the receivership, Defendants Asher and Batashvili started Retirement Insider, LLC (an entity placed in receivership by the Court), that began doing business as "Portfolio Insider". Portfolio Insider was created to sell information to assist persons investing in securities and commodities. The Receiver discovered that after the receivership was put in place and the Defendants were restricted from using assets in receivership or engaging in activities related to securities and commodities, the Defendants, with the help of their friend Carlos Cruz, continued the Portfolio Insider business. As a result, on September 16, 2021, the Receiver filed the *Receiver's Motion for Show Cause Hearing to Hold Defendants Lucas Asher and Simon Batashvili in Civil Contempt and Brief in Support* (Dkt. 311). The Receiver requested the Court to find the Defendants in civil contempt of the *SRO*, declare the business of Portfolio Insider a receivership entity, order the Defendants to purge themselves of their contempt by turning over to the Receiver all assets of the business of Portfolio Insider, account for all income received by the business of Portfolio Insider, and turn over all records relating to the business of Portfolio Insider. The Court soon thereafter, *sua sponte,* stayed the underlying case and the receivership for more than 7 months.

On May 13, 2022, after lifting the stay, the Court entered an Amended Order Setting Show Cause Hearing (Dkt. 386), finding that "the Receiver has provided evidence to support his contention that Defendant Messrs. Asher and Batashvili engaged in conduct that violates the Statutory Restraining Order ("SRO")". The Court set the hearing for May 26, 2022. The Defendants filed a motion to continue the hearing (Dkt. 402) and on May 25, 2022, the Court continued the hearing until a later date (Dkt. 403). Subsequently, the Court entered an Order that the Receiver and the Defendants

mediate the issue [Dkt. 452]. The Receiver and receivership counsel for the Defendants agreed upon a mediator and are currently working toward getting the mediation scheduled.

## VII.

## TIMELINE FOR THE RECEIVERSHIP

The Receiver recommends continuation of the Receivership to complete the discovery, seizure, and liquidation of additional assets; pursuit of claims against recipients of fraudulent transfers; and distribution of the assets recovered to the approved claimants. With the significant scope of the Receivership, number of investor victims, and amount of loss, the Receiver estimates it will be necessary to continue the Receivership in place through 2023, and into 2024.

Respectfully submitted, February 13, 2023.

**RECEIVER KELLY M. CRAWFORD**

*/s/ Kelly M. Crawford*
Kelly M. Crawford, Receiver
State Bar No. 05030700
SCHEEF & STONE, L.L.P.
500 North Akard, Suite 2700
Dallas, Texas 75201
Tele:  214/706-4200
Fax:  214/706-4242

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 13, 2023, I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

*/s/ Kelly M. Crawford*
KELLY M. CRAWFORD