1 | Daniel B. Spitzer - CA State Bar No. 121752
16311 Ventura Boulevard, Suite 1200
2 | Encino, California 91436-2152
Telephone: 818-990-9700
3 | Facsimile: 818-990-9705
Email: dspitzer@spitzeresq.com
4 |
Creditor Appearing In Pro Per
5 |
6 |
7 | UNITED STATES DISTRICT COURT
8 | NORTHERN DISTRICT OF TEXAS
9 |
10 | COMMODITY FUTURES TRADING ) Case No. 3:20-cv-02910-E
COMMISSION, et al. )
11 | ) **REPLY BRIEF IN SUPPORT OF**
Plaintiffs, ) **MOTION TO DISMISS UNDER**
12 | ) **F.R.C.P. RULE 12(b)(1) AND 12(h)(3);**
v. ) **SUPPLEMENTAL DECLARATION OF**
13 | ) **DANIEL B. SPITZER**
TMTE, INC., etc., et al. )
14 | ) *[No Hearing Scheduled or, If Required, to*
Defendants. ) *be Set by the Clerk of the Court]*
15 | )
16 | )
17 | )
18 | \\\
19 | \\\
20 | \\\
21 | \\\
22 | \\\
23 | \\\
24 | \\\
25 | \\\
26 | \\\
27 |
28 |

1
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) and 12(h)(3); etc.

# **TABLE OF CONTENTS**

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

   I. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      A. Spitzer's Motion to Dismiss Raises a Jurisdictional Issue. . . . . . . . . . . . . . . . 7

      B. The Motion to Dismiss is Not Procedurally Infirm or Untimely . . . . . . . . . . . 10

      C. The "Actual Delivery Exception" Is Both an Affirmative Defense AND a Proper Basis for Dismissal of the Plaintiffs' Action . . . . . . . . . . . . . . . . . . . . . . 12

      D. No "Independent" Basis for Subject Matter Jurisdiction Exists Under 7 USC §9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

         1. The CFTC's Interpretation of 7 USC §9(1) Renders the Actual Delivery Exception a Nullity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

         2. The CFTC May Not Rely on its Own "Guidance" as a Jurisdictional Anchor. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

         3. 7 USC §9(1) Shows an Intent to Curb Market Manipulation, Not Garden-Variety Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

   II. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

SUPPLEMENTAL DECLARATION OF DANIEL B. SPITZER. . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

**FEDERAL STATUTES**:

124 Stat. 1376 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 13, 15

28 U.S.C. §1345 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

28 U.S.C. §1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

7 U.S.C. §1a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

7 U.S.C. §2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

7 U.S.C. §2(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 14

7 U.S.C. §25 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

7 U.S.C. §9(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 13-16

**FEDERAL RULES**:

17 C.F.R. §180.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

Federal Rule of Civil Procedure 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

Federal Rule of Civil Procedure, Rule 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10, 13, 16

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.

1   Federal Rules of Civil Procedure, Rule 12(h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 16

2

3   **FEDERAL CASES**:

