# United States Court of Appeals for the Fifth Circuit

No. 23-10420

United States Court of Appeals
Fifth Circuit
**FILED**
March 7, 2024
Lyle W. Cayce
Clerk

Commodity Futures Trading Commission; Alabama Securities Commission; State of Alaska; Arizona Corporation Commission; California Commissioner of Business Oversight; Colorado Securities Commissioner; State of Delaware; State of Florida; Office of the Attorney General and State of Florida Office of Financial Regulation; Office of the Georgia Secretary of State; State of Hawaii; Securities Enforcement Branch, State of Hawaii; Idaho Department of Finance; Indiana Securities Commissioner; Douglas M. Ommen, *Iowa Insurance Commissioner*; Office of the Kansas Securities Commissioner; Kentucky Department of Financial Institutions; Maine Securities Administrator; State of Maryland, *Ex Rel Maryland Securities Commissioner*; Dana Nessel, *Attorney General, on Behalf of the People of Michigan*; Mississippi Secretary of State; Nebraska Department of Banking & Finance; Office of the Nevada Secretary of State; New Mexico Securities Division; The People of the State of New York, By Letitia James; Attorney General of the State of New York; Oklahoma Department of Securities; South Carolina Attorney General; South Carolina Secretary of State; South Dakota Department of Labor & Regulation; Division of Insurance, State of South Dakota; Commissioner of the Tennessee Department of Commerce and Insurance; State of Texas; Washington State Department of Financial Institutions; West Virginia Securities Commission; State of Wisconsin; Elizabeth Marie Schmitt,

*Plaintiffs—Appellees*,

*versus*

TMTE, Incorporated, *also known as* Metals.com; Et al.,

*Defendants*,

Kelly Crawford,

*Appellee*,

*versus*

Daniel Bruce Spitzer,

*Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-2910

---

Before Stewart, Clement, and Ho, *Circuit Judges*.

Edith Brown Clement, *Circuit Judge*:*

Daniel Bruce Spitzer, a *pro se* non-party, appeals a district court order approving a receiver's proposed plan of distribution of the assets of several entities and individuals allegedly involved in a scheme to defraud seniors by selling them precious metals at inflated prices. We AFFIRM.

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

I.

The Commodity Futures Trading Commission brought a civil enforcement action under 7 U.S.C. § 9(1) charging TMTE Inc., Barrick Capital, Inc., and their principals, Simon Batashvili and Lucas Asher, with defrauding at least 1,600 mostly elderly or retirement-age individuals out of hundreds of millions of dollars in grossly overvalued gold and silver bullion. Thereafter, the district court found good cause to believe that the defendants violated the Commodity Exchange Act and appointed a receiver, Kelly Crawford. The district court directed Crawford to process claims against the defendants and to submit a claims report to the court with recommendations concerning the amount and classification of each claim.

Crawford found that Asher and Batashvili operated a "commodities boiler room" in Beverly Hills, California akin to the "hedonistic brokerage firm portrayed in '*The Wolf of Wall Street*.'" Per Crawford, Asher and Batashvili "encouraged their sales crew to use lies, high pressure tactics, and fear to persuade elderly investors to move substantially all, if not all, of their life's savings and retirement into" their scheme. Asher and Batashvili rewarded their employees with "huge commissions and gifts" and even had a cash blowing machine in their office. And Asher and Batashvili themselves lived lavish lifestyles replete with expensive cars, homes, art, and jewelry, all at the expense of the seniors they are alleged to have preyed upon.

In March 2021, the district court established a claims adjudication process requiring claimants to file their claims with Crawford. Spitzer, an attorney who represented the defendants in prior matters unrelated to the alleged fraud, submitted a claim to Crawford for unpaid legal fees, totaling approximately $213,000.

On July 30, 2021, Crawford filed his claims report recommending allowing the claims of over 1,000 metals investors totaling more than $63

million (later amended to $68 million) and fifteen non-metals investors totaling approximately $4.3 million.[1] To calculate the value of each metals investor's claim, Crawford—utilizing an expert in the precious metal industry—used the fair market value of the metals on the date the receivership was created, September 22, 2020. Crawford recognized that the values of the metals at issue may fluctuate significantly from day to day and that "there are situations in which investors or their agents are either still in possession of the metals they ordered, or they have already sold the metals for a different price than the fair market value as of September 22, 2020" but concluded that this methodology "is the most equitable [methodology] available because it treats all claimants equally." The value of the investors' claims approved far exceeded the amount in the receivership account balance, which was just under $9.4 million as of April 8, 2023. Accordingly, Crawford recommended that distributions be made to the holders of allowed claims on a pro-rata basis.

