IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, e*t al.*<br><br>Plaintiffs,<br><br>v.<br><br>TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI,<br><br>Defendants,<br><br>TOWER EQUITY, LLC,<br><br>Relief Defendant. | CIVIL ACTION NO.<br>3:20-CV-2910-X |

## **RECEIVER'S TWELFTH FEE APPLICATION**

Pursuant to the *Statutory Restraining Order* ("*SRO*") entered by the Court on September 22, 2020, the Receiver is required to submit periodic fee petitions for authorization to pay fees and expenses of the receivership. The Receiver provided the U.S. Commodity Futures Trading Commission (the "CFTC") with a complete copy of the proposed Application, together with all exhibits and relevant billing information. The CFTC is not opposed to the relief requested herein.

The Receiver's Twelfth Fee Application covers the three month period from April 1, 2024, through June 30, 2024.

# I.
# FEES AND EXPENSES INCURRED

### A. Receiver Fees & Expenses.

<u>Fees.</u>  By this Application, the Receiver requests authority to pay **$20,709** in Receiver fees, which is 90% of the total Receiver fees of $23,010 incurred during the three month period from April 1, 2024, through June 30, 2024. During this period, the Receiver provided 59 hours of service at his discounted hourly rate of $390.00[1]. In addition to reducing his standard hourly billing rate, the Receiver also discounted his total fees by 10%. The valuable services provided by the Receiver during this time period are set forth in the invoice marked **Exhibit A**.[2] The services are also summarized in the Thirteenth Report of the Receiver [Dkt. 745], filed on July 24, 2024.

Pursuant to the *SRO*, the Receiver seeks authority to pay a total of **$20,709** in Receiver fees incurred from April 1, 2024, through June 30, 2024.

### B. Receiver's Primary Counsel Fees and Expenses.

<u>Fees.</u>  The law firm of Scheef & Stone, L.L.P. ("Scheef & Stone") serves as primary counsel for the Receiver. Scheef & Stone submits monthly invoices to the Receiver for the services rendered. By this Application, the Receiver requests authority to pay Scheef & Stone **$73,050.75** in fees, which is 90% of the total fees of $81,167.50 billed by Scheef & Stone for the work performed for the three month period from April 1, 2024, through June 30, 2024. During this period, the attorneys, paralegals, and law clerks of Scheef & Stone provided 240.50 hours of service at a discounted blended hourly rate of $304. Scheef & Stone's invoices for the period from April 1, 2024 through June 30, 2024 are marked as **Exhibit B**[3].

---

[1] Mr. Crawford's regular billing rate for non-receivership matters is $610 per hour.
[2] *Appendix in Support of Receiver's Twelfth Fee Application ("App.")*, pp. 3 to 9, Exh. A.
[3] App. pp. 10 to 31, Exh. B.

Expenses. In addition, to assist the receivership estate, Scheef & Stone incurred expenses in the amount of **$4,053.85** between April 1, 2024, through June 30, 2024. The expenses are set forth in detail in the invoice attached hereto as Exhibit B, and include $3,733.11 for three months paid to DISCO for hosting the platform used to store thousands of pages of documents recovered by the Receiver and made available to the parties in the lawsuit.

In sum, pursuant to the *SRO*, the Receiver seeks authority to pay Scheef & Stone a total of **$77,104.60** in fees and expenses incurred for the three month period from April 1, 2024 through June 30, 2024.

The attorneys and paralegals of Scheef & Stone who provided services to the Receiver during this period, their billable rates, and the hours billed are summarized as follows:

### RECEIVERSHIP IN PRIMARY LAWSUIT

The Receiver's paralegals continue to handle communications with anxious investors about the status of their claim and when they can expect to receive a distribution from the Receiver. Because of the delays in the case, numerous investors call or email the Receiver each week asking about the status of the case. The remainder of the time billed is for activities set forth in the Receiver's Thirteenth Status Report to the Court and the activities are described on the attached invoices. They include, but are not limited to, closing on the sale of one of the Philadelphia properties, obtaining a contract to sell another Philadelphia property that was approved by the Magistrate, and continuing to market for sale the two remaining Philadelphia properties. In addition, the Receiver responded to discovery requests in the underlying lawsuit and the Receiver was deposed in the underlying lawsuit. The Receiver also attended the unsuccessful mediation of the underlying lawsuit. Moreover, the Receiver had the receivership's 2023 tax return prepared and filed and continued to work with his tax counsel in an attempt to obtain a subordination agreement from the IRS to allow the Receiver to make an interim distribution of funds to the

approved claimants.  Moreover, the Receiver demanded that the Defendants comply with the terms of the Court's orders and provide access to the Defendants' bank account that receives New Income.

