## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TIME, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI,<br><br>Defendants,<br><br>TOWER EQUITY, LLC,<br><br>Relief Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§      CIVIL ACTION NO. 3:20-CV-2910-X |

## DEFENDANTS LUCAS ASHER AND SIMON BATASHVILI'S REPLY IN SUPPORT OF OBJECTION TO THE ORDER OF THE UNITED STATES MAGISTRATE JUDGE

Defendants Lucas Asher and Simon Batashvili (together, the "Individual Defendants") file this Reply in Support of their Objection to the Order of the United States Magistrate Judge (Doc. 846) (the "Objection"), and respectfully show the Court as follows:

### INTRODUCTION

Plaintiffs—a unified group of 30 states behind the CFTC—have repeatedly taken advantage of the disparate power balance in this case to overwhelm, confuse, and misconstrue the issues before the Court. Plaintiffs' response to the Objection is more of the same. (*See* Doc. 853)(Plaintiffs' "Response"). This Court should sustain the Objection and grant the Individual Defendants' motion to compel (Doc. 707).

I.    **The Individual Defendants Apply the Correct Standard — "Clearly Erroneous and Contrary to Law."**

The Objection states multiple times that the Magistrate Judge's Order is "contrary to law" and "clearly erroneous." (*See* Doc. 846 at 5, 6, 7). Still, Plaintiffs claim that the Individual Defendants "fail to cite any mistake of law or fact by the Magistrate Judge." (Doc. 853 at 1). Not so. In fact, Plaintiffs' characterization that the Objection is "rehashing their original unsuccessful arguments" is precisely the point. The Magistrate Judge's Order got it wrong, and the Court should correct that clear error.

II.    **The Magistrate Judge Committed Clear Error by Allowing Plaintiffs to Withhold Underlying Facts of the Dispute.**

The Individual Defendants never requested the Plaintiffs produce opinion work product. (*See* Doc. 707). The Individual Defendants *only* seek to discover the underlying facts of this dispute. (*See* Doc. 707) ("Much of the information withheld by the Plaintiffs contains the <u>factual</u> statements of alleged customers . . . [t]hose materials are fact work product.") (emphasis in original). "Those materials" referred to the "factual statements of alleged customers," and such underlying facts are not protected by the work product privilege. *SEC v. Brady*, 238 F.R.D. 429, 443 (N.D. Tex. 2006) ("work product immunity only protects the documents and not the underlying facts").

Accordingly, the Magistrate Judge's finding that the customers' factual statements are opinion work product is clearly erroneous and contrary to law. (*See also* Doc. 846 at 5).

III.    **The Magistrate Judge's Order Improperly Considered Documents Outside those the Individual Defendants Seek in Arriving to its Conclusions.**

As the Plaintiffs' parade in their Response, the Magistrate Judge's Order included findings that "the information sought for discovery in *all eleven* categories was prepared in anticipation of litigation." (Doc. 853 at 2; Doc. 842 at 9). The Magistrate Judge's Order, however, made clear that the Individual Defendants "*specifically requested*: customer interview recordings (Category 1);

notes, transcripts, and memoranda of customer interviews (Category 2); customer voicemails (Category 3); customer questionnaires and cover or inquiry letters (Category 4); and email communications between Plaintiffs and customers (Category 5)." (Doc. 842 at 12) (emphasis added). Those categories seek *only* the factual statements of customers.

The Individual Defendants did not specifically seek information beyond those five categories.[1] (*See* Doc. 707 at 3). The Magistrate's consideration and legal analysis relating to *eleven* categories reaches too far and obfuscates the Court's opinion on the materials that the Individual Defendants *specifically sought*. Indeed, the additional categories of documents the Magistrate highlighted are facially distinct from the five categories that the Individual Defendants specifically sought. (*See* Doc. 842 at 8)((6) draft legal documents, (7) investigatory reports and memoranda, (8) legal research, notes and memoranda, (9) investigatory and customer-related information, (10) internal communications between Plaintiffs' attorneys and investigators; (11) communications with Defendants' former employees)). Those additional categories contemplate more than the mere "factual statements of alleged customers," and may in fact rise to the level of opinion work product.

