# Exhibit

# A

**EXHIBIT0001**

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release ("Agreement") is made and entered into on March 4, 2025 (the "Effective Date") by and between Kelly Crawford, in his capacity as the Receiver (the "Receiver"), for and on behalf of himself in such capacity and Deric Scott Ned, Poor Trap, Inc., and Deep State Marketing, Inc. (collectively, the "Ned Parties").

## RECITALS

WHEREAS, pursuant to the Statutory Restraining Order entered on September 22, 2020 ('the "SRO") entered by the United States District Court for the Northern District of Texas in a civil action that is styled *CFTC, et al. v. TMTE, Inc. a/k/a Metals.Com, et al.* and numbered 20-cv-2910-L (the "Civil Enforcement Action"), the Receiver was appointed for, amongst others, TMTE, Inc., a/k/a Metals.Com, Chase Metals, Inc., Chase Metals, LLC and Barrick Capital, Inc., as well all other Receivership Entities which include, but are not limited to, Administrative Account Services, LLC, Amerivise, LLC, Best New, Inc., Delaware Wholesale, Inc., Revo, LLC, Merrill Gold, LLC, Newmont Admin. Inc., Reagan Financial Services, Inc., Resource Financial Services, Inc., First American Estate & Trust, First American Savings, Inc., Retirement Insider, LLC, USA Accounts, Inc., USA Marketing, Inc., TX Admin, Inc., and Relief Defendant Tower Equity, LLC. (the "Receivership Defendants");

WHEREAS, the Receiver initiated a civil action against the Ned Parties and others in the United States District Court for the Northern District of Texas that is styled *Kelly Crawford, in his capacity as Receiver v. David Bleeden, et al.* and numbered 3:21-cv-02181-X (the "Lawsuit");

WHEREAS, the Receiver traced no less than $2,865,608 in payments made by Receivership Defendants to the Ned Parties which the Receiver seeks to recover from the Ned Parties pursuant to the Lawsuit;

WHEREAS, the Ned Parties categorically deny any liability to the Receiver as alleged in the Lawsuit;

WHEREAS, the Receiver and the Ned Parties desire to settle the Receiver's claims without litigation for the purpose of convenience and to avoid the uncertainty and expense of protracted litigation;

WHEREAS, the Ned Parties make no admission in settling this matter;

NOW THEREFORE, in consideration of the mutual promises, covenants, representations, warranties, and agreements contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties, intending to be legally bound, do hereby agree as follows:

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 1

**EXHIBIT0002**

## SETTLEMENT TERMS AND CONDITIONS

1.  <u>Payment to the Receiver</u>. The Ned Parties agree to pay to the Receiver the sum of $1,432,804 (the "Settlement Amount") in two equal installments, with the first installment of $716,402 to be paid by the Ned Parties to the Receiver within ten (10) business days of the Effective Date (the "First Installment"), and the second installment of $716,402 to be paid by the Ned Parties to the Receiver no more than one hundred eighty (180) calendar days from the Effective Date (the "Second Installment"). Payments are to be made by check, wire transfer, or money order payable to "Kelly Crawford, Receiver" and delivered to:

> Kelly Crawford, Receiver
> Scheef & Stone, LLP
> 500 North Akard, Suite 2700
> Dallas, Texas 75201

2.  <u>Receiver Release</u>. Subject to the timely receipt of the Settlement Amount as provided herein, the Receiver and the Receivership Entities hereby compromise, settle, and fully release the Ned Parties and their agents, principals, shareholders, assigns, predecessors, successors, or transferees from any and all known and unknown claims, causes of actions and rights of action against the Ned Parties and their agents, principals, shareholders, assigns, predecessors, successors, or transferees, whether in law or equity, for expenses, debts, damages or relief of any kind, character or description that were brought or could have been brought in the Lawsuit. Notwithstanding the foregoing, nothing contained herein releases the Ned Parties from their obligations under the Note, the Deed of Trust, and this Agreement.

3.  <u>Ned Parties' Release</u>. The Ned Parties hereby compromise, settle, and fully release the Receiver and the Receivership Entities and their agents, principals, shareholders, assigns, predecessors, or successors from any and all known and unknown claims, causes of actions and rights of action against the Receiver and the Receivership Entities, whether in law or equity, for expenses, debts, damages or relief of any kind, character or description that were brought or could have been brought in the Lawsuit. The Ned Parties expressly waive and extinguish any claim by the Ned Parties to seek monies from the receivership estate or from the Receiver, and agree not to file a claim for reimbursement, expenses, fees, charges, or any other request for distribution in the Civil Enforcement Action. Notwithstanding the foregoing, nothing contained herein releases the Receiver from his obligations under this Agreement.

4.  <u>Security</u>. Payment by the Ned Parties of the Second Installment is secured by the Ned Parties delivering to the Receiver a promissory note in the form of Exhibit A attached hereto (the "Note"), and a deed of trust granting the Receiver a second lien in the property located at 12500 Jay Dr., Caliente, California 93518 (the "Property"), in the form of Exhibit B attached hereto (the "Deed of Trust"). The Ned Parties shall deliver to the Receiver the executed Note and Deed of Trust on or before the date the Ned Parties make the First Installment payment. The Receiver and the Receivership Defendants agree they will not record the Deed of Trust, a *lis pendens*, or other lien against the Property unless payment of the Second Installment is not made in accordance with this Agreement. The Ned Parties warrant and represent that the Property is not subject to a second lien mortgage and is not claimed as a homestead. The Ned Parties agree

to prevent any lien or homestead exemption from being claimed or recorded on the Property until full payment of the Second Installment is made in accordance with this Agreement, except for a lien recorded simultaneously with full and final payment of the Second Installment by a party providing funding of the Second Installment.

5.  <u>Notice of Dismissal.</u>  Subsequent to entry of an Order approving this Agreement and within five business days after timely receipt of the Settlement Amount as provided herein, the Receiver will file a Notice of Dismissal, dismissing the Ned Parties, with prejudice, from the Lawsuit.

6.  <u>Entire Agreement.</u> This Agreement, including the Note and Deed of Trust, represents the entire agreement between the Parties concerning the subject matter hereof, and all Parties hereto expressly agree that there are no other agreements, whether written or oral, concerning the subject matter hereof, all such agreements having been fully considered and merged into this Agreement. The Parties further acknowledge and agree that no person or any other entity has made any promise, representation, or warranty whatsoever, expressed, implied or statutory, not contained herein, concerning the subject matter hereof, to induce the execution of this Agreement, and the Parties acknowledge that they have executed this Agreement without reliance on any promise, representation, or warranty not contained herein. The Parties have read and understand all terms and conditions of this Agreement.

7.  <u>Understanding.</u> The Parties to this Agreement represent that they have received independent advice of counsel concerning the meaning and legal effect of the terms of this Agreement.  After such counseling, the Parties represent that they fully understand this Agreement and its terms, and, with this full understanding, voluntarily enter into this Agreement.

8.  <u>Attorneys' Fees and Costs.</u> The Parties shall bear their respective attorneys' fees and costs with respect to the Lawsuit and this Agreement.

9.  <u>Governing Law.</u>  It is understood and agreed that this Agreement shall be governed by, construed and enforced in accordance with, and subject to, the laws of the State of Texas, without regard to its choice of law principles.

10. <u>Authority to Execute.</u> The undersigned individuals warrant and represent that they have full authority to execute this Agreement.

11. <u>No Duress.</u> The Parties expressly represent and warrant that this Agreement has been freely and voluntarily entered into and that they did not execute this Agreement under duress of any kind, from any Party or person, regardless of whether they are a signatory hereto.

12. <u>Joint Efforts.</u> This Agreement has been prepared by the joint efforts of the respective attorneys for the Parties, and each Party acknowledges and agrees that the general rule of contract construction providing that the provisions of a contract are to be strictly construed against the drafter of the agreement is hereby waived.

16125.1086dt
<u>Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 3</u>

**EXHIBIT0004**

13. <u>No Waiver</u>. No waiver of any of the terms of this Agreement shall be binding unless in writing and signed by all Parties hereto. No waiver of any term of this Agreement shall be deemed a waiver of any subsequent breach or default of any nature.

14. <u>Headings</u>. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of the Agreement.

15. <u>Exercise of Rights</u>. Any failure or forbearance by any Party to exercise any right or remedy with respect to enforcement of this Agreement or any instrument executed in connection herewith shall not be construed as a waiver of any of such Party's rights or remedies, nor shall such failure or forbearance operate to modify this Agreement or such instruments in the absence of a writing as provided above.

16. <u>Severability</u>. The invalidity or unenforceability of any nonmaterial paragraph or provision of this Agreement shall not affect the validity or enforceability of the remainder of this Agreement, or the remainder of any paragraph or provision. This Agreement shall be construed in all respects to the fullest extent permitted by law, and as if any invalid or unenforceable paragraph or provision was omitted.

17. <u>Amendment</u>. This Agreement may not be altered, amended, modified, or otherwise changed, except by a writing duly executed by all Parties.

18. <u>Court Approval.</u> This Settlement Agreement is subject to approval of the Court in the Civil Enforcement Action (the "Receivership Court"). If the Receivership Court does not approve this Settlement Agreement, it is null and void.

19. <u>Voidable Event.</u> If the Ned Parties do not timely pay the First Installment to the Receiver and deliver the executed Note and Deed of Trust to the Receiver, this Agreement shall automatically terminate and become null and void.

20. <u>Counterparts</u>. This Agreement may be executed in counterparts, all of which, when taken together, constitute one agreement with the same force and effect as if all signatures had been entered on one document.

*[Signature Page Follows]*

16125.1086dt
<u>Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 4</u>

**EXHIBIT0005**

Executed as of the Effective Date as follows:

**RECEIVER AND RECEIVERSHIP DEFENDANTS**

By: _____
Kelly Crawford, in his capacity as Receiver

**DERIC SCOTT NED**

_____

**POOR TRAP, INC.**

By: _____

Name: _Deric N Ned_____

Title: _President_____

**DEEP STATE MARKETING**

By: _____

Name: _Deric Ned_____

Title: _President_____

16125.1086dh
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and
Agreements - Page 5

EXHIBIT0006

# EXHIBIT A

## Promissory Note

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 6

EXHIBIT0007

## Promissory Note

**$716,402.00**                              **Dallas, Texas**                              **March 4, 2025**

      **Payment.**    For Value Received, the undersigned, **Deric Scott Ned, Poor Trap, Inc.**, a California corporation, and **Deep State Marketing**, a California corporation ("Maker") hereby, jointly and severally, **promise to pay to the order of Kelly Crawford, Receiver for TMTE, Inc. a/k/a Metals.com, et. al., Case No. 3:20-cv-02910-L, United States District Court for the Northern District of Texas, Dallas Division** ("Payee"), at its offices at 500 North Akard Street, Suite 2700, Dallas, Texas 75201, in lawful money of the United States of America, the principal sum of **Seven Hundred Sixteen Thousand, Four Hundred Two and No/100 Dollars ($716,402.00)**, together with interest on the outstanding principal balance from day to day remaining as herein specified.

<blockquote>

**A. A principal payment in the amount of $716,402.00 shall be due and payable on August 31, 2025; and**

</blockquote>

      **Interest.**    All matured and past due amounts shall bear interest at the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law (the "Maximum Rate"). All payments shall be applied first to accrued but unpaid interest and then to principal.

      **Spreading.**    Interest on matured, unpaid amounts evidenced by this Note shall not exceed the Maximum Rate; any interest in excess of the Maximum Rate shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. To the maximum extent permitted by law, amounts deemed interest shall be spread, prorated and allocated over the full term hereof. This provision overrides other provisions in this and all other instruments concerning the debt. When used herein, the term Maximum Rate shall mean the highest lawful rate of interest applicable to this Note. In determining the Maximum Rate, due regard shall be given to all payments, fees, charges, deposits, balances and agreements which may constitute interest or be deducted from principal when calculating interest. The daily rate shall be equal to 1/360th times the prematurity rate of interest (but shall not exceed the Maximum Rate).

      **Settlement Agreement.**    This Note is the Note provided for in that certain Settlement Agreement and Mutual Release of even date herewith between Maker and Payee (such Settlement Agreement, as the same may be amended or modified from time to time, is hereinafter referred to as the "Settlement Agreement").

      **Security.**  This Note is secured by a certain Deed of Trust, Assignment of Rents, Security

**EXHIBIT0008**

Agreement and Fixture Filing ("Deed of Trust"), executed by Maker to a trustee for the benefit of Payee covering the real property and improvements situated in Kern County, California, as more particularly described on Exhibit "A" to said Deed of Trust.

**Prepayment**. Maker may prepay the principal of this Note, in whole or in part, at any time without penalty or premium. All prepayments to principal shall be applied to principal in the inverse order of its stated maturity.

**Maximum Rate**.        Notwithstanding anything to the contrary contained herein, no provisions of this Note shall require the payment or permit the collection of interest in excess of the Maximum Rate. If any excess of interest in such respect is herein provided for, or shall be adjudicated to be so provided, in this Note or otherwise in connection with this loan transaction, the provisions of this paragraph shall govern and prevail, and neither Maker nor the sureties, guarantors, successors or assigns of Maker shall be obligated to pay the excess amount of such interest, or any other excess sum paid for the use, forbearance or detention of sums loaned pursuant hereto. If for any reason interest in excess of the Maximum Rate shall be deemed charged, required or permitted by any court of competent jurisdiction, any such excess shall be applied as a payment and reduction of the principal of indebtedness evidenced by this Note; and, if the principal amount hereof has been paid in full, any remaining excess shall forthwith be paid to Maker.

**Default.**        If default be made in the payment of principal or interest under this Note, or upon the occurrence of any default in the performance of any covenant or obligation contained in the Settlement Agreement, or upon the occurrence of any "Event of Default", as such term is defined in the Deed of Trust, the holder hereof may, at its option, declare the entire unpaid principal of and accrued interest on this Note immediately due and payable without additional notice, demand or presentment, all of which are hereby waived, and upon such declaration, the same shall become and shall be immediately due and payable, and the holder hereof shall have the right to foreclose or otherwise enforce all liens or security interests securing payment hereof, or any part hereof, and offset against this Note any sum or sums owed by the holder hereof to Maker. Failure of the holder hereof to exercise this option shall not constitute a waiver of the right to exercise the same upon the occurrence of a subsequent Event of Default.

