**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, *et al.*, | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | Civil Case No.: **3:20-CV-02910-X** |
| TMTE, INC. a/k/a METALS.COM, *et al*., | § § § | |
| *Defendants*, | § § | |
| TOWER EQUITY, LLC, | § § | |
| *Relief Defendant* | § | |


**PLAINTIFF STATES' MEMORANDUM IN SUPPORT OF MOTION FOR**
**RECONSIDERATON**

# TABLE OF CONTENTS

I.      Introduction.................................................................................................................1

II.     Rule 54(b) Is the Proper Avenue for Reconsideration of the Summary Judgment Order
        in this Case.................................................................................................................3

III.    Precious Metals Are "Goods" or "Articles" and are Therefore "Commodities" under
        the Commodity Exchange Act (CEA). .........................................................................4

        A.  Other Courts, Including the Fifth Circuit, Have Held That Non-Agricultural
            Products Are Commodities under the CEA Despite not Being Specifically
            Enumerated.  ......................................................................................................4

        B.  Under Additional Canons of Statutory Interpretation, Precious Metals Are
            "Goods" or "Articles" within the Definition of "Commodity."..............................8

        C.  The Legislative History Establishes That Commodities Are not Limited to
            Agricultural Commodities. ................................................................................12

IV.     The "Actual Delivery" Provision in CEA Section 2(c)(2)(D) is Limited to That
        Section and Does Not Extend to CEA Section 6(c)(1) as Alleged in Count I.  ..........13

V.      Conclusion ...............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arif v. Mukasey,*
  509 F3d 677 (5th Cir. 2007)................................................................15

*Austin v. Kroger Texas, L.P.,*
  864 F.3d 326 (5th Cir. 2017)................................................................3

*Cabral v. Brennan,*
  853 F.3d 763 (5th Cir. 2017)................................................................3

*CFTC v. 20/20 Trading Co.,* No. 8:11-cv-643,
  2011 WL 2221177 (C.D. Cal. June 7, 2011)................................................1

*CFTC v. Am. Bd. of Trade, Inc.,*
  473 F. Supp. 1177 (S.D.N.Y. 1979) ................................................6

*CFTC v. Am. Precious Metals, LLC,*
  845 F. Supp. 2d 1279 (S.D. Fla. 2011)................................................1

*CFTC v. Baldwin,* No. 1:21-cv-5707,
  2025 WL 1047372 (S.D.N.Y. Apr. 8, 2025)................................................6

*CFTC v. Fisher Cap., LLC,* No. 1:23-cv-3121,
  2024 WL 3771781 (E.D.N.Y. July 12, 2024)................................................56

*CFTC v. Ikkurty,* No. 1:22-cv-02465,
  2024 WL 3251348 (N.D. Ill. July 1, 2024)................................................7

*CFTC v. Int'l Monetary Metals, Inc.,* No. 0:14-cv-62244,
  2016 WL 8256852 (S.D. Fla., Aug. 1, 2016)................................................6

*CFTC v. Laino Group Limited,* No. 4:20-cv-3317,
  2021 WL 4059385, (S.D. Tex. June 30, 2021)................................................6

*CFTC v. McAllister,* No. 1:18-cv-346,
  2021 WL 7541402, (W.D. Tex. Aug. 18, 2021) ................................................6

*CFTC v. McDonnell,*
  287 F.Supp. 3d 213 (E.D.N.Y. 2018) ................................................7

*CFTC v. Monex Credit Co.,*
  931 F.3d 966 (9th Cir. 2019)................................................15, 16

*CFTC v. Muller,*
  570 F.2d 1296 (5th Cir. 1978)................................................4, 5

*CFTC v. My Big Coin Pay, Inc.,*
  334 F.Supp. 3d 492 (D. Mass. 2018) ................................................7

*CFTC v. Omega Knight 2, LLC,* No. 18-cv-22377,
  2019 WL 6796128 (S.D. Fla. Sept. 16, 2019)................................................7

*CFTC v. Scott*, No. 3:18-cv-05802-RBL,
2019 WL 461125 (W.D. Wash. Feb. 6, 2019) .......................................................................7

*CFTC v. Southern Trust Metals, Inc.*,
894 F.3d 1313, 1324 (11th Cir. 2018) ...............................................................................14

*CFTC v. US Coin Bullion LLC*, No. 6:20-cv-40,
2021 WL 8946141 (M.D. Fla. Dec. 29, 2021) ......................................................................6

*Division One Foods, Inc. v. Pizza Inn, Inc.*, No. 3:20-cv-02065,
2021 WL 3172176 (N.D. Tx., July 27, 2021) .....................................................................11

*Mont v. U.S.*,
587 U.S. 514 (2019)...........................................................................................................11

*Nat'l Ass'n of Priv. Fund Managers v. Sec. & Exch Comm'n*,
103 F. 4th 1097 (5th Cir. 2024)...........................................................................................8

*QBE Syndicate 1036 v. Compass Minerals Louisiane, Inc.*,
95 F.4th 984 (5th Cir. 2024)...............................................................................................11

*Savage SE Operations, LLC v. Wartsila N. Am., Inc.*,
496 F.Supp.3d 1051 (S.D. Tex. 2020) .................................................................................8

*Sebelius v. Cloer*,
569 U.S. 369 (2013)............................................................................................................8

*United States v. Brooks*,
681 F.3d 678 (5th Cir. 2012) ..............................................................................................5

*United States v. Futch*,
278 Fed.Appx. 387 (5th Cir. 2011) ......................................................................................5

*United States v. Radley*,
659 F. Supp.2d 803 (S.D. Tex. 2009) ..................................................................................5

*United States v Reed*, No. 20-cr-500,
2022 WL 597180, (S.D.N.Y. Feb. 28, 2022) .......................................................................7

*United States v. Valencia*,
394 F.3d 352 (5th Cir. 2004)...............................................................................................5

*Whitman v. Am. Trucking Ass'n*,
531 U.S. 457 (2001)............................................................................................................9

*Yates v. U.S.*,
574 U.S. 528 (2015).......................................................................................................9, 10

## Statutes

28 U.S.C. § 1292(b) ......................................................................................................3, 16

CEA §1a(9), 7 U.S.C. § 1a(9) .............................................................1, 4, 6, 7, 8, 11, 12

CEA § 2(c)(2)(D), 7 U.S.C. § 2(c)(2)(D).....................................................................14, 15, 16

CEA § 4, 7 U.S.C. § 6 .........................................................................................................15

CEA §4b, 7 U.S.C. § 6b.......................................................................................................15

CEA § 6(c)(1), 7 U.S.C. § 9 ...............................................................................3, 14, 15, 16

CEA § 6c, 7 U.S.C. § 13a-1 ...........................................................................................16

CEA § 6d, 7 U.S.C. § 13a-2 ............................................................................................2

CEA § 19(b), 7 U.S.C. § 23(b)....................................................................................1, 12

