## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, *et al.*, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Case No.: **3:20-cv-02910-X** |
| | § | |
| TMTE, INC. a/k/a METALS.COM, *et al*., | § | Judge: Brantley Starr |
| | § | |
| Defendants, | § | |
| | § | |

**PLAINTIFF CFTC'S RESPONSE IN OPPOSITION TO DEFEDANTS LUCAS ASHER AND SIMON BATASHVILI'S MOTION TO RECONSIDER SUMMARY JUDGMENT ORDER AND CROSS-MOTION FOR RECONSIDERATION**

# **TABLE OF CONTENTS**

I.  Rule 54(b) empowers the Court to reconsider its July 21 interlocutory order......................2

II. The term "commodity" is defined broadly by the text of the CEA, its history,
    and Courts interpreting its scope........................................................................... 3

    A.  The text of the CEA confirms that the term "commodity" includes not only
        agricultural commodities, but also "excluded" and "exempt" commodities
        such as gold, silver, oil, gas, interest rates, events, occurrences, and more.................. 3

    B.  The history of the CEA reflects an expansion of the term "commodity" to
        include non-agricultural commodities……………………………………………….. 6

    C.  The CFTC has consistently interpreted "commodity" to include non-agricultural
        commodities such as precious metals, and that interpretation should be
        accorded deference.................................................................................... 10

    D.  Courts, including the Fifth Circuit, read the term "commodity" broadly
        to include non-agricultural products……………………………………………… 12

III. The Parties will be unable to prepare for trial absent reconsideration and correction
     of the Court's conclusion that precious metals are not commodities……………………... 14

IV. The Court's conclusion has the potential to cause confusion outside the scope of
    this case.................................................................................................. 15

V.  CEA Section 2(c)(2)(D), the "actual delivery" provision in that section, and
    CEA Section 19, are not at issue in this case, but they do help demonstrate that
    precious metals are "commodities" under CEA Section 1a................................. 18

    A.  While the "actual delivery" provision is not at issue in this case, the
        legislative history of this provision makes it clear that precious metals are
        "commodities" subject to the CEA……………………………………………………18

    B.  The "actual delivery" provision in Section 2(c)(2)(D) is limited to that section
        and does not extend to other sections of the CEA…………………………………... 20

    C.  CEA Section 19 "Leverage Contracts" are not at issue in this case, but the
        explicit reference to gold, silver and platinum in that section makes it clear
        that precious metals are "commodities" subject to the CEA…………………………22

    D.  The CFTC has charged Defendants with violating CEA Section 6(c)(1) and
        CFTC Rule 180.1, which broadly prohibit fraud in connection with commodity
        transactions (including precious metals transactions) in interstate commerce……....23

VI. Conclusion ............................................................................................. 25

# TABLE OF AUTHORITIES

Cases

*Arif v. Mukasey*,
  509 F.3d 677 (5th Cir. 2007) ...................................................................................21

*Auer v. Robbins*,
  519 U.S. 452 (1997)................................................................................................10

*Austin v. Kroger Tex., L.P.*,
  864 F.3d 326 (5th Cir. 2017) .....................................................................................3

*Bank of America. v. City & County of San Francisco*,
  309 F.3d 551 (9th Cir. 2002) ...................................................................................21

*Board of Trade of City of Chicago v. S.E.C.*,
  677 F.2d 1137 (7th Cir. 1982) ...................................................................................8

*Chiarella v. United States*,
  445 U.S. 222 (1980)................................................................................................24

*Cobell v. Jewell*,
  802 F.3d 12 (D.C. Cir. 2015)......................................................................................3

*CFTC v. 20/20 Trading Co.*, No. 8:11-cv-643,
  2011 WL 2221177 (C.D. Cal. June 7, 2011)...........................................................22

*CFTC v. American Board of Trade, Inc.*,
  473 F. Supp. 1177 (S.D.N.Y. 1979) ........................................................................14

*CFTC v. American Metals Exchange Corp.*,
  775 F. Supp. 767 (D.N.J. 1991) ..............................................................................16

*CFTC v. American Precious Metals, LLC*,
  845 F. Supp. 2d 1279 (S.D. Fla. 2011).....................................................................22

*CFTC v. Baldwin*, No. 1:21-cv-5707,
  2025 WL 1047372 (S.D.N.Y. Apr. 8, 2025).............................................................14

*CFTC v. Fisher Capital LLC*, No. 1:23-cv-3121,
  2024 WL 3771781 (E.D.N.Y. July 12, 2024)...............................................14, 16, 24

*CFTC v. IBS, Inc.*, 113 F. Supp. 2d 830 (W.D.N.C. 2000),
  *aff'd sub nom. CFTC v. Kimberlynn Creek Ranch, Inc.*,
  276 F.3d 187 (4th Cir. 2002)...................................................................................16

*CFTC v. International Foreign Currency, Inc.*,
  334 F. Supp. 2d 305 (E.D.N.Y. 2004) .....................................................................13

*CFTC v. Kraft Foods Grp., Inc.*,
   153 F. Supp. 3d 996 (N.D. Ill. 2015) ......................................................25

*CFTC v. McDonnell*,
   287 F. Supp. 3d 213 (E.D.N.Y. 2018) .....................................................13

*CFTC v. McDonnell*,
   332 F. Supp. 3d 641 (E.D.N.Y. 2018) .....................................................25

*CFTC v. Monex Credit Co.*,
   931 F.3d 966 (9th Cir. 2019) .......................................................16, 22, 24

*CFTC v. Morse*,
   762 F.2d 60 (8th Cir. 1985) ....................................................................15

*CFTC v. Muller*,
   570 F.2d 1296 .......................................................................................1, 12

*CFTC v. My Big Coin Pay, Inc.*,
   334 F. Supp. 3d 492 (D. Mass. 2018) ................................................13, 25

*CFTC v. Omega Knight 2, LLC*, No. 1:18-cv-22377,
   2019 WL 6796128 (S.D. Fla. Sept. 16, 2019).........................................14

*CFTC v. Red Rock Secured, LLC*, 2:23-cv-03680,
   2023 WL 6173480 (C.D. Cal. Aug. 18, 2023).....................................20, 25

*CFTC v. Royal Metals Group, LLC*, No. 1:18-cv-8407,
   2019 WL 1996307 (S.D.N.Y. Jan. 25, 2019) ...........................................25

*CFTC v. Rust Rare Coin Inc.*,
   No. 2:18-cv-892 (D. Utah Nov. 13, 2018) ...............................................25

*CFTC v. Safeguard Metals LLC*,
   No. 2:22-cv-00691 (C.D. Cal. Feb. 1, 2022) ...........................................25

*CFTC v. Scott*, No. 3:18-cv-05802 (RAJ),
   2019 WL 461125 (W.D. Wash. Feb. 6, 2019).....................................20, 25

*CFTC v. Southern Trust Metals, Inc.*,
   894 F.3d 1313 (11th Cir. 2018) ...............................................................16

*CFTC v. Trade Exchange Network Ltd.*,
   117 F. Supp. 3d 29 (D.D.C. 2015) ..........................................................13

*CFTC v. US Coin Bullion LLC*, No. 6:20-cv-40,
   2021 WL 8946141 (M.D. Fla. Dec. 29, 2021).........................................14

*CFTC v. U.S. Metals Depository Co.*,
   468 F. Supp. 1149 (S.D.N.Y. 1979) ........................................................16

*CFTC v. Zelener*,
   373 F.3d 861 (7th Cir. 2004) ...................................................................................21

*Estate of Henson v. Wichita County.*, 988 F. Supp. 2d 726 (N.D. Tex. 2013),
   *aff'd sub nom. Estate of Henson v. Wichita County., Tex.,*
   795 F.3d 456 (5th Cir. 2015) ...................................................................................2

*Fatt Katt Enterprises v. Rigsby Construction, Inc.*,
   762 F. App'x 746 (11th Cir. 2019) ..........................................................................21

*Goodson v. Nasco Healthcare Inc.*, No. 3:21-cv-1467,
   2024 WL 4829487 (N.D. Tex. Nov. 19, 2024) .........................................................2

*In re Hunt*, CFTC No. 85-12,
   1989 WL 242368 (Dec. 20, 1989) ...........................................................................15

*In re Katrina Canal Breaches Litigation*,
   495 F.3d 191 (5th Cir. 2007) ...................................................................................6

*International Paper Co. v. Ouellette*,
   479 U.S. 481 (1987) .................................................................................................21

*Kisor v. Wilkie*,
   588 U.S. 558 (2019) .................................................................................................10

