IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> TIME, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, <br><br> Defendants, <br><br> TOWER EQUITY, LLC, <br><br> Relief Defendant. | § § § § § § § § § § § § § § § § § § § § § | Case No. 3:20-CV-2910-X |

**DEFENDANT SIMON BATASHVILI'S MOTION FOR
<u>RELEASE OF FUNDS FOR CRIMINAL DEFENSE</u>**

TO THE HONORABLE BRANTLEY STARR:

Defendant Simon Batashvili ("Mr. Batashvili") respectfully submits this Motion for Release of Funds for his Criminal Defense ("Motion"), asking the Court to order the release of any untainted assets currently frozen in this civil case to pay for counsel of his choice to defend himself in the recently indicted parallel criminal case before this Court, *United States v. Simon Batashvili*, Case No. 3:25-CR-343-X ("*United States v. Batashvili*" or the "criminal case"). The continued freeze of Mr. Batashvili's assets would violate his constitutional rights under the Sixth Amendment and foreclose his ability to pay retained counsel of choice for his defense in that criminal case. Since he is now indicted, his Sixth Amendment right to counsel entitles Mr. Batashvili to the

release of assets that are untainted by the charged conduct. He now moves the Court for that release.

I. **PROCEDURAL BACKGROUND**

    a. ***Commodity Futures Trading Commission v. TMTE, Inc.***

On September 22, 2020, the Commodity Futures Trading Commission (the "CFTC" or "Commission") filed its complaint against Mr. Batashvili and his codefendants, alleging violations of Section 6(c)(1) of the Commodity Exchange Act (the "CEA"), codified as 7 U.S.C. § 9(1). ECF No. 2. The CFTC's complaint alleges that starting on September 1, 2017, Mr. Batashvili and others engaged in a scheme to defraud purchasers of precious metals from metals.com and related entities. *Id.* Mr. Batashvili has consistently denied the CFTC's claims.

At the outset of its case, the CFTC secured extraordinary injunctive relief against Mr. Batashvili and his codefendants. ECF No. 16 (the "Restraining Order"). Those injunctive remedies, entered now over five years ago based only on the CFTC's *ex parte* allegations of fraud, include appointing a receiver over all of the charged entities and their business operations, immediately and permanently shutting those businesses down; locking Mr. Batashvili and his codefendants out of their then-ongoing businesses and handing them over to the exclusive control of the receiver; cutting off the defendants' access to their bank and brokerage accounts; taking physical property from the defendants and family members; giving the receiver possession of the defendants' physical assets and financial accounts; and entering a comprehensive asset freeze against Mr. Batashvili and his codefendants. *Id.* at 14.[1]

---

[1] The post-complaint trajectory of this case shows that the extraordinary *ex parte* injunctive relief obtained by the CFTC is now questionable at best. Before its transfer to this Court, the Honorable Sam A. Lindsay entered the Restraining Order against the defendants on the grounds that the CFTC had shown a "substantial likelihood of success on the merits," the necessary showing for the extreme relief granted. *See, e.g., Clarke v. CFTC,* 74 F.4th 627, 640 (5th Cir. 2023) (citing *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017) (per curiam)). It is now plain that the CFTC did not meet this standard, calling into question the providence of those injunctive remedies.

On October 14, 2020, the Court entered a Consent Order of Preliminary Injunction against Mr. Batashvili and his codefendants (the "Consent Order"). ECF No. 165.[2] The Consent Order effectively extended the terms of the Restraining Order. *Id.* at 10. In doing so, it continued to prevent Mr. Batashvili from withdrawing, transferring, removing, dissipating, or disposing of any funds, assets, or other property subject to the 2020 asset freeze. *Id.* at 10-11. It includes no carve-outs for the use of assets to pay for defense counsel in that case—all post-Complaint compensation or passive income of any kind was subject to the restrictions of the Consent Order and could be used only for "Defendants Asher's and Batashvili's agreed-to reasonable living expenses…" *Id.* at 16. Additionally, the Consent Order maintained the freeze over all of Mr. Batashvili's assets, regardless of when they were obtained, including "existing funds, assets, or other property, and funds, assets, or other property acquired after the effective date of [the Consent Order]." *Id.* at 11. In other words, the Consent Order prevented Mr. Batashvili from obtaining new, unrelated funds and using them for his defense in that case or for his criminal defense now—with limited, specified exceptions, anything he obtained belonged to the receiver.[3]

