IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, et al. | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2910-X |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § | |

# EIGHTEENTH REPORT OF THE RECEIVER

Kelly M. Crawford, as the court-appointed Receiver ("Receiver"), submits his eighteenth report pursuant to this Court's *Statutory Restraining Order, Order for an Accounting, Order for Appointment of Receiver, Order for Expedited Discovery, and Other Equitable Relief and Order to Show Cause Regarding Preliminary Injunction* [Dkt. 16] (the *"SRO"*)[1], covering the period from August 5, 2025 through November 5, 2025.

---

[1] The *SRO* was continued in force by Consent Orders entered by the Court regarding the Defendant entities and the individual Defendants Asher and Batashvili [Dkt. 164, 165]. The Receiver requests the Court to take judicial notice of the pleadings on file in this lawsuit.

---

EIGHTEENTH REPORT OF THE RECEIVER

I.

**INVESTOR AND CREDITOR CLAIMS**

On March 2, 2021 the Court entered an *Order Establishing Claims Adjudication Process* [Dkt. 227] (the "*Claims Order*"). On November 2, 2022, after hearing, the Court entered an Order approving the Receiver's Revised Claims report and overruling objections to the Receiver's recommendations. [Dkt. 405] [2]. The Court approved $67,906,550 in claims by 1,043 metals investors and $4,354,449 in claims by 15 non-metals investors.

II.

**INTERIM DISTRIBUTION**

On May 8, 2023, the Receiver filed a motion, consented to by the Plaintiffs and Defendants, requesting the Court to authorize an interim distribution of $8 million in receivership assets to approved claimants. Creditor Spitzer objected to the motion. On July 16, 2023, the Court entered an Order denying Spitzer's objection and authorizing the Receiver to make an interim distribution of $8 million to approved claimants.

The Internal Revenue Service audited Defendant Chase Metals, Inc. for 2018, 2019, and 2020, and claims that taxes, interest, and penalties exceeding $28 million are owing to the United States Treasury. The Receiver hired tax counsel to consult with the IRS about subordinating the claim for past dues taxes to the monies in the receivership payable to the approved claimants. The

---

[2] Creditor Daniel Spitzer, a former attorney of the Defendants, objected to the Receiver's recommended subordination of his claim to the claims of the metals and non-metals investors. On January 19, 2023, after hearing, the Court overruled Mr. Spitzer's objection and upheld the Receiver's recommended subordination of Mr. Spitzer's claim. On April 24, 2023, Mr. Spitzer appealed the Court's overruling of his objection to the Receiver's Revised Claims Report to the Fifth Circuit Court of Appeals as Case Number 23-10420. On March 7, 2024, the Fifth Circuit issued its opinion affirming the District Court's overruling of Mr. Spitzer's objection to the Receiver's Revised Claims Report.

Receiver could not make an interim distribution until he obtained permission from the United States Treasury/IRS.

On April 2, 2025, the Receiver received a letter from the Tax Division of the U.S. Department of Justice consenting to the Receiver making the $8 million interim distribution to approved claimants as ordered by the Court.

On April 10, 2025, the Receiver filed a Moton to Approve Specific Amounts Payable to Approved Claimants From the Interim Distribution Order [Dkt. 865]. On April 15, 2025, the Court entered an Order Approving Amounts Payable to Approved Claimants From the Receiver's Interim Distribution [Dkt. 868].

Because of the large number of checks to issue, the Receiver retained Stretto, Inc., a nationally recognized claims administrator, to assist with the issuance and distribution of the interim distribution checks. The interim distribution checks were issued and mailed to approved claimants on or about May 1, 2025. With total approved claims of $72,260,999, the interim distribution of $8 million paid 11 percent of the total claims to 1,043 approved claimants.

As of November 1, 2025, $7,196,367.39 of the $8 million in interim distribution checks to claimants have been deposited and paid. There are 118 claimants who have not yet deposited their interim distribution checks totaling $799,087.77. One claimant's distribution check in the sum of $4,544.77 was not issued because the claimant cannot be located and is believed to be out of the country. Some of the checks were returned and the Receiver and his team are conducting research to find the claimants. During the course of this investigation, the Receiver discovered another 19 claimants who passed away, bringing the total number of claimants who have passed away during the pendency of this case to 80.

