IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, et al. | § § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. |
| v. | § § | 3:20-CV-2910-X |
| TMTE, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § | |
| Relief Defendant. | § § | |

**RECEIVER'S RESPONSE TO DEFENDANT SIMON BATASHVILI'S MOTION FOR RELEASE OF FUNDS FOR CRIMINAL DEFENSE**

Kelly Crawford, in his capacity as Receiver for TMTE, Inc. a/k/a Metals.com, et al., responds to Defendant Simon Batashvili's Motion for Release of Funds for Criminal Defense [Dkt. 951] (the "Motion"), respectfully showing the Court as follows:

**I.**

**INTRODUCTION**

As discussed below, the Motion is flawed, omits critical facts, makes incorrect presumptions, and fails to meet the criteria for having funds released from the receivership to fund Defendant Batashvili's criminal defense fees. As such, the Motion should be stricken or denied as the case may be and detailed more specifically below.

## II.

## THE MOTION IS FLAWED

Notwithstanding the stay of the case ordered by the Court on October 2, 2025, due to the government shutdown [Dkt. 949], Defendant Simon Batashvili ( the "Defendant") opted to file the Motion despite his failure to confer with counsel for the Plaintiff States or Plaintiff CFTC as required by Local Rule 7.1a of the United States District Court for the Northern District of Texas. Defendant Batashvili did not argue there was a need for expedited consideration of the Motion that would somehow justify violating the local rules of the Court (especially since the criminal case against Defendant Batashvili has been continued until August 10, 2026).[1] Accordingly, because the Motion was filed in violation of the local rules of the Court, the Motion should be stricken.

## III.

## THE MOTION OMITS CRITICAL FACTS

In reciting the procedural background of the case in his Motion, Defendant Batashvili omits critical facts that are crucial to the Court's consideration of the relief requested in the Motion. Specifically, the Motion omits the following:

1. The *Complaint* [Dkt. 2] filed by the Plaintiffs (the CFTC and 30 States) was not limited to alleged violations of the Commodity Exchange Act, as the Motion suggests, but also included allegations that Defendant Batashvili violated:

    a. Code of Alabama (1975) §§ 8-6-3(b)-(c);

    b. Code of Alabama (1975) § 8-6-17(b)(2);

---

[1] *United States v. Simon Batashvili*, Case No. 3:25-CR-343-X in the United States District Court for the Northern District of Texas, Dallas Division [Dkt. 30].

   c. Code of Alabama (1975) § 8-6-17(a)(2);

   d. Code of Alabama (1975) § 13A-6-195;

   e. Alaska Stat. §45.50.471;

   f. Cal. Corp. Code § 25230;

   g. Cal. Corp. Code § 25235;

   h. Cal. Corp. Code § 29536;

   i. C.R.S. §§ 11-53-107(1)(a)-(c);

   j. C.R.S. §§ 11-51-501(1)(a),(b) and (c);

   k. Fla. Stat. § 501.204;

   l. Fla. Stat. § 517.275;

   m. Ga. Code Ann. §§10-5-32 and 33;

   n. Ga. Code Ann. §10-5-51;

   o. Ga. Code Ann. §10-5A-2;

   p. Ga. Code Ann. §10-5A-6;

   q. KRS 292.330(8);

   r. KRS §292.320(1);

   s. MD. Code, Corps. & Assn's §11-401(b)(1);

   t. MD. Code, Corps. & Assn's §11-402(b)(1);

   u. MD. Code, Corps. & Assn's §11-302;

   v. COMAR 02.02.05.03;

   w. S.C. Code Ann §35-1-403 through 35-1-404;

   x. S.C. Code Ann. §§35-1-501(1)-(3);

   y. S.C. Code Ann. §35-1-502(a);

    z. S.C. Code Ann. §39-73-20;

    aa. S.C. Code Ann. §§39-73-60(1)-(4);

    bb. Tex. Rev. Civ. Stat. Ann. Art. 581-12; and

    cc. Tex. Rev. Civ. Stat. Ann. Art. 581-32.

