# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| U.S. COMMODITY FUTURES TRADING COMMISSION, *et al.*, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:20-CV-2910-X |
| TIME, INC. a/k/a METALS.COM, CHASE METALS, INC., CHASE METALS, LLC, BARRICK CAPITAL, INC., LUCAS THOMAS ERB a/k/a LUCAS ASHER a/k/a LUKE ASHER, and SIMON BATASHVILI, | § § § § § § § | |
| Defendants, | § § | |
| TOWER EQUITY, LLC, | § § § | |
| Relief Defendant. | § § | |

### DEFENDANT SIMON BATASHVILI'S REPLY TO THE RECEIVER AND CFTC'S RESPONSE TO HIS MOTION FOR RELEASE OF FROZEN ASSETS FOR CRIMINAL DEFENSE

TO THE HONORABLE BRANTLEY STARR:

Defendant Simon Batashvili ("Mr. Batashvili") respectfully submits this Reply to the Receiver and Commodity Futures Trading Commission's ("CFTC") Responses to his Motion for Release of Frozen Assets for Criminal Defense (collectively, "the Responses") (ECF Nos. 965 and 966) as follows:

## I.     INTRODUCTION

Now that he has been indicted, Mr. Batashvili's motion seeks the release of "any untainted assets currently frozen in this civil case" based on his constitutional rights under the Sixth Amendment and controlling Supreme Court precedent. *See* ECF No. 951 at 1, 7, 8, 13, and 14.

The respective responses of the receiver and CFTC, however, would limit Mr. Batashvili's request to a single account. Mr. Batashvili's request is not limited to the single bank account addressed in the Responses; it seeks release of all untainted assets to which he is entitled for his criminal defense. But based on the information put forth in those responses and the receiver's declaration, Mr. Batashvili withdraws his specific request for release of funds from the OneWest Bank account ending in *9387 ("account *9387").[1]

Consistent with *Luis v. United States,* Mr. Batashvili maintains his request for release of ***any*** untainted assets subject to the asset freeze to pay for his criminal defense—assets to which he is entitled now that he is under indictment. He also requests that the Consent Order, consistent with his Sixth Amendment right to counsel and to defend himself, be modified if necessary to allow for legal fees to be paid to criminal counsel with new income, and that no additional funds be disbursed until a ruling has been made on the amended motions for summary judgment.

The Responses collectively argue:

1. No assets associated with account *9387 were ever part of the receivership.

2. Mr. Batashvili's filing was improper because it was filed while this matter was stayed, and he did not properly confer with counsel.

3. The carve out provision in the modified Consent Order of Preliminary Injunction includes a provision to pay civil counsel, which has been done in the amount of $1,680,000 on behalf of Mr. Batashvili and his civil co-defendant, Lucas Asher. Mr. Batashvili has violated this Consent Order by paying any attorney's fees to his criminal counsel.

4. Mr. Batashvili has not made a showing of "need."

---

[1] Mr. Batashvili's request was "for the release of untainted assets subject to [the CFTC's] asset freeze . . . ***includ[ing], but [] not limited to,*** funds being held in the Chase Metals OneWest Bank account ending in *9387." ECF No. 951 at 6 (emphasis added). "***[A]ssets that are untainted by the alleged fraud have been frozen for over five years***. *Id.* at 4 (emphasis added).

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RELEASE OF FROZEN ASSETS FOR CRIMINAL DEFENSE – PAGE 2**

  5.  Arguments that the asset freeze is improper based on the CFTC's lack of authority to regulate precious metals are inconsistent with Fifth Circuit precedent.

Mr. Batashvili addresses these points in turn below.