4   BPI Sports, LLC v. ThermoLife International, LLC (S.D. Fla., Mar. 5, 2021, No. 19-CV-60505)

5   2021 WL 966011 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6

7   Castillo v. Cameron County, Tex. (5th Cir. 2001) 238 F.3d 339 . . . . . . . . . . . . . . . . . . . . . 10, 11

8

9   CFTC v. Southern Trust Metals, Inc. (11th Cir. 2018) 894 F.3d 1313. . . . . . . . . . . . . . . . . 12, 13

10

11  Commodity Futures Trading Comm'n v. Topworth International, Ltd. (9th Cir.1999) 205 F.3d 110

12  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 711

13

14  Commodity Futures Trading Commission v. My Big Coin Pay, Inc. (D. Mass. 2018) 334 F.Supp.3d

15  492. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

16

17  Commodity Futures Trading Commission v. White Pine Trust Corp. (9th Cir. 2009) 574 F.3d 1219

18  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

19

20  Dataflux v. Atlas Global Group, L.P., 541 U.S. 567 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

21

22  Devlin v. Scardelletti (2002) 536 U.S. 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

23

24  In re FEMA Trailer Formalehyde Products Liability Litigation (5th Cir. 2012), 668 F.3d 281 . . . 8

25

26  In re Lehman Brothers Inc. (S.D.N.Y. 2015) 533 B.R. 362 . . . . . . . . . . . . . . . . . . . . . . . . . . 9

27

28

1   Kontrick v. Ryan (2004) 540 U.S. 443 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

2

3   Lawrence v. Dunbar (11th Cir. 1990) 919 F.2d 1525 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

4

5   Lewis v. Hunt (5th Cir. 2007) 565 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

6

7   Lomax v. Ortiz-Marquez (2020) 140 S.Ct. 1721 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

8

9   McElmurray v. Consol. Gov't of Augusta–Richmond County (11th Cir. 2007) 501 F.3d 1244 . . 8

10

11   Menchaca v. Chrysler Credit Corp. (5th Cir. 1980) 613 F.2d 507 . . . . . . . . . . . . . . . . . . . . . 11, 12

12

13   Powerex Corp. v. Reliant Energy Services, Inc. (2007) 551 U.S. 224 . . . . . . . . . . . . . . . . . . . . . 14

14

15   Reno v. Bossier Parish School Board (2000) 528 U.S. 320 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16

17   S.E.C. v. Forex Asset Management LLC (5th Cir. 2001) 242 F.3d 325 . . . . . . . . . . . . . . . . 10, 11

18

19   Salomon Forex, Inc. v. Tauber (4th Cir. 1993) 8 F.3d 966 . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

20

21   Stanford v. U.S. (E.D. Ky. 2014) 992 F.Supp.2d 764 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

22

23   U.S. Commodity Futures Trading Commission v. Mintco LLC (S.D. Fla., Feb. 4, 2016, No.

24   15-CV-61960) 2016 WL 3944098 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

25

26   U.S. Commodity Futures Trading Commission v. Monex Credit Company (9th Cir. 2019) 931 F.3d

27

28

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.

966. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13

U.S. v. Chagra (5th Cir. 1983) 701 F.2d 354. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Verlinden B.V. v. Cent. Bank of Nigeria (1983) 461 U.S. 480 . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wagstaff v. U.S. Dept. of Educ. (5th Cir. 2007) 509 F.3d 661 . . . . . . . . . . . . . . . . . . . . . . . . 8

Walters v. Industrial and Commercial Bank of China, Ltd. (2d Cir. 2011) 651 F.3d 280 . . . . . . 13

West Virginia v. Environmental Protection Agency (2022) 142 S.Ct. 2587 . . . . . . . . . . . . . 14, 15

**OTHER AUTHORITIES**:

155 Cong. Rec. S9557 (daily ed. Sept. 17, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

S. 1682, 111th Cong. (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.

**REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

TO THE HONORABLE BRANTLEY STARR, U.S. DISTRICT JUDGE:

Creditor Daniel B. Spitzer ("**Spitzer**") hereby submits this reply brief in support of his motion to dismiss this action under Federal Rules of Civil Procedure ("**FRCP**"), Rule 12(b)(1) and 12(h)(3); and for the Court to refrain from exercising ancillary jurisdiction under 28 U.S.C. §1367.

The plaintiffs' opposition is as important for what it does ***not*** say as for what is actually argued. By their silence on the issue, and by their failure to present contrary evidence, plaintiffs acknowledge the key undisputed fact that the retail sales made by defendants were all delivered within 28 days, thus bringing them within the Actual Delivery Exception. In the same vein, by their silence, plaintiffs concede that federal question jurisdiction may ***not*** be predicated on 7 USC §2(c) because of the Actual Delivery Exception. The plaintiffs thus premise their claim to federal jurisdiction solely on the provisions of 7 U.S.C. §9(1), treated below.

In their opposition, plaintiffs contend that Spitzer's motion should be denied on four separate, disputed grounds: (1) the "Actual Delivery Exception" under 7 USC §2(c)(2)(D)(ii)(III)(aa) is not a jurisdictional issue; (2) Spitzer's motion is procedurally improper for lack of standing and for being untimely; (3) the Actual Delivery Exception is an affirmative defense; and (4) the Actual Delivery Exception is inapplicable to the anti-fraud claims brought by the Commodity Futures Trading Commission ("**CFTC**") under 7 U.S.C. §9(1) and 17 C.F.R. §180.1(a)(1)-(3). Each of these contentions is addressed in turn below.