Crawford also received claims from 12 individual creditors, including Spitzer. Citing equitable concerns, Crawford recommended that approved creditor claims should be subordinated to those of the investors. As for Spitzer's unsecured creditor claim, Crawford initially recommended the court disallow it for "insufficient information," but later allowed $182,970.40 of Spitzer's claim after receiving additional documentation, again subordinated to the claims of the investors.

In September 2021, Spitzer filed an objection to the receiver's recommendation in the district court (even though the court had directed

[1] The "non-metals investors" invested monies in certain of defendants' entities in receivership that did not sell metals.

parties to file such objections with the receiver).[2] He objected to Crawford's methodology for valuing investors' claims and argued that there were no grounds for subordinating creditor claims. After a hearing, the district court overruled Spitzer's objections. As to the subordination objection, the district court concluded that subordinating creditors' claims to those of investors was the "right thing to do" because "the actual investors themselves were the primary targets of the fraud" and other courts had taken such action in similar circumstances. With respect to Spitzer's methodology challenge, the district court found that although it may be possible that a "more accurate methodology . . . could exist," pursuing one would be cost-prohibitive, thus "defeat[ing] the purpose of receivership." The district court adopted Crawford's recommendation, and Spitzer now appeals.

## II.

Spitzer invokes the collateral order doctrine as a basis for our jurisdiction. We have previously recognized that a "decision by the district court to approve [a] [r]eceiver's distribution plan fits within the confines of the collateral order doctrine" because "it conclusively determines the manner in which the receivership assets should be distributed," is "separate from the merits of the [underlying] complaint," and will be "effectively unreviewable on appeal because the assets from the receivership will be distributed, and likely unrecoverable" before a final decision. *SEC v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 330 (5th Cir. 2001). We therefore have jurisdiction over Spitzer's appeal of the order overruling his objection to the receiver's claims report.

---

[2] Separately, Spitzer moved to dismiss the entire case for lack of subject-matter jurisdiction, but the district court denied the motion. While Spitzer sought review of this order as well, we have already dismissed this part of his appeal for lack of appellate jurisdiction.

III.

We review equitable distributions for abuse of discretion. *SEC v. Great White Marine & Recreation, Inc.*, 428 F.3d 553, 556 (5th Cir. 2005). "Once assets have been placed in receivership, it is a recognized principle of law that the district court has broad powers and wide discretion to determine the appropriate relief in an equity receivership." *SEC v. Stanford Int'l Bank, Ltd.*, 927 F.3d 830, 840 (5th Cir. 2019) (cleaned up). As a result, "appellate review is correspondingly narrow," and we "will not disturb a district court's permissible exercise of discretion on appeal." *Forex,* 242 F.3d at 331–32 (quotation marks and citation omitted); *see also United States v. Durham*, 86 F.3d 70, 73 (5th Cir. 1996) (affirming distribution where the district court "used its discretion in a logical way to divide the money").

IV.

Spitzer challenges the distributional plan on two grounds. He claims that (1) the plan "fails to articulate any objective rationale for its disparate treatment of general creditors vs. purchasers of the precious metals products" and (2) "the receiver's valuation methodology for categorizing and paying claims is hopelessly irrational and flawed." We address each in turn.

First, Spitzer argues that the receiver showed no grounds to subordinate his claims. But the receiver explained that he was subordinating the claims of defrauded investor-victims to those of creditors. And district courts frequently give defrauded investors priority over general creditors because the funds available for distribution often consists of proceeds traceable to the fraud. *See, e.g.*, *CFTC v. PrivateFX Global One*, 778 F. Supp. 2d 775, 786 (S.D. Tex. 2011); *CFTC v. RFF GP, LLC*, No. 4:13-CV-382, 2014 WL 491639, at *2 (E.D. Tex. Feb. 4, 2014), *report and recommendation adopted*, 2014 WL 994928 (E.D. Tex. Mar. 10, 2014); *Pre-War Art, Inc. v.*