| Attorney/Paralegal | Hours Billed | Billable Rate | Total Billed |
|---|---|---|---|
| Peter Lewis (Partner) | 72.20 | $440 | $31,768 |
| Mark Nielsen (Partner) | 0.50 | $625 | $312.50 |
| David Wills (Associate) | 80.70 | $345 | $27,841.50 |
| Marcella Morales (Paralegal) | 11.20 | $150 | $1,680 |
| Cynthia Morris (Paralegal) | 1.00 | $125 | $125 |
| Deb Baxter (Paralegal) | 33.00 | $150 | $4,950 |
| **TOTALS** | 198.60 | | $66,677 |
| After 10% Discount | | $302 (discounted blended rate) | $60,009 |

### RECEIVER'S CLAWBACK LAWSUIT TO RECOVER COMMISSIONS

In the Receiver's clawback lawsuit, a significant amount of time was billed in researching the amount of clawback payments attributable to each defendant, pursuing discovery on the defendants, discussing settlement with certain defendants, and pursuing default judgments against defendants who failed to file an answer or other responsive pleading.

| Attorney/Paralegal | Hours Billed | Billable Rate | Total Billed |
|---|---|---|---|
| Peter Lewis (Partner) | 8.20 | $440 | $3,608 |
| David Wills (Associate) | 27.10 | $345 | $9,349.50 |
| Marcella Morales (Paralegal) | 3.60 | $150 | $540 |

| | | | |
|---|---|---|---|
| **TOTALS** | 38.90 | | $13,497.50 |
| After 10% Discount | | $312 (discounted blended rate) | $12,148 |

## RECEIVER'S LAWSUIT AGAINST CARLOS CRUZ, ET AL.

The time billed is associated with obtaining a new scheduling order for the case based upon the extended scheduling order that was entered in the Underlying Lawsuit; docketing the same; and filing a Motion to Compel against the Defendants in the case.

| Attorney/Paralegal | Hours Billed | Billable Rate | Total Billed |
|---|---|---|---|
| Peter Lewis (Partner) | 1.20 | $440 | $528 |
| David Wills (Associate) | 1.00 | $345 | $345 |
| Marcella Morales (Senior Paralegal) | 0.80 | $150 | $120 |
| **TOTALS** | 3.00 | | $993 |
| After 10% Discount | | $298 (discounted blended rate) | $893.70 |

**C.  Receiver's Ancillary Counsel Fees and Expenses – Brown Fox, LLC**

The Receiver originally retained Cort Thomas of the law firm of Brown Fox, PLLC to represent the Receiver in the Receiver's dispute with Bank of America because the Receiver's primary counsel had a conflict of interest in being adverse to Bank of America.  Specifically, Mr. Thomas was retained to represent the Receiver with claims against Bank of America arising from the failure of Bank of America to comply with the *SRO*.  In addition, the Receiver retained Charlene Koonce of Brown Fox, PLLC to assist in pursuit of the Receiver's claims against the Defendants' salespersons to recover commissions, and to assist in pursuit of the Receiver's claims against Carlos Cruz and his entities MagicStar Arrow, LLC and Magic Star Arrow, Inc.  The

Receiver has also sought the receivership expertise of Mr. Thomas and Ms. Koonce on various issues that have arisen in the receivership. By this Application, the Receiver requests authority to pay Brown Fox, PLLC **$3,772.50** in fees, which is based upon 11.10 hours of work performed from April 1, 2024, through June 30, 2024, at Ms. Koonce's rate of $450 (partner), Andrew Debter's rate of $325 (associate), and Allan Carrillo's rate of $350 (associate). Their work was divided as follows: 0.50 hour totaling $110 of legal services representing the Receiver in his lawsuit asserting clawback claims against those who received commissions from the Defendants; and 10.60 hours of legal services totaling $3,662.50 representing the Receiver in his lawsuit seeking to recover fraudulent transfers of more than $20 million from Carlos Cruz and his entities MagicStar Arrow Entertainment, LLC, and MagicStar Arrow, Inc. A description of the services provided by the attorneys of Brown Fox PLLC is set forth in the invoices marked as **Exhibit C**[4].