The five categories of information specifically sought by the Individual Defendants—on the other hand—are purely factual. The Magistrate Judge's finding to the contrary is clearly erroneous and contrary to law.

---

[1] A fact which the Magistrate Judge acknowledged stating: (1) "[t]hough not specifically requested by Individual Defendants, *in the interest of fairness*, the Court continues with an analysis of [categories 6 through 10]," and (2) "[l]astly, to communications with Defendants' former employees (Category 11), Individual Defendants again did not specifically request this information." (Doc. 842 at 13).

IV.    **Accordingly, the Magistrate Judge Did Not Apply the Appropriate Standard.**

Following the Magistrate Judge's review of *all* the privileged documents the Plaintiffs gratuitously[2] produced, the Magistrate Judge further incorrectly found that *all* of the information Individual Defendants specifically sought was opinion work product. (Doc. 842 at 12-13).  The Magistrate determined that the documents in the first five categories were "*sprinkled* with attorneys' and investigators' mental impressions regarding the case," and that the additional categories (6 through 10) were "*suffused*" with the same or (regarding category 11) contained "summaries of witness interviews and are, thus, protected as work product." (*Id.* at 12-13) (emphasis added).

Those distinctions are critical because a "sprinkl[ing]" of work product or a one-off summary of an interview, is not the same as being inextricably intertwined with opinion work product throughout—such that the underlying facts cannot be revealed while purported opinion work product is protected through redaction. Fed. R. Civ. P. 26(b)(3)(B); *see also* (Doc. 707 at 8 n. 12 (citing *Alderman McQuenn, Inc. v. Stinchfield*, No. 3:19-cv-3016-X, 2020 WL 7645435, at *7 (N.D. Tex. Dec. 22, 2020)). In fact, as Plaintiffs point out in their Response, Plaintiffs produced "141 documents comprising 435 pages of materials related to deceased victims" in response to the Magistrate's Order requiring production of "communications with deceased victims, if any, ***to the extent those materials include factual information***." (Doc. 853 at 3; Doc. 842 at 16-17) (emphasis added).[3]

---

[2] The Magistrate Judge should have limited its review to those documents the Individual Defendants specifically placed at issue in their motion to compel. (*See* Doc. 815) ("Upon review of the parties' pleadings and the applicable case law, the Court concludes an *in camera* review of the *documents at issue is warranted*.") (emphasis added); (*see also* Doc. 707 at 4-5) (a table representative of the specific documents sought by Individual Defendants).

[3] In the interest of candor, the Individual Defendants incorrectly identified Alaska's January 16, 2025, production as documents they received in response to the Magistrate's Order (dated January 10, 2025). (*See* Doc. 846 at p. 7 n. 7, Ex. A; *see also* Doc. 853 at p. 7, n. 9).  Coincidentally, however, the Individual Defendants' error is indicative of the broader problem.  While Alaska chose to produce that communication

The Magistrate Judge's Order further permitted Plaintiffs "to redact privileged opinion work product where appropriate." (Doc. 842 at 17). Tellingly, barely any of Plaintiffs' production was redacted to protect purported "opinion work product." In fact, the bulk of Plaintiffs' production—Maryland's, which encompassed 111 of the 141 produced documents—included *no redaction whatsoever*. Out of the 141 documents produced, the handful that included redactions are perfect examples of how Plaintiffs can redact purported "opinion work product"—if any—and still provide the Individual Defendants the underlying facts to which they are entitled. *See e.g.*, Ex A.[4] Indeed, the majority of the Plaintiffs compelled production makes apparent that the information withheld is at best fact work product—if work product at all. *See e.g.*, Exs. B, C.[5]

Accordingly, the Magistrate Judge's finding that *all* the withheld documents are opinion work product—requiring the Individual Defendants to meet the heightened standard of "compelling need" to warrant production—is clearly erroneous and contrary to law. (Doc. 842 at § III(A)(ii)).