**Costs.** If the holder hereof expends any effort in any attempt to enforce payment of all or any part or installment of any sum due the holder hereunder, or if this Note is placed in the hands of an attorney for collection, or if it is collected through any legal proceedings, Maker agrees to pay all collection costs and fees incurred by the holder, including reasonable attorney's fees.

**Late Fees**.        In the event that any payment is not received by Payee on the date when due, Maker shall also pay to Payee a late charge in an amount equal to five percent (5%) of the amount of the overdue payment. Maker agrees that this late charge is not considered additional interest, but is a reasonable fee to reimburse Payee for the additional administrative costs that will be incurred by Payee as a result of dealing with and responding to the late payment.

**Governing Law**.        This Note is made and is performable in the **City of Dallas, Dallas County, Texas**, and Maker and each surety, guarantor, endorser and other party ever liable for

payment of any sums of money payable on this Note, jointly and severally waive the right to be sued hereon elsewhere. This Note shall be governed by and construed in accordance with the laws of the State of Texas and the applicable laws of the United States of America.

**Waiver of Presentment.**    Maker and each surety, guarantor, endorser and other party ever liable for payment of any sums of money payable on this Note jointly and severally waive presentment and demand for payment, protest, notice of protest and non-payment or dishonor, notice of acceleration, notice of intent to accelerate, notice of intent to demand, diligence in collecting and grace, and consent to all extensions without notice for any period or periods of time and partial payments, before or after maturity, without prejudice to the holder. The holder shall similarly have the right to deal in any way, at any time, with one or more of the foregoing parties without notice to any other party, and to grant any such party any extensions of time for payment of any of said indebtedness, or to release part or all of the collateral securing this Note, or to grant any other indulgences or forbearances whatsoever, without notice to any other party and without in any way affecting the personal liability of any party hereunder.

**Balloon Feature.**    At maturity or if the maturity is accelerated as a result of an Event of Default, Maker must repay the entire principal balance of the loan and unpaid interest then due.  Payee is under no obligation to refinance the loan at that time.  Maker will, therefore, be required to make payment out of other assets that Maker may own or Maker will have to find a lender, which may be Payee, willing to lend Maker the money.  If Maker refinances this loan at maturity, Maker will have to pay some or all of the closing costs normally associated with a new loan even if Maker obtains refinancing from Payee.

**Interest Limits.**    Notwithstanding any other provision in this instrument or in any other instrument executed in connection with this instrument, in no event shall the undersigned ever be required to pay interest, whether before or after maturity, at a rate in excess of eighteen percent (18%) per annum, based on a 365 day year.

Maker:

_____
Deric Scott Ned

Poor Trap, Inc., a California corporation

By:_____
    Deric Scott Ned, President

Deep State Marketing, a California corporation

By:_____
    Deric Scott Ned, President

16125.1086df
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 9

**EXHIBIT0010**

<u>EXHIBIT B</u>

<u>Deed of Trust</u>

**RECORDING REQUESTED BY**

**AND**

**WHEN RECORDED, RETURN TO:**

Kelly Crawford, Receiver for TMTE, Inc. a/k/a
Metals.com, et. al.
Case No. 3:20-cv-02910-L, United States District Court
for the Northern District of Texas, Dallas Division
500 North Akard Street, Suite 2700
Dallas, Texas 75201

**<u>INSTRUCTIONS TO COUNTY RECORDER</u>:**

**<u>INDEX THIS DOCUMENT AS</u>:**

    1)  a Deed of Trust; and
    2)  a Fixture Filing.

APN No.: _____               FOR RECORDER'S USE ONLY

**DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING AND**

**ASSIGNMENT OF RENTS, LEASES INCOMES AND AGREEMENTS**

**NOTICE TO BORROWER: THE LOAN SECURED BY THIS DEED OF TRUST, SECURITY AGREEMENT, FIXTURE FILING AND ASSIGNMENT OF RENTS, LEASES, INCOMES AND AGREEMENTS PROVIDES FOR A VARIABLE INTEREST RATE AND BALLOON PAYMENT ON THE MATURITY DATE.**

16125.1086dt
<u>Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 10</u>

**EXHIBIT0011**

Date Hereof:        March 4, 2025

Grantor:            Deric Scott Ned
                    12500 JAY Dr
                    Caliente, CA 93518

Debtor:             Deric Scott Ned, Poor Trap, Inc., a California corporation, and
                    Deep State Marketing, a California corporation
                    12500 JAY Dr
                    Caliente, CA 93518

Trustee:            Peter C. Lewis
                    500 North Akard Street, Suite 2700
                    Dallas, Texas 75201

Beneficiary
(Secured Party):    Kelly Crawford, Receiver for TMTE, Inc. a/k/a Metals.com, et. al., Case No.
                    3:20-cv-02910-L, United States District Court for the Northern District of Texas, Dallas
                    Division
                    500 North Akard Street, Suite 2700
                    Dallas, Texas 75201

Note Amount:        $716,402.00

Maturity Date:      August 31, 2025

Guarantor(s):       None

Prior Lien(s):      None

## KNOW ALL MEN BY THESE PRESENTS:

This Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements ("Deed of Trust"), entered into as of the Date Hereof, by Grantor and Debtor, to Beneficiary. THIS DEED OF TRUST IS ALSO TO BE RECORDED AS A "FIXTURE FILING" AS DEFINED IN SECTION 9502(c)OF THE UNIFORM COMMERCIAL CODE OF THE STATE OF CALIFORNIA. IT COVERS GOODS THAT ARE OR ARE TO BECOME FIXTURES UNDER THE LAWS OF THE STATE OF CALIFORNIA ON THE REAL PROPERTY LOCATED IN THE COUNTY OF KERN, STATE OF CALIFORNIA, MORE PARTICULARLY DESCRIBED ON EXHIBIT "A" ATTACHED HERETO. THE NAME OF THE RECORD OWNER OF THE LAND IS DERIC SCOTT NED.

## WITNESSETH:

### ARTICLE I.
### DEFINITIONS

1..1.    Definitions. In addition to the foregoing defined terms, as used herein, the following terms shall have the following meanings:

16125.1086dt
**Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 11**

EXHIBIT0012

A. <u>Beneficiary</u>. The Beneficiary stated above, whose address for notice hereunder is as set forth above, and the subsequent holder or holders, from time to time, of the Note (as defined hereinbelow).

B. <u>Debtor</u>. The above-defined Debtor.

C. <u>Environmental Laws</u>. Any Governmental Requirements pertaining to health, industrial hygiene, or the environment, including, without limitation, the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) [42 U.S.C. §§ 9601 et seq.]; the Resource Conservation and Recovery Act (RCRA) [42 U.S.C.A. §§ 6901 et seq.]; the Superfund Amendments and Reauthorization Act of 1986 [Pub L 99-499, 100 Stat 1613]; the Hazardous Materials Transportation Act of 1985 [49 USC §§ 5101 et seq.]; the Solid Waste Disposal Act [42 U.S.C. §§ 6901 et seq.]; the Clean Water Act [33 U.S.C. §§ 1251 et seq.]; the Clean Air Act [42 U.S.C. §§ 7401 et seq.]; the Toxic Substances Control Act [15 U.S.C. §§ 2601 et seq.]; the Safe Drinking Water Act [42 U.S.C. §§ 300f et seq.]; the Federal Insecticide, Fungicide and Rodenticide Act [7 U.S.C. §§ 136 et seq.]; the Endangered Species Act [16 U.S.C. §§ 1531 et seq.]; the National Environmental Policy Act [42 U.S.C. §§ 4321 et seq.]; the Rivers and Harbors Appropriate Act of 1899 [33 U.S.C. §§ 401 et seq.]; the Refuse Act [33 U.S.C. §§ 407 et seq.]; the Oil Pollution Act of 1990 [33 U.S.C. §§ 2701 et seq.]; the Emergency Planning and Community Right-to-Know Act [42 U.S.C. §§ 11001 et seq.]; and the Occupational Safety and Health Act [29 U.S.C. §§ 651 et seq.]; the Carpenter-Presley-Tanner Hazardous Substance Account Act [Health and Saf. Code §§ 25300 et seq.]; the Hazardous Waste Control Act [Health and Saf. Code §§ 25100 et seq.]; the Safe Drinking Water and Toxic Enforcement Act of 1986 [Health and Saf. Code §§ 25249.5 et seq.]; the California Hazardous Waste Treatment Reform Act of 1995 (Stats 1995, ch 638 (SB 1222-Calderon)); the California Unified Hazardous Waste and Hazardous Materials Management Regulatory Program (Stats 1993, ch 418 (SB 1082-Calderon)); the California Expedited Remedial Action Reform Act of 1994 (Health and Safety Code §§ 25396-25399.2); the Underground Storage of Hazardous Substances Act [Health and Saf. Code §§ 25280 et seq.]; and the Porter-Cologne Water Quality Control Act [Wat. Code §§ 13000 et seq.] and any analogous federal, state or local laws, any amendments thereto and regulations promulgated pursuant to said laws, together with all amendments from time to time of any of the foregoing.

D. <u>Event of Default</u>. Any happening or occurrence described in Article 6. hereinbelow.

E. <u>Fixtures</u>. All materials, supplies, equipment, apparatus and other items now or hereafter attached to, installed in or used in connection with (temporarily or permanently) any of the Improvements or the Land (as hereinafter defined), including but not limited to any and all partitions, window screens and shades, drapes, rugs and other floor coverings, awnings, motors, engines, boilers, furnaces, pipes, plumbing, cleaning, call and sprinkler systems, fire extinguishing apparatus and equipment, water tanks, swimming pools, heating, ventilating, plumbing, laundry, incinerating, air conditioning and air cooling equipment and systems, gas and electric machinery, appurtenances and equipment, disposals, dishwashers, refrigerators and ranges, recreational equipment and facilities of all kinds, and signs of every description and however erected, placed or attached.

F. <u>Governmental Authority</u>. Any and all courts, boards, agencies, commissions, offices or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city or otherwise) whether now or hereafter in existence.

G. <u>Governmental Requirements</u>. Any and all laws, statutes, codes, ordinances, regulations, rules, enactments, decrees, judgments, and orders, or the application or official interpretation of any of the foregoing, of or by any Governmental Authority.

H. <u>Grantor</u>.   The above-defined Grantor and any and all subsequent owners of the Mortgaged Property (as defined hereinbelow).

I. <u>Guarantor (Individually and/or Collectively, as the context may require)</u>. The Guarantor or Guarantors first named above.

J. <u>Guaranty (Individually and/or Collectively as the context may require)</u>.   That or those instruments of Guaranty of even date herewith, if any, from Guarantor to Beneficiary guaranteeing the repayment of the Indebtedness and the satisfaction of, or continued compliance with, the Obligations (as defined hereinbelow).

K. <u>Hazardous Substance</u>. Any and all (a) substances defined as "hazardous substances," "hazardous materials," "toxic substances," or "solid waste" in CERCLA, RCRA, and the Hazardous Materials Transportation Act (49 United States Code §§ 5101-5127), and in the regulations promulgated under those laws; (b) substances defined as "hazardous wastes" in California Health and Safety Code § 25117 and in the regulations promulgated under that law; (c) substances defined as "hazardous substances" in California Civil Code § 2929.5; (d) substances listed in the United States Department of Transportation Table (49 Code of Federal Regulations § 172.101 and amendments); (e) substances defined as "medical wastes" in the Medical Waste Management Act (Chapter 6.1 of the California Health and Safety Code); (f) asbestos-containing materials; (g) polychlorinated biphenyl; (h) underground storage tanks, whether empty, filled, or partially filled with any substance; (i) petroleum and petroleum products, including crude oil or any fraction thereof, natural gas, natural gas liquids, liquefied natural gas, or synthetic gas usable for fuel, or any such mixture; and (j) such other substances, materials, and wastes that are or become regulated under applicable local, state, or federal law, or that are classified as hazardous or toxic under any Governmental Requirements or that, even if not so regulated, are known to pose a hazard to the health and safety of the occupants of the Property or of real property adjacent to it. Despite the foregoing, the term Hazardous Substance does not include Permitted Materials.

L. <u>Impositions</u>.   All real estate and personal property taxes, water, gas, sewer, electricity and other utility rates and charges, charges for any easement, license or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges and assessments and any interest, costs or penalties with respect thereto, of any kind and nature whatsoever which at any time prior to or after the execution hereof may be assessed, levied or imposed upon the Mortgaged Property or the Rents and Incomes (as defined hereinbelow) or the ownership, use, occupancy, or enjoyment thereof.

M. <u>Improvements</u>.   Any and all buildings, structures, open parking areas and other improvements, and any and all additions, alterations, or appurtenances thereto, now or at any time hereafter situated, placed or constructed upon the Land (as defined hereinbelow) or any part thereof.

N. <u>Indebtedness</u>.   The principal of, interest on and all other amounts, payments and premiums due under the Note and secured by the other Security Documents (as defined hereinbelow) together with and including all other direct and indirect indebtedness now or any time in the future owing or to be owing by Grantor and/or Debtor to Beneficiary, regardless of how evidenced or incurred, it being understood that it is contemplated that Grantor and Debtor will

become further indebted to Beneficiary in the future. Indebtedness shall specifically exclude any environmental or other indemnity agreement executed in favor of Beneficiary.

O. Land. The real estate or interest therein described as follows:

**The real property situated in Kern County, California, as more particularly described on Exhibit "A" attached hereto and made a part hereof, and all Improvements and Fixtures and all rights, titles and interests appurtenant thereto.**

P. Leases and Agreements. Any and all leases, subleases, licenses, concessions or other agreements (written or verbal, now or hereafter in effect) which grant a possessory interest in and to, or the right to use, the Mortgaged Property, or any part thereof, save and except any and all leases, subleases, or other agreements pursuant to which Grantor is granted a possessory interest in the Land; and all other contracts or agreements (written or oral, now or hereinafter in effect), relating to the use, operation, enjoyment or acquisition of, or construction on, or provision of goods or supplies to the Mortgaged Property, or any part thereof, regardless of whether same grant a possessory interest in and to, or the right to use the Mortgaged Property, or any part thereof.