Pub. L. No. 93-463 (H.R. 13113), Oct. 23, 1974, 88 Stat. 1389
    *see* https://www.congress.gov/bill/94th-congress/house-bill/13113 .......................................12

Pub. L. No. 111-203, 124 Stat. 1376 (2010),
    *see* https://www.congress.gov/bill/111th-congress/house-
    bill/4173?q=%7B%22search%22%3A%22124+stat+1376%22%7D&s=1&r=1 ..................14

Fla. Stat. § 517.275 ........................................................................................................1

## **Rules**

Federal Rule of Civil Procedure 54(b)........................................................................1, 2

## **Other Authorities**

Antonin Scalia & Bryan A. Garner, Reading Law: the Interpretation of Legal Texts (2012) ...8, 11

Black's Law Dictionary (12th Ed. 2024) .........................................................................9

CME Group website, *see* https://www.cmegroup.com/markets/metals.html ...................................6

*In re BFXNA Inc.*, CFTC Docket 16-19,
    2016 WL 3137612 (June 2, 2016)..................................................................................7

*In re Coinflip, Inc.*, CFTC Docket No. 15-29,
    2015 WL 5535736 (Sept. 17, 2015)..............................................................................7

Senate Rep. No. 93-1131,
    as reprinted in 1974 U.S.C.C.A.N. 5843, 1974 WL 11581....................................................13

I.    **Introduction.**

Pursuant to Federal Rule of Civil Procedure 54(b), Plaintiff States respectfully request that the Court reconsider its Order dated July 21, 2025, in which the Court concluded that "section 1[a] [of the Commodity Exchange Act ("CEA")] does not encompass precious metals as commodities because they are neither agricultural products nor movie tickets." Memorandum Opinion and Order (the "Order") (ECF No. 911 at p. 9). The finding that gold and silver are not commodities under section 1a of the CEA is fatal to that count.[1] This conclusion prevents the States from proceeding with the jury trial scheduled to begin on October 20, 2025,[2] as to Count 1, which 30 states join in with the Commodity Futures Trading Commission (the "CFTC"). The finding also undermines the supplemental basis for certain state specific causes of action in this matter.

The impact of the Court's summary judgment order on the States and State regulation is significant. At least one state, Plaintiff State Florida,[3] adopted the CEA into state law. Other states

---

[1] Although the Court's Order finds that CEA section 19 (7 U.S.C. § 23) may apply here, that section does not apply because this case does not involve "margin accounts or contracts," or "leverage accounts or contracts" within the scope of that section. Section 19 of the CEA applies to a distinct type of leveraged precious metals contract that is "standardized," and lasts longer than ten years. *See, e.g., CFTC v. Am. Precious Metals, LLC*, 845 F. Supp. 2d 1279, 1282, 1287 (S.D. Fla. 2011) (finding that leveraged precious metals transactions of less than ten-year duration were not "leverage contracts"); *CFTC v. 20/20 Trading Co.*, No. 8:11-cv-643, 2011 WL 2221177, at *7 (C.D. Cal. June 7, 2011) (finding that precious metals contracts were not "leverage contracts" because "there is no evidence that the contracts in question were standardized, that the contracts were for longer than 10 years, or that customers were required to maintain margin payments."). Here, neither party maintains that the precious metals were purchased on margin or leverage, or that the contracts lasted longer than ten years. None of the requirements under Section 19 are met, therefore Section 19 is inapplicable in this case.

[2] *See* Amended Scheduling Order filed July 21, 2025 (ECF No. 912).

[3] *See* Fla. Stat. § 517.275 ("It is unlawful and a violation of this chapter for any person to engage in any act or practice in or from this state, which act or practice constitutes a violation of any provision of the Commodity Exchange Act, 7 U.S.C. ss. 1 et seq., as amended, or the rules and regulations of the Commodity Futures Trading Commission adopted under that act as amended.")

1

bring their claims under the CEA as permitted by CEA § 6d, 7 U.S.C. § 13a-2.[4] The Court's Order could significantly inhibit State authority to continue to bring actions under these provisions.

The Order also poses a risk of causing confusion for market participants, investors, and regulatory authorities, which have relied on longstanding precedent, and could affect other cases brought by the States with the CFTC which are pending and rely on well-settled commodities law. The Court's Order could cause those states to incur more expenses to litigate their related cases, and could significantly inhibit State authority to continue to bring actions under CEA § 6d, 7 U.S.C. § 13a-2. The impact on the States will be potentially grievous and cannot be understated. For these reasons, the States submit the following in support of the position that precious metals are commodities under section 1a, 7 U.S.C. § 1a, and urge the court to reconsider its opinion to the contrary.

Specifically, pursuant to Federal Rule of Civil Procedure 54(b), the Plaintiff States respectfully ask that the Court reconsider and modify its Order and strike the conclusion that CEA section 1a does not encompass precious metals as commodities and instead find that precious metals are commodities within the scope of the CEA. In addition, the Court should strike its analysis of the "actual delivery exception" and find that it does not apply in this instant case and find that section 19 is inapplicable. Alternatively, if the Court is not inclined to make these findings,

---

[4] The Jurisdiction of States under CEA § 6d, 7 U.S.C. § 13a-2 part (1), states: "Whenever it shall appear to the attorney general of any State, the administrator of the securities laws of any State, or such other official as a State may designate, that the interests of the residents of that State have been, are being, or may be threatened or adversely affected because any person (other than a contract market, derivatives transaction execution facility, clearinghouse, floor broker, or floor trader) has engaged in, is engaging or is about to engage in, any act or practice constituting a violation of any provision of this chapter or any rule, regulation, or order of the Commission thereunder, *the State may bring a suit in equity or an action at law on behalf of its residents* to enjoin such act or practice, to enforce compliance with this chapter, or any rule, regulation, or order of the Commission thereunder, to obtain damages on behalf of their residents, or to obtain such further and other relief as the court may deem appropriate." (emphasis added).

then the States request that the Court either (1) amend the order to add language specifically certifying it for an immediate appeal under 28 U.S.C. § 1292(b) regarding the issue of whether precious metals are commodities under CEA section 1a and whether the actual delivery exception applies to causes of action under section 6(c)(1) and stay the entire case pending a decision by the Fifth Circuit Court of Appeals,[5] or (2) enter a final judgement dismissing this case without prejudice based on the reasoning outlined in the Order that precious metals are not commodities within the scope of section 1 of the CEA, such that the States can appeal this issue immediately.

## II.    Rule 54(b) Is the Proper Avenue for Reconsideration of the Summary Judgment Order in this Case.

This Court is authorized to reconsider any interlocutory order pursuant to Fed. R. Civ. P. 54(b). *Austin v. Kroger Texas, L.P.,* 864 F.3d 326, 336 (5th Cir. 2017) ("Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.") (internal citations and quotations omitted); *see also Cabral v. Brennan,* 853 F.3d 763, 766 (5th Cir. 2017) (finding that Rule 54(b) is the proper avenue for reconsideration of an interlocutory order, in this case a denial of summary judgement).