*Laydon v. Coöperatieve Rabobank U.A.*,
   No. Nos. 20-3626(L), 20-3775 (XAP), (2d Cir. Oct. 18, 2022),
   *amended and superseded on reh'g*, 55 F.4th 86 (2d Cir. 2022) .........................16, 17

*Loa-Herrera v. Trominski*,
   231 F.3d 984 (5th Cir. 2000) ...................................................................................21

*Martin v. Occupational Safety and Health Review Commission*,
   499 U.S. 144 (1991) .................................................................................................10

*Saqui v. Pride Central America, LLC*,
   595 F.3d 206 (5th Cir. 2010) ...................................................................................2

*Tourdot v. Rockford Health Plans, Inc.*,
   439 F.3d 351 (7th Cir. 2006) ...................................................................................6

*United States v. Brooks*,
   681 F.3d 678 (5th Cir. 2012) ...................................................................................12

*United States v. Futch*,
   278 F. App'x 387 (5th Cir. 2008) .........................................................................9, 13

*United States v. Insco*,
   496 F.2d 204 (5th Cir. 1974) ...................................................................................6

iv

*United States v. Lopez-Hernandez,*
 570 F. App'x. 372 (5th Cir. 2014) ................................................................6

*United States v. Mackay,*
 757 F.3d 195 (5th Cir. 2014) ......................................................................6

*United States v. Radley*, 659 F. Supp. 2d 803 (S.D. Tex. 2009),
 *aff'd*, 632 F.3d 177 (5th Cir. 2011) ..........................................................13

*United States v. Reed*, No. 1:20-cr-500,
 2022 WL 597180 (S.D.N.Y. Feb. 28, 2022) ...........................................13

*United States v. Silva-Chavez,*
 888 F.2d 1481 (5th Cir. 1989) ....................................................................6

*United States v. Valencia,*
 394 F.3d 352 (5th Cir. 2004) ....................................................................13

*United States v. Wilkinson,*
 986 F.3d 740 (7th Cir. 2021) ....................................................................13

*West Virginia v. EPA,*
 597 U.S. 697 (2022) ....................................................................................5

Statutes

7 U.S.C. § 1a, CEA § 1a ............................................................1, 2, 4, 14, 20, 25

7 U.S.C. § 1a(9), CEA § 1a(9) ..........................................1, 3, 5, 9, 11, 14, 15, 16, 17

7 U.S.C. § 1a(18), CEA § 1a(18) ..............................................................................21

7 U.S.C. § 1a(19), CEA § 1a(19) ..................................................................3, 4, 16, 17

7 U.S.C. § 1a(19)(i)-(iv), CEA § 1a(19)(i)-(iv) ....................................................9

7 U.S.C. § 1a(20), CEA § 1a(20) ..........................................1, 3, 4, 5, 11, 12, 16, 17

7 U.S.C. § 2, CEA § 2 (1970) ......................................................................................7

7 U.S.C. § 2(a)(1)(A), CEA § 2(a)(1)(A) ..............................................................15

7 U.S.C. § 2(c)(2)(C), CEA § 2(c)(2)(C) ..............................................................21

7 U.S.C. § 2(c)(2)(D), CEA §2(c)(2)(D) ..........................................18, 20, 21, 22

7 U.S.C. § 2(c)(2)(D)(i)-(ii), CEA §2(c)(2)(D)(i)-(ii) ........................................21

7 U.S.C. § 2(c)(2)(D)(ii)(III)(aa), CEA §2(c)(2)(D)(ii)(III)(aa) ........................19

7 U.S.C. § 2(c)(2)(D)(iii), CEA §2(c)(2)(D)(iii) ...................................................19

7 U.S.C. § 2(g), CEA § 2(g) (2001) ......................................................................9

7 U.S.C. § 2(h), CEA § 2(h) (2001) ......................................................................9

7 U.S.C. § 5, CEA § 3 .........................................................................................15

7 U.S.C. § 6(a)(1), CEA § 4(a)(1) .......................................................................19

7 U.S.C. § 6d(a)(2), CEA § 4d(a)(2) ...................................................................19

7 U.S.C. § 6d(c), CEA § 4d(c) .............................................................................19

7 U.S.C. § 6k(1), CEA § 4k(1) .............................................................................19

7 U.S.C. § 7(d)(12), CEA § 5(d)(12) ...................................................................19

7 U.S.C. § 7(d)(21), CEA § 5(d)(21) ...................................................................19

7 U.S.C. § 9, CEA § 6(c) .....................................................................................11

7 U.S.C. § 9(1), CEA § 6(c)(1) ......................................14, 16, 20, 21, 22, 23, 24

7 U.S.C. § 13a-1(a), CEA § 6c(a) ........................................................................22

7 U.S.C. § 13(a)(2), CEA § 9(a)(2) .....................................................................10

7 U.S.C. § 23, CEA § 19 ........................................................................18, 22, 23

15 U.S.C. § 78j(b) ...............................................................................................23

28 U.S.C. § 1292(b) .........................................................................................2, 25

CFTC Act of 1974, Pub. L. No. 93-463, 88 Stat. 1389 (1974) ............................7

Consolidated Appropriations-FY2001, Pub. L. No. 106–554, § 101(4),
   114 Stat. 2763, 2763A-371 ..............................................................................9

Grain Futures Act of 1922, Pub. L. No. 67-331, 42 Stat. 998 (1922) ..................6

Grain Futures Act, Pub. L. No. 74-675, 49 Stat. 1491 (1936) ............................7

Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010,
   Pub. L. No. 111-203, 124 Stat. 1376 .................................................19, 23, 24

Fed. R. Civ. P. 54(b) ....................................................................................1, 2, 17

Regulations

17 C.F.R. § 1.3, CFTC Rule 1.3 ................................................................3, 11, 16, 17

17 C.F.R., Part 31 .................................................................................................23

17 C.F.R. § 31.4, CFTC Rule 31.4 ..........................................................................23

17 C.F.R. § 38.1051, CFTC Rule 38.1051 ...............................................................19

17 C.F.R. § 180.1, CFTC Rule 180.1 ..........................................11, 16, 14, 23, 24, 25

17 C.F.R. § 190.00, CFTC Rule 190.00 ...................................................................17

Prohibition on the Employment, or Attempted Employment, of Manipulative
  and Deceptive Devices and Prohibition on Price Manipulation,
  76 Fed. Reg. 41,398 (July 14, 2011) ...............................................................11, 23

Retail Commodity Transactions Under CEA, 76 Fed. Reg. 77,670 (Dec. 14, 2011) ...................20

Rules under the Commodity Exchange Act, 41 Fed. Reg. 3192 (Jan. 21, 1976) ..........................10

Other Authorities

S. Rep. 95-850 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2087 ...................................7

S. Rep. 93-1131 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 5843 ................................8

H.R. Rep. 93-975 (1974) ........................................................................................8

*Hearing to Review Implications of the CFTC v. Zelener Case Before the H. Comm
on Agric., Subcomm. on Gen. Farm Commodities and Risk Mgmt.*, 111th Cong. 13-33
(June 4, 2009) .....................................................................................................19

Donald L. Horwitz & Richard A. Miller, *Confusion to the Generalists*, 20 No. 10 Futures &
Derivatives L. Rep. 2 (2001) ..................................................................................9

Philip F. Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public
Policy*, 29 Vand. L. Rev. 1, 25 (1976) .......................................................................8

Jerry W. Markham, *Federal Regulation of Margin in the Commodity Futures Industry—
  History and Theory*, 64 Temple L. Rev. 59, 87 (1991) .............................................7

Philip McBride-Johnson, et al., *Derivatives Regulation* § 1.02[1] ...................................6

*Agricultural futures and options*, CME GROUP,
https://www.cmegroup.com/markets/agriculture.html#overview .....................................4

Daniel N. Budofsky, et al., *Judge Starr's Ruling in Metals.com Case Raises Jurisdictional*

*Questions About CFTC Authority*, Pillsbury https://www.pillsburylaw.com/en/news-and-insights/judge-starr-ruling-jurisdiction-cftc-authority.html ...................................................15

*Energy,* ICE, https://www.ice.com/energy .........................................................................................4

*History of the CFTC*, CFTC https://www.cftc.gov/About/HistoryoftheCFTC/history_precftc.html (last visited July 30, 2025) ...........................................................................................................6

*Interest rate futures and options*, CME Group, https://www.cmegroup.com/markets/interest-rates.html.......................................................................................................................................4