One of the accounts frozen pursuant to the Restraining Order and subsequent Consent Order is the Chase Metals, LLC ("Chase Metals") OneWest Bank account ending in *9387. Mr. Batashvili is an owner of Chase Metals (subsequently TMTE, Inc.), the former operator of metals.com, an online company that sold hundreds of retail precious metal products. ECF No. 232 at 11. Metals.com is the central company at issue in both this case and the parallel criminal case in which Mr. Batashvili is charged.

---

[2] Judge Lindsay entered the Consent Order. *Id.*
[3] This Court later modified the preliminary injunction and related equitable relief to allow the defendants to use "new income," as defined in the Consent Order, to pay their attorneys in the CFTC case. *See* ECF No. 549 at 7. The injunction and asset freeze otherwise remain in effect through trial. *Id.* at 6-7.

The August 2017 statement for account *9387, attached to this motion as **Exhibit 1**, shows a balance of $1,948,037.41 as of August 31, 2017. The conduct charged in both the CFTC complaint and indictment is alleged to have begun after that, specifically, on September 1 or otherwise in September 2017.[4] The deposit of these funds in this account predates the alleged fraud, *i.e.,* the funds are untainted. Further, it is believed that additional assets, such as college savings accounts with funds from third parties that are wholly unconnected to the CFTC allegations, were and remain frozen pursuant to the Consent Order. Consequently, assets that are untainted by the alleged fraud have been frozen for over five years.

In a civil regulatory case, this is a permissible practice, provided that the case in which the assets are frozen is properly before the Court. That exact question is before the Court now, namely, whether the CFTC has the authority to regulate precious metals in the first place, and so the authority to sue Mr. Batashvili and his codefendants. ECF Nos. 911, 929, 930, 934, 937, and 938. If the answer is "no," then the complaint and all injunctive relief flowing from it, including the instant asset freeze, must necessarily fall as a matter of law—if the complainant and applicant for injunctive relief lack the authority to seek that relief, then it follows that the applied-for relief equally cannot stand.

This is noteworthy because this Court has already found that the precious metals on which this case is based are not commodities under section 1 of the CEA. In a detailed analysis, the Court reasoned that, "section 1 does not encompass precious metals as commodities because they are neither agricultural products nor movie tickets." ECF No. 911 at 9; *see also* Order on Motions for

---

[4] The CFTC complaint limits the relevant period to "[f]rom at least September 1, 2017 through the present." ECF No. 2 at ¶ 1. The superseding indictment similarly limits the relevant period to "[f]rom at least as early as September 1, 2017, through in or around September 2020," "[b]etween approximately September 2017 and September 2020," or "[f]rom in or about September 2017 through in or about September 2020." *See United States v. Batashvili*, Case No. 3:25-CR-343-X, at ECF No. 26 at ¶¶ 1, 12, and 41.

Reconsideration, ECF No. 938 at 1 ("When ruling on the dueling summary judgment motions, the Court held that the [CFTC] lacks authority to regulate precious metals under section 1 of the [CEA] based on the record the CFTC presented.").