## III.

## ASSETS RECOVERED TO DATE

Since last reported to the Court in the Receiver's *Seventeenth Report* (reporting monies received up to August 4, 2025), an additional **$2,957,942.05** in assets have been recovered as of November 5, 2025, from the following:

| | |
|---|---|
| Distributions from real estate partnerships: | $3,106.43 |
| Distributions from equity investments: | $6,943.84 |
| Recovery from Bank of America (DE Wholesale account) | $990,721.46 |
| Recovery from settlements of claims against brokers: | $1,932,637.98 |
| Interest capitalization: | $23,384.39 |
| Interest: | $1,147.95 |

With the recovery of the foregoing assets, plus the assets recovered as reported in the *Receiver's Status Reports,* and less the monies paid for Receivership fees and expenses, and the interim distribution of $8 million to approved claimants, the balance in the Receivership account as of November 5, 2025, is **$6,064,061.74**.

In addition, the Receiver is holding in brokerage accounts publicly traded securities issued by start-up technology companies the Defendants invested in prior to the receivership. The values of these securities vary depending upon the market, but as of September 30, 2025 were valued at $674,342.70[3] (an increase of $170,967.07 since June 30, 2025) as follows:

| | | |
|---|---|---|
| Sofi Technologies | 1,341 shares | $35,429.22 |
| Planet Labs PBC | 2,052 shares | $26,634.96 |

---

[3] Includes $7.96 in cash.

| | | |
|---|---|---|
| 23andMe Holding Co. | 61 shares | $239.00 |
| Buzzfeed Inc. | 425 shares | $722.50 |
| Desktop Metal, Inc. | 174 shares | $0 |
| Dave Inc. | 132 shares | $26,314.20 |
| Honest Co. | 2,106 shares | $7,750.08 |
| Airbnb | 135 shares | $16,391.70 |
| Contextlogic Inc. | 32 shares | $255.36 |
| Palantir Technologies | 1,539 shares | $280,744.38 |
| Bird Global, Inc. | 30 shares | $0 |
| Quanergy Systems | 19 shares | $0 |
| Teads Holding Co. | 784 shares | $1,293.60 |
| Robinhood Mkts. | 1,859 shares | $266,171.62 |
| Maplebear Inc. | 337 shares | $12,388.12 |

## IV.

## POTENTIAL SOURCES OF RECOVERY

The Receiver identified the following additional sources for recovery of investor monies.

### A.   PERSONAL PROPERTY

The Receiver has three paintings taken from the Defendants' offices that are of nominal value that the Receiver will sell online when authorized.

The Receiver took possession of certain jewelry given by Defendant Simon Batashvili to his wife Fainche McCarthy. Initial appraisals of the jewelry indicate it is worth less than $10,000. In addition, Batashvili turned over to the Receiver a Rolex Cosmograph watch valued at $28,500

and a diamond ring valued at approximately $59,000. After further demands by the Receiver, Batashvili also turned over to the Receiver a woman's ring, a Cartier watch, and a Rolex watch.

Finally, the Receiver took possession of furniture, artwork, guitars, and musical equipment belonging to the Defendants Lucas Asher and Simon Batashvili that the Receiver is storing. Pursuant to the terms of the Court's *Consent Order Governing the Administration of the Receivership, Procedures Governing the Sale or Abandonment of Personal Property, Notice of Intended Sale and Disposition of Various Items, Fee Application Procedures.* [Dkt. 213] (the "*Administration Order*"), the personal property of the individual defendants, including the jewelry received from Simon Batashvili and his wife, cannot be sold until a final judgment is obtained by the Plaintiffs against the individual defendants, or the defendants are dismissed from the lawsuit. Because of the delay in this case, the accrued expenses of storing the personal property likely exceed the value of the property stored.

**B.    REAL PROPERTY**

1. Philadelphia Properties

During the Receiver's investigation, the Receiver discovered that in 2019, Relief Defendant Tower Equity, LLC, or an affiliated entity (collectively, "Tower Equity"), purchased at a Sheriff's sale, 17 residential properties in Philadelphia, Pennsylvania. According to public records, Tower Equity paid a total of $1,254,000 for these properties.

The Receiver retained three appraisers in 2021 to appraise the fair market value of each of the 17 properties for sale. In addition, the Receiver retained a real estate broker in Philadelphia to market and list the properties for sale.