2. The Motion failed to remind the Court that the *Consent Order of Preliminary Injunction and Other Equitable Relief Against Defendants Lucas Thomas Erb a/k/a Lucas Asher a/k/a Luke Asher and Simon Batashvili* [Dkt. 165](the "Consent PI") was not entered *ex parte*, but with the express consent of Batashvili represented by the counsel of his choice, and after negotiation with the Plaintiffs. The Consent PI continued the freeze and receivership of Defendant Batashvili's assets and included the express finding by the Court that good cause existed for the issuance of the preliminary injunction. Consent PI, ¶8.

3. The Motion intimates if not implies -incorrectly- that Defendant Batashvili was prohibited by the Consent PI from paying attorneys to defend him in this case, before conceding in a short footnote that the Consent PI was amended to allow Defendant Batashvili to earn "new income" to "pay attorneys in the CFTC case." Indeed, counsel for the individual defendants (including Batashvili ) have been paid more than $1,780,000 to defend them and there is no evidence to indicate Defendant Batashvili does not have sufficient resources to pay for his defense of the criminal case. Specifically, on May 19, 2023, the Court entered an Order modifying the Consent PI ("Consent Order") to allow Defendant Batashvili to use New Income, as defined in the Consent Order, for the additional purpose of compensating counsel. [Dkt. 549]. Pursuant to the Consent Order, Defendant Batashvili is required to provide the

Receiver quarterly reports of the New Income earned and the invoices paid. Those New Income reports provided to the Receiver, and the Receiver's review of the bank account in which New Income is deposited, indicate that Defendants Batashvili and Asher earn significant monies they claim are "New Income", and from those monies paid their counsel $1,780,000 from June, 2023 to August, 2025.[2] There is no evidence Defendant Batashvili does not have sufficient assets from the monies he has been receiving that he characterizes as "New Income" to pay his legal fees for defense of his criminal case.[3] The Receiver has no objection to the Consent PI being modified to allow New Income to be used to pay the legal fees for his defense of the criminal case.[4]

---

[2] Defendant Batashvili paid his attorneys in this civil case more than $1,680,000, and paid his criminal defense attorneys $100,000 to date. *Declaration of Receiver Kelly Crawford* ("Receiver's Declaration"), attached hereto as **Exhibit 1**, ¶ ¶ 3, 9.

[3] Toward that end, the Receiver requested Defendant Batashvili's counsel for a date to take the deposition of Defendant Batashvili regarding the resources he has available to pay the legal fees for his defense of the criminal case, and Defendant Batashvili's counsel informed the Receiver that Defendant Batashvili would not give his deposition because he had been indicted. A defendant cannot put an issue into play (i.e. – the need for monies to pay defense counsel) and then refuse to answer any questions about his need for monies based on the Fifth Amendment. *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1087 (5th Cir. 1979) ("The plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain an unequal advantage against the party he has chosen to sue. To hold otherwise would, in terms of the customary metaphor, enable plaintiff to use his Fifth Amendment shield as a sword."); *Sec. & Exch. Comm'n v. First Fin. Group of Tex., Inc.*, 659 F.2d 660, 669 (5th Cir. 1981) ("a blanket invocation of the fifth amendment privilege is insufficient to relieve a civil litigant of the responsibility to answer questions put to him during the civil discovery process and to claim the privilege with respect to each inquiry"); and *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir.2001) (the "party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability).

[4] At the time of the modification of the Consent PI, Defendant Batashvili had not been indicted and no criminal case was pending against Defendant Batashvili. Defendant Batashvili consented to the specific language of the modification of the Consent PI and did not at that time request that the language allow New Income to be used to pay defense costs of a criminal action.

4. The Motion ignores the Orders of the Court when asserting, improperly, that *"the CFTC is well short of the appropriately high standard to freeze Mr. Batashvili's assets, and any distributions made to alleged victims to date are also called into question."* Motion, p. 5. Again, the Motion conveniently fails to disclose to the Court that the Consent PI was entered into with the consent of Defendant Batashvili [Dkt. 165]; that the claims of the CFTC and the States against Defendant Batashvili have not been dismissed; and that the distributions of monies from the receivership to the victims in this case were made with the consent of Defendant Batashvili. *Order Authorizing Receiver to Make Interim Distribution (the "Distribution Order")* [Dkt. 614][5].

5. In addition, the Motion disregards the denial of a previous request by Defendant Batashvili to unfreeze receivership assets for his attorneys fees was denied. [Dkt. 232]. Specifically, the Court denied Defendant Batashvili's request because he did not identify any "untainted" assets in the receivership estate. [Dkt. 367][6]. Such order was made in recognition that Defendant Batashvili bears the burden of identifying "untainted assets" in the receivership, and failed to meet that burden.