## II. REPLY

### a. Chase Metals OneWest Bank Account Ending in *9387.

As stated above, Mr. Batashvili withdraws his request relating to account *9387.[2] However, his constitutional protections under the Sixth Amendment require that this Court order the release of any untainted assets to which he is entitled so that he may continue being represented by counsel of his choosing in *United States v. Batashvili*. As it stands, assets belonging to Mr. Batashvili, other individuals associated with Metals.com and its affiliates, and the company itself are held in receivership in a case that is now at substantial hazard of being dismissed. But the government still chose to indict Mr. Batashvili at a time when the survival of this case—and the asset freeze resulting from it—are questionable. The government should not be allowed to seek to freeze a defendant's assets in a dubious case, operate under that freeze for years, and then, when it sees its case beginning to falter and facing dismissal, finally seek the indictment of a defendant under the impairment of the freeze order for the exact same conduct that resulted in the filing of this case five years earlier.

That's not a timeline driven by the deliberative processes of the grand jury before it elected to indict Mr. Batashvili. That's a timeline calibrated to ensure that, even if the CFTC's case is dismissed, Mr. Batashvili doesn't escape the government's pursuit, be it regulatory, criminal or

---

[2] The Responses intimate that Mr. Batashvili "drained" account *9387 for frivolous reasons. ECF No. 966 at 1. Instead, $500,000 was wired to another Chase Metals business account, Bank of America account ending in *4024 (*see* Exhibit 1), along with other business related withdrawals or wires. However, counsel is currently unable to clearly trace these funds to frozen assets.

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RELEASE OF FROZEN ASSETS FOR CRIMINAL DEFENSE – PAGE 3**

both. The result is that he risks being crushed like grist in the mill—a five year old asset freeze obtained on the government's motion impairs his ability to defend himself against criminal charges sought by the government based on identical conduct.

### b. Mr. Batashvili's Motion was Filed in Good Faith.

Mr. Batashvili is under indictment and risks years in prison if convicted. Under these circumstances, it was imperative for him to request funds necessary for his defense, even amidst a stay. Mr. Batashvili contacted the receiver's counsel and obtained his position on the motion. As stated in his Certificate of Conference, he further attempted to contact CFTC counsel for its position but received bounce backs on those emails. This was in express compliance with the Local Rules. His filing was made in good faith, and both the receiver and the CFTC had the opportunity to respond (and in the case of the receiver, did respond) to the motion.

The receiver argues that Mr. Batashvili violated the local rules of this Court, and so his motion should be struck. ECF No. 965 at 2. This is inaccurate. First, Mr. Batashvili conferred with the receiver's counsel, and his opposition is plainly stated in the motion. ECF No. 951 at 16. Regarding the CFTC, Local Rule 7.1(a) specifically contemplates what to do when, as here, a party is unavailable for conference purposes: "Conferences are not required…when a conference is not possible." As stated in the motion's Certificate of Conference, counsel received an automated bounce back response from the CFTC when attempting to confer with them regarding the motion. ECF No. 951 at 16. Based on that response, "a conference [was] not possible" with the CFTC at the time the motion was filed. This information was clearly set forth in the motion. *Id.*[3]

---

[3] The receiver also contends that Mr. Batashvili failed to confer with the States as required under Local Rule 7.1(a). ECF No. 965 at 2. This is a multi-plaintiff federal case in which the CFTC is stylistically and substantively the lead plaintiff and, further, the only federal plaintiff. Mr. Batashvili therefore sought to obtain the CFTC's position for that reason—namely, that its position is the plaintiffs' composite position. This belief was affirmed and is consistent with the fact that

DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RELEASE OF FROZEN ASSETS FOR CRIMINAL DEFENSE – PAGE 4

### c. The Consent Order of Preliminary Injunction is of Little Significance to Mr. Batashvili's Request in Light of the Criminal Indictment.

A large portion of the argument in the Responses centers around the Consent Order of Preliminary Injunction, which Mr. Batashvili initially agreed to and then was later modified to include a carve out for payment of CFTC attorney's fees with new income. The Consent Order was issued in October 2020 and modified on May 19, 2023. The Responses intimate that Mr. Batashvili was trying to hide, or "bury," this information in his motion. ECF No. 966 at 6. In reality, the Consent Order is of little significance to Mr. Batashvili's financial needs now that he is indicted and must prepare to defend himself against federal criminal charges.