## I. ARGUMENT

**A. Spitzer's Motion to Dismiss Raises a Jurisdictional Issue**. Plaintiffs maintain that Spitzer has failed to raise a jurisdictional issue because this Court possesses raw, decisional jurisdiction under 28 U.S.C. §1345 to hear all original proceedings commenced by any federal agency, including the CFTC. This argument poses a niggling distinction without a difference. Even the authorities on which plaintiffs rely acknowledge that a challenge under FRCP 12(b)(1) may be framed as a challenge to the ***agency's*** statutory authority under the Commodity Exchange Act, 7

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.

1   U.S.C. §1 et seq. ("**CEA**") to bring this action in the first place. See <u>Commodity Futures Trading</u>

2   <u>Commission v. White Pine Trust Corp.</u> (9th Cir. 2009) 574 F.3d 1219, 1222 fn. 2 ("We therefore

3   read Baere to argue … that the CFTC cannot bring this action under its statute, rather than that there

4   is no subject-matter jurisdiction"); <u>U.S. Commodity Futures Trading Commission v. Mintco LLC</u>

5   (S.D. Fla., Feb. 4, 2016, No. 15-CV-61960) 2016 WL 3944098, at *6 ("challenges to an agency's

6   authority to bring an action speak to the agency's jurisdiction, not the court's power to adjudicate").

7       Other courts have refused to rest on this neat semantic distinction, finding instead that the

8   absence of statutory authority establishes a lack of subject matter jurisdiction. In <u>Wagstaff v. U.S.</u>

9   <u>Dept. of Educ.</u> (5th Cir. 2007) 509 F.3d 661, 664, for example, the Fifth Circuit affirmed dismissal

10  of the complaint because, under the Fair Debt Collection Practices Act on which the plaintiff's claim

11  was based, there was no waiver of sovereign immunity. The Court of Appeal held that the "absence

12  of such a waiver is a ***jurisdictional*** defect" (emphasis added), quoting <u>Lewis v. Hunt</u> (5th Cir. 2007)

13  565, 571 (absence of waiver of sovereign immunity in 28 U.S.C. §2410 deprived District Court of

14  subject matter jurisdiction). Similarly, in <u>In re FEMA Trailer Formalehyde Products Liability</u>

15  <u>Litigation</u> (5th Cir. 2012), 668 F.3d 281, 286 -87, the Fifth Circuit affirmed the District Court's order

16  dismissing the complaint under FRCP 12(b)(1) for lack of subject matter jurisdiction under the

17  Federal Tort Claims Act. <u>Id.</u> at 291. It is obvious that the District Court has the raw jurisdiction to

18  decide this motion; it should be equally obvious that, based on the Actual Delivery Exception, the

19  CEA does ***not*** authorize the CFTC to bring this action in the first place, thus depriving it – and the

20  Court – of subject matter jurisdiction.

21      Motions to dismiss under FRCP 12(b)(1) take one of two forms: a "facial attack" or a

22  "factual attack." <u>Lawrence v. Dunbar</u> (11th Cir. 1990) 919 F.2d 1525, 1528–29. In a "facial attack,"

23  the Court is limited to the face of the pleading and all intendments are afforded to the plaintiff.

24  <u>McElmurray v. Consol. Gov't of Augusta–Richmond County</u> (11th Cir. 2007) 501 F.3d 1244, 1251.

25  A "factual attack," on the other hand, "'challenges the existence of subject matter jurisdiction based

26  on matters outside the pleadings.'" <u>Mintco</u>, 2016 WL 3944098, at *2–3 (citation omitted).

27

28

"[I]n a factual attack, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach, and the court is free to weigh the evidence." ... That is, the court may look beyond the four corners of the complaint so long as they relate to jurisdictional issues, hear conflicting evidence and decide the factual issues that determine jurisdiction. ... Further, "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." ...

Mintco (citations omitted). Spitzer's motion is clearly a "factual attack," based on the undisputed facts set out in the Motion: the standard-form contract of sale requires delivery, and all sales of precious metals products were in fact delivered, within 28 days. Spitzer Decl., ¶¶6, 9 and Exs. A, C and D thereto. ***No contrary evidence has been presented.*** Since all of the sales at issue are subject to the Actual Delivery Exception, there is no subject matter jurisdiction under the CEA.