*Stanford Coins & Bullion, Inc.*, No. 3:09-CV-00559-N, 2021 WL 424283, at *5 (N.D. Tex. Feb. 8, 2021); *SEC v. Megafund Corp.,* No. 3:05–CV–1328–L, 2007 WL 1099640, at *2 (N.D. Tex. Apr. 11, 2007). This is exactly the kind of equitable consideration district courts are empowered to account for. *See Forex*, 242 F.3d at 331; *see also Great White Marine,* 428 F.3d at 557 (finding no abuse of discretion where a district court prioritized investor claims over those of an unsecured creditor). "For us to hold otherwise would be to chain the hands of the court in Equity to do what is right under the circumstances." *Durham*, 86 F.3d at 73.

Spitzer contends that the district court should not have subordinated his claim because he had no knowledge of the fraud and rendered legitimate legal services benefitting the defendants. Spitzer, however, points to no authority for this proposition. In any event, neither point is relevant. Crawford did not recommend (and the district court did not approve) subordinating Spitzer's claim because of any knowledge of the fraud or wrongful conduct on Spitzer's part. Instead, Crawford recommended (and the district court approved) prioritizing the investor-victims' claims, of which subordination of creditors' claims was a natural result.

As to the valuation methodology, Crawford contends that Spitzer does not have standing to challenge it because "Spitzer's claim is not based on an investment in metals." Crawford argues that "the funds available for distribution are so grossly deficient to compensate the investor victims for their losses, it does not matter to the subordinated claimants the methodology used for calculating the investor-victim claims." We disagree. Crawford allowed Spitzer's claim. So, if Crawford's investor-claim valuation methodology did grossly overstate the value of the investors' metals, Spitzer may be able to recover should there be any monies left over. Accordingly, Spitzer "has a personal stake in the outcome," and therefore standing to appeal. *See Forex*, 242 F.3d at 329.

But was Crawford's valuation methodology erroneous? Spitzer argues that the methodology "fails to consider the individual characteristics of each investor," including whether the investor sold or otherwise received compensation for the precious metals. In determining how to distribute funds of equitable receiverships, the district court has significant discretion to do "what is right under the circumstances." *Durham*, 86 F.3d at 73; *see also Forex*, 242 F.3d at 332 ("[T]he district court, acting as a court of equity, [is] afforded the discretion to determine the most equitable remedy."). In so doing, the court is not bound to follow any particular plan or method of distribution simply because it is "permissible under the circumstances." *Durham*, 86 F.3d at 73. This extends to the valuation methodology.

Here, the district court used a logical way to calculate the value of investors' claims and thus did not commit an error requiring our intervention. *See id.* The methodology is supported by an expert report, considered the possibility that some investors still possess the metals or have already sold them for a different price than that the receiver selected, prioritized fairness when considering the rapid fluctuations in the value of the metals, and sought to conserve the value of the receivership estate. Even though, as the district court noted, a more accurate methodology "could exist," developing it "would have the receiver spending all of the money" in the receivership estate, which "defeats the purpose of receivership." *See, e.g.*, *SEC v. Byers*, 637 F. Supp. 2d 166, 177 (S.D.N.Y. 2009) (rejecting tracing methodology based on equitable grounds and because that method would be "difficult, time-consuming, and expensive—and the ultimate benefit to the estate would be minimal at best"); *SEC v. Faulkner*, No. 3:16-CV-1735-D, 2020 WL 2042339, at *5–6 (N.D. Tex. Apr. 28, 2023) (similar). Accordingly, the district court found that the methodology was "as accurate as you could feasibly get" under the circumstances. In other words, the methodology was equitable. *See Horwitt v. Flatiron Partners, LP*, No. 21-2245, 2023 WL

192500, at *2 (2d Cir. Jan. 17, 2023) ("It is clear that an equitable plan is not necessarily a plan that everyone will like." (cleaned up)). We hold that this conclusion was not an abuse of discretion.[3]

V.

Because the district court did not abuse its discretion in entering the distribution order over Spitzer's objection, we AFFIRM.

[3] Spitzer also contends, in a footnote, that Crawford's use of the "melt" value cannot be sustained. But Crawford's expert concluded that 99 percent of the metals sold were "bullion coins or bars that have value that approximates their intrinsic precious metals value," *i.e.*, melt value. Spitzer presented no controverting expert analysis calling this conclusion into question.