In sum, pursuant to the *SRO*, the Receiver seeks authority to pay Brown Fox PLLC a total of **$3,772.50** in fees incurred from April 1, 2024, through June 30, 2024.

### D. Receiver's Accounting Firm and Tax Counsel Fees and Expenses

#### 1. Ahuja & Clark

The accounting firm of Ahuja & Clak, PLLC serves as the accounting firm for the receivership. By this Application, the Receiver requests authority to pay Ahuja & Clark, PLLC **$18,686.23** in fees and expenses for the 84.90 hours of work performed for the period from April 1, 2024 through July 9, 2024. During this period, the accounting staff of Ahuja & Clark, PLLC provided valuable services in preparing and filing the 2023 federal tax return for the receivership. The invoice from Ahuja & Clark, PLLC for the period from April 1, 2024 through July 9, 2024 is marked as **Exhibit D**[5].

---

[4] App. pp. 32 to 38, Exh. C.
[5] App. pp. 39 to 44, Exh. D.

**2. Meadows Collier**

The Receiver retained Meadows Collier to represent the Receiver with respect to an IRS audit of Defendant Chase Metals. The Receiver required the tax expertise of the Meadows Collier attorneys to advise him regarding the tax issues raised by the IRS and the effect of the IRS audit upon the Receiver's desire to make distributions of receivership assets to the approved Claimants. By this Application, the Receiver requests authority to pay Meadows Collier **$9,428** in fees, which is based upon 14.70 hours of work performed from June 21, 2023 through April 18, 2024. In addition, Meadows Collier incurred a pacer fee of $5.30. As shown in the invoices attached hereto as **Exhibit E**[6], the services of attorneys Brian Spiegel and Anthony Daddino were valuable to the receivership estate in interfacing with the IRS and advising the Receiver regarding the IRS issues associated with the Chase Metals audit.

Pursuant to the *SRO,* the Receiver seeks authority to pay Meadows Collier a total of **$9,428** in fees and **$5.30** in expenses incurred from June 21, 2023 through April 18, 2024.

\*\*\*

Based on the foregoing, the Receiver believes the services rendered to the receivership by the Receiver, the Receiver's law firm Scheef & Stone, the Receiver's ancillary attorneys, and the Receiver's tax counsel were valuable and that the rates charged to the receivership were fair and reasonable. Moreover, the expenses incurred for the receivership were reasonable and necessary. The attorneys for the CFTC previously reviewed the invoices of the Receiver, Scheef & Stone, Brown & Fox, PLLC, Ahuja & Clark, and Meadows Collier, and are not opposed to the invoices being paid with the discounts being applied by the Receiver as set forth herein.

---

[6] App. pp. 45 to 52, Exh. E.

## II.
## LEGAL DISCUSSION OF GUIDELINES FOR PAYMENT OF RECEIVERSHIP FEES AND EXPENSES

In reviewing the total discounted fees of the Receiver, the Receiver's counsel, the Receiver's ancillary counsel, the Receiver's accountants, and the Receiver's tax counsel, divided by the hours worked, the lodestar average rate per hour is $306. In accordance with the law governing calculation of the lodestar rate, the lodestar rate for which approval is sought in this case is reasonable and does not merit any adjustment.

The "lodestar" method of evaluating the reasonableness of fees, which has been expressly approved by the Supreme Court, requires the court to look into the prevailing market rates in the relevant community and compare the prevalent rates with the average rate charged in the matter in issue. *Perdue v. Kenny*, 130 S.Ct. 1662, 1673 (2010). The lodestar method also includes most of the relevant factors constituting a "reasonable" fee but does not rely expressly require the "subjective" *Johnson* factor analysis.[7] *Id.*

The Court calculates the lodestar by determining the number of hours reasonably expended by an appropriate hourly rate in the community.[8] *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). In evaluating whether requested fees are reasonable, the court may use its own expertise and judgment to independently assess the value of an attorney's services. *Davis v. Bd. Of Sch. Comm'rs of Mobile County,* 526 F.2d 865, 868 (5th Cir. 1976). The Court also looks for evidence of "billing judgment," or the attorney or receiver's decision to discount or write off time that was unproductive or duplicative. *Saizan v. Delta Concrete Prods. Co.,* 448 F.3d

---

[7] These *Johnson* factors are nevertheless addressed herein. *See infra.*

[8] The movant bears the burden of proving that the compensation requested is reasonable, and satisfaction of this burden requires that the movant present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required. *Louisiana Power,* 50 F.3d at 324.