### V.    The Individual Defendants have a Substantial Need for the Information that Cannot be Obtained absent Undue Hardship.

The Magistrate Judge erred as a matter of law by applying the wrong standard to the Individual Defendants' requests for information. Because the Individual Defendants only seek the underlying facts, not opinion work product, Rule 26 sets forth the proper standard for overcoming Plaintiffs' privilege assertion: "the party shows that it has a substantial need for the materials to

---

without asserting work product protections, other states have refused to produce similar documents, and continue to argue they are subject to work product protections. (*See* Doc. 853 at p.8-9).

[4] Plaintiff's redactions are in black, the Individual Defendants provided additional redactions in red to protect the customer's identifying information pursuant to this matter's controlling protective order. The Individual Defendants will produce copies without their additional red redactions to the Court upon request.

[5] As stated in note 4, *supra*, the Individual Defendants applied the red redactions.

4913-5470-1855

prepare its case and cannot, *without undue hardship*, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

Plaintiffs and the Magistrate Judge conflate the issue of substantial need with the concept of substantial equivalent. (Doc. 842 at 15-16; Doc. 853 at 6-7). The two are not interrelated or co-dependent. By Rule 26's plain language, "substantial need" speaks only to the Individual Defendants need for that specific information. *Id.* "Substantial equivalent" refers to the party's ability to obtain that information through other methods *without undue hardship*. *Id.* (emphasis added). Whether the Individual Defendants "prove that they can *only* obtain the material facts through the privileged materials Plaintiffs withhold" is of no moment. (Doc. 842 at 16)(emphasis in original). Indeed, requiring the Individual Defendants to prove that is their *only* avenue for obtaining the information is clearly erroneous and contrary to law. *See e.g.*, *Brady*, 238 F.R.D. at 443 ("[c]ourts may also factor-in unusual expense into their undue hardship analysis").

The Magistrate Judge's Order also contradicts itself regarding the Individual Defendants' ability to obtain that information *without undue hardship* through other means. The Order acknowledges that the Plaintiffs did not produce a full list of potential witnesses until March 2024. (Doc. 842 at 3). The date of that production is incompatible with the Magistrate Judge's further acknowledgement that discovery had closed earlier, on January 15, 2024.[6] That was preceded by a motion to compel on November 22, 2023—that was withdrawn by the Individual Defendants based on Plaintiffs' assurances to resolve the issues therein that never came to fruition. Despite the discovery cutoff, the Magistrate found that "Individual Defendants present no evidence they would be able to ascertain the material facts through methods such as depositions or of their lack of financial and legal resources." (Doc. 842 at 15-16).

---

[6] To be clear, the parties ultimately negotiated an extension to the discovery deadline that fell later in 2024. However, the point remains that the Order's reasoning is flawed.

In finding that the Individual Defendants have not made a "sufficient showing" regarding substantial need and undue hardship the Magistrate Judge also wholly ignores the record of this case—which is replete with oppressive litigation tactics. (Doc. 842 at 15). The most striking example is the entry of an *ex parte* receivership order that ultimately placed the Individual Defendants into personal receivership and locked up their finances for the majority of this litigation. (*See* Doc. 16).

Still, if the Court finds those circumstances unavailing, the Individual Defendants issued subpoenas duces tecum to 126 of the witnesses perceived likely to have relevant and material information. Plaintiffs' response was to file a motion to quash. (*See* Doc. 723). The Magistrate Judge granted it. (Doc. 842 at 18-19).

The clear consequence of Plaintiffs' tactics and the Magistrate Judge's holding is to unfairly limit the Individual Defendants' only permissible method to obtain the needed discovery. The Individual Defendants are limited to ten depositions absent leave of court, and the Plaintiffs continue to refuse to disclose which witnesses—out of well over a thousand "potential" witnesses—they intend to call at trial. (*See* Doc. 707 at 9 n. 14); *see also e.g.*, Plaintiff State of Maryland, Ex Rel Maryland Securities Commissioner's Responses and Objections to Defendant Simon Batashvili's Third Set of Interrogatories:

**SPECIFIC RESPONSES AND OBJECTIONS**

**INTERROGATORY NUMBER 10**

Identify all witnesses you intend to call to the trial of this case.