Q. Legal Requirements.

(1) Any and all present and future judicial decisions, statutes, rulings, rules, regulations, permits, certificates or ordinances of any governmental authority in any way applicable to Grantor, Debtor, any Guarantor or the Mortgaged Property, including the ownership, use, occupancy, operation, maintenance, repair or reconstruction thereof;

(2) Grantor's, Debtor's, or any Guarantor's presently or subsequently effective Bylaws and Articles or Certificate of Incorporation, Partnership, Limited Partnership, Joint Venture, Trust or other form of business association (if either, both or all be any of same);

(3) Any and all Leases and Agreements, and contracts (written or oral) of any nature to which Grantor, Debtor, or any Guarantor is or may be bound or to which the Mortgaged Property is or may be subject.

R. Mortgaged Property. The Land, Improvements, Fixtures, Personalty (as defined hereinbelow) Rents and Incomes, and rights, but not obligations, under the Leases and Agreements, together with:

(1) All rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages and appurtenances in anywise appertaining thereto, and all right, title, and interest of Grantor in and to any streets, ways, alleys, strips or gores of land adjoining the Land or any part thereof; and

(2) All additions, appurtenances, substitutions, replacements, and revisions thereof and thereto and all reversions and remainders therein; and

(3) All of Grantor's right, title, and interest in and to any award, awards, remuneration, settlements or compensation heretofore made or hereafter to be made by any governmental authority to the present or any subsequent owner of the Land,

EXHIBIT 0015

Improvements, Fixtures or Personalty, including those for any vacation of, or change of grade in, any streets affecting the Land or the Buildings; and

(4) Any and all other security and collateral of any nature whatsoever, now or hereafter given for the repayment of the Indebtedness or the performance and discharge of the Obligations.

As used in this Deed of Trust, the term "Mortgaged Property" shall be expressly defined as meaning all, or where the context permits or requires, any portion of the above and all or, where the context permits or requires, any interest therein.

S. Note. The Promissory Note *dated* of even date herewith, executed by Grantor and Debtor payable to the order of Beneficiary in the amount of the Note Amount and secured, in part, by this Deed of Trust, bearing interest at the rate therein specified and maturing on the Maturity Date.

T. Obligations. Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Grantor, Debtor, Guarantor or others to Beneficiary, Trustee or others, as set forth in the Security Documents; as set forth in any lease, sublease, or other agreement pursuant to which Grantor is granted a possessory interest in the Land; or as set forth in any contract or agreement (written or oral, now or hereinafter in effect), relating to the use, operation, enjoyment or acquisition of, or construction on, or provision of goods or supplies to, the Mortgaged Property, or any part thereof, regardless of whether Grantor is granted a possessory interest in the Land pursuant thereto. Obligation shall specific exclude any environmental or other indemnity agreement executed in favor of Beneficiary.

U. Personalty. All of the right, title, and interest of Grantor in and to all furniture, furnishings, equipment, machinery, goods, general intangibles, money, accounts, contract rights, inventory, insurance and condemnation proceeds and all other personal property (other than the Fixtures) of any kind or character as defined in and subject to the provisions of the UCC, now or hereafter located upon, within or about the Land and the Improvements or used in connection with the operation thereof, together with all accessories, replacements, and substitutions thereto or therefor and the proceeds thereof, together with all articles of personal property now or hereafter used in or about the improvements which are necessary to the complete and comfortable use and occupancy of the same for the purpose or purposes for which erected, and all building materials and equipment now or hereafter delivered to the above-referenced real property and intended to be installed thereon or in or upon the Improvements or used in the development of the Mortgaged Property, and all plans, drawings, surveys, appraisals, books, records and all other documents of any type or nature used or intended to be used in the development of the Mortgaged Property (all of such articles of personal property, building materials, equipment and documents being hereafter sometimes collectively referred to as the "Personal Property").

V. Rents and Incomes. All of the rents, royalties, revenues, income, proceeds, profits, issues and other benefits paid or payable by parties to the Leases and Agreements for using, leasing, licensing, possession, operating from, residing in, selling or otherwise enjoying the Mortgaged Property.

W. Security Documents. This Deed of Trust, the Guaranty, , and any and all other documents now or hereafter executed by Grantor, Debtor, Guarantor or any other person or party to evidence or secure the payment of the Indebtedness or the performance and discharge of the Obligations.

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement and Assignment of Rents, Leases, Incomes and Agreements - Page 15

EXHIBIT 0016

X. UCC. The Uniform Commercial Code of the State of California or, if the creation, perfection and enforcement of any security interest herein granted is governed by the laws of a state other than California, then, as to the matter in question, the Uniform Commercial Code in effect in that state.

ARTICLE 2.
GRANT

2..1. Grant. To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Grantor has GRANTED, BARGAINED, SOLD, TRANSFERRED, ASSIGNED and CONVEYED, and by these presents does GRANT, BARGAIN, SELL, TRANSFER, ASSIGN and CONVEY, unto Trustee the Mortgaged Property, TO HAVE AND TO HOLD the Mortgaged Property unto Trustee, forever, and Grantor does hereby bind itself, its successors and assigns to warrant and forever defend the title to the Mortgaged Property unto Trustee against every person whomsoever lawfully claiming or to claim the same or any part thereof. Grantor further grants to Beneficiary a security interest in the Personalty, Fixtures, Leases, and Rents under Article 9 of the Uniform Commercial Code in effect in the State of California.

ARTICLE 3.
WARRANTIES AND REPRESENTATIONS

Grantor and Debtor hereby unconditionally warrant and represent to Beneficiary as follows:

3..1. Validity of Loan Instruments. The execution, delivery and performance by Grantor of the Security Documents (other than the Guaranty), and the borrowing evidenced by the Note, (a) if Grantor or Debtor is a corporation, are within Grantor's and Debtor's Board of Directors, Shareholders and all other requisite corporate action, (b) if Grantor or Debtor is a partnership, are within Grantor's and Debtor's partnership powers and have been duly authorized by the Grantor's and Debtor's Articles and/or Agreement of Partnership or otherwise by the partners of Grantor and Debtor, as applicable, (c) if Grantor or Debtor is a limited liability company, are within Grantor's and Debtor's company powers and have been duly authorized by the Grantor's and Debtor's Certificate of Formation and/or Operating Agreement or otherwise by the members and managers of Grantor and Debtor, as applicable, (d) have received all (if any) requisite prior governmental approval in order to be legally binding and enforceable in accordance with the terms thereof, and (e) will not violate, be in conflict with, result in a breach of or constitute (with due notice or lapse of time, or both) a default under, any Legal Requirement or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Grantor's, Debtor's, or Guarantor's property or assets, except as contemplated by the provisions of the Security Documents. The Security Documents constitute the legal, valid, and binding obligations of Grantor, Debtor, Guarantor, and others obligated under the terms of the Security Documents, in accordance with their respective terms.

3..2. Title to Mortgaged Property and Lien of this Instrument. Grantor has good and marketable title to the Land (in fee simple, if the lien created hereunder be on the fee, or a first and prior leasehold estate, if it be created on the leasehold estate) and Improvements, and good and indefeasible title to the Fixtures and Personalty, free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust constitutes a valid, subsisting, first lien deed of trust on the Land, the Improvements, and the Fixtures and a valid, subsisting, first security interest in and to the Personalty, Leases and Agreements and Rents and Incomes, all in accordance with the terms hereof.

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 16

**EXHIBIT 0017**

3..3. <u>Environmental Matters</u>.

A. The Mortgaged Property and Grantor are not in violation of any Environmental Laws or subject to any existing, pending, or threatened investigation by any Governmental Authority under any Environmental Laws.

B. Grantor has not obtained and is not required by any Environmental Laws to obtain any permits or licenses to construct or use the Mortgaged Property or the Improvements.

C. Grantor has conducted an appropriate inquiry into previous uses and ownership of the Mortgaged Property, and after such inquiry determined that no Hazardous Substance has been disposed of, transported, or released on or at the Mortgaged Property.

D. No part of the Mortgaged Property is being used or, to the knowledge of Grantor, has been used at any previous time, for the disposal, storage, treatment, processing, transporting, or other handling of Hazardous Substances, nor is any part of the Mortgaged Property affected by any Hazardous Substance contamination except as disclosed to Beneficiary in writing.

E. To the best of Grantor's knowledge and belief, no real property adjoining the Mortgaged Property is being used, or has ever been used at any previous time, for the disposal, storage, treatment, processing, or other handling of Hazardous Substances, nor is any other real Mortgaged Property adjoining the Mortgaged Property affected by Hazardous Substances contamination.

F. No investigation, administrative order, consent order or agreement, litigation, or settlement with respect to Hazardous Substances or Hazardous Substances contamination is proposed, threatened, anticipated, or in existence regarding the Mortgaged Property. The Mortgaged Property is not currently on, and to Grantor's knowledge, after diligent investigation and inquiry, has never been on, any federal or state "Superfund" or "Superlien" list.

G. Neither Grantor nor, to the best of Grantor's knowledge and belief, any tenant of any portion of the Mortgaged Property has received any notice from any Governmental Authority regarding any violation of any Environmental Laws.

H. The use that Grantor makes and intends to make of the Mortgaged Property shall not result in the disposal or release of any Hazardous Substances on, in, or to the Mortgaged Property.

I. Grantor shall not cause any violation of any Environmental Laws, nor permit any tenant of any portion of the Mortgaged Property to cause such a violation, nor permit any environmental liens to be placed on any portion of the Mortgaged Property.

J. Neither Grantor nor any third party shall use, generate, manufacture, store, release, discharge, or dispose of any Hazardous Substance on, under, or about the Mortgaged Property, or transport any Hazardous Substance to or from the Mortgaged Property.

K. <u>Survival of Representations and Warranties</u>. The foregoing representations and warranties shall be continuing and shall be true and correct for the period from the date of this instrument to the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure), and these representations and warranties shall survive such release.

L.<u>Notice to Beneficiary</u>. Grantor shall give prompt written notice to Beneficiary of:

(1) Any proceeding or inquiry by any Governmental Authority (including, without limitation, the California State Department of Health Services) regarding the presence or threatened presence of any Hazardous Substance on the Mortgaged Property;

(2) All claims made or threatened by any third party against Grantor or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance;

(3) Any notice given to Grantor under California Civil Code § 851(b); and

(4) Grantor's discovery of any occurrence or condition on any real Mortgaged Property adjoining or in the vicinity of the Mortgaged Property that could cause it or any part of it to be subject to any restrictions on the ownership, occupancy, transferability, or use of the Mortgaged Property under any Environmental Laws.

M. <u>Beneficiary's Right to Join Legal Actions</u>. Beneficiary shall have the right, at its option, but at Grantor's sole cost and expense, to join and participate in, as a party if it so elects, any legal proceedings or actions initiated by or against Grantor or the Mortgaged Property in connection with any Environmental Laws.

N. <u>Indemnity</u>. Grantor and Debtor shall indemnify, defend, and hold harmless Beneficiary, its directors, officers, employees, agents, successors, and assigns from and against any loss, damage, cost, expense, or liability directly or indirectly arising from or attributable to the use, generation, manufacture, production, storage, release, threatened release, discharge, disposal, or presence of a Hazardous Substance on, under, or about the Mortgaged Property, or any order, consent decree, or settlement relating to the cleanup of a Hazardous Substance, or any claims of loss, damage, liability, expense, or injury relating to or arising from, directly or indirectly, any disclosure by Beneficiary to anyone of information, whether true or not, relative to a Hazardous Substance or Environmental Law violation, including, without limitation, Attorney Fees. This indemnity shall survive the release of this Deed of Trust (whether by payment of the Indebtedness secured by this Deed of Trust or foreclosure or action in lieu of foreclosure).

O. <u>Environmental Audits</u>. From time to time Beneficiary may request and Grantor shall provide at its sole cost and expense within forty-five (45) days after written request by Beneficiary a report from a qualified engineering firm or other qualified consultant acceptable to Beneficiary with respect to an investigation and audit of the Mortgaged Property (environmental audit), which environmental audit report shall be addressed to Beneficiary and based on a thorough review of past and present uses, occupants, ownership, and tenancy of the Mortgaged Property and adjacent properties; soils or test boring reports from the construction of the Mortgaged Property; liaison with any Governmental Authority regarding known or suspected Hazardous Substances contamination, use, generation, or storage on the Mortgaged Property or other properties in the area; review of aerial photographs; and visual site inspection noting unregulated fills, storage tanks or areas, ground discoloration or soil odors; and other investigative methods deemed necessary by the consultant to enable the consultant to report that there is no apparent or likely contamination of the Mortgaged Property by Hazardous Substances, whether such source of contamination is the Mortgaged Property or another Mortgaged Property in the area; and Grantor shall, if deemed reasonably necessary to further investigate suspected or likely contamination, provide Beneficiary with supplemental reports by acceptable qualified consultants of the analysis of core drilling or groundwater supplies from the Mortgaged Property, showing no contamination by Hazardous Substances.

P. <u>Duty to Cure</u>. If the environmental audit discloses matters unacceptable to Beneficiary, Grantor shall cure such matters in a manner acceptable to Beneficiary within one hundred eighty (180) days after the environmental audit or supplemental report. Failure to cure such matters shall be a default under the Loan Documents and Beneficiary may, without prior notice, declare all sums secured by this Deed of Trust, regardless of their stated due date(s), immediately due and payable, and may exercise all rights and remedies provided in this Deed of Trust.

ARTICLE 4.
<u>AFFIRMATIVE COVENANTS</u>

Grantor and Debtor hereby unconditionally covenant and agree with Beneficiary as follows:

4..1.    <u>Payment and Performance</u>.  Grantor and Debtor will pay the Indebtedness, as and when called for in the Security Documents and on or before the due dates thereof, and will perform all of the Obligations, in full and on or before the dates same are to be performed.

4..2.    <u>Compliance with Legal Requirements</u>.  Grantor and Debtor will promptly and faithfully comply with, conform to and obey all present and future Legal Requirements.