---

[5] Thus, the Order would be amended to add language specifically certifying it for an immediate appeal under 28 U.S.C. § 1292(b) stating that this Court finds that the matter involves a controlling question of law in the case as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

III.    **Precious Metals Are "Goods" or "Articles" and are Therefore "Commodities" under the CEA.**

The commodities that the CFTC regulates pursuant to the CEA are more expansive than simply agricultural products. As illustrated below, legislative history demonstrates conclusively that Congress intended that the catch-all provision of CEA § 1a(9), 7 U.S.C. §1a(9) for "all other goods and articles" to include precious metals. In addition, precious metals are within the ordinary meaning of "goods" and "articles" under additional canons of statutory interpretation. Courts have consistently applied this understanding.

A.    ***Courts, Including the Fifth Circuit, Have Held That Non-Agricultural Products Are Commodities under the CEA Despite not Being Specifically Enumerated.***

The conclusion in the Order that only enumerated agricultural products are commodities is inconsistent with long-standing Fifth Circuit precedent. In *CFTC v. Muller*, 570 F.2d 1296 (5th Cir. 1978), the Fifth Circuit considered and rejected an almost identical argument that precious metals are not "commodities" because they are not enumerated agricultural commodities. *Id.* at 1298, n.2. *Muller* involved "London commodity options" which included "hard' commodities, like gold, silver and other metals, traded on the London Metal Exchange." *Id.* at 1298. The defendant-appellant argued that the CFTC could "regulate only option transactions involving those agricultural commodities that are explicitly listed…" *Id*. The Court rejected this position, writing:

> the restrictive interpretation urged by [defendant-appellant] is foreclosed by the wording of the Act and its legislative history. Prior to the passage of this Act, the Commodity Exchange Act did apply only to certain agricultural commodities that were specifically enumerated in s 2. It totally banned option transactions in these commodities. The 1974 Act was passed to fill the regulatory gaps in commodities trading. It expanded the definition of "commodity" to include, in addition to those commodities expressly enumerated, "all other goods and articles . . . and all services, rights and interests in which contracts for future delivery are presently or in the future dealt in . . . ." 7 U.S.C.A. s 2. The Act continues the Commodity Exchange Act's ban on all option transactions involving the specifically enumerated agricultural commodities… In addition, however, s 6c(b) subjects option transactions in non-enumerated commodities to regulations promulgated by the

4

Commission. ***The Act clearly applies to option transactions in non-enumerated commodities.***

*Id.* at 1298-99 (emphasis added).

The Fifth Circuit has also repeatedly found that natural gas, a non-enumerated commodity, falls within the statutory definition. In *United States v. Brooks*, 681 F.3d 678, 694-95 (5th Cir. 2012), for example, the defendant-appellants were convicted of false reporting of natural gas trades in violation of the CEA and wire fraud. *Id.* at 684. The *Brooks* Court rejected defendant-appellants argument that natural gas is not a commodity covered by the CEA: "[W]e find that natural gas, whether at Henry Hub or at some other location, is a 'commodity' within the meaning of the CEA." *Id.* at 696. In coming to this conclusion, the Court addressed the definition of commodity and wrote that "[n]atural gas is plainly a 'good' or 'article.'" *Id.* at 694. The questions thus turn on whether it is a good 'in which contracts for future delivery are presently or in the future dealt with.'" *Id.* The Court determined that there are futures contracts for natural gas. *Id.*; *see also United States v. Futch*, 278 F. App'x. 387, 395 (5th Cir. 2008) (rejecting argument that natural gas was not a commodity under the CEA). District Courts in the Fifth Circuit have found the same. *See United States v. Valencia*, 394 F.3d 352, 353 (5th Cir. 2004) (describing natural gas as "a commodity in interstate commerce"); *United States v. Radley*, 659 F. Supp. 2d 803, 810 (S.D. Tex. 2009), *aff'd*, 632 F.3d 177 (5th Cir. 2011) (determining propane gas is a non-agricultural commodity). Just like natural gas, gold, and silver are a "good" or "article" in which contracts for future delivery are presently or in the future dealt with.[6] Thus, gold and silver are commodities.

---

[6] Gold and silver are commodities as there is a futures market for these precious metals. *See* CME Group (https://www.cmegroup.com/markets/metals.html, last checked August 19, 2025, at 1:22 pm).

District Courts in the Fifth Circuit have consistently held that precious metals are commodities. Judge Hittner in the United States District Court for the Southern District of Texas, Houston Division, found that "[g]old and silver are "commodities" pursuant to section 1a(9) of the [CEA]." *CFTC v. Laino Group Limited*, No. 4:20-cv-3317, 2021 WL 4059385 at *6, (S.D. Tex. June 30, 2021) (*citing CFTC v. Int'l Monetary Metals, Inc*., No. 0:14-cv-62244, 2016 WL 8256852, at *4 (S.D. Fla., Aug. 1, 2016) ("The precious metals, including gold and silver, described herein are commodities as defined by section 1a(9) of the CEA, 7 U.S.C. § 1a(9).")). Judge Yeakel in the United States District Court for the Western District of Texas, Austin Division, as part of an order found that "[g]old, silver, platinum, and palladium are commodities pursuant to section la(9) of the [CEA], 7 U.S.C. § 1a(9) (2018), because they are goods in which contracts for future delivery are presently or in the future dealt in."). *CFTC v. McAllister*, No. 1:18-cv-346, 2021 WL 7541402, at *3 (W.D. Tex. Aug. 18, 2021).

Likewise, District Courts around the United States agree that gold and silver are commodities. *See CFTC v. Am. Bd. of Trade, Inc.*, 473 F. Supp. 1177, 1180 (S.D.N.Y. 1979) ("The option dealt in on the Board pertain to silver bullion, silver coins, gold bullion, platinum, copper, and plywood, and to foreign currencies such as Swiss franc and the German mark, all of which are commodities encompassed within the statutory definition."); *CFTC v. Baldwin*, No. 1:21-cv-5707, 2025 WL 1047372, at *5 (S.D.N.Y. Apr. 8, 2025) (finding precious metals are commodities, as defined by section 1a(9) of the Act); *CFTC v. Fisher Cap., LLC*, No. 1:23-cv-3121, 2024 WL 3771781, at *8 (E.D.N.Y. July 12, 2024) (denying motion to dismiss on jurisdictional grounds and finding section 6(c)(1) of the CEA extends "to the fraud alleged here in connection with the sale of precious metals, which are commodities under the Act"); *CFTC v. US Coin Bullion LLC*, No. 6:20-cv-40, 2021 WL 8946141, at *8 (M.D. Fla. Dec. 29, 2021) (finding precious metals are

commodities, as defined by section 1a(9) of the Act); *CFTC v. Omega Knight 2, LLC*, No. 18-cv-22377, 2019 WL 6796128, at *8 (S.D. Fla. Sept. 16, 2019) (same); *CFTC v. Scott*, No. 3:18-cv-05802-RBL, 2019 WL 461125, at *3 (W.D. Wash. Feb. 6, 2019) (finding that precious metals are commodities pursuant to section 1a(9) of the CEA, 7 U.S.C. § 1a(9)).