*Metals futures and options*, CME Group, https://www.cmegroup.com/markets/metals.html#products ...........................................................5

Plaintiff Commodity Futures Trading Commission (CFTC) respectfully opposes the relief sought by Defendant Lucas Asher and Simon Batashvili's Motion to Reconsider Summary Judgment Order (ECF No. 929) (Defs.' Mot.), and cross moves pursuant to Federal Rule of Civil Procedure 54(b) for reconsideration of the Court's conclusion in its July 21, 2025, Order that "section 1 [of the Commodity Exchange Act] does not encompass precious metals as commodities because they are neither agricultural products nor movie tickets." Memo. Op. and Order, ECF No. 911 at p. 9. Defendants argue that this conclusion requires the dismissal of the CFTC's and the States' Complaint. Defs.' Mot. at 2, 6–7. But this conclusion is inconsistent with the plain language and structure of the Commodity Exchange Act (CEA), conflicts with Fifth Circuit precedent holding that precious metals are commodities, *CFTC v. Muller*, 570 F.2d 1296 (5th Cir. 1978), and presents an immediate obstacle to proceeding with the jury trial scheduled to begin on October 20, 2025. The conclusion that precious metals are not commodities also poses a risk of causing confusion for market participants in the U.S. commodities markets overseen by the CFTC. Since the parties did not focus their summary judgment briefs on the issue of whether precious metals are a "commodity" within the scope of the CEA, the CFTC is providing a more in-depth briefing of this issue and requests that the Court reconsider this aspect of its order.

As explained in further detail below, while precious metals are not "agricultural commodities," they are nonetheless "commodities" under Section 1a of the CEA. Precious metals fall within the definition of "exempt commodities" in Section 1a(20) of the CEA, 7 U.S.C. § 1a(20). "Exempt commodities" under Section 1a(20) are a sub-category of the broader term "commodity" defined in Section 1a(9) of the Act. Physical commodities such as gold, silver, platinum, palladium, oil, and gas are all examples of "exempt" commodities that are not agricultural but are nonetheless "commodities" subject to the CEA.

1

The CFTC asks that the Court reconsider and modify its July 21 Order and strike the conclusion that CEA Section 1 does not encompass precious metals as commodities, and instead find that precious metals are commodities. In addition, the Court should strike its discussion of CEA Sections 2(c)(2)(D) and 19, neither of which are at issue in this case. That will obviate the need for the parties to file trial briefs on this issue by September 29, 2025, as required by the Court's July 21, 2025, Order and Amended Scheduling Order (ECF No. 912). If the Court is not inclined to reconsider and amend these aspects of its order, the CFTC asks that the Court certify the issue of whether precious metals are a "commodity" under CEA Section 1a as an issue for immediate appeal pursuant to 28 U.S.C. § 1292(b), or enter a final judgment dismissing this case to allow the CFTC to pursue an immediate appeal of this issue.

## I.    Rule 54(b) empowers the Court to reconsider its July 21 interlocutory order.

Under Federal Rule of Civil Procedure 54(b), courts may reconsider any order issued before judgment is entered. Fed. R. Civ. P. 54(b) (stating that "any order . . . that adjudicates fewer than all the claims . . . of fewer than all the parties . . . may be revised at any time before the entry of a judgment"); *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210–11 (5th Cir. 2010). Because a denial of a motion for summary judgment is an interlocutory order, this Court "is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Estate of Henson v. Wichita Cty.*, 988 F. Supp. 2d 726, 729–30 (N.D. Tex. 2013), *aff'd,* 795 F.3d 456 (5th Cir. 2015). "The standard is less exacting than that applied when analyzing a motion to amend a judgment under Rule 59 or a motion for relief from judgment under Rule 60." *Goodson v. Nasco Healthcare Inc.*, No. 3:21-cv-1467, 2024 WL 4829487, at *1 (N.D. Tex. Nov. 19, 2024). Rule 54(b) allows courts to consider new arguments as a case evolves, reflecting the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice

requires." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336-37 (5th Cir. 2017) (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)).

**II.    The term "commodity" is defined broadly by the text of the CEA, its history, and Courts interpreting its scope.**

> **A. The text of the CEA confirms that the term "commodity" includes not only agricultural commodities, but also "excluded" and "exempt" commodities such as gold, silver, oil, gas, interest rates, events, occurrences, and more.**

The term "commodity" in the CEA is broad, encompassing a list of specifically enumerated tangible products and a catchall provision for "all other goods and articles, . . . and all services, rights, and interests . . . in which contracts for future delivery are presently or in the future dealt in." 7 U.S.C. § 1a(9). In addition, this broad definition of "commodity" in Section 1a(9) is supplemented by additional definitions in Section 1a, specifically "excluded commodity" in 1a(19) and "exempt commodity" in 1a(20), both of which provide additional context for the scope of the term "commodity" in the CEA. Despite their names suggesting exclusions and exemptions, "excluded" and "exempt" commodities are indeed "commodities" under the CEA.

The CEA has evolved over time to classify the broader term "commodities" into three sub-categories: (i) "agricultural commodities"; (ii) "excluded commodities"; and—pertinent here—(iii) "exempt commodities."

With respect to "agricultural commodities," Section 1a(9) contains a list of some agricultural commodities, and the term is further defined by CFTC Rule 1.3 to include "[a]ll other commodities that are, or once were, or are derived from, living organisms, including plant, animal and aquatic life, which are generally fungible, within their respective classes, and are used primarily for human food, shelter, animal feed or natural fiber." *See* 17 C.F.R. § 1.3. Examples of agricultural commodities include wheat, cotton, corn, soybeans, tobacco and livestock. U.S. exchanges registered with the CFTC as "Designated Contract Markets" list

derivatives[1] on various agricultural commodities. For example, the Chicago Mercantile Exchange lists corn futures, soybean futures, and cattle futures. *See Agricultural futures and options*, CME GROUP, https://www.cmegroup.com/markets/agriculture.html#overview (providing overview of various agricultural commodity derivatives available for trading).

"Excluded commodities" is another defined term in CEA Section 1a. "Excluded commodities" include financial instruments such as interest rates, exchange rates, currencies, securities, indices, contingencies and events. *See* 7 U.S.C. § 1a(19). CFTC-regulated markets list derivatives on excluded commodities such as interest rates. *See Interest rate futures and options*, CME GROUP, https://www.cmegroup.com/markets/interest-rates.html (providing an overview of futures and options products such as U.S. Treasuries futures or Fed Funds futures offered on the Chicago Mercantile Exchange).

The third sub-category of commodities defined in CEA Section 1a is an "exempt commodity." *See* 7 U.S.C. § 1a(20). This is a term that includes precious metals such as gold and silver. An "exempt commodity" is defined by this section of the CEA to mean "any commodity that is not an agricultural commodity or an excluded commodity." Examples of exempt commodities include energy products (*e.g.*, oil, natural gas, environmental carbon offsets) and metals (*e.g.*, gold, silver). CFTC-regulated markets such as those operated by ICE Futures US (formerly known as the New York Board of Trade) list various "exempt commodity" derivatives including gold and silver futures, or energy futures including futures on Brent Crude Oil or Henry Hub Gas. *See Energy,* ICE, https://www.ice.com/energy (providing Futures US energy

---

[1] Derivatives are financial instruments, such as futures, options, or swaps, whose price is dependent upon—that is, "derived from"—the value of something else, such as a physical commodity, debt instrument, or pricing index. Commodity futures, options and swaps are examples of derivatives traded in the markets that the CFTC oversees.

futures products overview). The Chicago Mercantile Exchange also lists various "exempt commodity" derivatives including gold, silver, and platinum futures. *See Metals futures and options*, CME GROUP, https://www.cmegroup.com/markets/metals.html#products.

The plain text of the statute encompasses precious metals as commodities, both in the definition of "exempt commodity" in Section 1a(20) and in the broader defined term "commodity" in Section 1a(9). Precious metals including gold and silver are "a commodity that is not an excluded commodity or an agricultural commodity." *See* 7 U.S.C. § 1a(20). Precious metals including gold and silver are also "commodities" within the scope of Section 1a(9) because they are "goods" or "articles." Moreover, precious metals are "goods" or "articles" "in which contracts for future delivery are presently . . . dealt in," as numerous precious metals futures contracts are traded on CFTC-regulated exchanges such as those operated by ICE Futures US and the Chicago Mercantile Exchange.