Although the Court found the CFTC lacked authority to regulate precious metals under section 1, it allowed for the possibility that authority had been conferred by section 19 of the CEA and ordered additional briefing. ECF No. 911 at 9-10. In its subsequent briefing, however, the CFTC acknowledged that its case does not sound in section 19: "Section 19 of the CEA…is not at issue in this case. The CFTC is not pursuing a claim under Section 19…" ECF No. 934 at 22.[5]

After the parties filed subsequent motions for reconsideration (ECF Nos. 929 and 930) that the Court granted and denied in part (ECF No. 938), it vacated the trial date and ordered additional summary judgment briefing. *Id.* That briefing is ongoing. However, regardless of the arguments made and resulting orders, it is now clear that the CFTC may very well have ***no likelihood*** of success on the merits, and it certainly has not shown a "substantial likelihood of success on the merits." *Clarke v. CFTC*, 74 F.4th 627, 640 (5th Cir. 2023) (citing *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017) (per curiam)). Consequently, the CFTC is well short of the appropriately high standard to freeze Mr. Batashvili's assets, and any distributions made to alleged victims to date are also called into question.[6]

---

[5] The CFTC would salvage its case by having the Court reconsider its findings that the Commission lacks the necessary regulatory authority under section 1 to sue Mr. Batashvili and his codefendants and charting, untenable as it is, section 19 as the CFTC's only path forward. *Id.* at 1-13. The CFTC admits that it cannot trod that path. *See* ECF No. 934 at 22.

[6] The CFTC's flagging "substantial likelihood of success on the merits" is corroborated by the Court's analysis of the state law fraud claims. In denying the motions for summary judgment, the Court found that, "Based on the statements in the record, a reasonable juror could find that Individual Defendants provided investment advice and committed fraud through their statements to customers. But a reasonable juror could also determine these statements were mere puffery and did not constitute investment advice. Therefore, all the claims based on allegations of fraud or investment advice should continue to trial." ECF No. 911 at 14-15. Although the Court's analysis focused on the states' fraud claims against the defendants, the statements in question also go directly to the CFTC's commodities fraud claim against them.

Notwithstanding the legality of the CFTC's asset freeze (and that its case may ultimately be dismissed in its entirety), Mr. Batashvili now moves under *Luis v. United States* for the release of untainted assets subject to that asset freeze. These assets are necessary for Mr. Batashvili to pay counsel of his choice in the parallel criminal case before this Court, and therefore to protect his Sixth Amendment right to counsel. These assets include, but are not limited to, the funds being held in the Chase Metals OneWest Bank account ending in *9387. This is a right he is afforded under the United States Constitution.

### b. *United States v. Simon Batashvili,* Case No. 3:25-CR-343-X

On July 22, 2025, Mr. Batashvili was charged in the Northern District of Texas ("NDTX"), Dallas Division, with two counts of mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1341 and 2, and one count of wire fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1343 and 2. *See United States v. Batashvili*, ECF No. 1. The grand jury returned a superseding indictment on September 23, 2025, adding a single count of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(ii). *Id.* at ECF No. 26 at ¶¶ 46-47. The scheme is alleged to have begun in or about September 2017. *Id.* at ¶ 41. The criminal case is before this Court (*id.* at ECF No. 10), and its underlying facts are the same facts on which the CFTC's case is based.

After his indictment, Mr. Batashvili hired undersigned counsel to defend him in the criminal case.[7] The allegations against Mr. Batashvili are complex—the scheme is alleged to have occurred over the course of three years, involved at least three different companies, 1,350 alleged victims, and approximately 8,000 transactions. *Id.* at ECF No. 25 at ¶ 2. Discovery also is voluminous, comprised of an estimated eight terabytes of data to date. *Id.* at ¶ 6. Mr. Batashvili's legal defense will be costly based on the facts and circumstances known to counsel at this time.

---

[7] While a jury trial is set for November 3, 2025, the government filed an unopposed motion requesting that the case be designated as complex and the trial date continued. *Id.* at ECF No. 25.

Without access to funds and assets that have been under an asset freeze for more than five years, Mr. Batashvili will be unable to afford his retained counsel of choice to represent him throughout the entirety of his defense. Now that he has been indicted, the asset freeze ordered in the CFTC case deprives Mr. Batashvili of his Sixth Amendment right to counsel. He asks that any untainted assets be immediately released.