With court approval, prior to this Status Report, the Receiver sold 15 of the 17 properties as follows (contract sales prices):

| | |
|---|---|
| 6885 N. 19th Street, Philadelphia, PA 19126 | $260,000 |
| 5782 Haddington Street, Philadelphia PA 19141 | $142,000 |
| 434 E. Cheltenham Avenue, Philadelphia PA 19120 | $204,000 |
| 5135 Jackson Street, Philadelphia PA 19124 | $119,000 |
| 827 Rhawn Street, Philadelphia PA 19111 | $235,000 |
| 178 Rosemar Street, Philadelphia PA 19120 | $105,000 |
| 1921 S. Croskey Street, Philadelphia PA | $107,000 |
| 106 E. Roosevelt, Philadelphia PA | $160,000 |
| 532 E. Penn Street, Philadelphia PA | $150,000 |
| 404 N. Wanamaker Street, Philadelphia PA 19131 | $97,500 |
| 1851 Ringgold Street, Philadelphia PA | $95,000 |
| 2222 Clarion Street, Philadelphia PA | $140,000 |
| 6139 Chancellor Street, Philadelphia | $65,000 |
| 6616 Chew Avenue, Philadelphia | $106,000 |
| 1679 E. Hunting Park | $133,600 |

The total sales price of the 15 Philadelphia properties listed above is **$2,119,100**.

Two properties in Philadelphia remain to be sold, 6308 Chester Avenue (the "Chester Property") and 443 W. Roosevelt Blvd (the "Roosevelt Property").

A squatter occupied the Roosevelt Property. As a result, the Receiver retained an attorney in Philadelphia who specializes in the eviction of squatters to obtain a writ of possession. On the eve of a hearing to obtain the writ, the squatters entered into an agreement to vacate the Roosevelt Property by March 1, 2025. The Receiver is once again trying to sell the Roosevelt Property, but no offers have been received.

The City of Philadelphia, without notice to the Receiver, razed the structure on the Chester Property and assessed a lien against the property for the cost of demolition. The real property records showed the Receiver as the owner of the property, but nevertheless the City of Philadelphia failed to provide any notice to the Receiver of its demolition or the assessment of the lien. As a result, the Receiver filed a motion with the Court to invalidate the assessment filed by the City of Philadelphia so that the Chester Property may be sold. On December 2, 2024, the Court entered an Order granting the Receiver's motion and invalidated the lien of the City of Philadelphia on the Chester Property [Dkt. 821]. As a result, the Chester Property is listed for sale with the Receiver's broker, but no offers have been received.

2. Fractional Real Estate Interests

Defendant Asher testified in his asset deposition that Tower Equity purchased fractional interests in real properties in Florida, Tennessee, Texas, and Pennsylvania – ranging from commercial to industrial to multi-family. The Receiver discovered that Asher used Tower Equity to invest $215,000 with Crowdstreet for the purchase of fractional interests in various real estate projects. Pursuant to the *SRO*, Crowdstreet assigned these interests to the Receiver. The fractional property interests are as follows:

| | |
|---|---|
| Bristol Development – Vista Brooklyn | $25,000 investment (sold)[4] |
| Feldman Equities – Morgan Stanley Tower | $30,000 investment |
| Frontline Holdings – Chateau on the River | $25,000 investment (sold)[5] |
| Rhodium Asset Management – Grand Pointe Apts. | $25,000 investment |
| RREAF – Residence at Edinburg | $50,000 investment (sold)[6] |

---

[4] Distribution to receivership was $50,338.52.
[5] Distribution to the receivership was $37,292.05.
[6] Distribution to the receivership was $50,338.52.

| | |
|---|---|
| Trident Capital Group – St. Louis Indust. | $35,000 investment |
| J. Jeffers &Co. – The Huron Building | $25,000 investment |

Tower Equity also invested $50,000 through Crowdstreet in an entity that owned a property known as the Dixon Landing Research Park. That property was sold and $65,708 was distributed to the receivership.

The Receiver further discovered that Tower Equity invested $201,000 in fractional real estate interests managed by Cadre Investments. Pursuant to the *SRO*, Cadre Investments assigned these interests to the Receiver. The fractional property interests are as follows:

| | |
|---|---|
| 7421 at Frankford in Dallas, Texas | $50,000 investment (sold)[7] |
| Lodge at Copperfield in Houston, Texas | $50,000 investment (sold)[8] |
| Stonecrest in San Diego, California | $51,000 investment |
| Solis at Winter Park, Orlando, Florida | $50,000 investment (sold)[9] |

The Receiver continues to receive distributions from these investments in fractional interests of real property. The interest in 7421 at Frankford in Dallas, Texas was sold in July, 2025, and $71,974 was distributed to the receivership estate.