---

[5] The Distribution Order noted the Defendants' consent was without prejudice to their defenses in the lawsuit.

[6] To provide an opportunity for the Defendants to identify "untainted" funds, the Court directed the Receiver to provide Defendants with access to the documents recovered by the Receiver, which the Receiver did in 2023 and 2024. *Receiver's Declaration,* ¶ 4.

## IV.

## **THE MOTION IS BASED ON INCORRECT PRESUMPTIONS**

The Motion is based on the incorrect presumption that the receivership froze and received monies from an account in the name of Chase Metals, LLC at OneWest Bank ending in *9387. Indeed, Defendant Batashvili attaches to his Motion statements from that account in 2017 that showed a balance of $1,948,037.41 as of August 31, 2017. Defendant Batashvili argues those monies were received prior to the alleged violations in the Complaint and therefore are "untainted". The reality is, however, that the receivership did not receive a single dollar from OneWest Bank. In fact, by the time of the receivership, which began on September 22, 2020 (three years after the date of the bank statements attached to the Motion), there was no money left in the OneWest Bank account and the account had been closed.[7]

Further compounding the Defendant's incorrect presumptions is Defendant's claim or belief that "additional assets, such as college savings accounts with funds from third parties that are wholly unconnected to the CFTC allegations, were and remain frozen pursuant to the Consent Order." The reality, once again, is that there was a single account at the Bank of America in the name of Defendant Batashvili's daughter "Catherine Batashvili" in the amount of $71,410.00 that was recovered by the receivership. As set forth in the Receiver's forensic accounting that was provided to Defendant Batashvili, that account was funded by monies from the entities in receivership, and not from third parties as alleged in the Motion.[8]

Moreover, for years, Defendant Batashvili has had access to all of the documents seized by the Receiver; the forensic accounting prepared by the Receiver's accountants; and the

---

[7] *Receiver's Declaration*, ¶ 5.
[8] *Receiver's Declaration*, ¶6.

Receiver's Status Reports that detail the sources of funds received in the receivership. Defendant Batashvili has the burden to identify "untainted funds" in the receivership that he wants released, and yet he has not and cannot identify any "untainted" funds. To the contrary, the majority of funds remaining in the receivership are monies recovered in settlements of the Receiver's claims against third parties.[9]

## V.

## THE MOTION DOES NOT MEET THE CRITERIA FOR UNFREEZING FUNDS

Defendant Batashvili argues in his Motion that *Luis v. United States,* 578 U.S. 5, 12-17 (2006), established three criteria for determining whether frozen funds should be released to fund the legal fees of a criminal defendant:

- Whether the seized funds are tainted (traceable to a crime) or untainted (owned by the defendant free and clear);
- Whether the funds were impermissibly restrained by the government; and
- The defendant's need for the funds.

Defendant Batashvili cannot meet any of these three criteria as detailed below.

### A. The Seized Funds in the Receivership are Tainted

Defendant Batashvili has the burden of identifying "untainted" funds in the receivership to be unfrozen. *See S.E.C. v. Stanford Intern. Bank, Ltd.,* 309-CV-298-N [Dt. 544 at p. 1](N.D. Tex. July 1, 2009)(defendants bear burden to show assets are untainted). Defendant Batashvili cannot and has not met this burden. In this regard, the OneWest account monies that Defendant Batashvili identified to in his Motion were never received by the receivership. The monies in an account in the name of Defendant Batashvili's daughter came from entities in receivership. Specifically, as

---

[9] *Receiver's Declaration,* ¶ 7.

shown in the forensic accounting prepared by the Receiver's accountants, the monies deposited into the account in the name of Defendant Batashvili's daughter came from Defendant Barrick Capital, and the following entities that were all added by the Court as "receivership entities" because they were owned or controlled by Defendants Asher and Batashvili – First American Estate, Instribution, and Tower Estates.[10] Moreover, those monies were seized at the inception of the receivership, and with the consent of Defendant Batashvili, those funds were among the $8 million distributed to the victims in the case. The monies remaining in the receivership do not include any of the funds seized at the inception of the case.[11]

In addition, the Internal Revenue Service provided the Receiver with a Notice of Deficiency on July 17, 2025 indicating that Chase Metals, Inc. owes the IRS taxes, penalties, and interest of more than $29 million from 2018, 2019, and 2020.[12] Indeed, prior to the Receiver making the distribution to victims in the case of $8 million from the receivership estate, the Receiver had to obtain permission from the Tax Division of the U.S. Department of Justice.[13] As a result, the monies remaining in the receivership estate are not necessarily free of claims, as implicitly suggested by Defendant Batashvili.