Mr. Batashvili was indicted on July 22, 2025—five years after the Consent Order was issued, and two years after it was modified. Circumstances changed dramatically once he was indicted, including invocation of his protections under the United States Constitution and associated financial needs. A criminal defendant is afforded certain rights, and his defense requires substantial, different, more immediate, and potentially longer-lasting resources than a civil matter where the worst case scenario is a fiscal penalty.

The Responses ignore the dichotomy between these two types of cases, their corresponding needs, and the timeline. Instead, they hector that $1.68 million has been paid by Mr. Batashvili and his co-defendant, Lucas Asher, to civil counsel over a roughly two-year period, seemingly indicating that the funds are readily available to pay criminal counsel. This position turns a blind eye to the clear hurdles that Mr. Batashvili now faces and, as recognized by the Supreme Court in

---

the CFTC filed the response to Mr. Batashvili's motion (ECF No. 966 at 25) and all the states were in lockstep with that motion. *Id.* Finally, Mr. Batashvili's actions to confer are consistent with the existing, albeit limited, practice in this case in which the CFTC conferred with Mr. Batashvili for his position on its motion for a briefing schedule regarding this motion. *See* ECF No. 956. The receiver's position would elevate form and the impractical over substance and practicality. Mr. Batashvili substantively complied with the rule.

**DEFENDANT'S REPLY IN SUPPORT OF MOTION FOR RELEASE OF FROZEN ASSETS FOR CRIMINAL DEFENSE – PAGE 5**

*Luis v. United States*, the sea change that happens when an indictment is returned: (1) he must now defend his freedom, not just his business and finances; (2) a criminal defense requires the marshaling of significant resources, quickly, to defend against possible conviction and incarceration; and (3) Mr. Batashvili will now be responsible for paying two sets of attorneys, one set for which he must foot the bill alone.

Further, the Responses make note that the carve out restricts the use of new income for legal fees in the CFTC case only, reprimanding Mr. Batashvili for quickly retaining criminal counsel with available funds when so many of his assets are frozen. Mr. Batashvili has a Sixth Amendment right to counsel of his choice, plain and simple, and he needed to act immediately to secure an attorney to assist in his defense. But it seems the CFTC and receiver expect Mr. Batashvili to defend himself with both hands tied behind his back, completely ignoring the protections afforded to a criminal defendant and the constitutional footing on which they stand. This position invites the Court to find that a civil restraining order can operate to deprive a criminal defendant of their protections under the Sixth and Fifth Amendments. The Court should not accept that invitation.

Of note, the receiver acknowledges that he has no opposition to the Consent Order being modified to allow Mr. Batashvili to use new income to pay the legal fees for his criminal defense. ECF No. 965 at 5. With this Reply, and if necessary, Mr. Batashvili makes this request as a precaution to ensure that any payments made to criminal counsel with new income are appropriate in the eyes of the Court.

    d. **<u>Mr. Batashvili has a Need for Untainted Assets to pay Criminal Counsel</u>**.

Mr. Batashvili has a need for untainted assets for his criminal defense. The Responses point to out-of-circuit cases in attempts to create some rigid showing requirement that would undermine

Mr. Batashvili's fundamental rights under the Sixth Amendment. *See* ECF No. 965 at 11 (citing *United States v. Stokes*, 2017 WL 5986231, at *5 (N.D. Ga. Oct. 23, 2017)); ECF No. 966 at 10 (citing *FTC v. 4 Star Resolution, LLC*, No. 1:15-cv-112, 2016 WL 768656, at *1 (W.D.N.Y. Feb. 29, 2016)).

Mr. Batashvili is unaware of any Fifth Circuit precedent that requires a beyond-threshold showing that legitimate, untainted funds are needed to afford legal representation in a criminal defense. The CFTC and receiver point to none either. Mr. Batashvili's need is clear—he has been indicted and is actively preparing his criminal defense, all while being subject to the onerous restrictions of the Consent Order. However, should the Court require a breakdown of Mr. Batashvili's financial need and details regarding any estimated criminal defense fees that give rise to that need, counsel requests an *ex parte* and *in camera* review of such information to protect attorney-client privilege, attorney work product, and defensive strategy.