The history of commodities regulation makes clear that Congress did ***not*** intend, at least initially, to extend jurisdiction under the CEA to cases involving ***actual delivery*** of commodities:

Because the [Commodities Exchange] Act was aimed at manipulation, speculation, and other abuses that could arise from the trading in futures contracts and options, as distinguished from the commodity itself, Congress never purported to regulate "spot" transactions (transactions for the immediate sale and delivery of a commodity) or "cash forward" transactions (in which the commodity is presently sold but its delivery is, by agreement, delayed or deferred). Thus § 2(a)(1)(A) of the Act, 7 U.S.C. § 2, provides that "futures" regulated by the Act do not include transactions involving actual physical delivery of the commodity, even on a deferred basis. Transactions in the commodity itself which anticipate actual delivery did not present the same opportunities for speculation, manipulation, and outright wagering that trading in futures and options presented. ...

Salomon Forex, Inc. v. Tauber (4th Cir. 1993) 8 F.3d 966, 970–71. See also In re Lehman Brothers Inc. (S.D.N.Y. 2015) 533 B.R. 362, 369 ("Forward contracts and spot contracts—which are contracts for 'the immediate sale and delivery of a commodity'—were not regulated"); Commodity Futures Trading Commission v. My Big Coin Pay, Inc. (D. Mass. 2018) 334 F.Supp.3d 492, 495 ("The Commodity Exchange Act (CEA) has been aptly characterized as a 'comprehensive regulatory structure to oversee the volatile and esoteric ***futures*** trading complex'" (emphasis added, internal citations omitted)). The definition of "commodity" in 7 USC §1a(9) similarly emphasizes that the focus of the CEA's regulatory scheme is ***futures:*** "all other goods and articles, ... in which contracts for future delivery are presently or in the future dealt in." Even the CEA itself, in describing the

9

1    CFTC's jurisdiction (7 USC §2(a)(1)(A)), provides:

2            The Commission shall have exclusive jurisdiction, … with respect to
     accounts, agreements (including any transaction which is of the character of, or is
3    commonly known to the trade as, an "option", "privilege", "indemnity", "bid",
     "offer", "put", "call", "advance guaranty", or "decline guaranty"), and transactions
4    involving swaps or ***contracts of sale of a commodity for future delivery*** …

5    (Emphasis added.) The entire scheme is directed to futures, not goods subject to immediate delivery.

6            In 2010, the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-

7    203 §742, 124 Stat. 1376 (2010) ("**Dodd-Frank**") expanded the CFTC's enforcement powers under

8    7 U.S.C. §2(c)(2)(D) to "retail commodity transactions"; at the same time, it carved out the "Actual

9    Delivery Exception" under 7 USC §2(c)(2)(D)(ii) for transactions that result in "actual delivery"

10   within 28 days. U.S. Commodity Futures Trading Commission v. Monex Credit Company (9th Cir.

11   2019) 931 F.3d 966, 973. The jurisdictional reach of the CFTC's authority under 7 U.S.C.

12   §2(a)(1)(A) thus does ***not*** extend to any "contract of sale" resulting in actual delivery of the

13   commodity within 28 days – the only type of contracts alleged by the plaintiffs' complaint.

14       **B. The Motion to Dismiss is Not Procedurally Infirm or Untimely**. Plaintiffs argue that

15   Spitzer's motion is procedurally improper in that it is a "disguised" motion to dismiss under FRCP

16   12(b)(6). Respectfully, ***this*** motion to dismiss (as opposed to the one the plaintiffs would ***like*** to be

17   opposing) is brought under FRCP 12(b)(1) and 12(h)(3) alone, and the plaintiffs' authorities drawn

18   from FRCP 12(b)(6) have no applicability to the questions before this Court.

19           Plaintiffs argue that Spitzer lacks standing, as a non-party, to bring this motion to dismiss.

20   Numerous courts, in a variety of circumstances, have permitted non-parties whose interests are

21   affected by receivership litigation to appear and participate in proceedings before the District Courts

22   and appeals therefrom. In S.E.C. v. Forex Asset Management LLC (5th Cir. 2001) 242 F.3d 325,

23   328–30, for example, non-parties appealed from an order approving a receiver's distribution plan.

24   The Court of Appeal, while acknowledging the general rule that non-parties do not have standing

25   to appeal, held that the case before it was subject to an important exception:

26           For instance, in *Castillo v. Cameron County, Tex.*, 238 F.3d 339 (5th Cir.2001),
     where we were asked to determine whether Texas had standing to seek review of a
27

28
REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.

series of injunctions after it was dismissed from the underlying suit, we reaffirmed the principle that " '[i]f the decree affects [a third party's] interests, he is often allowed to appeal.' " *Id.* at 349, citing *United States v. Chagra*, 701 F.2d 354, 358–59 (5th Cir.1983); see also *In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 788 (5th Cir.1979) (stating that "[t]he Fifth Circuit has been lenient in hearing the appeals of non-parties").