795, 799 (5th Cir. 2006). The amount of the award, and any reduction of the requested fee award, is within the trial court's discretion. *See, e.g., United States Football league v. National Football League,* 887 F.2d 408, 415 (2d Cir. 1989).

Additional considerations are also relevant in the context of an equity receivership. First, the agreement or opposition of the CFTC to the fee application is entitled to great weight. *See, e.g., SEC v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973). Further, given the public service nature of equity receiverships, courts also consider the amounts recovered or other results obtained by the receiver in determining what constitutes a "reasonable fee." *SEC v. Goren,* 272 F.Supp.2d 202, 207 (E.D.N.Y. 003). Additionally, examination of reasonableness and necessity should take into account all circumstances surrounding the receivership. *See, SEC v. W.L. Moody & Co., Bankers (Unincorporated),* 374 F. Supp. 465, 480 (S.D. Tex. 1974), *aff'd, SEC v. W.L. Moody & Co.,* 519 F.2d 1087 (5th Cir. 1975). The complexity and difficulty associated with the receivership are highly relevant factors in determining the reasonableness of professional fees. *See, SEC v. Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. 1220, 1222 (S.D.N.Y. 1973) (awarding interim fees and expenses to law firm for role in receivership and noting that it involved wide variety of complex legal matters requiring the time, competence, and diverse resources of a law firm of high caliber). Further, Courts examine the credentials, experience, reputation, and other professional qualities required to carry out a court's orders when assessing the reasonableness of the rates charged for services to a receivership. *See, W.L. Moody & Co.,* 374 F. Supp. at 481 (holding that a court should give "considerable weight" to "a receiver's abilities, as required by the tasks of the receivership"); *see also, Fifth Ave. Coach Lines, Inc.,* 364 F. Supp. at 1222 (fees awarded in full because they were based on law firm's usual hourly rate and supported by meticulous records).

The Receiver submitted detailed descriptions of the matters on which services were expended, the number of hours billed by each professional, the rates charged by each, and the lodestar calculation for the fees submitted in this petition. Further, the Receiver's invoices and this motion demonstrate that billing judgment was exercised in the reduction of the standard rates charged by the Receiver[9], and in discounting the total invoices of not only the Receiver, but also the invoices of the Receiver's primary law firm[10]. Finally, the Receiver requests that the Court judicially notice the much higher hourly rates approved in other receiverships in Texas.[11]

The request for approval of the disbursements is also consistent with the "*Johnson factors*" set forth by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Based on the lodestar calculation and the Johnson factors discussed above, the Receiver believes that the fees submitted are appropriate, just, and reasonable.

> **A.** **The Time and Labor Required.** The Receiver respectfully directs the Court's attention to the foregoing summary schedule of unpaid fees and expenses, which identifies the 410.20 total number of hours billed by the Receiver, the Receiver's attorneys, and the Receiver's

---

[9] The Receiver's standard hourly rate is $610 but is discounted for receivership work to $390.

[10] The Receiver discounted more than $9,000 from his invoices and the invoices of Scheef & Stone, LLP.  *Id.*

[11] *See, for example, Securities and Exchange Commission v. Correll;* Case No. 4:05-CV-472, in the United States District Court for the Eastern District of Texas, Sherman Division (approving Receiver fees of $400 per hour and lead counsel fees of $585 per hour); *SEC v. Amerifirst Funding, Inc., et al.,* Cause No. 3:07-CV-01188, Docket No. 117, in the United States District Court for the Northern District of Texas; Receiver's counsel's rates, discounted by 10–20% is $420 per hour; *SEC v. W Financial Group, LLC, et al.,* Cause No. 3:08-CV-0499-N, Docket No. 65, in the United States District Court for the Northern District of Texas; Receiver's counsel's rate is $510 per hour, and $165 per hour for a law clerk; *CFTC v. Pousa;* Case No. 1:12-cv-00862 in the United States District Court for the Western District of Texas, Austin Division (approving Receiver fees in excess of $600 per hour); and *Securities and Exchange Commission v. Stanford International Bank, Ltd., et al.;* Case No. 3:09-CV-0298-N, in the United States District Court for the Northern District of Texas, Dallas Division (approving Receiver's lead counsel fees of $420 to more than $900 per hour).