**RESPONSE TO INTERROGATORY NUMBER 10**

Other than Plaintiffs' designated expert witness, Dana Samuelson, Plaintiff has not yet determined the witnesses it will call at trial. Plaintiff will provide such information on or before November 25, 2024, as required by the modified scheduling order.[1]

Dated: March 29, 2024                    Respectfully submitted,

By: /s/ Max F. Brauer _____

MAX F. BRAUER, *pro hac vice*

What more could the Individual Defendants provide to establish that discovery of the withheld information represents an unusual expense and an undue hardship? *Brady*, 238 F.R.D. at 443.

Intended or not, the Magistrate Judge's Order leaves the Individual Defendants subject to a Plaintiffs' trial by ambush, which is clearly erroneous and contrary to law.

## VI.    The Proper Remedy is Plaintiffs' Production of Redacted Documents.

Furthermore, as referenced above, in their Motion to Compel, the Individual Defendants argued that "to the extent that these documents do contain attorney mental impressions, the appropriate course of action is to redact this information—not withhold the documents in their entirety." (Doc. 707 at 8 n. 12). The Magistrate acknowledged as much in requiring production of documents from deceased witnesses subject to redaction. (Doc. 842 at 16). Therefore, because the withheld information includes the underlying facts—and the Individual Defendants cannot otherwise obtain the substantial equivalent that information without undue hardship—the Court should order Plaintiffs to produce those documents with redactions, if necessary.

The Magistrate's failure to compel Plaintiffs production subject to redaction is, therefore, clearly erroneous and contrary to law.

***

In sum, the Magistrate's Order is clearly erroneous and contrary to law in multiple regards. The Court can and should sustain the Individual Defendants' Objection on any one or all of the grounds asserted in the points above.

## CONCLUSION

For the foregoing reasons, in addition to those asserted in the Individual Defendants' Objection, (Doc. 846), this Court should sustain the Individual Defendants' Objection to the Order and grant Individual Defendants' Motion (Doc. 707) in its entirety, ordering Plaintiffs to turn over all documents withheld on the basis of privilege that contain factual statements of Customers, subject to appropriate redactions to protect any purported opinion work product therein.

4913-5470-1855

DATED: February 26, 2025              Respectfully submitted,

                          **GRAY REED**

                          BY: _/s/ Drake Rayshell_
                          Chris Davis
                          State Bar No. 24050483
                          Angela L. Brown
                          State Bar No. 24034533
                          Drake Rayshell
                          State Bar No. 24118507
                          London England
                          State Bar No. 24110313
                          Ryder McCool
                          State Bar No. 24122967
                          1601 Elm Street, Suite 4600
                          Dallas, Texas 75201
                          Tel: (214) 954-4135
                          Fax: (214) 953-1335
                          Email: cdavis@grayreed.com
                          Email: abrown@grayreed.com
                          Email: drayshell@grayreed.com
                          Email: lengland@grayreed.com
                          Email: rmccool@grayreed.com

                          **ATTORNEYS FOR DEFENDANTS LUCAS ASHER and SIMON BATASHVILI**

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that the above and foregoing instrument was electronically field with the Clerk of the court using the CM/ECF system on, which will send notification to the attorneys of record for all parties to this suit.

                          _/s/ Drake Rayshell_
                          Drake Rayshell

# EXHIBIT A

# MEMORANDUM
## METALS.COM, EF-8933

**TO:**         Defs' Redaction Enforcement Attorney

**FROM:**       Defs' Redaction Special Investigator

**DATE:**       September 29, 2020

**SUBJECT:**    Phone interview with investor Defs' Redaction

**CC:**         Defs' Redaction

---

RE:   **Defs' Redaction**                         INVESTED: $623,363.59
AD:

PH:   **Defs' Redaction**
EM:

On 07/10/2020, a letter was sent to persons believed to be investors in Metals.com, Chase Metals and/or Barrick Capital regarding their knowledge and involvement with the company; requesting they contact this office. After receiving no response from many of the persons who received the letters, I attempted to contact them by phone.