4..3.    <u>Payment of Impositions</u>.   Grantor will duly pay and discharge, or cause to be paid and discharged, the Impositions not later than the due date thereof.

4..4.    <u>Repairs</u>.  Grantor will keep the Mortgaged Property in first class order and condition and will make all repairs, replacements, additions, improvements, and alterations thereof and thereto, interior and exterior, structural and non structural, which are necessary or reasonably appropriate to keep same in such order and condition.

4..5.    <u>Insurance</u>.  Grantor will obtain and maintain insurance upon and relating to the Mortgaged Property insuring against personal injury and death, loss by fire and such other hazards, casualties and contingencies (including business interruption insurance covering loss of Rents and Incomes and flood insurance) as are normally and usually covered by extended coverage policies in effect where the Land is located and such other risks as may be specified by Beneficiary, from time to time, all in such amounts and with such insurers of recognized responsibility as are acceptable to Beneficiary.  Each insurance policy issued in connection therewith shall provide by way of endorsements, riders or otherwise that (a) proceeds will be payable to Beneficiary as its interest may appear, it being agreed by Grantor that such payments shall be applied (i) if there be no Event of Default existing or which would exist but for due notice or lapse of time, or both, to the restoration, repair or replacement of the Mortgaged Property, or (ii) if there be an Event of Default existing, or which would exist but for due notice or lapse of time, or both, at the option of the Beneficiary, either for the above-stated purpose or toward the payment of the Indebtedness; (b) the coverage of Beneficiary shall not be terminated, reduced or affected in any manner regardless of any breach or violation by Grantor of any warranties, declarations, or conditions in such policy; (c) no such insurance policy shall be canceled, endorsed, altered or reissued to effect a change in coverage for any reason and to any extent whatsoever unless such insurer shall have first given Beneficiary ten (10) days' prior written notice thereof; and (d) Beneficiary may, but shall not be obliged to, make premium payments to prevent any cancellation, endorsement, alteration or reissuance and such payments shall be accepted by the insurer to prevent same.  Beneficiary shall be furnished with the original of each such initial policy or an acceptable binder, in form satisfactory to Beneficiary, coincident with the execution of this Deed of Trust and the original of each renewal policy not less than fifteen (15) days prior to the expiration of the initial or each preceding renewal policy together with (subject to the provisions of Article 11.) receipts or other evidence that the premiums thereon have been paid.  Grantor shall furnish to Beneficiary, on or before one hundred twenty (120) days after the close of each of Grantor's fiscal years, a statement certificated by a duly

EXHIBIT 0020

authorized officer of Grantor of the amounts of insurance maintained in compliance with this Paragraph 4.5. of the risks covered by such insurance and of the insurance company or companies which carry such insurance.

4..6.    Application of Proceeds.    If the proceeds of the insurance described in Paragraph 4.5. hereinabove are to be used for restoration, repair, or replacement ("Work") of the Mortgaged Property (whether pursuant to Paragraph 4.5.(a)(i), if there be no Event of Default as therein referred to, or pursuant to Paragraph 4.5.(a)(ii), by reason of exercise of the option of Beneficiary to use such proceeds for the aforesaid purpose), such proceeds shall be paid out by Beneficiary from time to time to Grantor (or, at the option of Beneficiary, jointly to Grantor and the persons furnishing labor and/or material incident to such work or directly to such persons) as the Work progresses, subject to the following conditions:  (a) prior to commencement of the Work (other than Work to be performed on an emergency basis to protect the Mortgaged Property or prevent interference therewith), (i) an architect or engineer, approved by Beneficiary, shall be retained by Grantor (at Grantor's expense) and charged with the supervision of the Work and (ii) Grantor shall have prepared, submitted to Beneficiary and secured Beneficiary's written approval of the plans and specifications for such Work; (b) each request for payment by Grantor shall be made on ten (10) days' prior written notice to Beneficiary and shall be accompanied by a certificate to be made by the architect or engineer supervising the Work (if one is required pursuant to Paragraph 4.6.(a) hereinabove), otherwise by an executive officer of Grantor, stating, among such other matters as may be reasonably required by Beneficiary, that: (i) all of the Work completed has been done in compliance with the approved plans and specifications (if any be required under Paragraph 4.6.(a) hereinabove); (ii) the sum requested is justly required to reimburse Grantor for payments by Grantor to, or is justly due to, the contractor, subcontractors, materialmen, laborers, engineers, architects or other persons rendering services or materials for the Work (giving a brief description of such services and materials); (iii) when added to all sums previously paid out by Grantor, the sum requested does not exceed the value of the Work done to the date of such certificate; and (iv) the amount of insurance proceeds remaining in the hands of Beneficiary will be sufficient upon completion of the Work to pay for the same in full (giving in such reasonable detail as Beneficiary may require an estimate of the cost of such completion); (c) each request shall be accompanied by waivers of lien satisfactory in form and substance to Beneficiary covering that part of the Work for which payment or reimbursement is being requested and by a search prepared by a title company or licensed abstractor or by other evidence satisfactory to Beneficiary that there has not been filed with respect to the Mortgaged Property any mechanic's lien or other lien, affidavit or instrument asserting any lien or any lien rights with respect to the Mortgaged Property; (d) there has not occurred any Event of Default since the hazard, casualty or contingency giving rise to payment of the insurance proceeds; and (e) in the case of the request for the final disbursement, such request is accompanied by a copy of any certificate of occupancy or other certificate required by any Legal Requirement to render occupancy of the damaged portion of the Mortgaged Property lawful.  If, upon completion of the Work, any portion of the insurance proceeds has not been disbursed to Grantor (or one or more of the other aforesaid persons) incident thereto, Beneficiary may, at Beneficiary's option, disburse such balance to Grantor or apply such balance toward the payment of the Indebtedness.  Nothing herein shall be interpreted to prohibit Beneficiary from (a) withholding from each such disbursement ten percent (10%) (or such greater amount, if permitted or required by any Legal Requirement) of the amount otherwise herein provided to be disbursed, and from continuing to withhold such sum, until the time permitted for perfecting liens against the Mortgaged Property has expired, at which time the amount withheld shall be disbursed to Grantor (or to Grantor and any person or persons furnishing labor and/or material for the Work or directly to such persons, or (b) applying at any time the whole or any part of such insurance proceeds to the curing of any Event of Default.

4..7.    Restoration Following Casualty.    If any act or occurrence of any kind or nature (including any casualty for which insurance was not obtained or obtainable) shall result in damage to or loss or destruction of the Mortgaged Property, Grantor will give notice thereof to Beneficiary and, if so instructed by Beneficiary, will promptly, at Grantor's sole cost and expense and regardless of whether the insurance

EXHIBIT0021

proceeds (if any) shall be sufficient for the purpose, commence and continue diligently to completion to restore, repair, replace, and rebuild the Mortgaged Property as nearly as possible to its value, condition and character immediately prior to such damage, loss or destruction.

    4..8.   <u>Performance of Leases and Agreements</u>.  Grantor will (a) duly and punctually perform and comply with any and all representations, warranties, covenants and agreements expressed as binding upon it under each of the Leases and Agreements, (b) not voluntarily terminate, cancel, or waive its rights or the obligations of any other party under any of the Leases and Agreements, (c) use all reasonable efforts to maintain each of the Leases and Agreements in force and effect during the full term thereof, and (d) appear in and defend any action or proceeding arising under or in any manner connected with any of the Leases and Agreements or the representations, warranties, covenants, and agreements of it or the other party or parties thereto.

    4..9.   <u>Inspection</u>.  In addition to any rights Beneficiary may have under California Civil Code § 2929.5, Grantor will permit Trustee and Beneficiary, and their agents, representatives and employees, to inspect the Mortgaged Property at all reasonable times.

    4..10.   <u>Hold Harmless</u>.  Grantor and Debtor will defend, at their own cost and expense, and hold Beneficiary harmless from, any action, proceeding or claim affecting the Mortgaged Property or the Security Documents, and all costs and expenses incurred by Beneficiary in protecting its interests hereunder in such an event (including all court costs and attorney's fees) shall be borne by Grantor and Debtor.

    4..11.   <u>Books and Records</u>.  Grantor will maintain full and accurate books of account and other records reflecting the results of its operations, and will furnish or cause to be furnished to Beneficiary, on or before ninety (90) days after the end of Grantor's fiscal year, an annual operating statement, in such detail as Beneficiary may reasonably require, which accurately, fairly and separately presents Grantor's operations of the Mortgaged Property and the income derived therefrom and expenses attributable thereto for the fiscal year then ended such operating statement to be certified by Grantor's accountant as having been prepared in accordance with generally accepted accounting principles consistently applied.  At any time and from time to time, Grantor shall deliver to Beneficiary such other financial data as Beneficiary shall reasonably request with respect to the ownership, maintenance, use and operation of the Mortgaged Property, and Beneficiary shall have the right, at reasonable times and upon reasonable notice, to audit Grantor's books of account and records relating to the Mortgaged Property, all of which shall be maintained and made available to Beneficiary and Beneficiary's representatives for such purpose on the Mortgaged Property or at such other location as Beneficiary may approve.  In addition to the foregoing Grantor and Debtor shall furnish to Beneficiary at any time and from time to time such financial information as may be reasonably required by other institutional investors in connection with their purchase or proposed purchase of the loan evidenced by the Note and Security Documents in whole or in part.

    4..12.   <u>Appraisals</u>.  Grantor agrees that if at any time Beneficiary reasonably believes the value of the Property has declined, or if Beneficiary is required by any Governmental Authority to procure an appraisal of the Mortgaged Property, Beneficiary may request that an appraisal be conducted upon the Mortgaged Property by a qualified appraisal company of Beneficiary's choosing, the cost of such appraisal to be borne by Grantor.  Beneficiary may advance funds necessary to pay for the appraisal and such advances shall become part of the indebtedness and secured by this Deed of Trust.  Grantor agrees to promptly reimburse Beneficiary for any funds so advanced.

    4..13.   <u>Financial Information</u>.  Until final payment of the Indebtedness secured hereby, Grantor and Debtor covenant and agree to furnish or cause to be furnished to Beneficiary upon request a balance sheet, operating statement, profit and loss statement, a reconciliation of net worth, financial statement(s) and such other financial and operating information pertaining to Grantor, Debtor, and Guarantor(s) as Beneficiary

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing, and Assignment of Rents, Leases, Incomes and Agreements - Page 21

EXHIBIT 0022

may request, including, without limitation, income tax returns, which shall fairly present, in accordance with generally accepted accounting principles, the financial condition of Grantor, Debtor, and Guarantor(s), certified as true and correct by Grantor and Debtor.

## ARTICLE 5.
## NEGATIVE COVENANTS

Grantor hereby covenants and agrees with Beneficiary that, until the entire Indebtedness shall have been paid in full and all of the Obligations shall have been fully performed and discharged:

5..1.    Use Violations.    Grantor will not use, maintain, operate or occupy, or allow the use, maintenance, operation or occupancy of, the Mortgaged Property in any manner which (a) violates any Legal Requirement, (b) may be dangerous unless safeguarded as required by law, (c) constitutes a public or private nuisance or (d) makes void, voidable or cancellable, or increases the premium of, any insurance then in force with respect thereto.

5..2.    Alterations.    Grantor will not commit or permit any waste of the Mortgaged Property and will not (subject to the provisions of Paragraphs 4.4., 4.5. and 4.7. hereinabove) without the prior written consent of Beneficiary make or permit to be made any alterations or additions to the Mortgaged Property of a material nature.

5..3.    Replacement of Fixtures and Personalty.    Grantor will not, without the prior written consent of Beneficiary, permit any of the Fixtures or Personalty to be removed at any time from the Land or Improvements unless the removed item is removed temporarily for maintenance and repair or, if removed permanently, is replaced by an article of equal suitability and value, owned by Grantor, free and clear of any lien or security interest except such as may be first approved in writing by Beneficiary. Such replacement Personalty shall maintain the same priority as this Deed of Trust has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements, including but not limited to § 9334 of the California Commercial Code.

5..4.    No Further Encumbrances.    Grantor will not, without the prior written consent of Beneficiary, create, place or permit to be created or placed, or through any act or failure to act, acquiesce in the placing of, or allow to remain, any mortgage, pledge, lien (statutory, constitutional, contractual or at common law), security interest, encumbrance or charge, or conditional sale or other title retention agreement, regardless of whether same are expressly subordinate to the liens of the Security Documents, with respect to the Mortgaged Property, the Leases and Agreements or the Rents and Incomes.

## ARTICLE 6.
## EVENTS OF DEFAULT

The term "Event of Default", as used in the Security Documents, shall mean the occurrence or happening, at any time and from time to time, of any one or more of the following:

6..1.    Payment of Indebtedness.    If Grantor or Debtor shall fail, refuse or neglect to pay, in full, any installment or portion of the Indebtedness as and when the same shall become due and payable, whether at the due date thereof stipulated in the Security Documents, or at a date fixed for prepayment, or by acceleration, on demand or otherwise.

6..2.    Performance of Obligations.    If Grantor or Debtor shall fail, refuse or neglect to perform and discharge fully and timely any of the Obligations as and when called for.

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 22

EXHIBIT 0023

6..3.   Breach of Covenants.  If Grantor or Debtor shall breach any of Grantor's or Debtor's affirmative or negative covenants, and such breach is not cured within any grace period provided therefor.

6..4.   False Representation.  If any representation or warranty made by Grantor, Debtor, Guarantor, or any partner, member, manager, officer, shareholder or director of Grantor, Debtor, or any Guarantor, or others in, under or pursuant to the Security Documents shall be false or misleading in any material respect.

6..5.   Bankruptcy.  If Grantor, Debtor, or any Guarantor or any partner, officer, member shareholder or director of Grantor, Debtor, or any Guarantor shall (a) seek the entry of an order for relief under the United States Bankruptcy Code, as amended, or if an order for relief is entered under the United States Bankruptcy Code with respect to any of them, (b) seek, consent to or not contest the appointment of a receiver, trustee, custodian, conservator or guardian for itself or for all or any part of its property, (c) file a petition seeking relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or any other competent jurisdiction, (d) make a general assignment for the benefit of its or his creditors, or (e) generally not pay its debts as they become due.