Most recently, and beyond tangible items, District Courts have found that virtual currency is also a commodity. *See CFTC v. My Big Coin Pay, Inc.,* 334 F. Supp. 3d 492, 498 (D. Mass. 2018) (finding sufficient CFTC's amended complaint asserting virtual currency to be a commodity based on futures trading in virtual currencies), *citing CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) ("Virtual currencies can be regulated by CFTC as a commodity."); *CFTC v. Ikkurty*, No. 1:22-cv-02465, 2024 WL 3251348, at *5 (N.D. Ill. July 1, 2024) ("Courts roundly recognize cryptocurrencies as falling under this broad definition") (collecting cases); *In re BFXNA Inc.*, CFTC Docket No. 16-19, 2016 WL 3137612, at *5 (June 2, 2016) ("[V]irtual currencies are encompassed in the [CEA] definition and properly defined as commodities."); *In re Coinflip, Inc.*, CFTC Docket No. 15-29, 2015 WL 5535736, at *2 (Sept. 17, 2015) (same). A similar finding was made in *United States v. Reed*, 20-cr-500, 2022 WL 597180 (S.D.N.Y. Feb. 28, 2022), in which the court wrote that "the defendant had ample notice from the broad definition of commodities under the CEA that cryptocurrencies were within the definition of commodities…. This plain language is buttressed by a core characteristic that cryptocurrencies share with other commodities whose derivatives are regulated by the CFTC-namely, that they are 'exchanged in a market for a uniform quality and value.'" *Id.* at *3-4 (internal citations omitted).

Thus, courts, including the Fifth Circuit, have treated various non-agricultural goods, including gold and silver, as commodities pursuant to the CEA because they are "goods" or "articles" within the definition of the term "commodity."

**B.**    ***Under Additional Canons of Statutory Interpretation, Precious Metals Are "Goods" or "Articles" within the Definition of "Commodity."***

The CEA definition of "commodity," after listing numerous agricultural products, includes "all other goods and articles, except onions (as provided by section 13-1 of this title) and motion picture box office receipts (or any index, measure, value, or data related to such receipts)" in additional to "all services, rights, and interests (except motion picture box office receipts, or any index, measure, value or data related to such receipts)." CEA § 1a(9), 7 U.S.C. § 1a(9). The relevant catch-all is "all other goods and articles." Though preceded by a list of agricultural products, the catch-all does not say "all other agricultural products," "all other products of this nature," or some other general word synonymous with agriculture. Rather, the text is a broad catch-all.

"[S]tatutory terms are generally interpreted in accordance with their ordinary meaning." *Sebelius v. Cloer*, 569 U.S. 369, 376 (2013) (citation omitted). As the Fifth Circuit has noted, "[t]he ordinary-meaning canon is 'the most fundamental semantic rule of interpretation.'" *Nat'l Ass'n of Priv. Fund Managers v. Sec. & Exch. Comm'n*, 103 F. 4th 1097, 1110 (5th Cir. 2024) (quoting Antonin Scalia & Bryan A. Garner, Reading Law: the Interpretation of Legal Texts § 6, at 69 (2012)). In addition, under the General-Terms Canon, "General terms are to be given their general meaning." *Savage SE Operations, LLC v. Wartsila N. Am., Inc.*, 496 F. Supp. 3d 1051, 1060 (S.D. Tex. 2020) (quoting Scalia and Garner at 101-06). Here, where under the CEA "commodity" includes the general terms "all other goods and articles," the words "goods" and "articles" should be given their ordinary, general meaning.

"Goods" are "[t]angible or moveable personal property other than money; esp., articles of trade or items of merchandise <goods and services>. The term includes crops and other things that, although attached to or forming part of the land, are agreed to be severed before sale or under

8

contract of sale." <u>Black's Law Dictionary</u> (12th ed. 2024). "Article" is even broader – "Generally, a particular item or thing <article of clothing>." *Id.* Thus, both terms are broader than just agricultural products. Precious metals fall under the scope of both these definitions. Precious metals are "articles" because they are "items" or "things," and they are "goods" because they fall under the broad category of "tangible or moveable personal property" and are also "articles of trade."

As discussed in the subsequent section, Congress intentionally amended the CEA with additional, broad categories: "good," "article," "service," "right," and "interest." These are not "vague terms." *See Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001). They are well-defined, broad terms. Congress did not "hide elephants in mouseholes." *Id.* Instead, Congress amended the CEA to expand its jurisdiction with elephant-sized terms. Congress purposefully included these broad terms in the definition of commodities. These broad terms "good" and "article" should be given their natural meaning.

In reasoning that precious metals are not commodities, the Court relied on the Supreme Court's decision in *Yates v. United States*, 574 U.S. 528 (2015), holding that precious metals are not commodities, noting that a fish was not an "other object" under the Sarbanes-Oxley Act. But, *Yates* was a unique, distinguishable decision. The *Yates* plurality noted that it was "highly improbable that Congress would have buried a general spoliation statute covering objects of any and every kind in a provision targeting fraud in financial recordkeeping." *Yates,* 574 U.S. at 545-49. And the concurrence in the judgment noted, "[W]ho wouldn't raise an eyebrow if a neighbor, when asked to identify something similar to a "record" or "document," said 'crocodile'?" *Id.* at 550 (Alito, J. conc. in judgment). So, a fish might not be a record or document. But precious metals are goods and articles.

9

In fact, the canons cited by the Court – *ejusdem generis* and *noscitur a sociis* – actually support Plaintiffs' position. Excluded from "all other goods and articles" are two things: (1) onions (an agricultural product) and (2) "motion picture box office receipts." Motion picture box office receipts are not agricultural products, but they fit within the ordinary meaning of "good" or "article." In fact, they are a particularly esoteric "good" or "article." Applying *ejusdem generis* and *noscitur a sociis*, the exclusion of both onions and motion picture box office receipts from the scope of "all other goods and articles" indicates that "goods" and "articles" must have a broad meaning.

If, instead, "all other goods and articles" were limited to agricultural products, it would make little sense to exclude "motion picture box office receipts." Similar to the plurality's reasoning in *Yates*, it is highly improbable that Congress would exclude "motion picture box office receipts" from a catch-all limited to agricultural products. And mirroring the concurrence in judgment's reasoning in *Yates*, a neighbor would likely receive an eyebrow raise if, when asked to identify an agricultural product, responded with "motion picture box office receipts." But, if "goods" and "articles" are given their broad, ordinary meaning, it would make sense for Congress to exclude "motion picture box office receipts" from their scope. It would also make sense for a neighbor to list them as an article. Because the statute explicitly excludes "motion picture box office receipts," these canons establish that "all other goods and "articles" are not limited just to agricultural products but warrant their ordinary broad definitions.