With the additional statutory context provided by the definitions of "exempt commodity" and "excluded commodity" in Sections 1a(19) and 1a(20), the canons of statutory interpretation cited by the Court in its July 21, 2025, Order support the conclusion that precious metals are commodities. For example, "the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022) (citation omitted). Here, the defined term "commodity" in Section 1a(9), with the additional context from the defined terms "exempt commodity" and "excluded commodity" in the text of the statute, confirm that precious metals are commodities subject to the CEA. The canons of statutory interpretation *ejusdem generis* and *noscitur a sociis* likewise support the conclusion that precious metals are "commodities" under Section 1a once the defined terms "exempt commodity" and "excluded commodity" in that section are taken into consideration.

Furthermore, canons of statutory interpretation are not "cast-iron rule[s]" and do not "override all other rules of construction" or "appl[y] to defeat the real purpose of the statute." *United States v. Mackay*, 757 F.3d 195, 198 (5th Cir. 2014). Accordingly, such canons should not be applied when they would "defeat the obvious purpose or plain meaning of the text." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 219 (5th Cir. 2007) (quoting *Tourdot v. Rockford Health Plans, Inc.*, 439 F.3d 351, 354 (7th Cir. 2006)); *accord United States v. Insco*, 496 F.2d 204, 207 (5th Cir. 1974); *see also United States v. Silva-Chavez*, 888 F.2d 1481, 1482-84 (5th Cir. 1989); *United States v. Lopez-Hernandez*, 570 F. App'x 372, 373 (5th Cir. 2014). The proper interpretation of the term "commodity" must take into account the sub-categories of "exempt" and "excluded" commodities, both explicitly included in the text of the statute.

### B. The history of the CEA reflects an expansion of the term "commodity" to include non-agricultural commodities.

Historical context is also useful to explain the breadth of the term "commodity" and why it today includes almost anything other than onions and box office receipts (both of which are explicitly defined *not* to be commodities). The CEA's definition of "commodity" has undergone significant expansion over the past century, keeping pace with the evolution of the United States' derivatives markets.[2] "Congress [has] expanded the definition of *commodity* to encompass virtually anything that is or becomes the subject of futures trading, intangible as well as tangible." Philip McBride-Johnson, et al., *Derivatives Regulation* § 1.02[1] (tracing evolution of the CEA term "commodity").

The CEA's roots are in the Grain Futures Act of 1922, Pub. L. No. 67-331, 42 Stat. 998 (1922), in which Congress named seven grain commodities whose futures markets were to be

---

[2] *See generally History of the CFTC*, CFTC https://www.cftc.gov/About/HistoryoftheCFTC/history_precftc.html (last visited July 30, 2025).

overseen by the Secretary of Agriculture. In 1936, Congress passed the first iteration of the CEA, which defined the term "commodity" to include the original seven grains, plus six more agricultural products. Pub. L. No. 74-675, 49 Stat. 1491 (1936). In the following decades, Congress repeatedly amended the "commodity" definition to cover additional items.

By 1970, "commodity" meant "wheat, cotton, rice, corn" and some twenty other listed products. *See, e.g.*, 7 U.S.C. § 2 (1970). But the practice of continuously adding to the list of specific commodities became untenable. This was particularly so in the early 1970s as financial futures, including futures on financial indexes, began to proliferate. *See* Jerry W. Markham, *Federal Regulation of Margin in the Commodity Futures Industry—History and Theory*, 64 Temple L. Rev. 59, 87 (1991) (discussing the advent of "futures contracts on a wide variety of products" including on "index items such as stock indexes").

Thus, in the Commodity Futures Trading Commission Act of 1974, Congress supplemented the list with several catchall categories, including virtually "all" goods and articles, and "services, rights, and interests in which contracts for future delivery are presently or in the future dealt in." Pub. L. No. 93-463, §§ 101(a)(3), 201(b), 88 Stat. 1389, 1395. The statutory term "commodity" therefore became a term of art sufficiently broad to cover commodities underlying later-developed derivatives products. *See, e.g.*, S. Rep. 95-850, at 21 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2087, 2109-10 ("Congress took the view that limiting commodities subject to the [1974] Act to a statutory list when commercial interest in trading futures in many other commodities were developing would be inappropriate."). "The legislative history shows that the purpose of the enlarged definition was to allow regulation of futures contracts and other transactions in a growing number of commodities such as coffee, sugar, and foreign currencies that were then being traded on and off commodity exchanges and that had

been unregulated under the prior version of the CEA." *Bd. of Trade of City of Chicago v. S.E.C.*, 677 F.2d 1137, 1142-43 (7th Cir. 1982) (vacated on other grounds) (citing S. Rep. 93-1131 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 5843, 5859; H.R. Rep. 93-975, at 41-42, 62 (1974)); Philip F. Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy*, 29 Vand. L. Rev. 1, 25 (1976) ("Congress was well aware, for example, that a futures contract based upon mortgage interest rates was under development in 1973 and 1974.").

The legislative history for the enactment of the CFTC Act of 1974 explicitly acknowledges the broad scope of the "commodity" definition. The very first sentence of Senate Report No. 93-1131 states:  "The Committee on Agriculture and Forestry, to which was referred the bill (H.R. 13113) to amend the Commodity Exchange Act to strengthen the regulation of futures trading, to bring all agricultural ***and other*** commodities traded on exchanges under regulation." S. Rep. 93-1131 (1974), *as reprinted in* 1974 U.S.C.C.A.N. 5843 (emphasis added). Other statements from this 1974 Senate Report confirm that commodities subject to the CEA are not limited to agricultural products and include metals. For example, the report states that "All goods, articles, services, rights, and interests traded for future delivery are brought under Federal regulation." *Id.* at 5845. It further notes that "[w]hile the futures markets in a number of agricultural commodities have been regulated in varying degrees since 1922, many large and important futures markets are completely unregulated by the Federal Government. These include such agricultural and forest commodities as coffee, sugar, cocoa, lumber, and plywood, ***plus various metals, including the highly sensitive silver market and markets in a number of foreign currencies***." *Id.* at 5859 (emphasis added).

In the Commodity Futures Modernization Act of 2000 ("CFMA"), Congress enacted two new provisions establishing the three subcategories of the broader term "commodity" that now

exist in the statute: agricultural commodities, "excluded commodities," and "exempt commodities." *See* Consolidated Appropriations-FY 2001, Pub. L. No. 106–554, § 101(4), 114 Stat. 2763, 2763A-371. The definition of "excluded commodity" (now at 7 U.S.C. § 1a(19)) is a sweeping list of financial and/or intangible commodities including "interest rate[s]," "exchange rate[s]," "index[es] or measure[s] of inflation," "other macroeconomic index[es] or measure[s]," "any economic or commercial index based on prices, rates, values, or levels that are not within the control of any party to the relevant contract, agreement, or transaction," and many others. 7 U.S.C. § 1a(19)(i)–(iv).[3]

Applicable here, the definition of an "exempt commodity" is "a commodity that is not an excluded commodity or an agricultural commodity." All three categories of commodities are "commodities" under the broader definition in 1a(9), a definition which includes not just a list of agricultural commodities but also "all other rights, services." The modifier "exempt" in "exempt commodity" reflects that some transactions involving those commodities were, for a time, exempt from certain provisions of the CEA. *See* 7 U.S.C. § 2(h) (2001) ("[N]othing in this chapter shall apply to a contract, agreement, or transaction in an exempt commodity") (repealed 2010); *see also id.* § 2(g) (exempting certain transactions in commodities "other than an agricultural commodity") (repealed 2010). Despite this "exempt" modifier, non-agricultural commodities remain "commodities." *See, e.g.*, *United States v. Futch*, 278 F. App'x 387, 392, 395 (5th Cir. 2008) (affirming conviction for false reporting of natural gas market information

---

[3] These amendments to the CEA introduced multiple specially defined terms such as "exempt" and "excluded" commodity that do not necessarily correspond to their ordinary usages, as commenters noted at the time. *See, e.g.*, Donald L. Horwitz & Richard A. Miller, *Confusion to the Generalists*, 20 No. 10 Futures & Derivatives L. Rep. 2 (2001) (characterizing the Act as "a multi-headed hydra" that "contains an entangled mesh of new terms of art" and expressing "[p]ity" for "the poor generalist who stumbles over CFMA for the first time").

under the CEA, 7 U.S.C. § 13(a)(2), because natural gas is a commodity in interstate commerce under the CEA). Congress's choice in 2000 of the adjective "exempt" does not mean that such commodities are currently "exempt" from the CEA itself or the definition of "commodity."