## II.     ARGUMENT

The Sixth Amendment entitles Mr. Batashvili to the release of untainted assets to pay for counsel in his criminal defense. The law on this issue is clear: the Sixth Amendment guarantees a criminal defendant the right to be represented by qualified counsel of his choosing that he can afford to hire. *See, e.g., United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006). Nor can this right be curtailed by the pretrial restraint of untainted assets that are necessary to effectuate that choice. *Luis v. United States*, 578 U.S. 5, 10 (2016). Otherwise, the right to counsel of choice would amount to choice in word only and be without meaning. To do so would violate both Mr. Batashvili's Fifth and Sixth Amendments rights and result in fundamental error.

Further, the CFTC is unlikely to prevail on the merits of this case or, at a minimum, has not shown the substantial likelihood of success on the merits required for the continued restraint of Mr. Batashvili's assets before trial. Consequently, case law instructs that to ensure that Mr. Batashvili receives these Sixth Amendment protections, the Court should be more permissive in granting the release of untainted assets to enable him to pay for defense counsel in the related criminal case.

Mr. Batashvili therefore respectfully requests that the Court protect his rights under the Constitution and release untainted assets frozen in this matter so that he may be represented by counsel of his choosing in defending himself in the criminal case pending against him.

### a. **If the CFTC Cannot Succeed on the Merits of its Case, Frozen Assets Should be Released**.

In determining whether to release frozen assets for attorneys' fees in a civil case, courts consider whether the plaintiff has shown a likelihood that they will prevail on the merits. *See SEC v. Lee*, 2019 WL 4934181, at *5 (S.D. Cal. Oct. 7, 2019); *SEC v. Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d 427 at 430 (S.D.N.Y. 2001) (court modified preliminary injunction to release frozen assets for attorneys' fees because "the inference upon which the freeze was granted may not be supported by the necessary quantum of proof"). When a defendant seeks to unfreeze assets to pay for attorneys' fees in a criminal case, the Sixth Amendment right to counsel of choice requires courts to be more permissive in unfreezing assets. *SEC v. Santillo*, 2018 WL 3392881, at *5 (S.D.N.Y. July 11, 2018).

As discussed above, the parties in the CFTC matter are currently briefing whether the case against Mr. Batashvili and others may go forward, *i.e.*, whether the CFTC has the statutory authority to regulate precious metals, which this Court has questioned. If the Court decides in the defense's favor, the CFTC's claims are likely be dismissed and there will be no basis for the asset seizures in the first place. *Lee*, 2019 WL 4934181, at *6; *Duclaud Gonzalez de Castilla*, 170 F. Supp. 2d at 430. With this in mind, and considering Mr. Batashvili's constitutional right to unfreeze assets necessary to pay for attorneys' fees in this indicted case, he requests that the Court exercise its discretion, and be more permissive, in favor of unfreezing assets for his defense. *Santillo*, 2018 WL 3392881, at *5. That permissiveness is warranted by the dubious likelihood of success of the CFTC's underlying case and advocates for the Court's deference in favor of the release of assets when deference is appropriate.

### b. Mr. Batashvili's Sixth Amendment Right to Counsel of Choice.

"[T]he Sixth Amendment guarantees a [criminal] defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire." *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) ("The Sixth Amendment provides that '[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defen[s]e.'"). In 2006, the Supreme Court held in *Gonzalez-Lopez* that the denial of a criminal defendant's right to counsel of choice mandates the reversal of his criminal conviction. 548 U.S. at 146-151. Writing for the Court, Justice Scalia emphasized, "The right to counsel of choice . . . commands not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id.* at 140 (citing *Crawford v. Washington*, 541 U.S. 36, 61 (2004)).

The Court further noted that the deprivation of the right to counsel of a defendant's choice creates "consequences that are necessarily unquantifiable and indeterminate," impacting "the framework with which the trial proceeds." *Id.* (citing *Sullivan v. Louisiana*, 508 U.S. 275, 282 (1993)). It follows that the right to a fair opportunity to secure counsel of a defendant's choosing is a fundamental one. *Powell v. Alabama*, 287 U.S. 45, 53 (1932).

As a criminal defendant, Mr. Batashvili is guaranteed the right to be represented by a qualified attorney of his choice whom he can afford to hire.