### C. COMMISSIONS

The law is well established that a Receiver may recover commissions received from salespersons for their role in soliciting investor monies for an unlawful scheme. *See Warfield v. Byron,* 436 F.3d 551, 560 (5th Cir. 2006). In such instance, salespersons are not being paid with profits earned from a legitimate enterprise but instead are being paid commissions from the amount received from investors in the scheme. Regardless of whether the salespersons knew or should

---

[7] Distribution to the receivership was $71,974.
[8] Distribution to the receivership was $83,551.
[9] Distribution to the receivership was $76,509.

have known that Metals.com or Barrick capital or the other Defendant entities were being operated illegally, the commissions the salespersons received are recoverable as fraudulent conveyances. *Id.* As the recipient of a fraudulent transfer, the salesperson must be able to show that he or she received the commissions in good faith *and* in exchange for reasonably equivalent value. While a salesperson may be able to claim he or she received the commissions in good faith, the salesperson cannot show he or she provided reasonably equivalent value in exchange for the money received. Adding more investors to a fraudulent scheme does not provide value, but rather only enlarges the number of victims. *See Warfield,* 436 at 560.

The Receiver traced more than $14 million of investor funds paid in commissions to salespersons. The Receiver mailed the salespersons a copy of the *SRO* and made demand upon the salespersons to provide the Receiver with information regarding the monies received and services provided. In addition, the Receiver sent the salespersons a second letter informing them of the Receiver's intent to file a lawsuit against them to recover the commissions and inviting settlement discussions.

On September 13, 2021, the Receiver filed his lawsuit against 46 defendants, *Crawford v. Bleeden, et al;* Case No. 3:21-cv-2181 in the United States District Court for the Northern District of Texas, seeking the recovery of approximately $14,395,106 in commissions[10] (the "Broker Lawsuit").

As set forth below, the Receiver's claims against all defendants have either been dismissed, resulted in stipulated or default judgments, or been settled in which the Receiver is waiting for receipt of the agreed upon settlement sums.

---

[10] These damages claims are subject to change as discovery is conducted in the lawsuit.

The Receiver obtained a stipulated judgment against two of the named defendants, Matthew Levitt and Gooner Enterprises, Inc. *See Dkt. 223.*

The Receiver voluntarily dismissed three of the named defendants, without prejudice:

    a. IQ Capital Advisors Inc. *See Dkt. 159,*

    b. Philip Levy. *See Dkt. 159,*

    c. Brock Bowers d/b/a BA Bowers LLC. *See Dkt. 194.*

The Receiver entered into settlement agreements with 22 defendants and, after receipt of the agreed upon settlement sum, dismissed them from the lawsuit with prejudice:

    d. James Filcek. *See Dkt. 160,*

    e. Ellipsis Marketing. *See Dkt. 160,*

    f. Joshia Ferdman. *See Dkt. 309,*

    g. Ferdman Group. *See Dkt. 309,*

    h. Alexander Flamer. *See Dkt. 309,*

    i. 9inth Level Marketing. *See Dkt. 309,*

    j. David Wolan. *See Dkt. 309,*

    k. Harper Metals Group. *See Dkt. 309,*

    l. Kyla Sanna. *See Dkt. 309,*

    m. LTK Marketing, LLC. *See Dkt. 309,*

    n. Hurricane Holdings, LLC. *See Dkt. 309,*

    o. Sean Reza a/k/a Thomas Reza. *See Dkt. 348*[11],

    p. Amerigold, Inc. *See Dkt. 348,*

    q. Athena Hunter. *See Dkt. 342,*

---

[11] The settlement sum owing by Sean Reza has not yet been paid but is set forth in a promissory note secured by a lien on certain real property in California.

    r.  TPH Boss LLC. *See Dkt. 342*,

    s.  Randall Kohl. *See Dkt. 342*,

    t.  The Voice, Inc. *See Dkt. 342*.

    u.  Deric Scott Ned. *See Underlying Lawsuit Dkt. 863*,

    v.  Poor Trap, Inc. *See Underlying Lawsuit Dkt. 863*,

    w.  Deep State Marketing, Inc. *See Underlying Lawsuit Dkt. 863*.

    x.  Benjamin Lee. *See Underlying Lawsuit Dkt. 807*,

    y.  Mettable, Inc. *See Underlying Lawsuit Dkt. 807*.