Moreover, for years, Defendant Batashvili has had access to all of the information he would need to identify "untainted funds" if any existed –e.g., the documents seized by the Receiver, the Receiver's forensic accounting, and the Receiver's status reports that detail the sources of funds recovered in the receivership. Despite having access to this information, the Motion only points to a OneWest account that was closed before the receivership and in which no monies were

---

[10] *Receiver's Declaration*, ¶ 6.
[11] *Receiver's Declaration*, ¶ 7.
[12] *Id. at* ¶8.
[13] *Id.*

recovered in the receivership estate. Filing a Motion based on a "belief" there are untainted assets in the receivership estate is insufficient and fails to meet Defendant Batashvili's burden. Because Defendant Batashvili has not met the burden of identifying any "untainted" assets in the possession of the receivership estate, the Motion should be denied and it unnecessary for the Court to consider any of the other criteria in *Luis*.

Defendant Batashvili may not use the tainted assets in the receivership estate to fund the defense of his criminal case. Numerous courts have held that a defendant does not have the constitutional right to use tainted assets, even where those funds are the only funds available to the defendant. *SEC v. Credit Bancorp Ltd.,* No. 99 Civ. 11395, 2010 WL 768944, at * 3 (S.D.N.Y. Mar. 8, 2010) ("[A] defendant does not have the right to use the frozen funds [consisting of stolen money] for attorney's fees, even if those funds are the only way that a defendant would be able to retain the attorney of his choice."); *Sec. & Exch. Comm'n v. Callahan*, No. 12CV1065ADSAKT, 2014 WL 11343760, at *4 (E.D.N.Y. May 17, 2014) (holding that tainted funds must remain frozen unless shown to be unconnected to any unlawful conduct) (citing *SEC v. Coates,* NO. 94 CIV. 5361 (KMW), 1994 WL 45558 (S.D.N.Y. Aug. 23, 1994)) ("…therefore, assets should continue to be restrained if traceable to criminal activity but, if not, [can] be released to permit a criminal defendant to retain the counsel of his or her choice.").

### B. The Funds in Receivership Were Restrained and Disbursed by Court Orders Consented to by Defendant Batashvili

After the Court entered the *SRO* authorizing the Receiver to recover the assets of the Defendants, the Defendants had the right afforded all defendants in cases of emergency relief to have their day in court to contest the Court's order granting the extraordinary relief. Defendant Batashvili, while represented by the counsel of his choice, negotiated a Consent PI with the

Plaintiffs that was entered by the Court. The Consent PI continued the *SRO* in effect and further authorized the Receiver to recover the assets of the Defendants.

In addition, Defendant Batashvili, while represented by counsel of his choice, consented to the Receiver distributing $8 million of the monies recovered in the receivership to the victims in the case.

In light of Defendant Batashvili consenting to the authority by which the Receiver recovered assets and made the aforementioned distribution of assets to the victims in the case, Defendant Batashvili has no basis to argue that the funds were impermissibly restrained by the government. The second criteria of *Luis* fails.

### C. Defendant Batashvili has not Demonstrated a Need for Funds

Finally, in order to meet the third criteria of *Luis*, Defendant Batashvili bears the burden of proving he needs funds in order to have the counsel of his choice represent him in the criminal case. *United States v. Stokes*, No. 114CR290TWTJKL1, 2017 WL 5986231, at *5 (N.D. Ga. Oct. 23, 2017), report and recommendation adopted, No. 1:14-CR-290-1-TWT, 2017 WL 5971986 (N.D. Ga. Dec. 1, 2017).

Without *any* evidence whatsoever, Defendant Batashvili's attorneys make the bald assertion in the Motion that "*Mr. Batashvili will be unable to afford his retained counsel of choice to represent him throughout the entirety of his defense.*" Motion, p. 7. This statement, wholly unsupported by evidence, is not sufficient for Defendant Batashvili to meet his burden of showing a need to fund his legal defense. Indeed, Defendant Batashvili is improperly invoking the Fifth Amendment in refusing to testify regarding his resources for funding his legal defense.[14]

---

[14] *Receiver's Declaration*, ¶ 9.