In discussing Mr. Batashvili's need, the CFTC asks the Court to weigh "the plaintiff's interest in protecting the assets for consumer restitution" and "the defendant's interest in having access to the funds", noting that Mr. Batashvili ignores the strong interest in preserving assets to compensate victims in this case and citing to cases where a defendant is asking for funds for a civil defense, not a criminal defense. ECF No. 966 at 8-10. When an individual is indicted, the considerations and weight value change. *See Luis v. United States*, 578 U.S. 5, 19 (2016) (the interests in obtaining payment of a criminal forfeiture or restitution do not enjoy constitutional protection but rather lie further from the heart of a fair, effective criminal justice system when compared with the right to counsel of choice).

The Responses further insinuate that because $1.68 million in legal fees have been paid to CFTC counsel over the course of two years by Mr. Batashvili and Mr. Asher, and a fraction of this

amount paid to criminal counsel by Mr. Batashvili alone in the past few months, Mr. Batashvili has the means to compensate criminal counsel moving forward. As discussed above, the amount paid in a civil matter to CFTC counsel by two individuals over the course of two plus years has no bearing on Mr. Batashvili's financial needs to compensate criminal counsel moving forward.

Finally, the receiver argues that Mr. Batashvili's refusal to give a deposition regarding his available resources is improper. ECF No. 965 at n. 3, 11-12. However, the cases cited to support this position are irrelevant to the present issue—they do not deal with requests for the release of legitimate, untainted assets subject to an asset freeze for the purpose of paying counsel in a criminal matter.

### e. The CFTC's Standing for this Suit is Clearly at Issue.

The status of the CFTC case is very clearly in question. Mr. Batashvili did not make an unsupported claim regarding this issue in his motion as the Responses would imply, nor did he take a position that any claims have already been dismissed. The simple fact is that based on the public pleadings and Court's Order on July 21, 2025, the Court is questioning whether the CFTC has authority to regulate precious metals in the first place, and so the ability to sue Mr. Batashvili and his co-defendants. ECF Nos. 911, 929, 930, 934, 937, 938, 947, 957. If the Court determines that the CFTC has exceeded its authority in this case, the receiver's previous distributions would then be called into question and presumably subject to being vacated. Therefore, to avoid further depletion of funds subject to the asset freeze, Mr. Batashvili requests that no additional funds be disbursed until a ruling has been made on the amended motions for summary judgment. ECF No. 957.

### III.   CONCLUSION

Simon Batashvili's constitutional protections under the Sixth Amendment require that this Court order the release of legitimate, untainted assets to which he is entitled so that he may pay legal fees in *United States v. Batashvili*. Therefore, he respectfully requests that the Court release any legitimate, untainted funds that were in the name, control, or possession of Mr. Batashvili or his affiliated entities at the time they were frozen. Their continued seizure is in violation of his Sixth Amendment protections. Additionally, Mr. Batashvili asks, in an abundance of caution, that if necessary the Consent Order be modified to make clear that Mr. Batashvili is permitted to use new income to pay legal fees to his criminal counsel, as well as requesting a stay of any further distributions by the receiver until the Court rules on the pending motions for summary judgment.

Dated: December 16, 2025.

Respectfully submitted,

*/s/ Jeff Ansley*
Jeffrey J. Ansley
State Bar No. 00790235
jansley@vedderprice.com
Arianna G. Goodman
State Bar No. 24109938
agoodman@vedderprice.com
Katherine M. Devlin
State Bar No. 24094372
kdevlin@vedderprice.com

**VEDDER | PRICE, P.C.**
300 Crescent Court, Suite 400
Dallas, Texas 75201
469.895.4790 (Ansley)

**ATTORNEYS FOR DEFENDANT
SIMON BATASHVILI**

## CERTIFICATE OF SERVICE

I certify that on December 16, 2025, all counsel of record who have consented to electronic service were served with a true and correct copy of the foregoing document *via* the Court's CM/ECF system.

By: */s/ Jeff Ansley*
Jeffrey J. Ansley