Forex, 242 F.3d at 329. Castillo had enunciated a three-part test for determining whether a non-party may participate in appellate proceedings: ""whether 'the non-parties actually participated in the proceedings below, the equities weigh in favor of hearing the appeal, and the non-parties have a personal stake in the outcome.'" Castillo, 238 F. 3d at 349 (citations omitted). Applying this test to the facts before it, Forex found that the non-party objectors clearly possessed standing. Similarly, all three of the Castillo factors apply to Spitzer in the case before this Court.

Other cases have similarly found that non-parties have a legitimate say in receiverships or related proceedings which impact their substantive rights. See, among others, U.S. v. Chagra (5th Cir. 1983) 701 F.2d 354, 358-59 ("Non-party creditors who assert rights in receivership proceedings may appeal orders affecting their legitimate interests"); Commodity Futures Trading Comm'n v. Topworth International, Ltd. (9th Cir.1999) 205 F.3d 1107, 1113 (non-party creditor had standing to appeal proposed receivership distribution plan where he had a legitimate interest in the proceedings, filed a claim and objection to the distribution plan, and attended the hearing on the plan); Devlin v. Scardelletti (2002) 536 U.S. 1, 8 ("We have never, however, restricted the right to appeal to named parties to the litigation."). Based on these authorities, it is clear that non-party Spitzer has the right to pursue his challenge to subject matter jurisdiction in this motion.

As to timeliness, the Court will recall that Spitzer raised a challenge to subject matter jurisdiction on September 28, 2021, in his very first filing, an objection to the receiver's proposed plan of distribution. Docket No. 318. Supplemental Declaration of Daniel B. Spitzer ("**Spitzer 2**"), ¶3. In the hearing on that objection on January 19, 2023, the Court instructed that its ruling on Spitzer's objection would ***not*** constitute a ruling on this pending motion to dismiss. Spitzer 2, ¶4.

Most critically, a challenge to subject matter jurisdiction is ***never*** waived and may be brought at any point in the litigation. Kontrick v. Ryan (2004) 540 U.S. 443, 455; *accord,* Grupo Dataflux

11

1    v. Atlas Global Group, L.P. (2004) 541 U.S. 567, 576. And in that inquiry, the burden of proving that

2    subject matter jurisdiction actually exists rests on the plaintiffs. Menchaca v. Chrysler Credit Corp.

3    (5th Cir. 1980) 613 F.2d 507, 511, *cert. denied* (1980) 449 U.S. 953.

4    **C. The "Actual Delivery Exception" Is Both an Affirmative Defense AND a Proper**

5    **Basis for Dismissal of the Plaintiffs' Action**. Plaintiffs argue that because two Circuit Court cases

6    have stated that the Actual Delivery Exception is an affirmative defense, this motion must be denied.

7    Plaintiffs intentionally misunderstand, and misrepresent to the Court, the actual issue in dispute.

8    In a statement that can only be characterized as dictum in its context, the Ninth Circuit, in

9    Monex, supra, "agreed" that the Actual Delivery Exception had to be pleaded as an affirmative

10   defense. Monex involved an appeal from a motion to dismiss under FRCP 12(b)(6) in which the

11   defendant had alleged the Actual Delivery Exception as an affirmative defense and sought dismissal

12   on that basis. 931 F.3d at 972-73. The Court of Appeal framed the question as follows:

13       We must first determine whether the actual delivery exception is an element
         of a CEA claim or an affirmative defense. This distinction is important because Rule
14       8 does not require plaintiffs to plead around affirmative defenses. ... And
         "[o]rdinarily, affirmative defenses ... may not be raised on a motion to dismiss." ...

15   Monex, 931 F.3d at 972 (citations omitted). Citing CFTC v. Southern Trust Metals, Inc. (11th Cir.

16   2018) 894 F.3d 1313, 1324–25 (see below), Monex considered whether, under the facts before it in

17   the 12(b)(6) motion, "actual delivery" had taken place. After finding that the transactions amounted

18   to "sham delivery, not actual delivery," (id. at 975), Monex concluded that because the "affirmative

19   defense" did not appear on the face of the complaint, it could not bar the CFTC's action.