---

accountants for the periods of time specified herein. The fees sought by this Application are described in the invoices attached hereto and represent time, as discussed in the Receiver's Thirteenth Status Report, and generally allocated as follows:

1. <u>Claims</u> (6%): The Receiver and his staff continued to field numerous calls each week from a myriad of anxious claimants wanting to know when a distribution will be made.

2. <u>Claims Against Salespersons to Recover Commissions</u> (20%): The Receiver and his attorneys continued litigating the Receiver's lawsuit to recover approximately $14 million in commissions transferred from the Defendants to salespersons, which the Receiver contends are recoverable as fraudulent transfers. The Receiver and his attorneys discussed settlements with some of the defendants, continued the process of obtaining default judgments against some of the defendants, and pursued written discovery of the defendants.

3. <u>Sale of Philadelphia Properties</u> (25%): During the last three months, the Receiver closed on the sale of one of the properties in Philadelphia; and entered into a contract to sell another property in Philadelphia, that the Magistrate recommended to the District be approved.

4. <u>Lawsuit Against Carlos Cruz</u> (2%): The Receiver and his attorneys filed and obtained an amended Scheduling Order, and filed a Motion to Compel against the defendants.

5. <u>General receivership issues</u> (8%): This category includes time devoted to general administration of the receivership estate, answering questions from regulators, providing notice of the *SRO* to third parties, maintaining the receivership website,

       developing strategy for the receivership; marketing the domain name metals.com for sale, and attending to the payment of expenses of the receivership.

6. <u>IRS/tax issues</u> (11%): The Receiver and his attorney continued discussions with the Internal Revenue Service about subordinating its' claim for taxes due by the Defendants to the claims of the approved claimants in the receivership. In addition, the Receiver and his attorneys researched the constructive trust nature of the recoveries in the receivership.

7. <u>The Underlying lawsuit (22%):</u> The Receiver and his attorneys devoted time to providing documents and other information to the Defendants in response to Requests for Production and Interrogatories served by the Defendants on the Receiver. In addition, the Receiver provided testimony at his deposition that was noticed by the Defendants. Also, the Receiver demanded that the Defendants comply with the Consent Injunction and provide access to the Defendants' bank account for New Income. The Defendants refused to comply with the Consent Injunction and the Receiver sought to enforce such provision of the Consent Injunction against the Defendants.

8. <u>Actions in Other States</u> (6%): The Receiver continues to provide status reports to the federal court in the Central District of California in a lawsuit against the Defendants that is currently stayed by the SRO. In addition, the Receiver had to appeared remotely in a California state court to persuade the Court to dismiss the lawsuit so that further expense of monitoring the case and providing status reports would not be required.

    **B.**    **<u>The Novelty and Difficulty of the Questions.</u>**    Federal equity receiverships require extensive experience in order to act swiftly and efficiently in securing assets, obtaining

documents and data to find additional assets, and to communicate with investors and law enforcement agencies. The *Receiver's Thirteenth Report* and the detailed invoices attached hereto reflect the novelty and difficulty of the questions addressed by the Receiver, such as selling real property pursuant to the Federal Rules of Civil Procedure governing receiverships, establishing the claims process and defending the claims process on appeal, negotiating with the Internal Revenue Service, and pursuing the recovery of fraudulent conveyances.

   C. **The Skill Requisite to Perform the Service.** The Receiver believes the services performed in this case to date required individuals possessing considerable experience in the administration of receiverships, claims processes, distribution plans, asset seizure, collection and litigation. The Receiver, Scheef & Stone, L.L.P., Brown & Fox PLLC, Ahuja & Clark, and Meadows Collier, for which disbursement approval is sought, have considerable experience in such areas.

   D. **The Preclusion of Other Employment Due to Acceptance of the Case.** Neither the Receiver, Scheef & Stone, LLP, Brown & Fox PLLC, Ahuja & Clark, nor Meadows Collier declined any representation solely because of their services in this case, although the scope of the receivership is so broad it requires a substantial amount of the Receiver's time and the time of his counsel.