On 09/10/2020, I called Defs' Redaction at the number listed above and a man answered and identified himself as Defs' Redaction He indicated he was out on a bike ride and asked if I could call him back later. When I called back, Defs' Redaction told me that he had recently retired as an American Airlines pilot and moved to Arizona about a year and a half ago. Defs' Redaction told me he had his retirement money tied up in an annuity at Prudential, which he did not like because there were too many rules and he was looking for something more flexible.

Defs' Redaction told me he had seen the ads for Metals.com on the internet while he was doing his research into IRA's he could move his money to that would allow him to invest more widely than what the annuity would allow. Defs' Redaction told me that he is knowledgeable about investing and had read up on all of the restrictions on his annuity and moving it before the termination date so he knew he would be taking a 'penalty hit' to move his money to Metals.com, but that is what he wanted to do so he did it in about July of 2019. (actual date was 07/26/19).

Defs' Redaction recalled he moved his money to a company that Metals.com used, called Directed IRA Company (Directed IRA) and that is were his money is sitting to this day. Defs' Redaction told me that he was not particularly interested in purchasing any metals or coins at the time so he just moved his annuity over to the self-directed IRA and just left his money there until he decided what he

ACC002989

wanted to do with it later.  I clarified with [Defs' Redaction] that he had not authorized or instructed anyone from Metals.com to purchase any type of metals on his behalf through his IRA at Directed IRA.  [Defs' Redaction] said no, he never told anyone to purchase any metals with his money and to his knowledge his money was still just sitting in his IRA.

I asked [Defs' Redaction] if he had received any statements from Directed IRA showing the balance of his IRA account and he said no, he had not received anything so far.  He did not know his account number for his IRA or the contact information for Directed IRA so I did provide that information verbally to [Defs' Redaction] and suggested he contact the company and request statements for his account so he could obtain statements for his IRA account.  [Defs' Redaction] told me he would do that and if he had any questions after he received them, [Defs' Redaction] agreed to call me back.

End of call.

(NOTE:



ACC002990

CONFIDENTIAL - PSC                                        STATES_AZ_0000878

# EXHIBIT B

On 06 April 2020 I called and spoke with ███ [Defs' Redaction] at ███ [Defs' Redaction]. I asked him if he has ever heard of a company called metals.com. He stated that he had not. I asked him if in Dec of 2017 he invested $19,899.75 into a company called Chase metals, now metals.com. He said that he did not. He said he had to go and hung up the phone on me. I located a purchase invoice with his name on it with New Direction Account # ███ [Defs']. I also located a precious metals Buy Direction letter from New Direction IRA Inc. with his name and phone number on it. I also located a shipping and transaction agreement with his name, phone number, address, and email on it. At this time he does not wish to speak with myself.

# EXHIBIT C

DFI Document Separator                                    Enforcement

## Enforcement



\* E N F O R C E M E N T \*

*(Check One Document Type)*

☐ Advertising Materials                    ☐ Offering Materials

☐ Bank Records                             ☐ Order Error Report

☐ Brokerage Confirmations                  ☐ Registration Materials

☐ Brokerage Statements                     ☐ Subscription Agreement

☐ Business Card                            ☐ Other

☐ Charter Documents

☐ Complaint Form              Case No: _____

☐ Confirmations              ( Case No.: S-19-2725
                             ( Case Name: metals.com
                             ' Source: [Defs' Redaction]
☐ Contracts                  ] Rec'd: 7/31/19
                               Desc.: [Defs' Redaction] [Defs' Redaction]
☐ Envelope                   Received Date: _____
                             Document Date: _____
☐ Exception Reports