6..6.   Involuntary Bankruptcy.  If (a) a petition is filed against Grantor, Debtor, or any Guarantor or any partner, member, officer, shareholder, or director of Grantor, Debtor, or any Guarantor seeking the entry of an order for relief under the bankruptcy, arrangement, reorganization or other debtor relief laws of the United States or any state or other competent jurisdiction, or (b) a court of competent jurisdiction enters an order, judgment or decree appointing, without the consent of Grantor, Debtor, or any Guarantor, or any partner, member, shareholder, officer or director of Grantor, Debtor, or any Guarantor, a receiver, trustee, custodian, conservator or guardian for it, or for all or any part of its property, and such petition, order, judgment or decree shall not be and remain discharged or stayed within a period of thirty (30) days after its entry.

6..7.   Dissolution or Change of Ownership (Applicable to Corporate, Limited Liability Company, or Partnership).  If Grantor or Debtor shall dissolve or liquidate, or merge with or be consolidated into any other entity, or shall attempt to do any of the same, or if any Guarantor, shareholder, member, or partner of Grantor or Debtor shall sell, assign, transfer, convey, pledge, mortgage, encumber or grant a security interest in all or so much of the stock, membership interest, or partnership interest in Grantor or Debtor owned by any Guarantor, shareholder, member, or partner of Grantor or Debtor.

6..8.   Destruction of Improvements.  If the Mortgaged Property is substantially demolished, destroyed or substantially damaged so that (as determined in Beneficiary's sole judgment) it cannot be restored or rebuilt with available funds to a profitable condition within a period of ninety (90) days.

6..9.   Foreclosure of Other Liens.  If the holder of any lien or security interest on the Mortgaged Property (without hereby implying Beneficiary's consent to the existence, placing, creating or permitting of any such lien or security interest) institutes foreclosure or other proceedings for the enforcement of its remedies thereunder.

6..10.   Sales, Leases or Other Transfers.  If Grantor, without the prior written consent of Beneficiary, sells, leases, exchanges, assigns, conveys, transfers possession of or otherwise disposes of the Mortgaged Property or any part thereof.  To assist Beneficiary in determining whether or not to consent to any such sale, lease, exchange, assignment, conveyance, transfer or other disposition, Grantor shall furnish Beneficiary, at no expense to Beneficiary, detailed and complete financial statements of the proposed transferee, audited by a certified public accountant satisfactory to Beneficiary, together with detailed and complete information about the business of the proposed transferee, the use to be made of the Mortgaged Property by the proposed transferee, projections by the proposed transferee of the sources of funds to be used to repay the Indebtedness secured hereby and other claims upon and requirements for such funds, and

**EXHIBIT 0024**

an appraisal of the Mortgaged Property in such form and by an appraiser satisfactory to Beneficiary, together with such other information as Beneficiary may reasonably require. Any determination by Beneficiary that its security would be impaired by such transfer shall be conclusive and binding on all persons affected thereby. Beneficiary may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to this Deed of Trust, and any such transferee shall assume all obligations hereunder and agree to be bound by all provisions contained herein. Such assumption shall not, however, release Grantor or any maker or guarantor of the Note from any liability thereunder or hereunder. Consent to one such transaction shall not be deemed to be a waiver of the right to require consent to future or successive transactions. As used herein "sell, lease, exchange, assign, convey, transfer possession of or otherwise dispose of" includes the sale, agreement to sell, assignment, conveyance or transfer of the Mortgaged Property, or any portion thereof or interest therein, whether voluntary, involuntary, by operation of law or otherwise, or the lease of all or any portion of the Mortgaged Property. The term "sell" shall also include (i) the transfer, assignment or conveyance or other change in ownership of the capital stock of Grantor, if Grantor is a corporation, (ii) a withdrawal or change of any Member of Grantor, if Grantor is a Limited Liability Company, or (iii) a withdrawal or change of any Partner of Grantor, if Grantor is a General or Limited Partnership.

## ARTICLE 7.
## DEFAULT AND FORECLOSURE

7..1.    Remedies. If an Event of Default shall occur, Beneficiary may, at Beneficiary's election and by or through Trustee or otherwise, exercise any or all of the following rights, remedies and recourses:

A. Acceleration. Declare the Principal Balance (defined hereby as meaning the then unpaid principal balance on the Note), the accrued interest and any other accrued but unpaid portion of the Indebtedness to be immediately due and payable, without further notice, presentment, protest, demand, notice of intent to accelerate or action or notice of any nature whatsoever (each of which hereby is expressly waived by Grantor and Debtor), whereupon the same shall become immediately due and payable.

B. Entry on Mortgaged Property. Enter upon the Mortgaged Property and take exclusive possession thereof and of all books, records and accounts relating thereto. If Grantor remains in possession of all or any part of the Mortgaged Property after an Event of Default and without Beneficiary's prior written consent thereto, Grantor shall be deemed to be a tenant at will or sufferance of Beneficiary, and Beneficiary may invoke any and all legal remedies to dispossess Grantor, including specifically one or more actions for forcible entry and detainer, trespass to try title and writ of restitution. Nothing contained in the foregoing sentence shall, however, be construed so as to impose any greater obligation or any prerequisites to acquiring possession of the Mortgaged Property after an Event of Default than would have existed in the absence of such sentence.

C. Operation of Mortgaged Property. Hold, lease, manage, operate or otherwise use or permit the use of the Mortgaged Property, either itself or by other persons, firms or entities, in such manner, for such time and upon such other terms as Beneficiary may deem to be prudent and reasonable under the circumstances (making such repairs, alterations, additions and improvements thereto and taking any and all other action with reference thereto, from time to time, as Beneficiary shall deem necessary or desirable), and apply all Rents and Incomes and other amounts collected by Trustee in connection therewith in accordance with the provisions of Paragraph 7.7. hereinbelow.

D. <u>Foreclosure and Sale</u>.  Commence an action for judicial foreclosure of this Deed of Trust and sale of the Mortgaged Property, and/or instruct the Trustee to commence a trustee's sale of the Mortgaged Property under the power of sale.

(1) If Beneficiary shall elect to instruct the Trustee to commence a trustee's sale of the Mortgaged Property, the sale shall be conducted as follows:

(A)  Beneficiary shall deliver to Trustee a written declaration of default and demand for sale and a written notice of default and election to cause the Mortgaged Property to be sold, which notice Trustee shall cause to be filed for record. Beneficiary shall also deposit with Trustee this Deed of Trust, the Note and all documents evidencing expenditures secured hereby.

(B)  After a lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Grantor or Debtor, shall sell the Mortgaged Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone the sale of all or any portion of the Mortgaged Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement.  Trustee shall deliver to such purchaser its deed conveying the Mortgaged Property so sold, but without any covenant or warranty, express or implied.  The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof.

(C)  Any person, including Grantor, Debtor, Trustee, or Beneficiary, may purchase at any sale of the Mortgaged Property under this Deed of Trust, and if Beneficiary is the highest bidder, may credit the portion of the purchase price that would be distributed to Beneficiary against the Indebtedness in lieu of paying cash.  The proceeds of such sale shall be applied as provided in Section 7.1.

E. <u>Trustee or Receiver</u>.  Upon, or at any time after, commencement of foreclosure of the lien and security interest provided for herein or any legal proceedings hereunder, make application to a court of competent jurisdiction as a matter of strict right and without notice to Grantor or Debtor or regard to the adequacy of the Mortgaged Property for the repayment of Indebtedness, for appointment of a receiver of the Mortgaged Property and Grantor and Debtor do hereby irrevocably consent to such appointment.  Any such receiver shall have all the usual powers and duties of receivers in similar cases, including the full power to rent, maintain and otherwise operate the Mortgaged Property upon such terms as may be approved by the court, and shall apply such Rents in accordance with the provisions of Paragraph 7.7. hereinbelow.

F. <u>Other</u>.  Exercise any and all other rights, remedies and recourses granted under the Security Documents or now or hereafter existing in equity, at law, by virtue of statute or otherwise.

7..2.  <u>Separate Sales</u>.  The Mortgaged Property may be sold in one or more parcels and in such manner and order as Trustee, in his sole discretion, may elect, it being expressly understood and agreed that the right of sale arising out of any Event of Default shall not be exhausted by any one or more sales but other and successive sales may be made until all of the Mortgaged Property has been sold or until the Indebtedness has been fully satisfied.

7..3.   <u>Remedies Cumulative, Concurrent and Non-Exclusive</u>.  Beneficiary shall have all rights, remedies and recourses granted in the Security Documents and available at law or equity (including specifically those granted by the Uniform Commercial Code in effect and applicable to the Mortgaged Property, or any portion thereof), and same (a) shall be cumulative and concurrent, (b) may be pursued separately, successively or concurrently against Grantor, Debtor, any Guarantor or others obligated under the Note, or against the Mortgaged Property, or against any one or more of them, at the sole discretion of Beneficiary, (c) may be exercised as often as occasion therefor shall arise, it being agreed by Grantor and Debtor that the exercise or failure to exercise any of same shall in no event be construed as a waiver or release thereof or of any other right, remedy or recourse, and (d) are intended to be, and shall be, non-exclusive.

7..4.   <u>Release of and Resort to Collateral</u>.  Beneficiary may release, regardless of consideration, any part of the Mortgaged Property without, as to the remainder, in any way impairing, affecting, subordinating or releasing the lien or security interests created in or evidenced by the Security Documents or their stature as a first and prior lien and security interest in and to the Mortgaged Property.  For payment of the Indebtedness, Beneficiary may resort to any other security therefor held by Trustee in such order and manner as Beneficiary may elect.

7..5.   <u>Waiver of Redemption, Notice and Marshalling of Assets</u>.  To the fullest extent permitted by law, Grantor and Debtor hereby irrevocably and unconditionally waive and release (a) all benefits that might accrue to Grantor or Debtor by virtue of any present or future law exempting the Mortgaged Property from attachment, levy or sale on execution or providing for any appraisement, valuation, stay of execution, exemption from civil process, redemption or extension of time for payment, (b) all notices of any Event of Default (except as may be provided for in Paragraph 6.2. hereinabove) or of Trustee's election to exercise or his actual exercise of any right, remedy or recourse provided for under the Security Documents, and (c) any right to a marshalling of assets or a sale in inverse order of alienation.

**7..6.   <u>Additional Waivers</u>. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the right to waive its lien against the Mortgaged Property or any portion thereof, whether fixtures or Personalty, to the extent that such Mortgaged Property is found to be environmentally impaired in accordance with California Code of Civil Procedure Section 726.5 and to exercise any and all rights and remedies of an unsecured creditor against Grantor and Debtor and all of Grantor's and Debtor's assets and Mortgaged Property for the recovery of any deficiency and environmental costs, including but not limited to seeking an attachment order under California Code of Civil Procedure Section 483.010. As between Beneficiary and Grantor, for purposes of California Code of Civil Procedure Section 726.5, Grantor will have the burden of proving that Grantor or any related party was not in any way negligent in permitting the release or threatened release of any Hazardous Substance. Grantor acknowledges and agrees that notwithstanding any term or provision contained herein or in any of the loan documents, all judgments and awards entered against Grantor with respect to any of the environmental provisions set forth in this Deed of Trust or the loan documents shall be exceptions to any non-recourse or exculpatory provision contained herein or therein, if any, and Grantor shall be fully and personally liable for all such judgments and awards entered against Grantor and/or Beneficiary hereunder, and such liability shall not be limited to the unpaid principal balance of the Note or any other outstanding Indebtedness. Grantor's obligations under this Section shall survive the foreclosure, deed in lieu of foreclosure, release, reconveyance or any other transfer of the Mortgaged Property or this Deed of Trust. For the purposes of any action brought under this Section, Grantor hereby waives the defense of laches and any applicable statute of limitations.**

<u>Waiver of Right of Offset</u>. No portion of the Indebtedness secured by this Deed of Trust shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 26

**EXHIBIT 0027**

claim, whether liquidated or unliquidated, that Grantor or Debtor may have or claim to have against Beneficiary. Grantor and Debtor hereby waive, to the fullest extent permitted by Governmental Requirements, the benefits of California Code of Civil Procedure § 431.70, which provides:

7..7.  Discontinuance of Proceedings.  In case Beneficiary shall have proceeded to invoke any right, remedy or recourse permitted under the Security Documents and shall thereafter elect to discontinue or abandon same for any reason, Beneficiary shall have the unqualified right so to do and, in such an event, Grantor, Debtor, and Beneficiary shall be restored to their former positions with respect to the Indebtedness, the Obligations, the Security Documents, the Mortgaged Property and otherwise, and the rights, remedies, recourses and powers of Beneficiary shall continue as if same had never been invoked.

7..8.  Application of Proceeds.  The proceeds of any sale of, and the Rents and Incomes and other amounts generated by the holding, leasing, operation or other use of, the Mortgaged Property shall be applied by Beneficiary (or the receiver, if one is appointed) to the extent that funds are so available therefrom in the following order of priority:

A.  First, to the payment of the costs and expenses of taking possession of the Mortgaged Property and of holding, using, leasing, repairing, improving and selling the same, including, without limitation, (i) trustees' and receivers' fees, (ii) court costs, (iii) attorneys' and accountants' fees, (iv) costs of advertisement, and (v) the payment of any and all Impositions, liens, security interests or other rights, titles or interests equal or superior to the lien and security interest of this Deed of Trust (except those to which the Mortgaged Property has been sold subject to and without in any way implying Beneficiary's prior consent to the creation thereof);

B.  Second, to the payment of all amounts, other than the Principal Balance and accrued but unpaid interest, which may be due to Beneficiary under the Security Documents, together with interest thereon as provided therein;

C.  Third, to the payment of all accrued but unpaid interest due on the Note;

D.  Fourth, to the payment of the Principal Balance;

E.  Fifth, to the extent funds are available therefor out of the sale proceeds or the Rents and Incomes and, to the extent known by Beneficiary, to the payment of any indebtedness or obligation secured by a subordinate Deed of Trust on or security interest in the Mortgaged Property; and

F.  Sixth, to Grantor.

7..9.  Prepayment.  If, following the occurrence of an Event of Default and an acceleration of the Indebtedness but prior to a sale of the Mortgaged Property, Grantor and Debtor shall tender to Beneficiary payment of an amount sufficient to satisfy the entire Indebtedness, such tender shall be deemed to be a voluntary prepayment under the Note and, accordingly, Grantor and Debtor shall (to the extent permitted by law) also pay to Beneficiary the premium (if any) then required under the Note in order to exercise the prepayment privilege contained therein.