The Court noted that "motion picture box office receipts" were not added until 2010. Yet this change yields only two reasonable interpretations, both of which support the ordinary meaning of "all other goods and articles." The first, and most logical interpretation, is that "good" and "article" have always had their intended, broad ordinary meaning (consistent with legislative

10

history) not limited to agricultural products. Second, in adding "motion picture box office receipts" in 2010, Congress changed or otherwise clarified that a "good" or "article" is not just an agricultural "good" or "article" but has its ordinary broad scope. But it does not make sense that Congress exempted "motion picture box office receipts" from a definition that has never contained such a "good" or "article." The catch-all "all other goods and articles" cannot be limited to agricultural goods and articles when "motion picture box office receipts" appears in context. If "motion picture box office receipts" are "goods and articles" and therefore commodities, precious metals certainly are too.

Finally, construing and harmonizing the CEA as a whole indicates that precious metals are commodities. *See Division One Foods, Inc. v. Pizza Inn, Inc.*, No. 3:20-cv-02065-X, 2021 WL 3172176, at *2 (N.D. Tex., July 27, 2021) (referencing the Whole-Text Canon). "'[T]he whole-text canon' requires consideration of 'the entire text, in view of its structure' and 'logical relation of its many parts.'" *Mont v. U.S.*, 587 U.S. 514, 524 (2019) (quoting Scalia & Garner at 167). Moreover, under the harmonious-reading canon, "[t]he provisions of a text should be interpreted in a way that renders them compatible, not contradictory." *QBE Syndicate 1036 v. Compass Minerals Louisiane, Inc.*, 95 F.4th 984, 993 (5th Cir. 2024) (quoting Scalia and Garner at 140). The Court was correct to question the interplay of CEA section 19 with the definition of commodity in section 1a(9). These canons assist the interpretation.

In fact, a close reading of section 19 illustrates that precious metals are commodities under section 1a(9), even though this current matter does not involve margined or leveraged contracts. As the Court noted, Section 19(a) prohibits transactions "for the delivery of any commodity" under certain standardized contracts "[e]xcept as authorized under subsection (b)." Section 19(b) then provides an exception for certain precious metals contracts. Section (a) is thus a general prohibition

on certain standardized commodity contracts, and section (b) provides a specific exception from that general prohibition. The specifically excepted commodity contracts in (b) are contracts involving the following commodities: "silver bullion, gold bullion, bulk silver coins, bulks coins, or platinum." CEA § 19(b)(1), 7. U.S.C. § 23(b)(1). In other words, the commodities excepted are those at issue in the instant case: gold and silver bullion. For section 19 to read logically, the precious metals enumerated in (b) have to be within the definition of "commodity" in section (a) because (b) simply provides a specific exception from the general category contained in (a). Section 19 prohibits certain commodity contracts but excepts certain precious metals contracts. Harmonizing the whole CEA, if certain precious metals contracts are excepted from a prohibition of particular commodity contracts, precious metals (specifically gold and silver bullion) *must* be commodities. Thus, after considering these numerous canons of statutory interpretation, precious metals are commodities under the CEA.

C.    ***Legislative History Establishes That Commodities Are not Limited to Agricultural Goods and Articles.***

Legislative history establishes that the CEA intended to include non-agricultural goods and articles in the definition of "commodity" in section 1a(9). In the Commodity Futures Trading Commission Act of 1974, Congress supplemented the list of agricultural products with several catchall categories, including virtually "all" goods and articles, and "services, rights, and interests in which contracts for future delivery are presently or in the future dealt it." Pub. L. No. 93-463 (H.R. 13113), Oct. 23, 1974, §§ 101(a)(3), 201(b), 88 Stat. 1389, 1395. The legislative history associated with the Act's passage highlights that the definition of commodity was not intended to be limited to agricultural products. The first sentence of the Senate Report reads, "[the] Committee on Agriculture and Forestry, to which was referred the bill (H.R. 13113) to amend the Commodity Exchange Act to strengthen the regulation of futures trading, to bring all agricultural *and other*

12

*commodities traded on exchanges* under regulation, and for other purposes, having considered the same, unanimously reports favorably thereon with an amendment in the nature of a substitute and recommends that the bill do pass." Senate Rep. No. 93-1131, as reprinted in 1974 U.S.C.C.A.N. 5843, 1974 WL 11581 (emphasis added). In the "Short Explanation" section, the point is made again that commodities are more than just agricultural goods stating, "H.R. 13113 makes extensive changes in the Commodity Exchange Act, brings under Federal regulation all agricultural *and other commodities, goods, and services traded on exchanges*, and otherwise strengthens the regulation of the Nation's $500 billion commodity futures trading industry." *Id* (emphasis added). The report also finds that:

> While the futures markets in a number of agricultural commodities have been regulated in varying degrees since 1922, many large and important futures markets are completely unregulated by the Federal Government. These include such agricultural and forest commodities as coffee, sugar, cocoa, lumber, and plywood, *plus various metals, including the highly sensitive silver market* and markets in a number of foreign currencies.

*Id*. at 5859 (emphasis added). Equally telling is the use of the verb "mined" in the explanation. "Whether a commodity is grown or *mined*, or whether it is produced in the United States or outside, makes little difference to those in this country who buy, sell, and process the commodity, or to the U.S. consumers whose prices are affected by the futures market in that commodity." *Id*. (emphasis added). Thus, the term commodity was not intended to be limited to agricultural goods and includes gold and silver as stated in the legislative history.

## IV.   The "Actual Delivery" Provision in CEA Section 2(c)(2)(D) is Limited to that Section and Does Not Extend to CEA Section 6(c)(1) as Alleged in Count I.

As explained below, the actual delivery issue does not apply in this case; however, the States address actual delivery here even though the Defendants failed to raise this affirmative defense in their answers to the Complaint. Both Defendant Simon Batashvili (*see* ECF No. 458)

and Defendant Lucas Asher (*see* ECF No. 469) filed their First Amended Answers to the Complaint on October 28, 2022, where they raised for the first time twelve affirmative defenses, but none of these defenses reference the 28-day actual delivery exception of 7 U.S.C. § 2(c)(2)(D) as an affirmative defense. Respectfully, Individual Defendants failed to timely raise this exception in their Answers or their First Amended Answers, and instead only included it in their motion for summary judgment after discovery was closed. *CFTC v. Southern Trust Metals, Inc.*, 894 F.3d 1313, 1324 (11th Cir. 2018) ("This [actual delivery] exception is an affirmative defense on which the commodities trader bears the burden of proof.") (citations omitted). Accordingly, the Court should strike its analysis of the actual delivery exception because Individual Defendants have waived the affirmative defense by failing to raise it in their answer. Waiver aside, there is no "actual delivery" exception in the CEA's anti-fraud provision of section 6(c)(1) (7 U.S.C. § 9(1)), the cause of action for Count I. *See* 7 U.S.C. § 9; ECF 1 at 40 ("Count I – Fraud: Violations of Section 6(c)(1) of the CEA, 7 U.S.C. § 9(1). . .."); *Id.* at ¶ 140 ("As a result of the foregoing conduct, Defendants' fraudulent conduct violated 7 U.S.C. § 9(1) (2018) . . .). Section 6(c)(1) is a broad anti-fraud and anti-manipulation cause of action added by section 753 of the Dodd Frank Act. *See* Pub. L. No. 111-203, 124 Stat. 1376, 1750 (2010).