The structure and history of the CEA show that Congress intended non-agricultural commodities like precious metals to be "commodities" under the CEA.

### C. The CFTC has consistently interpreted "commodity" to include non-agricultural commodities such as precious metals, and that interpretation should be accorded deference.

The CFTC's rules incorporate the CEA's broad definition of commodity to include "exempt" and "excluded" commodities, and the CFTC has consistently interpreted the term "commodity" to include non-agricultural commodities such as precious metals. The CFTC's interpretation of the term commodity to include precious metals is entitled to deference. *See Kisor v. Wilkie*, 588 U.S. 558, 572-80 (2019); *see also Auer v. Robbins*, 519 U.S. 452, 462 (1997). "[T]he power authoritatively to interpret its own regulations is a component of [an] agency's delegated lawmaking powers." *Kisor*, 588 U.S. at 569–70 (quoting *Martin v. Occupational Safety & Health Rev. Comm'n*, 499 U.S. 144, 151 (1991)).

From its inception in 1974, the CFTC has interpreted and applied its rules to encompass a broad definition of the term "commodity," consistent with the broad language of the CEA. For example, in final rules issued on January 21, 1976, the CFTC modified rules previously issued by the Commodity Exchange Authority "to reflect the expanded definition of 'commodity.'" *See* 41 Fed. Reg 3192 (Jan. 21, 1976). The CFTC specifically modified various rules to encompass precious metals, such as reporting requirements for depositories storing metals. *Id.* at 3193 ("Since commodities that are not stored in warehouses (e.g., metals and currencies) are now subject to regulation as a result of the expanded definition of the term 'commodity,' § 1.43 is being amended so as to apply to 'depositories and other similar entities' as well as warehouses.").

The CFTC's definitions in its rules reflect the broad definition of "commodity." For example, CFTC Rule 1.3, 17 C.F.R. § 1.3, defines "agricultural commodity" to not only include the list of enumerated commodities in CEA Section 1a(9), but also "commodity-based indexes based wholly or principally on underlying agricultural commodities." Rule 1.3 also specifically references "exempt" commodities in the context of commodity swaps, defining "utility operations-related swap" applicable to swaps transactions engaged in by utility companies to mean "[t]he swap is related to ***an exempt commodity, as that term is defined in section 1a(20) of the Act***, 7 U.S.C. 1a(20), or to an agricultural commodity insofar as such agricultural commodity is used for fuel for generation of electricity or is otherwise used in the normal operations of the utility special entity." *Id.* (emphasis added). Rule 1.3 also specifically references "excluded" commodities in the context of swaps definitions, limiting the scope of certain definitions to swaps required "to hedge price risks . . . from potential changes in the price of a commodity (other than an excluded commodity)." *Id.*

In addition, when promulgating CFTC Regulation 180.1 (a charge in this case), the CFTC expressly stated that CEA Section 6(c) and Rule 180.1 apply to deceptive devices employed "to sell precious metals to customers as a way for the customers to speculate on the value of such commodities." Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398, 41,401 n.37 (July 14, 2011).

The Court should give deference to the CFTC's reasonable interpretations of the term "commodities" to encompass non-agricultural commodities such as the precious metals at issue in this case.

### D. Courts, including the Fifth Circuit, read the term "commodity" broadly to include non-agricultural products.

Beyond the text and history of the CEA and the Commission's own interpretation, courts have repeatedly held that the definition of "commodity" is not limited to agricultural products. In *CFTC v. Muller*, 570 F.2d 1296, 1298 n.2 (5th Cir. 1978), the Fifth Circuit considered and rejected an almost identical argument that precious metals are not "commodities" because they are not enumerated agricultural commodities. *Muller* involved "London commodity options" which included "hard' commodities, like gold, silver and other metals, traded on the London Metal Exchange." *Id.* at 1298. The defendant in that case argued that the CFTC could "regulate only option transactions involving those agricultural commodities that are explicitly enumerated…" *Id.* The Court rejected this argument, writing:

> [t]he restrictive interpretation urged by [defendant-appellant] is foreclosed by the wording of the Act and its legislative history. Prior to the passage of this Act, the Commodity Exchange Act did apply only to certain agricultural commodities that were specifically enumerated in § 2. It totally banned option transactions in these commodities. The 1974 Act was passed to fill the regulatory gaps in commodities trading. It expanded the definition of "commodity" to include, in addition to those commodities expressly enumerated, "all other goods and articles . . . and all services, rights and interests in which contracts for future delivery are presently or in the future dealt in . . . ." 7 U.S.C.A. § 2. The Act continues the Commodity Exchange Act's ban on all option transactions involving the specifically enumerated agricultural commodities . . . In addition, however, § 6c(b) subjects option transactions in non-enumerated commodities to regulations promulgated by the Commission. ***The Act clearly applies to option transactions in non-enumerated commodities.***

*Id.* at 1298-99 (emphasis added).

Courts in the Fifth Circuit also have addressed the question of whether energy products such as natural gas or propane (i.e., "exempt" commodities under CEA Section 1a(20)) are "commodities" and have resoundingly concluded that they are. For example, in *United States v. Brooks*, 681 F.3d 678 (5th Cir. 2012), the Fifth Circuit held that "natural gas . . . is a 'commodity' within the meaning of the CEA." *Id.* at 696. The Fifth Circuit and district courts within the Fifth

12

Circuit have reached the same conclusion in similar cases. *See, e.g.*, *Futch*, 278 F. App'x at 395 (rejecting argument that natural gas was not a commodity under the CEA); *United States v. Valencia*, 394 F.3d 352, 353 (5th Cir. 2004) (describing natural gas as "a commodity in interstate commerce"); *United States v. Radley*, 659 F. Supp. 2d 803, 810 (S.D. Tex. 2009), *aff'd*, 632 F.3d 177 (5th Cir. 2011) (describing propane as a non-agricultural commodity).

Courts throughout the country have also addressed the question of whether various other goods or articles (such as precious metals) or other rights or services are "commodities" within the scope of the CEA, and all conclude they are. For example:

- **Currencies, interest rates or indexes**:  In *United States v. Wilkinson*, 986 F.3d 740, 745 (7th Cir. 2021), the Seventh Circuit held that futures indexes are "excluded commodities" that are "'commodities' under the Act as a whole." *Wilkinson*, 986 F.3d at 745; *see also CFTC v. Int'l Foreign Currency, Inc.*, 334 F. Supp. 2d 305, 312 (E.D.N.Y. 2004) (rejecting defendants' argument that currency is not a commodity because it is not an agricultural product).

- **Events or occurrences**:  *CFTC v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 29, 38 (D.D.C. 2015) (finding that the "span" of the CEA's definition of commodity covered contracts in gold, crude oil, and currencies as well as contracts covering a result, climate and weather contracts, and economic statistics).

- **Digital Assets / Cryptocurrencies**:  *CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d 492, 498 (D. Mass. 2018) (holding virtual currency "My Big Coin" is a commodity); *CFTC v. McDonnell*, 287 F. Supp. 3d 213, 228 (E.D.N.Y. 2018) (virtual currencies such as bitcoin "fall well-within the common definition of 'commodity' as well as the CEA's definition of 'commodities' as 'all other goods and articles . . . in which contracts for future delivery are presently or in the future dealt in'"); *United States v. Reed*, No. 1:20-cr-500, 2022 WL 597180, at

13

*4 (S.D.N.Y. Feb. 28, 2022) ("[U]nder the plain language of the CEA, cryptocurrencies fall within the definition of commodities.").

- **Precious Metals**: *CFTC v. Am. Bd. of Trade, Inc.*, 473 F. Supp. 1177, 1180 (S.D.N.Y. 1979) ("The options dealt in on the Board pertain to silver bullion, silver coins, gold bullion, platinum, copper, and plywood, and to foreign currencies such as the Swiss franc and the German mark, all of which are commodities encompassed within the statutory definition."); *CFTC v. Baldwin*, No. 1:21-cv-5707, 2025 WL 1047372, at *5 (S.D.N.Y. Apr. 8, 2025) (finding precious metals are commodities, as defined by Section 1a(9) of the Act); *CFTC v. Fisher Cap. LLC*, No. 1:23-cv-3121, 2024 WL 3771781, at *8 (E.D.N.Y. July 12, 2024) (denying motion to dismiss on jurisdictional grounds and finding Section 6(c)(1) of the CEA extends "to the fraud alleged here in connection with the sale of precious metals, which are commodities under the Act"); *CFTC v. US Coin Bullion LLC*, No. 6:20-cv-40, 2021 WL 8946141, at *8 (M.D. Fla. Dec. 29, 2021) (finding precious metals are commodities, as defined by Section 1a(9) of the Act); *CFTC v. Omega Knight 2, LLC*, No. 1:18-cv-22377, 2019 WL 6796128, at *8 (S.D. Fla. Sept. 16, 2019) (same).