### c. Pretrial Restraint of Mr. Batashvili's Legitimate, Untainted Assets Needed to Retain Counsel of Choice Violates his Sixth Amendment Rights.

In 2016—a decade after the decision in *Gonzalez-Lopez*—the Supreme Court in *Luis v. United States* addressed "[w]hether the pretrial restraint of a criminal defendant's legitimate, untainted assets . . . needed to retain counsel of choice violates the Fifth and Sixth Amendments."

578 U.S. at 10. Luis was charged "with paying kickbacks, conspiring to commit fraud, and engaging in other crimes all related to health care." *Id.* at 9. The government claimed that she "had fraudulently obtained close to $45 million, almost all of which she had already spent." *Id.*

Hoping to preserve the remaining $2 million for restitution and criminal forfeiture, the court issued on the government's motion an order prohibiting Luis from utilizing these assets. *Id.* Both the government and Luis agreed that such an order prevented her from "using her own untainted funds, *i.e.*, funds not connected with the crime, to hire counsel to defend her in her criminal case." *Id.*

The Supreme Court held this deprivation to be error and reversed, finding that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment." *Id.* at 10. In coming to this conclusion, the Court considered three factors: (1) whether the seized funds are tainted (traceable to a crime) or untainted (owned by the defendant free and clear);[8] (2) whether the funds were impermissibly restrained by the government; and (3) the defendant's need for the funds. *Id.* at 12-17.

To determine whether funds are tainted, a court looks at the ownership of the funds. *Id.* at 12. The question is simply whether the defendant owns the property "pure and simple." *Id.* For example, a robber's loot belongs to the victim, not the defendant. *Id.* at 13 (citing *Telegraph Co. v. Davenport*, 97 U.S. 369, 372 (1878)). Likewise, cocaine is contraband, considered forfeitable to the government wherever found. *Luis,* 578 U.S. at 13 (citing 21 U.S.C. § 881(a)). By contrast, cash

---

[8] A defendant has no right to access the proceeds of his alleged fraud even if the funds are necessary to obtain counsel of his choice. *United States v. Monsanto*, 491 U.S. 600, 615 (1989); *see also Caplin & Drysdale*, 491 U.S. at 626 ("A defendant has no Sixth Amendment right to spend another person's money for services rendered by an attorney, even if those funds are the only way that defendant will be able to retain the attorney of his choice."). For example, "a robbery suspect . . . has no Sixth Amendment right to use funds he has stolen from a bank to retain an attorney to defend him if he is apprehended. The money, though in his possession, is not rightfully his . . . ." *Id.*

owned by a defendant before the planning or commission of the crime is owned by that defendant, free and clear of any interest by the government or a victim. *Luis,* 578 U.S. at 17. Writing for the majority, Justice Bryer noted the importance of the ownership consideration, stating that a "line distinguishes between a criminal defendant's (1) tainted funds and (2) innocent funds needed to pay for counsel." *Id.* at 22. "[This distinction] is . . . an important one, not a technicality. It is the difference between what is yours and what is mine." *Id.* at 16.

In arguing for a blanket asset freeze, the government sought to restrain untainted funds because of its "contingent interest in securing its punishment of choice (namely, criminal forfeiture) as well as the victims' interest in securing restitution (notably, from funds belonging to the defendant, not the victims)." *Id.* at 19. The Court concluded that while the interests in obtaining payment of a criminal forfeiture or restitution are important, they do not enjoy constitutional protection and "lie somewhat further from the heart of a fair, effective criminal justice system." *Id.* Further, the Court found no decision authorizing the "unfettered, pretrial forfeiture of the defendant's own 'innocent' property—property with no connection to the charged crime." *Id.* at 20. Thus, the seizure of any untainted assets to protect the government's and victims' interests was found to be impermissible. *Id.* at 19-22.