The Receiver obtained default judgments against 9 of the defendants as follows:

    Eco Blue, Inc. *See Dkt. 293*,

    Christopher Stephan. *See Dkt. 293*,

    Rich Dough Inc. *See Dkt. 291*,

    Richard Joe Dougherty, III. *See Dkt. 291*,

    Andrew Eilers Consulting, Inc. *See Dkt. 292*,

    Andrew Eilers. *See Dkt. 292*,

    TOTM Production Group, LLC. *See Dkt. 290*,

    Daniel Halimi. *See Dkt. 289*,

    Halimi Group. *See Dkt. 289*.

Finally, the Receiver entered into settlement agreements with the remaining 8 defendants in which the defendants are paying the agreed upon settlement sum over time. Until the full amount of the settlement sums are paid, the lawsuit as to these defendants is stayed pursuant to an order of the Court in the Underlying Lawsuit:

    Walter Vera. *See Underlying Lawsuit Dkt. 916*,

        Midwood Capital, LLC. *See Underlying Lawsuit Dkt. 916,*

        Verastan Group. *See Underlying Lawsuit Dkt. 916,*

        David Bleeden. *See Underlying Lawsuit Dkt. 916,*

        Xan, LLC. *See Underlying Lawsuit Dkt. 916,*

        Bearhunter, LLC. *See Underlying Lawsuit Dkt. 916,*

        Michael Peralta. *See Underlying Lawsuit Dkt. 884,*

        MPERA Corp. *See Underlying Lawsuit Dkt. 884,*

Walter Vera and his entities Midwood Capital, LLC and Verastan Group agreed to pay the receivership $1,800,000; David Bleeden and his entities Xan, LLC, and Bearhunter, LLC agreed to pay the receivership $480,000; Michael Peralta and his entity MPERA Corp. agreed to pay the receivership $10,000. Together, these settlements total $2,290,000 to be paid to the receivership. To date, each of the foregoing are current in their payment plan with the receivership.

As a result of the foregoing, there are no defendants remaining in this case who have not had the claims against them either dismissed, reduced to judgment, settled, or stayed pending their payment of the settlement sum they agreed to pay the Receiver.

    **D.    INVESTMENTS BY THE DEFENDANTS**

At his asset deposition, Defendant Asher testified he used Tower Equity to make a number of venture capital, equity, or stock purchases, including an investment in Space Exploration Technologies Corp. ("SpaceX"). Through his investigation, the Receiver learned that on February 28, 2019, Tower Equity LLC invested $250,000 in a series of Equidate Investments, LLC, now Forge, which in turn, purchased shares of Troy Capital Partners SX IX, LLC, which owns shares of SpaceX. The interests were rolled over into a new fund and Tower Equity had the

option to liquidate the interests. Tower Equity, LLC holds 1,155 fund units, which represent interests in preferred shares. The preferred shares were subject to a 10-for-1 common stock split from February, 2022. In October, 2024, the shares were valued at $112 per fund unit or $1,293,600.[12]

In addition, the Receiver obtained information from EquityZen showing that Tower Equity has investments through EquityZen in the following technology start-up entities:

| | |
|---|---|
| Flexport | $10k |
| Lookout | $10k |
| Zocdoc | $10k |
| Carbon | $10k |
| Instacart | $10k |
| Acquia | $10k |
| Collective Health | $10k |
| Automattic | $10k |
| Hotel Tonight | $10k |
| Betterment | $10k |
| Addepar | $10k |
| Circle | $10k |
| Kobalt | $10k |
| Ripple | $25k |
| Virgin Hyperloop | $25k |

---

[12] 1,155 x $112 x 10 = $1,293,600.00.

The Receiver also discovered that Defendant Batashvili used Tower Equity to invest $100,000 in National Training Services, LLC ("NTS"). The Receiver made demand upon Chris Daigle, a member of NTS, to account for the disposition of the investment. Mr. Daigle contends NTS went out of business and in response to the Receiver's demands provided the Receiver with certain information regarding the distribution of the monies. Mr. Daigle has yet to answer the Receiver's follow-up questions regarding the liquidation of NTS.