Defendant Batashvili already has the counsel of his choice representing him in this case and the counsel of his choice representing him in the criminal case. It is difficult to comprehend why Defendant Batashvili would be unable to afford to pay for the legal defense of his criminal case, considering that in the last 26 months, counsel representing Defendant Batashvili have been paid attorneys' fees of nearly $1.7 million to defended this civil action. It is obvious that Defendant Batashvili has a lucrative source of New Income to fund his legal fees, although he improperly hides behind the Fifth Amendment in refusing to testify regarding that source of income. The Receiver has no objection to the Court amending the Consent PI to allow "New Income" to be used to fund Defendant Batashvili's legal defense of his criminal case. Indeed, Defendant Batashvili already ignored the language in the Consent PI and used $100,000 from New Income to pay his criminal defense attorneys.[15]

Furthermore, while being represented by the counsel of his choice, and without any evidence of his inability to continue to pay the counsel of his choice, Defendant Batashvili has not shown his constitutional rights are being violated. *Luis* holds the Sixth Amendment is implicated only if forfeited substitute assets are needed for trial counsel. *United States v. Marshall*, No. 16-4494, 2018 WL 5809728, *4 (4th Cir. Nov. 6, 2018) ("Because Marshall was represented by the counsel of his choice, there was no need for the seized funds and, thus, no *Luis* error."); *United States v. Gordon*, 657 Fed. Appx. 773, 779 (4th Cir. 2016) ("Gordon did not need the assets to retain counsel as he, in fact, had retained counsel of his choice and that counsel 'thorough[ly] and vigorous[ly]' represented him at trial. Therefore, unlike the court's order in *Luis*, the government's actions in imposing pretrial restraints on his assets did not prevent him from exercising his Sixth Amendment right to retain counsel of his choice."); *United States v. Patel*, No. 5:11-CR-00031,

---

[15] *Receiver's Declaration*, ¶ 3.

2018 WL 6579989, at *6 (W.D. Va. Dec. 13, 2018)(the court held Patel did not need the restrained assets to retain counsel because he was already represented by counsel of his choice and had already paid counsel fees sufficient to defend the case).

Defendant Batashvili has not only failed to identify any "untainted" assets in the possession of the receivership estate, he has not demonstrated a need for monies to fund his criminal defense. To the contrary, the fact he has already paid his criminal defense firm a retainer of $100,000 from New Income under the Court's Order and paid his attorneys in this civil case more than $1,680,000 from New Income, establishes that Defendant Batashvili has more than sufficient resources at hand to fund his criminal defense. The third criteria under *Luis*, like the first two, cannot be met by Defendant Batashvili.

## VI.

## CONCLUSION

In his Motion, Defendant Batashvili fails to identify any "untainted assets" in the receivership estate; fails to inform the Court that the seizure and distribution of assets was made pursuant to orders he consented to -- the Consent PI and the Distribution Order; and fails to demonstrate a need for resources to pay for defense of his criminal case in light of spending nearly $1.8 million in attorneys' fees to date. Accordingly, the Motion does not meet any of the three criteria established by the Supreme Court in *Luis*, and must be denied.

## PRAYER FOR RELIEF

WHEREFORE, the Receiver respectfully requests that the Court deny the relief requested by Defendant Batashvili in his Motion and grant the Receiver such other and further relief to which he may be justly entitled.

Dated: December 2, 2025.

        Respectfully submitted,

        **SCHEEF & STONE, L.L.P.**

    By: /s/ *Peter C. Lewis*
        Peter C. Lewis
        State Bar No. 12302100
        peter.lewis@solidcounsel.com

    500 N. Akard, Suite 2700
    Dallas, Texas 75201
    Telephone: (214) 706-4200
    Telecopier: (214) 706-4242

    **ATTORNEY FOR RECEIVER
    KELLY M. CRAWFORD**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 2, 2025, the foregoing was electronically filed with the clerk of the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court, which provided a "Notice of Electronic Filing" to all attorneys of record.

    /s/ *Peter C. Lewis*
    Peter C. Lewis