20   Monex is factually and legally distinct from the claims made herein. Here, the uncontroverted

21   evidence shows that "actual delivery" – "the act of giving real and immediate possession to the buyer

22   or the buyer's agent" (id. at 973) – took place in all of the transactions challenged by the CFTC. In

23   Monex, the Ninth Circuit's focus was on whether FRCP 8 required the CFTC to plead around the

24   Actual Delivery Exception on the face of the complaint; it did not concern itself with the baseline

25   question of whether the Actual Delivery Exception precluded it from exercising jurisdiction at all.

26   Finally, most significantly, the challenge mounted by Spitzer as to subject matter jurisdiction is

27

28

1  brought under FRCP 12(b)(1) and (h)(3) – and not, as in <u>Monex</u>, under Rule 12(b)(6).

2         <u>Monex</u> relied on <u>Southern Trust Metals</u>, supra, an appeal from judgment after a bench trial.

3  In <u>Southern Trust Metals</u>, the CFTC alleged violations of the CEA because defendants were not

4  properly registered and the trades did not occur on a registered exchange. Defendants alleged, as an

5  affirmative defense, that the Actual Delivery Exception exempted their transactions. The Court of

6  Appeal made short shrift of this argument, finding that defendants had simply not carried their

7  burden of proving "actual delivery." <u>Southern Trust Metals</u>, 894 F. 3d at 1325. Here, by contrast, the

8  evidence is uncontroverted that actual delivery took place within 28 days. And, as in <u>Monex</u>,

9  <u>Southern Trust Metals</u> did not raise the threshold issue of whether the Actual Delivery Exception

10  precluded it from exercising subject matter jurisdiction at all.

11         By contrast, numerous cases have held that a challenge based on lack of subject matter

12  jurisdiction may ***not*** be pleaded as an affirmative defense, since it may be raised at any point in the

13  proceedings. See, among others, <u>BPI Sports, LLC v. ThermoLife International, LLC</u> (S.D. Fla., Mar.

14  5, 2021, No. 19-CV-60505) 2021 WL 966011, at *4 ("Lack of subject matter jurisdiction may be

15  raised at any time, and consequently, ***it is not an affirmative defense***" (emphasis added)); <u>Walters</u>

16  <u>v. Industrial and Commercial Bank of China, Ltd.</u> (2d Cir. 2011) 651 F.3d 280, 287 (although

17  legislative history speaks in terms of "affirmative defense," Foreign Sovereign Immunities Act

18  presents a jurisdictional bar, citing <u>Verlinden B.V. v. Cent. Bank of Nigeria</u> (1983) 461 U.S. 480,

19  493 n. 20); <u>Stanford v. U.S.</u> (E.D. Ky. 2014) 992 F.Supp.2d 764, 770 (jurisdictional challenge based

20  on "discretional function exception" is not an affirmative defense requiring an evidentiary hearing

21  and is properly brought under FRCP 12(b)(1)).

22         **D. No "Independent" Basis for Subject Matter Jurisdiction Exists Under 7 USC §9**. The

23  CFTC argues that, irrespective of the Actual Delivery Exception, 7 USC §9(1) provides an

24  ***independent*** basis for subject matter jurisdiction. The CFTC's position cannot be sustained for four

25  reasons. First, as above, the history of commodities regulation (including the 2010 Dodd-Frank

26  amendments) demonstrates an obvious intent to regulate futures, not products subject to immediate

27

28

delivery. Second, the CFTC's reading of 7 USC §9(1) renders the Actual Delivery Exception a nullity. Third, the CFTC cannot rely on its own interpretation of its own authority to support its claim to jurisdiction. Fourth, the plain language of Section 9(1) and its context indicate that its target is market manipulation, not garden variety fraud.