   E. **The Customary Fee.** The hourly rates sought herein for the Receiver and the Receiver's attorneys are *substantially* lower than the rates charged by other practitioners of similar experience levels in Texas. Indeed, the per hour rates charged by the Receiver's counsel and paralegals whose fees are included herein (primarily ranging between $125 - $150 for paralegals and $345 – $625 for attorneys) are $100 to $200 per hour lower than the rates charged on other receiverships pending in Texas. Moreover, the hourly rate of the Receiver charged to the

receivership has remained the same since September 2020.[12] The lodestar rate of $306 per hour also demonstrates that when appropriate the Receiver is having work performed by less expensive attorneys or legal assistants. Moreover, the Receiver exercised his billing judgment by discounting his own fees substantially, as well as the fees of his primary counsel. Indeed, as a result of the Receiver's discounts and writing off of time, the Receiver reduced the fees charged by himself and Scheef & Stone, LLP by more than $9,000 for the period of April 1, 2024 through June 30,, 2024.

F.  **Whether the Fee is Fixed or Contingent.**  The Receiver's fees and his counsel's fees are fixed insofar as monies exist by way of Receivership Assets from which to pay such fees, but payment of the fees and expenses is subject to approval by the Court.

G.  **Time Limitations Imposed by the Client or Other Circumstances.**  There were no time limitations imposed for this period other than the deadlines imposed in the scheduling orders of the Clawback lawsuit and the lawsuit against Cruz.

H.  **The Amount Involved and the Results Obtained**.  The fees for which payment is sought were for work summarized previously. The Receiver's attorneys and accountants contributed significantly to the Receiver's recovery of monies. The receivership account currently has a balance of more than $9.6 million– an increase of more than $3 million, net of fees and expenses, since the Receiver's First Fee Application. Indeed, during the period covered by this Twelfth Fee Application, deposits of more than $286,700 were added to the receivership account; the Receiver continued to sell real property, and settle claims in the Receiver's lawsuit to recover $34 million in fraudulent transfers.

I.  **The Experience, Reputation and Ability of the Attorneys.**  Scheef & Stone, the Receiver's primary counsel, includes numerous attorneys who have experience in representing

---

[12] *See* Order entered by Court [Dkt. 3099] in *Securities and Exchange Comm'n. v. Stanford Int'l Bank, Ltd.,* No. 3:09-cv-0298-N, in which the Court approved the request by primary counsel for the Stanford receiver to increase his hourly rate from $720 to $973.

equity receivers in federal securities or commodities enforcement cases, and have done so for numerous years. The reputation of Scheef & Stone is recognized and respected in these fields. Mr. Crawford has served as a receiver in more than 13 federal court cases brought by either the CFTC or the Securities and Exchange Commission, with Scheef & Stone as Mr. Crawford's counsel.

**J.    The Undesirability of the Case.**  The representation of the Receiver incident to this case has not been undesirable.

**K.    The Nature and Length of the Professional Relationship with the Client.** Scheef & Stone has represented the Receiver in numerous prior receiverships in the Northern District of Texas, Western District of Texas, Eastern District of Texas, and Southern District of Texas.

**L.    Awards in Similar Cases.**  The Receiver believes the fees requested in this case for his counsel are less than or equal to those which have been awarded in similar cases in federal courts in Texas.

### III.
### CONCLUSION

In conclusion, in accordance with the *SRO*, the Receiver represents that the fees and expenses included in this Application were incurred in the best interests of the Receivership Estate, and the Receiver requests authority for payment of such fees and expense.

Respectfully submitted August 13, 2024.

                                    **RECEIVER KELLY M. CRAWFORD**

                                    */s/  Kelly M. Crawford*
                                    Kelly M. Crawford, Receiver
                                    State Bar No. 05030700

                                    Scheef & Stone, LLP
                                    500 N. Akard Street, Suite 2700
                                    Dallas, Texas 75201
                                    Telephone: 214.706.4200
                                    Telecopier: 214.706.4242


## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that beginning on July 24, 2024, the undersigned counsel for the Receiver conferred with counsel for the Commodity Futures Trading Commission ("CFTC") and counsel for the individual defendants regarding the relief requested herein. The CFTC indicated on August 12 2024, it was not opposed to the relief requested herein. Counsel for the individual defendants also indicated on July 26, 2024, that he/they would "be objecting to some of (the)charges" included herein.

                                    */s/ Peter Lewis*
                                    PETER LEWIS


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 13, 2024, I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court, and the electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record.

                                    */s/  Kelly M. Crawford*
                                    KELLY M. CRAWFORD