☐ Fax
                             Complaint Y/N:  Y   N
☐ Letter                     Complaint Date: _____
                             Complainant: _____
☐ Memorandum                 Respondent: _____

☐ New Account Statements

☐ Notification Of Claim Of Exemption

Version: 06/13/2005



**STATE OF WASHINGTON**
## DEPARTMENT OF FINANCIAL INSTITUTIONS
### SECURITIES DIVISION
P.O. Box 9033 ● Olympia, Washington 98507-9033
Telephone (360) 902-8760 ● TDD (360) 664-8126 ● FAX (360) 902-0524 ● Web Site: www.dfi.wa.gov/sd

**Customer Questionnaire**
**RE: DFI File No. S-19-2725: Metals.com**

The Washington State Securities Division investigates possible violations of the Washington State Securities Act. We would appreciate your help in completing this questionnaire, so that we might determine whether there have been any violations of the Securities Act by metals.com. Metals.com has also referred to itself as Chase Metals, LLC, and Chase Metals, Inc. When this questionnaire refers to metals.com, we are also referring to Chase Metals, LLC and Chase Metals, Inc.

When answering the questions, please be as specific and detailed as possible. Please return the completed questionnaire by *August 2, 2019* in the enclosed, postage-paid envelope. You may attach additional pages if necessary. Please include copies of any written materials that you received regarding your investment. If you have any questions, please contact ▉▉▉▉ or ▉▉▉▉ @dfi.wa.gov.

Thank you for your time and assistance.

Your name ▉▉▉▉ Birth date ▉▉

Your address ▉▉▉▉

Your telephone number (Day) ▉▉▉▉ (Evening) ▉▉▉▉

Your e-mail address ▉▉▉▉ @gmail.com

Your occupation Registered Nurse

How was contact initiated between you and metals.com? When did this initial contact occur? With whom did this contact occur?

I contacted Metals.Com in January 2019 ≈ Company Rep.

CONFIDENTIAL - PSC

STATES_WA_0000227

What did the representatives of metals.com say to you during this initial contact?

_____

_____

Did you act on any advice given during this initial contact? What was that advice? What did you do? When did you act on the advice? Please be specific about any investments that may have been affected by this advice.

_____

_____

Was this advice personalized to account for the particular circumstances of your financial situation? Please circle one.

Yes    No

Did you provide for compensation of any kind for this advice? If so, how much compensation? To whom did you provide compensation?

_____

_____

Did you have any additional contact with a representative of metals.com? Please circle one.

Yes    No

If you did not, you may skip the remaining questions. If you did, please answer the remaining questions.

Who initiated this later contact? With whom from metals.com did you speak or otherwise communicate with in this later contact?

_____

_____

_____

2

STATES_WA_0000228

Did you act on any advice given during this later contact? What was that advice? What did you do? When did you act on the advice? Please be specific about any investments that may have been affected by this advice.

_It was a simple Transfer from a normal IRA To_
_Precious Metals IRA_

Was this advice personalized to account for the particular circumstances of your financial situation? Please circle one.

Yes (No)

Did you provide for compensation of any kind for this advice? If so, how much compensation? To whom did you provide compensation?

_NO_

Please provide the names of all persons affiliated with metals.com who provided you advice.

_unable to at this time - online Reps only_

Did you purchase any precious metals because a representative of metals.com advised you to do so?

Yes (No)

Did you receive the entire quantity of the precious metal(s) that you purchased? How many days after payment did you receive your metal(s)?

Has anyone threatened to sue you because of your relationship with metals.com? Please circle one.

Yes (No)

Thank you for completing this questionnaire.

Your response is an important part of our investigation.

3

DEPARTMENT OF FINANCIAL INSTITUTIONS
SECURITIES DIVISION
PO BOX 9033
OLYMPIA WA 98507-9033



FIRST-CLASS



♻ PRINTED ON RECYCLED PAPER.

RECEIVED

JUL 3 1 2019

SECURITIES

CONFIDENTIAL - PSC

STATES_WA_0000231