7..10.  Occupancy After Foreclosure.  The purchaser at any foreclosure sale pursuant to Paragraph 7.1.D. shall become the legal owner of the Mortgaged Property. All occupants of the Mortgaged Property or any part thereof shall become tenants at sufferance of the purchaser at the foreclosure sale and shall deliver possession thereof immediately to the purchaser upon demand. It shall not be necessary for the purchaser at said sale to bring any action for possession of the Mortgaged Property other than the statutory action of forcible detainer in any Justice Court having jurisdiction over the Mortgaged Property.

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 27

EXHIBIT 0028

7..11.  Relationship of Multiple Beneficiaries.  If and so long as there shall be more than one Beneficiary under this Deed of Trust (the "Beneficiaries"), it is agreed that in the exercise of all of such Beneficiaries' rights and remedies under this Article 7. and elsewhere in this Deed of Trust and in the Security Documents, such Beneficiaries (unless otherwise expressly provided herein to the contrary) shall be governed and controlled by the decision of the holder or holders of not less than fifty-one percent (51%) of the aggregate principal amount owing (at the time in question) on the Note or Notes secured hereby, which decision shall be conclusive and binding on all such Beneficiaries.

ARTICLE 8.
CONDEMNATION

8..1.   General.  Immediately upon Grantor's obtaining knowledge of the institution of any proceeding for the condemnation of the Mortgaged Property, Grantor shall notify Trustee and Beneficiary of such fact. Grantor shall then, if requested by Beneficiary, file or defend its claim thereunder and prosecute same with due diligence to its final disposition and shall cause any award or settlements to be paid over to Beneficiary for disposition pursuant to the terms of this Deed of Trust.  Grantor may be the nominal party in such proceeding, but Beneficiary shall be entitled to participate in and to control same and to be represented therein by counsel of its own choice, and Grantor will deliver, or cause to be delivered, to Beneficiary such instruments as may be requested by it from time to time to permit such participation.  If the Mortgaged Property is taken or diminished in value, or if a consent settlement is entered, by or under threat of such proceeding, the award or settlement payable to Grantor by virtue of its interest in the Mortgaged Property shall be, and by these presents is, assigned, transferred and set over unto Beneficiary to be held by it, in trust, subject to the lien and security interest of this Deed of Trust, and disbursed as follows:

A. If (i) all of the Mortgaged Property is taken, (ii) so much of the Mortgaged Property is taken, or the Mortgaged Property is so diminished in value, that the remainder thereof cannot (in Beneficiary's judgment) continue to be operated profitably for the purpose it was being used immediately prior to such taking or diminution, (iii) an Event of Default shall have occurred, or (iv) the Mortgaged Property is partially taken or diminished in value and (in Beneficiary's judgment) need not be rebuilt, restored or repaired in any manner, then in any such event the entirety of the sums so paid to Beneficiary shall be applied by it in the order recited in Paragraph 8.2. hereinbelow; or

B. If (i) only a portion of the Mortgaged Property is taken and the portion remaining can (in Beneficiary's judgment), with rebuilding, restoration or repair, be profitably operated for the purpose referred to in Paragraph 8.1.A.(ii) hereinabove, (ii) none of the other facts recited in Paragraph 8.1.A. hereinabove exists, (iii) Grantor shall deliver to Beneficiary plans and specifications for such rebuilding, restoration or repair acceptable to Beneficiary; and (iv) Grantor shall thereafter commence the rebuilding, restoration or repair and complete same, all in accordance with the plans and specifications and within three (3) months after the date of the taking or diminution in value, then such sums shall be paid to Grantor to reimburse Grantor for money spent in the rebuilding, restoration or repair; otherwise, same shall be applied by Beneficiary in the order recited in Paragraph 8.2. hereinbelow.

8..2.   Application of Proceeds.  All proceeds received by Beneficiary with respect to a taking or a diminution in value of the Mortgaged Property shall be applied in the following order of priority:

A. First, to reimburse Trustee or Beneficiary for all costs and expenses, including reasonable attorney's fees, incurred in connection with collection of the said proceeds; and

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements – Page 28

**EXHIBIT 0029**

B. Thereafter, if there shall be any balance, to the order of priority recited in Paragraphs 7.8.B. through 7.8.F. hereinabove; subject, however, to the provisions of Paragraph 8.1.B. hereinabove requiring (under the circumstances therein specified) that such proceeds be applied to the rebuilding, restoration or repair of the Mortgaged Property.

ARTICLE 9.
SECURITY AGREEMENT AND ASSIGNMENT OF RENTS AND LEASES

9..1.    Security Interest. This Deed of Trust shall be construed as a Deed of Trust on real property and it shall also constitute and serve as a "Security Agreement" on personal property within the meaning of, and shall constitute a first and prior security interest under, the UCC with respect to the Personalty, Fixtures, Leases and Agreements and Rents and Incomes. To this end, Grantor has GRANTED, BARGAINED, CONVEYED, ASSIGNED, TRANSFERRED and SET OVER, and by these presents does GRANT, BARGAIN, CONVEY, ASSIGN, TRANSFER and SET OVER, unto Beneficiary, as security for the Indebtedness, a first and prior security interest in and to all of Grantor's right, title and interest in, to and under the Personalty, Fixtures, Leases and Agreements and Rents and Incomes, in trust, to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations. Grantor hereby absolutely and unconditionally assigns to Beneficiary, as further security for the Indebtedness , the Leases and Agreements and the Rents and Income. While any Event of Default exists, Beneficiary shall be entitled to exercise any or all of the remedies provided in Article 7 hereof, including the right to have a receiver appointed.

9..2.    Financing Statements. Grantor hereby agrees with Beneficiary to execute and deliver to Beneficiary, in form and substance satisfactory to Beneficiary, such "Financing Statements" and such further assurances as Beneficiary may, from time to time, consider reasonably necessary to create, perfect, and preserve Beneficiary's security interest herein granted, and Beneficiary may cause such statements and assurances to be recorded and filed, at such times and places as may be required or permitted by law to so create, perfect and preserve such security interest.

9..3.    Authorization to File Financing Statements. Grantor hereby irrevocably authorizes Beneficiary at any time and from time to time to prepare and file one or more financing statements (and any continuation statements and amendments thereto) in any governmental recording office with respect to the Personalty, Fixtures, Leases and Agreements and Rents and Incomes whether or not Grantor's signature appears thereon.

9..4.    Uniform Commercial Code Remedies. Beneficiary (or Trustee in Beneficiary's behalf) shall have all the rights, remedies and recourses with respect to the Personalty, Fixtures, Leases and Agreements and Rents and Incomes afforded a Secured Party by the aforesaid UCC, in addition to, and not in limitation of, the other rights, remedies and recourses afforded Beneficiary and/or Trustee by the Security Documents.

9..5.    No Obligation of Trustee. The assignment and security interest herein granted shall not be deemed or construed to constitute Trustee or Beneficiary as a trustee in possession of the Mortgaged Property, to obligate Trustee or Beneficiary to lease the Mortgaged Property or attempt to do same, or to take any action, incur any expenses or perform or discharge any obligation, duty or liability whatsoever under any of the Leases and Agreements or otherwise.

9..6.    Payment of Rents and Incomes To Grantor Until Default. Notwithstanding any other provision of this Deed of Trust and unless and until an Event of Default occurs, Grantor shall be entitled to collect the Rents and Incomes as and when, but not before, they become due and payable, as trustee with full fiduciary obligations for and to Beneficiary and Beneficiary shall have the rights set forth in California Civil Code § 2938. Grantor hereby agrees with Beneficiary that the other parties under the Leases and

EXHIBIT 0030

Agreements may, upon notice from Trustee or Beneficiary of the occurrence of an Event of Default, thereafter pay directly to Beneficiary the Rents and Incomes due and to become due under the Leases and Agreements and attorn all other obligations thereunder direct to Beneficiary without any obligation on their part to determine whether an Event of Default does in fact exist.

9..7.    <u>Fixture Filing</u>.  Portions of the Mortgaged Property are or are to become fixtures relating to the above-described real estate, and Grantor herein expressly covenants and agrees that the filing of this Deed of Trust in the Real Estate Records in the county where the Mortgaged Property is located shall also operate from the time of filing therein as a financing statement filed as a fixture filing in accordance with the UCC of the State of California.

9..8.    <u>No Merger</u>.  So long as any part of the Indebtedness secured hereby remains unpaid and undischarged, the fee and leasehold estates to the Mortgaged Property shall not merge, but shall remain separate and distinct, notwithstanding the union of such estates either in Grantor, Beneficiary, any lessee or any third party by purchase or otherwise.

ARTICLE 10.
<u>CONCERNING THE TRUSTEE</u>

10..1.    <u>No Liability</u>.  Trustee shall not be liable for any error of judgment or act done by Trustee, or be otherwise responsible or accountable under any circumstances whatsoever.  Trustee shall not be personally liable in case of entry by him, or anyone entering by virtue of the powers herein granted him, upon the Mortgaged Property for debts contracted or liability or damages incurred in the management or operation of the Mortgaged Property.  Trustee shall have the right to rely on any instrument, document or nature authorizing or supporting any action taken or proposed to be taken by him hereunder, believed by him in good faith to be genuine.  Trustee shall be entitled to reimbursement for expenses incurred by him in the performance of his duties hereunder and to reasonable compensation for such of his services hereunder as shall be rendered.  Grantor will, from time to time, pay the compensation due to Trustee hereunder and reimburse Trustee for, and save him harmless against, any and all liability and expenses which may be incurred by him in the performance of his duties.

10..2.    <u>Retention of Monies</u>.  All monies received by Trustee shall, until used or applied as herein provided, be held in trust for the purposes for which they were received, but need not be segregated in any manner from any other monies (except to the extent required by law), and Trustee shall be under no liability for interest on any monies received by him hereunder.

10..3.    <u>Successor Trustees</u>.  Trustee may resign by the giving of notice of such resignation in writing to Beneficiary.  If Trustee shall die, resign or become disqualified from acting in the execution of this trust or shall fail or refuse to execute the same when requested by Beneficiary so to do, or if, for any reason, Beneficiary shall prefer to appoint a substitute trustee ("Substitute" or "Successor Trustee") to act instead of the aforenamed Trustee, Beneficiary shall have full power to appoint a Substitute Trustee and, if preferred, several Substitute Trustees in succession who shall succeed to all the estates, rights, powers and duties of the aforenamed Trustee.

10..4.    <u>Succession Instruments</u>.  Any new Trustee appointed pursuant to any of the provisions hereof shall, without any further act, deed or conveyance, become vested with all the estates, properties, rights, powers and trusts of his predecessor in the rights hereunder with like effect as if originally named as Trustee herein; but nevertheless, upon the written request of Beneficiary or of the Successor Trustee, the Trustee ceasing to act shall execute and deliver an instrument transferring to such Successor Trustee, upon the trusts herein expressed, all the estates, properties, rights, powers and trusts of the Trustee so ceasing to act, and

**EXHIBIT0031**

shall duly assign, transfer and deliver any of the property and monies held by such Trustee to the Successor Trustee so appointed in his place.

## ARTICLE 11.
## MISCELLANEOUS

11..1.  Survival of Obligations.  Each and all of the Obligations shall survive the execution and delivery of the Security Documents, and the consummation of the loan called for therein, and shall continue in full force and effect until the Indebtedness shall have been paid in full.

11..2.  Further Assurances.  Grantor and Debtor, upon the request of Trustee or Beneficiary, will execute, acknowledge, deliver and record and/or file, such further instruments and do such further acts as may be necessary, desirable or proper to carry out more effectively the purposes of the Security Documents and to subject to the liens and security interests thereof any property intended by the terms thereof to be covered thereby, including specifically, but without limitation, any renewals, additions, substitutions, replacements or appurtenances to the then Mortgaged Property.

11..3.  Recording and Filing.  Grantor will cause the Security Documents and all amendments and supplements thereto and substitutions therefor, to be recorded, filed, re-recorded and re-filed in such manner and in such places as Trustee or Beneficiary shall reasonably request, and will pay all such recording, filing, re-recording and re-filing taxes, fees and other charges.

11..4.  Notices.  All notices or other communications required or permitted to be given pursuant to this Deed of Trust shall be in writing and shall be considered as properly given if mailed by first class United States Mail, postage prepaid, registered or certified mail, with return receipt requested, or by delivering same in person to the intended addressee or by prepaid telegram.  Notice so mailed shall be effective upon its deposit in an official depository of the United States Postal Service.  Notice given in any other manner shall be effective only if and when received by the addressee.  For purposes of notice, the addresses of the parties shall be as set forth in Paragraph 1.1.A. and the opening recital hereinabove; provided, however, that either party shall have the right to change its address for notice hereunder to any other location within the continental United States by the giving of thirty (30) days' notice to the other party in the manner set forth hereinabove.

11..5.  No Waiver.  Any failure by Trustee or Beneficiary to insist, or any election by Trustee or Beneficiary not to insist, upon strict performance by Grantor or Debtor of any of the terms, provisions or conditions of the Security Documents shall not be deemed to be a waiver of same or of any other term, provision or condition thereof, and Trustee or Beneficiary shall have the right at any time or times thereafter to insist upon strict performance by Grantor and Debtor of any and all of such terms, provisions and conditions.