The Court is correct in noting that "[s]ection 2(c)(2)(D) on retail sales may not apply at all, if the transactions at issue were not entered or offered on a margined, leveraged, or financed basis." *See* Order (ECF No. 911 at p.11). The "actual delivery" exception is found at CEA section 2(c)(2)(D)(ii), 7 U.S.C. § 2(c)(2)(D)(ii) and is limited in scope and only applies to contracts "entered into, or offered (even if not entered into), on a leveraged or marginalized basis, or financed by the offeror." CEA § 2(c)(2)(D)(i), 7 U.S.C. § 2(c)(2)(D)(i). Thus, leveraged or marginalized contracts of sale that are delivered within 28 days are excepted from section 2. CEA §

14

2(c)(2)(D)(ii), 7. U.S.C. § 2(c)(2)(D)(ii). There is no dispute that Defendants did not offer contracts involving leveraged, margined, or financed transactions. Because Defendants did not offer contracts involving leveraged, margined, or financed transactions, the actual delivery exception does not apply to the transactions in this case.

In addition, precedent establishes that the "actual delivery" exception does not apply to the CEA's anti-fraud provision in section 6(c)(1), the basis of Count I. The Fifth Circuit affirmed this approach finding, "'[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007).

This issue also was addressed in *CFTC v. Monex Credit Co.* 931 F.3d 966 (9th Cir. 2019) where the court rejected the argument that the "actual delivery" exception written in section 2(c)(2)(D), 7 U.S.C. § 2(c)(2)(D), is also applicable to section 6(c)(1), 7 U.S.C. § 9. Specifically, the court in *Monex* found that the two subsections establishing CEA section 2(c)(2)(D) does not impact the manipulation and fraud provisions of CEA section 6(c)(1):

> As the district court noted, retail commodity transactions are not addressed in § 2(c)(1)'s general exclusion. Thus, there is no need for a specific jurisdictional grant to overcome the general exclusion, as was required in White Pine. Instead, the retail commodity provision merely describes the types of transactions to which other CEA sections—§§ 4(a), 4(b), and 4b—apply. In other words, § 2(c)(2)(D)—the retail commodity provision—clarifies the interplay between margined commodity sales and other sections that apply to future contracts. This is necessary because §§ 4(a), 4(b), and 4b applied *only* to futures trades, until § 2(c)(2)(D) confirmed that those sections *also apply* to leveraged commodity sales.
>
> No such clarification is needed with § 6(c)(1) because the section applies to "any ... contract of sale of any commodity in interstate commerce." And in those sales, § 6(c)(1) outlaws the use of any manipulative or deceptive device. Later, the CEA clarifies that "[w]henever it shall appear to the Commission that any registered entity or other person has" violated "any provision of this chapter ... the Commission may bring an action in the proper district court of the United States."

7 U.S.C. § 13a-1(a). When someone violates § 6(c)(1), the CFTC can bring an enforcement action.

*Id*. at 977 (italicized emphasis in original). Thus, section 6(c)(1) as charged in Count I is not limited by the "actual delivery" provision of subsection 2(c)(2)(D). For this reason, the Court should strike or modify its analysis of the "actual delivery exception."

## V.    CONCLUSION

Plaintiff States respectfully ask that the Court reconsider and modify its Order and strike the conclusion that CEA section 1a does not encompass precious metals as commodities and instead find that precious metals are commodities within the scope of the CEA. In addition, the Court should strike its analysis of the "actual delivery exception" and find that it does not apply in this instant action and find that section 19 is inapplicable. Alternatively, if the Court is not inclined to make these findings, then the States request that the Court either (1) amend the Order to add language specifically certifying it for an immediate appeal under 28 U.S.C. § 1292(b) regarding the issue of whether precious metals are commodities under CEA section 1a and whether the actual delivery exception applies to causes of action under section 6(c)(1) and stay the entire case pending a decision by the Fifth Circuit Court of Appeals, or (2) enter a final judgement dismissing this case without prejudice based on the reasoning outlined in the Order that precious metals are not commodities within the scope of section 1 of the CEA, such that the States can appeal this issue immediately.

August 20, 2025                                    Respectfully submitted,

                                                   FOR THE STATE OF ALABAMA

                                                   By: /s/ Jeffery A. "Beau" Brown, Jr.
                                                   JEFFERY A. "BEAU" BROWN, JR., *pro hac vice*
                                                   Beau.Brown@asc.alabama.gov
                                                   Alabama Bar No. 7258R80B

Attorney for Plaintiff
STATE OF ALABAMA
SECURITIES COMMISSION
445 Dexter Avenue, Suite 12000
Montgomery, AL 36104
Telephone: (334) 242-2984
Fax: (334) 242-0240

FOR THE STATE OF ALASKA

By: /s/ John Haley
JOHN HALEY
john.haley@alaska.gov
Alaska Bar No. 1402010

Attorney for Plaintiff
STATE OF ALASKA
OFFICE OF ATTORNEY GENERAL
1031 West Fourth Avenue, Suite 200
Anchorage, Alaska 99501
Telephone: (907) 269-6645
Fax: (907) 276-3697

FOR THE STATE OF ARIZONA
By: /s/ Elizabeth Schmitt

ELIZABETH SCHMITT, *pro hac vice*
eschmitt@azcc.gov
Arizona Bar No. 034699

Attorney for Plaintiff
ARIZONA CORPORATION COMMISSION
1300 W. Washington St.
Phoenix, AZ 85007
Telephone: (602) 542-1922
Fax: (602) 714-8120

FOR THE STATE OF CALIFORNIA

By: /s/ Danielle A. Stoumbos

MARY ANN SMITH
MaryAnn.Smith@dfpi.ca.gov
SEAN ROONEY

17

Sean.Rooney@dfpi.ca.gov
DANIELLE A. STOUMBOS, *pro hac vice*
California Bar No. 264784
Danielle.Stoumbos@dfpi.ca.gov

Attorneys for Plaintiff
STATE OF CALIFORNIA
DEPARTMENT OF BUSINESS
OVERSIGHT
(now known as the DEPARTMENT OF
FINANCIAL PROTECTION AND
INNOVATION)
320 West Fourth Street, Suite 750
Los Angeles, California 90013
Telephone: (213) 503-2046
Fax: (213) 576-7181