There is no shortage of cases where courts treat various non-agricultural goods, articles, rights or services (including precious metals) as "commodities" within the scope of CEA Section 1a. The CFTC is not aware of any courts holding that precious metals are not commodities.

## III.    The Parties will be unable to prepare for trial absent reconsideration and correction of the Court's conclusion that precious metals are not commodities.

The sole charge by the CFTC in this case is commodity fraud in violation of 7 U.S.C. § 9(1) and 17 C.F.R. § 180.1. This section of the CEA and this CFTC Rule together prohibit fraud "in connection with … a contract of sale of any commodity in interstate commerce." The CFTC is not pursuing a claim under any other section of the CEA. Without correction of the

14

Court's July 21, 2025, Order to clarify that precious metals are commodities, it will be

impossible for the parties to prepare for and conduct the rapidly approaching trial in this case.

## IV. The Court's conclusion has the potential to cause confusion outside the scope of this case.

Left unmodified, the Court's ruling on the scope of the definition of "commodity" in

Section 1a(9) has the potential to cause confusion for market participants who rely on a settled

understanding of the regulatory regime applicable to commodities markets that the CFTC has the

responsibility to oversee.[4] One of the CFTC's fundamental responsibilities is the oversight of

commodity derivatives markets in the United States. *See* 7 U.S.C. § 2(a)(1)(A) (outlining the

CFTC's exclusive jurisdiction over certain futures, options and swaps); *see also* 7 U.S.C. § 5

(describing the CFTC's market oversight mandate). There are hundreds of futures, swaps and

options contracts based on non-agricultural commodities, including precious metals such as gold,

silver, platinum and palladium, that trade on CFTC regulated markets daily. Thus, the conclusion

that precious metals such as gold and silver are not "commodities" threatens real-world

regulatory confusion. Moreover, the CFTC's antifraud jurisdiction over non-agricultural

commodity derivatives—and specifically, precious metals derivatives—has been used to curtail

fraud and pursue restitution for victims of fraud for decades, as it has been uncontroversial that

metals are commodities under the CEA.[5] A holding that the CEA no longer provides antifraud

---

[4] Indeed, certain legal commentators have already noted the potential for this decision to undermine the CFTC's authority in certain markets. *See* Daniel N. Budofsky, et al., *Judge Starr's Ruling in Metals.com Case Raises Jurisdictional Questions About CFTC Authority*, Pillsbury https://www.pillsburylaw.com/en/news-and-insights/judge-starr-ruling-jurisdiction-cftc-authority.html (last visited August 4, 2025).

[5] *See, e.g., In re Hunt*, CFTC No. 85-12, 1989 WL 242368 (Dec. 20, 1989) (CFTC decision imposing $10 million fines and permanent trading bans for a notorious silver manipulation scheme in violation of the CEA); *CFTC v. Morse*, 762 F.2d 60 (8th Cir. 1985) (defendant who falsely promised to purchase futures contracts in gold or silver violated the antifraud provisions

enforcement authority over precious metals derivatives could have numerous unintended consequences, including incentivizing fraud and manipulation in commodity markets.

The CEA's definition of commodity has caused confusion in court proceedings before, particularly when certain statutory sections were not the focus of a court's initial read of the statute. For instance, in 2022, a panel of the Second Circuit initially held that benchmark interest rates were not commodities under CEA § 1a(9) because they are intangible and distinct from agricultural commodities like wheat and, thus, must not be commodities. *See Laydon v. Coöperatieve Rabobank U.A.*, Nos. 20-3626(L), 20-3775 (XAP), slip op. at 15-17 (2d Cir. Oct. 18, 2022), *amended and superseded on reh'g*, 55 F.4th 86 (2d Cir. 2022). In that case, as here, the definition of commodity had not been a primary focus of the parties' briefs, and the court had looked solely on CEA § 1a(9) when construing "commodity," without the further context of "agricultural," "exempt," and "excluded" commodities as defined in CEA §§ 1a(19) and 1a(20). On rehearing, after the CFTC filed an amicus brief to clarify that interest rates and benchmark financial indices squarely meet the definition of "excluded commodity" in CEA § 1a(19), the Second Circuit struck its entire discussion about the definition of commodity and decided the

---

of the CEA); *CFTC v. S. Tr. Metals, Inc.*, 894 F.3d 1313 (11th Cir. 2018) (defendants violated antifraud provisions of CEA by misrepresenting to customers that they were investing in physical precious metals when in fact customer money was used to purchase metals derivatives); *CFTC v. Monex Credit Co.*, 931 F.3d 966 (9th Cir. 2019) (precious metals fraud scheme was within the scope of CEA Section 6(c)(1) and CFTC Rule 180.1); *CFTC v. U.S. Metals Depository Co.*, 468 F. Supp. 1149 (S.D.N.Y. 1979) (defendants who sold options on gold and silver engaged in fraud in violation of the CEA by making material misrepresentations to prospective customers); *CFTC v. Am. Metals Exch. Corp.*, 775 F. Supp. 767 (D.N.J. 1991) (defendants who made misrepresentations when selling precious metals futures contracts violated antifraud provisions of the CEA); *CFTC v. IBS, Inc.*, 113 F. Supp. 2d 830 (W.D.N.C. 2000), *aff'd sub nom. CFTC v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187 (4th Cir. 2002) (defendants engaged in fraud in connection with illegal futures contracts on precious metals and other commodities in violation of the CEA); *CFTC v. Fisher Cap. LLC*, 2024 WL 3771781, at *8 (CEA Section 6(c) applies to fraud or manipulation in connection with the sale of precious metals).

case without pausing over whether the transactions concerned commodities under the CEA. 55 F.4th at 86 (striking discussion of CEA § 1a(9)). The CFTC is making a similar request for a revision of this Court's summary judgment opinion in this case to prevent confusion by commodity market participants, and Rule 54(b) provides the Court the flexibility to make this revision.

The Court's order, if not amended, could create legal uncertainty as to the application of other requirements as well. Throughout the CFTC Rules, the concept of "commodity" includes the definition in CEA § 1a(9), as augmented by the definitions of "agricultural," "exempt," and "excluded" commodities. For example, a CFTC rule applicable to bankruptcy proceedings of CFTC registered entities, 17 C.F.R. § 190.00, states that: "(v) The delivery provisions in this part apply to any commodity that is subject to delivery under a commodity contract, as the term commodity is defined in section of 1a(9) of the Act, whether the commodity itself is tangible or intangible, including agricultural commodities as defined in § 1.3 of this chapter, other non-financial commodities (such as metals or energy commodities) covered by the definition of exempt commodity in Section 1a(20) of the Act, and commodities that are financial in nature (such as foreign currencies) covered by the definition of excluded commodity in Section 1a(19) of the Act. The delivery provisions also apply to virtual currencies that are subject to delivery under a commodity contract." This is one example of a CFTC rule employing a broad interpretation of the term "commodity" that encompasses various non-agricultural commodities that fall within the scope of "exempt" or "excluded" commodities.

The Court's conclusion that precious metals are not commodities under the CEA because they are not agricultural could impact the CFTC's ability to fulfill its Congressional mandate to police and protect U.S. commodities markets, not just in precious metals, but other non-

17

agricultural commodities.

**V.    CEA Section 2(c)(2)(D), the "actual delivery" provision in that section, and CEA Section 19, are not at issue in this case, but they do help demonstrate that precious metals are "commodities" under CEA Section 1a.**

The Court should also reconsider and amend the aspect of its July 21, 2025, Order that requires the parties to submit supplemental briefs on the applicability of the "actual delivery" exception in Section 2(c)(2)(D) and the applicability of Section 19. While the Court's order requires that the parties submit supplemental briefs on the applicability of CEA Section 19 (7 U.S.C. § 23) and the "actual delivery" provision in CEA Section 2(c)(2)(D) (7 U.S.C. § 2(c)(2)(D)), it is not necessary to do so. The CFTC is not charging Defendants with violations of either provision. Section 19 applies to types of transactions that are not at issue in this case: margin or leverage accounts and contracts. Similarly, the "actual delivery" provision in Section 2(c)(2)(D) applies to certain leveraged, margined or financed commodity transactions, none of which are at issue here. These provisions are not at issue in this case, although both provisions do help demonstrate that precious metals are "commodities" and support the need for the Court to reconsider that aspect of its July 21, 2025, Order.