In support of its holding that "the pretrial restraint of legitimate, untainted assets needed to retain counsel of choice violates the Sixth Amendment," the Court noted "the constitutional line we have drawn should prove workable. That line distinguishes between a criminal defendant's (1) tainted funds and (2) innocent funds needed to pay for counsel." *Id.* at 10, 22. *Luis* makes plain that above all other considerations, the constitutionally-rooted right of a defendant to be represented by counsel of his choosing is paramount.

The continued pretrial restraint of Mr. Batashvili's legitimate, untainted assets needed to retain counsel of choice violates his Fifth and Sixth Amendments. As discussed below, this is true even when the funds are restrained in a civil matter but needed to hire counsel in a corresponding criminal case. Those funds must therefore be released from the asset freeze order.

> d. **<u>Restraint of Mr. Batashvili's Legitimate, Untainted Assets in the CFTC Case Violates his Sixth Amendment Rights Because the Assets are Needed to Retain Counsel of his Choice for his Criminal Defense</u>.**

Post-*Luis*, courts across the country have considered whether the restraint of legitimate, untainted assets in a civil or regulatory matter violates the Sixth Amendment when those funds are needed to retain counsel in a companion criminal case. And they have come to a logical and simple answer: This restraint violates the Sixth Amendment. *See CFTC v. Rust Rare Coin Inc.*, 2019 WL 7562424, at *3 (D. Utah April 4, 2019) (court must modify a receivership order, releasing untainted frozen assets, if an indicted defendant with Sixth Amendment protections needs the funds to secure counsel of his choosing); *United States v. Price*, 2018 WL 4927269, at *2 (W.D. Va. Oct. 11, 2018) (*Luis* allows for the release of untainted funds frozen in a civil case to be used for attorneys' fees in a criminal matter in order to protect a criminal defendant's Sixth Amendment rights); *SEC v. Abdallah*, 2017 WL 11680996, at *4 (N.D. Ohio March 24, 2017) (a defendant is entitled access to untainted funds frozen in a civil matter to pay for representation in a companion criminal case to guarantee Sixth Amendment protections).

Defendants have also regularly sought to lift civil asset freezes—both pre- and post-*Luis*—for the purposes of securing funds to pay for legal representation in corresponding criminal matters. "[W]hen a defendant seeks to lift a civil asset freeze to obtain funds for payment of legal fees in a companion criminal case, the court should pay particular attention to the interests of the defendant under the Sixth Amendment in obtaining sufficient funds to retain the counsel of his . .

. choice." *Abdallah*, 2017 WL 11680996, at *4 (citing *SEC v. McGinn*, 2012 WL 1142516, at *2 (N.D.N.Y. Apr. 4, 2012); *SEC v. FTC Capital Markets, Inc.*, 2010 WL 2652405, at *7; *SEC v. Coates*, 1994 WL 455558, at *3 (S.D.N.Y. Aug. 23, 1994)).

When faced with requests in a civil or regulatory matter that assets be released for a defendant to retain counsel in a parallel criminal matter, courts have considered whether the defendant has demonstrated a reasonable need, and whether the frozen funds are traceable to fraud (*i.e.,* tainted). *Abdallah*, 2017 WL 11680996, at *4 (internal citations omitted); *see also FTC Capital Markets, Inc.*, 2010 WL 2652405, at *7 (S.D.N.Y. June 30, 2010) (citing *Monsanto*, 924 F.2d 1186; *Coates*, 1994 WL 455558, at *3). These considerations closely mirror the factors analyzed in *Luis* and support a release of frozen assets for reasonable legal fees in a criminal case if the assets are untainted.

Here, Mr. Batashvili seeks to lift or modify the CFTC asset freeze for the purposes of securing funds to pay for legal representation in his indicted criminal case. While Mr. Batashvili previously moved for release of untainted frozen assets for legal fees in defending against the CFTC allegations and the preceding criminal ***investigation*** (*see generally* ECF No. 232), circumstances—and his Sixth Amendment right to counsel—materially changed when he was charged. At the moment of his indictment, Mr. Batashvili's constitutional Sixth Amendment right to counsel of choice attached, and his continued deprivation of those untainted funds violates that right. *See Rust Rare Coin*, 2019 WL 7562424, at *2 (the Sixth Amendment right to counsel attaches upon the initiation of formal adversary criminal proceedings such as an indictment). Mr. Batashvili's interests under the Sixth and Fifth Amendments now mandate the release of untainted frozen assets needed for counsel of his choice in defending against that indictment.