### E. METALS HELD BY BAYSIDE METAL EXCHANGE

Once the Defendants received monies from the investor victims, the Defendants placed orders for the metals themselves with Bayside Metal Exchange ("BME"). BME would, in turn, usually deliver the metals to a metals depository for the investor. The Defendants, of course, would take their illegal gains from the monies received from the investors before transferring monies to BME for the purchase of the metals.

When BME learned of the receivership, BME froze all pending transactions with the Defendants[13]. BME, in cooperation with the Receiver, provided the Receiver a list of all pending transactions.

The Receiver and BME reached an agreement whereby BME provided the Receiver with a liquidation price for the metals it is holding for a customer and the Receiver contacted the customer to determine if the customer wished to have the metals delivered or the metals liquidated and the monies delivered. The liquidation price of the metals BME had pending for delivery to the investors as of January 4, 2021 was $2,640,450.

---

[13] BME identified the following accounts as the Defendants or under the possession and control of the Defendants, and froze pending transactions with Barrick Capital, Glencore Financial, Metals.com, Newmont Financial, Northwestern Finance, and USA Mint.

Since the inception of the receivership, the Receiver worked with the investors and BME to arrange for either the liquidation or delivery of metals to all investors who had metals at BME. The value of the metals the Receiver assisted the investors in having sold by BME or delivered by BME exceeded $2.2 million. In addition, BME continues to hold metals in the name of the Defendants with an estimated liquidation value of approximately $52,000 as of May, 2025.

F.     FRAUDULENT TRANSFER ACTION

The Receiver identified more than $20 million that was transferred by the Defendants to MagicStar Arrow Entertainment, LLC and/or MagicStar Arrow, Inc., entities owned by Carlos Cruz (collectively "MagicStar"). MagicStar contends it provided services to the Defendants in exchange for the monies.

The Receiver requested MagicStar to provide evidence of any goods or services provided to the Defendants in exchange for the transfers, and MagicStar provided contracts and invoices to the Defendants, but nothing else. On July 13, 2022, the Receiver took the deposition of Mr. Cruz and again requested MagicStar to provide documentation showing any goods or services provided to the Defendant in exchange for the more than $20 million received from the Defendants. MagicStar continued its failure and refusal to produce such documentation.

Accordingly, on August 31, 2022, the Receiver filed a lawsuit against Carlos Cruz, MagicStar Arrow Entertainment, LLC, and MagicStar Arrow, Inc., Civil Action No. 3:22-cv-1935-x in the United States District Court for the Northern District of Texas (the "Cruz Lawsuit"). The Defendants filed a *Motion to Dismiss*, to which the Receiver responded. On June 22, 2023, the Court entered its *Memorandum Opinion and Order* granting in part and denying in part the Motion to Dismiss. On July 28, 2023, the Receiver filed an Amended Complaint and on August 11, 2023, the Defendants filed their Answer to the Amended Complaint. On August 28, 2023, the

Receiver filed a *Motion to Strike the Affirmative Defenses of the Defendants in the Amended Complaint*. On December 14, 2023, the Court entered a *Memorandum Opinion and Order* granting the Receiver's Motion to Strike the Affirmative Defenses of the Defendants.

In addition, the Receiver served the Defendants with discovery requests that the Defendants failed to answer. Consequently, on May 3, 2024, the Receiver filed a Motion to Compel the defendants to provide discovery responses in the lawsuit. On August 8, 2024, Magistrate Judge Rutherford granted the Receiver's Motion to Compel, ordered production of Defendant's documents and responses to the Receiver's discovery requests, and ordered that Defendant Cruz pay the Receiver's attorneys' fees of $4,935. [Dkt. 53 in the Cruz Lawsuit].

The Receiver sought to depose Defendant Carlos Cruz, and Defendant Cruz filed a Motion to Quash, complaining that the Receiver previously deposed Cruz. The matter was referred to Magistrate Rutherford, and after hearing, Magistrate Rutherford ordered that Defendant Cruz appear for a deposition by the Receiver. [Dkt. 75 in the Cruz Lawsuit]. The Receiver took the deposition of Defendant Cruz remotely on April 17, 2025.

In addition, the Receiver sought to depose Lucas Asher, a Defendant in this underlying lawsuit, for use in the Receiver's lawsuits against the Brokers, as well as Cruz and MagicStar. Defendant Asher filed a Motion for a Protective Order, which was denied by Magistrate Rutherford. [Dkt. 75]. The Receiver's attorneys deposed Asher on February 14, 2025. Asher pleaded the Fifth Amendment in response to the questions at the deposition.