**1. The CFTC's Interpretation of 7 USC §9(1) Renders the Actual Delivery Exception a Nullity**. Two cardinal principles of statutory construction compel a finding that the Actual Delivery Exception applies to the entirety of the CEA, including 7 USC §9(1). First, this Court may not narrow the scope of the Actual Delivery Exception "by inserting words Congress chose to omit" so as to limit its application. Lomax v. Ortiz-Marquez (2020) 140 S.Ct. 1721, 1724–25. If Congress had intended the Actual Delivery Exception to be narrowly confined in scope, it could have said so, but clearly did not. Second, "[i]n all but the most unusual situations, a single use of a statutory phrase must have a fixed meaning" across a statute. Id., at 1725 (citation omitted); *accord,* Powerex Corp. v. Reliant Energy Services, Inc. (2007) 551 U.S. 224, 232. Here, illogically, the CFTC argues that the term "contract for sale" carries one definition in 7 USC §2(c), where sales resulting in actual delivery within 28 days are excluded, and another, broader definition in 7 USC §9(1), where (at least according to the CFTC) its jurisdiction extends to ***all*** "contracts of sale of a commodity," without regard to the Actual Delivery Exception. This Court must "avoid interpretations that would 'attribute different meanings to the same phrase.'" Reno v. Bossier Parish School Board (2000) 528 U.S. 320, 329.

**2. The CFTC May Not Rely on its Own "Guidance" as a Jurisdictional Anchor**. In West Virginia v. Environmental Protection Agency (2022) 142 S.Ct. 2587, 2595 ("**EPA**"), the U.S. Supreme Court discussed the scope of agency regulatory authority:

> [G]iven both separation of powers principles and a practical understanding of legislative intent, the agency must point to "clear congressional authorization" for the authority it claims. …

(Citations omitted.) In EPA, the Supreme Court found unconstitutional a set of regulations promulgated by the agency; in so doing, the Court found persuasive the fact that the agency chose

1  "to adopt a regulatory program that Congress had conspicuously declined to enact itself." <u>Id</u>. Here,

2  too, the agency's interpretation of its own authority should depend on a clear congressional mandate.

3  Congress did not, however, confer on the CFTC the broad-form, nearly universal jurisdiction it now

4  asserts, but instead corralled it in by enacting the Actual Delivery Exception. As in <u>EPA</u>, Congress

5  conspicuously declined to enact a statute as broad as the CFTC would like.

6         The CFTC's reliance on its own guidance documents to support its contention that subject

7  matter jurisdiction exists is both illogical and bespeaks an institutional arrogance that should give

8  pause to the Court. With a studied, false modesty, the CFTC argues that the "major questions"

9  doctrine of <u>EPA</u> should not apply here, because "Regulation 180.1 does not have vast 'economic and

10  political significance,' nor does it assert highly consequential power'…" Those who engage in the

11  business of purchasing and selling precious metals would certainly disagree, as does the CFTC itself

12  in its complaint herein, noting that defendants alone allegedly bilked more than 1,300 investors out

13  of $45,000,000 in improper charges. Complaint, ¶¶5, 11, 51-54 [Docket No. 1].

14         **3. 7 USC §9(1) Shows an Intent to Curb Market Manipulation, Not Garden-**

15  **Variety Fraud**. The legislative history of 7 USC §9(1) shows that it was directed at market

16  manipulation, not garden-variety fraud. Section 9, enacted as an amendment to Dodd-Frank, included

17  two provisions creating civil penalties for market manipulation: one making it unlawful to file false

18  or misleading reports with the CFTC; and one entitled "Prohibition Regarding Market

19  Manipulation," which became the present 7 USC §9. See S. 1682, 111th Cong. (2009). Senator

20  Cantwell, in introducing the Senate bill, made perfectly clear that the focus of these provisions was

21  on manipulation of the futures market, not garden-variety fraud:

22         When bad-actors like Enron and Amaranth Advisors, LLC, manipulate
         commodities prices, it means that Americans pay more for commodities like oil,
23         gasoline, heating oil, food, and natural gas. Unfortunately, current law does not
         protect our economy with a tough enough standard to prevent, deter, and enforce
24         illegal market manipulation in critical commodity futures markets.
                               *   *   *   *
25         In this country, our current standard in the futures arena just isn't working.
         It is not sufficient to fully prosecute and deter abuses in the markets. We need to get
26         the right standard to prevent, deter, and enforce market manipulation in these
         markets.

27

28

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.

155 Cong. Rec. S9557 (daily ed. Sept. 17, 2009). The CFTC maintains in this action that it is acting on behalf of a large class of "investors," who purchased precious metals products. Nothing, however, in 7 USC §9 provides for the type of asset seizures or restitutionary relief sought by the receiver herein. Indeed, Senator Cantwell's bill includes a private right of action, codified at 7 USC §25, which defines the ***exclusive*** remedies available to private litigants.[1] The CFTC's sweeping claims herein on behalf of an "investor" class were ***never*** envisioned by Congress.