11..6.  Beneficiary's Right to Perform the Obligations.  If Grantor or Debtor shall fail, refuse or neglect to make any payment or perform any act required by the Security Documents, then at any time thereafter, and without notice to or demand upon Grantor and Debtor and without waiving or releasing any other right, remedy or recourse Beneficiary may have because of same, Beneficiary may (but shall not be obligated to) make such payment or perform such act for the account of and at the expense of Grantor and Debtor, and shall have the right to enter the Land and Improvements for such purpose and to take all such action thereon and with respect to the Mortgaged Property as it may deem necessary or appropriate.  Grantor and Debtor shall indemnify Beneficiary for all losses, expenses, damage, claims and causes of action, including reasonable attorney's fees, incurred or accruing by reason of any acts performed by Beneficiary pursuant to the provisions of this Paragraph 11.6., or by reason of any other provision in the Security Documents. All sums paid by Beneficiary pursuant to this Paragraph 11.6., and all other sums expended by Beneficiary

EXHIBIT0032

to which it shall be entitled to be indemnified, together with interest thereon at the maximum rate allowed by law from the date of such payment or expenditure, shall constitute additions to the Indebtedness, shall be secured by the Security Documents and shall be paid by Grantor to Beneficiary upon demand.

11..7.  <u>Covenants Running with the Land</u>.  All Obligations contained in the Security Documents are intended by the parties to be, and shall be construed as, covenants running with the Mortgaged Property.

11..8.  <u>Successors and Assigns</u>.  All of the terms of the Security Documents shall apply to, be binding upon and inure to the benefit of the parties hereto, their permitted respective successors, assigns, heirs and legal representatives, and all other persons claiming by, through or under them.

11..9.  <u>Severability</u>.  The Security Documents are intended to be performed in accordance with, and only to the extent permitted by, all applicable Legal Requirements.  If any provision of any of the Security Documents or the application thereof to any person or circumstance shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of the instrument in which such provision is contained, nor the application of such provision to other persons or circumstances, nor the other instruments referred to hereinabove, shall be affected thereby, but rather shall be enforceable to the greatest extent permitted by law.  If any portion of the Note cannot be lawfully secured by this Deed of Trust, payments shall be applied first to discharge that portion.  It is the intention of the parties to conform strictly to applicable usury laws now in force.  Accordingly, if the transactions contemplated hereby would be usurious under applicable law, then, in that event, notwithstanding anything to the contrary in the Note or the Security Documents or in any other instrument or agreement entered into in connection with or as security for the Note and the loan evidenced thereby, it is agreed as follows:

A.  The aggregate of all consideration that constitutes interest under applicable law and that is contracted for, charged or received under the Note or the Security Documents or under any of the aforesaid instruments or agreements or otherwise (whether designated as interest, fees, indemnities, payments or otherwise) shall under no circumstances exceed the maximum amount of interest permitted by applicable law and any excess shall be canceled automatically and if theretofore paid, shall be credited on the Note by Beneficiary (or, if the Note has been paid in full refunded to Grantor); and

B.  In the event that the maturity of the Note is accelerated by reason of an election of Beneficiary resulting from an Event of Default hereunder or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount permitted by applicable law, and excess interest, if any, provided for in the Note or Security Documents shall be canceled automatically as of the date of such acceleration or prepayment and, if theretofore paid, shall be credited on the Note (or, if the Note has been paid in full, refunded to Grantor).

C.  All interest paid or agreed to be paid to Beneficiary shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full period until payment in full of the Indebtedness (including the period of any renewal or extension thereof) so that the interest so computed shall not exceed the Maximum Rate, as that term is defined in the Note.  This paragraph shall control all agreements between Grantor and Beneficiary.

11..10. <u>Entire Agreement and Modification</u>.  The Security Documents contain the entire agreements between the parties relating to the subject matter hereof and thereof and all prior agreements relative thereto which are not contained herein or therein are terminated.  The Security Documents may be amended, revised, waived, discharged, released or terminated only by a written instrument or instruments executed by the party against which enforcement of the amendment, revision, waiver, discharge, release or

EXHIBIT 0033

termination is asserted. Any alleged amendment, revision, waiver, discharge, release or termination which is not so documented shall not be effective as to any party.

11..11. <u>Counterparts</u>. This Deed of Trust may be executed in any number of counterparts, each of which shall be an original but all of which together shall constitute but one instrument.

11..12. <u>Applicable Law</u>. This Deed of Trust, the Note and the other Security Documents shall be deemed to be contracts made under and shall be construed in accordance with and governed by the State of Texas and of the United States of America; and Grantor and Debtor agree that the sole and exclusive forum for the determination of any action relating to the validity and enforceability of the Note, this Deed of Trust and the other Security Documents shall be either an appropriate court of the State of Texas or that court of the United States which includes within its territorial jurisdiction the State of Texas.

11..13. <u>Headings</u>. The Article, Paragraph and Subparagraph entitlements hereof are inserted for convenience of reference only and shall in no way alter, modify or define, or be used in construing, the text of such Articles, Paragraphs or Subparagraphs.

11..14. <u>Gender</u>. Each gender used herein shall include and apply to all genders, including the neuter.

11..15. <u>Tax and Insurance Escrow</u>. In order to implement the provisions of Paragraphs 4.3. and 4.5. hereinabove, Grantor shall pay to Beneficiary, as and when directed by Beneficiary, and as escrowed sums, an amount equal to the sum of (a) the annual Impositions (estimated wherever necessary) to become due for the tax year during which such payment is so directed and (b) the insurance premiums for the same year for those insurance policies as are required hereunder. If Beneficiary determines that any amounts theretofore paid by Grantor are insufficient for the payment in full of such Impositions and insurance premiums, Beneficiary shall notify Grantor of the increased amounts required to provide a sufficient fund, whereupon Grantor shall pay to Beneficiary within thirty (30) days thereafter the additional amount as stated in Beneficiary's notice. The escrowed sums may be held by Beneficiary in noninterest-bearing accounts and may be commingled with Beneficiary's other funds. Upon assignment of this Deed of Trust, Beneficiary shall have the right to pay over the balance of the escrowed sums then in its possession to its assignee, whereupon Beneficiary and its Trustee shall then become completely released from all liability with respect thereto. Upon full payment of the Indebtedness, or at such earlier time as Beneficiary may elect, the balance of the escrowed sums in its possession shall be paid over to Grantor and no other party shall have any right or claim thereto. If no Event of Default shall have occurred and be continuing hereunder, the escrowed sums shall, at the option of Beneficiary, be repaid to Grantor in sufficient time to allow Grantor to satisfy Grantor's obligations under the Security Documents to pay the Impositions and the required insurance premiums or be paid directly to the Governmental Authority and the insurance company entitled thereto. If an Event of Default shall have occurred and be continuing hereunder, however, Beneficiary shall have the additional option of crediting the full amount of the escrowed sums against the Indebtedness. Notwithstanding anything to the contrary contained in this Paragraph 11.15. or elsewhere in this Deed of Trust, Beneficiary hereby reserves the right to waive the payment by Grantor to Beneficiary of the escrowed sums, and, in the event Beneficiary does so waive such payment, it shall be without prejudice to Beneficiary's right to insist, at any subsequent time or times that such payments be made in accordance herewith.

11..16. <u>Subrogation</u>. If any or all of the proceeds of the Note have been used to extinguish, extend or renew any indebtedness heretofore existing against the Mortgaged Property, then, to the extent such funds are so used, the Indebtedness and this Deed of Trust shall be subrogated to all of the rights, claims, liens, titles and interests heretofore existing against the Mortgaged Property to secure the indebtedness so extinguished, extended or renewed and the former rights, claims, liens, titles and interests, if any, are not waived but rather are continued in full force and effect in favor of Beneficiary and are merged with the lien

and security interest created herein as cumulative security for the repayment of the Indebtedness and the satisfaction of the Obligations.

11..17. <u>Homestead</u>.  Grantor hereby declares and represents to Beneficiary that the Mortgaged Property forms no part of any property by Grantor owned, used or claimed as a business or residence homestead under the Constitution and Laws of the State of Texas.

11..18. <u>Enforceability and Choice of Law</u>.    This Deed of Trust and the obligations secured hereby and the agreements of any person or entity to pay or perform the obligations secured hereby shall be governed by and construed according to the laws of the State of Texas, without giving effect to conflict of law principles, except to the extent that the laws of the state in which the Land is located shall be applied to the creation and priority of the liens created hereby, and to the procedures applicable to any foreclosure, trustee's sale, appointment of a receiver or other remedy with respect to the Mortgaged Property.  Any procedures provided herein for such remedies shall be modified and replaced with, where inconsistent with or required by, any procedures or requirements of the laws of the state in which the Land is located. Notwithstanding the preceding, with respect to the perfection, priority and enforcement of the liens and security interests created by this Deed of Trust and the other Loan Documents in Mortgaged Property whose perfection and priority is covered by Article 9 of the Uniform Commercial Code (including, without limitation, the accounts), the law of the jurisdiction applicable in accordance with Sections 9-301 through 9-307 of the UCC as in effect in the State of California shall govern.  To the fullest extent permitted by law, Grantor and Debtor hereby unconditionally and irrevocably waives any claim or right to assert that the law of any other jurisdiction governs this Deed of Trust, and this Deed of Trust shall be governed by and construed in accordance with the laws of the State of Texas, except as specifically set forth above.

11..19. *JUDICIAL REFERENCE; WAIVER OF JURY TRIAL. To induce Beneficiary to make the financial accommodation contemplated by this Deed of Trust, Grantor, Debtor, and Beneficiary agree that the resolution of any dispute, controversy or claim between them that arises from or relates to this Deed of Trust or any related agreement, transaction or conduct of any person (whether the dispute, controversy or claim is based on contract, tort or any other theory of liability) shall be determined as follows (unless otherwise provided in another Loan Document, as to matters arising under such Loan Document):*

*(a)    Where an action is brought before a court of any judicial district of the State of California, Grantor, Debtor, and Beneficiary shall each have the right to require that all questions of fact or law be resolved by a general reference proceeding pursuant to California Code of Civil Procedure Section 638, and any successor statutes relating thereto. In such a reference proceeding:*

*(i)    Pursuant to Code of Civil Procedure Section 640, the court shall appoint a single referee who is a retired judge or justice to preside over the reference proceeding. If Grantor, Debtor, and Beneficiary do not agree in writing upon the referee within ten (10) days of either party's written request to do so, then upon the request of either party, the presiding judge of the court (or his or her representative) shall select the referee.*

*(ii)    The referee shall have all the powers provided by law. For example, the referee shall have the power to provide equitable and legal relief, provide all temporary or provisional remedies, enter equitable and legal orders that will be binding on Grantor, Debtor, and Beneficiary, and rule on any motion which would be authorized in court litigation, including motions to dismiss and for summary judgment or summary adjudication.*

**EXHIBIT 0035**

      *(iii)    Grantor, Debtor, and Beneficiary shall be entitled to discovery, and the referee shall oversee discovery and may enforce all discovery and evidence rules and orders applicable to court litigation in the same manner as any trial court judge.*

      *(iv)    The referee shall award legal fees and the fees and costs related to the reference proceeding or any related litigation pursuant to Code of Civil Procedure Section 645.1(a) and this Deed of Trust.*

      *(v)    The referee's statement of decision shall contain written findings of fact and conclusions of law, and the court shall enter judgment thereon pursuant to Code of Civil Procedure Sections 644(a) and 645.*

      *(vi)    Grantor, Debtor, and Beneficiary reserve the right to appeal any judgment or order of the referee or the court relating to the reference proceeding to the same extent permitted in a court of law.*

      *The dispute resolution provisions in this Section shall not limit the right of any party to: (w) exercise self-help remedies such as but not limited to setoff; (x) initiate any judicial or non-judicial foreclosure against any real or personal property collateral; or (y) act in a court of law to obtain a temporary, provisional or ancillary remedy, such as injunctive relief, appointment of a receiver, writs of attachment and writs of possession, from a court of competent jurisdiction before, after, or during the pendency of any reference proceeding. The exercise of any of the above remedies does not waive the right of either party to resort to reference.*

      *(b)    Grantor, Debtor, and Beneficiary acknowledge and agree that all disputes, controversies or claims resolved by judicial reference will be decided by a referee and not by a jury. By agreeing to a judicial reference proceeding, each of Grantor, Debtor, and Beneficiary waives any right it may have to a jury trial in a court of any judicial district of the State of California. Each of Grantor, Debtor, and Beneficiary waives any right it may have to a jury trial in any other court (such as a federal court) to the extent permitted by law. Each of Grantor, Debtor, and Beneficiary certifies that its waivers are knowingly, willingly and voluntarily made after consulting its legal counsel or having the opportunity to consult with legal counsel.*

    11..20. <u>Request for Notice.</u>   In accordance with California Civil Code Section 2924b, Grantor requests that copies of all notices of default and copies of all notices of sale under this Deed of Trust be mailed to Grantor at the address set forth on the first page hereof as provided by law.

    Executed as of the Date Hereof.

**EXHIBIT0036**

Grantor:

_____
Deric Scott Ned

Debtor:

_____
Deric Scott Ned

Poor Trap, Inc., a California corporation

By: _____
Deric Scott Ned

Deep State Marketing, a California corporation

By: _____
Deric Scott Ned

[Notary page follows]

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 36

**EXHIBIT0037**

## CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA)
COUNTY OF _____ )

On _____, 20__, before me, _____, a notary public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

See attached

_____
                    Notary Public

## CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA)
COUNTY OF __ _____ )

On _____, 20__, before me, _____, a notary public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
                    Notary Public

**EXHIBIT0038**

## CERTIFICATE OF ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA)
COUNTY OF _____        )

On _____, 20__, before me, _____, a notary public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

See attached
Notarial Certificate

_____
Notary Public

16125.1086dt
Promissory Note, Deed of Trust, Security Agreement, Fixture Filing and Assignment of Rents, Leases, Incomes and Agreements - Page 38

**EXHIBIT0039**

# ACKNOWLEDGMENT

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Los Angeles _____ )

On ___ March 10, 2025 _____ before me, __ Derek Flowers, Notary Public _____
                                                        (insert name and title of the officer)

personally appeared ____ ----------- Deric S Ned--------------------------------------- _____
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____    (Seal)

DEREK FLOWERS
Notary Public · California
Los Angeles County
Commission # 2501291
My Comm. Expires Oct 28, 2028

**EXHIBIT0040**

# ACKNOWLEDGMENT

> A notary public or other officer completing this
> certificate verifies only the identity of the individual
> who signed the document to which this certificate is
> attached, and not the truthfulness, accuracy, or
> validity of that document.