FOR THE STATE OF COLORADO
PHILIP J. WEISER
Attorney General of the State of Colorado

By: /s/ Graham Gerhart

ROBERT FINKE*
robert.finke@coag.gov
Colorado Bar No. 40756
GRAHAM GERHART*
graham.gerhart@coag.gov
Colorado Bar No. 57767
*Counsel of Record

FOR THE STATE OF DELAWARE
KATHLEEN JENNINGS
Attorney General of the State of Delaware

By: /s/ T. Victor Clark

T. VICTOR CLARK, *pro hac vice*
Deputy Attorney General
Delaware Bar No. 4233
victor.clark@delaware.gov

JILLIAN LAZAR
Director of Investor Protection
Delaware Bar No. 6049
jillian.lazar@delaware.gov

18

Delaware Department of Justice
820 N. French St.
Wilmington, DE 19801
Telephone: (302) 577-8356
Fax: (302) 577-6987

Attorneys for Plaintiff the State of Delaware

FOR THE STATE OF FLORIDA
JAMES UTHMEIER

Attorney General for the State of Florida

By: /s/ Victoria Butler

VICTORIA BUTLER, *pro hac vice*
Assistant Attorney General
Director of Consumer Protection
victoria.butler@myfloridalegal.com
Florida Bar No. 861250

Diane Marger Moore, *pro hac vice*
Special Counsel, Assistant Attorney General
Diane.MargerMoore@myfloridalegal.com
Florida Bar No. 268364

Department of Legal Affairs
3507 E Frontage Rd, Suite 325
Tampa, FL 33607-1795
Telephone: (813) 287-7950
Fax: (813) 281-5515

By: /s/ A. Gregory Melchior
A. GREGORY MELCHIOR, *pro hac vice*
Assistant General Counsel
Greg.melchior@flofr.com
Florida Bar No. 407290

Attorney for Plaintiff
STATE OF FLORIDA
OFFICE OF FINANCIAL REGULATION
1313 Tampa Street, Suite 615
Tampa, Florida 33602-3394
Telephone: (813) 218-5327
Fax: (813) 272-2498

FOR THE STATE OF GEORGIA

19

By: /s/ Jonathan Loegel

JONATHAN D. LOEGEL, *pro hac vice*
Georgia Bar No. 755706
jloegel@law.ga.gov

RONALD J. STAY, *pro hac vice*
Georgia Bar No. 621732
rstay@law.ga.gov

Attorneys for Plaintiff
OFFICE OF THE GEORGIA
SECRETARY OF STATE
Georgia Department of Law
40 Capitol Square SW
Atlanta, GA 30334
Telephone: (404) 458-3434
Fax: (404) 657-3239
FOR THE STATE OF HAWAII

By: /s/ Rayni M. Nakamura-Watanabe
RAYNI M. NAKAMURA-WATANABE,
*pro hac vice*
Hawaii Bar No. 9032-0
RNakamur@dcca.hawaii.gov

Attorneys for Plaintiff
STATE OF HAWAII
SECURITIES ENFORCEMENT BRANCH
335 Merchant Street, Suite 205
Honolulu, Hawaii 96813
Telephone: (808) 586-2740
Fax: (808) 586-3977

FOR THE STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL
STATE OF IDAHO
RAUL R. LABRADOR

By: /s/ Dallin Creswell

DALLIN CRESWELL, *pro hac vice*
Deputy Attorney General
dallin.creswell@ag.idaho.gov
Idaho Bar No. 7741

20

Attorney for Plaintiff
STATE OF IDAHO
IDAHO DEPARTMENT OF FINANCE
P.O. Box 83720
Boise, ID 83720-0031
Telephone: (208) 947-8731
Fax: (208) 334-4151

FOR THE STATE OF INDIANA
OFFICE OF THE INDIANA ATTORNEY
GENERAL

By: /s/ J. Derek Atwood

J. DEREK ATWOOD, *pro hac vice*
Deputy Attorney General
Derek.Atwood@atg.in.gov
Indiana Bar No. 33947-49

Attorney for Plaintiff
STATE OF INDIANA
INDIANA SECURITIES COMMISSIONER
302 W. Washington Street
IGCS – 5th Floor
Indianapolis, IN 46204
Fax: (317) 232-7979

FOR THE IOWA INSURANCE
COMMISSIONER
DOUGLAS M. OMMEN

By: /s/ Amanda K. Robinson
AMANDA K. ROBINSON, *pro hac vice*
Iowa Bar No. AT0006753
Compliance Attorney
amanda.robinson@iid.iowa.gov

Attorney for Plaintiff
IOWA INSURANCE DIVISION
1963 Bell Ave, Ste 100
Des Moines, IA 50315
Telephone: (515) 654-6475
Fax: (515)-654-6500

FOR THE STATE OF KANSAS

21

By: /s/ Thomas E. Knutzen

THOMAS E. KNUTZEN, *pro hac vice*
*Special Assistant Attorney General*
tom.knutzen@ks.gov
Kansas Bar No. 24471

Attorney for Plaintiff
OFFICE OF THE KANSAS SECURITIES
COMMISSIONER
1300 SW Arrowhead Road
Topeka, KS 66604
Telephone: (785) 296-7890
Fax: (785) 296-6872

FOR THE STATE OF KENTUCKY

By: /s/ Gary Stephens

GARY STEPHENS, *pro hac vice*
Gary.stephens@ky.gov
Kentucky Bar No. 87740

Attorneys for Plaintiff
STATE OF KENTUCKY
DEPARTMENT OF FINANCIAL
INSTITUITONS
500 Mero St. 2SW19
Frankfort, KY 40601
Telephone: (502) 782-9052
Fax: (502) 573-8787

FOR THE STATE OF MAINE

By: /s/ Elizabeth T. Weyl

ELIZABETH T. WEYL, *pro hac vice*
elizabeth.weyl@maine.gov
Maine Bar No. 005783

Attorney for Plaintiff
STATE OF MAINE SECURITIES
ADMINISTRATOR
6 State House Station
Augusta, Maine 04333

22

Telephone: (207) 626-8800
Fax: (207) 626-8828

FOR THE STATE OF MARYLAND

ANTHONY G. BROWN, ATTORNEY
GENERAL OF THE STATE OF
MARYLAND

By: /s/ Max F. Brauer

MAX F. BRAUER, *pro hac vice*
Assistant Attorney General
mbrauer@oag.state.md.us
Maryland State Does Not Use Bar Numbers

Attorney for Plaintiff
STATE OF MARYLAND EX REL
MARYLAND SECURITIES
COMMISSIONER
200 Saint Paul Place
Baltimore, MD 21202
Telephone: (410) 576-6950
Fax: (410) 576-6532