**A.  While the "actual delivery" provision is not at issue in this case, the legislative history of this provision makes it clear that precious metals are "commodities" subject to the CEA.**

The "actual delivery" exception is, by its statutory language, limited to Section 2(c)(2)(D), which is not at issue in this case. Section 2(c)(2)(D) applies to "leveraged" retail commodity transactions, a type of trading activity that resembles trading of commodity "futures," which are highly regulated financial instruments subject to the CFTC's exclusive jurisdiction. Due to the similarity of these transaction types, Section 2(c)(2)(D) provides that certain CEA provisions and CFTC regulations apply to leveraged retail commodity transactions "as if" they were commodity futures trades. 7 U.S.C. § 2(c)(2)(D). A broker offering leveraged

retail commodity transactions must register with the Commission, conduct the trading on a registered exchange, and conform to a host of customer and market protections.[6] *Id.* § 2(c)(2)(D)(iii). Section 2(c)(2)(D) contains an exception, however, for transactions in which, unlike most futures trades, the seller makes "actual delivery" of the commodity within 28 days. *Id.* § 2(c)(2)(D)(ii)(III)(aa).

Congress added Section 2(c)(2)(D) to the CEA when it passed the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376, 1732-33 (2010) ("Dodd-Frank"). As explained in hearings leading to the addition of Section 2(c)(2)(D) in 2010, fraudulent futures-like transactions in commodities including precious metals were at the core of the rationale for the addition of this provision to the CEA. *See Hearing to Review Implications of the CFTC v. Zelener Case Before the H. Comm on Agric., Subcomm. on Gen. Farm Commodities and Risk Mgmt.*, 111th Cong. 13-33 (June 4, 2009). For example, Representative Leonard L. Boswell remarked in this hearing that, "[W]e are interested in hearing if this problem had shifted to ***other commodities such as metals or energy products***, as many said it might if Congress merely didn't address the problem." *Id.* (emphasis added). Similarly, Representative Collin C. Peterson remarked, "[W]e need to be aware that similar problems could arise in other product areas like ***metals, energy, or any other commodity*** that can be sold to the public without effective regulation." *Id.* (emphasis added).

---

[6] The CEA has long governed futures trading with important protections for markets and market participants. For example, futures must be traded on regulated exchanges, 7 U.S.C. § 6a(1), and those exchanges must meet standards and requirements for market-abuse prevention, *id.* § 7(d)(12), financial stability, *id.* § 7(d)(21), cybersecurity, 17 C.F.R. § 38.1051, and disaster recovery, *id*. A commodity broker (called a "futures commission merchant") must establish safeguards to prevent conflicts of interest, 7 U.S.C. § 6d(c), segregate customer assets to protect them from the risk of the broker's bankruptcy, *id.* § 6d(a)(2), and employ only salespeople that register with the CFTC and meet strict proficiency requirements, *id.* § 6k(1).

Following the passage of the Dodd-Frank Act, the CFTC issued an interpretation of the term "actual delivery" describing the history of this particular provision. *See* Retail Commodity Transactions Under CEA, 76 Fed. Reg. 77,670 (Dec. 14, 2011). As noted in this interpretation, in the lead up to passage by Congress, Senator Blanche Lincoln noted that the provision was designed to apply to "***other commodities such as energy and metals***." *Id.* (emphasis added).

The bottom line is that while Section 2(c)(2)(D) and the "actual delivery" provision in that section have no application to this case, the language and legislative history of that provision confirm that precious metals must be "commodities" within Section 1a. The Court should reject the Defendants' assertion that the "actual delivery" exception somehow applies to this case, when there are no allegations in the Complaint under Section 2(c)(2)(D). The complaint does not allege that the fraudulent metals sales were conducted "on a leveraged or margined basis, or financed by the offeror," and it does not bring charges predicated on the applicability of Section 2(c)(2)(D). Because this mandatory aspect of Section 2(c)(2)(D) is not part of the alleged facts or asserted claims, this statutory subsection is simply not part of this case. *See also CFTC v. Red Rock Secured, LLC*, No. 2:23-cv-03680, 2023 WL 6173480, at *3 (C.D. Cal. Aug. 18, 2023) (denying defendants' motion to dismiss CEA claim on the basis that Section 2(c)(2)(D) in some way limited Section 6(c)(1)); *see also CFTC v. Scott*, No. 3:18-cv-05802, 2019 WL 461125, at *3 (W.D. Wash. Feb. 6, 2019) (rejecting this argument and explaining that "[t]he Court agrees with the CFTC that [the defendant's] argument is erroneously premised on the idea that the CFTC is limited to its areas of exclusive jurisdiction").

**B. The "actual delivery" provision in Section 2(c)(2)(D) is limited to that section and does not extend to other sections of the CEA.**

Congress notably did not include an "actual delivery" exception in the text of Section 6(c)(1), and such an exception should not be read into that section of the CEA. Moreover,

Congress expressly confined the application of Section 2(c)(2)(D)'s "actual delivery" exception to Section 2(c)(2)(D) itself, by providing that "*this subparagraph* shall apply to" a commodity transaction entered into with a non-eligible contract participant[7] on a leveraged, margined, or financed basis, and that "[*t*]*his subparagraph* shall not apply to" contracts resulting in actual delivery within 28 days. 7 U.S.C. § 2(c)(2)(D)(i)-(ii) (emphasis added). By specifying that statutory language pertains to one particular subsection, Congress demonstrates that it did not intend for it to apply to other sections of the Act. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 493 (1987) (holding that a statute's language providing "[n]othing *in this section*" did not indicate that the language had effect on "other provisions of the Act"); *see also Loa-Herrera v. Trominski*, 231 F.3d 984, 991 (5th Cir. 2000); *Fatt Katt Enters. v. Rigsby Constr., Inc.*, 762 F. App'x 746, 749 (11th Cir. 2019); *Bank of Am. v. City & Cty. of San Francisco*, 309 F.3d 551, 565 (9th Cir. 2002). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Arif v. Mukasey*, 509 F.3d 677, 681 (5th Cir. 2007). Indeed, Congress knew how to include an exception for "actual delivery," and did so both in Section 2(c)(2)(D) and another subsection, Section 2(c)(2)(C),[8] but not CEA Section 6(c)(1).

　　Other courts have rejected the argument that the "actual delivery" exception in Section

---

[7] Eligible contract participants "are the equivalent of 'accredited investors' in securities markets: wealthy persons who can look out for themselves directly or by hiring experts." *CFTC v. Zelener*, 373 F.3d 861, 862 (7th Cir. 2004); *see also* 7 U.S.C. § 1a(18).

[8] CEA Section 2(c)(2)(C) is structured quite similarly to Section 2(c)(2)(D). It applies to leveraged, margined, or financed transactions in foreign currency entered into with non-eligible contract participants, and contains an "actual delivery" exception to the applicability of that subparagraph (i.e., subparagraph 2(c)(2)(C)) for transactions in which the foreign currency is actually delivered in 2 days.

2(c)(2)(D) applies to Section 6(c)(1), holding "[b]y its terms, § 6(c)(1) applies *broadly* to commodities in interstate commerce." *CFTC v. Monex Credit Co.*, 931 F.3d 966, 977 (9th Cir. 2019) (emphasis added). "When someone violates § 6(c)(1), the CFTC can bring an enforcement action." *Id*. (citing 7 U.S.C. § 13a-1(a)). This is so regardless of whether actual delivery occurred within 28 days of the sale. The argument that that the Section 2(c)(2)(D) "actual delivery" exception must apply to CEA Section 6(c)(1) based on a presumption that "the CFTC's enforcement jurisdiction comes only from CEA § 2" is erroneous and should be rejected. *Monex Credit Co.*, 931 F.3d at 976.

Both statutory provisions may apply to contracts of sale of commodities, but in different contexts. Section 2(c)(2)(D) was not charged in this case, and its "actual delivery" exception does not apply to the statutory provision at issue in this case, Section 6(c)(1), codified at 7 U.S.C. § 9(1).

### C. CEA Section 19 "Leverage Contracts" are not at issue in this case, but the explicit reference to gold, silver and platinum in that section makes it clear that precious metals are "commodities" subject to the CEA.