The further restraint of any legitimate, untainted assets in the CFTC case that Mr. Batashvili requires for reasonable attorneys' fees in his criminal defense violates the Sixth Amendment. *See generally Luis*, 578 U.S at 10; *see also Rust Rare Coin*, 2019 WL 7562424, at *3; *Price*, 2018 WL 4927269, at *2; *Abdallah*, 2017 WL 11680996, at *4. Specifically, any assets wholly unconnected to alleged fraudulent activity must be released. This includes, but is not limited to, any assets predating the alleged September 1, 2017 commencement of the charged conduct, such as those listed in **Exhibit 1**, or assets entirely and clearly unconnected to any of the CFTC's allegations, such as a college savings account for Mr. Batashvili's children (ECF No. 232 at 15). The law is clear, and Mr. Batashvili's constitutional rights are at stake. A blanket asset freeze is inappropriate, no matter the competing interests—interests that are not vested with constitutional protection. *Luis*, 578 U.S. at 19.

Mr. Batashvili has the need for the legitimate, untainted assets to afford legal fees for his undersigned criminal counsel of choice. To provide him with effective assistance of counsel in that case through the duration of a jury trial, due to the complexity and seriousness of the charged offenses, counsel requires the payment of substantial, albeit reasonable, legal fees. Mr. Batashvili does not currently have the funds necessary to compensate counsel through the duration of his defense, and thus there is a legitimate need. The continued, post-indictment denial of these assets would violate his Sixth Amendment right to counsel.

### III. CONCLUSION

From the onset of the CFTC case, Mr. Batashvili has been assaulted with a wide-sweeping, and contested, civil regulatory case that resulted in the seizure of his assets and businesses before he could respond. The support for those seizures and other injunctive remedies has now been shown to have been dubious at best. However, now that he has been indicted, the current asset

freeze order results in the unconstitutional pretrial restraint of legitimate, untainted assets needed by this criminal defendant to pay for his retained counsel of choice in that case. Under *Luis* and related cases, this restraint cannot continue, because to continue it would be unconstitutional.

Mr. Batashvili accordingly respectfully requests that the Court release any untainted funds from the current asset freeze in place in this case, including, but not limited to (1) funds identified in **Exhibit 1** or any other financial accounts in the name, control, or possession of Mr. Batashvili or affiliated entities or persons before the period of the alleged fraud that resulted in the asset freeze and (2) assets clearly unconnected to any alleged fraud, such as the college savings accounts for his children. Mr. Batashvili needs these assets to pay for criminal counsel of choice in *United States v. Batashvili*.

Dated: October 13, 2025.

Respectfully submitted,

*/s/ Jeff Ansley*
Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
State Bar No. 24109938
agoodman@vedderprice.com
Katherine M. Devlin
State Bar No. 24094372
kdevlin@vedderprice.com

**VEDDER | PRICE, P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790 (Ansley)

**ATTORNEYS FOR DEFENDANT SIMON BATASHVILI**

## CERTIFICATE OF SERVICE

I certify that on October 13, 2025, all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document *via* the Court's CM/ECF system.

By: */s/ Jeff Ansley*
Jeffrey J. Ansley

## CERTIFICATE OF CONFERENCE

On October 10, 2025, I attempted to confer with Timothy Mulreany, counsel of record for the Commodity Futures Trading Commission in this case, regarding the requested relief. I received a bounce back to my email, presumably due to the government shutdown, and therefore could not obtain the CFTC's position on the requested relief. I also conferred on October 10 and October 13, 2025 with Peter Lewis, counsel for the Court-appointed receiver, regarding the merits of this motion. Mr. Lewis advised that the receiver is opposed to the asset release requested in this motion.

By: */s/ Jeff Ansley*
Jeffrey J. Ansley