On April 16, 2025, the Receiver attended a mediation with the attorneys for Defendants Cruz and MagicStar before the Honorable Judge Jenevein. The parties did not agree to a settlement of the lawsuit.

Soon thereafter, on May 23, 2025, the Receiver entered into a settlement agreement with Cruz and MagicStar in which Cruz and MagicStar agreed to pay the receivership $2.1 million to settle the lawsuit. The first payment of $450,000 was received on June 30, 2025. The next settlement payment of $450,000 is due from Cruz on December 31, 2025. Settlement payments will continue until September 30, 2026. The lawsuit remains stayed during the pendency of Cruz and MagicStar's payment of the agreed upon settlement sum. Upon timely receipt of the full amount of the settlement sum, the Receiver will dismiss his lawsuit against Cruz and Magicstar.

### G. DOMAIN NAMES

The Receiver has control of a number of domain names that are part of the receivership estate, and the Receiver intends to solicit offers for the purchase of such domain names and will follow the procedures established by the Court for the sale of the domain names. Specifically, the Receiver retained a broker to market the sale of the domain name "Metals.com".

## V.

## PENDING REGULATORY, CIVIL, AND CRIMINAL ACTIONS AGAINST THE DEFENDANTS

At the time the Receiver was appointed, there were regulatory actions pending against the Defendants in twenty-one (21) States. The Receiver and his counsel assumed representation of the Defendants in several regulatory actions filed against the Defendants prior to the Receivership. The Receiver and his counsel immediately initiated mitigation of the regulatory actions, including the review and revision of consent decrees to resolve the same. On January 12, 2022, the Receiver resolved an action filed against the Defendants by the Office of the Montana Commissioner of Securities and Insurance by executing a *Consent Agreement and Final Order.*

The Receiver also participated in a civil action filed against the Defendants in the State of Kentucky. Investors Bill and Mary Cravens filed a lawsuit against the Defendants and New Direction in the Kentucky State Court system on October 1, 2020. On December 15, 2020, Defendant New Direction filed a Motion to Dismiss and to compel arbitration. The Receiver became aware of the litigation and filed a Notice of Receivership on December 28, 2020. The motion to compel arbitration was initially stayed, but Defendant New Direction filed a notice of appeal on June 29, 2021 to move forward on its motion to compel arbitration. The Receiver hired local counsel to respond to the same. On February 7, 2022, the appeal was dismissed.

In addition, the Receiver filed a notice of stay of a lawsuit pending against Chase Metals, LLC, and other Receivership Defendants in the United States District Court for the Central District of California, Case No. 2:20-cv-07324-SRM, *Cynthia Punke v. Chase Metals, LLC, et al.* The court requires the Receiver to file a status report every 60 days regarding the progress of the receivership. To date, the Receiver has filed a total of 28 status reports.

On July 22, 2025, Defendant Batashvili was indicted and charged with two counts of Mail Fraud in violation of 18 U.S.C. §1341, and one count of Mail Fraud in violation of 18 U.S.C. §1343. *See United States v. Simon Batashvili,* Case No. 3:25-CR-343-X in the United States District Court for the Northern District of Texas. The trial of the criminal case against Defendant Batashvili is scheduled for August 10, 2026.

On October 13, 2025, Defendant Batashvili filed a Motion for Release of Funds for Criminal Defense [Dkt. 951]. Due to the government shutdown, the Court entered an Order that responses to the Motion are not due until 21 days after the shutdown ends. [Dkt. 952]. The Receiver will file a response to the Motion based on this deadline.

## VI.

## TIMELINE FOR THE RECEIVERSHIP

The Receiver recommends continuation of the Receivership to complete the collection of settlement payments that are being made over time; liquidation of assets, and distribution of the assets recovered to the approved claimants. With the significant scope of the Receivership, number of investor victims, and amount of loss, the Receiver estimates it will be necessary to continue the Receivership into 2027.

Respectfully submitted November 6, 2025.

**RECEIVER KELLY M. CRAWFORD**

/s/ *Kelly M. Crawford*
Kelly M. Crawford, Receiver
State Bar No. 05030700
SCHEEF & STONE, L.L.P.
500 North Akard, Suite 2700
Dallas, Texas 75201
Tele: 214/706-4200
Fax: 214/706-4242

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 6, 2025, I electronically filed the foregoing document with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.

/s/ Kelly M. Crawford
KELLY M. CRAWFORD