The legislative history shows that 7 USC §9 was never intended as an independent basis for CFTC action, but was part of an organic statutory scheme. The Dodd-Frank amendments and Senator Cantwell's stand-alone bill gave the CFTC expanded powers to combat market manipulation and even regulate retail sales – provided that the CFTC's jurisdiction would not extend to retail sales which result in actual delivery within 28 days. The CFTC's claim that it may proceed under 7 USC §9 without regard to the Actual Delivery Exception thus ignores the broader statutory scheme and history of its enactment.

## II. CONCLUSION

This Court must act in accordance with the plain language of the CEA and the legislative intent under Dodd-Frank to expand CFTC's authority to retail sales, with a hard boundary, excluding sales within the Actual Delivery Exception. Spitzer requests that the within action be dismissed in its entirety under F.R.C.P. Rules 12(b)(1) and 12(h)(3) as lacking subject matter jurisdiction, and that this Court refrain from exercising ancillary jurisdiction under 28 U.S.C. §1367(a).

Respectfully submitted,

DATED:       February 14, 2023

Daniel B. Spitzer, In Pro Per

---

[1] 7 USC §25(a)(2) provides in material part: "Except as provided in subsection (b), the rights of action authorized by this subsection and by sections 7(d)(13), 7a-1(c)(2)(H), and 21(b)(10) of this title ***shall be the exclusive remedies under this chapter available to any person who sustains loss as a result of any alleged violation of this chapter...***" (emphasis added).

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.

## SUPPLEMENTAL DECLARATION OF DANIEL B. SPITZER

I, DANIEL B. SPITZER, hereby declare:

1.   I am an attorney at law duly licensed to practice before all courts of the State of California, all District Courts in the State of California, the Ninth Circuit, and the Supreme Court of the United States. In this proceeding, I am appearing in propria persona, representing myself as the sole proprietor of my law firm, the Law Offices of Daniel B. Spitzer ("**Spitzer**").

2.   The facts set forth in this declaration are based either on my own personal knowledge, documents in the public record, or business records established and maintained by my law office, which records: (a) are established at or about the time of the events and transactions recorded therein; (b) are relied upon for their trustworthiness and accuracy in the operation of my law practice; and (c) are established and maintained under my direct supervision and control. If called as a witness, I could and would testify competently as to these facts.

3.   My very first substantive filing in this case took place on September 28, 2021, when I filed a document entitled Objection to Receiver's Claims Report; etc. [Docket No. 318] ("**Spitzer Objection**"). On page 4 of that pleading, as one ground of objection, I included one entire section of the brief entitled "Lack of Jurisdiction Under Commodities Exchange Act." Thus from my very first appearance in this action, even though I am a non-party, I made it clear to all concerned that I believe the case lacks subject matter jurisdiction under the Commodities Exchange Act.

4.   At the hearing on the Spitzer Objection on January 19, 2023, the Court overruled my objection. At that time, I noted to the Court that part of the Spitzer Objection was an objection based on lack of subject matter jurisdiction, and that this motion to dismiss had already been filed, setting out much greater detail the factual and legal arguments in favor of my position. I asked the Court to refrain from ruling on the issue of subject matter jurisdiction in its ruling on the Spitzer Objection. On the record, the Court instructed that its ruling on the Spitzer Objection did ***not*** constitute a ruling on this pending motion to dismiss,

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.

and that the Court's ruling on the Spitzer Objection was not to be construed as res judicata or collateral estoppel on this motion to dismiss.

5.     I request that the Court permit me to appear remotely for any scheduled hearing on this matter. In connection with the hearing on the Spitzer Objection on January 19, 2023, the Court insisted that I appear personally in Dallas to argue why my claim to more than $180,000 in unpaid attorney fees and costs should not be subordinated. Aside from the two days of work lost while in transit and appearing at the hearing, I spent nearly $1,400.00 in out-of-pocket expense – only to have the Court overrule my objection and subordinate my claim (which, as a practical matter, means that I will never be paid anything). The loss of any recovery from this claim has been devastating financially and, as important as I know this motion is, I simply cannot afford to spend more money to appear personally at the hearing.

I declare under the laws of the United States that the foregoing is true and correct, and that this declaration is executed at Encino, California on February 14, 2023.

Daniel B. Spitzer

REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(1) AND 12(h)(3); etc.