State of California
County of _____ Los Angeles _____ )

On ___March 10, 2025_____ before me, __Derek Flowers, Notary Public_____
                                          (insert name and title of the officer)

personally appeared ----------- Deric S Ned----------------------------------------
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____        (Seal)

DEREK FLOWERS
Notary Public · California
Los Angeles County
Commission # 2503291
My Comm. Expires Oct 28, 2028

**EXHIBIT0041**

# ACKNOWLEDGMENT

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _____ Los Angeles _____ )

On ___ March 10, 2025 ___ before me, __ Derek Flowers, Notary Public __
(insert name and title of the officer)

personally appeared ----------- Deric S Ned-------------------------------------------
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

DEREK FLOWERS
Notary Public - California
Los Angeles County
Commission # 2503191
My Comm. Expires Oct 28, 2028

**EXHIBIT0042**

EXHIBIT "A"

LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF CALIENTE, COUNTY OF KERN, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

PARCELS 18 AND 20 OF PARCEL MAP NO. 9562, IN THE OF THE COUNTY OF KERN, STATE OF CALIFORNIA, AS PER MAP RECORDED AUGUST 13, 1993 IN BOOK 45 PAGES 121 THROUGH 127, INCLUSIVE, OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM THE NORTH HALF OF SECTION 8 OF TOWNSHIP 30 SOUTH, RANGE 34 EAST, MOUNT DIABLO BASE AND MERIDIAN, ALL THE COAL AND OTHER MINERALS IN SAID LAND, TOGETHER WITH THE RIGHT TO PROSPECT FOR, MINE AND REMOVE THE SAME PURSUANT TO THE PROVISIONS AND LIMITATIONS OF THE ACT OF DECEMBER 29, 1916, (39 STAT. 862); AS EXCEPTED AND RESERVED IN THE PATENT FROM THE UNITED STATES OF AMERICA, RECORDED NOVEMBER 10, 1920 IN BOOK 20 PAGE 290 OF PATENTS.

Assessor's Parcel Number: 442-500-18-00

Assessor's Parcel Number(s): 442-500-20-00

**EXHIBIT0043**

# HAZARD INSURANCE DISCLOSURE

**Borrower:** Deric Scott Ned, Poor Trap, Inc.,

and Deep State Marketing

~~12 s̲e̲ ̲ ̲ ̲ ̲ ̲ ̲ ̲D̲~~

~~G̲i̲l̲r̲o̲y̲,̲ ̲C̲A̲ ̲9̲5̲0̲1̲8̲~~

**Lender:** Kelly Crawford, Receiver for TMTE, Inc. a/k/a Metals.com, et. al., Case No. 3:20-cv-02910-L, United States District Court for the Northern District of Texas, Dallas Division

500 North Akard Street, Suite 2700

Dallas, Texas 75201

## HAZARD INSURANCE DISCLOSURE

### Made Pursuant to California Civil Code Section 2955.5

### IMPORTANT

### DO NOT SIGN THIS FORM UNTIL YOU CAREFULLY READ IT AND UNDERSTAND ITS CONTENT

You have applied for a loan or credit accommodation that will be secured by real property. As a condition of the loan or credit accommodation, Lender may require you to maintain hazard insurance coverage for the real property. California law provides that Lender cannot require you, as a condition of receiving or maintaining a loan secured by real property, to provide hazard insurance coverage against risks to the property (such as fire and other perils) in an amount exceeding the replacement value of the building or structures attached to the property.

**BY SIGNING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE READ, RECEIVED AND UNDERSTAND THIS HAZARD INSURANCE DISCLOSURE. THIS DISCLOSURE IS DATED FEBRUARY 28, 2025.**

**BORROWER:**

Deric Scott Ned

Poor Trap, Inc., a California corporation

By: _____
Deric Scott Ned, President

Deep State Marketing, a California corporation

By: _____
Deric Scott Ned, President

SGB.140.797346.2

**EXHIBIT0044**

# Exhibit

# B

**EXHIBIT0045**

## <u>SETTLEMENT AGREEMENT AND MUTUAL RELEASE</u>

This Settlement Agreement ("Agreement") is entered into by and between Sean Reza (named in the below-defined Lawsuit as Sean Reza aka Thomas Reza) ("Reza") and Amerigold, Inc. ("Amerigold") (Amerigold, individually and/or collectively, as the case may be, with Reza, the "Reza Defendants"), on the one hand, and Kelly Crawford in his capacity as the Receiver (the "Receiver"), on the other, as of the 28th day of February, 2025 (the "Effective Date").

**WHEREAS,** pursuant to a *Statutory Restraining Order* entered on September 22, 2020, *("SRO")* in *Commodity Futures Trading Commission vs. TMTE, Inc. a/k/a Metals.com, et al.*, Civil Action 3:20-cv-02910-X pending in the United States District Court for the Northern District of Texas – Dallas Division (the "Underlying Lawsuit"), Kelly Crawford was appointed as the Receiver of the assets of the entity Defendants, TMTE, Inc. a/k/a Metals.com, et al.;

**WHEREAS,** Reza Defendants are defendants in a lawsuit styled *Kelly Crawford, in his capacity as Receiver vs. David Bleeden, et al.*, Cause No. 3:21-cv-2181-X pending in the United States District Court for the Northern District of Texas – Dallas Division (the "Lawsuit") by which the Receiver seeks to recover alleged fraudulent transfers for the benefit of the alleged victims and other creditors in the Underlying Lawsuit;

**WHEREAS,** the Receiver traced no less than $670,577.44 in payments allegedly made by defendants in the Underlying Lawsuit to Reza Defendants which the Receiver seeks to recover from Reza Defendants pursuant to the Lawsuit;

**WHEREAS,** Reza Defendants deny any liability to the Receiver; and

**WHEREAS,** the Receiver and Reza Defendants are desirous of settling the Receiver's claims without litigation for the purpose of convenience and to avoid the uncertainty and expense of protracted litigation.

**NOW, THEREFORE,** in consideration of the foregoing, the parties hereby agree as follows:

1.      Reza Defendants will pay to Receiver the total sum of Three Hundred Thirty-Five Thousand Two Hundred Eighty-Eight Dollars and 72 Cents ($335,288.72) (the "Settlement Amount") by December 18, 2025 (the "Payment Date"), by check, wire transfer, or money order payable to "Kelly Crawford, Receiver" and delivered to:

Kelly Crawford, Receiver
Scheef & Stone, LLP
500 North Akard Street, Suite 2700
Dallas, Texas 75201

To secure payment of the Settlement Amount, Sean Reza and his wife, Katie Riffkin, will execute a promissory note payable to Kelly Crawford, Receiver, in the principal amount of the Settlement Amount, bearing no interest, maturing as of the Payment Date (the "Note"). The

**PAGE 1 OF 5**

**EXHIBIT0046**

Note will be secured by a deed of trust granting a second lien (according to the Title Report obtained by the Receiver on 4428 Pampas Road, Woodland Hills, California 91364, which the Rezas represent they own (the "Property") ( the "Deed of Trust") with the Note and Deed of Trust to be executed as provided therein and delivered to the Receiver contemporaneously with this Agreement as executed by the Reza Parties. The Receiver agrees to record a release of the Deed of Trust within seven (7) days after full payment of the Note. The Receiver will not record the Deed of Trust unless and until this Agreement is approved by the Court in the Underlying Lawsuit which approval will be sought pursuant to paragraph 4 below. The Rezas warrant and represent to the Receiver that they are the sole owners of the Property; that the Property is not and shall not be claimed as their homestead; they have the authority to execute the Note and Deed of Trust without obtaining the consent or approval of any third party; and that granting the Deed of Trust to the Receiver regarding the Property will not constitute a default under any previous agreement by the Rezas with any third party.

2.      In consideration for this Agreement, Reza and Amerigold, on behalf of themselves and their spouses, heirs, successors, assigns, shareholders, officers, and directors (collectively referred to as the "Reza Parties"), do hereby remise, release, acquit, and forever discharge the Receiver, his successors in interest, employees, accountants, and attorneys (collectively referred to as the "Receivership Parties") of and from any and all liabilities, claims, remedies, demands, suits or causes of action of whatsoever kind or character, in whole or in part, whether choate or inchoate, which the Reza Parties now have or ever have had from the beginning of time against the Receivership Parties arising from the actions or inactions of the Receivership Parties, including all claims against the Receivership Parties which in any way directly or indirectly relate to, result from, are based upon, or arise out of the facts that are the basis of the Lawsuit or the Underlying Lawsuit. The Reza Parties expressly waive and extinguish any claim by Reza Defendants to seek monies from the receivership estate or from the Receivership Parties, and agree not to file a claim for reimbursement, expenses, fees, charges, or any other request for distribution in the Underlying Lawsuit.

3.      Upon receipt by the Receiver of the executed Note and, in recordable form, the Deeds of Trust, the Receivership Parties, their successors and assigns, do hereby remise, release, acquit, and forever discharge the Reza Parties and their attorneys of and from any and all liabilities, claims, remedies, demands, suits or causes of action of whatsoever kind or character, in whole or in part, whether choate or inchoate, which the Receivership Parties now have or have ever had from the beginning of time against the Reza Parties arising from the actions or inactions of the Reza Parties, including all claims against the Reza Parties which in any way directly or indirectly relate to, result from, are based upon, or arise out of the facts that are the basis of the Lawsuit or the Underlying Lawsuit, BUT, NOTWITHSTANDING THE FOREGOING, THIS RELEASE DOES NOT EXTEND TO THE OBLIGATIONS OF THE REZA PARTIES UNDER THE NOTE AND THE DEED OF TRUST AND THE OBLIGATIONS OF THE REZA PARTIES UNDER THIS AGREEMENT.

4.      Within five business days of the entry of an order approving this Agreement, the Receiver will record the Deed of Trust in the real property records of Los Angeles County, and

EXHIBIT0047

within five business days after the Deed of Trust has been recorded, the Receiver will file a stipulation of dismissal with prejudice in the Lawsuit only as to the Reza Defendants.

5.  It is the express irrevocable intention of each Party in executing this agreement that this instrument, delivery, and completion of all things described herein shall be effective as a full and final accord and satisfaction and release of the released matters as described in paragraphs 2 and 3 of this Agreement (collectively, the "Released Matters"). In furtherance of this mutual intention, each Party acknowledges that Party's familiarity with California Civil Code section 1542, which states:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

Each Party waives and relinquishes any right and/or benefit that Party has or may have under California Civil Code section 1542 and any similar applicable statute or common law under the laws of any other jurisdiction, to the fullest extent the Parties may lawfully waive all such rights and/or benefits relating to the subject matter of this agreement. In connection with such waiver and relinquishment, each Party acknowledges that Party may hereafter discover facts in addition to or different from those such Party now knows or believes to be true and accurate with respect to the subject matter of this agreement, but it is each Party's irrevocable intention to fully, finally, and forever settle, discharge, and release all Released Matters, disputes, and differences, whether known or unknown, suspected or unsuspected, which may now exist, or heretofore have existed between the Parties, and that in furtherance of such intent, the releases described herein shall remain in effect as full and complete releases notwithstanding either Party's discovery, or the existence, of any such additional or different facts.

NOTHWITHSTANDING THE FOREGOING, NOTHING CONTAINED HEREIN SHALL RELEASE THE PARTIES FROM THEIR OBLIGATIONS UNDER THIS AGREEMENT, THE NOTE, OR THE DEED OF TRUST.

6.    It is expressly understood and agreed that the terms of this Agreement are contractual in nature and not mere recitals and that the agreements contained herein, and the consideration transferred are to compromise doubtful and disputed claims and that no releases or other consideration given shall be construed or considered an admission of liability. On the contrary, this Settlement Agreement is being entered into merely to avoid litigation and any further dispute or claims and to buy peace to the extent described herein.

7.    **IN SIGNING THIS FULL AND COMPLETE SETTLEMENT AGREEMENT, EACH OF THE PARTIES HERETO ACKNOWLEDGES, REPRESENTS, WARRANTS, AND CONFIRMS TO EACH OTHER AS FOLLOWS:**

      **A.    I HAVE CAREFULLY READ AND UNDERSTAND THE EFFECT OF THIS FULL AND COMPLETE SETTLEMENT AGREEMENT;**

**EXHIBIT0048**

**B.    I HAVE THE MENTAL CAPACITY TO UNDERSTAND THE EFFECT OF THIS FULL AND COMPLETE SETTLEMENT AGREEMENT;**

**C.    I EXECUTE THIS SETTLEMENT AGREEMENT AS A FREE AND VOLUNTARY ACT, WITHOUT ANY DURESS, COERCION, OR UNDUE INFLUENCE EXERTED BY OR ON BEHALF OF ANY PERSON OR ENTITY;**

**D.    I AM THE SOLE OWNER OF THE CLAIMS OR CAUSES OF ACTION BEING OR TO BE RELEASED AS PROVIDED HEREIN AND I HAVE NOT CONVEYED NOR ASSIGNED ANY INTEREST IN ANY SUCH CLAIMS OR CAUSES OF ACTION TO ANY PERSON OR ENTITY NOT A PARTY HERETO.**

8.    This Settlement Agreement is subject to approval of the Court in the Underlying Lawsuit (the "Receivership Court"). If the Receivership Court does not approve this Settlement Agreement, it is null and void and the Note and Deed of Trust shall be null and void and destroyed within five days after entry of an order in the Underlying Lawsuit denying approval of this Agreement.

*[signature page follows]*

PAGE 4 OF 5

**EXHIBIT0049**

ACCEPTED, ACKNOWLEDGED, AND AGREED AS OF THE EFFECTIVE DATE OF THIS AGREEMENT.

RECEIVER:

By: _____

Kelly Crawford, in its capacity as Receiver

Date Executed: 3-17-25

DEFENDANT SEAN REZA

By: _____
    Sean Reza (Mar 14, 2025 13:17 PDT)

Sean Reza

Date Executed: Mar 14, 2025

DEFENDANT AMERIGOLD, INC.

By: _____
    Sean Reza (Mar 14, 2025 13:17 PDT)

Sean Reza

Its: Authorized Representative

Date Executed: Mar 14, 2025

PAGE 5 OF 5

**EXHIBIT0050**