FOR THE PEOPLE OF MICHIGAN

By: /s/ Aaron W. Levin

Aaron W. Levin, *pro hac vice*
Assistant Attorney General
levina@michigan.gov
Michigan Bar No. P81310

Attorney for Plaintiff
Michigan Department of Attorney General
525 W. Ottawa Street,
P.O. Box 30736
Lansing, MI 48909
Telephone: (517) 335-7632
Fax: (517) 335-6755

FOR THE STATE OF MISSISSIPPI

LYNN FITCH, ATTORNEY GENERAL
STATE OF MISSISSIPPI

By: /s/ James M. Rankin
JAMES M. RANKIN
James.Rankin@ago.ms.gov
Mississippi Bar No. 102332
CRYSTAL UTLEY SECOY
crystal.utley@ago.ms.gov

Attorneys for Plaintiff
STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. Box 220
Jackson, MS 39205
Telephone: (769) 237-6406
Fax: (601) 359-4231

FOR THE STATE OF NEBRASKA
MICHAEL T. HILGERS
Attorney General

/s/ Christopher A. Felts
Christopher A. Felts, *pro hac vice*
Assistant Attorney General
Nebraska Bar No. 26784
christopher.felts@nebraska.gov

Attorney for Plaintiff
STATE OF NEBRASKA
2115 State Capitol
Lincoln, NE 68509
Telephone: (402) 471-2682
Fax: (402) 471-3297

FOR THE STATE OF NEVADA

By: /s/ Shady Sirsy
Shady Sirsy, *pro hac vice*
Chief of Enforcement,
Nevada Securities Division
Nevada Bar No. 15818
s.sirsy@sos.nv.gov

Attorney for Plaintiff
STATE OF NEVADA
Office of the Nevada Secretary of State
Securities Division

24

2250 North Las Vegas Blvd., Suite 400
North Las Vegas, NV 89030
Telephone: (702) 486-2440
Fax: (702) 486-2452

FOR THE STATE OF NEW MEXICO

By: /s/ Alissa N. Berger

ALISSA N. BERGER, *pro hac vice*
New Mexico Bar No. 21769
alissa.berger@rld.nm.gov

Attorney for Plaintiff
STATE OF NEW MEXICO
New Mexico Regulation and Licensing
Department, Securities Division
5500 San Antonio Rd NE
Albuquerque, New Mexico 87109
Telephone: (505) 503-5987
Fax: (505) 222-9848

FOR THE STATE OF NEW YORK
LETITIA JAMES
ATTORNEY GENERAL OF THE STATE
OF NEW YORK

By: /s/ Tatyana Trakht

TATYANA "TANYA" TRAKHT, *pro hac vice*
Assistant Attorney General
tanya.trakht@ag.ny.gov
New York State Does Not Use Bar Numbers

Attorney for Plaintiff
ATTORNEY GENERAL FOR THE STATE
OF NEW YORK
28 Liberty Street, 21st Floor
New York, New York 10005
Telephone: (212) 416-8457
Fax: (212) 416-8816

FOR THE STATE OF OKLAHOMA

By: /s/ Robert Fagnant

ROBERT FAGNANT, *pro hac vice*
rfagnant@securities.ok.gov
Oklahoma Bar No. 30548

BRAD DAVENPORT, *pro hac vice*
bdavenport@securities.ok.gov
Oklahoma Bar No. 18687

Attorney for Plaintiff
OKLAHOMA DEPARTMENT OF
SECURITIES
204 N. Robinson Avenue, Suite 400
Oklahoma City, OK 73102
Telephone: (405) 280-7718
Fax: (405) 280-7742

FOR THE STATE OF SOUTH CAROLINA

By: /s/ Andrew N. Cole

ANDREW N. COLE, *pro hac vice*
andrewcole@scag.gov
South Carolina Bar No. 68384

Attorney for Plaintiff
STATE OF SOUTH CAROLINA
OFFICE OF ATTORNEY GENERAL
P.O. Box 11549
Columbia, SC 29211
Telephone: (803) 734-4731
Fax: (803) 734-7208

FOR THE STATE OF SOUTH DAKOTA

By: /s/ Clayton Grueb

CLAYTON GRUEB, *pro hac vice*
South Dakota Bar No. 4642
Clayton.grueb@state.sd.us

Attorney for Plaintiff
South Dakota Department of Labor &
Regulation,
Division of Insurance
2330 N. Maple Ave, Suite 1

26

Rapid City, SD 57701
Telephone: (605) 773-3563
Fax: (605) 773-5369

FOR THE STATE OF TENNESSEE

By: /s/ James P. Urban

JAMES P. URBAN, *pro hac vice*
Deputy Attorney General
TN B.P.R. No. 033599
james.urban@ag.tn.gov

Office of Tennessee Attorney General
Financial & Regulatory Section
P.O. Box 20207
Nashville, TN 37202-0207
Telephone: (615) 741-3739
Fax: (615) 532-8223

Attorney for Plaintiff
Commissioner of the Tennessee Department
of Commerce and Insurance

FOR THE STATE OF TEXAS:

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

/s/ Stephanie A. Criscione Houser
STEPHANIE A. CRISCIONE HOUSER
Assistant Attorney General
General Litigation Division
Office of the Texas Attorney General

27

P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Texas Bar No. 24109768
Stephanie.criscione@oag.texas.gov
Telephone: (512) 936-1675
Fax:  (512) 320-0667

FOR THE STATE OF WASHINGTON

By: /s/ Stephen Manning

Stephen Manning, *pro hac vice*
stephen.manning@atg.wa.gov
Telephone: (360) 534-4846
Fax: (360) 664-0229

Attorney for Plaintiff
Washington State Department of Financial
Institutions, Securities Division
150 Israel Rd. SW
Tumwater, WA 98501
Telephone: (360) 902-8700
Fax: (360) 902-0524

FOR THE STATE OF WEST VIRGINIA

By: /s/ Michael Nusbaum

MICHAEL NUSBAUM, *pro hac vice*
michael.nusbaum@wvsao.gov
West Virginia Bar No. 12708

Attorney for Plaintiff
STATE OF WEST VIRGINIA
WEST VIRGINIA SECURITIES
COMMISSION
1900 Kanawha Boulevard, East
Building 1, Room W-100
Charleston, WV 25305
Telephone: (304) 558-2251
Fax: (304) 558-4211

FOR THE STATE OF WISCONSIN
JOSHUA L. KAUL
Attorney General
State of Wisconsin

28

Wisconsin Department of Justice

By: /s/ Lewis W. Beilin

LEWIS W. BEILIN, *pro hac vice*
Assistant Attorney General
Wisconsin Bar No. 1038835
beilinlw@doj.state.wi.us

WISCONSIN DEPARTMENT OF JUSTICE
Post Office Box 7857
Madison, WI 53707-7857
Telephone: (608) 266-3076
Fax: (608) 294-2907

*Attorneys for Plaintiff State of Wisconsin*