Section 19 of the CEA, 7 U.S.C. § 23, is not at issue in this case. The CFTC is not pursuing a claim under Section 19 because this case does not involve "margin accounts or contracts" or "leverage accounts or contracts" within the scope of that section. Section 19 applies to a distinct type of leveraged precious metals contract that is "standardized," and lasts longer than ten years. Courts that have considered the scope of this Section have found it to be limited to standardized contracts of longer than a ten-year duration. *See, e.g.*, *CFTC v. Am. Precious Metals, LLC*, 845 F. Supp. 2d 1279, 1282, 1287 (S.D. Fla. 2011) (finding that leveraged precious metals transactions of less than ten-year duration were not "leverage contracts"); *CFTC v. 20/20 Trading Co.*, No. 8:11-cv-643, 2011 WL 2221177, at *7 (C.D. Cal. June 7, 2011) (finding that precious metals contracts were not "leverage contracts" because "there is no evidence that the contracts in question were standardized, that the contracts were for longer than 10 years, or that

customers were required to maintain margin payments").

Clearly, precious metals such as gold and silver (including gold and silver coins) are "commodities" subject to the CEA given that they are explicitly referenced in CEA Section 19 and the CFTC's rules on these types of leveraged precious metals transactions. But this case does not involve these types of leveraged precious metals transactions, and the CFTC is not pursuing a claim under CEA Section 19.

### D. The CFTC has charged Defendants with violating CEA Section 6(c)(1) and CFTC Rule 180.1, which broadly prohibit fraud in connection with commodity transactions (including precious metals transactions) in interstate commerce.

Section 6(c)(1) of the CEA, codified at 7 U.S.C. § 9(1), is a broad anti-fraud and anti-manipulation provision added by Section 753 of the Dodd-Frank Act. *See* 124 Stat. 1376 at 1750. It prohibits, among other things, the use of "any manipulative or deceptive device or contrivance" in connection with certain instruments under the CFTC's exclusive jurisdiction, such as "any swap" or "contract of sale . . . for future delivery," commonly known as "futures contracts" or simply "futures." In addition, and relevant here, CEA Section 6(c)(1) prohibits "any manipulative or deceptive device or contrivance" in connection with "***a contract of sale of any commodity*** in interstate commerce." 7 U.S.C. § 9(1) (emphasis added). Congress modeled CEA Section 6(c)(1) after Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), the well-known anti-fraud statute, which empowers the Securities and Exchange Commission ("SEC") to prosecute fraud.

Congress instructed the CFTC to promulgate "rules and regulations" to implement CEA Section 6(c)(1), which the CFTC did in Rule 180.1. The CFTC modeled Rule 180.1 on SEC Rule 10b-5. *See* Prohibition on the Employment, or Attempted Employment, of Manipulative and Deceptive Devices and Prohibition on Price Manipulation, 76 Fed. Reg. 41,398, 41,399 (July 14, 2011), because their respective enabling statutes are in relevant part "virtually identical," with

23

each including a broad "catchall" prohibition against fraudulent acts. *Id*. (citing *Chiarella v. United States*, 445 U.S. 222, 226 (1980)).

Contrary to Defendants' assertions, the CFTC's jurisdiction to prosecute fraud under Section 6(c)(1) and Regulation 180.1 is not limited to futures contracts. *See* Defs.' Mot. at n.1. The fact that the metals contracts at issue were not futures contracts does not "provide an independent reason that the CFTC does not have jurisdiction." *Id.* As other courts have recognized, "[o]n its face, the Act and Regulation 180.1 extend the CFTC's enforcement authority over manipulation and fraud in connection with any 'contract of sale of any commodity in interstate commerce'" and "would extend to the fraud alleged here in connection with the sale of precious metals, which are commodities under the Act." *See CFTC v. Fisher Cap. LLC,* 2024 WL 3771781, at *8 (internal citations omitted); *cf. CFTC v. Monex Credit Co.*, 931 F.3d at 977 (noting, without deciding, that "[b]y its terms, § 6(c)(1) applies broadly to commodities in interstate commerce").

Nor does the CFTC's assertion of its authority to prosecute fraud in retail sales of commodities represent an "about face" or regulatory overreach. Defendants rely on a CFTC Letter published in 1996 to support its contention that the CFTC has unfairly changed its position on its authority to police fraudulent sales of gold sales or bullion. But that letter was issued prior to passage of the Dodd-Frank Act in 2010—which amended the CEA by adding Section 6(c)(1) to the CEA, among other provisions, expanding the CFTC's jurisdiction. A statement by the CFTC about the scope of its prosecutorial authority in 1996 (nearly 15 years before the passage of Dodd-Frank) provides absolutely no guidance regarding the scope of Section 6(c)(1)).

The CFTC has consistently brought enforcement actions under CEA Section 6(c)(1) and Rule 180.1 in a wide variety of fraud cases, including complaints alleging that defendants:

engaged in fraudulent sales of precious metals, *e.g., CFTC v. Red Rock Secured, LLC*, 2023 WL 6173480; *CFTC v. Safeguard Metals LLC*, No. 2:22-cv-00691 (C.D. Cal. Feb. 1, 2022); *CFTC v. Royal Metals Grp., LLC*, No. 1:18-cv-8407, 2019 WL 1996307, at *6 (S.D.N.Y. Jan. 25, 2019) (default judgment); *CFTC v. Rust Rare Coin Inc.*, No. 2:18-cv-892 (D. Utah Nov. 13, 2018); *CFTC v. Scott*, 2019 WL 461125; fraudulently offered the sale of virtual currency, cryptocurrency, or digital asset commodities, *e.g.*, *CFTC v. My Big Coin Pay, Inc.*, 334 F. Supp. 3d at 494; *CFTC v. McDonnell*, 332 F. Supp. 3d 641, 651-52 (E.D.N.Y. 2018); and intentionally deceived the market as to the supply and demand for wheat futures and cash wheat, *CFTC v. Kraft Foods Grp., Inc.*, 153 F. Supp. 3d 996, 1011 (N.D. Ill. 2015).

## VI.    Conclusion

The CFTC respectfully requests that the Court deny Defendants' motion to reconsider and instead grant the CFTC's cross-motion for reconsideration. Specifically, the CFTC asks that the Court strike the conclusion in its July 21, 2025, Order that the term "commodity" is limited to agricultural commodities and instead conclude that precious metals are commodities within the scope of the CEA. In the alternative, the CFTC requests that the Court either (1) certify the issue of whether precious metals are commodities under CEA Section 1a for immediate appeal pursuant to 28 U.S.C. § 1292(b) and stay the case pending a decision by the Fifth Circuit Court of Appeals; or (2) enter a final judgment dismissing this case so that the CFTC can appeal this issue immediately.

Dated:  August 28, 2025                                    Respectfully submitted,

By: /s/ Timothy J. Mulreany

TIMOTHY J. MULREANY, *pro hac vice*
Chief Trial Attorney
tmulreany@cftc.gov
Maryland Bar No. 8812160123

DANIELLE KARST, *pro hac vice*
Chief Trial Attorney
dkarst@cftc.gov
D.C. Bar No. 481881

SARAH WASTLER, *pro hac vice*
Trial Attorney
swastler@cftc.gov
D.C. Bar No. 944534

Attorneys for Plaintiff
COMMODITY FUTURES
TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C.  20581-0001
Phone:  (202) 418-5000
Fax:  (202) 418-5521

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that Plaintiff CFTC's counsel conferred with the below individuals and reports the following to the Court:

(1) Chris Davis and Angela Brown, counsel for Defendant Lucas Asher and Simon Batashvili by email on August 8 and August 28, 2025, who advised that Defendants Asher and Batashvili oppose the CFTC's Response in Opposition and Cross-Motion for Reconsideration;

(2) Plaintiff States by telephone on August 25 and 28, 2025, who advised that Plaintiff States join in the CFTC's Response in Opposition and Cross-Motion for Reconsideration and requested relief; and,

(3) Counsel for the Receiver via email on August 28, 2028, who advised that the Receiver concurs in the CFTC's Response in Opposition and Cross-Motion for Reconsideration.

/s/ Timothy J. Mulreany
Timothy J. Mulreany

## <u>CERTIFICATE OF SERVICE</u>

On August 28, 2025, I electronically filed the foregoing CFTC's Response in Opposition to Defendants Asher and Batashvili's Motion to Reconsider Summary Judgment Order and Cross-Motion for Reconsideration, in the above-captioned matter using the CM/ECF system, and I am relying upon the transmission of the Clerk's Notice of Electronic Filing for service upon all parties in this litigation.

<u>/s/ Timothy J. Mulreany</u>
Timothy J. Mulreany